MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
GABRIEL DERMER, Assistant City Attorney (SBN 229424)
FELIX LEBRON, Deputy City Attorney (SBN 232984)
**A. PATRICIA URSEA, Deputy City Atty (SBN 221637)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br>    *Plaintiffs*,<br><br>        vs.<br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br>        *Defendant(s)*. | Case No.:  2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION (FED. R. CIV. PROC. 12(b)(1)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Defendant's Request for Judicial Notice, Proposed Order filed concurrently]<br><br>Date:  December 2, 2019<br>Time:  1:30 p.m.<br>Ctrm:  7D<br>**Judge:  Hon. Dale S. Fischer** |

**TO ALL PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 2, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the above titled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendant City of Los Angeles ("City" or "Defendant") will and hereby does, pursuant to the Federal Rule of Civil Procedure ("F.R.Civ.P.") 12(b)(1), move for an order dismissing the operative First Amended Complaint as Supplemented (Dkt. No. 20, "FAC") filed by organizational Plaintiffs Ktown for All ("KFA") and the Association for Responsible and Equitable Public Spending ("AREPS" and collectively with KFA the "Association Plaintiffs") for lack of subject matter jurisdiction.

The City's Motion is brought pursuant to Fed.R.Civ.P. 12(b)(1) on the ground the Association Plaintiffs lack standing under Article III of the United States Constitution and prudential standing to pursue the FAC's alleged claims for relief and, therefore, the Court lacks subject matter jurisdiction. Specifically, the Association Plaintiffs have not alleged, and cannot allege, specific facts to establish the Article III standing requirements of injury-in-fact, causation, and redressability, and fail to allege specific facts to establish either direct or organizational standing on behalf of their respective members. An amendment cannot cure these fatal jurisdictional defects, and leave to amend should be denied.

The City's Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, upon all the pleadings and papers that are on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion.

///

DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS FIRST AMENDED COMPLAINT

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 11, 2019.

Dated:   October 21, 2019          MICHAEL N. FEUER, City Attorney
                                   KATHLEEN KENEALY, Chief Assistant City Attorney
                                   SCOTT MARCUS, Chief, Civil Litigation Branch
                                   FELIX LEBRON, Deputy City Attorney
                                   A. PATRICIA URSEA, Deputy City Attorney

                                   By:   */s/Felix Lebron*_____
                                          FELIX LEBRON
                                          Deputy City Attorney
                                          Attorneys for Defendant
                                          CITY OF LOS ANGELES

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 1

II.  SUMMARY OF THE RELEVANT ALLEGATIONS AND CLAIMS................... 3

  A. KFA Allegations.................................................................................... 3

  B. AREPS' Allegations. ............................................................................ 4

  C. Summary of LAMC 56.11 .................................................................... 4

  D. The Association Plaintiffs' Claims Asserted in the FAC....................... 6

III.  LEGAL STANDARD ................................................................................ 8

IV.   ARGUMENT........................................................................................... 11

  A. Association Plaintiff KFA Lacks Standing and Must be Dismissed for Lack of Subject Matter Jurisdiction. ...................................................................... 11

    1. KFA Does Not Have Direct Standing. ............................................ 11

    2. KFA Does Not Have Representative Standing. ............................... 16

  B. Association Plaintiff AREPS Lacks Standing and Must be Dismissed for Lack of Subject Matter Jurisdiction. ......................................................... 19

  C. Leave to Amend Should be Denied Because the Association Plaintiffs Cannot Allege Any Facts to Establish Article III Standing. .................................. 22

V.   CONCLUSION........................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737, 754 (1984) ........................................................ 12, 16, 20

*Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) ......... 19, 20, 21, 22

*ASARCO, Inc. v. Kadish*, 490 U.S. 605, 616 (1989) ......................................... 13, 20, 21

*Associated Gen. Contractors of America, San Diego Chapter, Inc. v. Cal. Dept. of Transp.,* 713 F.3d 1187, 1194 (9th Cir. 2013) ............................................................ 17

*Chapman v. Pier 1 Imports (U.S.), Inc.,* 63 F.3d 939, 955 n.9 (9th Cir. 2011) ............. 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................... passim

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........................................ 8, 9, 20

*Diamond v. Charles*, 476 U.S. 54 (1986) ..................................................... 8, 12, 16

*Doremus v. Board of Education of Borough of Hawthorne*, 342 U.S. 429, 434 (1952) 20

*Foman v. Davis*, 371 U.S. 178, 182 (1962) .................................................................. 22

*Frothingham v. Mellon*, 262 U.S. 447, 486-487 (1923) ................................................. 20

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ............................... 11, 13, 14

*Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) ...................... 21

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) ................ 16, 18

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ................... 8

*La Asociacion de Trabajadores de Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) ................................................................................ 10, 11, 13, 14

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ................................................. 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) .......................... 9, 10, 12, 16

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ............................................. 9, 13

*Or. Prescription Drug Monitoring Program v. United States DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) ......................................................................................... 9, 18

*Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) ..................... 10, 11

*Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 823 (9th Cir. 2002) ......................... 12

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) ............... 9, 21

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ............................... 8

*Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) ....................................... 17, 18

*Town of Chester v. Laroe Estate, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017) ................................................................................................................. 9, 18

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 475 (1982)................................................................ 10, 13, 18, 19

*Warth v. Seldin*, 422 U.S. 490, 518 (1975) .................................................... 9, 10, 16, 18

**Other Authorities**

Los Angeles Municipal Code § 56.11 ............................................................. 1, 4, 5, 6

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant City of Los Angeles ("City" or "Defendant") enacted a local ordinance imposing reasonable limitations on personal property stored on public areas, including sidewalks. Specifically, the City enacted Los Angeles Municipal Code ("LAMC") Section 56.11 "to balance the needs of the residents and public at large to access clean and sanitary public areas consistent with the intended uses for the public areas with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas." Request for Judicial Notice ("RJN"), **Ex. 1** (LAMC § 56.11(1)). Section 56.11 includes procedures for impounding, storing, and discarding personal property stored in public areas, including providing pre- and post-removal notice, storing personal property for 90 days, and discarding property after the 90-day period. Personal property stored on public areas that poses an immediate threat to public health and safety, as well as bulky items, like large appliances and furniture, may be removed without pre-removal notice and may be discarded with or without post-removal storage for 90 days. Section 56.11 permits tents to be constructed during the hours from 9:00 p.m. to 6:00 a.m., with express exceptions for cold or wet weather.

