MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Chief, Civil Litigation Branch (SBN 184980)
FELIX LEBRON, Deputy City Attorney (SBN 232984)
**A. PATRICIA URSEA, Deputy City Atty (SBN 221637)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br><br>           *Plaintiffs*,<br><br>       vs.<br><br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br><br>           *Defendant(s)*. | Case No.:  2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT (FED. R. CIV. PROC. 12(b)(6))**<br><br>Date:  December 2, 2019<br>Time:  1:30 p.m.<br>Ctrm:  7D<br><br>**Judge:  Hon. Dale S. Fischer**<br><br>[Filed concurrently with Request for Judicial Notice and Proposed Order] |

1    **PLEASE TAKE NOTICE** that on December 2, 2019 at 1:30 p.m., or as soon

2    thereafter as the matter may be heard in Courtroom 7D of the above titled Court,

3    located at 350 West 1st Street, Los Angeles, California, 90012, Defendant City of Los

4    Angeles ("City") will and hereby does, pursuant to the Federal Rule of Civil Procedure

5    ("F.R.Civ.P.") 12(b)(6), move for dismissal of Counts One, Three, Four, Six, and

6    Seven of the Supplemental Complaint to the First Amended Complaint (Dkt. 20,

7    "FAC") of Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamoa, Ali El-Bey, Peter

8    Diocson Jr., Marquis Ashley, James Haugabrook, Ktown For All, and Association for

9    Responsible and Equitable Public Spending (collectively "Plaintiffs").

10    The City's Motion is brought on the grounds that (1) Counts One, Three and

11   Four should be dismissed because Plaintiffs have not met their burden under *United*

12   *States v. Salerno*, 481 U.S. 739, 745 (1987); and (2) Counts Six and Seven should be

13   dismissed because of noncompliance with the Government Claims Act, governmental

14   immunities (Gov. Code §815.2(b), 820.2, 820.6, 821), and failure to state a claim.  The

15   City's Motion is based upon this Notice of Motion and Motion, the accompanying

16   Memorandum of Points and Authorities, the Request for Judicial Notice, upon all the

17   pleadings and papers that are on file in this action, and upon all oral and documentary

18   evidence that may be presented at the time of the hearing on this Motion.

19    This Motion is made following the conference of counsel pursuant to Local Rule

20   7-3, which took place on October 11, 2019.

21   Dated:   October 21, 2019         MICHAEL N. FEUER, City Attorney

22                                     KATHLEEN KENEALY, Chief Assistant City Attorney
                                       SCOTT MARCUS, Chief, Civil Litigation Branch
23                                     FELIX LEBRON, Deputy City Attorney
                                       A. PATRICIA URSEA, Deputy City Attorney
24

25                                     By:   /s/ A. Patricia Ursea

26                                           A. PATRICIA URSEA
                                             Deputy City Attorney
27                                           Attorneys for Defendant
                                             CITY OF LOS ANGELES
28

1

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ...............................................................................................1

II.  OVERVIEW OF LAMC 56.11 ......................................................................3

    A.  Purpose and Origin ....................................................................................3

    B.  2016 Amendment .......................................................................................4

    C.  LAMC 56.11 Protocols .............................................................................5

III.  LEGAL STANDARD ....................................................................................6

IV.  ARGUMENT ..................................................................................................6

A. PLAINTIFFS CANNOT ESTABLISH THAT THE "BULKY ITEM" PROVISION IS INVALID IN ALL CONCEIVABLE INSTANCES. ...........................................6

1.  Plaintiffs Cannot Show that the Bulky Item Provision Can Never Be   Validly Enforced Under the Fourth Amendment. ............................................7

    a.  Removal of Bulky Items .........................................................11

    b.  Disposal of Bulky Items .........................................................12

2.  Plaintiffs Cannot Show that the Bulky Item Provision Can Never Be Validly Enforced Under the Fourteenth Amendment. ...........................................13

B.  THE ORDINANCE IS NOT VAGUE IN ANY PART. ........................................16

    1.  The term "Bulky Item" is not vague. ..................................................17

    2.  The term "immediate threat to the health and safety" is not vague.....................18

C. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW ..............19

    1. Plaintiffs Did Not Comply With The Government Claims Act ...........................19

    2. The City and Its Employees are Immune From Liability .....................................21

    3. Plaintiff El-Bey's Bane Act Claim Fails ..............................................................22

    4. Plaintiffs Fail To Plausibly Allege Their Seventh Cause of Action......................23

    5. Haugabrook Fails To Provide Sufficient Notice of His Claims ...........................25

V.  CONCLUSION…………………………………………………………………25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v Iqbal*,
    556 U.S. 662 (2009)......................................................................................6

*Bell At. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................6, 25

*Bello v. ABA Energy Corp.*,
    121 Cal. App. 4th 301 (2004) .....................................................................10

*Cafeteria & Restaurant Workers Union v. McElroy*,
    367 U.S. 886 (1961)....................................................................................14

*Camfield v. Bd. of Tr. of Redondo Beach Unified Sch. Dist.*,
    2016 WL 7046594, at *6 (C.D. Cal. Dec. 2, 2016)....................................23

*Ceja v. Stewart*,
    97 F.3d 1246 (9th Cir. 1996) .....................................................................19

*Chandler v. Miller*,
    520 U.S. 305 (1997)......................................................................................9

*City of L.A. v. Patel*,
    135 S. Ct. 2443 (2015)..........................................................................3, 8, 9

*City of Los Angeles v. David*,
    538 U.S. 715 (2003)....................................................................................14

*City of Stockton v. Superior Court*,
    42 Cal.4th 730 (2007) .................................................................................20

*Coates v. City of Cincinnati*,
    402 U.S. 611 (1971)....................................................................................16

*Colegrove W. Co. v. City of Hollywood*,
    151 Cal. 425 (1907) .....................................................................................4

*Covelo Indian Cmty. v. Fed. Energy Regulatory Com*,
    895 F.2d 581 (9th Cir. 1990) ...............................................................15, 16

ii

*Cty. of Santa Barbara v. More*,
    175 Cal. 6 (1917) ...........................................................................................10

*Fang Lin Ai v. United States*,
    809 F.3d 503 (9th Cir. 2015) ........................................................................19

*Franceschi v. Yee*,
    887 F.3d 927 (9th Cir. 2018) ..........................................................................3

*Gluck v. Cty. of L.A.*,
    93 Cal. App. 3d 121 (1979) ..........................................................................15

*Gong v. City of Rosemead*,
    226 Cal. App. 4th 363 (2014) .......................................................................20

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)......................................................................................17

*HAGUE v. Comm. FOR Indus. Org.*,
    307 U.S. 496 (1939)......................................................................................10

*Hill v. Colorado*,
    530 U.S. 703 (2000)......................................................................................18

*In Lu v. Hulme*,
    133 F. Supp. 3d 312 (D. Mass. 2015)...........................................................14

*Inman v. Anderson*,
    294 F. Supp. 3d 907 (N.D. Cal. Feb. 27, 2018)...........................................22

*Ivey v. Bd. of Regents of Univ. of Alaska*,
    673 F.2d 266 (9th Cir. 1982) ..........................................................................6

*Katzberg v. Regents of Univ. of Cal.*,
    29 Cal. 4th 300 (2002) ....................................................................................6

*Kincaid v. City of Fresno*,
    2008 U.S. Dist. LEXIS 38532 (E.D. Cal. May 12, 2008) ...........................25

*Lanier v. City of Woodburn*,
    518 F.3d 1147 (9th Cir. 2008) ........................................................................8

*Lavan v. City of L.A.*,
    693 F.3d 1022 (9th Cir. 2012) .............................................................*passim*

