1  Shayla Myers (SBN 264054)
   Romy Ganschow (SBN 320294)
2  LEGAL AID FOUNDATION OF LOS ANGELES
   7000 South Broadway
3  Los Angeles, CA  90003
   Telephone:  (213) 640-3983
4  Email:  smyers@lafla.org
              rganschow@lafla.org
5
   *Attorneys for Gladys Zepeda, Miriam Zamora,*
6  *Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
   *Marquis Ashley, and Ktown for All*
7
   *Additional Attorneys on Next Page*
8

9                    **UNITED STATES DISTRICT COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11  JANET GARCIA, GLADYS            )   CASE NO. 2:19-cv-06182-DSF-PLA
    ZEPEDA, MIRIAM ZAMORA, ALI      )
12  EL-BEY, PETER DIOCSON JR,       )   [Assigned to Judge Dale S. Fischer]
    MARQUIS ASHLEY, JAMES           )
13  HAUGABROOK, individuals,        )   **PLAINTIFFS' OPPOSITION**
    KTOWN FOR ALL, an               )   **TO DEFENDANT CITY OF**
14  unincorporated association;     )   **LOS ANGELES' MOTION TO**
    ASSOCIATION FOR                 )   **DISMISS SUPPLEMENTAL**
15  RESPONSIBLE AND EQUITABLE       )   **COMPLAINT TO THE FIRST**
    PUBLIC SPENDING, an             )   **AMENDED COMPLAINT**
16  unincorporated association,     )   **(FED. R. CIV. PROC. 12(b)(1))**
                                    )
17              Plaintiffs,         )
                                    )   Complaint Filed Date:  July 18, 2019
18       v.                         )
                                    )   Judge:        Hon. Dale S. Fischer
19  CITY OF LOS ANGELES, a          )   Hearing Date: December 2, 2019
    municipal entity; DOES 1-7,     )   Time:         1:30 p.m.
20                                  )   Courtroom:    7D
              Defendants.           )
21                                  )
22
23
24
25
26
27
28

Catherine Sweetser (SBN 271142)
Kristina Harootun (SBN 308718)
SCHONBRUN SEPLOW HARRIS
& HOFFMAN LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone:  (310) 396-0731
Email:  csweetser@sshhlaw.com
            kharootun@sshhlaw.com

*Attorneys for Plaintiffs*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone:  (213) 680 8400
Email:  benjamin.herbert@kirkland.com
            william.smith@kirkland.com

*Attorneys for Ktown for All*

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION.................................................................................................1

II.  RELEVANT FACTUAL BACKGROUND........................................................2

    a.  LAMC 56.11 ...............................................................................................2

    b.  Enforcement of LAMC 56.11.....................................................................3

    c.  Organizational Plaintiffs ............................................................................5

        i.  Ktown for All.....................................................................................5

        ii.  Plaintiff Association for Responsible Public Spending ...................6

III.  LEGAL STANDARD ........................................................................................6

IV.  ARGUMENT .....................................................................................................7

    a.  Ktown for All Has Standing to Challenge the Unlawful Practices and Unlawful Ordinance ............................................................................7

        i.  Ktown for All Has Adequately Alleged Frustration of Mission and Diversion of Resources, Giving It Standing in its Own Right.....................................................................................7

        ii.  Ktown for All Has Associational Standing on Behalf of its Members .....................................................................................12

    b.  AREPS Has Municipal Taxpayer Standing ..............................................16

V.  CONCLUSION ................................................................................................19

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S MOTION TO
DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

4

5

*Airline Serv. Providers Ass'n v. Los Angeles World Airports*,
   873 F.3d 1074 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 2740 (2019) ..................... 15

6

7

*Alaska Fish & Wildlife Fed'n v. Dunkle*,
   829 F.2d 933 (9th Cir. 1987) ................................................................................. 15

8

9

*Allen v. Wright*,
   468 U.S. 737 (1984) .............................................................................................. 18

10

*Am. Diabetes Assoc. v. U.S. Dept. of the Army*,
   938 F.3d 1147 (9th Cir. 2019) ................................................................................. 7

11

12

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
   223 F. Supp. 3d 1008 (C.D. Cal. 2016) .................................................................. 8

13

14

*Arizona Christian School Tuition Org. v. Winn*,
   563 U.S. 125 (2011) .............................................................................................. 16

15

16

*Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ........................................................................ 12, 15

17

18

*Barnes–Wallace v. City of San Diego*,
   530 F.3d 776 (9th Cir. 2008) ................................................................................ 17

19

20

*Cammack v. Waihee*,
   932 F.2d 765 (9th Cir. 1991) .......................................................................... 17, 18

21

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001) ................................................................................ 18

22

23

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................. 11

24

25

*Columbia Basin Apartment Ass'n v. City of Pasco*,
   268 F.3d 791 (9th Cir. 2001) ................................................................................ 13

26

27

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) (en banc) ................................................................ 7

28

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Daniel v. Cty. of Santa Barbara*,
    288 F.3d 375 (9th Cir. 2002) ................................................................... 6

*Doremus v. Bd. of Ed. of Borough of Hawthorne*,
    342 U.S. 429 (1952).................................................................... 16, 17

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
    959 F.2d 742 (9th Cir. 1991) ...................................................... 8

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
    666 F.3d 1216 (9th Cir. 2012) .................................................... 7

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ...................................................... 7

