1  Shayla Myers (SBN 264054)
   Romy Ganschow (SBN 320294)
2  LEGAL AID FOUNDATION OF LOS ANGELES
   7000 South Broadway
3  Los Angeles, CA  90003
   Telephone:  (213) 640-3983
4  Email:  smyers@lafla.org
              rganschow@lafla.org
5
   *Attorneys for Gladys Zepeda, Miriam Zamora,*
6  *Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
   *Marquis Ashley, and Ktown for All*
7
   *Additional Attorneys on Next Page*
8

9                    **UNITED STATES DISTRICT COURT**

10       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11  JANET GARCIA, GLADYS              )   CASE NO. 2:19-cv-06182-DSF-PLA
    ZEPEDA, MIRIAM ZAMORA, ALI        )
12  EL-BEY, PETER DIOCSON JR,         )   [Assigned to Judge Dale S. Fischer]
    MARQUIS ASHLEY, JAMES             )
13  HAUGABROOK, individuals,          )   **PLAINTIFFS' OPPOSITION**
    KTOWN FOR ALL, an                 )   **TO DEFENDANT CITY OF**
14  unincorporated association;       )   **LOS ANGELES'S MOTION TO**
    ASSOCIATION FOR                   )   **DISMISS SUPPLEMENTAL**
15  RESPONSIBLE AND EQUITABLE         )   **COMPLAINT TO THE FIRST**
    PUBLIC SPENDING, an               )   **AMENDED COMPLAINT**
16  unincorporated association,       )   **(FED. R. CIV. PROC. 12(b)(6))**
                                      )
17                  Plaintiffs,       )
                                      )   Complaint Filed Date:  July 18, 2019
18          v.                        )
                                      )   Judge:          Hon. Dale S. Fischer
19  CITY OF LOS ANGELES, a            )   Hearing Date:   December 2, 2019
    municipal entity; DOES 1-7,       )   Time:           1:30 p.m.
20                                    )   Courtroom:      7D
                    Defendants.       )
21                                    )
22
23
24
25
26
27
28

Catherine Sweetser (SBN 271142)
Kristina Harootun (SBN 308718)
SCHONBRUN SEPLOW HARRIS
& HOFFMAN LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone:  (310) 396-0731
Email:  csweetser@sshhlaw.com
            kharootun@sshhlaw.com

*Attorneys for Plaintiffs*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone:  (213) 680 8400
Email:  benjamin.herbert@kirkland.com
            william.smith@kirkland.com

*Attorneys for Ktown for All*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   LEGAL STANDARD ............................................................................ 3

III.  ARGUMENT ......................................................................................... 3

    a.  The Bulky Item Provision Is Unconstitutional ............................................ 3

        i.  The Bulky Item Provision Violates The Fourth Amendment ................. 5

        ii. The Bulky Item Provision Violates The Fourteenth Amendment ........ 9

    b.  Sections Of LAMC 56.11 Are Impermissibly Vague As Written And As Applied To Plaintiffs ....................................................... 13

        i.  The Bulky Item Provision Is Impermissibly Vague .............................. 14

        ii. Plaintiffs Have Sufficiently Pled The Immediate Threat Provision Is Vague As Applied To Plaintiffs ..................................... 17

    c.  Plaintiffs Have Sufficiently Pled State Law Claims .................................. 19

        i.  Plaintiffs Complied With The Government Claims Act ........................ 19

        ii. The City Is Not Immune From Plaintiffs' State Law Claims ................ 21

            1. Immunity Does Not Apply To Plaintiffs' State Constitutional Claims ............................................................... 21

            2. Government Code § 820.20 Does Not Apply Because The Challenged Actions Were Not Discretionary ................................ 21

            3. Government Code § 820.6 Does Not Apply At This Juncture ........ 22

        iii. Plaintiff Ali El-Bey's Bane Act Claims Should Prevail Over The City's Motion to Dismiss ............................................... 23

        iv. Plaintiffs Have Sufficiently Pled Their Seventh Cause Of Action ...... 24

        v.  Defendant's Rule 8 Argument Is Without Merit ................................. 25

IV.   CONCLUSION ..................................................................................... 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Estate of Abdollahi v. Cty. of Sacramento,*
  405 F. Supp. 2d 1194 ...................................................................22

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1988) ..........................................................3

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972).........................................................................9

*Bell v. State of Cal.,*
  63 Cal. App. 4th 919 (Cal. Ct. App. 1998)....................................22

*Brewster v. Bd. of Educ.,*
  149 F.3d 971 (9th Cir. 1998) ..........................................................9

*Cafeteria & Restaurant Workers Union v. McElroy,*
  367 U.S. 886 (1961)........................................................................12

*City of Chicago v. Morales,*
  527 U.S. 41 (1999)................................................... 13, 14, 15

*City of Los Angeles v. Patel,*
  135 S. Ct. 2443 (2015)................................................... passim

*City of San Jose v. Superior Court,*
  12 Cal. 3d 447 (1974) ....................................................................20

*City of Stockton v. Superior Court,*
  42 Cal. App. 4th 730 (Cal. Ct. App. 2007)............................20

*Clement v. City of Glendale,*
  518 F.3d 1090 (9th Cir. 2008) .......................................................10

*Colautti v. Franklin,*
  439 U.S. 379 (1979).................................................................14, 19

*Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma,*
  No. C 08-4220 RS, 2010 WL 2465030 (N.D. Cal. June 11, 2010)......................23

ii

*Cooley v. City of Los Angeles*,
   No. 218CV09053CASPLAX, 2019 WL 1936437 (C.D. Cal. May 1,
   2019) ...........................................................................................................24

*Cornell v. City of San Francisco*,
   17 Cal. App. 5th 766 (Cal. Ct. App. 2019) ..............................................23

*Desertrain v. City of Los Angeles*,
   754 F.3d 1147 (9th Cir. 2014) ......................................................... *passim*

*Doe #1 v. City of San Diego*,
   363 F. Supp. 3d 1104 (S.D. Cal. 2019) .....................................................18

*Draper v. Coombs*,
   792 F.2d 915 (1986)....................................................................................12

*Fang Lin Ai v. U.S.*,
   809 F.3d 503 (9th Cir. 2015) ......................................................................18

*Fuentes v. Shevin*,
   407 U.S. 67 (1972).......................................................................................12

*Gatto v. Cty. of Sonoma*,
   98 Cal. App. 4th 744 (Cal. Ct. App. 2002)...............................................19

*Gillan v. City of San Marino*,
   147 Cal. App. 4th 1033 (Cal. Ct. App. 2007)...........................................21

*Goss v. Lopez*,
   419 U.S. 565 (1975).......................................................................................9

*Guerro v. Whitaker*,
   908 F.3d 541 (9th Cir. 2018) ......................................................................13

*Helicopters for Ag. v. Cty. of Napa*,
   384 F. Supp. 3d 1035 (N.D. Cal. 2019).....................................................13

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011) .................................................... 15, 16, 17

*HVT v. Port Auth. of N.Y. and N.J.*,
   2018 WL 3134414 (E.D.N.Y. Feb. 15, 2018) ...........................................13

iii

*Indep. Hous. Servs. v. Fillmore Ctr. Assoc.*,
　840 F. Supp. 1328 (N.D. Cal. 1993) ....................................................................19

*Isaacson v. Horne*,
　716 F.3d 1213 (9th Cir. 2013) ...................................................................... 5, 6

*J.M. v. Huntington Beach Union High Sch. Dist.*,
　2 Cal. 5th 648 (2017) ..........................................................................................21

*Johnson v. San Diego Unified Sch. Dist.*,
　217 Cal. App. 3d 692 (Cal. Ct. App. 1990) ......................................................20

*Johnson v. State of Cal.*,
　69 Cal. 2d 782 (1968) ..........................................................................................21

*Johnson v. United States*,
　135 S. Ct. 2551 (2015) .........................................................................................18

*Kaseberg v. Conaco, LLC*,
　360 F. Supp. 3d 1026 (S.D. Cal. 2018) ..............................................................25

*Kash Enters., Inc. v. City of Los Angeles*,
　19 Cal. 3d 294 (1977) ..........................................................................................12

*Kolender v. Lawson*,
　461 U.S. 352 (1983) ..............................................................................................15

*Lavan v. City of Los Angeles*,
　693 F.3d 1022 (9th Cir. 2012) .................................................................... *passim*

*Logan v. Zimmerman Brush Co.*,
　455 U.S. 422 (1982) ................................................................................................9

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
　584 F.3d 1232 (9th Cir. 2009) ............................................................................12

*Lu v. Hulme*,
　133 F. Supp. 3d 312 (D. Mass. 2015) ................................................................12

*Mathews v. Eldridge*,
　424 U.S. 319 (1976) ................................................................................................9

iv

*Miranda v. City of Cornelius,*
   429 F.3d 858 (9th Cir. 2005) ...................................................................6

*Mitchell v. City of Los Angeles,*
   16 -CV-01750-SJO-(JPR), 2017 WL 10545079 (C.D. Cal. 2017) ...................7, 18

*Morgan v. Yuba Cty.,*
   230 Cal. App. 2d 938 (Cal. Ct. App. 1964)............................................22

*Mut. Creamery Ins. Co. v. Iowa Nat. Mut. Ins. Co.,*
   427 F.2d 504 (8th Cir. 1970) ...............................................................25

*N. Am. Cold Storage Co., v. City of Chicago,*
   211 U.S. 306 (1908)...............................................................................10

*Ohlsen v. Cty. of San Joaquin,*
   No. 2:06-CV-2361-GEB-GGH, 2008 WL 2331996 .......................................21, 22

*Parks Sch. of Bus., Inc. v. Symington,*
   51 F.3d 1480 (9th Cir. 1995) ...................................................................3

*Propert v. District of Columbia,*
   948 F.2d 1327 (D.C. Cir. 1991)...............................................................12

*Recchia v. City of L.A. Dep't of Animal Servs.,*
   889 F.3d 553 (9th Cir. 2018) ........................................................ 6, 7, 17

*Roberson v. Hedgpeth,*
   No. CV 1-08-668-DGC, 2009 WL 3634193 (E.D. Cal. Oct. 30, 2009).................20

*Salazar v. Schwarzenegger,*
   No. CV071854SJOVBKX, 2007 WL 9662364 (C.D. Cal. Oct. 23,
   2007) ................................................................................................21, 23

*San Jose Chapter of the Hells Angels Motor Club v. City of San Jose,*
   402 F.3d 962 (9th Cir. 2005) ...................................................................8

*Schooler v. State of California,*
   85 Cal. App. 4th 1004 (Cal. Ct. App. 2000)..............................................21

*Sessions* v. *Dimaya,*
   138 S. Ct. 1204 (2018)......................................................................13, 14

v

*Sibron v. City of New York*,
   392 U.S. 40 (1968) ..........................................................................8

*Sierra Club v. Bosworth*,
   510 F.3d 1016 (9th Cir. 2007) ......................................................4

*Smith v. Goguen*,
   415 U.S. 566 (1974) ......................................................................16

*Sniadach v. Family Fin. Corp. of Bay View*,
   395 U.S. 337 (1969) ......................................................................12

*Soldal v. Cook Cty.*,
   506 U.S. 56 (1992) ..........................................................................6

*Styppman v. City and Cty. of San Francisco*,
   557 F.2d 1338 (9th Cir. 1977) ...................................................9, 12

*Texaco, Inc. v. Short*,
   454 U.S. 516 (1982) ..................................................................11, 12

*Texas v. Brown*,
   460 U.S. 730 (1983) ........................................................................6

*Torres v. Puerto Rico*,
   442 U.S. 465 (1979) ........................................................................6

*United States v. Approx. 64,695 Pounds. of Shark Fins*,
   520 F.3d 976 (9th Cir. 2008) ......................................................17

*United States v. Cervantes*,
   703 F.3d 1135 (9th Cir. 2012) ......................................................6

*United States v. Doremus*,
   888 F.2d 630 (9th Cir. 1989) ......................................................14

*United States v. Reese*,
   92 U.S. 214 (1876) ........................................................................14

*United States v. Salerno*,
   481 U.S. 739 (1987) .............................................................. *passim*

vi

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
 455 U.S. 489 (1982)................................................................14, 19

*Wash. State Grange v. Wash. State Repub. Party*,
 552 U.S. 442 (2008)..................................................................5, 11

*Watkins v. City of Oakland*,
 2018 WL 574906 (N.D. Cal. Jan. 26, 2018).........................23, 24

*Westcon Const. Corp. v. County of Sacramento*,
 152 Cal. App. 4th 183 (Cal. Ct. App. 2007).............................20

*Willis v. Reddin*,
 418 F.2d 702 (9th Cir. 1969) .......................................................20

*Wong v. City and Cty. of Honolulu*,
 333 F. Supp. 2d 942 (D. Hawaii 2004) ....................................13

*Woods v. Aug.*,
 No. 3:15-CV-05666-WHO, 2018 WL 5841311 (N.D. Cal. Nov. 8,
 2018) ............................................................................................23

**Statutes**

Cal. Civ. Code § 2080.10..............................................................22,

Cal. Civ. Code § 815.6............................................................22, 24

Cal. Gov't Code § 814 .................................................................21

Cal. Gov't Code § 820.6 .......................................................22, 23

Cal. Gov't Code § 820.20 .....................................................21, 22

Cal. Gov't Code § 905 ...........................................................19, 20

Cal. Gov't Code § 912.4 ..............................................................20

Los Angeles Municipal Code Section 41.18 .............................4

Los Angeles Municipal Code Section 56.11 ..................... *passim*

Safe Drinking Water and Toxic Enforcement Act of 1986, Ca. Health
 and Safety Code § 24249.5 .....................................................18

vii

**Rules**

Fed. R. Civ. P. 8 ...................................................................................24, 25

Fed. R. Civ. P. 12(b)(6) ..........................................................................4, 25

L.R. 7.3 ..........................................................................................................25

**Other Authorities**

U.S. Const. Amend. IV ...............................................................................5

U.S. Const. Amend. XIV ............................................................................9

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

## I.  INTRODUCTION

2

Plaintiffs, seven homeless individuals and two organizations, bring this lawsuit

3 to challenge the constitutionality of Defendant City of Los Angeles's (the "City")

4 practice of seizing and destroying homeless individuals' belongings pursuant to Los

5 Angeles Municipal Code ("LAMC") Section 56.11. As alleged in detail in the

6 Supplemental Complaint, LAMC 56.11 purports to allow the City to seize and, in

7 some instances, immediately destroy people's belongings, frequently without notice or

8 opportunity to be heard. The current version of LAMC 56.11 was amended after the

9 Ninth Circuit upheld a preliminary injunction against the City of Los Angeles

10 prohibiting the City from "[s]eizing property in Skid Row absent an objectively

11 reasonable belief that it is abandoned, presents an immediate threat to public health or

12 safety, or is evidence of a crime, or contraband; and 2) [a]bsent an immediate threat to

13 public health or safety, destruction of said seized property without maintaining it in a

14 secure location for a period of less than 90 days." *Lavan v. City of Los Angeles*, 693

15 F.3d 1022, 1024 (9th Cir. 2012), *cert. denied*, 570 U.S. 918 (2013); *see also*

16 Supplement Complaint (SC) ¶¶ 18-20, 54-57.

17

The City's post-*Lavan* revision to the ordinance does not cure the Ninth

18 Circuit's express concerns, and, in fact, greatly expands what the City can seize and

19 destroy, compared to the *Lavan* injunction. *See* SC ¶¶ 20, 64, 66-67. The amended

20 ordinance allows the City to seize property in a number of specific instances,

21 including where property is deemed "excess," is blocking the sidewalk, or is

22 interfering with government operations. SC ¶¶ 20-21, 58-59, 62. When property is

23 seized under these categories, LAMC 56.11 requires the City to provide pre- and post-

24 deprivation notice and storage of property. *See* LAMC 56.11(4)-(6). The ordinance

25 also allows the City to immediately destroy some property. SC ¶¶ 20-21, 58-60, 64.

26 Specifically, the current iteration of LAMC 56.11 allows unnoticed seizure and

27 destruction of property that is contraband or evidence of a crime, as permissible by

28 law, and property that presents an immediate threat to health and safety of the public

(the Immediate Threat Provision), which was permitted by the *Lavan* injunction. SC ¶¶ 20-22, 59, 64. Most problematically, though, the ordinance also permits the City to remove and discard property that the City believes is bulky (the Bulky Item Provision). LAMC 56.11(3)(i); SC ¶¶ 59-61, 92. Tellingly, when property is seized because it is too big, the City must provide none of the due process afforded to property that is not considered "bulky." SC ¶¶ 59-61, 92, 95-96, 113-115.

Since the ordinance was passed, the City has used it to justify not only the seizure, but also the destruction of homeless people's belongings throughout the City. SC ¶ 68. Plaintiffs in this case primarily challenge how LAMC 56.11 applies to them and other homeless people, both under the U.S. Constitution and state law. Plaintiffs also bring a facial challenge to the Bulky Item Provision.

In this motion, the Defendant challenges all of Plaintiffs' claims except for their as-applied constitutional claims. Defendant's arguments cannot withstand scrutiny.

First, contrary to Defendant's contentions, Plaintiffs can prevail on their facial challenge to the Bulky Item Provision at this stage so long as they allege that it is unconstitutional in the instances where it uniquely prohibits conduct and the law is relevant. *See City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). When the bases for seizing property that are unrelated to the challenged provision are removed (i.e., bases unrelated specifically to the size of property), the Bulky Item Provision cannot pass constitutional muster.

Second, Plaintiffs have sufficiently alleged that the Bulky Item Provision is void for vagueness because it provides limitless discretion for City workers to seize and destroy *any* bulky property in public spaces, permits for selective enforcement, and is not reasonably designed to inform the public about what is prohibited. *See* SC ¶¶ 59-63, 66, 92-96, 105-106. Plaintiffs have also sufficiently alleged that the Immediate Threat Provision is vague because the underlying regulations permitting seizure and destruction of "hazardous" material provides no guidance to the public and contains no threshold limits for hazardous material, providing unfettered

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

discretion to City workers to seize and discard nearly every item they encounter. *See* SC ¶¶ 59-63, 66, 92-96, 105-106.

Finally, Plaintiffs have alleged facts sufficient to support their state law claims and to provide notice of individual Plaintiff James Haugabrook's individual claims.

For the reasons herein, Plaintiffs request Defendant's motion be denied.

## II.   LEGAL STANDARD

A court should only grant a motion to dismiss where a Plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## III.   ARGUMENT

### a.  The Bulky Item Provision Is Unconstitutional

Although Plaintiffs primarily challenge the City's application of LAMC 56.11, Plaintiffs bring a facial challenge to one particularly egregious provision of LAMC 56.11: section 56.11(3)(i), the Bulky Item Provision. With a few very limited exceptions, this provision allows the City to seize and destroy people's belongings that do not fit in a 60-gallon container with the lid closed. LAMC 56.11 (2)(a), (3)(i). If a person is unwilling to give up his or her property, that person can be arrested and imprisoned for up to six months. LAMC 56.11(10)(d). The Bulky Item Provision does not require the City to obtain a warrant or provide any notice prior to seizing the property. LAMC 56.11(3)(i). Nor does the City provide the affected property owner with notice or an opportunity to challenge the seizure before the property is permanently destroyed. *Id.*

As discussed below, the Bulky Item Provision is unconstitutional under both the Fourth and Fourteenth Amendments of the U.S. Constitution because it places no constitutional limits on the City's ability to seize and immediately destroy items that it

3

determines are "bulky." As such, the Bulky Item Provision is not just an innocuous ordinance aimed at regulating the sidewalk.[1] It purports to grant the City broad authority to seize and destroy people's belongings, which is extraordinary overreach and anathema to the property protections guaranteed by the U.S. Constitution.

Rather than arguing that the seizure and immediate destruction of property based on the size of the property is constitutionally sound, the City argues that, under *United States v. Salerno*, 481 U.S. 739 (1987), Plaintiffs' facial challenges fail because this Court "cannot rule out the possibility that it could be constitutionally permissible in some instances to remove a Bulky item from a public space." Defendant's Rule 12(b)(6) Motion to Dismiss (MTD), 11:27-12:2. This argument overstates *Salerno*,[2] and runs contrary to more recent Supreme Court jurisprudence involving the City—*City of Los Angeles v. Patel*—that rejected the City's very argument here. In *Patel*, the Court struck down a Municipal Code provision that allowed the Los Angeles Police Department to inspect hotel registration logs without a warrant. 135 S. Ct. at 2453. In defending against a facial challenge, the City, relying on *Salerno*, made the same argument it makes here: since, in some instances, such as where there were exigent circumstances, the City obtained a warrant, or the owner

---

[1] Prior to the passage of 56.11, there was already an ordinance that prohibited unreasonable interference with free passage on the sidewalks. *See* LAMC 41.18(a). LAMC 56.11 also contains an entirely different provision concerning blocking the sidewalks. *See* LAMC 56.11(3)(d-e).

[2] The City seeks to broaden the standard set forth in *Salerno* by requiring Plaintiffs to show there is no "conceivable instances" in which the ordinance could be valid, MTD, 6:18, and stating that the challenge must fail because neither Plaintiffs nor the Court can "rule out any possibility" that it could be constitutionally permissible in some instances to remove a Bulky Item." *Id.* at 11:27-28. No court has used such sweeping language. In fact, even prior to the Court's clarification in *Patel*, the Ninth Circuit and Supreme Court questioned the scope and breadth of the "no set of circumstances" test. *See, e.g.*, *Sierra Club v. Bosworth*, 510 F.3d 1016, 1023 & n.4 (9th Cir. 2007) ("Jurisprudence appears to be divided on the question whether the *Salerno* 'no set of circumstances' standard is dicta or whether it is to be generally applied to facial challenges," and listing court rulings questioning *Salerno*).

4

gave consent, a search of the registration logs pursuant to the ordinance would be permissible, the facial challenge must fail. *Id.* at 2451-52.

The Court rejected this argument, stating that the City "misunderstands how courts analyze facial challenges." *Id.* at 2449. The Court noted that the approach advocated by the City would bar all facial challenges and explained that, while under *Salerno*, facial challenges "'are the most difficult to mount successfully,' the Court has never held that these claims cannot be brought under any otherwise enforceable provision of the Constitution." *Id.* (quoting *Salerno*, 481 U.S. at 745, and listing cases in which facial challenges have been entertained and statutes and ordinances struck down). Instead, "[w]hen assessing whether a statute meets this standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct," not where "the law is irrelevant." *Id.* at 2451. In other words, instances in which the City could otherwise seize or destroy the property—for example, because the property is contraband or abandoned—are irrelevant to the analysis of whether the ordinance is constitutional. The relevant question is about the constitutionality of the seizures that are "actually allowed,"—i.e., can occur only because of the size of the items. *Id.*; *see also Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449-50 (2008); *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013) (granting a facial challenge to a statute that banned abortions on the ground that the statute was invalid in "all the situations in which it would actually be determinative."). Applying the proper construct, it cannot be credibly disputed that the Bulky Item Provision of LAMC 56.11 is unconstitutional on its face.

### i.  The Bulky Item Provision Violates The Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures" of persons and property. U.S. Const. Amend. IV. The City concedes that "all individuals have a property interest in their personal property, regardless of its size." MTD, 9:19-20; *see also Lavan*, 693 F.3d at 1030. The City also concedes that the removal and destruction of that property are seizures within the meaning of the Fourth

Amendment. MTD, 8:6-7; *see also Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992).
Therefore, the question of whether the ordinance violates the Fourth Amendment is
whether the seizure and summary destruction of property, simply because a person
violates an ordinance that prohibits items that are too big from being in public, is
reasonable. Under controlling Ninth Circuit and Supreme Court precedent, it is not.

"A seizure conducted without a warrant is *per se* unreasonable under the Fourth
Amendment—subject only to a few specifically established and well delineated
exceptions." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005); *see also
Recchia v. City of L.A. Dep't of Animal Servs.*, 889 F.3d 553, 558 (9th Cir. 2018);
*United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). *Cf. Texas v. Brown*,
460 U.S. 730, 735-36 (1983) (listing exceptions to the warrant requirement).
Moreover, "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's
protection of one's property." *Lavan*, 693 F.3d at 1029, *see also Miranda*, 429 F.3d at
864. When an ordinance allows for a seizure of property without a warrant and
without a requirement that the seizure fall within a warrant exception, the ordinance is
unconstitutional on its face. *See Torres v. Puerto Rico*, 442 U.S. 465, 466 (1979).

Here, the Bulky Item Provision places no constitutional limits on the City's
ability to seize and destroy people's belongings that do not fit in a 60-gallon container
with the lid closed. It does not require the City to obtain a warrant, or as opposed to
other provisions of the law, meet any of the well-established exceptions to the warrant
requirement as required by the Fourth Amendment. *Compare, e.g.*, LAMC 56.11(h)
(allowing the City to seize and discard "evidence of a crime or contraband, *as
permissible by law*") (emphasis added). The City does not identify—nor can it—a
warrant exception or constitutional principle that allows it to seize and immediately
destroy items because of their size. *See Isaacson,* 716 F.3d at 1230; *Recchia*, 889 F.3d
at 558 ("Because warrantless searches and seizures are *per se* unreasonable, the
government bears the burden of showing that a warrantless search or seizure falls

within an exception to the Fourth Amendment's warrant requirement"). As such, the Bulky Item Provision is unconstitutional on its face.

The City's defense of the Bulky Item Provision is based on its misapplication of *Salerno*, which as discussed above, "misunderstands how courts analyze facial challenges." *Patel*, 135 S. Ct. at 2451. Contrary to the City's view, the relevant inquiry is whether a property's status as "Bulky," standing alone, is a proper basis for a warrantless seizure. There is no question that, in some instances, it could conceivably be reasonable to seize property that meets the definition of a bulky item. For example, the City could seize and destroy a refrigerator that was abandoned and illegally dumped on the sidewalk. But that would be true whether the refrigerator was an industrial refrigerator or dorm-sized minifridge with a volume of less than 60-gallons; it is the item's status as abandoned and illegally dumped that gives the City the ability to seize and destroy it, not that it could not fit within a 60-gallon container with the lid closed. Similarly, to address an immediate threat to public health and safety, the City could seize and destroy contaminated mattresses and couches, but the same is true for smaller items that fit in a 60-gallon container with the lid closed. *See* LAMC 56.11(3)(g); *see also Mitchell v. City of Los Angeles*, 16 -CV-01750-SJO-(JPR), 2017 WL 10545079, at *4 (C.D. Cal. 2017)[3]; *Recchia,* 889 F.3d at 559. And other provisions of LAMC 56.11 allow the City to remove property, regardless of size, that is blocking sidewalks or doorways, obstructing city operations, left in parks

---

[3] *Mitchell* was brought shorty before LAMC 56.11 was amended. As with *Lavan*, it resulted in a preliminary injunction preventing the seizure and destruction of property in Skid Row. The City sought to clarify they could still seize and destroy Bulky Items under the injunction. The Court denied the motion: "Enjoined Action No. 1 clearly permits the confiscation of property that 'presents an immediate threat to public health or safety.' There is no additional exception for bulky items nor is one necessary. If a bulky item 'presents an immediate threat to public health or safety' then it may be seized by the City and stored for the period of time designated in the Order. If a bulky item does not pose such a threat, then it must not be seized".

after closing, or is evidence of a crime or contraband. *See* LAMC 56.11(3)(c)-(h).[4]

The City's attempt to distinguish *Patel* based on *Sibron v. City of New York*, 392 U.S. 40 (1968) misses the mark. In *Sibron*, the Court considered New York State's "stop and frisk" statute, which "purports to authorize police officers to 'stop' people, 'demand' explanations of them, and 'search them' . . . upon 'reasonable suspicion' that they are engaged in criminal activity." 392 U.S. at 60. In declining to address the facial validity of the statute, the Court noted that the "constitutional point with respect to a statute of this peculiar sort . . . is 'not so much . . . the language employed as . . . the conduct it authorizes.'" *Id.* at 61-62. Because the statute did not describe the categories of conduct the same as the Fourth Amendment, there was no way to determine, based on the words alone, whether the conduct authorized was consistent with the Fourth Amendment. The Court therefore did not find it worthwhile to "pronounce judgment on the words of the statute." *Id.* at 62. The Court in *Patel* explained, "*Sibron* thus stands for the simple proposition that claims for facial relief under the Fourth Amendment are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes." *Patel*, 135 S. Ct. at 2450.

Here, by contrast, there is no question that LAMC 56.11(3)(i) authorizes the City to seize and immediately destroy property without a warrant solely because of its size.  "[R]emov[ing]" and "discard[ing]" property unquestionably constitutes seizures for purposes of the Fourth Amendment. *See Lavan,* 693 F.3d at 1027; *Hells Angels Motor Club*, 402 F.3d at 975. And unlike in *Sibron*, where "reasonable suspicion" based on police safety and to prevent crime would be constitutionally acceptable, there is no set of circumstances in which the seizure and destruction of property based

---

[4] Notably, with the exception of LAMC 56.11(3)(h), property that is not a Bulky Item that is seized pursuant to any of these provisions must be stored and held by the City for 90 days. The distinction between storage and destruction in these instances rests solely on the size of the item, which further underscores the unconstitutionality of LAMC 56.11(3)(i). *See San Jose Chapter of the Hells Angels Motor Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005).

on size alone is constitutionally permissible.

The City's final argument that the destruction of bulky items is reasonable because the City does not have the capacity to store all the items it seizes only further proves Plaintiffs' point. Far from rendering the destruction of these items reasonable, if the City cannot store an item it seizes and must therefore destroy it, this renders the initial seizure unreasonable. The City simply cannot take a person's property and then permanently destroy it because the City lacks the space to store it.

### ii. The Bulky Item Provision Violates The Fourteenth Amendment

Under the Due Process Clause of the Fourteenth Amendment, the state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Where an individual is deprived of a property interest, the Court has long held that the gravity of a deprivation is irrelevant to the question whether account must be taken of the Due Process Clause. *See Goss v. Lopez*, 419 U.S. 565, 576 (1975). "[T]o put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982).

The amount of process that is due depends on the specific interest, balanced against the government interest at stake, but at a minimum, the procedural safeguards must include "an opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *see also Brewster v. Bd. of Educ.*, 149 F.3d 971, 984 (9th Cir. 1998). "[I]t has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest." *Logan*, 455 U.S. at 433 (emphasis in original, citing *Bd. of Regents v. Roth*, 408 U.S. 408 U.S. 564, 570-71, n.8 (1972). In fact, seizure of property without a pre-deprivation hearing has been sustained only in emergencies and "where the owner is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause." *Styppman v. City and Cty. of San Francisco*,

557 F.2d 1338, 1344 & n.3 (9th Cir. 1977) (collecting cases); *see also Lavan*, 693 F.3d at 1032-33. *Cf. N. Am. Cold Storage Co., v. City of Chicago*, 211 U.S. 306, 320 (1908) (preventing the consumption of putrid chicken is sufficient an emergency to justify foregoing pre-deprivation hearing, but noting that in post-seizure challenge, the party that seized the property had the burden of showing the seizure was justified).

Under LAMC 56.11(3)(i), the City can seize and immediately destroy any item the City determines is "bulky.". The ordinance provides no notice or any opportunity to contest the deprivation, either before or after it is seized. Instead, once a city worker decides that an item is "bulky," the item is immediately seized and destroyed. *Compare, e.g.,* LAMC 56.11(3)(a), (b) and (4)-(6) (providing both pre- and post-deprivation notice and storage requirements for belongings that are not considered "bulky"). At no point is a person given any opportunity to contest the determination that the item is bulky and can be immediately destroyed. In fact, the ordinance goes so far as to provide that a person can be arrested and imprisoned for up to six months, simply for refusing to give up their belongings to be destroyed. LAMC 56.11(10)(d). This failure to provide any process at all violates the Fourteenth Amendment.

The Ninth Circuit's decision in *Lavan* is on point. In upholding a preliminary injunction that prevented the City from seizing and destroying property without due process, the *Lavan* court reasoned that "'[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.' This simple rule holds regardless of whether the property in question is an Escalade or an EDAR, a Cadillac or a cart." 693 F.3d at 1032 (quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)). The Court also noted that "the City demonstrates that it completely misunderstands the role of due process by its contrary suggestion that homeless persons instantly and permanently lose any protected property interest in their possessions." *Id.*

Despite the Ninth Circuit's rebuke, the City seems to advance the same argument again here. The City suggests that "where the government has enacted a rule

of law uniformly affecting all citizens that establishes the circumstances in which a property interest will lapse through the inaction of its owner, the Court has held that no additional, individualized notice is required," MTD, 14:17-20 (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 537 (1982)), but this argument misunderstands the nature of property rights and due process. A violation of LAMC 56.11(3)(i) does not cause a person's property rights to "lapse." First, property rights are a creation of state law, and municipalities do not have the authority to strip a person of his or her property rights through enactment of an ordinance. Second, an individual does not lose a property interest by violating a city ordinance. *See Lavan*, 693 F.3d at 1032 ("Even if Appellees had violated a city ordinance, their previously-recognized property interest is not thereby eliminated"). As the Court in *Lavan* explained, "due process requires law enforcement to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *Id.* Finally, even if a violation of an ordinance warranted the seizure and destruction of property left on the sidewalk, a questionable proposition but not one at issue here, "the City is required to provide procedural protections before permanently depriving [individuals] of their possessions." *Id.*

The City's primary argument against Plaintiffs' facial challenge again relies on a misunderstanding of *Salerno*. As discussed above, the City cannot defeat a due process challenge to the Bulky Item Provision by pointing out instances in which the City could be justified in immediately destroying property that have nothing to do with the size of the property. Nor can the City save the ordinance by suggesting that the City could provide more process than the ordinance requires. *See, e.g.*, MTD, 16:10-17. "In determining whether a law is facially invalid, [the Court] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 449-50. When a court analyzes if a statute affords due process, it does not consider what due process *could* be provided; rather, it looks at what due process is actually afforded by the

statute. *See Salerno*, 481 U.S. at 752.

The City's argument also ignores the fact that courts have had no problem striking down ordinances closely related to the Bulky Item Provision because the ordinance or statute provided insufficient due process, let alone no due process at all.[5] For example, in *Fuentes v. Shevin*, 407 U.S. 67 (1972), the Court struck down Florida and Pennsylvania replevin statutes because they did not provide sufficient due process before the seizure of individuals' personal property. 407 U.S. at 95; *see also Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338 (1969) (striking down a Wisconsin statute because notice and an opportunity to be heard are not given before the in rem seizure of wages); *Kash Enters., Inc. v. City of Los Angeles*, 19 Cal. 3d 294, 309 (1977) (holding that a Los Angeles ordinance was unconstitutional "insofar as it provides for the seizure, retention and destruction of newsracks without affording the owner any hearing on the merits of the seizure"); *Styppman*, 557 F.2d at 1343 (striking down a provision of the California Veh. Code and a San Francisco ordinance allowing the towing of vehicles without due process). Courts are especially willing to strike down ordinances through facial challenges where, as here, the statute provides no due process at all. *See e.g.*, *Draper v. Coombs*, 792 F.2d 915, 923 (1986); *Propert v.*

---

[5] The cases actually relied on by the City do not support its position and are inapplicable here; they arise in completely distinct contexts and most provide for notice and an opportunity to be heard. *See e.g. Texaco, Inc.*, 454 U.S. at 537 (severed mineral estates *extinguished* by state law after two years notice); *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961) (removal of security clearance for a civilian cafeteria worker on a military base not a protected property interest); *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1238 (9th Cir. 2009) (pre-deprivation notice of tow for violation of statute not always necessary where notice of tow given and post-deprivation hearing); *Covelo Indian Cmty v.Fed. Energy Reg. Comm.*, 895 F.2d 581, 587-88 (9th Cir. 1990) (actual notice of relicensing proceedings not required for all property owners near site, since proceeding would not impact protected property interest); *Lu v. Hulme*, 133 F. Supp. 3d 312, 333 (D. Mass. 2015) (informal meeting sufficient due process to prohibit individual from bringing his belongings into the library, where more formal hearing available for suspension or exclusion).

*District of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991); *Wong v. City and Cty. of Honolulu*, 333 F. Supp. 2d 942, 948-50 (D. Hawaii 2004) ("[T]he Court cannot conceive of a situation where disposition of a vehicle without notice would satisfy constitutional requirements just because the vehicle is ten-model-years-old or older. . . ."); *HVT v. Port Auth. of N.Y. and N.J.*, No. 15CV5867MKBVMS; 2018 WL 3134414, at *15 (E.D.N.Y. Feb. 15, 2018).

Where, as here, a city ordinance provides no due process before permanently depriving an owner of their property, the ordinance is unconstitutional on its face.

### b.  Sections Of LAMC 56.11 Are Impermissibly Vague As Written And As Applied To Plaintiffs

Plaintiffs have sufficiently stated a claim that the application of two provisions of LAMC 56.11 the City relies on to immediately dispose of their belongings are impermissibly vague, both facially[6] and as-applied. *See* SC ¶¶ 60-64, 66, 74-76, 83, 92-96. A vague statute or ordinance can violate due process in two independent ways: "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Desertrain v. City of Los Angeles,* 754 F.3d 1147, 1155 (9th Cir. 2014) (quoting *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999)) (citation omitted); *see also Sessions* v. *Dimaya*, 138 S. Ct. 1204, 1212 (2018) ("The [vagueness] doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges"). Indeed, "[t]he Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and

---

[6] Plaintiffs need not show, for purposes of a facial challenge, that the statute is vague "in every circumstance." *Guerro v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018); *see also Helicopters for Ag. v. Cty. of Napa*, 384 F. Supp. 3d 1035, 1039 (N.D. Cal. 2019) ("Our court of appeals lowered the burden for parties, like plaintiffs, that bring facial void for vagueness challenges as the government cannot defeat challenges by simply offering a single example where a law could be clearly applied").

leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.'" *Morales*, 527 U.S. at 60 (quoting *United States v. Reese,* 92 U.S. 214, 221 (1876)).[7]

### i. The Bulky Item Provision Is Impermissibly Vague

First, the limitless discretion given to city workers and police to enforce the Bulky Item Provision under LAMC 56.11 invalidates the provision. As the City concedes, the ordinance applies to *all* items left by *any* person on sidewalks and other public spaces. MTD, 2:19-20; *see also* 56.11(2)(j). But items do not even have to be "left" in public to be subject to immediate seizure and destruction. The owner can be with the item and need only to "place" it in public, even temporally, for it to fall under the ambit of the ordinance. *See* LAMC 56.11(2)(o) (defining "store," "stored," "storing," or "storage" to mean "to put Personal Property aside or accumulate for use when needed, to put for safekeeping, and/or to place or leave in Public Area").

Therefore, under LAMC 56.11(j), a person simply walking down the street who rests a large package on the ground is unwittingly violating LAMC 56.11(j). Likewise,

---

[7] While a violation of LAMC 56.11 does not, in most circumstances, result in jail or fines, cases analyzing traditionally criminal ordinances applies with equal force here. Courts have expressly rejected attempts to draw a bright line between criminal and civil statutes. *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989); *see also Dimaya*, 138 S.Ct. at 1212; *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). Instead, when determining "the degree of vagueness which the Constitution tolerates," *Doremus*, 888 F.2d at 634, the court looks to a number of factors, including whether the ordinance or statute is an economic regulation, whether it has a prohibitory and stigmatizing effect, if it has a scienter requirement, and if it "threatens to inhibit the exercise of constitutionally protected rights." *Id.* Here, although LAMC 56.11 provides for jail and fines only if one resists enforcement of the ordinance, a violation of the Bulky Item or Immediate Threat Provisions results in the immediate and permanent loss of property. This is a stiff penalty for which there is no scienter requirement. Moreover, by allowing the immediate destruction of property with no due process, the ordinance impedes on a person's constitutionally protected property interests. *See Colautti v. Franklin,* 439 U.S. 379, 391 (1979).

every car that is illegally parked or even idling in a red zone falls within the definition of a "bulky item," subject to immediate seizure and destruction. A cyclist on a long bike ride, whose bike chain snaps, has an "inoperable" bicycle that could be immediately seized and destroyed. Lime and Bird scooters that are parked in impermissible locations, restaurant tables and chairs that spill onto public rights of way, and even large suitcases set on the curb by passengers waiting for the bus are "bulky items" that could be seized and immediately destroyed.

In this way, LAMC 56.11(3)(i) suffers from the same vagaries as other ordinances struck down by the U.S. Supreme Court and Ninth Circuit. In *City of Chicago v. Morales*, the Court struck down a loitering statute in Chicago on vagueness grounds because although the actual words of the ordinance were clear, the statute as written was so broad that it was vague as to what was actually prohibited. 527 U.S. at 57. As the Court explained, "[s]ince the city cannot conceivably have meant to criminalize each instance a citizen stands in public with a gang member, the vagueness that dooms this ordinance is not the product of uncertainty about the normal meaning of 'loitering,' but rather about what loitering is covered by the ordinance and what is not." *Id.*; *see also Desertrain*, 754 F.3d at 1156.

The same is true here. While it is undoubtedly true that the City did not intend to include cars left idling in the red zone or for police to be able to wrestle luggage away from tourists, or even clear away Lime and Bird scooters blocking the sidewalks and streets, this is precisely the problem with LAMC 56.11(3)(i). The ordinance provides no further clarification as to what conduct the City means to prohibit, and what it does not. As such, the "vagueness that dooms this ordinance" is the absolute discretion it gives to law enforcement and sanitation workers to decide if and when it is permissible to seize and immediately destroy the vast array of bulky items that exist in public spaces. This "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat." *Kolender v. Lawson,* 461 U.S. 352, 360 (1983); *see also Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011)

(ordinance is vague when it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application"). Moreover, the vagueness of the ordinance opens the door for selective enforcement, which "the vagueness doctrine is designed specifically to prevent." *Desertrain*, 754 F.3d at 1156 (ordinance that prohibited living in vehicles was vague because it was "broad enough to cover any driver in Los Angeles who eats food or transports personal belongings in his or her vehicle. Yet it appears to be applied only to the homeless.").

This unfettered discretion to enforce the ordinance is compounded by the complete lack of due process afforded individuals to challenge city workers' on-the-spot decision to seize and destroy a person's belongings. This makes the vagueness of the underlying statute and the unfettered discretion "particularly objectionable." *See Smith v. Goguen*, 415 U.S. 566, 578 (1974).

The City defends the Bulky Item Provision by arguing that it provides "close to mathematical certainty" in its definition of "bulky item." Not only does this ignore the primary basis for Plaintiffs' vagueness challenge, it also ignores the deep ambiguities in the definition of "bulky item," which "fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Hunt*, 638 F.3d at 712. The "bulky item" designation rests entirely on whether a specific item can fit into "a 60-gallon container with the lid closed." LAMC 56.11(2)(c). But the volume of a theoretical container is insufficient to give notice about what is prohibited, since the *dimensions* of the container will dramatically affect what will fit inside. *See* Def's Request for Judicial Notice (RJN), Exh. 2 at p. 32 (clarifying that a "Bulky Item" as "any item possessing size and/or shape which will not allow the item to fit into a 60-gallon receptacle with the container lid closed"). The impact of this ambiguity is not merely hypothetical; even the City's paradigmatic "ladder", MTD, 12:1-13, could conceivably fit in some sixty-gallon containers but not others. And Plaintiffs have sufficiently alleged that same is true for Mr. Diocson's dog kennel, SC ¶¶ 211-212;

16

Mr. Haugabrook's chairs, SC ¶ 198; Mr. Ashley's carts, SC ¶¶ 217, 222-223; and items seized from the other plaintiffs.[8] As such, Plaintiffs have sufficiently stated a claim that the Bulky Item Provision is vague, and their due process rights were violated when the City seized and immediately destroyed their belongings pursuant to that statute. *See United States v. Approx. 64,695 Pounds. of Shark Fins*, 520 F.3d 976, 982 (9th Cir. 2008).

### ii. Plaintiffs Have Sufficiently Pled The Immediate Threat Provision Is Vague As Applied To Plaintiffs

While the term "immediate threat to public health and safety" has been used by the Court, *see e.g.*, *Lavan.* 693 F.3d at 1024 (citing *Lavan*, 797 F. Supp. 2d at 1020), this "does not offer the City a per se harbor from a vagueness challenge," *Hunt,* 638 F.3d at 713 (holding that a definition used by the City in a street vending ordinance was vague, even though the City had copied and pasted the legal standard from a judicial opinion). Moreover, the City has adopted protocols that further define the term and create uncertainty. Per the regulations, material is considered to be a health and safety hazard when "there is statistically significant evidence based on at least on study conducted in accordance with established scientific principles that acute or chronic health effects may occur in exposed persons." Def's RJN, Exh. 2 at p. 29. This definition bears no resemblance to the judicially-defined "immediate threat to public health and safety." Importantly, it removes any consideration of immediacy, let alone a requirement of exigency. *See also Recchia,* 889 F.3d at 558 (allowing the seizure of

---

[8] The City faults plaintiffs for failing to identify specific items or details about the items that were seized as bulky items. *See* MTD, 17:17-24. However, as Plaintiffs have alleged, the City failed to provide any notice or explanation of the grounds for seizing individual items. Plaintiffs do not yet have details about the items they know were seized as bulky, nor do they have any way of knowing if other items were seized and destroyed because the City determined they were bulky, were an immediate threat to health and safety, or some other unknown reason. For purposes of notice pleadings, Plaintiffs have sufficiently pled that the ordinance is vague as applied to them.

items pursuant to the emergency or exigent circumstances, in order to address hazardous conditions). *Cf. Mitchell*, 2017 WL 10545079, at \*4. And it is vague under both tests used by the Court. *See Desertrain,* 754 F.3d at 1155.

First, the definition of "hazard" is so vague that it "fails to give ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). "The purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." *Desertrain*, 754 F.3d at 1155. An ordinary person would have no way of knowing whether their belongings contain material that has been found in "a scientific study, conducted in accordance with established scientific principles" to cause "acute or chronic health effects . . . in exposed persons." Def's RJN, Exh. 2 at P. 29. An ordinary person does not have, nor could be expected to have access, to every scientific study ever conducted, to determine if a material is considered hazardous. Without that information, individuals have no way to know if his or her belongings would be considered "an immediate threat to public health and safety," and subject to impound and immediate destruction.

Second, the "hazardous" definition renders this provision "so vague and indefinite as really to be no rule or standard at all." *Fang Lin Ai v. U.S.*, 809 F.3d 503, 514 (9th Cir. 2015); *see also Doe #1 v. City of San Diego*, 363 F. Supp. 3d 1104, 1117 (S.D. Cal. 2019) (plaintiff sufficiently pled a cognizable legal theory challenging an ordinance on the ground that it was difficult to ascertain the property lines of structures named in an ordinance). The definition of hazard includes no threshold limits on the amount of hazardous material that must be present in a specific item or the length of exposure one must have to a given material to render it hazardous. Nor is there any standards for the type of "acute or chronic health effect" that would constitute a "hazard." *Compare, e.g.*, Safe Drinking Water and Toxic Enforcement Act of 1986, Ca. Health and Safety Code § 24249.5 *et seq*. ("Proposition 65") (setting threshold limits on amount of toxic material present in and length of exposure to an item before statutory notice requirements are triggered and limiting the type of harm

18

to cancer and negative reproductive health impacts).

As a result of the uncertainty and limitless discretion, Plaintiffs allege that the City throws away nearly every item it comes in contact with as "an immediate threat to public health and safety," including Plaintiffs' belongings. *See* SC ¶¶ 64, 104, 106-112. At this stage, Plaintiffs have sufficiently stated a cognizable claim that the Immediate Threat Provision, as defined by the regulations and as applied to Plaintiffs, is unconstitutionally vague. *See Colautti*, 439 U.S. at 398 (relying on expert testimony related to a contested technical definition to determine that a statute was vague); *Desertrain*, 754 F.3d at 1155-56 (relying on evidence of how the ordinance was enforced to demonstrate that the ordinance was impermissible vague). *Cf. Village of Hoffman Estates*, 455 U.S. at 503–04 (holding that, for purposes of a pre-enforcement challenge, the ordinance was sufficiently clear, but that "no evidence has been, or could be, introduced to indicate whether the ordinance has been enforced in a discriminatory manner" and suggesting a challenge could be mounted in the future).

### c.  Plaintiffs Have Sufficiently Pled State Law Claims

#### i.  Plaintiffs Complied With The Government Claims Act

The City argues that Plaintiffs' state law claims should be dismissed because Plaintiffs failed to comply with the Government Claims Act, Ca. Gov't Code § 905 *et seq*. As an initial matter, this presumes the Government Claims Act must have been exhausted before bringing this case. The filing requirement only applies to "actions in which money damages are not incidental or ancillary to any specific relief that is also sought, but the primary purpose of the action." *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 762 (Cal. Ct. App. 2002). Thus, "where a claimant seeks both damages and nonmonetary relief from a public entity in the same action, the applicability of the claim filing requirement turns on whether the damages sought are *ancillary* to the equitable relief also sought." *Id.*; *see also Indep. Hous. Servs. v. Fillmore Ctr. Assoc.*, 840 F. Supp. 1328, 1358 (N.D. Cal. 1993). This action is primarily for injunctive and declaratory relief, and thus no tort claims were actually required.

But even if they were required, all Plaintiffs have properly exhausted their remedies under Gov't Code § 905 *et seq*. First, Plaintiffs' tort claims were all timely filed before the individual plaintiffs brought state law claims against the City. Mr. El-Bey filed his Tort Claim on July 9, 2019, before the initial complaint was filed. SC ¶ 189. The other Plaintiffs filed claims in August and September 2019.[9]  And while those claims were filed after the original complaint was filed, the individual Plaintiffs, with the exception of Mr. El-Bey, raised only federal claims in the initial complaint.[10]

Even if Plaintiffs added state law claims before the claims were denied, Plaintiffs have substantially complied with the Act's requirements, which is all that is required. *See Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 697 (Cal. Ct. App. 1990), modified (Feb. 20, 1990) (citing *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 456-57 (1974)) ("Courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the Act."). "[W]hen a plaintiff submits a timely claim to the board but then prematurely files suit—as here—courts have 'refused to dismiss the action because the plaintiffs had substantially complied with the claim presentation requirement' and 'had satisfied the purpose behind the requirement.'" *Roberson v. Hedgpeth*, No. CV 1-08-668-DGC, 2009 WL 3634193, at *5 (E.D. Cal. Oct. 30, 2009) (citing *Westcon Const. Corp. v. County of Sacramento*, 152 Cal. App. 4th 183, 200 (Cal. Ct. App. 2007)). The case cited by Defendant do not suggest otherwise. *See City of Stockton v. Superior Court*, 42 Cal. App. 4th 730, 738-39 (Cal. Ct. App. 2007).

By the time the operative complaint was filed on October 17, 2019, all the claims had been rejected by operation of law, *see* Gov't Code § 912.4; thus plaintiffs

---

[9] Garcia submitted a claim on July 26, 2019. SC ¶ 189. Zepeda, Zamora, Haugabrook, Diocson, and Ashley submitted claims on August 23, 2019. SC ¶¶ 171, 207, 216, 229.
[10] There is, of course, no requirement that plaintiffs file Government Tort Claims to pursue federal claims in federal court, including federal claims for damages. *See Willis v. Reddin*, 418 F.2d 702, 703 (9th Cir. 1969)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

have properly pled they have exhausted their remedies under the Government Claims Act. *See J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal. 5th 648, 655 (2017). Because Plaintiffs have substantially complied with the Act and properly pled as much, the state law claims should not be dismissed.

### ii. The City Is Not Immune From Plaintiffs' State Law Claims

#### 1. Immunity Does Not Apply To Plaintiffs' State Constitutional Claims

Equitable relief is the crux of Plaintiffs' case, and as noted by the City, Plaintiffs are entitled only to equitable relief for violations of the California Constitution. MTD, 6, n. 6. As such, immunity does not apply to these claims. "Courts have determined that under section 814, Government Code immunities extend only to tort actions that seek money damages." *Schooler v. State of California*, 85 Cal. App. 4th 1004, 1013 (Cal. Ct. App. 2000); *see id.* at 1014 ("The example of equitable relief provided by the Legislative Committee comment is the enjoinment of an unconstitutional statute. As applied here, the enjoinment of an unconstitutional statute is not contrary to the policy behind section 831.25"); *see also Salazar v. Schwarzenegger*, No. CV071854SJOVBKX, 2007 WL 9662364, at *5 (C.D. Cal. Oct. 23, 2007) (citing Cal. Gov't Code § 814) ("Nothing in the [Government Code immunity] sections prevents Plaintiffs from pursuing injunctive relief.").

#### 2. Government Code § 820.20 Does Not Apply Because The Challenged Actions Were Not Discretionary

First, Section 820.2 immunity does not apply to Mr. El-Bey's Bane Act claims. Section 820.2 is to be construed narrowly. *See Johnson v. State of Cal.*, 69 Cal. 2d 782, 798 (1968) ("[C]ourts should not casually decree government immunity."). "Section 820.2 immunity does not apply to all acts by public employees within the literal meaning of the term 'discretionary.' Rather, the immunity is more limited." *Ohlsen v. Cty. of San Joaquin*, No. 2:06-CV-2361-GEB-GGH, 2008 WL 2331996 at *5 (citing *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (Cal. Ct. App.

2007)). "Instead, "[a] workable definition of immune discretionary acts draws the line between 'planning' and 'operational' functions of government." *Id.*

In *Ohlsen*, the court found that "since the decisions to enter plaintiff's home without a warrant and arrest him were not 'basic policy decision[s],' but were 'only operational decisions by the police,' the County has failed to show that sections 815.2 and 820.2 provide immunity from Plaintiff's section 52.1 claims. *Id.* at *13-14; *see also Bell v. State of Cal.,* 63 Cal. App. 4th 919, 929 (Cal. Ct. App. 1998). Similarly here, the acts at issue were decisions meant to keep Mr. El-Bey away from his property, by threatening him with arrest. SC ¶ 175-180. They were not policy decisions and thus not discretionary acts afforded immunity under Section 820.2.

Section 820.2 immunity for discretionary acts also does not apply to Plaintiffs' claim for violation of Section 815.6 and Civil Code 2080. As discussed below, Section 2080.10 establishes a *mandatory* duty upon the City, which forms the basis for Plaintiffs' claim under Civil Code 815.6, that City employees violated a mandatory duty. *See* Cal. Civ. Code §§ 2080.10(a)(1), (2) ("When a public agency obtains possession of personal property, . . . *the public agency shall* . . . take responsibility for the storage, documentation, and disposition of the property" (emphasis added)). Section 820.20 immunity does not apply to laws that impose a mandatory duty and do not allow for discretion. Courts have held that this immunity only applies to "discretionary acts. . . when making basic policy decisions," *see Bell*, 63 Cal. App. 4th at 929, and does not apply to "ministerial" acts, *Morgan v. Yuba Cty.*, 230 Cal. App. 2d 938, 942-43 (Cal. Ct. App. 1964). Thus, Section 820.2 does not immunize mandatory conduct. *See Estate of Abdollahi v. Cty. of Sacramento,* 405 F. Supp. 2d 1194, 1213 (Section 820.2 does not apply when regulations not followed).

### 3.  Government Code § 820.6 Does Not Apply At This Juncture

The City relies on Government Code § 820.6, but "that section expressly requires the government employees to have acted in good faith, a subjective inquiry

not subject to resolution at the pleading stage." *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, No. C 08-4220 RS, 2010 WL 2465030, at *5 (N.D. Cal. June 11, 2010); *Salazar*, 2007 WL 9662364, at *6 ("Because immunity is not evident on the face of the pleadings, Plaintiffs may pursue their claims under state law for monetary damages."). Plaintiffs should be permitted to proffer evidence that city workers did not act in good faith in enforcing LAMC 56.11. *See Woods v. Aug.*, No. 3:15-CV-05666-WHO, 2018 WL 5841311, at *3 (N.D. Cal. Nov. 8, 2018) ("[A] jury will have to resolve factual disputes, judge credibility, and otherwise weigh evidence in order to determine whether the defendants acted in good faith or with malice."). This Court should therefore decline to consider § 820.6 immunity at this stage.

### iii. Plaintiff Ali El-Bey's Bane Act Claims Should Prevail Over The City's Motion to Dismiss

To state a claim under the Bane Act, plaintiffs "must plausibly allege the defendant 'had a specific intent to violate his right to freedom from unreasonable seizure,' and need not allege 'something beyond the coercion inherent in the wrongful detention.'" *Watkins v. City of Oakland*, 2018 WL 574906, *13, *38 (N.D. Cal. Jan. 26, 2018) (citing *Cornell v. City of San Francisco*, 17 Cal. App. 5th 766, 801-802 (Cal. Ct. App. 2019)).

Here, Mr. El-Bey alleges that an officer threatened him with arrest after Mr. El-Bey requested additional time to remove his belongings. SC ¶ 179. This occurred directly after officers in several patrol cars showed up on the scene followed by a LA Sanitation truck, after Mr. El-Bey was told to pack up and leave, and after Mr. El-Bey struggled to pick up his belongings in the short amount of time allotted. SC ¶ 175-179. The officers threatened Mr. El-Bey with arrest if he interfered with the pickup. SC ¶ 148-181. Mr. El-Bey, afraid to be arrested if he exercised his rights to keep his belongings, was forced to stand by and watch them destroyed. SC ¶ 181-182.

This sufficiently alleges the City violated Mr. El-Bey's rights under both state and federal laws, and respective constitutions, through threat and intimidation, and

with the specific intent to keep Mr. El-Bey from his belongings so that they could be seized by the City. As in *Watkins*, "[these] allegations support a plausible inference that defendants engaged in that conduct with the particular purpose of depriving plaintiff of his enjoyment of the interests protected by the Fourth Amendment right to be free of unreasonable seizure." *See* 2018 WL 574906 at *38-39. Based on the pleading standards, the allegations are sufficient to survive Defendant's motion. *Id.*

### iv.   Plaintiffs Have Sufficiently Pled Their Seventh Cause Of Action

Defendant argues that Plaintiffs did not sufficiently plead their claims under Section 2080 et seq. because the property taken by the City, subsequently held or destroyed, is not "lost" within the meaning of Section 2080. However, two separate courts in this district have held the provisions of Section 2080 apply to unhoused people's property. *Lavan*, 797 F. Supp. 2d at 1016; *Cooley v. City of Los Angeles*, No. 218CV09053CASPLAX, 2019 WL 1936437, at *7 (C.D. Cal. May 1, 2019) (finding § 2080 applies even when a person is present with the property).

Moreover, Section 2080.10 establishes that "when a public agency obtains possession of personal property from a person," it must take certain steps to preserve the property and provide the owner with notice and instructions as to how to retrieve their belongings. Cal. Civ. Code § 2080.10(a)(1)(2). There is no requirement the property be "lost" for this section to apply. Plaintiffs sufficiently allege that the City took possession of Plaintiffs' property. *See* SC ¶¶ 127-135; 140-46; 155-63; 168-169; 173-85; 193-198, 200-02, 204-05; 212-215; 223-227. The instant the City did so, the City and its employees had a mandatory duty to preserve the property and follow Civil Code 2080. *See Lavan*, 797 F. Supp. 2d at 1016. Plaintiffs further allege the City violated that duty by immediately destroying Plaintiffs' belongings, rather than holding them as required by the statute. *See* SC ¶ 268; *see also* Cal. Civ. Code § 2080.10. Plaintiffs sufficiently plead the City failed to comply with an affirmative duty, and therefore, is liable under Civil Code Section 815.6.

24

### v. Defendant's Rule 8 Argument Is Without Merit

Finally, Defendant argues Mr. Haugabrook fails to provide "fair notice" of his claims by failing to provide the date and location of the alleged incidents.[11] There is no merit to this claim. Mr. Haugabrook pinpoints a precise location to his incidents, SC ¶ 191, as well as several approximate and exact dates, SC ¶¶ 193, 197, 205. To the extent the City argues he failed to provide "fair notice" because the Supplemental Complaint, filed in October 2019, states he was living at this location for the past four to six months but one of the alleged incidents occurred in March 2019, this is not a basis to dismiss his claims. The time frame relates to the original complaint filed in July 2019 (and appears in the original complaint). Thus, it provides "fair notice" of the allegations. *See Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1031 (S.D. Cal. 2018) (citing Fed. Rule Civ. Pro. 8(e)); *see also Mut. Creamery Ins. Co. v. Iowa Nat. Mut. Ins. Co.*, 427 F.2d 504, 507–08 (8th Cir. 1970) ("[P]leadings must be construed liberally in order to prevent errors in draftsmanship or the like from barring justice to litigants. Such pleadings must be . . . judged by substance rather than form").

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs have sufficiently stated claims under Rule 12(b)(6) and Rule 8, and the City's Motion to Dismiss should be denied. To the extent the Court grants the City's Motion to Dismiss on the ground that Plaintiffs failed to plead elements of a claim, Plaintiffs should be granted leave to amend.

Dated:  November 12, 2019          Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

/s/ Shayla Myers
By: Shayla Myers
*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, Ali El-Bey, Pete Diocson Jr., Marquis Ashley, James Haugabrook, and Ktown for All*

---

[11] The City failed to meet and confer on this issue in violation of Local Rule 7.3 and should be denied on that ground alone. *See Decl. of Catherine Sweetser* ¶ 6.

SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP

/s/ Catherine Sweetser

By: Catherine Sweetser
*Attorneys for All Plaintiffs*

KIRKLAND & ELLIS LLP

/s/ Benjamin Allen Herbert

By: Benjamin Allen Herbert
*Attorneys for Ktown for All*

Local Rule 5-4.3.4 Attestation

I attest that Plaintiffs' counsel, Shayla Myers and Catherine Sweetser, concurs in this filing's content and has authorized the filing.

DATED: November 12, 2019                    KIRKLAND & ELLIS LLP

By: */s/ Benjamin Herbert*
*Attorneys for Ktown for All*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS