MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Chief, Civil Litigation Branch (SBN 184980)
FELIX LEBRON, Deputy City Attorney (SBN 232984)
**A. PATRICIA URSEA, Deputy City Atty (SBN 221637)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br>*Plaintiffs*,<br>vs.<br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br>*Defendant(s)*. | Case No.: 2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br>**DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO DISMISS SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT (FED. R. CIV. PROC. 12(b)(6))**<br>Date:  December 2, 2019<br>Time:  1:30 p.m.<br>Ctrm:  7D<br>**Judge:  Hon. Dale S. Fischer** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 3

    A. The Fourth Amendment Requires a Balancing Of Interests. ........................ 3

    B. Due Process Also Requires A Balancing Of Interests. .................................. 6

    C. By Plaintiffs' Own Admission, The Ordinance Is Not Vague. ...................... 7

    D. Plaintiffs' Failure To Comply With The Claims Act Is Inexcusable ............. 9

    E. Immunities Bar Plaintiffs' State Law Claims. ............................................. 10

    F. Plaintiff El-Bey Has Not Stated A Bane Act Claim. .................................... 11

    G. Plaintiffs' Allegations Do Not Establish Applicability of Section 2080. .... 11

    H. Haugabrook's Claims Should Be Dismissed. ............................................. 12

III. CONCLUSION ............................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bell v. Wolfish*,
　441 U.S. 520 (1979) ................................................................................................ 3

*BlueEarth BioFuels, LLC v. Hawaiian Elec. Co.*,
　780 F. Supp. 2d 1061 (D. Haw. 2011) .................................................................... 8

*City of Stockton v. Superior Court*,
　42 Cal.4th 730 (2007) ........................................................................................... 10

*Conway v. County of Tuolomne*,
　231 Cal. App. 4th 1005 (2014) ............................................................................. 10

*Giaccio v. Pennsylvania*,
　382 U.S. 399 (1966) ................................................................................................ 7

*Hill v. Colorado*,
　530 U.S. 703 (2000) ................................................................................................ 7

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
　452 U.S. 264 (1981) ............................................................................................ 8, 9

*Lopez v. Sessions*,
　901 F.3d 1071 (9th Cir. 2018) ................................................................................ 8

*Martinez-de Ryan v. Whitaker*,
　909 F.3d 247 (9th Cir. 2018) .................................................................................. 8

*Mich. Dep't of State Police v. Sitz*,
　496 U.S. 444 (1990) ................................................................................................ 3

*Moyer v. Tilton*,
　2008 WL 483718 (E.D. Cal. Feb. 19, 2008) ........................................................ 11

*Nat'l Treasury Emps. Union v. Von Raab*,
　489 U.S. 656 (1989) ................................................................................................ 3

*Nguyen v. Los Angeles County Harbor/UCLA Med. Ctr.*,
　8 Cal. App. 4th 729 (1992) ..................................................................................... 9

*City of L.A. v. Patel*,
   135 S. Ct. 2443 (2015) .................................................................................... 1, 2, 4

*Ohio v. Robinette*,
   519 U.S. 33 (1996) ............................................................................................ 1, 3

*People v. Stay*,
   19 Cal. App. 3d 166 (1971) ................................................................................. 12

*People v. Wheeler*,
   30 Cal. App. 3d 282 (1973) ................................................................................... 9

*Roberson v. Hedgpeth*,
   2009 WL 3634193 (E.D. Cal. Oct. 30, 2009) ...................................................... 10

*San Mateo Union High School Dist. v. County of San Mateo*,
   213 Cal. App. 4th 418 (2013) .............................................................................. 11

*Sandoval v. City of Sonoma*,
   912 F.3d 509 (9th Cir. 2018) ............................................................................... 11

*Schneider v. Cal. Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ............................................................................... 8

*Sibron v. New York*,
   392 U.S. 40 (1968) ................................................................................................ 5

*South Dakota v. Opperman*,
   428 U.S. 364 (1976) .............................................................................................. 3

*Tobe v. City of Santa Ana*,
   9 Cal. 4th 1069 (1995) .......................................................................................... 8

*Torres v. Puerto Rico*,
   442 U.S. 465 (1979) .............................................................................................. 3

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
   485 U.S. 478 (1988) .............................................................................................. 1

*United States v. Cortez*,
   449 U.S. 411 (1981) .............................................................................................. 3

*United States v. Jacobsen*,
   466 U.S. 109 (1984) .............................................................................................. 5

iii

*United States v. Martinez-Fuerte*,
　428 U.S. 543 (1976) ............................................................................................... 3

**Statutes**

Bane Act ............................................................................................................... 11

Civ. Code §§ 2080-2080.10 .................................................................................. 12

Government Claims Act ......................................................................................... 9

**Other Authorities**

Fourth Amendment ........................................................................................ *passim*

Fourteenth Amendment ................................................................................. *passim*

## I. INTRODUCTION

Like the First Amended Complaint [Dkt 20], Plaintiffs' opposition is rooted in the unfounded assumption that every Bulky Item left on a public sidewalk belongs to an unhoused person. Plaintiffs fail to acknowledge that the Bulky Item Provision, as a law of general application, authorizes removal of items on public sidewalks in a countless number of conceivable situations, many of which do not implicate property rights. Plaintiffs also fail to acknowledge that the conceivable interests in using any given public right of way will vary significantly based on the circumstances. Thus, Plaintiffs cannot establish that the provision is unreasonable in all conceivable instances.

Far from showing, as they must, that the balancing of interests could never weigh in favor of enforcement of the Bulky Item Provision, Plaintiffs try to redirect the question to whether there is any "set of circumstances in which the seizure and destruction *based on size alone* is constitutionally permissible." Opp. at 8:23-9:1 (emphasis added). Plaintiffs contend the answer to this reframed question is "no" because (1) the Fourth Amendment demands either a warrant or a recognized exception in all instances (*id*. at 6:2-5), and (2) procedural due process can never be satisfied absent individualized notice and a hearing (*id.* at 10:6-12). But to focus on "size alone"—untethered from any relevant context or relative interests—flagrantly distorts the constitutional inquiry. The correct standard under both Amendments is "reasonableness," which requires a weighing of interests in context of the specific facts. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("In applying [the Fourth Amendment] test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry."); *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988) ("whether a particular method of notice is reasonable depends on the particular circumstances").

Properly framed, the question is whether Plaintiffs can show that an interest in seizing a Bulky Item left in the public space would never outweigh any countervailing interest. Plaintiffs do not even attempt to make this showing. Instead, they contend that context is irrelevant because, like in *Patel*, only a warrant or recognized exception could

justify a seizure of a Bulky Item.  Opp. at 7:3-7.  Thus, Plaintiffs assert: "There is no question …the City could seize and destroy a refrigerator that was abandoned and illegally dumped on the sidewalk" but "it is the item's status as abandoned and illegally dumped that gives the City the ability to seize and destroy it," and not its status as a Bulky Item.  *Id*. at 7:7-14.

There are at least three flaws in this argument.  <u>First</u>, *Patel* is inapposite.  In *Patel*, the conceivable instances in which the ordinance applied were clear and discrete, and the competing interests were readily identifiable (hotel operator's interest in guest records versus police's interest in surprise inspections).  Here, the relative interests affected by any particular seizure of a Bulky Item cannot be identified, much less weighed, in the abstract.  <u>Second</u>, the argument assumes that only an established warrant exception (consent/abandonment) could justify a seizure.  As noted, the law is not so rigid.  <u>Third</u>, the argument fails to take into account the complexities of real-world applications of the Ordinance.  Rarely will a Bulky Item be affixed with a note saying "Take Me"; nevertheless, removal of such an item may be reasonable.  For example, if a refrigerator was found near a homeless encampment or contained personal items, the balance may weigh against removal.  But if it was nowhere near an encampment, or was empty, the balance may favor removal.  Furthermore, removal would likely be justified if it was found near a school or park (because a child may get trapped inside) but the balance of interests may point the other way if it was found blocks away from the school or park, or if it had a padlock on it that minimized the safety risk.  And so on.  Although any given facts may not neatly fall within an established warrant exception, this does not mean removal could never be reasonable.  Plaintiffs' facial challenge fails as a matter of law.

As explained below, Plaintiffs' opposition likewise fails to establish that the Ordinance is vague (indeed, the refrigerator example shows it is not) or that the FAC states any valid claims for relief under state law.  The City's motion to dismiss should be granted.

## II. ARGUMENT

### A. The Fourth Amendment Requires a Balancing Of Interests.

Plaintiffs contend that "[w]hen an ordinance allows for a seizure of property without a warrant and without a requirement that the seizure fall within a warrant exception, the ordinance is unconstitutional on its face." Opp. at 6:14-16. But that is manifestly *not* the law. Plaintiffs' cited authority, *Torres v. Puerto Rico*, 442 U.S. 465 (1979), which did not even involve a facial challenge, certainly does not so hold.[1] To the contrary, "the longstanding principle [is] that neither a warrant nor probable cause…is an indispensable component of reasonableness in every circumstance." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989); *see also Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979).[2] Particularly where, as here, "a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement…it is necessary to balance [competing interests] to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 449-50 (1990). Because of the "endless variations in the facts and circumstances' implicating the Fourth Amendment" (*Robinette*, 519 U.S. at 39), "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417-19 (1981).

Here, relying on the wrong legal standard and focused exclusively on personal property rights, Plaintiffs do not take into account the "whole picture." This results in a domino effect that vitiates their entire analysis. First, Plaintiffs incorrectly frame the Fourth Amendment inquiry as whether the seizure of an item "based on size alone" is

---

[1] Rather, the issue in *Torres* was whether evidence found during a search of a person's luggage should have been excluded in a criminal trial. *Torres*, 442 U.S. at 466.

[2] Courts have rejected strict adherence to "warrant or recognized exception" in many contexts. *See, e.g., South Dakota v. Opperman*, 428 U.S. 364, 384 (1976) (warrantless inventory searches lawful because "not conducted…to discover evidence of crime" and there is no "real likelihood that [owner] could be located within a reasonable period of time"); *United States v. Martinez-Fuerte*, 428 U.S. 543, 558 (1976) (checkpoint stops lawful given "the overall degree of interference with legitimate traffic").

lawful, (Opp. at 7:5-7), which ignores the significance of context and precludes the application of any balancing test.  Second, Plaintiffs fail to acknowledge, among other things, that (1) the weight attributed to property rights varies in context, (2) a variety of other legitimate and weighty rights are implicated in public rights of way; and (3) the City has not only the power but the obligation to protect everyone's rights in public spaces.  *See* Mot. [Dkt 22] at 10:1-11:3.  Plaintiffs also fail to assess the reasonableness of the Bulky Item Provision in the context of the Ordinance as a whole, which expressly safeguards—by requiring pre- and post- removal notice and 90-day storage—a vast array of property, including items that unhoused persons may need for survival such as tents, bicycles, and smaller personal items like medication, documents, blankets, etc.  *See* City's Request for Judicial Notice, [Dkt. 23, Ex. 1 (LAMC 56.11) at §§(3)(a)-(f); (5).)

Third, Plaintiffs make no attempt to show that there is no conceivable instance in which a hypothetical interest in removing (or discarding) a Bulky Item could ever outweigh a countervailing hypothetical interest.  Nor do they refute the City's argument that the hypothetical interests are neither static nor uniform, and thus are incapable of being weighed in the absence of specific facts.  Instead, Plaintiffs wrongly insist this case is just like *Patel*.  *See* Opp. at 7:3-8:16.  But, as discussed above, the ordinance in *Patel* differed from the Bulky Item Provision, in at least two critical respects: it (1) applied to a limited specific group (hotel operators), and (2) authorized seizures of only one discrete type of personal property (guest records).  *See City of L.A. v. Patel*, 135 S. Ct. 2443, 246-47, 2455 (2015).  Because the ordinance implicated a uniform set of interests in a limited number of conceivable applications, the interests could be weighed in the abstract and the Court determined that only a warrant or established exception could justify any conceivable seizure.  In contrast, here, because the Bulky Item Provision applies to any and all Bulky Items left by any person in any number of possible circumstances, the relevant interests are neither defined nor uniform and the instances in which the provision may apply are unlimited.  Thus, reasonableness here cannot be assessed in the absence of

the relevant context, and Plaintiffs' facial challenge must fail. *See Sibron v. New York*, 392 U.S. 40, 60 (1968).[3]

For similar reasons, Plaintiffs likewise fail to establish that it could never be reasonable for the City to dispose of a Bulky Item. Plaintiffs' sole argument on this issue is "if the City cannot store an item it seized and must therefore destroy it, this renders the initial seizure unreasonable." Opp. at 9:5-6. First, the City does not argue that it "must" destroy every Bulky Item, it simply points out that it is not feasible for it to store every Bulky Item it finds in the public right of way. *See* Mot. at 12:15-23. Second, Plaintiffs cite no authority for their contention that a subsequent storage decision necessarily renders the initial seizure unlawful. Indeed, the law (again) fails to support Plaintiffs' position. The decision to remove a Bulky Item from the public right of way should be analyzed separately from any later decision to discard any such item; both the law and the Ordinance treat these decisions as distinct. *See United States v. Jacobsen*, 466 U.S. 109, 118 (1984) (analyzing officers' actions in removing powder from a bag and subsequent "destruction of the powder" as two separate seizures); *see also* LAMC 56.11(i) ("the City may remove and may discard any Bulky Item"). As with removal, reasonableness will depend on the specific facts, including the nature and condition of the item and the circumstances under which it was removed. For these reasons, Plaintiffs' Fourth Amendment facial challenge fails as a matter of law.

---

[3] For an ordinance to serve as a useful analogy, it would have to apply to all persons utilizing a finite public space that served numerous functions and authorized seizures of a wide array of items. For example, consider an ordinance that authorized the seizure of items left on tables in airports. Under Plaintiffs' theory, the ordinance could never be reasonable because all such items must be someone's property. But context is key. If the airport's sanitation crew encountered a freshly-made momentarily unattended burger, removal may be unreasonable. But if the burger was half-eaten, cold, and left unattended since morning, the interest in removal, *e.g.,* to make room for other persons or to prevent safety issues from decaying meat, may outweigh any potential property interest. And it would not reasonable to require the crew to search for a possible owner before removing any and all items left on tables, or store every food item it came across.

### B. Due Process Also Requires A Balancing Of Interests.

Plaintiffs' procedural due process analysis is similarly flawed. Although Plaintiffs acknowledge, in passing, that due process requires a balancing of interests, they make no attempt to balance any interests. *See* Opp. at 9:18-20. As discussed, Plaintiffs neither acknowledge the existence of the myriad of varied and unpredictable interests in use of public rights of way nor the complex real-world circumstances in which such interests may arise. Thus, the cases cited by Plaintiffs, in which the property interests were clear and uniform and the owners of those rights were readily identifiable and locatable, (*see id*. at 12:2-13:8) (citing cases), have no applicability here.

Plaintiffs' reliance on *Lavan* is similarly misplaced. *See id.* at 10:17. First, in *Lavan*, the Court issued a narrow holding that applied only to unabandoned belongings of unhoused persons: "The Fourth and Fourteenth Amendments protect homeless persons from government seizure and summary destruction of their *unabandoned, but momentarily unattended,* personal property." *Lavan*, 693 F.3d at 1024 (emphasis added). In so holding, the Court expressly noted that the case did not "concern any purported right to use the sidewalks as personal storage facilities." *Id.* at 1033. Here, the Bulky Item Provision is a law of general application and, as discussed, not all Bulky Items are momentarily unattended, unabandoned, or belong to unhoused persons. Second, *Lavan* concerned discrete personal items like birth certificates, medications, and blankets. *Id.* at 1025. Such items do not fall within the purview of the Bulky Item Provision. Moreover, the Ordinance expressly safeguards such items. *See* LAMC 56.11 §§(3)(a)-(f); (5).[4]

To the extent *Lavan* has any instructive value here it is to demonstrate the flexibility of procedural due process, particularly in circumstances where, as here, property interests

---

[4] Plaintiffs misleadingly conflate the Bulky Item Provision, which applies to any *single* item that is too large to fit into a 60-gallon container, with the Excess Property Provision, which applies to personal property items that *cumulatively* cannot fit into a 60-gallon container and requires notice and storage (and requires notice and storage). *See* Opp. at 6:17-19. Plaintiffs dropped their facial challenge to the Excess Property provisions when they amended their complaint; the FAC targets only the Bulky Item Provision.

6

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

may be speculative, property owners may not be easily identified or located, and the administrative burdens of providing individualized notice are substantial. Notably, the *Lavan* Court did *not* require the City to provide individualized notice nor a hearing before removing or discarding unhoused persons' personal belongings. Instead, *Lavan* held only that the City must "take reasonable steps to give notice that the property has been taken so the owner can pursue available [state law] remedies for its return." *Lavan*, 693 F.3d at 1023 (quoting *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999).[5] Here, where the conceivable rights are far less clear, *Lavan*'s flexible application of due process principles aligns with the cases the City cites in its motion, in which only generalized notice was required given the relative interests and burdens. *See,* Mot. at 14:17-15:22.

### C. By Plaintiffs' Own Admission, The Ordinance Is Not Vague.

To establish that "Bulky Item" and "immediate threat to public health and safety" are void for vagueness, Plaintiffs must show that the terms "are so vague and standardless that [they] leave[] the public uncertain as to the conduct it prohibits." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966). Far from making this showing, Plaintiffs concede that no such uncertainty exists here: (1) "There is no question that, in some instances, it could conceivably be reasonable to seize property that meets the definition of a bulky item" (Opp. at 7:7-8) (giving example of a refrigerator), and (2) "[T]o address an immediate threat to public health and safety, the City could seize and destroy contaminated mattresses and couches" (*id*. at 7:14-15). These concessions doom Plaintiffs' vagueness challenge. Due process requires only that it be clear what the Ordinance "as a whole prohibits . . . in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703 (2000) (quotations and citations omitted). Moreover, Plaintiffs do not dispute the City's contention that the FAC fails to allege sufficient details (*e.g.,* the

---

[5] Importantly, *Lavan* also neither required the City to obtain a warrant nor identify an established exception to the warrant requirement. *Lavan*, 693 F.3d at 1030 (balancing interests to determine Fourth Amendment reasonableness).

size of Plaintiffs' allegedly seized Bulky Items) to show that the challenged terms are vague as applied to them.  *See* Mot. at 17:19-24.  To the contrary, Plaintiffs assert they do not know such details.  Opp. at 17:23-28 n.8.[6]

Unable to show that "Bulky Item" is vague, Plaintiffs try a new theory—that the term "storage" is vague.  *See id.* at 14:5-16:13.  But a "complaint may not be amended by a brief in opposition to a motion to dismiss."  *BlueEarth BioFuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1075 n.10 (D. Haw. 2011) (*quoting Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *see also Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  In any event, the term is not vague.  Under the Ordinance, "Store, Stored, Storing, or Storage" "means to put Personal Property aside or accumulate for use when need, to put for safekeeping, and/or to place or leave in a Public Area."  LAMC 56.11(2)(o).  Plucking one word out of this definition, Plaintiffs argue that a person need only "place" an item in public to violate the Ordinance.  Opp. at 14:9-11.  But terms must be construed in context.  *See Lopez v. Sessions*, 901 F.3d 1071, 1077 (9th Cir. 2018).  Here, "storage" plainly does not apply to a package "rest[ed] on the ground" by a passerby or a bicycle whose "chain snaps" in transit.  *See* Opp. at 14:14-15:7; *see also Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1107-08 (1995) ("store" not vague given "express purpose of the ordinance" was protect public spaces for intended uses).

Plaintiffs' challenge to "immediate threat to public health and safety" fairs no better.  First, Plaintiffs miss the point in arguing that the *Lavan* Court's use of the phrase is not "a per se harbor."  Opp. at 17:9-14.  *Lavan* simply reflects the principle that "deprivation of property to protect the public health and safety is '[one] of the oldest examples of permissible summary action."  *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981) (quoting *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 599 (1950).)  Courts repeatedly have rejected vagueness challenges to such terms.

---

[6] Plaintiffs suggest they do not need not show vagueness "in every circumstance."  Opp. at 13 n. 6.  This misstates the relevant precedent.  *See Martinez-de Ryan v. Whitaker,* 909 F.3d 247, 252 (9th Cir. 2018).  Regardless, the terms are not vague under any standard.

*See, e.g., Hodel*, 452 U.S. 264 ("imminent danger to the health and safety of the public" not vague) (citing cases); *People v. Wheeler,* 30 Cal. App. 3d 282, 296 (1973) ("public health hazard" not vague.)  Second, Plaintiffs inconsistently argue that Sanitation workers have too much discretion to decide what constitutes a hazard (Opp. at 13-23; 18:2-3) but then fault the Protocols, designed to bound that discretion by defining hazards with reference to statistically significant scientific studies, as being too technical (*id.* at 18:4-15).  But then they waffle again, arguing that the definition is not technical *enough*: "The definition of hazard includes no threshold limits on the amount of hazardous materials that must be present in a specific item…". *Id*. at 18:21-23.  None of these arguments show the Ordinance is unconstitutionally vague, particularly in light of Plaintiffs' concession that the City could unquestionably seize "contaminated mattresses and couches."

### D.  Plaintiffs' Failure To Comply With The Claims Act Is Inexcusable.

Plaintiffs' disingenuous argument that they were exempt from complying with the Government Claims Act is belied both by the fact that they submitted claims (albeit untimely ones), and by the FAC.  Despite Plaintiffs' attempt to recast their requested relief to avoid dismissal, the reality is that they incorporate a separate request for damages into each of their seven claims (FAC at 51:3-7, 52:18-22, 53:25-54:2, 54:22-26, 56:8-12, 57:8-10, 58:3-6), while they mention declaratory and injunctive relief only in the Prayer.  Damages are central to all of Plaintiffs' claims, and are neither incidental nor subordinate to the equitable relief sought.  Thus, Plaintiffs were required to comply with the Act.

Plaintiffs argue that their failure to file timely claims and allow the government to respond *prior to* initiating litigation should be excused under the doctrine of substantial compliance. Opp. at 20:8-21:4.  But that doctrine applies *only* in the limited circumstance where there is a technical defect in form while all other requirements of the Act have been met such that its purpose is fulfilled.  *See Nguyen v. Los Angeles County Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 733 (1992).  In arguing that their noncompliance should be excused, Plaintiffs overlook that the Act's purpose is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if

9
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

appropriate, without the expense of litigation." *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738 (2007). Recognizing that an entity's evaluation of a claim changes after it is forced into litigation, the California Supreme Court stated that "[t]he Legislature's intent to require the presentation of claims ***before suit*** is filed could not be clearer" and that "[t]he purpose of providing public entities with sufficient information to investigate claims without the expense of litigation is not served if the entity must file a responsive pleading alerting its opponent to the claim requirements." *Id.* at 746. *Roberson v. Hedgpeth,* 2009 WL 3634193 (E.D. Cal. Oct. 30, 2009), on which Plaintiffs rely (Opp. at 20:14-20), is inapposite. There, the court found the Act's purpose was not defeated where the plaintiff filed a timely claim and filed suit just one day before the 45-day window for the government to respond. *See id.* at *5. Here, in contrast, only one plaintiff filed a claim before the lawsuit, and he gave the City only nine days to evaluate it before filing suit. FAC at 43:20-21. All other plaintiffs failed to file claims until after initiating litigation. Opp. at 20:5. Plaintiffs' state law claims should be dismissed.

### E.  Immunities Bar Plaintiffs' State Law Claims.

Contrary to Plaintiffs' assertion, Plaintiff El-Bey's Bane Act claim is barred by discretionary immunity. The purpose of this immunity is to prevent fear of liability from hamstringing government employees when making decisions entrusted to their discretion. *See Conway v. County of Tuolomne*, 231 Cal. App. 4th 1005, 1020 (2014). Thus, such immunity "has been found to apply to many areas of police work" such as decisions whether or not to investigate a car accident, to use official authority to resolve a dispute, to pursue a fleeing car, and to use tear gas in effecting an arrest. *See id.* at 1015 (collecting cases). The alleged conduct of the officer here—deciding to inform El-Bey that he could be arrested if he failed to move his belongings in the allotted time—is akin to the actions that courts shield from liability because they require careful consideration of options in light of applicable laws, and balancing of competing interests.

Plaintiffs' argument that discretionary immunity cannot apply to their Seventh Cause of Action is premised on the assumption that a mandatory duty under Section 2080

*et seq.* applies in this case.  However, courts can and do apply Section 820.2 immunity to shield defendants from liability for *alleged* violations of mandatory duties under Section 815.6 where, as here, no mandatory duty in fact exists.  *See San Mateo Union High School Dist. v. County of San Mateo*, 213 Cal. App. 4th 418, 434 (2013) (affirming dismissal of claims where Section 820.2 applied to alleged violation of mandatory duty under § 815.6).

Plaintiffs' sole argument with respect to Section 820.6 is that it is "not subject to resolution at the pleading stage."  Opp. at 22:27-23:1.  But courts can, do, and should dismiss claims on that ground where, as here, it is clear from the face of the complaint that such immunity applies.  *See e.g., Moyer v. Tilton*, 2008 WL 483718, at *9 (E.D. Cal. Feb. 19, 2008) (dismissing claims on ground that Section 820.6 immunity applied).

### F.  Plaintiff El-Bey Has Not Stated A Bane Act Claim.

In an effort to save his Bane Act claim, El-Bey points to the inapposite *Watkins v. City of Oakland*.  In *Watkins*, the plaintiff not only alleged that police officers "pulled him over using the siren on their patrol car, ordered him to turn off his car, place his keys on the dashboard, step out of the car, and place his hands behind his back (among other instructions)" but he also alleged that the defendants "handcuffed him, arrested him, subjected him to a strip search, and held him in jail."  *Id.* at 2018 WL 574906, at *38.  Moreover, in *Watkins*, the specific intent requirement was satisfied by the allegation that "Defendants knowingly falsified the only evidence suggesting that he had engaged in criminal conduct and arrested him without probable cause."  *Id.* at 2018 WL 574906, at *38-39.  In contrast, El-Bey alleges nothing more than that an officer truthfully stated that Plaintiff could be arrested if he interfered with the cleanup.  FAC at 42:9.  Merely alleging that a police officer made a truthful statement, with no arrest, threat of force, or anything more, is insufficient to establish that the officer did anything wrong, let alone that he had specific intent to deprive the plaintiff of a protected right, as required to state a Bane Act claim.  *See Sandoval v. City of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018).

### G.  Plaintiffs' Allegations Do Not Establish Applicability of Section 2080.

Ignoring the statute and case law cited by the City in its motion, Plaintiffs assert

that there is no requirement that property be "lost" for Section 2080.10 to apply. Opp. at 24:19-20. That contention is contradicted by *People v. Stay*, 19 Cal. App. 3d 166 (1971), and by the plain language of the title of the Article in which Section 2080.10 is found, which is "*Lost* Money and Goods." *See* Civ. Code §§ 2080-2080.10 (emphasis added).

Plaintiffs' attempt to save their seventh cause of action also relies on issue mis-framing. The issue is not, as Plaintiffs contend, that Section 2080 must always apply to unhoused people's belongings. On the facts pled here, Plaintiffs have not shown that their belongings were "lost" within the meaning of Section 2080. Thus, Section 2080 *et seq.* does not apply here, and Plaintiffs have failed to establish any applicable mandatory duty.

### H. Haugabrook's Claims Should Be Dismissed.

Although Plaintiffs acknowledge the City met and conferred regarding the insufficiency of Haugabrook's allegations, Plaintiffs now object it was insufficient. *See* Sweetser Decl. ¶¶ 2, 4. The fact remains that Haugabrook's imprecise allegation that the incident occurred "[i]n or about March 2019" (FAC at 10:15-16) does not sufficiently apprise the City of a material fact necessary to investigate the claim. Moreover, while Plaintiffs now assert that the location at the time of the alleged incident was the same as during the four to six month period prior to filing of the FAC, that is not pled in the FAC.

## III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be granted.

Dated: November 19, 2019     MICHAEL N. FEUER, City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
FELIX LEBRON, Deputy City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By:   /s/ A. Patricia Ursea
      A. PATRICIA URSEA
      Deputy City Attorney
      Attorneys for Defendant
      CITY OF LOS ANGELES