MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
GABRIEL DERMER, Assistant City Attorney (SBN 229424)
FELIX LEBRON, Deputy City Attorney (SBN 232984)
**A. PATRICIA URSEA, Deputy City Atty (SBN 221637)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br><br>        *Plaintiffs*,<br><br>    vs.<br><br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br><br>        *Defendant(s)*. | Case No.:  2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br><br>**DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT TO FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION (FED. R. CIV. PROC. 12(b)(1));**<br><br><br>Date:  December 2, 2019<br>Time:  1:30 p.m.<br>Ctrm:  7D<br><br>**Judge:  Hon. Dale S. Fischer** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

I.      THE ASSOCIATION PLAINTIFFS' DISCLAIMER OF DAMAGES DOES
        NOT CURE THE STANDING DEFECTS FOR AS-APPLIED CLAIMS..............1

II.     KFA LACKS DIRECT STANDING. ......................................................................3

III.    KFA LACKS REPRESENTATIVE STANDING. ...................................................6

IV.     AREPS LACKS MUNICIPAL TAXPAYER STANDING. ...................................8

CONCLUSION .....................................................................................................12

DEFENDANT'S REPLY ISO RULE 12(b)(1) MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airline Serv. Providers Ass'n v. Los Angeles World Airport Authority*,
  873 F.3d 1074 (9th Cir. 2017) ...................................................................8

*Arakaki v. Lingle*,
  477 F.3d 1048 (9th Cir. 2007) .................................................8, 9, 10, 11

*ASARCO, Inc. v. Kadish*,
  490 U.S. 605 (1991)..................................................................8, 11, 12

*Ass'n of Christian Sch. Int'l v. Stearns*,
  678 F. Supp. 2d 980, 985 (C.D. Cal. 2008) .................................................3

*BlueEarth BioFuels, LLC v. Hawaiian Elec. Co.*,
  780 F. Supp. 2d 1061 (D. Haw. 2011)........................................................1

*Cammack v. Wailee*,
  932 F.2d 765 (9th Cir. 1991) ...................................................8, 9, 10, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...........................................................................4, 5, 7

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)..............................................................8, 10, 11, 12

*Diamond v. Charles*,
  476 U.S. 54 (1986)..............................................................................4, 8

*Doremus v. Bd. of Ed. Of Borough of Hawthorne*,
  342 U.S. 429 (1952)...............................................................................9

*Frothingham v. Mellon*,
  262 U.S. 447 (1923)...........................................................................9, 10

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982).................................................................................5

*Hoohuli v. Ariyoshi*,
  741 F.2d 1169 (9th Cir. 1984) .................................................9, 10, 11

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)...............................................................2, 3, 7, 8

*Int'l Union v. Brock*,
    477 U.S. 274 (1986).....................................................................2, 3, 8

*La Asociacion de Trabajadores de Lake v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ...............................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................4, 5

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015) ...............................................................6

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) ...............................................................5

*Smith v. Pac. Props. Dev. & Corp.*,
    358 F.3d 1097 (9th Cir. 2004) ...............................................................6

*Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
    770 F.3d 1282 (9th Cir. 2014) ...............................................................3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)...............................................................................7

*Torres v. U.S. Dep't of Homeland Sec.*,
    No. 5:18-cv-2604-JGB-(SHKx) .............................................................7

*Town of Chester v. Laroe Estate, Inc.*,
    137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017).............................................2, 6

*Villa v. Maricopa Cty.*,
    865 F.3d 1224 (9th Cir. 2017) .....................................................8, 11, 12

*We Are Am./Somos Am. v. Maricopa Cnty Bd. of Supervisors*,
    809 F. Supp. 2d 1084 (D. Ariz. 2011) ..................................................11

**Rules**

F.R.Civ.P. 12(b)(1) ..................................................................................12

## INTRODUCTION

Association Plaintiffs Ktown for All ("KFA") and Association for Responsible and Equitable Public Spending ("AREPS") purport to represent the interests of unidentified homeless persons who are not parties to this litigation located within the City of Los Angeles ("City").  KFA and AREPS contend that they have the right to seek relief prohibiting the City from allegedly violating others' constitutional rights, declaring Los Angeles Municipal Code ("LAMC") 56.11 unconstitutional under the United States and California Constitutions, and enjoining the enforcement of LAMC 56.11.  The Association Plaintiffs seek to convert a case involving the alleged incidents of seven individual plaintiffs into a de-facto class action on behalf of all homeless persons.  To invoke this Court's jurisdiction under Article III, the Association Plaintiffs must allege specific facts establishing an injury-in-fact that is concrete and particularized and not speculative or conjectural, with the concrete injury being traceable to the City's conduct and redressable by an order from this Court.  The Association Plaintiffs have not met their burden and must be dismissed.

## ARGUMENT

## I.   THE ASSOCIATION PLAINTIFFS' DISCLAIMER OF DAMAGES DOES NOT CURE THE STANDING DEFECTS FOR AS-APPLIED CLAIMS.

The FAC alleges that all Plaintiffs, including KFA and AREPS, assert three *facial* claims challenging the constitutionality of only two specific subsections of LAMC 56.11 and three *as-applied* constitutional and statutory claims, and all six claims seek compensatory damages, declaratory relief, and injunctive relief.  *See* Dkt. No. 21 (Mot.) at 6-8, 19; Dkt. No. 20 (FAC) at ¶¶ 230-260, 267-70; *Id.* at Prayer ¶¶ 1-5.  The Association Plaintiffs allege – for the *first time* in Opposition – that KFA and AREPS now seek only "injunctive and declaratory relief" and not "damages on behalf of [their] individual members" as alleged in the FAC.  *See* Dkt. No. 24 (Opp.) at 1, 15.

First, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *BlueEarth BioFuels, LLC v. Hawaiian Elec. Co.*, 780

F. Supp. 2d 1061, 1075 n.10 (D. Haw. 2011) (quoting *Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988).  This attempted amendment shows the FAC failed to allege facts establishing KFA's and AREPS' standing to assert each claim and form of relief.[1]

Second, the Association Plaintiffs assert broad rights to seek declaratory and injunctive relief on behalf of others without addressing the particular claims supporting this relief.  *See* Opp. at 1 (KFA and AREPS seek "injunctive and declaratory relief that would enjoin this unconstitutional ordinance from being enforced unlawfully and would prevent the City from continuing to unlawfully seize and destroy people's belongings.); *see also* Dkt. No. 25 (Pltf's 12(b)(6) Opp.) at 2 (All Plaintiffs "challenge how LAMC 56.11 applies to them *and other homeless people*.") (emphasis added).

The FAC does not allege claims challenging the entirety of LAMC 56.11.  Rather, the FAC's facial claims challenge only two specific subsections: the removal and disposal or storage of bulky items and property posing immediate threats to public health and safety.  *See* FAC at ¶¶ 230-235; 244-253; Mot. at 4-8.  The FAC does not allege class claims, and KFA and AREPS cannot pursue *as-applied* claims on behalf of others irrespective of the form of relief.[2]

The *Hunt* test for representative standing is not satisfied "unless neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); Mot. at 17-19.  The third *Hunt* factor precludes representative standing unless the association's claim raises a pure question of law.  *Int'l Union v. Brock*, 477 U.S. 274, 287 (1986).  In

---

[1] Even if the Court considers this de-facto amendment, the Association Plaintiffs do not identify the particular claims for which they now seek only injunctive and declaratory relief.  Thus, neither the FAC nor the Opposition alleges specific facts demonstrating each element of Article III standing for each particular claim asserted and each form of relief sought in the FAC.  *See* Mot. at 9; *Town of Chester v. Laroe Estate, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017).

[2] The City would challenge any attempt by the Individual Plaintiffs to assert claims on behalf of third parties, as opposed to their respective individual claims.

*Brock*, the Supreme Court reasoned that where a complaint raises anything other than a pure legal question, the issues implicate individualized factual inquiries that *Hunt* prohibited. *Id.; Ass'n of Christian Sch. Int'l v. Stearns, 678 F. Supp.* 2d 980, 985 (C.D. Cal. 2008) (when as-applied claims seeking declaratory relief "require an 'ad hoc factual inquiry' for each member represented by the association, the organization does not have associational standing.") (quoting *Rent Stablization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993)).

To the extent that the Association Plaintiffs have not abandoned the FAC's as-applied claims, they lack standing to pursue these claims irrespective of the form of relief. *See Stearns,* 678 F. Supp. 2d at 982-86; *Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292-93 (9th Cir. 2014) (finding that association lacked standing to pursue claims on behalf of its members for declaratory and injunctive relief because the "multiple variations, specific to individual members" were "not susceptible to judicial treatment as systematic policy violations that make extensive individual participation unnecessary."). As discussed below, KFA and AREPS lack Article III standing to pursue any other claims or requests for relief.

## II.    KFA LACKS DIRECT STANDING.

The City identified numerous deficiencies in KFA's direct standing, which the Opposition does not address. *See* Mot. at 11-16. KFA contends that the City's enforcement of LAMC 56.11 caused direct injury to KFA by making it more difficult to stay in contact with unhoused neighbors and decreasing the ability of unhoused members to participate in KFA's advocacy efforts. FAC ¶¶ 40, 43; Opp. at 8.[3]

The Supreme Court made clear that the injury alleged by an associational plaintiff must have a nexus to the substantive character of the statute and must be fairly traceable

---

[3] In its Opposition, KFA misrepresents to the Court that "the City does not dispute that [KFA] has adequately alleged that the sweeps made it harder to build connection with unhoused individuals." Opp. at 9. Not so. The City's Motion disputed KFA's alleged injury, causation, and redressability. *See* Mot. at 12-16.

to the challenged statute.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013); *Diamond v. Charles*, 476 U.S. 54, 70 (1986).  LAMC 56.11 is a law of general application for maintaining the public right-of-way; it does not address housing or homeless shelters, does not require or mandate that unhoused residents leave or remain in Koreatown, and imposes no duties enforceable against the City to ensure that KFA is able to stay in contact with unhoused members without difficulty.  Mot. at 12, 15-16.  KFA does not establish a nexus or causal connection between LAMC 56.11 and the difficulty KFA may face maintaining contact with unhoused members, much less a connection specific to bulky items and property posing immediate threats to public health and safety challenged in the facial claims.  Moreover, KFA was formed in 2018, three years after the City commenced cleanups under the current version of LAMC 56.11.  Regardless of whether a "temporal requirement exists in the law" (Opp. at 12), KFA fails to explain how its alleged harm can be measured when the City conducted cleanups during the entire year and half of KFA's existence.  Based on its own allegations, KFA admits that it is inherently difficult to stay in contact with unhoused residents because they move around like Plaintiff El Bey.  FAC ¶ 176.  KFA does not quantify the level of difficulty or allege any "increase" in difficulty as a result of the City's actions.  Here, again, KFA's allegations do not live up to the Supreme Court's mandate that alleged harm must be "concrete and particularized" and not speculative or conjectural.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Supreme Court established that the line of causation cannot be attenuated and found that it is "substantially more difficult" to establish standing because causation involving the government's regulation of "*someone else*" "depends on the unfettered choices made by independent actors not before the court[.]"  *Lujan*, 504 U.S. at 562 (emphasis in original); *Clapper*, 568 U.S. at 414, n.5.  The FAC alleges that Plaintiff El-Bey resided around Koreatown and "moves around because he experiences frequent harassment from neighbors", "suffers from mental health issues", "does not like to be around other people, and as a result he moves from location to location[.]"  FAC ¶ 176;

Mot. at 15-16.  KFA does not explain how El-Bey is different from other unhoused residents or why KFA's unhoused members do not move around for similar reasons.  The causal link between the City's alleged conduct and KFA's alleged difficulty staying in contact with unhoused members is too attenuated and speculative to support standing.

Like causation, redressability is "substantially more difficult" to establish when the purported harm arises from regulation of other independent actors not before the Court. *Lujan*, 504 U.S. at 562; Mot. at 15-16.  KFA asserts broad rights to seek injunctive and declaratory relief, but fails to explain how this relief will make it less difficult to maintain contact with unhoused residents, many of whom move around for a variety of reasons, like El Bey.  Redressability is even more attenuated when construed in reference to the facial claims.  KFA does not address how an injunction prohibiting the removal of bulky items or immediate threats to public health and safety will increase unhoused members' participation in KFA's advocacy efforts or reduce KFA's difficulty in maintaining contact with unhoused members.

KFA's failure to address these issues is fatal because it must satisfy "the traditional standing requirements of (1) injury in fact, (2) causation, and (3) redressability" to establish direct standing for injuries to itself.  *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019).  An organization may sue based on diversion of resources to counteract or avoid suffering an actual injury to the organization caused by the challenged statute and the defendant's conduct.  *Id.*; *La Asociacion de Trabajadores de Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  KFA must establish a nexus to the challenged statute and an actual, not speculative, injury that it sought to counteract by diverting resources.  *Id.*; *Clapper*, 568 U.S. at 416.

KFA argues that it is "virtually indistinguishable" from the organization in *Havens,* HOME.  Opp. at 11.  Not so.  *See* Mot. at 13-14.  In *Havens*, the statute addressed racial steering in housing, provided an enforceable right against these practices, and HOME's purpose was to promote racially integrated housing.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  HOME's diversion of resources was to counteract the precise

harms the statute was intended to guard against.  Mot. at 14.  The other cases KFA cites are similarly distinguishable because of the nexus between the challenged statute, the defendant's conduct, and the organization's mission.  *See* Opp. at 8-9; *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) (National Voter Registration Act that contained private right of action and alleged violation regarding voter registration brought by organizations with mission to increase minority participation in elections and diversion of resources to counteract voter registration issues); *Smith v. Pac. Props. Dev. & Corp.*, 358 F.3d 1097 (9th Cir. 2004) (Fair Housing Amendments Act prohibiting discrimination that also protected associations brought by organization with mission to eliminate discrimination against individuals with disabilities in housing).

KFA's "mission" is to "form connections between housed and unhoused residents of Koreatown and to advocate for housing and shelters in Koreatown."  FAC ¶ 38.  As discussed above, there is no nexus between LAMC 56.11 and KFA's mission, and the alleged injury – making it more difficult "to stay in contact with unhoused neighbors" – is too speculative and attenuated and not traceable to the City.  Recognizing this fact, KFA alleged a different "mission" in its Opposition – "to politically empower its members and unhoused neighbors" – which is even more attenuated than KFA's original mission.  Opp. at 9.  Even if KFA received leave to amend to allege a "new mission" there is still no nexus between LAMC 56.11 or cognizable injuries to that mission traceable to the City.  In sum, KFA has not and cannot allege any direct injuries sufficient to confer Article III standing to challenge LAMC 56.11.

## III.   KFA LACKS REPRESENTATIVE STANDING.

KFA bears the burden to establish standing to pursue each particular claim and request for relief and has failed to do so.  *Town of Chester*, 137 S. Ct 1645, 1650.  KFA has not alleged sufficient facts for representative standing under *Hunt*.

First, KFA does not allege at least one identified member suffered actual harm as a result of the City's conduct as required under the first *Hunt* prong.  Opp. at 12-13.  KFA cites an unpublished District Court opinion for the proposition that such specific

allegations are not required at the pleading stage.  *See* Opp. at 12 (citing *Torres v. U.S. Dep't of Homeland Sec.*, No. 5:18-cv-2604-JGB-(SHKx)), at *12-13 (C.D. Cal. Oct. 24, 2019)).  *Torres*, however, does not even address, much less refute, the Supreme Court and Ninth Circuit authority requiring that KFA "make specific allegations establishing that at least one identified member had suffered or would suffer harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); Mot. at 17-18; *c.f.,* FAC ¶¶ 45-46.

Moreover, identifying a specific member who suffered actual injury is required here.  KFA has housed and unhoused members, but does not allege how many unhoused residents are members and, out of those unhoused members, how many suffered any actual harm traceable to the City.  The FAC vaguely alleges that its "unhoused" members "have been subjected to the City's enforcement of LAMC 56.11 and have suffered harm as a result of that enforcement, including the loss of property and deprivation of their constitutional and statutory rights."  FAC at ¶ 42.  The FAC does not address the nature of the enforcement or allege any facts showing the City caused a decrease in members' participation in KFA advocacy meetings.  Mot. at 18.  KFA must make specific allegations identifying at least one member who suffered an actual, concrete, and particularized harm to support standing under *Hunt*.  *Summers*, 555 U.S. at 499.

Similarly, KFA now argues it only seeks prospective relief and not damages.  Opp. at 1, 15.  As discussed, KFA must still allege facts supporting standing to pursue each particular claim and request for relief and has failed to do so.  To seek prospective relief, KFA must allege facts showing that the threat of future harm to its unhoused members is "certainly impending" under the statute.  *Clapper,* 568 U.S. at 410, 412.  The Opposition argues that future harm is "certainly impending" because the City increased funding for cleanups and enforces LAMC 56.11 against its members.  Opp. at 16.  But KFA has not alleged facts showing that at least one identified member suffered harm, much less that the threat of future harm to at least one identified member is certainly impending.

Second, KFA has not met the second *Hunt* prong because, for the reasons discussed in Section II, this action is not germane to KFA's mission because there is no

1    nexus between LAMC 56.11 and any alleged harms to KFA's mission traceable to the

2    City's conduct.  The cases KFA cites are distinguishable for this reason.  Opp. at 15; *c.f.*

3    *Airline Serv. Providers Ass'n v. Los Angeles World Airport Authority*, 873 F.3d 1074 (9th

4    Cir. 2017) (trade associations representing members in airline industry in labor dispute).

5        Finally, KFA has not met the third *Hunt* prong because litigating these issues will

6    require participation of the individuals who suffered the alleged injuries.  *Hunt*, 432 U.S.

7    at 343; *Brock*, 477 U.S. at 287.  Indeed, even for the facial claims, KFA has not identified

8    an unhoused member who suffered harm relating to the enforcement of the subsections

9    addressing bulky items or property posing an immediate threat to public health and

10   safety.  While KFA may desire to challenge the City's policies and practices (Opp. at 14),

11   the law still requires that KFA establish its standing.  "Article III requires more than a

12   desire to vindicate value interests."  *Diamond,* 476 U.S. at 66.

13   **IV.   AREPS LACKS MUNICIPAL TAXPAYER STANDING.**

14       AREPS does not address or distinguish the Supreme Court authority requiring

15   that AREPS allege a direct injury establishing that it has a "direct and immediate"

16   "interest in the application" of the City's "municipal revenues" and that its claims for

17   prospective relief are redressable.  *See* Mot. at 20-22; *ASARCO, Inc. v. Kadish,* 490

18   U.S. 605, 613 (1991).  Instead, AREPS contends that it has Article III standing to

19   pursue claims for injunctive and declaratory relief based solely on its payment of

20   municipal taxes to the City's general fund.  *See* Opp. at 17-18; FAC ¶¶ 44-46; 86-87.

21       AREPS cites *Cammack v. Wailee*, 932 F.2d 765, 770 (9th Cir. 1991), for the

22   proposition that "municipal taxpayer standing simply requires the 'injury' of an

23   allegedly improper expenditure of municipal funds, and in this way mirrors our

24   threshold for state taxpayer standing."  Opp. at 17.  The Supreme Court subsequently

25   overruled the authority on which *Cammack* relied in support of this holding.

26   *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 346 & n.4 (2006); *Arakaki v. Lingle*,

27   477 F.3d 1048, 1062 (9th Cir. 2007).  *Cammack* has not been expressly overruled, but

28   more recent Ninth Circuit authority confirms that municipal taxpayer plaintiffs must

1    show the direct injury required by *ASARCO* to establish Article III standing.  *Villa v.*
2    *Maricopa Cty.*, 865 F.3d 1224, 1229 (9th Cir. 2017).  AREPS reliance on *Cammack* is
3    misplaced.

4         The Supreme Court's rule against taxpayer standing arises out of the seminal
5    case of *Frothingham v. Mellon*, 262 U.S. 447, 486-487 (1923) (also cited as
6    *Massachusetts v. Mellon*, 262 U.S. 447 (1923)).  In discussing the rule against taxpayer
7    standing, the Court distinguished other cases concerning municipal taxpayers stating
8    that the "interest of a taxpayer of a municipality in the applications of its moneys [was]
9    direct and immediate and the remedy by injunction to prevent their misuse [was] not
10   inappropriate." *Id.* at 486.  This distinction was "based upon the peculiar relation of
11   the corporate taxpayer to the corporation, which is not without some semblance to that
12   subsisting between stockholder and private corporation." *Id.* at 487.

13        In *Doremus*, Supreme Court considered state – *not municipal* – taxpayer
14   standing, but quoted *Frothingham's* statement regarding municipal taxpayer standing.
15   *Doremus v. Bd. of Ed. of Borough of Hawthorne,* 342 U.S. 429, 433-434 (1952).  The
16   Supreme Court then held that "[t]he party who invokes the power [of the court] must
17   be able to show not only that the statute is invalid but that he has sustained or is
18   immediately in danger of sustaining some direct injury as the result of its enforcement,
19   and not merely that he suffers in some indefinite way in common with the people
20   generally." *Id.* at 434.  *Doremus* held that a "taxpayer's action can meet this test, but
21   only when it is a good-faith pocketbook action." *Id.*at 435.  The state taxpayer plaintiff
22   lacked standing there because there was "no such direct and particular financial
23   interest" and the grievance was not "a direct dollars-and-cents injury[.] *Id.*

24        The Ninth Circuit adopted its own test for state taxpayer standing in *Hoohuli v.*
25   *Ariyoshi*, 741 F.2d 1169, 1178 (9th Cir. 1984), which held that state taxpayers can
26   establish Article III standing under *Doremus* by alleging "the relationship between
27   taxpayer, tax dollars, and the allegedly illegal government activity." *Hoohuli* did not
28   require that the taxpayer prove that his or her tax burden would be lightened by the

1   cancellation of the challenged tax expenditure.  *See id.* at 1180; *Arakaki*, 477 F.3d at

2   1062-63.

3       In *Cammack*, the Ninth Circuit addressed claims asserted by state and municipal

4   taxpayers alleging that that a statute declaring Good Friday to be a state holiday

5   violated the Establishment Clause.  *Cammack*, 932. F.2d at 766-67.  The Ninth Circuit

6   applied *Hoohuli's* test for state taxpayer to municipal taxpayers.  *Id.* at 769-770.

7   Specifically, the Ninth Circuit concluded that "that municipal taxpayer standing simply

8   requires the 'injury' of an allegedly improper expenditure of municipal funds, and in

9   this way mirrors our threshold for state taxpayer standing."  *Id.* at 770.  This "threshold

10  for state taxpayer standing" was based on *Hoohuli*.  *Id.* at 769-770.

11      In *DaimlerChrysler*, the Supreme Court overruled *Hoohuli's* articulated test for

12  taxpayer standing, which formed the basis for *Cammack's* test for municipal taxpayer

13  standing.  *See DaimlerChrysler*, 547 U.S. at 346 & n.4 ("[W]e hold that state taxpayers

14  have no standing under Article III to challenge state tax or spending decisions simply

15  by virtue of their status as taxpayers.").  The Supreme Court did not expressly address

16  municipal taxpayer standing under *Frothingham* because the issue was not raised, but

17  reiterated the speculative nature of assuming that "any revenue increase resulting from

18  a taxpayer suit will be put to a particular use."  *Id.* at 349-350.  The Supreme Court

19  concluded that "[a]ll of the theories plaintiffs have offered to support their standing to

20  challenge the franchise tax credit are unavailing."  *Id.* at 354.

21      In *Arakaki*, the Ninth Circuit held: "*DaimlerChrysler* plainly undermines

22  *Hoohuli's* standing principles."  *Arakaki*, 477 F.3d at 1062-63.  Specifically, the Ninth

23  Circuit found that: "Under *Hoohuli*, plaintiffs had to meet a three-part test for state

24  taxpayer standing: (1) taxpayer status, (2) the funds in question were appropriated from

25  the state's general funds, and (3) the state was spending the funds for an unlawful

26  purpose.  We did not require that the taxpayer prove that his tax burden would be

27  lightened by the cancellation of the challenged expenditure…."  *Id.* at 1063.

28  "*DaimlerChrysler*, by contrast, requires that state taxpayers establish a particularized,

concrete injury that is redressable by the court's judgment.  As the Supreme Court observed, the plaintiff's alleged injury is speculative if redress depends on how the legislature responds to the court's judgment."  *Id.* (internal citations omitted).[4]

AREPS relies on a district court opinion to support its reliance on the now defunct *Cammack*.  Opp. at 17-19; *We Are Am./Somos Am. v. Maricopa Cnty Bd. of Supervisors*, 809 F. Supp. 2d 1084  (D. Ariz. 2011)).  In *We Are America*, the District Court cited *Arakaki* for the proposition that "*DaimlerChrysler* effectively overrules *Hoohuli* and plainly undermines *Hoohuli's* standing principles."  *Id.* at 1109.  The Court concluded that "[t]he continuing vitality of *Hoohuli* in the context of municipal taxpayer standing remains an open question, however."  The Court applied *Cammack* without analyzing this "open question" and the effect on municipal taxpayer standing. *Id.*

However, in *Villa*, the Ninth Circuit held that a municipal taxpayer must allege a "direct injury, pecuniary or otherwise" just like a state taxpayer and as required under *ASARCO*.  *Villa*, 865 F.3d at 1229.  Specifically, the Ninth Circuit held:  "In *Asarco Inc. v. Kadish*, 490 U.S. 605 (1989), the Supreme Court held that a state taxpayer must allege 'direct injury,' pecuniary or otherwise' to have taxpayer standing under Article III…. We see no reason why the standing analysis in a non-establishment clause case should be different for a county taxpayer challenging an allegedly illegal act of the county…. Villa's allegation that her taxes have been used to finance Maricopa County officials who have 'intercepted communications in violation of Title III' is an insufficient allegation of direct injury within the meaning of *Asarco*."  *Id.* (internal citations omitted).

---

[4] Other Ninth Circuit cases construing municipal taxpayer standing have, like *Cammack*, relied on *Hoohuli*.  *See Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 793-794 (9th Cir. 1999).

Here, AREPS has not alleged "a direct injury, pecuniary or otherwise" or facts demonstrating that AREPS' interest in the application of municipal revenues is "direct and immediate" as required by Ninth Circuit precedent.  *Id.; ASARCO*, 490 U.S. at 613.  Nor has AREPS shown or established redressability.  AREPS contends it seeks to "enjoin [] the enforcement of an unconstitutional statute" (Opp. at 18), but the facial claims challenge only two subsections of LAMC 56.11.  FAC at ¶¶ 230-235; 244-253. Even if the Court *sua sponte* enjoined the City from conducting any cleanups or enforcement of LAMC 56.11, it would be pure speculation to assume that the City would use those funds for tax relief as opposed to allocating them for another purpose. *DaimlerChrysler*, 547 U.S. at 344.  The FAC's allegations are insufficient to establish AREPS's standing.  *ASARCO*, 490 U.S. at 613; *Villa*, 865 F.3d at 1229.  AREPS must be dismissed with prejudice.

## CONCLUSION

KFA and AREPS lack Article III standing to pursue any of the claims or requests for relief asserted in the FAC and must be dismissed pursuant to F.R.Civ.P. 12(b)(1).

Dated:  Nov. 19, 2019

MICHAEL N. FEUER, City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
FELIX LEBRON, Deputy City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By:   */s/Felix Lebron*
FELIX LEBRON
Deputy City Attorney
Attorneys for Defendant
CITY OF LOS ANGELES