This lawsuit seeks to have this Court declare Section 56.11 unconstitutional under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Sections 7(a) and 13 of the California Constitution. Plaintiffs contend that the City cannot impose *any* limit on the amount of property that may be stored on public areas; that bulky items cannot, *in any instance*, ever be removed without pre-removal notice and can *never* be discarded without post-removal notice and storage for 90 days; and that removing and discarding any personal property stored on public areas which poses an "immediate threat to the public health and safety" without pre-removal notice and post-removal storage for 90 days is unconstitutional and void for vagueness.

The power to invoke the jurisdiction of this Court to declare duly-enacted

legislation unconstitutional is reserved only for those plaintiffs who have suffered concrete and particularized injuries meeting the irreducible constitutional minimum of Article III standing.  Article III of the United States Constitution limits this Court's jurisdiction to "cases" and "controversies" and requires that each and every plaintiff in this action has standing under Article III to pursue the specific claims and requests for relief.  To have Article III standing, each plaintiff must establish an injury-in-fact that is concrete, particularized and actual – not conjectural; that this injury is fairly traceable to the City's conduct and challenged legislation; and that it is likely (as opposed to speculative) that the injury will be redressed by a favorable decision from this Court.  Article III requires more than a desire to vindicate value interests and precludes federal courts from serving as forums for the public to express generalized grievances about matters of public importance.

Here, the two association plaintiffs in this action – Ktown for All ("KFA") and the Association for Responsible and Equitable Public Spending ("AREPS" and collectively with KFA the "Association Plaintiffs") – have not, and cannot, establish Article III standing to pursue the claims and requested relief asserted against the City in the operative First Amended Complaint as Supplemented (Dkt. No. 20, "FAC").  The plaintiffs in this action also include seven individuals (Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, and James Haugabrook (collectively "Individual Plaintiffs").  In this Motion, the City challenges only Article III standing of the Association Plaintiffs.

As discussed below, neither KFA nor AREPS have Article III standing to pursue any of the claims or requested relief in the FAC.  Accordingly, the Association Plaintiffs must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") 12(b)(1).  Any amendment will not cure the Association Plaintiffs' fatal jurisdictional defects and, therefore, leave to amend should be denied.

## II.   SUMMARY OF THE RELEVANT ALLEGATIONS AND CLAIMS.

### A. KFA Allegations.

As alleged in the operative FAC (Dkt. No. 20), KFA is an "unincorporated membership organization in the Koreatown neighborhood in Los Angeles" "founded in 2018 to form connections between housed and unhoused residents of Koreatown and to advocate for housing and shelters in Koreatown." FAC ¶ 38. KFA's mission is "to support unhoused residents and to build connections between housed and unhoused neighbors[.]" *Id.* ¶ 39. KFA conducts "outreach efforts" "to get to know its unhoused neighbors and provides resources such as food, water, hygiene kits, and other consumable items that their neighbors need." *Id.* KFA's members include "housed and unhoused residents in Koreatown." *Id.* The FAC does not allege that any of the Individual Plaintiffs are members of KFA or were members during the alleged incidents in the FAC.

The City allegedly "impaired and frustrated [KFA's] mission" because "[a]s a result of the City's practices, homeless residents have been moved around or been displaced from the neighborhood" making it "incredibly difficult for [KFA] to stay in contact with unhoused neighbors." *Id.* The City's alleged "unlawful practices" caused KFA to divert resources from "connecting with neighbors" and "advocating for shelters" to helping unhoused residents "track down items that were seized" and replacing "an increasingly large number of tents, blankets and other items that were seized and destroyed by the City." *Id.* ¶ 41. Specifically, "[o]n or about March 28, 2019, a member of [KFA] provided [plaintiffs Zamora and Zepeda] with a new tent." *Id.* ¶ 166.

KFA's *unidentified* "unhoused" members have allegedly "suffered harm as a result" of the City's enforcement of LAMC 56.11, including *unspecified* "loss of property" and purported deprivation of "constitutional and statutory rights" on *unspecified* dates and at *unspecified* locations. *Id.* ¶ 42. KFA alleges that the City has decreased participation of KFA's "unhoused members" in KFA's "advocacy efforts" because its "unhoused members" must spend time "guarding" or "replacing" their property. *Id.* ¶ 43.

DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS FIRST AMENDED COMPLAINT

**B. AREPS' Allegations.**

AREPS "is a membership organization comprised of taxpayers in Los Angeles that was founded to ensure that their tax dollars are used to promote responsible public spending." FAC ¶ 44. AREPS advocates "for spending on public health, housing, and other public infrastructure for all residents in Los Angeles, including its unhoused residents and against the use of their tax dollars to enforce illegal laws that harm vulnerable residents of the City." *Id.* "All members of AREPs are residents of the [City] and pay one or more municipal taxes to the [City], which provides revenue into the City's general fund." *Id.* The FAC identifies two AREPS members – Kristina Meshelski and James Parrot IV – who allegedly pay municipal taxes to the City. *Id.* ¶¶ 45-46. The FAC does not allege that any of the Individual Plaintiffs are members of AREPS or were members during the alleged incidents in the FAC.

**C. Summary of LAMC 56.11.**

The City enacted the existing version of LAMC Section 56.11 on April 11, 2016. RJN, **Ex. 1** (LAMC § 56.11). Subsection 1 identifies the legislative intent and purpose of the ordinance:

> The City enacts this section to balance the needs of the residents and public at large to access clean and sanitary public areas consistent with the intended uses for the public areas with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas. On the one hand, the unauthorized use of public areas for the storage of unlimited amounts of personal property interferes with the rights of other members of the public to use public areas for their intended purposes and can create a public health or safety hazard that adversely affects those who use public areas. On the other hand, the City's large and vulnerable homeless population needs access to a manageable amount of essential property for their personal use and well-being. This section attempts to balance the needs of all of the City's residents. (LAMC § 56.11(1))

LAMC Section 56.11 has twelve subsections structured as follows:

> ➤ defined terms (56.11(2));
> ➤ provisions regulating the impoundment, storage, and discard of personal property stored on public areas (56.11(3));
> ➤ provisions addressing pre-removal and post-removal notices (56.11(4));
> ➤ provisions regulating the storage and disposal of impounded personal property stored on public areas (56.11(5));
> ➤ provisions for repossession and recovery of impounded personal property (56.11(6));
> ➤ provisions regulating the erection of tents on public areas during the hours of 6:00 a.m. to 9:00 p.m. (56.11(8));
> ➤ provisions regulating attachments to public or private property (56.11(8));
> ➤ provisions confirming that illegal dumping laws, including California Penal Code Section 374.3, and LAMC Sections 41.14, 63.44.B.(13), or 190.02 remain in effect and enforcement (56.11(9));
> ➤ provisions de-criminalizing violations of Section 56.11 under LAMC Section 11.00, except as expressly enumerated for willfully resisting, delaying, or obstructing specific City operations (56.11(10));
> ➤ provisions designating the City's Department of Public Works, Bureau of Sanitation as the administrative agency for promulgating rules, protocols, and procedures for implementing and enforcing 56.11 (56.11(11)); and
> ➤ a severability clause (56.11(12)).

**Defined Terms:**  Section 56.11 defines the terms "Store", "Stored", "Storing", and "Storage" to mean "to put Personal Property aside or accumulate for use when needed, to put for safekeeping, and/or to place or leave in a Public Area." *Id.* § 56.11(2)(o).  "Public Area(s)" is defined, in turn, as "all property that is owned, managed or maintain by the City … and shall include … any Street, medical strip, space, ground, building or structure." *Id.* § 56.11(2)(k).  "Bulky Item" is defined to mean "any item with

the exception of a constructed Tent, operational bicycle or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed, including but not limited to, a shed, structure, mattress, couch, chair, other furniture or appliance. A container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property shall not in itself be considered a Bulky Item." *Id.* § 56.11(2)(c).

**Noticed Impoundment and Storage for 90 Days:**  Section 56.11 sets out a procedure in which the City may, after providing written notice, impound personal property stored on public areas.  LAMC § 56.11(3)(a); *id.* § 56.11(4)(a)(pre-removal notice); *id.* § 56.11(4)(b) (post-removal notice).  Any personal property impounded shall be stored and may be discarded if not claimed within 90 days after impoundment.  *Id.* § 56.11(5)(a)-(b).

**Impoundment with or without Notice and Storage for 90 Days:**  Under Section 56.11, the City may impound personal property stored on public areas without pre-removal notice and store for 90 days with post-removal notice in enumerated circumstances, including when personal property stored on public areas is: obstructing City operations (56.11(3)(c)); blocking or impeding accessibility as required under the Americans with Disabilities Act (56.11(3)(d)); blocking ingress or egress and within 10 feet of driveways, loading docks or entrances or exits (56.11(3)(e));  stored in a public area with a posted closure time after the posted closure time (56.11(3)(f)).

**Impoundment with  or without Pre-Removal Notice and Discarding with or without Post-Removal Storage for 90 Days:**  In addition, under Section 56.11, the City may impound certain personal property with or without pre-removal notice and may discard such property stored on public areas without post-removal storage for up to 90 days if the property stored on public areas: "poses an immediate threat the health or safety of the public" (56.11(3)(g)); "constitutes evidence of a crime or contraband" (56.11(h)); or is a "Bulky Item" and not "designed to be used as a shelter" (56.11(3)(i)).

### D. The Association Plaintiffs' Claims Asserted in the FAC.

The FAC alleges six claims on behalf of all Plaintiffs, including Association

Plaintiffs KFA and AREPS. FAC ¶¶ 230-260, 267-270. As summarized below, the Association Plaintiffs assert federal and state constitutional claims (both facial and as applied), and seek compensatory damages and declaratory and injunctive relief against the City.[1] *Id.*; Prayer ¶¶ 1-5.

The first cause of action alleges a facial challenge to Sections 3(i)[2] and 10(d) of LAMC 56.11 under the Fourth Amendment and Article I, Section 13 of the California Constitution. Specifically, Plaintiffs allege that removing and/or discarding a "Bulky Item" stored on a public area without a warrant or probable cause, and making it unlawful to willfully resist, delay or obstruct a City employee from removing or discarding a "Bulky Item" stored on a public area, are facially unconstitutional in all applications in violation of the Fourth Amendment and Article I, Section 13 of the California Constitution. FAC ¶¶ 230-233.

The second cause of action alleges an as-applied challenge that the City's removal and/or discarding Plaintiffs' personal property stored on public areas without a warrant or probable cause, and all actions taken by the City pursuant to LAMC 56.11, violated the Fourth Amendment and Article I, Section 13 of the California Constitution as applied to all Plaintiffs. FAC ¶¶ 236-243.

The third cause of action alleges that LAMC 56.11 is void for vagueness under the Fourteenth Amendment. Specifically, Plaintiffs allege that LAMC 56.11 is unconstitutionally void for vagueness because it fails to define the terms "Bulky Item" and "immediate threat to public health and safety" with sufficient precision to provide fair notice of what items of personal property cannot be stored on public areas or what items of property stored on public areas may be removed and/or discarded without notice. FAC ¶¶ 244-249.

---

[1] The FAC's sixth cause of action, violation of California Civil Code Section 52.1 (Bane Act), is asserted only by Plaintiff El-Bey.

[2] The first and fourth causes of action allege a challenge to Section "3(h)", however, the Bulky Item provision being challenged is found in subsection 3(i) of LAMC 56.11.

The fourth cause of action alleges a facial challenge to Section 3(i) of LAMC 56.11 under the Fourteenth Amendment and Article I, Section 7(a) of the California Constitution.  Specifically, Plaintiffs allege that removing and/or discarding a "Bulky Item" stored on public areas without notice or an opportunity to be heard is unconstitutional in all applications in violation of the Fourteenth Amendment's Due Process Clause and Article 1, Section 7(a) of the California Constitution.  FAC ¶¶ 250-253.

The fifth cause of action alleges an as-applied challenge that the City's removal and/or discarding and not storing for 90 days Plaintiffs' personal property stored on public areas without notice and opportunity to be heard, and actions taken by the City pursuant to LAMC 56.11 as applied to Plaintiffs specifically, violated the Fourteenth Amendment's Due Process Clause and Article I, Sections 1 and 7(a) of the California Constitution as applied to all Plaintiffs.  FAC ¶¶ 254-260.

The seventh cause of action alleges that the City violated a mandatory statutory duty owed to Plaintiffs under California Government Code Section 815.6.  Specifically, that the City violated a mandatory duty imposed under California Civil Code Section 2080 *et seq.* to store all unattended property seized in public areas for 90 days, and store all attended property seized in public areas for 60 days.  FAC ¶¶ 267-270.

## III.   <u>LEGAL STANDARD</u>

Federal courts must address the "threshold jurisdictional question" of a plaintiff's standing to sue under "Article III, § 2 of the Constitution."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-102 (1998).  "Article III . . . limits the power of federal courts to deciding 'cases' and 'controversies.'"  *Diamond v. Charles*, 476 U.S. 54, 61 (1986).  Federal courts are presumed to lack jurisdiction, unless the party asserting jurisdiction affirmatively establishes to the contrary.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *DaimlerChrysler Corp. v.*

*Cuno*, 547 U.S. 332, 341 (2006).  One element of the "case-or-controversy" requirement is that plaintiffs must establish that they have standing to sue.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  Because Article III's standing requirements limit subject matter jurisdiction, a plaintiff's standing to pursue a claim is properly challenged by a F.R.Civ.P. 12(b)(1) motion to dismiss.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

The party invoking federal jurisdiction bears the burden of establishing the elements for Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly… allege facts demonstrating' each element."  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  "[S]tanding is not dispensed in gross."  *Town of Chester v. Laroe Estate, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017).  "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted."  *Or. Prescription Drug Monitoring Program v. United States DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (emphasis in original).  Article III requires *each* plaintiff to "demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Id.; Town of Chester,* 137 S. Ct. 1645, 1650; *DaimlerChrysler*, 547 U.S. at 352 (the requirement that "a plaintiff demonstrate standing for each form of relief sought" also applies to a federal court's exercise of "supplemental jurisdiction").

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.  This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth*, 422 U.S. at 498 (internal citations omitted).  The "irreducible constitutional minimum" of Article III standing consists of three well-established elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*First*, the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent and

not conjectural or hypothetical.'" *Id.* **Second,** "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of independent action of some third party not before the court." *Id.* **Third**, "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id.* at 560-61.

In addition to the "irreducible constitutional minimum" of Article III, the Supreme Court has also identified prudential principles that bear on the question of standing. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 475 (1982). Prudential standing principles include: "[T]he plaintiff must generally assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of others." *Id.* "[E]ven when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances' pervasively shared and most appropriately addressed in the representative branches." *Id.* at 474-475 (quoting *Warth*, 422 U.S. at 499-500). "Finally, the Court has required that the plaintiff's complaint fall within the 'zone of interests' to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 475.

"While the *Lujan* decision established the 'irreducible constitutional minimum' test for standing in the context of an individual plaintiff, the same analysis is used to determine whether an organizational plaintiff has standing in a particular case." *La Asociacion de Trabajadores de Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). An organization can establish Article III standing under one of two theories: (1) the organization can sue on its *own* behalf for injuries to the organization *itself*; or (2) the organization can sue in a representative capacity on behalf of its members for injuries to one or more of its members. *Id.*; *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019).

## IV.   **ARGUMENT**

### A. **Association Plaintiff KFA Lacks Standing and Must be Dismissed for Lack of Subject Matter Jurisdiction.**

The FAC contains no well-pleaded allegations explaining whether KFA seeks relief for injuries incurred to the organization itself or on behalf of its members or both, and fails to address whether its request for compensatory damages, declaratory relief, and injunctive relief is asserted on behalf of itself, its members, or both. *See e.g.,* FAC ¶¶ 38-44, 230-260; 267-270. Nonetheless, KFA lacks standing to pursue *any* of the claims and requested relief either on behalf of itself or its members.

#### 1. KFA Does Not Have Direct Standing.

An organization can establish "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Rodriguez*, 930 F.3d at 1134. "Of course, to do so, organizations must satisfy the traditional standing requirements of (1) injury in fact, (2) causation, and (3) redressability." *Id.* The organization must show that the defendant's actions caused a "concrete and demonstrable injury to the organization's activities," thereby placing a "drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

"An organization suing on its own behalf can establish an injury when it suffered both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores*, 624 F.3d at 1088. The organization "cannot manufacture the injury by . . . simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* "An organization may only sue if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *Id.* at 1088, n.4.

KFA must, but cannot, allege any specific facts demonstrating that LAMC Section 56.11 or the City's conduct caused any direct and judicially cognizable injuries to KFA

1   itself.  For example, KFA's alleged "mission" is to "form connections between housed
2   and unhoused residents of Koreatown and to advocate for housing and shelters in
3   Koreatown."  FAC ¶ 38.  KFA alleges that the City "impaired and frustrated [KFA's]
4   mission" to "build these connections" because "[a]s a result of the City's practices,
5   homeless residents have been moved around or been displaced from the neighborhood"
6   making it "incredibly difficult for [KFA] to stay in contact with unhoused neighbors."
7   FAC ¶ 40.

8          First, KFA's interest in helping the homeless or building connections between
9   housed and unhoused individuals is insufficient, by itself, to establish an injury-in-fact or
10  Article III standing.  *Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 823 (9th Cir. 2002).
11  As the Ninth Circuit explained in *Schmier*, a "mere interest in a problem no matter how
12  longstanding the interest and no matter how qualified the organization is in evaluating the
13  problem, is not sufficient by itself to render the organization adversely affected or
14  aggrieved."  *Id.*  "Article III requires more than a desire to vindicate value interests.  It
15  requires an 'injury in fact' that distinguished a person with a direct stake in the outcome
16  … from a person with a mere interest in the problem."  *Diamond*, 476 U.S. at 66; *see also*
17  *Allen v. Wright,* 468 U.S. 737, 754 (1984), ("Assertion of a right to a particular kind of
18  Government conduct, which the Government has violated by acting differently, cannot
19  alone satisfy the requirements of Art. III without draining those resources of meaning.").

20         Second, KFA does not allege a cognizable injury-in-fact to its "mission" under
21  *Lujan*.  The ease or difficulty in which KFA is able "to stay in contact with unhoused
22  neighbors" is not a "legally protected interest."  *Lujan*, 504 U.S. at 560.  The City owes
23  no duties under LAMC Section 56.11 or any other law to ensure that unhoused residents
24  are easily accessible for KFA's advocacy and outreach.  Similarly, the alleged injury is
25  not one that is "concrete and particularized" and "actual or imminent" and not
26  "conjectural or hypothetical".  *Lujan*, 504 U.S. at 560.  Indeed, there is no meaningful
27  way to quantify or measure the difficulty in staying in contact with unhoused residents in
28  the Koreatown area.  This alleged harm, assuming it exists, is far too abstract and

conjectural to be judicially cognizable in federal court.  *Allen,* 468 U.S. at 755-56; *Diamond*, 476 U.S. at 66.  Indeed, "claims of injury that are purely abstract, even if they might be understood to lead to 'the psychological consequence presumably produced by observation of conduct with which one disagrees,' do not provide the kind of particular, direct, and concrete injury that is necessary to confer standing to sue in the federal courts." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 616 (1989) (*quoting Valley Forge,* 454 U.S. at 485).

Third, KFA has not suffered injury-in-fact based on diversion of resources.  "An organization may only sue if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *La Asociacion de Trabajadores*, 624 F.3d at 1088, n.4.  KFA alleges that it had to "divert organizational resources" but that diversion was not to counteract any actual or imminent injury to KFA itself, and simply spending money or resources is insufficient to establish Article III standing. *Id.* at 1088. Such conclusory allegations of diverting resources are insufficient to establish standing. *See e.g, Maya*, 658 F.3d at 1068 (a plaintiff not "rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' action caused [their] injuries.") (internal quotations omitted); *Chapman v. Pier 1 Imports (U.S.), Inc.,* 63 F.3d 939, 955 n.9 (9th Cir. 2011) (en banc) (To "sufficiently allege standing," the plaintiff must do more than offer "labels and conclusions" and "formulaic recitation" of the elements.).

The Supreme Court's analysis in the seminal case of *Havens Realty* is instructive in explaining why KFA's alleged diversion of resources is insufficient here to establish an injury-in-fact.  In *Havens*, the Supreme Court assessed whether an organization had standing to assert claims that an owner of an apartment complex engaged in "racial steering" in violation of Section 804 of the Fair Housing Act of 1968, 42 U.S.C. § 3604 *et seq*.  *Havens*, 455 U.S. 366-69.  "Racial steering" referred to the "practice by which real estate brokers and agents preserve and encourage patterns of racial segregation in available housing by steering members of racial and ethnic groups to buildings occupied

primarily by members of such racial and ethnic groups." *Id.* at 368.  The organizational plaintiff, the Housing Opportunities Made Equal (HOME), was a nonprofit whose purpose was to make equal opportunity in housing a reality in the Richmond Metropolitan Area.  *See id.* at 367-369.   HOME alleged it suffered injuries because "the steering practices of Havens had frustrated the organization's and counseling and referral services with a consequent drain on resources" and "its members had been deprived of the benefits of interracial association from living in an integrated community free of housing discrimination." *Id.* at 369.

In its standing analysis, the Supreme Court found that Section 804(d) "established an enforceable right to truthful information concerning the availability of housing…. and a tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered an injury in precisely the form the statute was intended to guard against and therefore ha[d] standing to maintain a claim for damages under the Act's provisions." *Id.* at 373-374.  The Court further found that because Haven's "steering practices have perceptibly impaired HOME's abilities to provide counseling and referral services for low- and moderate-income home seekers, there can be no question that the organization has suffered an injury in fact.  Such concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests." *Id.* at 379.

Unlike in *Havens*, here Section 56.11 imposes no right enforceable against the City to ensure that KFA is able to stay in contact with its unhoused members without difficulty.  Section 56.11 is a law of general application throughout the City and provides standards to maintain the City's public areas, including sidewalks and streets, safe, clean and accessible and in a manner that tries to balance the varying interests of all of its residents.  Section 56.11 does not directly impact KFA's efforts to build relationships or advocate for housing.  Thus, KFA itself faced no concrete and particularized injury to counteract with its alleged resource diversion.  *Clapper*, 568 U.S. at 416-17; *La*

*Asociacion de Trabajadores*, 624 F.3d at 1088.

Moreover, the claim that the City made it more difficult for KFA to stay in contact with unhoused residents is entirely speculative.  *See Clapper*, 568 U.S. at 416-17.  In *Clapper*, the Supreme Court rejected a similar attempt to establish standing based on a perceived harm that was entirely speculative.  There, the plaintiffs challenged the constitutionality of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a.  *Id.* at 401.  Specifically, the plaintiffs alleged that they suffered an injury in fact because, among other reasons, they feared that their communications would be intercepted and incurred costs to protect their communications.  *Id.* at 415-416.  In finding that the plaintiffs lacked standing to challenge the constitutionality of the statute, the Supreme Court found that these costs were not incurred based on an actual or impending threat under the challenged statute.  *Id.* at 417.  The Court found that the plaintiffs' "contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing – because the harm [plaintiffs] seek to avoid is certainly not impending.  In other words, [plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending."  *Id.* at 416.  "If the law were otherwise, any enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear."  *Id.*

*Clapper* also demonstrates that KFA lacks standing for a fourth and related reason, namely that KFA's alleged injury is not fairly traceable to LAMC Section 56.11 or the City's alleged unlawful conduct.  Section 56.11 does not require unhoused residents to either leave or remain in or around the Koreatown area.  *See Clapper*, 568 U.S. at 413 (injury must be fairly traceable to conduct under the challenged statute).  Indeed, there are many reasons why an unhoused person might choose to relocate to another area, such as the weather, conflicts with neighbors or other pedestrians in the area, crime, medical appointments, a job, visits with friend or family, etc.  Plaintiffs admit as much in the FAC.  *See, e.g,* FAC ¶ 176 (El-Bey "does not stay in one particular location for long,

because he experiences frequent harassment from neighbors and law enforcement officers.  He also suffers from mental health issues and does not like to be around other people.  As a result he moves from location to location….").  Moreover, KFA was founded in 2018 at a time when Section 56.11 was *already* in effect and enforcement.  Thus, KFA has no reasonable basis to measure the purported harm to its mission of the purported increase in difficulty in staying in contact with unhoused members.

Indeed, KFA's line of causation between the alleged illegal conduct – the City's street cleanings or enforcement of Section 56.11 – and the increased difficulty of staying in contact with unhoused and transient members in or around the Koreatown area since it was founded in 2018 is entirely too attenuated and speculative to support causation under Article III.  *See Lujan,* 504 U.S. at 562; *Diamond,* 476 U.S. at 66; *Allen*, 468 U.S. at 757-759.  As the Supreme Court explained in *Lujan*: "When … a plaintiff's asserted injury arises from the government's alleged unlawful regulation … of *someone else*, much more is needed.  In that circumstance, causation and redressability ordinarily hinge on the response of the regulated … third party to the government action or inaction – and perhaps on the response of others as well."  *Lujan*, 504 U.S. at 562.

KFA's alleged injury, at best, "result[s] from the independent action of some third part[ies] not before the court" which the Supreme Court has found is "attenuated" and too "speculative" to "meet the minimum requirement of Art. III" or establish the necessary "links in the chain of causation between the challenged Government conduct and the asserted injury."  *Allen*, 468 U.S. at 757-759; *see also Clapper*, 568 U.S. at 413 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

2. KFA Does Not Have Representative Standing.

An organization can establish standing to sue in a representative capacity on behalf of its members by showing that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."  *Warth*, 422 U.S.

at 511.  The three-prong test for an organization's representative standing requires that the organization show that:  (1) "its members would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

The FAC alleges that KFA's "members include housed and unhoused residents in Koreatown."  FAC ¶ 38.  Specifically, the FAC alleges KFA's unidentified "unhoused members" have allegedly "suffered harm as a result" of the City's enforcement of LAMC 56.11, including unspecified "loss of property" and purported deprivation of "constitutional and statutory rights" on unspecified dates and at unspecified locations.  *Id.* ¶ 42.  KFA further alleges that the City has decreased the participation of its unidentified "unhoused members" in KFA's "advocacy efforts" because its unidentified "unhoused members" must spend time "guarding" or "replacing" their property.  *Id.* ¶ 43.

To meet the first *Hunt* prong, the organization "must show that a member suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision.  *Associated Gen. Contractors of America, San Diego Chapter, Inc. v. Cal. Dept. of Transp.,* 713 F.3d 1187, 1194 (9th Cir. 2013).  Specifically, the organization must "make specific allegations establishing that at least one *identified* member had suffered or would suffer harm."  *Id.* (emphasis in original) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).  "The requirement of naming the affected members has never been dispensed with in light of statistical probabilities…."  *Summers*, 555 U.S. at 499.  "In part because of the difficulty in verifying the facts upon which such probabilistic standing depends, the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm."  *Id.*

KFA lacks standing under the first *Hunt* prong because it does not identify a specific member who suffered an injury-in-fact that is traceable to the City's alleged unlawful conduct and is likely to be redressed by a favorable decision.  *See Summers*, 555

U.S. at 497-500; *Associated Gen. Contractors,* 713 F.3d at 1194-1195.

Even if KFA had identified a specific member, the FAC still does not contain well-plead facts establishing the required elements for standing.  KFA alleges generally that its unhoused members "have been subjected to City's enforcement of LAMC 56.11 and have suffered harm as a result of that enforcement, including loss of property and the deprivation of their constitutional rights."  FAC ¶ 42.  The FAC does not identify the dates or locations of these incidents, whether the "enforcement" consisted of a noticed cleanup or a rapid response abatement, whether or not property was stored, whether the incident involved public health and safety hazards, bulky items, contraband, or other property, whether the property was attended or unattended, etc.  KFA must allege specific facts to establish that one of its members would have standing to sue.  *Summers*, 555 U.S. at 492-93; *Warth*, 422 U.S. at 511.  It has not.

While the first *Hunt* prong is dispositive in establishing that KFA lacks standing on behalf of its member, the second *Hunt* prongs also cuts against KFA's standing.  KFA does not allege specific facts to establish that its stated mission – to "form connections between housed and unhoused residents of Koreatown and to advocate for housing and shelters in Koreatown" – is germane to the claims in this action challenging the constitutionality of LAMC Section 56.11.  A general interest in helping the homeless residents in the City is insufficient by itself for reasons discussed above.  *See also Valley Forge*, 454 U.S. at 475 (Federal courts must refrain "from adjudicating abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches.") (internal quotations omitted).

Finally, the third *Hunt* prong also weighs against KFA's standing.  Even if the Court granted KFA leave to amend to allege that one of its identified members suffered an injury-in-fact and had standing to sue, the fact intensive nature of assessing the merits of the individual's specific claim demonstrates that any claim asserted will require the participation of the individual member(s) in the lawsuit who suffered the alleged injuries.

In such instances, the Supreme Court adheres to prudential consideration that bear on the question of standing, including that the "plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge*, 454 U.S. at 474.

In addition, the FAC lacks any well pleaded facts explaining what claims and requests for relief KFA seeks on behalf of its members. The FAC simply alleges that all Plaintiffs seek compensatory damages in addition to declaratory and injunctive relief. *See* FAC ¶¶ 230-260, 267-270; Prayer ¶¶ 1-5. An organization's representative standing on behalf of its members is generally limited to declaratory or injunctive relief. *Hunt*, 432 U.S. at 343. KFA failed to allege specific facts for each claim and form of relief sought on behalf of its members so that the Court can assess whether a specific member has standing to pursue each of the claims and requested relief. *Or. Prescription Drug Monitoring Program*, 860 F.3d at 1233; *Town of Chester*, 137 S. Ct. 1645, 1650 ("a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief."). Indeed, to obtain injunctive relief on behalf of its members, KFA must show that the threatened injury to its members is "*certainly impending* to constitute an injury in fact and … allegations of *possible* future injury are not sufficient." *Or. Prescription Drug Monitoring Program*, 860 F.3d at 1233 (emphasis in original; internal quotations omitted); *see also Clapper*, 568 U.S. at 414-15.

In sum, KFA must, but cannot, allege specific facts to meet its burden to establish standing as an organization to pursue any of claims and requested relief asserted in the FAC under either theory. KFA must be dismissed for lack of subject matter jurisdiction.

## B. Association Plaintiff AREPS Lacks Standing and Must be Dismissed for Lack of Subject Matter Jurisdiction.

AREPS asserts standing only on behalf of its members. AREPS "is a membership organization comprised of taxpayers in Los Angeles" that advocates "for spending on public health, housing, and other public infrastructure for all residents in Los Angeles, including its unhoused residents." FAC ¶ 44. The FAC identifies two AREPS members

1   – Kristina Meshelski and James Parrot IV – who allegedly pay one or more municipal

2   taxes to the City, which provides revenue into the City's general fund. *Id.* ¶¶ 45-46.

3   AREPS alleges that its members suffered harm because the City spends "their tax dollars

4   to enforce illegal laws that harm vulnerable residents of the City." FAC ¶ 44.

5   The Supreme Court has long rejected the "general proposition that an individual

6   who has paid taxes has continuing, legally cognizable interest in ensuring those funds are

7   not *used* by the Government in a way that violates the Constitution." *Ariz. Christian Sch.*

8   *Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (emphasis in original). The Supreme

9   Court refers to this well-established principle as the "rule against taxpayer standing." *Id.*;

10  *see also DaimlerChrysler,* 547 U.S. at 345 (the federal rule against taxpayer standing

11  "applies with undiminished force to state taxpayers."). The Supreme Court "has declined

12  to lower the taxpayer spending bar in suits alleging violations of any constitutional

13  provision apart from the Establishment Clause." *Ariz. Christian Sch. Tuition Org.*, 563

14  U.S. at 139.

15  When standing is alleged on the basis of municipal taxpayer status, the Court must

16  assess whether "it has been shown that the 'peculiar relation of the corporate taxpayer to

17  the municipal corporation' makes the taxpayer's interest in the application of municipal

18  revenues 'direct and immediate.'" *ASARCO, Inc.,* 490 U.S. at 613 (quoting *Frothingham*

19  *v. Mellon*, 262 U.S. 447, 486-487 (1923)). AREPS, however, alleges no specific facts on

20  how the payment of municipal taxes by its members to a municipality the size of the City

21  of Los Angeles creates a direct and immediate interest in the specific application of taxes

22  paid to the City's general fund.

23  In *Doremus v. Board of Education of Borough of Hawthorne*, 342 U.S. 429, 434

24  (1952), the Supreme Court held that party seeking to establish standing as a taxpayer

25  under *Frothingham* "must be able to show not only that the statute is invalid but that he

26  has sustained or is immediately in danger of sustaining some direct injury as a result of its

27  enforcement, and not merely that he suffers in some indefinite way in common with

28  people generally." Here, again, the FAC contains no specific allegations that any AREPS

member has been directly harmed by LAMC Section 56.11 or the City's alleged cleanups and enforcement of Section 56.11.  AREPS simply alleges that it objects to the use of its tax payments to enforce what it contends is an "illegal law."  FAC ¶ 44.  But this is insufficient to establish an injury-in-fact under Article III.  *See Allen*, 468 U.S at 754 ("Assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III….").

AREPS cannot establish a direct and immediate injury-in-fact under Article III based solely on its payment of municipal taxes.  AREPS must allege specific facts of an injury in fact that is concrete and *particularized*.  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Spokeo*, 136 S. Ct. 1540, 1547.  But it is well established that payment of taxes, alone, is anything other than particularized:  suits premised on taxpayer standing "are not cognizable in federal courts because a taxpayer's interest in the moneys of the treasury is shared with millions of others, is comparatively minute and indeterminable; and the effect upon future taxation, of any payments out the funds, so remote, fluctuating and uncertain, that no basis is afforded for judicial intervention."  *ASARCO,* 490 U.S. at 613.  "The constitutionally mandated standing inquiry is especially important in cases . . . in which taxpayers seek to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers."  *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (plurality opn.).  AREPS alleges no specific facts to establish that its alleged injury is particularized and distinct from that suffered by the millions of other municipal taxpayers.  *Id.*; *see also Ariz. Christian Sch. Tuition Org.*, 563 U.S. at 138 ("The taxpayers have not shown that any interest they have in protecting the state treasury would be advanced.  Even were they to show some closer link, that interest is still of a general character, not particular to certain persons."); *Valley Forge*, 454 U.S. at 479 ("the 'case or controversy' aspect of standing is unsatisfied where a taxpayer seeks to employ a federal court as a forum in which to air his generalized grievances about the conduct of government….").

AREPS has also not shown that its claims are redressable.  One the one hand, the FAC alleges that the City does not do enough to cleanup homeless encampments.  *See e.g.,* FAC ¶ 14 ("the City has not provided trash receptacles or even routine trash pickup….But without routine pickups, this trash piles up on city sidewalks. These piles then become magnets for illegal dumping…."); FAC ¶ 11 ("the Los Angeles County Department of Health has repeatedly warned the City that services like … routine trash services are necessary to maintain adequate public health in areas with high concentrations of people living in encampments.").  On the other hand, AREPS alleges while it "advocates for public health" its members are injured from the use of tax dollars to enforce unlawful laws.  FAC ¶ 44.  The City conducts cleanups under LAMC Section 56.11 to address and mitigate against the risks of the trash and illegal-dumping sites referenced in the FAC.  AREPS does not allege whether it seek to enjoin the use of all funds to support any cleanups under Section 56.11 or just some of the funds.  As the Supreme Court explained: "]T]o find redressability, a court must assume that, were the remedy the taxpayers seek to be allowed, legislators will pass along the supposed increased revenue in the form of tax reductions. It would be pure speculation to conclude that an injunction against a government expenditure or tax benefit would result in any actual tax relief for a taxpayer plaintiff." *Ariz. Christian Sch. Tuition Org.*, 563 U.S. at 136 (internal quotations omitted).

In sum, AREPS has not and cannot establish that any of its members have Article III standing to pursue any of the alleged claims or requests for relief.  AREPS must be also be dismissed for lack of subject matter jurisdiction.

### C. <u>Leave to Amend Should be Denied Because the Association Plaintiffs Cannot Allege Any Facts to Establish Article III Standing.</u>

The Association Plaintiffs lack standing to assert any of the claims for relief against the City.  The City met and conferred with Plaintiffs, identified the deficiency in the Association Plaintiffs' standing, and stipulated to Plaintiffs' filing the FAC.  See Dkt. No. 14.  Thus, the Association Plaintiffs had an opportunity to cure these defects by

amendment.  The failure to cure deficiencies by amendment, and the futility of any reasonably imaginable amendment, are sufficient grounds to deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is a reasonable basis to deny leave to amend); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (denial of leave to amend is warranted if the Court determines that the pleading could not possibly be cured by the addition of other facts).

## V.     <u>CONCLUSION</u>

For the reasons discussed above, KFA and AREPS lack Article III standing to pursue any of the claims or requests for relief asserted in the FAC.  Accordingly, the City respectfully requests that the Court grant its Motion to Dismiss KFA and AREPS for lack of subject matter jurisdiction pursuant to F.R.Civ.P. 12(b)(1).

Dated:   October 21, 2019

MICHAEL N. FEUER, City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
FELIX LEBRON, Deputy City Attorney
B. PATRICIA URSEA, Deputy City Attorney


By:   */s/Felix Lebron*
         FELIX LEBRON
         Deputy City Attorney
         Attorneys for Defendant
         CITY OF LOS ANGELES