*Lawrence v. City & County of San Francisco*,
   258 F. Supp. 3d 977 (N.D. Cal. 2017) .........................................................22

*Leavitt v. Jane L.*,
   518 U.S. 137 (1996) .......................................................................................7

*Lockyer v. City and County of San Francisco*,
   33 Cal. 4th 1055 (2004) ...............................................................................21

*Lone Star Sec. & Video, Inc. v. City of L.A.*,
   584 F.3d 1232 (9th Cir. 2009) .....................................................................14

*Louisiana Kovacs* v. *Cooper*,
   336 U.S. 77 (1949) .......................................................................................10

*Michigan Dep't of State Police v. Sitz*,
   496 U.S. 444 (1990) .....................................................................................13

*Morrissey v. Brewer*,
   408 U.S. 471 (1972) .....................................................................................14

*Moyer v. Tilton*,
   2008 U.S. Dist. LEXIS 12433 (E.D. Cal. Feb. 19, 2008) ...........................22

*National Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) .......................................................................................7

*New Jersey v. T.L.O.*,
   469 U.S. 325 (1985) .......................................................................................7

*North American Cold Storage Co. v. Chicago*,
   211 U.S. 306 (1908) .....................................................................................14

*Nozzi v. Hous. Auth.*,
   806 F.3d 1178 (9th Cir. 2015) .......................................................................6

*People v. Buza*,
   4 Cal. 5th 658 (2018) .....................................................................................6

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983) .........................................................................................9

*Sandoval v. City of Sonoma*, *People v. Stay*,
   19 Cal. App. 3d 166 (1971) .........................................................................24

iv

*People v. Wheeler*,
    30 Cal. App. 3d 282 (1973) ....................................................... 18

912 F. 3d 509 (9th Cir. 2018) ....................................................... 22

*Schneider v. State*,
    308 U.S. 147 (1939) ................................................................. 2

*Sibron v. New York*,
    392 U.S. 40 (1968) .................................................................. 9

*Smith v. Corp. of Wash.*,
    61 U.S. (20 How.) 135 (1858) ................................................ 2

*St. Louis v. W. Union Tel. Co.*,
    148 U.S. 92 (1893) ................................................................ 10

*Steinle v. City & County of San Francisco*,
    919 F.3d 1154 (9th Cir. 2019) ............................................... 21

*Texaco, Inc. v. Short*,
    454 U.S. 516 (1982) .............................................................. 14

*Texas v. Brown*,
    460 U.S. 730 (1983) ................................................................ 8

*Tobe v. City of Santa Ana*,
    9 Cal. 4th 1069 (1995) ............................................................ 7

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
    485 U.S. 478 (1988) .............................................................. 14

*United States v. California*,
    655 F.2d 914 (9th Cir. 1980) ................................................ 20

*United States v. Choate*,
    576 F.2d 165 (9th Cir. 1978) .................................................. 8

*United States v. Evans*,
    883 F.3d 1154 (9th Cir. 2018) ............................................... 16

*United States v. Johnson*,
    130 F.3d 1352 (9th Cir. 1997) ............................................... 17

v

*United States v. Martinez-Fuerte,*
    428 U.S. 523 (1976) ............................................................................. 7

*United States v. Mazurie,*
    419 U.S. 544 (1975) ........................................................................... 16

*United States v. Place,*
    462 U.S. 696 (1983) ............................................................................. 7

*United States v. Salerno,*
    481 U.S. 739 (1987) .................................................................*passim*

*Vanderhurst* v. *Tholcke,*
    113 Cal. 147 (1896) ...................................................................... 2, 10

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ........................................................................... 16

*Walker v. Birmingham,*
    388 U.S. 307 (1967) ........................................................................... 11

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008) ............................................................................. 7

*Williams v. Mukasey,*
    531 F.3d 1040 (9th Cir. 2008) ..................................................... 15, 16

**Statutes**

Cal. Civil Code §52.1 ................................................................................ 3

Cal. Civ. Code §655 ................................................................................. 9

Cal. Civ. Code §663 ................................................................................. 9

Cal. Civ. Code §671 ................................................................................. 9

Cal. Civil Code §2080 .............................................................. 23, 24, 25

Cal. Gov. Code §815.2 ........................................................................... 21

Cal. Gov. Code §815.6 ............................................................................. 3

Cal. Gov. Code §820.2 ........................................................................... 21

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

Cal. Gov. Code §820.6 .................................................................................21

Cal. Gov. Code §821 .................................................................................1, 21

Cal. Gov. Code §905 .............................................................................19, 20

Cal. Gov. Code §911.2 .........................................................................19, 20

Cal. Gov. Code §912.4 .................................................................................20

Cal. Gov. Code §945.4 .........................................................................19, 20

Cal. Gov. Code §37359 .................................................................................2

Los Angeles Municipal Code §56.11 .....................................................*passim*

**Federal Statutes**

First Amendment..........................................................................16, 19

Fourth Amendment .............................................................................*passim*

Fourteenth Amendment ....................................................................3, 6, 13

California Constitution Article I §7(a)............................................6

California Constitution Article I §13 ..............................................6

Fed.R.Civ.P. 12(b)(1)....................................................................1

Fed. R. Civ P. 12(b)(6)..................................................................1

Fed. R. Civ P. 8 ................................................................................25

# I. INTRODUCTION

Plaintiffs' Complaint ("FAC")[1] mounts a constitutional challenge—on both as-applied and facial bases—to Los Angeles Municipal Code section 56.11 ("LAMC 56.11" or "the Ordinance").  The Ordinance (1) regulates the volume and size of items that may be amassed on public rights of way; and (2) describes the circumstances under which the Los Angeles Bureau of Sanitation ("LASAN") may remove and/or dispose of such items, depending on their nature, size, location and other factors.  In most instances, LASAN must provide written notice before and/or after removing items, and to store such items for 90 days.  (*See* Defendants' Request for Judicial Notice, Ex. 1 (LAMC 56.11) at §§(3)(a)-(f); (5).)  If an item is contraband, poses an immediate health and safety risk, or constitutes a "Bulky Item,"[2] LASAN employees may determine, based on the circumstances, whether notice and/or storage is appropriate or feasible.  (*Id.* at §§3(f)-(i).)

Upon cursory review, the FAC may give the impression that this case is exclusively about the civil liberties of unhoused persons.  Plaintiffs are seven unhoused persons ("Individual Plaintiffs") who allege losses of their personal property, and two advocacy organizations focused on the rights of unhoused persons (collectively "Plaintiffs").[3]  The FAC describes the growing homelessness crisis in Los Angeles, claims that Defendant City of Los Angeles ("City") has not done enough address it, and contends that LAMC 56.11 deprives unhoused individuals of their rights.  *See* FAC at 1:13-6:10.  Without question, unhoused individuals storing personal belongings in the public right-of-way raises important constitutional issues, which likely will play a key role in resolving Plaintiffs' as-applied challenges.  But in the context of Plaintiffs' facial

[1] The operative complaint is the "Supplemental Complaint to the First Amended Complaint," at Dkt 20 ("FAC").

[2] As discussed below, with certain exceptions (*e.g,* tents, bicycles), a Bulky Item is one that is too large to fit into a 60-gallon container.  (LAMC 56.11(c).)

[3] The two associational plaintiffs lack Article III standing.  (See Defendant's Fed.R.Civ.P. 12(b)(1) motion, concurrently filed.)

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

challenges, which require them to show that LAMC 56.11 can **never** be constitutionally enforced in any conceivable circumstance (*United States v. Salerno*, 481 U.S. 739, 745 (1987)), the FAC's exclusive focus on unhoused individuals is far too narrow. [4]

Sidewalks serve numerous functions and implicate a myriad of individual interests. Children on field trips, persons with disabilities, mail carriers with delivery carts, free-speech demonstrators, shop owners, travelers, and the many thousands of other persons that live, work, and visit Los Angeles—all have legitimate claims to use these narrow strips of public property.  As courts have long recognized, "[t]he public is entitled to the free and unobstructed use of the entire streets and sidewalks..."  *Vanderhurst* v. *Tholcke*, 113 Cal. 147, 152 (1896).  To balance among the many, often competing uses, cities have been designated as trustees of these public spaces.  In this capacity, they have not only the power but "the *duty* to keep their communities' streets open and available for movement of people and property." *Schneider v. State*, 308 U.S. 147, 160-61 (1939) (emphasis added); *see also Smith v. Corp. of Wash.*, 61 U.S. (20 How.) 135, 146 (1858); Cal. Gov. Code §37359 ("the legislative body having control of any property owned or controlled by the city may at any time withdraw…or limit the access or use in area or time or in any other reasonable manner deemed necessary.")

LAMC 56.11 is a vehicle through which the City discharges its duty as public trustee.  The Ordinance, by its express terms, applies to *all* items left by *any* person on sidewalks and other public spaces.  Plaintiffs do not even acknowledge that the Ordinance has wide applicability, much less satisfy their burden to show that it can never be validly applied in any circumstance.  Furthermore, it not appropriate to presume, as Plaintiffs appear to, that every item left on the public right-of-way that may be subject to removal under the Ordinance is a personal possession of an unhoused person.  Indeed, Plaintiffs' own allegations demonstrate that is not the case.  Contending the City should

---

[4] Although Plaintiffs seek a declaration invalidating the Ordinance in its entirety (FAC at 58:10-12), their facial attack is limited to the Bulky Item and health and safety provisions (FAC at 49:27-28; 53:1-17; 54:10-15).

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

do more cleanups, they allege:  "Trash piles up on city sidewalks. These piles then become magnets for illegal dumping—not by residents of the encampments, but by others who take advantage of the city's divestment and leave behind their trash and waste."  FAC at 5:6-12.  Both "trash piles" and "illegal[ly] dump[ed]" objects in public spaces fall within the purview of the Ordinance.  This is but one of many conceivable applications where LAMC 56.11 can be, and is, constitutionally applied.

In light of the countless possible applications of the Ordinance and the numerous rights and interests it protects, Plaintiffs' facial challenge under the Fourth and Fourteenth Amendments (and their state counterparts) cannot succeed.  As the Supreme Court has recognized, because reasonableness requires a fact-intensive inquiry, "[w]here a statute consists of 'extraordinarily elastic categories,' it may be 'impossible to tell' whether and to what extent it deviates from the requirements of the Fourth Amendment."  *City of L.A. v. Patel*, 135 S. Ct. 2443, 2450 (2015) (quoting *Sibron v. New York*, 392 U.S. 40, 59 (1968)).  Similarly, "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context."  *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998)).  In such instances, as here, claims for facial relief "are unlikely to succeed."  *Id.*

In addition, Plaintiffs bring state law claims under Civil Code §52.1 ("Bane Act") and Government Code §815.6 ("Mandatory Statutory Duty").  These claims also fail because: (1) Plaintiffs have not complied with the Government Claims Act; (2) the City is immune; and (3) the claims are not cognizable under the alleged facts.  For these reasons and those discussed below, the Court should dismiss Counts 1, 3, 4, 6, and 7 of the FAC.

## II.  OVERVIEW OF LAMC 56.11

### A.  <u>Purpose and Origin</u>

Plaintiffs allege that LAMC 56.11 was enacted "to allow the City to seize and, in many instances, summarily destroy homeless individuals' belongings."  FAC at 7:15-18. This is the bedrock of their facial challenge.  It is also demonstrably untrue.

3

First enacted in 1963, LAMC 56.11 is rooted in a historical bargain between the City and the legal owners of sidewalks, *i.e.* adjacent land owners. *See, e.g., Colegrove W. Co. v. City of Hollywood*, 151 Cal. 425, 427, 430 (1907). The bargain was this: the land owners granted the City an easement in sidewalks; in exchange the City agreed to act as trustee and protect sidewalks for the benefit of the public. *Id.* LAMC 56.11 is one of the ways the City discharges its trustee obligations, by ensuring public sidewalks are open and safe for everyone to use. To this end, the Ordinance is now, and has always been, a law of general application. When first enacted, it provided simply: "[n]o person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk"; violations were punishable as misdemeanors. *See Lavan v. City of L.A.*, 693 F.3d 1022, 1026 (9th Cir. 2012); FAC at 15:7-9.) In 2005, a group of unhoused individuals cited for violating the Ordinance challenged its enforcement against them; the district court issued a "narrow injunction" prohibiting certain enforcement measures in Skid Row, and the Ninth Circuit affirmed. *Id.* This, along with other court rulings in related contexts, prompted the City to amend the Ordinance, first in 2015 and most recently in 2016.

## B. 2016 Amendment

The FAC targets the 2016 amendment to LAMC 56.11, as well as Protocols adopted at the same time (and subsequently amended). The amendment acknowledges the varied uses of sidewalks and the City's duty to protect the rights associated with those uses, including the rights of all persons to safe and free movement on sidewalks, and the rights of unhoused persons who dwell in such spaces to keep their personal belongings with them. (LAMC 56.11(1).) As amended, LAMC 56.11 still prohibits most items from being left in public spaces. Aside from that, it bears little resemblance to its comparatively harsh ancestor. First, recognizing that items such as sleeping bags, blankets, backpacks, clothing and medication, may be needed for survival by those who dwell in public spaces, the Ordinance now expressly permits up to 60-gallons of Personal Property to be stored in such spaces. (*Id.* at §(2)(j),(f); §3(a)-(b).)

4

Second, a violation of the Ordinance is no longer a criminal offense. (*Id.* at §10.)[5] Instead, the City transferred enforcement from the Los Angeles Police Department ("LAPD") to LASAN, and authorized LASAN employees to remove, and sometimes discard, certain items left on the public right-of-way. (*Id.* at §11.)  Subject to limited exceptions, LAMC 56.11 requires LASAN to provide pre- and post- removal notice whenever they remove Personal Property, and to store items for 90 days for owner redemption.  (*Id.* at §§(3)(a)-(f); (5).)  In three instances, only post-removal notice (along with 90-day storage) is required—when items are left: (1) in a manner that violates the Americans with Disabilities Act; (2) within 10 feet of an entrance, exit, et.; and (3) on public property with a "clearly posted closure time."  (*Id.* at §§(3)(d)-(f).)  In only two instances does the Ordinance permit the City to remove and/or discard Personal Property without notice.  Both were expressly carved out from the injunction issued in *Lavan*: contraband and items that poses an "immediate threat to the health and safety of the public." (*Id.* at §§3(g)-(h).)  *See Lavan*, 693 F.3d at 1024.

The Ordinance also prohibits "Bulky Items" from being left in public spaces. (LAMC 56.11(2)(i).)  A "Bulky Item" is one "that is too large to fit into a 60-gallon container with the lid closed," but does not include constructed tents, operational bicycles, walkers, crutches, or wheelchairs.  (*Id.* at §(2)(c).)  The Ordinance distinguishes between "Bulky Items" that are "designed to be used as a shelter," which may only be removed if pre-removal notice is given, and other Bulky Items, which LASAN employees may remove or discard without prior notice depending on their assessment of the circumstances.  (*Id.* at §3(i).)  These "Bulky Item" provisions are the primary target of Plaintiffs' facial challenge.  FAC at 49:27-28; 53:1-6; 54:10-15.

## C. LAMC 56.11 Protocols

Also in 2016, the City adopted "Los Angeles Municipal Code 56.11 Standard

---

[5] The only conduct subject to criminal penalties is willfully resisting, delaying or obstructing a City employee from removing or discarding items under the Ordinance, or refusing to comply with specified provisions. (LAMC 56.11(10):

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

Operating Protocols," which set forth the methodology and procedures for implementing and enforcing the amended Ordinance ("Protocols") (RJN, Ex. 2.)  The eleven sections of the Protocols reflect the varied instances in which the Ordinance applies, including "illegal dumping" and "Bulky Item" removal.  (*Id.* at 15; 32-35.)  The required procedures differ depending on numerous factors, including whether the item is near a homeless encampment or poses health and safety risks, and whether the mental or physical capacity of a person may affect his/her ability to comply with the Ordinance.  (*Id.* at 32-33.)

## III.  LEGAL STANDARD

A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009).  Mere "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss.  *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts may not "supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV.  ARGUMENT

### A. PLAINTIFFS CANNOT ESTABLISH THAT THE "BULKY ITEM" PROVISION IS INVALID IN ALL CONCEIVABLE INSTANCES.

Plaintiffs' facial challenge under the Fourth and Fourteenth Amendments,[6] primarily targets the Bulky Item provision.  The provision states:

> No Person shall Store any Bulky Item in a Public Area.  Without prior notice, the City may remove and may discard any Bulky Item, whether Attended or Unattended, Stored in a Public Area unless the Bulky Item is designed to be used as a shelter.  For any Bulky Item that is designed

---

[6] Plaintiffs also bring these claims under Article I, Sections 7(a) and 13 of the California Constitution.  As courts have recognized, these provisions are essentially identical in purpose and scope to their federal counterparts. *See Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1190 n.15 (9th Cir. 2015); *People v. Buza*, 4 Cal. 5th 658, 686 (2018).  But Plaintiffs are not entitled to damages under the California Constitution. *See Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 329 (2002).

to be used as a shelter but does not constitute a Tent…with pre-removal notice as specified in Subsection 4.(a), the City may remove and discard the Bulky Item, whether Attended or Unattended.  If the Bulky Item violates Subsection 3.(d)-(h)…without prior notice, the City may remove and discard the Bulky Item, whether Attended or Unattended. (LAMC 56.11(3)(i).)

In seeking to invalidate the Ordinance on its face,[7] Plaintiffs "shoulder [a] heavy burden." *Salerno*, 418 U.S. at 745.  Facial challenges are "manifestly strong medicine…employed by the court sparingly and only as a last resort." *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).  To prevail, Plaintiffs must show that the provision "is unconstitutional in all of its applications," *i.e.*, "that no set of circumstances exists under which [it] would be valid." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *see also Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1084 (1995) ("petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions") (internal citations omitted).

## 1. Plaintiffs Cannot Show that the Bulky Item Provision Can Never Be Validly Enforced Under the Fourth Amendment.

The Fourth Amendment protects individuals against unreasonable searches and seizures. *United States v. Place*, 462 U.S. 696, 70 (1983).  In evaluating a Fourth Amendment challenge, the Court must weigh the "nature and quality" of the individual's Fourth Amendment interest against the countervailing interest of the government and/or the public. *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985); *United States v. Martinez-Fuerte*, 428 U.S. 523, 555 (1976).  Here, because the City is acting in its capacity as

---

[7] As noted, although Plaintiffs challenge only certain provisions on facial grounds, they seek to invalidate the entire Ordinance.  Even if Plaintiffs met their burden, and they have not, they are not entitled to so broad a remedy, particularly because the Ordinance contains a severability provision.  (LAMC 56.11(12).)  *See Leavitt v. Jane L.*, 518 U.S. 137, 140-41 (1996).

7

public trustee, the relevant "countervailing" interests are actually those of every other individual who uses the public space. *See United States v. Choate*, 576 F.2d 165, 181-82 (9th Cir. 1978) ("[w]hen governmental action consists of protecting the constitutional rights of one group of private citizens against the competing rights [] of others of its citizens, the societal interests of each are [] weighed against the other").

Plaintiffs allege that the seizure and/or destruction of an item "based solely on its size, without a warrant or probable cause, is unreasonable…". FAC at 50:4-8. But they have not established, as they must, that the provision can *never* be reasonably applied. *Lanier v. City of Woodburn*, 518 F.3d 1147, 1150 (9th Cir. 2008) (rejecting facial attack to drug testing policy because challenger failed to explain why the policy could not be validly applied to applicants for certain types of jobs). First, the lack of a warrant does not make a seizure unreasonable. *Texas v. Brown*, 460 U.S. 730, 735 (1983) ("[I]n a wide range of diverse situations we have recognized flexible, common-sense exceptions to [the warrant] requirement.") The "ultimate standard" is "reasonableness." *See Lavan*, 693 F.3d at 1031 (stating the question as "whether the City, in seizing [Appellees'] property, acted reasonably under the Fourth Amendment.")[8]

Second, because of the fact-intensive nature of the Fourth Amendment's reasonableness inquiry and the numerous possible applications of the Bulky Item provision, Plaintiffs *cannot* meet their burden to exclude all possible constitutional applications. To be sure, facial challenges have succeeded in Fourth Amendment contexts. But unlike the provision at issue here, the target of those challenges were laws of limited applicability, in which every conceivable application could readily be imagined and the nature of the countervailing interests was clear and uniform. For example, in *Patel*, the applications in which the ordinance at issue authorized governmental action

---

[8] Likewise, it does not make sense to require probable cause in the context of a non-criminal ordinance unless the question is whether LASAN had probable cause to believe that the item at issue falls within the definition of Bulky Item. Given the objective definition provided in the Ordinance, Plaintiffs cannot plausibly establish that LASAN could never have probable cause to believe an item is "Bulky."

were narrow—the challenged ordinance permitted warrantless searches of hotel guest records. *Patel*, 135 S. Ct. at 2447. The interests to be balanced, too, were easily identifiable and unvaried: the right of hotel operators to their records versus the right of police to "conduct surprise inspections" without a warrant. *Id.* at 2446, 2455; *see, also, e.g., Chandler v. Miller*, 520 U.S. 305 (1997) (Fourth Amendment challenge to statute requiring drug testing of candidates for certain state offices).

In contrast, Plaintiffs here attack a provision that applies in a countless number of imaginable scenarios. For this reason, it is more analogous to cases like *Sibron v. New York*, 392 U.S. 40, 60 (1968), in which facial challenges failed. *Sibron* involved a Fourth Amendment challenge to a statute that authorized a stop-and-frisk of "any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or any of the offenses specified…". *Sibron*, 392 U.S. at 43. Noting that "[t]he operative categories of [the statute] are not the categories of the Fourth Amendment, and [] are susceptible of a wide variety of interpretations," the Court refused to engage in "the abstract and unproductive exercise of laying the extraordinarily elastic categories of [the statute] next to the categories of the Fourth Amendment in an effort to determine whether the two are in some sense compatible" and upheld the ordinance on its face. *Id*. at 57.

Like in *Sibron*, reasonableness here cannot be determined in a vacuum. There is, of course, no question that all individuals have a property interest in their personal property, regardless of its size. *See* Cal. Civ. Code §§ 655, 663, 671. But that does not end the inquiry. To exclude all possibly reasonable applications of the provision, the Court must be able to attribute a *weight* to the individual's property interest—and that assessment must be made in the context in which the interest arises. *See, e.g., Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) (the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue).

9

Here, the individual interest in personal property must be evaluated in the context of public rights-of-way. Moreover, it must be weighed against all possible countervailing interests, which are both significant and varied. Sidewalks implicate not only the right to free movement but many other weighty interests, including free speech rights of demonstrators, property rights of abutting landowners and merchants, and rights of persons with mobility issues. The question of how individual rights operate in the context of public rights-of-way has been the subject of litigation dating back well over a century. From these cases, a central doctrinal point has emerged—individual rights in public spaces "[are] not absolute, but relative and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order." *HAGUE v. Comm. FOR Indus. Org.,* 307 U.S. 496, 515-16 (1939); *see also Cty. of Santa Barbara v. More*, 175 Cal. 6, 12 (1917) (both owner of land adjacent to sidewalk and public have "a limited, not an unlimited, right of property" in the public space); *Bello v. ABA Energy Corp.,* 121 Cal. App. 4th 301, 315-16 (2004) ("a proposed use of a public right-of-way should: (1) serve as a means, or be incident to a means, for the transport or transmission of people, commodities…or serve public safety; (2) … not interfere with the public's use rights; and (3) not unduly endanger or interfere with use of the abutting property") (internal citations omitted).

Consistent with these principles, courts have been less willing to ascribe significant weight to an exercise of rights that tend to obstruct public rights-of-way. *See, e.g., St. Louis v. W. Union Tel. Co*., 148 U.S. 92, 98-99 (1893) (ordinary uses "are temporary and shifting" but telegraph poles are "permanent and exclusive"); *Vanderhurst ,*113 Cal. at 150-51 (owner's large trees "necessitate the public travel passing along the narrow edges or spaces left on either side thereof, instead of having the enjoyment of the entire width and surface of the walks to which it is entitled"). Courts also consistently have recognized the strong interest of local governments in regulating the use of public places. *See, e.g., Cox* v. *Louisiana Kovacs* v. *Cooper*, 336 U.S. 77 (1949). Indeed, as the Supreme Court has observed: "The authority of a municipality to impose regulations in order to assure the

safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend." *Walker v. Birmingham*, 388 U.S. 307, 315-16 (1967).

In light of these principles, Plaintiffs cannot show that in all circumstances, an individual's right to keep Bulky Items in public places will outweigh any conceivable countervailing interests in using that space. The reasonableness of the City's action in removing (or not), and storing (or not), cannot be determined in a vacuum.

### a. Removal of Bulky Items

To state an obvious point, an item too large to fit into a 60-gallon container carries a greater potential to impede other legitimate uses of sidewalks. And the more Bulky Items that are left unremoved on sidewalks, the less those sidewalks can serve other purposes. As the public trustee of these spaces, the City cannot lawfully cede the use of sidewalks to one group to the exclusion of all others. Thus, there is a greater public interest in the removal of Bulky Items from the public right of way than smaller items. In addition, in considering the countervailing interest of an individual to leave items in public spaces, it must be emphasized what "Bulky Items" are not: they are not medicine, backpacks, blankets, or similar "necessities" the Court considered in *Lavan*. (LAMC 56.11(2)(c);(j).) *See Lavan*, 693 F.3d at 1025. Nor are they tents, bicycles, wheelchairs, walkers or crutches. (LAMC 56.11(2)(c).) Other than that, there is little that can be said about the nature of "Bulky Items" in the abstract. They can be couches, mattresses, refrigerators, washing machines, automobile parts, building materials, or thousands of other items. They can be functional or broken, contaminated or clean. And they can be found in a countless number of locations: narrow or wide sidewalks, heavily trafficked or seldom used paths, industrial or residential areas, near or far from homeless encampments, and so on.

Against that backdrop, neither Plaintiffs nor the Court can rule out the possibility that it could be constitutionally permissible in some instances to remove a Bulky Item

11

from a public space.  Take, for example, a ladder that is left unattended on a sidewalk.

Depending on the circumstance, one could argue there is a possibility that it was left there

earlier that day after falling off a truck and the owner intends to return for it.  Under that

framing, removal may be unreasonable.  But consider additional facts and the balance of

interests may shift.  If the sidewalk is narrow with high pedestrian use, the public's

interest in unimpeded movement may outweigh the owner's interest in leaving it on the

sidewalk.  If the sidewalk abuts a school and the ladder may be an attractive nuisance to

children on their way home, the reasonableness inquiry shifts again. Even in an instance

where the owner was present, the facts will dictate whether removal is reasonable.  If the

owner refuses to move a ladder that is likely to obstruct free passage by pedestrians, it

may be reasonable for the City to remove it.  If the ladder is on a wide sidewalk in an

industrial area, it may not be reasonable to insist on immediate removal.  The

determination simply cannot be made in the absence of facts.

### b.  Disposal of Bulky Items

For the same reason, Plaintiffs cannot show that destruction of a Bulky Item seized

from the public right of way is unreasonable in all circumstances.  As a practical matter,

the City simply does not have the space to store all Bulky Items it removes from public

places, particularly given the Ordinance's mandate for storage of most other Personal

Property items, including tents, bicycles and wheelchairs.  Furthermore, many Bulky

Items cannot be safely stored.  If LASAN removes a refrigerator leaking coolant, or a

couch covered with rat feces or an unknown liquid, whether those items were attended at

the time of removal or not, the City simply cannot be expected to store such items and risk

contaminating other items in its storage facilities.[9]

---

[9] Also, it is beyond question that not all Bulky Items left in public are someone's
property.  In some instances, abandonment is clear (*e.g.*, an eye-witness report of illegal
dumping), and of course, the Fourth Amendment would not apply.  In other cases, City
employees must use their judgment, including reasonable efforts to identify an owner, to
determine if a Bulky Item is protected personal property.

The point is simply this: whether the item is a rusted ladder, stained mattress, broken television, or any number of other imaginable Bulky Items found in the public right of way, it cannot be said, absent specific facts, that it will *always* be unreasonable for the City to discard such items instead of storing them.  The Ordinance grants LASAN employees discretion (guided by the Protocols) to determine, based on the particular circumstances, whether and when a particular item should be removed from a public space, and whether and when it should be discarded.  In the abstract framework of a facial challenge, this discretion is properly left to the City.  *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 453 (1990) ("[The Fourth Amendment] was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger….  [F]or purposes of Fourth Amendment analysis, the choice among reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources…").[10]

### 2.   Plaintiffs Cannot Show that the Bulky Item Provision Can Never Be Validly Enforced Under the Fourteenth Amendment.

Plaintiffs' procedural due process facial challenge likewise fails.  Plaintiffs contend that the Bulky Item provision violates procedural due process because it "does not require the City to provide any notice or opportunity to be heard before or after the items are seized," and "allows the City to permanently deprive Plaintiffs of their property by immediately destroying their belongings without any notice or opportunity to be heard."  FAC at 54:10-15.  Again, Plaintiffs ignore the *Salerno* standard: the question is not whether the Ordinance "allows the City to permanently deprive *Plaintiffs* of their property" (*id.*; emphasis added); rather, to prevail they must show that the Bulky Item

---

[10] Plaintiffs also allege that LAMC 56.11(10)(d) is facially unconstitutional because it allows arrest and prosecution of anyone who interferes with a seizure or destruction of a Bulky Item.  (FAC at 50:2-28.)  That claim, of course, is contingent on a showing that the Bulky Item provision can never be constitutionally applied.  *See* Patel, 738 F.3d at 2451 n.1.

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

provision can *never* be enforced without violating procedural due process.  Plaintiffs have not, and cannot, meet that burden.

Similar to the Fourth Amendment's "reasonableness" inquiry, the requirements imposed by the due process clause are flexible and variable dependent upon the particular situation being examined.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961). Where the balancing of interests weighs in favor of governmental action, the Court has upheld immediate deprivation without a hearing.  *See, e.g., North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 320-21 (1908); *see also e.g., In Lu v. Hulme*, 133 F. Supp. 3d 312, 316 (D. Mass. 2015) (holding that informal conversation explaining exclusion from library sufficed: "[Plaintiff's] right has no lesser, or greater, significance than that of other residents.  Accordingly, his right to reasonable access to the Library cannot be expanded to such an extent that it denies others the same guarantee.")

Furthermore, where the government "has enacted a rule of law uniformly affecting all citizens that establishes the circumstances in which a property interest will lapse through the inaction of its owner," the Court has held that no additional, individualized notice is required.  *Texaco, Inc. v. Short*, 454 U.S. 516, 537 (1982); *see also Lone Star Sec. & Video, Inc. v. City of L.A.*, 584 F.3d 1232, 1237 (9th Cir. 2009) ("A legislature generally provides this level of notice simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." (Citation omitted).  "The focus is on the reasonableness of the balance, and…whether a particular method of notice is reasonable depends on the particular circumstances. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988).

Also important to the inquiry are the administrative burdens associated with the particular circumstances.  As the Court noted in *City of Los Angeles v. David,* 538 U.S. 715, 719 (2003), a pre-tow hearing "is impossible if the city is to be able to enforce the parking rules."  Similarly, the Ninth Circuit has observed that "[t]o require…that the government provide for actual notice to reasonably ascertainable interested persons is one thing.  To require…that the government provide for actual notice to such individuals prior to every proceeding that *might* affect their interests is quite another thing, a hopelessly burdensome standard with which an active agency [] could not hope to comply." *Covelo Indian Cmty. v. Fed. Energy Regulatory Com,* 895 F.2d 581, 588 (9th Cir. 1990).  In evaluating administrative burdens, courts have also considered the continuing nature of the issues that are the subject of enforcement:  "Of paramount importance here is the fact that the violations sought to be controlled are of a *continuing* nature and the impound provisions are necessary to render effective enforcement.  By reason of the *continuing* nature of any violations to require the full panoply of due process requirements in the classic sense would, as a practical matter, render an important aspect of the enforcement provisions ineffectual.  *Gluck v. Cty. of L.A.*, 93 Cal. App. 3d 121, 147 (1979); *see also Williams v. Mukasey*, 531 F.3d 1040, 1042-43 (9th Cir. 2008) ("We recognize the practical difficulties and costs that would be attendant on frequent investigations into the status of great numbers of beneficiaries[…] and we have no doubt that such impracticable and extended searches are not required in the name of due process.[. . .] These are practical matters in which we should be reluctant to disturb the judgment of the state authorities.").

Here, Plaintiffs have not established that the notice provided by the Ordinance will never satisfy due process under any of the countless circumstances under which the Bulky Item provision can conceivably operate.  As discussed below in Section B, the statute itself provides adequate notice that Bulky Items may not be stored in public spaces and may be removed and/or discarded by the City.  Moreover, as noted above, for many items left in public spaces, it is not always readily ascertainable whether they belong to someone

15

or not.  According to Plaintiffs' own allegations, in 2018 the City collected "476 tons of 'debris,' which included Bulky Items."  FAC at 29:1-8.  These numbers, which only reflect items removed from encampments (*id.*) and thus do not account for all items the City removed from public rights-of-way, underscore the impracticality of Plaintiffs' demands.  The Due Process clause does not require City employees to search for possible owners of every couch, file cabinet, refrigerator, or car part they encounter in a public space.  *See Covelo Indian Cmty.,* 895 F.2d at 588; *Williams,* 531 at 1042-43.  Nor does it require LASAN to litter the City with notices on the off chance an item that appears to have been illegally dumped may in fact be someone's personal property.

Similarly, Plaintiffs cannot rule out the possibility that it may be reasonable to dispose of a Bulky Item without providing individualized notice.  Again, the facts will dictate the result.  For example, if pre-removal notice was provided, then due process may not require an additional pre-destruction notice.  *See, e.g., Lavan*, 693 F.3d at 1032.  Similarly, if a Bulky Item was removed in the presence of a purported owner, that person likewise can avail him or herself of available state law remedies. *See id.*  Because the particular process due will depend on the nature of the item and the circumstances under which it was removed and/or discarded, Plaintiffs' facial challenge fails as a matter of law.

### B.  THE ORDINANCE IS NOT VAGUE IN ANY PART.

Plaintiffs' vagueness challenge targets two terms: "Bulky Items" and "immediate threat to the health and safety of the public."  FAC at 53:1-17.  As with all facial challenges, to prevail Plaintiffs must show that the challenged provisions are unconstitutionally vague in all applications.  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 (1982).  An ordinance is unconstitutionally vague if people "of common intelligence must necessarily guess at its meaning."  *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).  Where, as here, a vagueness challenge does not involve First Amendment freedoms, "it must be examined in light of the facts at hand."  *United States v. Mazurie*, 419 U.S. 544, 550 (1975)*; United States v. Evans*, 883 F.3d 1154, 1165-66 (9th Cir. 2018).  Here, Plaintiffs have neither alleged nor pled facts to

show that the challenged terms will be vague in all instances.  Moreover, the terms are not vague.

### 1.  The term "Bulky Item" is not vague.

Although "we can never expect mathematical certainty from our language," (*Grayned v. City of Rockford,* 408 U.S. 104, 110 (1972)), the definition of "Bulky Item" comes close.  The Ordinance defines the term with an objective standard: "an item too large to fit into a 60-gallon container with the lid closed," followed by a list of examples: "a shed, structure, mattress, couch, chair, other furniture or appliance." (LAMC 56.11(2)(c).)  The Ordinance also explains what is *not* bulky: "a constructed Tent, operational bicycle or operational walker, crutch or wheelchair."  (*Id.*)  Finally, it clarifies that "[a] container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property shall not in itself be considered a Bulky Item."  (*Id.*) Plaintiffs fault the definition for not specifying: (1) "what 'container' is contemplated"; (2) "what makes a bicycle, walker, crutch, or wheelchair operational"; or (3) "what constitutes a 'constructed' tent."  (FAC at 17:19-18:2.)  These cavils do not carry Plaintiffs' burden.

As an initial matter, Plaintiffs' claim fails because "[a] vagueness challenge…must show that the law is vague as applied to the facts of the case at hand."  *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997).  The FAC does not make this showing.  It identifies six "Bulky Items" that were allegedly seized: a dog kennel (FAC at 46:27-47:7), two homemade carts (*id.* at 48:4-6; 17-23), a "small plastic lawn chair" (*id.* at 44:23-25), a "dining room chair" (*id.*); and some unidentified items "found on the street" that were used to "prop up" a canvas tied to a fence (*id.* at 21-16).  But there are no allegations about the sizes, shapes, or measurements of these items.[11]  Moreover, a person of ordinary intelligence should have no trouble determining, at least in the vast majority of cases,

---

[11] And although the FAC alleges seizures of tents, it does not allege that they were seized as a "Bulky Item."  Constructed tents are, by definition, not "Bulky Items." (LAMC 56.11(2)(c).)

17

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

whether an item "is too large to fit into a 60-gallon container with the lid closed." (LAMC 56.11(2)(c).)  Indeed, it is difficult to imagine what further description of the "container" could add more clarity.

Similarly, in at least most instances, it will not be difficult to determine whether a bicycle is "operational" or a tent is "constructed."  Both terms plainly refer to the functionality of the items they modify.  A bicycle frame that is missing handlebars, peddles or wheels (often seen at "chop shops") cannot be operated as a bicycle.  And when the term "constructed" is used in reference to a tent, there can be no real question as to its meaning either.  By their very nature, tents exist in only two states: constructed or deconstructed.  Only in the former state can they serve their intended function.  Even if there may be questions in some hypothetical scenarios as to the application of these terms, it is clear what the Ordinance "as a whole prohibits . . . in the vast majority of its intended applications."  *Hill v. Colorado*, 530 U.S. 703 (2000) (quotations and citations omitted).  That is all due process requires.

## 2. The term "immediate threat to the health and safety of the public" is not vague.

Plaintiffs' vagueness challenge to the phrase "immediate threat to the health and safety of the public" fails for similar reasons.  First, Plaintiffs have (again) not shown that the term is unconstitutionally vague in every circumstance.  One need only imagine a hoard of hypodermic needles on the sidewalk to recognize that Plaintiffs can never meet that burden.  Moreover, addressing threats to public health and safety has long been recognized as a classic governmental function properly left to a city's discretion.  *See, e.g., People v. Wheeler*, 30 Cal. App. 3d 282, 296 (1973) (holding that the phrase "until the property is determined [. . .] not to be a public health hazard" is not void for vagueness.)  Indeed, in issuing the *Lavan* injunction, the Court used precisely the same language to carve out an exception.  *Lavan*, 693 F.3d at 1022 ("Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days [is enjoined].")

18

Moreover, "exactness can be achieved not just on the face of the statute, but also through limiting constructions given to the statute by the state court or enforcement agency." *See Ceja v. Stewart*, 97 F.3d 1246, 1249 (9th Cir. 1996). Here, the City adopted Procedure No. 7 in the Protocols which provides detailed guidance as to the kinds of items that may pose a health or safety threat and how such threats should be assessed. Procedure No. 7 explains that "[m]aterials are considered to be health and safety hazards when there is statistically significant evidence based on at least one study conducted in accordance with established scientific principles that acute or chronic health effects may occur in exposed persons." (RJN, Ex. 2 at 29.) The Health Hazards Sheet attached as Appendix 3 to the Protocols further refines this definition by listing specific categories of materials that may pose such a hazard, including biohazards such as human sanitary waste, toxins such as pesticides, and reactives such as chlorine and explosives. (*Id.* at 47-49.)

Here, Plaintiffs cannot demonstrate that "immediate threat to the health and safety of the public" is "so vague and indefinite as really to be no rule or standard at all." *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015). Indeed, Plaintiffs do not so contend; rather, they object that the Protocols are "so broad[] as to render the phrase meaningless." FAC at 53:12-16. But this is the hallmark of an overbreadth, not vagueness, challenge, which has no applicability outside the First Amendment context. *See Salerno*, 481 U.S. at 745 ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."). Plaintiffs' due process vagueness claim should be dismissed.

## C. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### 1. Plaintiffs Did Not Comply With The Government Claims Act

Under the Government Claims Act ("Act"), claims for "money or damages" against a public entity, such as those asserted here, cannot proceed unless a written claim was *first* timely presented to the government, and the claim was either granted or rejected. Cal. Gov. Code §§ 905, 911.2, 945.4. If this condition precedent is not

19

satisfied, all claims for money or damages are barred. *See United States v. California*, 655 F.2d 914, 920 (9th Cir. 1980); *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014). Strict compliance with the Act's procedural requirements is mandatory, and "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738 (2007); *see also Gong*, 226 Cal. App. 4th at 374.

Here, Plaintiffs' claims are subject to the Act because they seek monetary damages "for the loss of Plaintiffs' property, the violation of their constitutional and statutory rights; and for pain and suffering resulting from the unlawful conduct of Defendants." FAC at 58:20-22. Therefore, prior to filing their lawsuit, Plaintiffs were required to submit timely claims to the City, and wait until the City acted upon those claims. Cal. Gov. Code §§ 905, 911.2, 945.4. Yet, it is plain from the face of the FAC that all but one claim were submitted *after* Plaintiffs initiated this lawsuit on July 18, 2019. According to the FAC, Garcia submitted claims on July 26, 2019 and September 5, 2019 (FAC 37:15-17); Zepeda, Zamora, Haugabrook, Diocson, and Ashley all submitted claims on August 23, 2019 (FAC at 41:1-3, 46:13-15, 47:22-24, 49:16-18); and El-Bey submitted claims on July 9, 2019 and September 13, 2019 (FAC at 43:20-22). All of the claims that were not timely submitted prior to initiation of the lawsuit are barred, and should be dismissed. To the extent the associational plaintiffs seek damages, those claims are barred since no associational plaintiff alleges that it, or any of its members, submitted a claim.

Even the single claim submitted prior to the lawsuit on behalf of Plaintiff El-Bey did not comply with the Act because the lawsuit was filed before the City had the opportunity to grant or reject the claim. *See* Cal. Gov. Code § 912.4 (providing City 45 days to respond to claim); Cal. Gov. Code § 945.4 ("No suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented … until a written claim therefor has been presented and acted upon … or has been deemed rejected."). El-Bey presented one claim on July 9, 2019, just nine days before the lawsuit was filed. (FAC at 43:20-21.) Since the lawsuit was initiated well

before the City's 45-day window to investigate and respond to El-Bey's claim had closed, this claim also fails to comply with the Act and must be dismissed. Plaintiffs' state law claims for damages are therefore barred and should be dismissed without leave to amend.

### 2. The City And Its Employees Are Immune From Liability

Plaintiffs' state law claims are also precluded by immunities afforded to the City and its employees. Cal. Gov. Code §§ 815.2(b), 820.2, 820.6, 821. Where, as here, it is apparent from the face of a complaint that immunities apply, it is prudent to resolve that issue at the pleading stage. *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1162 (9th Cir. 2019) (claims properly dismissed on immunity grounds, noting "courts routinely answer questions of immunity on a motion to dismiss.").

The City and its employees are immune from liability arising from "any act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code §§ 815.2, 820.2. An act is "discretionary" when it requires judgment or choice and "a conscious balancing of risks and advantages," as opposed to a purely operational or ministerial function. (*See Steinle*, 919 F.3d at 1161.) Plaintiffs' claims are premised on discretionary conduct by City employees in implementing policies to enforce LAMC 56.11, determinations regarding whether items pose immediate health and safety risks, decisions whether to give individuals more time to move belongings, and determinations regarding what constitutes a "bulky item," which Plaintiffs acknowledge are "based solely on the individual sanitation worker's judgment and perception of item's size." FAC at 18:9-14, 25:19-21; 26:16-21, 28:20-22. Each of those actions by the City's employees requires careful consideration of applicable laws and regulations, balancing of competing interests, and deliberation and weighing of options–precisely the type of conduct protected by discretionary immunity.

Plaintiffs' state law claims are also barred by immunity afforded to government employees who act in good faith and without malice in enforcing laws, even where those laws are invalid. *See* Cal. Gov. Code § 820.6; *see also Lockyer v. City and County of San*

DEFENDANT'S MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT

*Francisco*, 33 Cal. 4th 1055, 1098 (2004) (government officials could not incur liability for declining to issue marriage licenses consistent with marriage statutes prior to judicial ruling that the statutes were unconstitutional).  Here, the alleged conduct giving rise to Plaintiffs' claims is entitled to immunity because it was carried out by City employees pursuant to LAMC 56.11, and there are no allegations that the City did not act in good faith under the apparent authority of LAMC 56.11.  Indeed, the City's employees "could not have been expected to second-guess [the provision] by engaging in a constitutional analysis to predict whether a court would uphold it."  *See Moyer v. Tilton*, 2008 U.S. Dist. LEXIS 12433, at *28-29 (E.D. Cal. Feb. 19, 2008) (granting motion to dismiss on immunity grounds).

### 3.  Plaintiff El-Bey's Bane Act Claim Fails

In order to state a Bane Act claim, a plaintiff must allege: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion. *See Lawrence v. City & County of San Francisco*, 258 F. Supp. 3d 977, 995 (N.D. Cal. 2017).  Additionally, a plaintiff must show that a defendant had the specific intent to violate a protected right.  *See Sandoval v. City of Sonoma*, 912 F. 3d 509, 520 (9th Cir. 2018).  The specific intent inquiry requires a two-step showing: first, that "the right at issue [is] clearly delineated and plainly applicable under the circumstances of the case"; and second, that "the defendant committed the act with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right."  *Sandoval*, 912 F. 3d at 520.  A Bane Act claim unsupported by facts establishing the requisite specific intent should be dismissed.  *See Inman v. Anderson*, 294 F. Supp. 3d 907, 931-32 (N.D. Cal. Feb. 27, 2018) (holding that conclusory allegations were insufficient to show specific intent for Bane Act claim).

Here, the FAC does not allege facts establishing that the officer who allegedly "threatened Mr. El-Bey with arrest" (FAC at 42:9) acted with the specific purpose of depriving Plaintiff of any constitutional right.  Instead, the FAC asserts only a boilerplate

sentence regarding intent: "[t]he City's agents and employees…acted with disregard for Plaintiff's rights, with the knowledge that these actions were unreasonable and violated Plaintiff's constitutional rights, and with the intent to violate Plaintiff's rights."  FAC at 56:25-28.  Such a conclusory statement without supporting facts is insufficient, particularly in light of the circumstances as pled.  What is most striking is what is *not* alleged –that the officer neither seized nor destroyed Plaintiff's belongings, nor that the officer knew that any of Plaintiff's items would be destroyed, nor even that the officer arrested Plaintiff.  Rather, the FAC alleges that the officer who "threatened Mr. El-Bey with arrest" gave Plaintiff time to collect his belongings before informing him that he could be arrested if he did not move his belongings in the allotted time.  FAC at 41:21-23, 42:4-9.  Simply stating (truthfully) that there could be legal consequences for Plaintiff resisting, delaying, or obstructing a City employee in violation of LAMC 56.11(10) – without more – cannot amount to a threat sufficient to support a Bane Act claim.  *See Camfield v. Bd. of Tr. of Redondo Beach Unified Sch. Dist.*, 2016 WL 7046594, at *6 (C.D. Cal. Dec. 2, 2016) (granting motion to dismiss Bane Act claim where defendants merely "plainly and truthfully stated that there could be legal consequences if Plaintiffs did not bring their daughter to school.").  The Bane Act claim should be dismissed.

### 4.  Plaintiffs Fail To Plausibly Allege Their Seventh Cause of Action

Plaintiffs' final cause of action fails because Plaintiffs do not allege sufficient facts to establish that the property at issue was "lost" within the meaning of Cal. Civil Code Section 2080.  Plaintiffs devote just 4 paragraphs at the end of their 58-page complaint to their seventh claim.  FAC 57:14-58:6.  Those paragraphs merely offer Plaintiffs' characterization of Section 2080 *et seq.*, and conclusory statements regarding the City's alleged violation of that statute, without tying them to any factual allegations identifying a particular plaintiff to whom this claim applies or any specific property that was allegedly "lost."  Plaintiffs do not even cite the specific provision they contend was violated, but rather vaguely allege that "[t]he City's policies, practices, and conduct challenged herein

violated California Civil Code Section 2080 *et seq.*"[12] *Id.* It is impossible to glean from these threadbare allegations which provision(s) were allegedly violated, and how.

Moreover, Section 2080 *et seq.* is a finder's statute that addresses the rights and obligations of a finder of "lost" property. In their attempt to broaden the statute's scope, Plaintiffs neglect to allege facts establishing that any of their property was "lost" within the meaning of Section 2080, which excludes items that the owner has no intention of parting ways with and items the whereabouts of which are known to the owner with at least reasonable certainty. *See People v. Stay*, 19 Cal. App. 3d 166, 172-174 (1971) (holding that shopping carts left by customers outside the physical custody of markets were not "lost" under Section 2080 where markets "had no intention of parting with the carts" and knew with reasonable certainty where they were located). The gravamen of the FAC is that Plaintiffs intentionally placed their property at precise, known locations and did not intend to part ways with it prior to the cleanups, *i.e.*, it was not "lost." Nor did any property become converted into "lost" property when it was seized during a cleanup.[13]

---

[12] Plaintiffs gloss over the statute's distinct requirements applicable to different scenarios, including different procedures for items worth different values, and different timeframes for safekeeping. *See, e.g.,* Cal. Civ. Code §§ 2080.1 (duties and rights of a finder of property valued at $100 or more); 2080.3 (duties and rights of a finder of property valued at $250 or more); 2080.10 (procedures when a public agency obtains possession of personal property for temporary safekeeping, including retrieval within 60 days).

[13] Plaintiffs are likely seeking to seize on a reference to Section 2080 in *Lavan*, 797 F. Supp. 2d at 1016, which mentioned in dicta – without citing to *People v. Stay*, or providing any analysis of the meaning of "lost" – that a prior version of "LAMC § 56.11, as applied, conflict[ed] with California Civil Code § 2080" and that "immediately destroying the property rather than holding it pursuant to Cal. Civ. Code § 2080, turns what could be an otherwise lawful seizure into an unlawful one by forever depriving an owner of his or her interests in possessing the property without recourse, in violation of §2080." *Lavan*, 693 F.3d at 1016. The Ninth Circuit, however, has not ruled on this issue, and at least one other district court has questioned the applicability of Section 2080 to property that was seized and destroyed by a city, specifically questioning whether such property "could have been considered lost or saved by someone" within the meaning of Section 2080. See *Kincaid v. City of Fresno*, 2008 U.S. Dist. LEXIS 38532, at *37 (E.D. Cal. May 12, 2008).

While Plaintiffs have other mechanisms to challenge the City's conduct (which they are pursuing in this action), their allegations are insufficient to bring their claims within the ambit of Section 2080.

### 5. Haugabrook Fails To Provide Sufficient Notice of His Claims

The FAC fails to provide "fair notice" to the City under Rule 8 with respect to Plaintiff Haugabrook' claims.  In order to satisfy their pleading burden, Plaintiffs must allege enough facts to provide the City with "fair notice of what the…claim is and the grounds upon which it rests."  *See Twombly*, 550 U.S. at 555.  Basic, material aspects of Haugabrook's claims, including the date and location of the alleged incident, lack such specificity that the City is unable to investigate and defend itself against those claims.  The FAC merely alleges that it was "[i]n or about March 2019" when "LA Sanitation and LAPD came to Mr. Haugabrook's tent to conduct a rapid response."  FAC at 10:15-16, 44:10-11.  The only allegation relating to Haugabrook's whereabouts is a reference to him staying somewhere "on Figueroa Street between 53rd Street and 52nd Place" "[f]or the past four to six months."  FAC at 44:1-2.  This does not give notice of Haugabrook's location when the incident giving rise to his claims allegedly occurred in or about March 2019, which is more than six months ago.  Plaintiff Haugabrook's claims should be dismissed for failure to allege sufficient facts to satisfy his pleading burden.

## V. CONCLUSION

For the reasons stated above, the First, Third, Fourth, Sixth and Seventh Causes of Action in the FAC should be dismissed.

Dated:   October 21, 2019

MICHAEL N. FEUER, City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
FELIX LEBRON, Deputy City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By:   /s/ A. Patricia Ursea
     A. PATRICIA URSEA
     Deputy City Attorney
     Attorneys for Defendant
     CITY OF LOS ANGELES

25