*Garris v. City of Los Angeles*,
    No. CV 17-1452 MWF (EX), 2017 WL 10543666 (C.D. Cal. Nov. 7,
    2017) ...................................................................... 16, 18

*Hunt v. Wash. State. Apple Adver. Comm'n.*,
    432 U.S. 333 (1977)........................................... 12, 13, 14, 15

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) .......................................... 8, 10

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2011) ......................................... 2

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ......................................... 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................... 6, 14

*Monell v. Dep't of Soc. Servs. of NY*,
    436 U.S. 658 (1978)........................................................ 14

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015) ......................................... 9, 10

*Oregon Prescription Drug Monitoring Program v. U.S. Enf't Admin.*,
    860 F.3d 1228 (9th Cir. 2017) ......................................... 16

*Oregon v. Legal Servs. Corp.*,
 552 F.3d 965 (9th Cir. 2009) .................................................................. 14

*Pride v. Correa*,
 719 F.3d 1130 (9th Cir. 2013) ................................................................. 7

*Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)......................................................................... 8, 11

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004) .................................................................. 6

*Santiago v. City of Los Angeles*,
 No. CV 15-08444-BRO (EX), 2016 WL 7176694 (C.D. Cal. Nov. 17,
 2016) ................................................................................................ 13, 16

*Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*,
 641 F.3d 197 (6th Cir. 2011) .................................................................. 17

*Smith v. Pac. Props & Dev. Corp.*,
 358 F.3d 1097 (9th Cir. 2004) ........................................................ 9, 10, 14

*Torres v. U.S. Dep't of Homeland Sec.*,
 No. 5:18-cv-2604-JGB-(SHKx), (C.D. Cal. Oct. 24, 2019)....................... 12, 13, 14

*United Union of Roofers v. Insurance Corp. of America*,
 919 F.2d 1398 (9th Cir. 1990) ................................................................ 15

*Valley Forge Christian College v. Ams. United for Separation of Church
 and State Inc.*,
 454 U.S. 464 (1982).............................................................................. 14

*We Are Am. v. Maricopa Cty. Bd. of Supervisors*,
 809 F. Supp. 2d 1084 (D. Ariz. 2011) .............................................*passim*

*WildEarth Guardians v. U.S. Dep't of Agric.*,
 795 F.3d 1148 (9th Cir. 2015) ................................................................ 15

*Williamson v. Gen. Dynamics Corp.*,
 208 F.3d 1144 (9th Cir. 2000) .................................................................. 6

**Statutes**

Los Angeles Municipal Code 56.11 ....................................................*passim*

## I.    INTRODUCTION

Organizational plaintiffs Ktown for All and Association for Responsible and Equitable Public Spending ("AREPS") have standing to challenge the City of Los Angeles's ("the City" or "Defendant") unconstitutional seizure and destruction of the personal property of unhoused people pursuant to Los Angeles Municipal Code 56.11 ("LAMC 56.11"). Both Ktown for All and AREPS are seeking injunctive and declaratory relief that would enjoin this unconstitutional ordinance from being enforced unlawfully and would prevent the City from continuing to unlawfully seize and destroy people's belongings.

Plaintiff Ktown for All has both associational standing on behalf of its unhoused members who have been harmed by the unlawful practices of the City and organizational standing on the basis of its own frustration of mission and diversion of resources. Members of Ktown for All have lost property and have been forced to relocate by repeated seizure and destruction of their property pursuant to LAMC 56.11, as alleged in the complaint. Supplemental Complaint ("Supp. Complaint") at Dkt. 20, ¶¶ 38-43. The practices have frustrated Ktown for All's mission by making it difficult to stay in contact with unhoused neighbors and members, and by making it more difficult for unhoused members to participate in advocacy efforts. *Id*. ¶¶ 40-43. Ktown for All has been forced to divert its resources from advocacy to identifying and counteracting the City's practices, *id*. ¶¶ 41, and has had to dramatically increase its fundraising efforts to meet the increased demand for tents, blankets, and other items that have been seized and destroyed by the City. *Id*.

Plaintiff AREPS asserts associational standing on behalf of its member municipal taxpayers, who are harmed when municipal funds are spent on enforcing 56.11. Plaintiff AREPS's allegations are even more detailed than the law requires, as AREPS has alleged specific dollar amounts that Defendant spends on enforcement of LAMC 56.11. *Id*. ¶ 86. The injury of unlawful expenditures of municipal taxpayer

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO
DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

funds is sufficient for standing. *We Are Am. v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1096 (D. Ariz. 2011).

## II.    RELEVANT FACTUAL BACKGROUND

### a.    LAMC 56.11

LAMC 56.11 allows the City to seize, and in many instances, summarily destroy property that is in public in violation of the ordinance. The current version of LAMC 56.11 has been in place since 2016.

In 2012, the Ninth Circuit upheld an injunction against the City of Los Angeles prohibiting the City from seizing and immediately destroying unhoused residents' belongings unless the seizure and destruction was done so in a way that protected unhoused residents' constitutional rights. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030, 1032 (9th Cir. 2011). The Ninth Circuit agreed with the district court that the City's practice of seizing and destroying property violated the Fourth and Fourteenth Amendments, and that "the City's practice of on-the-spot destruction of seized property . . . presents an enormous risk of erroneous deprivation." *Id.* at 1032 (quotation marks omitted). The Ninth Circuit ultimately declined to "create an exception to the requirements of due process for the belongings of homeless persons." *Id.* at 1033.

In 2016, after settling *Lavan*, the City adopted an amendment to LAMC 56.11, the ordinance at issue in *Lavan.* With varying degrees of notice, the ordinance purports to allow the City to seize, and in many instances, immediately destroy property placed or left in public in violation of the ordinance. *See* Supp. Complaint at Dkt. 20 ¶¶ 20, 58. "Despite the explicit judicial condemnation of the City's view of homeless people's property rights and the long history of lawsuits that preceded it, the City has remained steadfast in its position that unhoused people do not enjoy the same constitutionally-protected property interest in their belongings that housed residents enjoy." *Id.* ¶ 19. LAMC 56.11 codifies the City's most recent effort to unlawfully seize and, in many instances, destroy, homeless people's property. *Id.* ¶¶ 115-16.

Unlike prior versions of the ordinance, LAMC 56.11 does not provide for jail time or monetary fines if a person places or leaves property in public places in violation of the ordinance. Instead, the ordinance allows the City to simply seize, and in many instances, summarily destroy those items. Specifically, the current ordinance allows the City to seize (1) property that it deems "excess" (i.e., more than will cumulatively fit within a 60 gallon container with the lid closed); (2) tents that are constructed between the hours of 6:00 a.m. and 9:00 p.m.; (3) property that is blocking city sidewalks; (4) property within 10 feet of operational doorways; (5) property that is attached to any public fixture or any private fixture where it interferes with a public right of way; or (6) property that is interfering with city services. *Id.* ¶ 59. If property is seized pursuant to any of these provisions, the items are stored for 90 days, and the City is required to leave post-deprivation notice and an opportunity for an individual to reclaim his or her belongings.

In addition, three provisions of LAMC 56.11 allow the City to immediately destroy items that it seizes. The City is able to seize and immediately destroy any item it deems (1) "bulky", which includes anything other than a constructed tent, an operational bicycle, operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container; (2) an "immediate threat to the health and safety of the public, or 3) evidence of a crime or contraband. *Id.* ¶ 60.

### b.    Enforcement of LAMC 56.11

The City has and continues to enforce LAMC 56.11 throughout Los Angeles by deploying teams of sanitation workers and LAPD officers. These teams conduct two types of enforcement actions:  noticed cleanups and rapid responses. *Id.* Noticed cleanups are either noticed in advance or, in the case of Skid Row and Venice, are conducted on a regular schedule. *Id.* A rapid response is neither noticed nor scheduled. *Id.* In both types of enforcement actions, City workers routinely enforce the ordinance by seizing and destroying homeless people's belongings, consistent with LAMC 56.11. *Id.* ¶¶ 68-69. Noticed cleanups began as "Operation Healthy Streets" in Venice

3

and Skidrow and were then expanded City-wide as part of the Mayor's "Clean Streets LA" program in 2015. *Id.* ¶ 70. In October 2019, the cleanups were rebranded CARE+ cleanups. *Id.* ¶¶ 87-90.

In addition to noticed cleanups, the City deploys specialized teams initially called "Homeless Outreach and Proactive Engagement" teams, or HOPE teams, and now called CARE Teams, which conduct rapid responses. The primary purpose of these actions is to enforce the provisions of LAMC 56.11. *Id.* ¶ 81. To enforce LAMC 56.11, LAPD and sanitation workers simply arrive at any time and seize and destroy people's belongings pursuant to LAMC 56.11's bulky items and excess property provisions. *Id.*

The City expends significant tax dollars to enforce LAMC 56.11. In the 2018-2019 fiscal year alone, "the City of Los Angeles spent approximately $10,692,104 to fund rapid responses, including $4.7 million to pay for the LAPD officers assigned to the HOPE teams and $5.22 million to fund LA Sanitation." *Id.* ¶ 86. "The approved budget for FY 2019-20, which began on July 1, 2019, includes the same allocation for LAPD and a $5.98 million allocation for LA Sanitation to continue the rapid responses." *Id.* In addition, the FY 2019-20 budget allocates over $18 million to conduct noticed cleanups through Clean Streets LA and Operation Healthy Streets. *Id.*

On July 3, 2019, the City Council approved a plan to increase funding for the new CARE and CARE+ deployment plan, which came with increased funding and capacity. *Id.* ¶¶ 87-89. The plan calls for 47 additional sanitation workers, paid for with an additional $6.45 million in funding, which is in addition to the $32 million already allocated to these programs in the FY 2019-20 budget. *Id.* ¶ 87. With this new funding, the number of CARE teams has increased from nine HOPE teams operating in FY 2018-19 to 17 CARE teams funded under the new plan. *Id.* ¶ 88. For comprehensive cleanups, the number of teams deployed has been increased from 11 to 13. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO
DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

c.      **Organizational Plaintiffs**

i.      **Ktown for All**

Founded in 2018, Ktown for All is a membership organization in the Koreatown neighborhood in Los Angeles, comprised of members who are both housed and unhoused. *Id.* ¶ 39. Ktown for All's mission is to advocate for the creation of housing and shelters in its community and to form connections between housed and unhoused neighbors in Koreatown. *Id*. ¶ 38. Ktown for All seeks to organize unhoused residents for advocacy efforts. *Id.* ¶ 40.

The City's enforcement of LAMC 56.11 has had a significant impact on Ktown for All. Because the City regularly seizes and destroys unhoused residents' belongings, unhoused residents "have been moved around or been displaced from the neighborhood. This has made it incredibly difficult for Ktown for All to stay in contact with unhoused neighbors," which has frustrated its mission of outreach and building connections with its neighbors. *Id.* ¶ 40. The City's enforcement of LAMC 56.11 has forced Ktown for All to "devote significant resources that it could have spent on advocating for shelters and connecting with neighbors, [and] on identifying and counteracting the City's practices." *Id.* ¶ 41. Ktown for All has spent hours helping unhoused residents track down seized property and responding to calls related to sweeps. *Id.* It has also had to use its scarce financial resources to replace tents, blankets, and other items that were destroyed by the City. *Id.* Instead of advocating for the production of affordable housing, Ktown for All has also diverted its resources to educate its members about the City's unlawful enforcement of LAMC 56.11 and to advocate for the City to stop these unlawful practices. *Id.*

In addition to the impact on Ktown for All as an organization, LAMC 56.11 and the City's enforcement of the unconstitutional ordinance has impacted Ktown for All's members, who have suffered harm as a result of the City's enforcement of LAMC 56.11. *Id.* ¶ 42. Unhoused members of the organization have lost property and have been deprived of their constitutional and statutory rights. Because the City

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO
DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

1    regularly enforces LAMC 56.11, unhoused members of Ktown for All are at imminent

2    risk of having their property unlawfully seized by the City. *Id.*

3            **ii.**    **Plaintiff Association for Responsible Public Spending**

4          Plaintiff AREPS is a membership organization comprised of taxpayers in Los

5    Angeles that was founded to ensure that their tax dollars are used to promote

6    responsible public spending. *Id.* ¶ 44. AREPS advocates for "spending on public

7    health, housing, and other public infrastructure for all residents of Los Angeles,

8    including its unhoused residents and against the use of their tax dollars to enforce

9    illegal laws that harm vulnerable residents of the City." *Id.*

10         Kristina Meshelski and James Parriott, IV are members of AREPS and both

11   currently reside in the City of Los Angeles. *Id.* ¶¶ 45-46. Ms. Meshelski and Mr.

12   Parriott both pay municipal taxes into the general fund of the City of Los Angeles. *Id.*

13   **III.**   **LEGAL STANDARD**

14         "A complaint should not be dismissed unless it appears beyond doubt that the

15   plaintiff can prove no set of facts in support of the claim that would entitle it to relief."

16   *Daniel v. Cty. of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002) (quoting

17   *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000)). At the

18   pleading stage, "general allegations embrace the specific facts that are necessary to

19   support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal

20   citation omitted).

21         A motion to dismiss for lack of subject matter jurisdiction is either facial or

22   factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In

23   a facial attack, the challenger asserts that the allegations contained in a complaint are

24   insufficient on their face to invoke federal jurisdiction." *Id.* "The district court

25   resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting

26   the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

27   favor, the court determines whether the allegations are sufficient as a legal matter to

28

6

invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

## IV.   ARGUMENT

### a.   Ktown for All Has Standing to Challenge the Unlawful Practices and Unlawful Ordinance

Ktown for All has standing to bring this lawsuit both on behalf of itself and on behalf of its members. Defendant's Motion to Dismiss should be denied.

#### i.   Ktown for All Has Adequately Alleged Frustration of Mission and Diversion of Resources, Giving It Standing in its Own Right

The Supplemental Complaint specifically alleges facts that demonstrate frustration of mission and diversion of resources by Ktown for All. Supp. Complaint. ¶¶ 41-43. An organization has "direct standing to sue [when it show[s] a drain on its resources from both a diversion of its resources and frustration of its mission." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC,* 666 F.3d 1216, 1219 (9th Cir. 2012) (quoting *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002)); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 943 (9th Cir. 2011) (en banc); *Am. Diabetes Assoc. v. U.S. Dept. of the Army*, 938 F.3d 1147, 1154-55 (9th Cir. 2019) (compiling cases).

Ktown for All was founded to advocate for shelter and affordable housing in their neighborhood and to build connections between housed and unhoused neighbors, and this mission has been frustrated by the City's enforcement of 56.11. In order to build connections and increase advocacy, Ktown for All conducts outreach and provides supplies to unhoused neighbors. The Supplemental Complaint alleges that several residents of the Koreatown neighborhood in Los Angeles have had their property seized due to the unconstitutional ordinance and unlawful practices detailed in the complaint. Supp. Complaint ¶¶ 27-30. The allegations also explain that these residents have had those necessities replaced by Ktown for All. *Id*. ¶ 166. Ktown for All usually spent these resources on advocacy efforts, but instead, has had to use its

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

scarce financial resources to replace "tents, blankets, and other items that were seized and destroyed by the City." *Id*. ¶ 41. The allegations in the Supplemental Complaint also explain how the sweeps have forced Koreatown residents to relocate. *Id*. ¶¶ 166-67. This constant relocation has disrupted Ktown for All's ability to connect with their neighbors. The loss of contact with its neighbors, and the decreased ability of unhoused members to participate in advocacy efforts or to reside in the area, directly frustrate Ktown for All's mission and constitute an injury Ktown for All can only avoid by sustaining a different injury: diverting resources. *Animal Legal Def. Fund v. U.S. Dep't of Agric*., 223 F. Supp. 3d 1008, 1014 (C.D. Cal. 2016) (explaining that "the frustration of an organization's mission *is* the personalized injury that "forces" the organization to spend money to alleviate the frustration.").

The City incorrectly argues that for Ktown for All to sufficiently allege injury, LAMC 56.11 enforcement must have "forced" the organization to divert its resources. Def.'s Mot. (Dkt. 21) at 13. It is "not essential that an organization explicitly allege a 'forced' diversion of its resources to sufficiently allege injury in fact." *We Are Am.*, 809 F. Supp. 2d at 1096 (discussing how Ninth Circuit precedent does not impose such a requirement). Ktown for All must only show that it would have suffered some other injury if it had not diverted resources to counteract the problems caused by the City's enforcement of LAMC 56.11. "In *Havens* [*Realty Corp. v. Coleman,* 455 U.S. 363 (1982)], for example, housing discrimination threatened to make it more difficult for HOME to counsel people on where they might live if the organization didn't spend money fighting it," leading the Court to conclude that HOME had organizational standing. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Where Defendant's "practices have perceptibly impaired [the organizational plaintiff's] ability to provide [the services it was formed to provide] . . . there can be no question that the organization suffered injury in fact." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) (quoting *Havens*, 455 U.S. at 379).

Ktown for All sufficiently alleges that the enforcement of LAMC 56.11 impairs the ability of unhoused members to participate in its advocacy, causes it to lose contact with unhoused neighbors, and is causing Ktown for All to divert its resources from advocacy for new housing for its unhoused members and neighbors to replacing property and advocacy against property sweeps. Supp. Complaint ¶¶ 38-43; *see Smith v. Pac. Props & Dev. Corp.,* 358 F.3d 1097, 1105 (9th Cir. 2004) (reversing dismissal of complaint based on lack of standing where an organization alleged that "in order to monitor the violations and educate the public regarding the discrimination, has had . . . to divert its scarce resources from other efforts . . . to benefit the disabled community in other ways")); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (explaining that National Council of La Raza, a group whose mission was to conduct voter registration drives changed their behavior as a result of Defendant's conduct and had standing because "plaintiff NCLR expended additional resources . . . on efforts to assist individuals with voter registration.").

Defendant does not dispute that Ktown for All has adequately alleged that the sweeps made it harder to build connections with unhoused individuals and to stay in contact with its members and neighbors. Defendant instead argues that these injuries are not cognizable and are not violations of a "legally protected interest." Def's Mot. (Dkt. 21) at 12. But Ktown for All's mission is to organize both housed and unhoused people in support of additional housing in its neighborhood. Impairment of Ktown for All's mission to politically empower its members and unhoused neighbors is legally protected. *See Smith*, 358 F.3d at 1105; *Nat'l Council of La Raza,* 800 F.3d at 1040.

In *National Council of La Raza*, for example, the State's failure to offer the opportunity to register to vote at the Department of Health and Human Services impaired the organization's ability to register its members to vote and forced it to expend resources on voter registration drives. 800 F.3d at 1039-1040. Even though the organization was already conducting these drives, it was required to expend additional resources to conduct additional drives due to the State's failures, which constituted an

9

injury in fact. *Id*. So too here. Ktown for All is attempting to advocate for additional housing in Koreatown by organizing the community. Ktown for All has adequately alleged that when unhoused people are forced to move out of fear of unlawful property confiscations, it is hard for it to maintain contact with them. Supp. Complaint ¶ 40. Just as organizational plaintiff in *National Council of La Raza* expended more resources on additional voting drives, Ktown for All expends additional resources on staying in touch with local unhoused people and providing more tents and blankets that it would not have to spend but for the City's actions. *Id*.

Similarly, diversion of resources sufficiently constitutes an injury in fact when an organization is forced to divert resources from advocacy on other matters to advocacy on the violations at issue. *Smith*, 358 F.3d at 1105. In *Smith*, the court found that the Disability Rights Advocacy Center had standing because it was forced to monitor discrimination and educate the public about discrimination instead of using its resources for other efforts that benefited the disabled community. *Id*. Here, Ktown for All has been forced to divert its resources from advocating for additional housing to replacing property and advocating against property sweeps that are harming its local community. Supp. Complaint ¶ 41.

The cases Defendant relies upon arise in very different contexts. In *La Asociacion de Trabajadores*, the violation occurred in a different county than the association's regular work, and the court noted that the complaint only asserted standing on behalf of the National Day Laborer Organizational Network's members; "[n]owhere in the complaint, however, does NDLON assert a frustration of its purpose or diversion of its resources." *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1089. There, as the organization had not actually pled organizational standing, they could not cure it at the summary judgment stage. Here, Ktown for All has in fact pled organizational standing based on violations in Koreatown that affect its efforts in its local community.

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

In *Havens*, the Court granted organizational standing, finding that discriminatory practices made it harder for the organization to counsel homeseekers. 455 U.S. at 379. The fact that HOME was attempting to refer community members to find housing and that Havens had made the clients' lives harder through its unlawful practices was enough. The Court did not find the need for any more specific or "quantifiable" injury than a difficulty in counseling clients to find housing. *Id.*

The burdens HOME faced in *Havens* are virtually indistinguishable from the burdens Ktown for All faces in this case. Ktown for All is attempting to provide water and other necessities to unhoused community members, as well as to enlist their help in advocating for housing. The fact that the unlawful practices make the lives of unhoused people who are connected with Ktown for All harder and make it harder for Ktown for All to provide necessities and outreachconstitutes a frustration of mission and a diversion of resources on the part of the organization. The City attempts to distinguish *Havens* by stating that 804(d) creates an enforceable right to be safe from discrimination, while 56.11 does not create an enforceable right to due process. Def's Mot. (Dkt. 21) at 14. But the constitutional rights at issue here are enforceable rights; there is no need for Congress or the City to pass a separate statute. Just as the discrimination in *Havens* against people HOME served drained its resources, the City's unconstitutional practices against Ktown for All's members and the unhoused neighbors that it serves drain its resources.

Defendant also improperly relies on *Clapper*, where the Court found that there had not yet been any injury because the respondent organizations could not tell whether the Government was surveilling them or seeking to surveil them. As such, the decision to take measures to counter the feared surveillance was not yet necessary. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). Here, there is no controversy about what the City is doing; Ktown for All has alleged that the harms in the complaint have already happened and are ongoing, and these are real harms imposed on Ktown for All and its members. In fact, there is likely no dispute that the City

engages in property seizure and destruction in Koreatown and that the harms alleged in the complaint are attributable to the City. Rather, City workers identify themselves as such when seizing and destroying property in the area, and do so consistent with LAMC 56.11 and city policies, customs, and practices.

Finally, the City argues that the enforcement of the ordinance cannot divert the resources of Ktown for All because these practices were ongoing before the organization formed. No such temporal requirement exists in the law, and Defendant does not cite to any case that has relied on the date of formation of the organization.

### ii.    Ktown for All Has Associational Standing on Behalf of its Members

Ktown for All also challenges the City's policies and practices on behalf of its unhoused members who are subject to these policies and have lost belongings as a result. An organization has representative standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity*, 950 F.2d 1401, 1406 (9th Cir. 1991) (quoting *Hunt v. Wash. State. Apple Adver. Comm'n.*, 432 U.S. 333, 343 (1977)).

First, Ktown for All has sufficiently alleged that its members are harmed by the City's unlawful practices. Defendant's argument that Ktown for All needs to identify specific members at this stage fails because such evidence is not required at this stage of the litigation. *Torres v. U.S. Dep't of Homeland Sec.,* No. 5:18-cv-2604-JGB-(SHKx), at *12-13 (C.D. Cal. Oct. 24, 2019) (holding that organizational plaintiff was not required to name specific members at the pleading stage).

Second, the complaint alleges and explains that the unlawful practices make it more difficult for individual members to stay connected with the organization and

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

participate in advocacy. Supp. Complaint ¶ 40. The unlawful practices thus are related to Ktown for All's mission of connecting housed and unhoused neighbors.

Finally, Ktown for All is not seeking damages, but only injunctive and declaratory relief, since these are ongoing practices putting unhoused members at imminent risk of losing their belongings to unlawful seizures. Accordingly, and as discussed below, Ktown for All has sufficiently alleged standing on a representative basis as well. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)*; see also Santiago v. City of Los Angeles*, No. CV 15-08444-BRO (EX), 2016 WL 7176694, at *6 (C.D. Cal. Nov. 17, 2016) (holding organization had standing to challenge on the City's practices of seizing and immediately destroying street vendors' property on behalf of its members).

Under its analysis of the first prong of the three-prong test in *Hunt*, Defendant City contends that Ktown for All lacks associational standing because they have not identified by name individual members impacted by LAMC 56.11, citing *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp*., 713 F.3d 1187, 1194 (9th Cir. 2013). 432 U.S. at 343; Def's Mot. (Dkt. 21) at 16. But there, the Ninth Circuit held that at *summary judgment* a party must provide evidence of an identified member subject to the challenged practices. *Associated Gen. Contractors of Am.*, 713 F.3d at 1194. Another court in the Central District recently found that identification of specific members is not required at the pleading stage. *See Torres*, No. 5:18-cv-2604-JGB-(SHKx), at *12, Order Denying Federal Def.'s Mot. to Dismiss (Dkt. 101, Oct. 24, 2019) at 12-13.

Here, the Supplemental Complaint alleges that Ktown for All members "who are unhoused have been subjected to the City's enforcement of LAMC 56.11 and have suffered harm as a result of that enforcement, including the loss of property and the deprivation of their constitutional and statutory rights." Supp. Complaint ¶ 42. "Unhoused members of Ktown for All have also had a difficult time participating in Ktown for All's advocacy efforts, because they have to spend time guarding their

13

belongings and replacing items that have been thrown away as a result of the City's practices." *Id.* ¶ 43. Nothing further is needed at this stage. *See Torres*, Case No. 5:18-cv-2604 JGB (SHKx), Dkt. 101, at *12-13.

Defendant also claims that Ktown for All must identify specific dates and locations of incidents where Ktown for All members lost property. Again, such specifics are not required at the motion to dismiss stage. *See id.* "When, as here, the plaintiff[s] defend[ ] against a motion to dismiss at the pleading stage, 'general factual allegations of injury resulting from the defendant[s]' conduct may suffice[.]'" *Oregon v. Legal Servs. Corp.,* 552 F.3d 965, 969 (9th Cir. 2009) (quoting, *interalia, Lujan,* 504 U.S. at 561); *see also Smith*, 358 F.3d at 1106. Further, Plaintiffs are not just challenging the seizure and destruction of individuals' property, but are also challenging the City's policies and practices under LAMC 56.11, which does not necessarily require individualized proof of property destruction. *See, e.g.*, Supp. Complaint ¶ 258; *see generally Monell v. Dep't of Soc. Servs. of NY*, 436 U.S. 658, 713 (1978).

In its analysis of the second *Hunt* factor, Defendant mischaracterizes Ktown for All's stated mission as a "general interest in helping homeless residents in the City." Def's Mot. (Dkt. 21) at 18. Defendant oddly cites to *Valley Forge Christian College v. Ams. United for Separation of Church and State Inc.,* 454 U.S. 464, 475 (1982), a case where the Court does not cite to *Hunt*, let alone discusses what the Court in *Hunt* meant by this factor. Def's Mot. (Dkt. 21) at 18. Ktown for All's mission is to explicitly advocate for housing and shelters in its community, to support unhoused neighbors through the provision of food, water, and hygiene, and to build connections between housed and unhoused neighbors. *See* Supp. Complaint ¶¶ 38-39. Ktown for All has specifically laid out in the Supplemental Complaint how the enforcement of LAMC 56.11 has made it difficult for Ktown for All to stay in contact with its unhoused members and how individuals have been unable to attend advocacy meetings due to their need to remain with their property and protect it from being

14

discarded. *See id.* ¶¶ 40-41; 43. Ktown for All has also had to divert resources away from advancing affordable housing production "to educating members about the policies and advocacy efforts to stop these unlawful practices" under LAMC 56.11. *Id.*

The Ninth Circuit has found organizational interests that were not any more specific than Ktown for All's mission to satisfy this prong; nor has the Ninth Circuit read the germaneness requirement as strictly as Defendant would like this Court to do. *See, e.g., Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1079 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 2740 (2019) (holding that organizational interest "in the consistent enforcement of unitary federal regulation of airline industry labor relations" was germane to legal claim that the City's contractual requirement was preempted by federal laws that regulate airlines); *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154–55 (9th Cir. 2015) ("[I]t is clear that [WildEarth member]'s interest in recreational and aesthetic enjoyment of predators in the Nevada wilderness is related to WildEarth's purposes of 'protecting and restoring wildlife' and 'carnivore protection.'"). Defendant therefore cannot seriously argue that Ktown for All's mission is not germane to the claims in this case challenging the constitutionality of LAMC 56.11.

Nor does the third *Hunt* factor weigh against Ktown for All because the claims asserted does not require participation of individual members in the lawsuit. Ktown for All is not seeking damages on behalf of its individual members, which would require individualized proof at the damages stage. *Compare United Union of Roofers v. Insurance Corp. of America,* 919 F.2d 1398, 1400 (9th Cir. 1990) (denying standing because "individual Union members will have to participate at the proof of damages stage") *with Alaska Fish & Wildlife Fed'n v. Dunkle,* 829 F.2d 933, 938 (9th Cir. 1987) (allowing standing "because . . . its members need not participate directly in the litigation"); *see also Associated Gen. Contractors of Cal., Inc. v. Coal. for Economy Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991) ("Because neither AGCC's claims nor

their request for declaratory and injunctive relief require such individualized proof, under this interpretation of *Hunt*'s third prong, the organization must be deemed to have standing."); *Santiago*, 2016 WL 7176694 at *6 (holding organization had standing to challenge on the City's practices of seizing and immediately destroying street vendors' property on behalf of its members without individual participation of its members). Accordingly, Ktown for All has associational standing in this case.

Ktown for All has standing to request injunctive and declaratory relief because Defendant regularly enforces LAMC 56.11 through both its rapid response teams and noticed cleanups against members. *See* Supp. Complaint ¶¶ 42; 82-85. Starting in October 2019, the City even increased funding for enforcement of LAMC 56.11. *Id.* ¶¶ 87-89. Accordingly, the threatened injury to Ktown for All members is "certainly impending," *Oregon Prescription Drug Monitoring Program v. U.S. Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017), and not, as Defendant suggests, a mere possibility, Def's Mot. (Dkt. 21) at 19.

### b.   AREPS Has Municipal Taxpayer Standing

Plaintiff AREPS has municipal taxpayer standing because Defendant City has unlawfully spent municipal tax money on enforcing LAMC 56.11. Defendant argues that AREPS lacks taxpayer standing, but in doing so, essentially obfuscates Supreme Court precedent and ignores Ninth Circuit precedent on the subject of municipal taxpayer standing. While the Supreme Court has held that, generally speaking, payment of federal government taxes is "too remote . . . to give rise to a case or controversy," *Arizona Christian School Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011), "the Supreme Court and lower federal courts have long treated the payment of local taxes differently, as the 'interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate.'" *Garris v. City of Los Angeles*, No. CV 17-1452 MWF (EX), 2017 WL 10543666, at *6 (C.D. Cal. Nov. 7, 2017) (quoting *Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 433-34 (1952)).

16

The Ninth Circuit has made clear "that municipal taxpayer standing *simply* requires the 'injury' of an allegedly improper expenditure of municipal funds, and in this way mirrors our threshold for state taxpayer standing." *Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991) (emphasis added); *see also We Are Am.*, 809 F. Supp. 2d at 1096 (quoting the same with emphasis). "In fact," the Ninth Circuit pointed out, "even those who have taken a dimmer view of the breadth of state taxpayer standing than this court have recognized that municipal taxpayer standing requires *no more injury than* an allegedly improper municipal expenditure." *Id.* (citing cases); *see also Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 213 (6th Cir. 2011) (observing that all sister circuits, including the 9th Circuit, that have cited pocketbook-injury language in *Doremus* "agree that the unconstitutional expenditure of government funds can itself be injury enough to confer municipal-taxpayer standing.").

In *We are America*, the district court held that County taxpayers had sufficiently pled municipal taxpayer standing to bring a Section 1983 suit to challenge the constitutionality of an unlawful ordinance. 809 F. Supp. 2d. at 1104. Plaintiffs' injury was based on use of taxpayer funds to arrest, detain, and incarcerate migrants pursuant to the ordinance, which they alleged was an illegal expenditure. *Id.* The court noted that "it is also readily apparent that these taxpayers are not alleging any specific monetary amount which the County has spent implementing the MMCP." *Id.* Nonetheless, the court found municipal taxpayer standing because "improper expenditure of public funds' is the crux of any claim that a municipal taxpayer satisfies the injury in fact prong of constitutional standing." *Id.* at 1108 (citing *Cammack*, 932 F.2d at 770); *see also Barnes–Wallace v. City of San Diego*, 530 F.3d 776, 786 (9th Cir. 2008) ("[M]unicipal taxpayers must show an expenditure of funds to have standing.").

The Supplemental Complaint here alleges even more specific facts than those the court in *We are America* found sufficient at the motion to dismiss stage to

17

establish municipal taxpayer standing. Unlike the plaintiffs there, Plaintiffs here have pled specific dollar amounts Defendant spends on enforcement of LAMC 56.11. AREPS members Kristina Meshelski and James Parriott have alleged that they are residents of the City of Los Angeles who pay municipal taxes into the general fund of the City of Los Angeles. Supp. Complaint ¶¶ 44-46. They further allege that, in FY 2018-19, Defendant City "spent approximately $10,692,104 [of tax dollars] to fund rapid responses, including $4.7 million to pay for the LAPD officers assigned to the HOPE teams and $5.22 million to fund [the] LA Sanitation" teams that conduct the rapid responses. *Id.* ¶ 86. As the complaint alleges, the rapid response teams conduct the Bulky Item pickups and seize and destroy unattended property. *Id.* ¶¶ 81-83.

The Supplemental Complaint also alleges the specific dollar amounts spent in subsequent fiscal years. *Id.* ¶¶ 86-87. Accordingly, Plaintiffs have "allege[d] that the government spent specific amounts of tax dollars on the challenged conduct," *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001), and therefore satisfy the injury-in-fact requirement for standing. *We are Am.* 809 F. Supp. 2d. at 1108; *Garris*, 2017 WL 10543666, at *6 ("Despite the lack of any tangible invasion of their own rights, the conduit through which these Plaintiffs have gained standing to challenge the Ordinance is their payment of the administrative fees that the Department uses to fund the housing inspection and enforcement program.").

AREPS also meets the requirements for causation and redressability. "Causation and redressability are essentially identical requirements where the remedy is an order to desist." *Cammack*, 932 F.2d at 771 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Defendant seems to misrepresent Plaintiffs' claims for relief in its argument that AREPS claims are not redressable. Plaintiffs are not attempting to enjoin the City from providing public health infrastructure and conducting cleanups in a manner that does not violate Plaintiffs' constitutional rights. What Plaintiffs are seeking to enjoin is the enforcement of an unconstitutional statute. Moreover, the City cannot argue that expenditure of funds would happen regardless of the unlawful

18

portions of LAMC 56.11. *See We are Am.*, 809 F. Supp. 2d at 1110 (holding that there is 'no merit to defendants' contention that the taxpayers have not adequately pled standing because any taxes spent in enforcing the MMCP are "merely incidental to their duty to enforce Arizona law[.]'"). Thus, declaring LAMC 56.11 as unconstitutional and enjoining further enforcement of LAMC 56.11 would redress AREPS's injury as taxpayers. *See id.* at 1111 ("[T]he municipal taxpayers' alleged injuries will be redressed by a favorable decision herein, i.e. relief preventing the further implementation of [Maricopa County's migrant arrest and detention policy] or a finding that the [policy] is unconstitutional").

V.     **CONCLUSION**

For the reasons set forth above, Ktown for All and AREPS have Article III standing to pursue their claims in the Complaint. This Court should therefore deny Defendant's Motion to Dismiss Ktown for All and AREPS for lack of subject matter jurisdiction.

Dated:  November 12, 2019         Respectfully submitted,
                                  LEGAL AID FOUNDATION OF LOS ANGELES

                                  /s/
                                  By: Shayla Myers
                                  *Attorneys for Plaintiffs Gladys Zepeda, Miriam*
                                  *Zamora, Ali El-Bey, Pete Diocson Jr., Marquis*
                                  *Ashley, James Haugabrook, and Ktown for All*


                                  SCHONBRUN SEPLOW HARRIS & HOFFMAN
                                  LLP

                                  /s/
                                  By: Catherine Sweetser
                                  *Attorneys for All Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO
DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRKLAND & ELLIS LLP

/s/ _____

By: Benjamin Allen Herbert
*Attorneys for Ktown for All*


Local Rule 5-4.3.4 Attestation

I attest that Plaintiffs' counsel, Shayla Myers and Benjamin Allen Herbert, concurs in this filing's content and has authorized the filing.

DATED: November 12, 2019        SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP

                                By: */s/ Catherine Sweetser*

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT