# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>CITY OF LOS ANGELES, et al.,<br>　　　　Defendants. | CV 19-06182-DSF-PLA<br><br>Order GRANTING in part and<br>DENYING in part Defendant's<br>Motion to Dismiss for Failure to<br>State a Claim (Dkt. 22) |

Defendant City of Los Angeles moves to dismiss the First, Third, Fourth, Sixth, and Seventh Causes of Action of the Supplemental Complaint to the First Amended Complaint (Suppl. FAC).  Dkt. 22 (Mot.).[1]  Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, Ktown for All (KFA), and Association for Responsible and Equitable Public Spending (AREPS) oppose.  Dkt. 25 (Opp'n).

## I. FACTUAL BACKGROUND

### A.    The Challenged Ordinance

In 2016, the Los Angeles City Council amended Los Angeles Municipal Code (LAMC) § 56.11 (the Ordinance).[2]  Dkt. 20 (Suppl.

---

[1] The City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is addressed in a separate order.

[2] The City requests judicial notice of the Ordinance.  Dkt. 23 (RJN), Ex. 1. Federal Rule of Evidence 201 permits a Court to take judicial notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

FAC).  The Ordinance regulates the storage of personal property in public areas.  Its stated purpose is to "balance the needs of the residents and public at large to access clean and sanitary public areas . . . with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas."  LAMC § 56.11(1).  In most situations, the City is authorized to impound personal property in a public area so long as the City provides pre-removal and post-removal notice.  See, e.g., LAMC § 56.11(3)(a)-(b).  In other situations, including where the property obstructs City operations or interferes with the City's compliance with the Americans with Disabilities Act of 1990 (ADA), only post-removal notice is required to impound personal property.  See, e.g., id. § 56.11(3)(c)-(f).  There are also limited situations where the City can immediately destroy personal property without notice, including if the property "poses an immediate threat to the health or safety of the public," id. § 56.11(3)(g), "constitutes evidence of a crime or contraband," id. §56.11(3)(h), or is a "Bulky Item" that is not "designed to be used as a shelter," id. §56.11(3)(i) (Bulky Item Provision).  A Bulky Item is "any item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch, or wheelchair, that is too large to fit into a 60-gallon container with the lid closed," but not "a container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property."  Id. § 56.11(2)(c).

To enforce the Ordinance, the City, through the Bureau of Sanitation (Sanitation) and the Los Angeles Police Department (LAPD), conducts noticed cleanups and random rapid responses where personal property that does not comply with the Ordinance is seized or destroyed.  Suppl. FAC ¶¶ 21, 69.

---

readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Municipal ordinances are proper subjects for judicial notice.  See Tollis Inc. v. County of San Diego, 505 F.3d 935, 938 n.1 (9th Cir. 2007).  The Court grants the City's unopposed request for judicial notice of the Ordinance.

The City also adopted the Los Angeles Municipal Code 56.11 Standard Operating Protocols regarding the implementation and enforcement of the Ordinance.[3]  The Protocols contain detailed instructions on how Sanitation and LAPD should enforce the Ordinance.  For example, Procedure 7 explains that items are "health hazards" if "there is statistically significant evidence based on at least one study conducted in accordance with established scientific principles that acute or chronic health effects may occur in exposed persons." RJN, Ex. 2 at 29.

## B.  Enforcement of the Ordinance Against Individual Plaintiffs

### 1.  Garcia

On or about January 29, 2019, without any prior notice, a Sanitation crew seized and destroyed Garcia's tent and all of her belongings, including a vacuum and other cleaning supplies she uses for her work as a domestic cleaner, while she had momentarily left to use the bathroom.  Suppl. FAC ¶¶ 24, 125-132.  On April 29, 2019, as part of a noticed cleanup, another Sanitation crew seized Garcia's belongings while she was watching her neighbors' property.  Id. ¶¶ 24, 133.  On August 14, 2019, Sanitation workers again seized and destroyed all of her belongings when she left them to go to work, even though she had attempted to move them out of the noticed cleanup area before leaving for work.  Id. ¶¶ 25, 134-145.

### 2.  Zepeda and Zamora

On March 21, 2019, without notice, Sanitation workers seized and destroyed all of Zepeda's and Zamora's belongings that could not fit into a single 60-gallon trash bag, including a new tent, tarps, clean clothing, and a chest containing important documents.  Id. ¶¶ 28, 155-165.  Shortly thereafter, KFA provided Zepeda and Zamora with a new tent.  Id. ¶ 166.  On or about June 11, 2019, Sanitation again destroyed

---

[3] The Court grants the City's unopposed request for judicial notice of the Protocols.  RJN, Ex. 2.

Zepeda's and Zamora's tent, along with the belongings inside of the tent.  <u>Id.</u> ¶ 168.

### 3.   El-Bey

On January 10, 2019, without notice, Sanitation and LAPD gave El-Bey 10 minutes to pack up his belongings and move.  <u>Id.</u> ¶¶ 30, 173-77.  When El-Bey required additional time to collect his belongings, one of the LAPD officers threatened him with arrest.  <u>Id.</u> ¶ 179.  The rest of his belongings, including his ID, medications, and a tent, were destroyed.  <u>Id.</u> ¶¶ 30, 178-82.  On June 4, 2019, Sanitation workers destroyed his belongings, including his medication, while El-Bey had left to do laundry.  <u>Id.</u> ¶¶ 183-87.  El-Bey was told that his belongings needed to be destroyed for "safety reasons."  <u>Id.</u> ¶ 185.

### 4.   Haugabrook

On or about March 2019, without any notice, Sanitation gave Haugabrook 15 minutes to pack up his belongings and move.  <u>Id.</u> ¶¶ 193-95.  Sanitation then destroyed Haugabrook's backpack and its contents, including medication and other important items.  <u>Id.</u> ¶¶ 32, 196.  On another occasion, Sanitation took Haugabrook's chairs as part of a Bulky Item pickup.  <u>Id.</u> ¶¶ 32, 197-98.  On a third occasion, City workers destroyed his tent and other items while he was gone for a short period of time.  <u>Id.</u> ¶ 201.

### 5.   Diocson

On April 24, 2019, LAPD and Sanitation, pursuant to a noticed cleanup, seized and destroyed as a Bulky Item Diocson's dog kennel, where his dog slept at night.  <u>Id.</u> ¶¶ 34-35, 209-214.

### 6.   Ashley

On or about May 21, 2019, as part of a noticed cleanup, Sanitation seized and destroyed as Bulky Items two carts that Ashley used to move his belongings.  <u>Id.</u> ¶¶ 37, 218-226.

## II. LEGAL STANDARD

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted).  A complaint must "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could

not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III. DISCUSSION

### A.    Facial Challenges

#### 1.    Illegal Seizure (First Cause of Action)

Plaintiffs allege that the subsection of the Ordinance permitting the seizure and immediate destruction of Bulky Items, without a warrant or pursuant to a warrant exception, is an unreasonable seizure in violation of the Fourth Amendment and the California Constitution.[4] Suppl. FAC ¶¶ 231-32.  To adequately plead a facial challenge, Plaintiffs must allege sufficient facts to show that the Bulky Item Provision is unconstitutional in all "applications of the statute in which it actually authorizes or prohibits conduct." <u>City of Los Angeles, Calif. v. Patel</u>, 135 S. Ct. 2443, 2451 (2015); <u>see also</u> <u>Morrison v. Peterson</u>, 809 F.3d 1059, 1064 (9th Cir. 2015) ("[W]hen assessing whether a statute" is unconstitutional in all of its applications, "courts consider only applications of the statute in which it actually authorizes or prohibits conduct."); <u>Isaacson v. Horne</u>, 716 F.3d 1213, 1230 (9th Cir. 2013) (facial challenge is one that challenges "all the situations in which [that statute] would actually be determinative").[5]

---

[4]  Except where "the United States Supreme Court had not yet decided the parallel question under the Fourth Amendment," or where the Supreme Court "later spoke to the question and reached a contrary conclusion," California law "ordinarily resolve[s] questions about the legality of searches and seizures by construing the Fourth Amendment and article I, section 13 in tandem." <u>People v. Buza</u>, 4 Cal. 5th 658, 686 (2018).  Therefore, the Court analyzes Plaintiff's challenge under Fourth Amendment law.

[5]  The City cites to <u>Lanier v. City of Woodburn</u>, 518 F.3d 1147 (9th Cir. 2008), which held that a city policy requiring prospective employees to pass a drug test was not invalid on its face.  <u>Id.</u> at 1150.  The court based its decision on the fact that the plaintiff made no "serious argument" that no set of circumstances existed under which the policy would be valid, and suggested "no concrete reason why [the city's] policy could not constitutionally be

"A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.  The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement."  Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).  The City does not assert that any of the specifically established exceptions applies.[6]  Rather, it asserts that "[t]he 'ultimate standard' is 'reasonableness,'" Mot. at 8 (citing Lavan v. City of Los Angeles, 693 F.3d 1022, 1031 (9th Cir. 2012)), and that "reasonableness here cannot be determined in a vacuum," id. at 9.  The City argues that because the "weight" of an individual's property interest depends on the character of the property at issue, see id., and the countervailing interests of the public are "both significant and varied," id. at 10, "Plaintiffs cannot show that in all circumstances, an individual's right to keep Bulky Items in public places will outweigh any conceivable countervailing interests in using that space," id. at 11.  Therefore, a facial challenge must fail because of the "numerous possible applications of the Bulky Item provision."  Id. at 8; see also id. at 11 ("[T]here is little that can be said about the nature of 'Bulky Items' in the abstract.").

The City compares the Bulky Item Provision to the statute in Sibron v. New York, 392 U.S. 40 (1968), which involved a facial challenge to a statute that permitted a police officer to "stop-and-frisk" any person "whom he reasonably suspects is committing, has

---

applied to jobs that, for example, require the operation of dangerous equipment."  Id.  The same cannot be said for Plaintiffs' challenge to the Bulky Item Provision.

[6] The Court agrees with the City that the "probable cause" exception is not relevant here.  Opp'n at 8 n.8; see also Miranda, 429 F.3d at 863 ("The standard of probable cause is peculiarly related to criminal investigations, not routine, non-criminal procedures.  The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions . . . ." (quoting S. Dakota v. Opperman, 428 U.S. 364, 371 n.5 (1976))).

committed or is about to commit a felony . . . ." Id. at 43.  The Supreme
Court noted that this statute was "susceptible of a wide variety of
interpretations," such as "whether the power to 'stop' granted by the
statute entails a power to 'detain' for investigation or interrogation
upon less than probable cause, or if so what sort of durational
limitations upon such detention are contemplated." Id. at 60 & n.20.
The Supreme Court declined to consider the facial challenge because it
viewed it as an "unproductive exercise of laying the extraordinarily
elastic categories of [the statute] next to the categories of the Fourth
Amendment in an effort to determine whether the two are in some
sense compatible." Id. at 59; see also Patel, 135 S. Ct. at 2450
("[C]laims for facial relief under the Fourth Amendment are unlikely to
succeed when there is substantial ambiguity as to what conduct a
statute authorizes.").  The City contrasts the "extraordinarily elastic
categories" it asserts are covered by the Bulky Item Provision with the
challenged ordinance in Patel, which it asserts was "narrow" in that it
only "permitted warrantless searches of hotel guest records" and the
competing interests at issue were "identifiable and unvaried." Mot. at
9.  But the Ordinance here is more similar to the ordinance in Patel
than the statute in Sibron.

     The Bulky Item Provision permits warrantless seizures of items
larger than a specific volume that are stored in public areas.[7]  Unlike in

---

[7] The City claims that "by its express terms, [the Ordinance] applies to *all*
items left by *any* person on sidewalks and other public spaces. Mot. at 2; see
also id. at 4 ("[T]he Ordinance is now, and has always been, a law of general
application.").  However, this declaration conflicts with the stated purpose
of the Ordinance: to "balance the needs of the residents and public at large"
with "the needs of the individuals, who have no other alternatives for the
storage of personal property, to retain access to a limited amount of personal
property in public areas."  LAMC § 56.11(1).  Specifically, this provision
acknowledges that the "City's large and vulnerable homeless population need
access to a manageable amount of essential property for their personal use
and well-being." Id.  At the hearing, the City argued that the first section of
the Ordinance was merely a "preamble" acknowledging the increased use of
public areas by homeless people, and therefore it did not limit the application

Sibron where the statute authorized conduct based on what a police officer "reasonably suspects," the Bulky Item Provision authorizes conduct based on an objectively verifiable fact—an item's volume. That many different items may fall into the category of items having the stated volume, such as a dog kennel, a chair, or a homemade cart, does not mean that the category itself is elastic. For example, if instead of authorizing seizures based on reasonable suspicion, the statute in Sibron permitted police officers to stop and frisk people who weighed 300 or more pounds, it could not be said that the categories of conduct authorized are extraordinarily elastic because some people fitting into that category may be 7-foot tall basketball players while others may be 5-foot tall sumo wrestlers. Rather, the statute authorizes conduct based on a rigid category of characteristics: a person's weight. The same is true here.

Plaintiffs assert that the only conduct the Bulky Item Provision "actually authorizes" is a warrantless seizure of property based solely on its size. Opp'n at 7. Bulky Items that are abandoned, illegally dumped, or a threat to public health and safety can be seized or destroyed based on other statutes or ordinances not challenged here. Id.; see also Patel, 135 S. Ct. at 2451 ("If exigency or a warrant justifies an officer's search, the subject of the search must permit it to proceed irrespective of whether it is authorized by statute. Statutes authorizing warrantless searches also do no work where the subject of a search has consented.").[8] The City's example of a ladder left unattended on a sidewalk illustrates this point. The City states it may be reasonable to remove the ladder "[i]f the sidewalk is narrow with high pedestrian use" or "[i]f the sidewalk abuts a school and the ladder

---

of the Ordinance. However, the paragraph titled "Declaration of Legislative Intent – Purpose" is not merely a preamble; it is section one of the Ordinance.

[8] At the hearing, the City represented that the Ordinance was the City's only mechanism to clean up public rights of way. Although a doubtful proposition, to the extent it is true, it still fails to address the fact that most of the Ordinance remains unchallenged and therefore permits the City to seize Bulky Items in a number of reasonable circumstances.

may be an attractive nuisance to children on their way home" or "[i]f the owner refuses to move a ladder that is likely to obstruct free passage by pedestrians." Mot. at 12. This may be true, but the City would not need to rely on the Bulky Item Provision to remove the ladder. In other sections of the Ordinance, the City is permitted to remove any unattended property, LAMC § 56.11(3)(a), property that obstructs City operations, id. § 56.11(3)(c), property that "does not allow for passage as required by the" ADA, id. § 56.11(3)(d), property that is "within ten feet of any operation and utilizable entrance, exit, driveway or loading dock," id. § 56.11(3)(e), or property that "constitutes an immediate threat to the health or safety of the public," id. § 56.11(3)(g). One of these sections, or other valid laws or ordinances (e.g. laws prohibiting illegal dumping) would apply to each of the scenarios described by the City. The same is true for the example the City gave at the hearing. If there were Bulky Items blocking an area where pedestrians usually congregate to wait for a bus, causing them to stand in the street instead, the City could rely, for example, on LAMC Section 56.11(3)(c) to "temporarily move Personal Property" or "impound Personal Property" that "is obstructing City operations in a Public Area."

The only "work" the Bulky Item Provision does is to permit seizures of items of a certain size where there is no other valid reason to remove them.[9] In the City's example, the ladder or other Bulky Items can be removed, not because they are too large to fit in a 60-

---

[9] The City argues that "an item too large to fit into a 60-gallon container carries a greater potential to impede other legitimate uses of sidewalks" and "there is a greater public interest in the removal of Bulky Items from the public right of way than smaller items." Mot. at 11. The City also argues that Bulky Items are not "necessities," tents, bicycles, wheelchairs, walkers, or crutches. These would be stored, rather than destroyed, if found to be violating another Ordinance provision. Id. Regardless of whether these assertions are true, a seizure is not reasonable merely because items like it have a "greater potential" to interfere with the rights of others or are less likely to be "important."

gallon bag, but because they interfere with "unimpeded movement" of pedestrians or could otherwise be dangerous.  The same is true for the alleged trash piles caused by illegal dumping.  <u>See</u> Mot. at 3.

For similar reasons, the immediate destruction of Bulky Items is unreasonable on its face.  <u>See</u> <u>Lavan</u>, 693 F.3d at 1030 ("[E]ven if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable.").  The City argues that the immediate destruction of Bulky Items may be necessary if the property cannot be "safely stored." Mot. at 12.  At the hearing, the City gave the example of a wood pallet infected by dry rot.  But another provision of the Ordinance allows the destruction of items that are a risk to public health and safety.  The City also asserts that it "does not have the space to store all Bulky Items it removes from public places," and therefore it must be permitted to destroy them.  <u>Id.</u> at 11.  But the City's lack of storage does not make the immediate destruction of personal property reasonable.[10]

Plaintiffs also argue that LAMC § 56.11(10)(d), which makes it unlawful for any person to "willfully resist, delay or obstruct a City

---

[10] The City also notes that "not all Bulky Items left in public are someone's property," and that it is sometimes difficult for the City to determine whether certain property is abandoned.  Mot. at 12 n.9.  To the extent the City has difficulty determining whether items left in public areas are abandoned (and therefore entitled to no protections) or merely unattended (which would require pre- and post-removal notice, LAMC § 56.11(3)(a)), it is not clear why this is relevant to the analysis here.  The Bulky Item Provision applies to personal property whether attended or unattended.  As it currently stands, therefore, no determination of ownership need be made before the City removes and destroys Bulky Items.  The City's example of an ordinance that authorizes the seizure of items left on tables in airports, Reply at 5 n.3, also addresses the issue of whether food left on tables is abandoned or unattended, not whether food can be thrown away, regardless of any ownership determination, merely because it was "too much" food.

employee from removing or discarding a Bulky Item," is unconstitutional because it prohibits an individual from interfering with unconstitutional seizures pursuant to the Bulky Item Provision. Suppl. FAC ¶ 233.  The City conceded at the hearing that LAMC § 56.11(10)(d) is facially unconstitutional if the Bulky Item Provision is facially unconstitutional.  See also Mot. at 13 n.10.

Plaintiffs have sufficiently alleged a facial challenge to the Ordinance as violating the Fourth Amendment's (and the California Constitution's) prohibition on illegal seizures.  The Court declines to dismiss the First Cause of Action.

### 2.      Due Process (Fourth Cause of Action)

Plaintiffs claim the seizure or destruction of "Bulky Items" without pre- or post-seizure notice or an opportunity to be heard violates the Fourteenth Amendment, the California Constitution, and 42 U.S.C. § 1983.[11]  Suppl. FAC ¶ 251.  The City argues that Plaintiffs "must show the Bulky Item provision can *never* be enforced without violating due process."  Mot. at 13-14.

To allege a violation of due process, Plaintiffs must allege that "the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'" and that the procedures provided do not "constitute 'due process of law.'"  See Lavan, 693 F.3d at 1031.  There now can be no dispute that all persons have a protected property interest in personal property stored in public areas.  See id. at 1031-32.  The City instead argues that it

---

[11]  "The language of Article I § 7 of the California Constitution is virtually identical to the Due Process Clause of the United States Constitution, with the caveat that California courts place a higher significance on the dignitary interest inherent in providing proper procedure."  Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178, 1190 n.15 (9th Cir. 2015) (internal quotation marks and citations omitted), as amended on denial of reh'g and reh'g en banc (Jan. 29, 2016).  Therefore, the Court will address Plaintiffs' federal and state due process claims together, as it is unnecessary to take the additional factor into account here.

cannot be determined on a facial challenge what process is due because "the requirements imposed by the due process clause are flexible and variable dependent upon the particular situation being examined." Mot. at 14.[12]  However, the Bulky Item Provision "fail[s] utterly to provide any meaningful opportunity to be heard before or after [the City] seize[s] and destroy[s] property belonging to [Los Angeles's] homeless population."  See Lavan, 693 F.3d at 1033.[13]  Plaintiffs cite to

_____

[12] The City argues that the "administrative burdens" of providing notice must be considered, including that "it is not always readily ascertainable whether [items] belong to someone or not" and the City cannot be required to "search for possible owners of every couch, file cabinet, refrigerator, or car part they encounter in a public space."  Mot. at 15-16.  However, the City already provides notice for nearly all other types of personal property covered by the Ordinance, including unattended property.  See id. at 1 ("In most instances, LASAN must provide written notice before and/or after removing items"); LAMC § 56.11(3)(a) (unattended personal property can be impounded with both pre- and post-removal notice).  "The fact that [the City] has undertaken to provide a hearing in some circumstances suggests that it is neither unduly burdensome nor unduly costly to do so."  Stypmann v. City & Cty. of San Francisco, 557 F.2d 1338, 1343 (9th Cir. 1977).

[13] The City argues that even though the Bulky Item Provision does not require prior notice, there are times where "pre-removal notice was provided."  Mot. at 16.  In those circumstances, the City argues, "it may be reasonable to dispose of a Bulky Item without providing individualized notice."  Id.  Without deciding whether that is true, in determining whether the Ordinance is facially valid, the Court must consider only the process provided by the Ordinance.  See Coe v. Armour Fertilizer Works, 237 U.S. 413, 424-25 (1915) ("It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing.  The law must require notice to them, and give them the right to a hearing and an opportunity to be heard." (quoting Stuart v. Palmer, 74 N.Y. 183, 188 (1878))); HVT, Inc. v. Port Auth. of New York & New Jersey, No. 15 CIV 5867 (MKB) (VMS), 2018 WL 3134414, at *14 (E.D.N.Y. Feb. 15, 2018), report and recommendation adopted, No. 15 CV 5867 (MKB) (VMS), 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) ("[E]ven the fact that Defendant may have had internal memoranda outlining impoundment protocols which could be construed to provide Plaintiff with an opportunity for a hearing still falls

a number of cases that upheld facial challenges where no process was provided at all.  Opp'n at 12-13.  Moreover, the circumstances under which permanent deprivation or destruction of property is permissible without notice or an opportunity to be heard are substantially more limited.  See Clement v. City of Glendale, 518 F.3d 1090, 1093-94 (9th Cir. 2008) ("[T]he default rule is advance notice," although there are "exceptions to this general rule" including "in an emergency, []or if notice would defeat the entire point of the seizure, []or when the interest at stake is small relative to the burden that giving notice would impose."); see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679 (1974) ("[D]ue process is not denied when postponement of notice and hearing is necessary to protect the public from contaminated food, from a bank failure, or from misbranded drugs, or to aid the collection of taxes, or the war effort" (internal citations omitted)).  And even in those circumstances, "a principal rationale has been that a hearing would be provided before the taking became final."  Arnett v. Kennedy, 416 U.S. 134, 178 (1974).

For example, in N. Am. Cold Storage Co. v. City of Chicago, 211 U.S. 306 (1908), cited by the City, the Supreme Court found that notice and a hearing were not required before "destruction of unwholesome food which is unfit for human consumption."  Id. at 320.  Here Bulky Items that are an immediate threat to health and safety can be destroyed under another provision of the Ordinance and therefore the Court does not consider that circumstance in deciding whether the Bulky Item Provision provides sufficient procedural protections on its face.  A similar issue was addressed by the California Supreme Court in Kash.  Analyzing federal law, the Court considered an ordinance

---

short of providing constitutionally required due process" (footnotes omitted)); Kash Enters., Inc. v. City of Los Angeles, 19 Cal. 3d 294, 307 n.7 (1977) ("[I]n judging the constitutionality of the procedure established by the ordinance, we must look to the procedure dictated by the terms of the ordinance, and not to informal practices implemented at the discretion of municipal administrators.").  The Bulky Item Provision does not require that any notice or hearing be provided.

that "authoriz[ed] the seizure, retention and destruction of newsracks without affording the owner of the rack either a pre- or post-taking hearing." Kash, 19 Cal. 3d at 306.  The Court held that the ordinance violated due process on its face because "it d[id] not accord the owner the most basic safeguard demanded by the process—an opportunity to be heard on the merits of the taking, either before or after the taking." Id. at 309.  This was particularly troublesome because the taking was not merely temporary; the ordinance authorized the actual destruction of the confiscated newsrack.  Id. at 308.  The Court noted that striking down the ordinance did not prevent the city from "provid[ing] for the immediate seizure, without prior notice or hearing, of any newsrack that poses a danger to pedestrians or vehicles."  Id. at 313.

As in Kash, the Ordinance permits the City to remove and permanently destroy Bulky Items without any procedural safeguards whatever.[14]  As noted by the Ninth Circuit, this is "especially troubling given the vulnerability of [the City's] homeless residents."  Lavan, 693 F.3d at 1032.  Plaintiffs have sufficiently alleged that the Bulky Item Provision fails to provide the procedural due process required by the

---

[14] The City argues that "if a Bulky Item was removed in the presence of a purported owner, that person likewise can avail him or herself of available state law remedies."  Mot. at 16.  It is not clear what "state law remedies" the City asserts are available to Plaintiffs, but the ability to file a lawsuit challenging the deprivation cannot serve as the basis for finding due process. If it were otherwise, the due process requirement would not really be a requirement at all.  See Kash, 19 Cal. 3d at 309 ("Not one of the scores of recent procedural due process decisions, however, suggests that the availability of a collateral judicial remedy can sustain a seizure procedure which provides absolutely no hearing whatsoever, either before or after the taking.  Acceptance of the city's position would in effect read out almost all of the protections afforded by contemporary procedural due process doctrine, and would place on the party whose property has been taken the additional financial burden of instituting an action for the property's return." (internal citations omitted)).

Fourteenth Amendment.[15]  The Court declines to dismiss the Fourth Cause of Action.

### 3.    Vagueness Challenge (Third Cause of Action)

Plaintiffs also allege that the Ordinance is impermissibly vague because it fails to define a "Bulky Item" or an "immediate threat to public health and safety" with sufficient precision.  Id. ¶¶ 245, 245.1.[16]

---

[15] The Court is not dictating what process is due, only that Plaintiffs have sufficiently alleged a failure to afford any due process before destroying Bulky Items, which violates the Fourteenth Amendment.

[16] Plaintiffs state that they challenge as impermissibly vague these two provisions of the Ordinance "both facially and as-applied."  Opp'n at 13 (footnote omitted) (citing Suppl. FAC ¶¶ 60-64, 66, 74-76, 83, 92-96).  Based on a review of the cited provisions of the Supplemental FAC, it appears that Plaintiffs are using the term "as applied" to mean that the provisions are enforced arbitrarily, not that they were vague specifically as enforced against the individual Plaintiffs.  See Suppl. FAC ¶ 93 ("Determinations about what constitutes a Bulky Item and is therefore subject to seizure and destruction, are arbitrary and based solely on the individual sanitation worker's judgement and perception of item's size. . . . Individuals who are homeless have no way of knowing what LA Sanitation will deem a Bulky Item, which is then subject to immediate seizure and destruction"), ¶ 94 ("Decisions about whether a bicycle is 'inoperable' are, as with all other decisions, made on the spot, and the consequence of this determination is the immediate and permanent deprivation of the item").  However, Plaintiffs did give examples where enforcement of these provisions was vague as applied to the individual Plaintiffs.  See, e.g., Suppl. FAC ¶ 131 ("On information and belief, these cleaning supplies were thrown away because, pursuant to the 56.11 Protocols, these items were deemed 'hazards' and pursuant to LAMC 56.11, could be summarily destroyed as 'an immediate threat to the health and safety of the public.'"), ¶¶ 212-213 ("Officer Lopez informed Mr. Diocson that [his dog's] kennel was a Bulky Item, and that he could not take it with him. . . . Although Mr. Diocson did not realize that the kennel would be considered a Bulky Item or agree with the determination that it was a Bulky Item, he was afraid to challenge the LAPD officer.").  The City's assertion that Plaintiffs have failed to allege that "the law is vague as applied to the facts of the case

A statute is unconstitutionally vague if it 1) fails to provide adequate notice of the conduct it prohibits or 2) authorizes or encourages arbitrary or discriminatory enforcement.  Desertrain v. City of Los Angeles, 754 F.3d 1147, 1155 (9th Cir. 2014) (quoting City of Chicago v. Morales, 527 U.S. 41, 56 (1999)).  A vague provision may be unconstitutional even if "there is some conduct that clearly falls within the provision's grasp."  Johnson v. United States, 135 S. Ct. 2551, 2561 (2015).

### a.    Bulky Item

The Ordinance defines a Bulky Item as "any item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch, or wheelchair, that is too large to fit into a 60-gallon container with the lid closed," and excludes "a container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property."  LAMC § 56.11(2)(c).  Plaintiffs claim this definition "fails to provide Plaintiffs with fair notice of whether their individual items are illegal" and "encourages and has resulted in arbitrary and discriminatory enforcement."  Suppl. FAC ¶ 245.

The Court finds the definition of Bulky Item provides fair notice of what items are prohibited.[17]  Plaintiffs argue that a 60-gallon

---

at hand," Mot. at 17 (quoting United States v. Johnson, 130 F.3d 1352, 1354 (9th Cir. 1997)), is wrong.  Because these items were destroyed by the City based on its determinations of size or hazard level, the City cannot fault the Plaintiffs for not alleging the exact sizes of these items.

[17] In the Supplemental FAC, Plaintiffs allege that the Bulky Item Provision does not "define what makes a bicycle, walker, crutch, or wheelchair 'operational'" or "what constitutes a 'constructed' tent."  Suppl. FAC ¶ 61.  However, Plaintiffs do not address arguments about the words "operational" and "constructed" in their opposition and therefore waive their vagueness challenge to those terms.  Allen v. Dollar Tree Stores, Inc., 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming district court's dismissal of plaintiff's claims in which plaintiff's "opposition to the motion to dismiss failed to respond to [the

container can have many different dimensions, and those dimensions will "dramatically affect what will fit inside."  Opp'n at 16.  This is, of course, true.  But this is exactly the purpose of identifying the property by volume, rather than dimensions.  Property that would fit in *any* shaped 60-gallon container is not a Bulky Item under the statute.  That Plaintiffs' property may have been destroyed incorrectly does not make the statute vague.  Cf. Hodel v. Virginia Surface Min. & Reclam. Ass'n, Inc., 452 U.S. 264, 302 (1981) (That actions were later overturned does not undermine the adequacy of the statute).  Similarly, that LAPD and Sanitation do not confirm the volume of an item before seizing or destroying it or may chose not to seize or destroy items that fit the definition of Bulky Item, does not mean the Bulky Item Provision is unconstitutionally vague.

By comparison, in Kolender v. Lawson, 461 U.S. 352 (1983), a statute permitted police officers to demand "credible and reliable" identification from a person who was stopped based on the police officer's reasonable suspicion of criminal activity.  Id. at 355-56.  The Supreme Court found that statute unconstitutionally vague because it "contain[ed] no standard for determining what a suspect ha[d] to do in order to satisfy the requirement to provide a 'credible and reliable' identification" and "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect ha[d] satisfied the statute."  Id. at 358.  Here, unlike in Kolender, it is clear what qualifies as a Bulky Item: any item with a volume of more than 60 gallons that is being stored in a public place by an individual with no other place to store personal property.[18]  The Bulky Item Provision is not unconstitutionally vague.

---

defendant's] argument"); Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (internal quotation marks and citations omitted)).

[18] In challenging Plaintiffs' Fourth Amendment claim, the City states that "[t]he Ordinance, by its express terms, applies to *all* items left by *any* person

In an attempt to avoid this conclusion, Plaintiffs claim that the Bulky Item provision could conceivably apply to an illegally parked car, the suitcase of a person waiting for the bus, or a cyclist's broken bicycle. Opp'n at 14-15.  The Court finds that a reasonable person would not understand the Bulky Item Provision to prohibit the property identified by Plaintiffs.  Rather, as noted above, the Ordinance is clear that its provisions apply to the personal property of individuals "who have no other alternatives for the storage of personal property."  LAMC § 56.11(1).

    b. <u>Immediate Threat to Public Health and Safety</u>

Plaintiffs claim that the phrase "immediate threat to public health and safety" does not provide "fair notice of what items Plaintiffs

---

on sidewalks and other public spaces."  Mot. at 2; <u>see also</u> <u>id.</u> at 4 ("[T]he Ordinance is now, and has always been, a law of general application.").  If this were true, the statute would be unconstitutionally vague because it "appears to be applied only to the homeless."  <u>See</u> <u>Desertrain</u>, 754 F.3d at 1156 ("The vagueness doctrine is designed specifically to prevent this type of selective enforcement").  The City cannot have it both ways.  It is clear from the stated purpose of the Ordinance that it is not a law of general application, but rather was enacted to "balance the needs of the residents and public at large" with "the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas."  LAMC § 56.11(1).  This provision acknowledges that the "City's large and vulnerable homeless population need access to a manageable amount of essential property for their personal use and well-being."  <u>Id.</u>  The challenged provisions must be viewed in context. <u>See</u> <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 112 (1972) (considering "the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted" in determining that an ordinance was not vague, even though "the prohibited quantum of disturbance is not specified in the ordinance"); <u>Tobe v. City of Santa Ana</u>, 9 Cal. 4th 1069, 1107-08 (1995) (holding that the terms camping, living, and store are not "vague . . . when the purpose clause of the ordinance is considered and the terms are read in that context as they should be.").

can have with them in public spaces" and "encourages and has resulted in arbitrary and discriminatory enforcement."  Suppl. FAC ¶ 245.1.

The phrase "immediate threat to public health and safety" is not vague on its face.  Plaintiffs argue, however, that the Protocols "further define the term and create uncertainty." Opp'n at 17.  Procedure 7 of the Protocols states that items pose "an immediate threat to the health or safety of the public" if "there is statistically significant evidence based on at least one study conducted with established scientific principles that acute or chronic health effects may occur in exposed persons."  RJN, Ex. 2 at 29.  The Court agrees that this statement sets standards that are far from clear (How is one to know what the City considers "statistically significant evidence" or "established scientific principals"?) and "bears no resemblance to the judicially-defined 'immediate threat to public health and safety.'"  Opp'n at 17.  However, Procedure 7 also requires the use of a Field Checklist that lists specific types of health hazards, including biohazards, toxins, flammables, corrosives, and reactives, and provides examples of items that would fall into those categories.  RJN, Ex. 2 at 30, 48-49.  The Court finds Plaintiffs have failed to allege that the health and safety provision is unconstitutionally vague when viewed in context of the entire Procedure, including the checklist.[19]  Plaintiffs are free to challenge the City's determination that their property was an immediate threat to public health and safety.  However, as stated above, errors in implementation do not render the Ordinance unconstitutionally vague on its face.

Plaintiff's Third Cause of Action is DISMISSED without leave to amend.

---

[19] In fact, another court in this district specifically praised the City for its health hazards checklist.  Mitchell v. City of Los Angeles, No. CV 16-01750 SJO (GJSx), 2016 WL 11519288, at *3 (C.D. Cal. Apr. 13, 2016) ("The Court commends the City for following th[e] protocol" and "compl[ying] with a strict checklist to determine if immediate health hazards are present in property owned by homeless individuals.").

**B.     State Law Claims**

**1.     Preliminary Issues**

The City contends Plaintiffs' state law claims are barred because 1) written claims were not filed with the government prior to filing this lawsuit and 2) the City is entitled to immunity.

a.     Government Claims Act

The Government Claims Act provides that "all claims for money or damages against local public entities," subject to certain exceptions not applicable here, must be presented to those entities, Cal. Gov't Code § 905, and no suit falling into this category may be brought "until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board," id. § 945.4.

Plaintiffs concede that, for all but one Plaintiff, claims were not filed prior to instituting this action. See Opp'n at 20. They argue, however, that 1) their claims were timely filed before the inclusion of any state law causes of action, and 2) they were not required to comply with the Government Claims Act because their claims for damages are ancillary to their equitable claims. Opp'n at 19-21.

Plaintiffs argue that because the original complaint contained state law claims brought by El-Bey only, and the remaining plaintiffs submitted claims before adding state law claims as to them, Plaintiffs all made timely claims. Opp'n at 20. Plaintiffs did not wait the required 45 days to give the City the opportunity to act on the claims, see Cal. Gov't Code § 912.4, but courts have refused to dismiss cases where "the plaintiffs submitted a timely claim but prematurely filed a complaint . . . because the plaintiffs had substantially complied with the claim presentation requirement," see State of California v. Superior Court, 32 Cal. 4th 1234, 1244 (2004). In Cory v. City of Huntington Beach, 43 Cal. App. 3d 131 (1974), the plaintiff filed a lawsuit against the city two days after submitting a claim for damages, although the city was not served for nearly eight months. Id. at 133. The court held

that "the defense of prematurity, if timely raised, merely would have been a ground for abatement of the action." Id. at 136. The Court of Appeal reversed the lower court's grant of summary judgment, noting that "the city could not have been prejudiced by the premature filing of the action since the complaint was not served until the time period had run." Id. Similarly, in Taylor v. City of Los Angeles, 180 Cal. App. 2d 255 (1960), the court held that the filing of an action prematurely "should not result in a disposition of the matter which has no relation to its merits," particularly where "[a]t the time the answer of the city was filed, the city had received every benefit which a provision for rejection prior to suit is intended to serve." Id. at 263. Here, the City filed its responsive pleading on October 21, 2019, more than 45 days after all but one of Plaintiffs' claims were filed. See Mot. at 20. And the City specifically consented to amending the complaint to include the additional state causes of action and the additional incidents forming the basis for the later filed claims. See Dkt. 16.

Because the Court finds Plaintiffs substantially complied with the claims presentation requirement, it need not address Plaintiffs' "primary relief" argument.[20]

> b.   Discretionary Immunity

"[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. "[I]nstead of interpreting 'discretionary' literally, the focus should be on the policy considerations underlying the governmental entity's claim of immunity." Steinle v. City & Cty. of San Francisco, 919 F.3d 1154, 1160-61 (9th Cir. 2019). Specifically, discretionary functions are those that involve "*basic policy decisions* which have been expressly committed to coordinate branches

---

[20] The Court notes, however, that the allegations of the Supplemental FAC make clear that their claims for injunctive and declaratory relief are significant and potentially more consequential than their request for damages.

of government." Id. at 1061 (quoting Caldwell v. Montoya, 10 Cal. 4th 972, 981 (1995)).  "On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." Barner v. Leeds, 24 Cal. 4th 676, 685 (2000).

The City argues that "Plaintiffs' claims are premised on discretionary conduct by City employees in implementing policies to enforce LAMC 56.11, determinations regarding whether items pose immediate health and safety risks, decisions whether to give individuals more time to move belongings, and determinations regarding what constitutes a 'bulky item.'" Mot. at 21.  Because Plaintiffs' constitutional claims do not fall under the purview of discretionary immunity, see Schooler v. State of California, 85 Cal. App. 4th 1004, 1013 (2000) ("Government Code immunities extend only to tort actions that seek money damages"), the only conduct that could be protected by immunity is 1) the LAPD officer threatening El-Bey with arrest (the Bane Act claim) and 2) LAPD's and Sanitation's decision to throw away Plaintiffs' property rather than store it (the Section 2080 claim).

First, the City argues that "immunity 'has been found to apply to many areas of police work'" and the LAPD officer's alleged threat of arrest "if [El-Bey] failed to move his belongings in the allotted time [] is akin to the actions that courts shield from liability . . . ." Dkt. 26 (Reply) at 10 (citing Conway v. Cty. of Tuolumne, 231 Cal. App. 4th 1005, 1015 (2014)).  However, Conway also noted that "[p]olice officers . . . are not immune under *section 820.2* when their acts are ministerial or public policy dictates against immunity," such as "deciding to arrest an individual when there was no probable cause to do so" or "using unreasonable force when making an arrest or overcoming resistance to it." 231 Cal. App. 4th at 1015.  In fact, the Ninth Circuit has held as a matter of law that discretionary immunity does not apply "to an officer's decision to detain or arrest a suspect." Sharp v. Cty. of Orange, 871 F.3d 901, 920 (9th Cir. 2017) (quoting Liberal v. Estrada, 632 F.3d 1064, 1084 (9th Cir. 2011)).  Nor does discretionary immunity apply to police actions that constitute "operational decision[s] by the police purporting to apply the law." Id.

(alteration in original) (quoting <u>Liberal</u>, 632 F.3d at 1084-85); <u>see also</u> <u>Gillan v. City of San Marino</u>, 147 Cal. App. 4th 1033, 1051 (2007), <u>as modified on denial of reh'g</u> (Feb. 21, 2007) ("The decision to arrest [plaintiff] was not a basic policy decision, but only an operational decision by the police purporting to apply the law.")).  On the face of the Supplemental FAC the Court cannot conclude that the LAPD officer at issue was engaged in a policy decision when he or she allegedly threatened El-Bey with arrest.  <u>See</u> <u>Thomas v. Dillard</u>, 212 F. Supp. 3d 938, 944, 949 (S.D. Cal. 2016) (Section 820.2 does not apply to police officer brandishing taser in the hopes of compelling the plaintiff to submit to a search "because Defendant was not engaged in a 'policy' decision" (internal footnote omitted)).  The City is not entitled to immunity on El-Bey's Bane Act claim at this stage.

Second, the City argues that discretionary immunity can "shield defendants from liability for *alleged* violations of mandatory duties under Section 815.6 where, as here, no mandatory duty in fact exists." Reply at 11 (citing <u>San Mateo Union High Sch. Dist. v. Cty. of San Mateo</u>, 213 Cal. App. 4th 418, 434 (2013)).  However, there is no question that Section 2080.10 imposes a mandatory duty on "a public agency [that] obtains possession of personal property from a person for temporary safekeeping" to "[t]ake responsibility for the storage, documentation, and disposition of the property" for 60 days.  <u>See</u> Cal. Civ. Code § 2080.10.  The City merely disputes whether this provision applies to Plaintiffs' property.  That is a separate question addressed below.  The City is not entitled to immunity on Plaintiffs' Section 2080 claim.

### c.    <u>Good Faith Immunity</u>

"If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable."  Cal. Gov't Code § 820.6. The City argues that even if the Ordinance is unconstitutional, "there

are no allegations that the City did not act in good faith under the apparent authority of LAMC 56.11." Mot. at 22.

As to the Bane Act claim, Plaintiffs allege that the officer threatened El-Bey with arrest in response to his request for "additional time to remove his ID, medication, and his tent." Suppl. FAC ¶ 179. The Supplemental FAC does not allege that this threat was made pursuant to an unconstitutional, invalid, or inapplicable portion of the Ordinance, or pursuant to the Ordinance at all. In a provision not challenged here, the Ordinance provides that "[n]o person shall willfully resist, delay or obstruct a City employee from moving, removing, impounding or discarding Personal Property Stored in a Public Area in violation of Subsections 3.(a)-(h)." LAMC § 56.11(10)(a). It may be that El-Bey's property was not being stored in violation of the Ordinance. As the City has pointed out, the items El-Bey was attempting to collect (ID, medication, and tent) do not necessarily violate the Ordinance. See Mot. at 4 ("the Ordinance now expressly permits up to 60-gallons of Personal Property to be stored in such spaces,"); id. at 5 (Bulky Items do "not include constructed tents"). At this stage of the litigation, the Court cannot determine that the City is entitled to good faith immunity for the Bane Act claim.

As to the Section 2080 claim, Plaintiffs have sufficiently alleged that City employees did not act in good faith in destroying property – allegedly pursuant to the Ordinance. See, e.g., Suppl. FAC ¶ 24 (City employees "seized and summarily destroyed Ms. Garcia's tent and all of her belongings, including the cleaning supplies she needed for work, when she momentarily stepped away from her belongings to go to the bathroom and get ready for work."); id. ¶ 25 ("all of her belongings had been seized and thrown away" even though Ms. Garcia "moved them to an area outside the noticed cleanup area and left them for the day to go to work"); id. ¶ 28 (City employees seized and destroyed a "tent, which was less than seven weeks old, tarps that were in good condition, clean clothing, and a small chest containing most of their important documents"); id. ¶ 30 (ID, medications, and tent were summarily destroyed); id. ¶ 32 ("sanitation workers threw away . . . his backpack and all of its contents, which included medication to treat his diabetes

and other important items"); <u>id.</u> ¶ 93 ("LA Sanitation crews have no mechanism to measure whether an item meets the definition in LAMC 56.11 of a Bulky Item and is therefore subject to seizure and destruction.  Determinations about what constitutes a Bulky Item and is therefore subject to seizure and destruction, are arbitrary and based solely on the individual sanitation worker's judgement and perception of item's size."); <u>id.</u> ¶ 104 ("Although LAMC 56.11 and the 56.11 Protocols state that the City will store the items it seizes, in reality, and consistent with official policy, practice, and custom, the City destroys nearly every item it comes in contact with during the course of 'processing' an encampment."); <u>id.</u> ¶ 106 ("Items ranging from household cleaning supplies to batteries are considered 'an immediate threat' to public health.  This definition is frequently interpreted to include items that are simply dirty, 'smelly,' or even stained."); <u>id.</u> ¶ 110 ("In the course of 'processing' tents and encampments, LA Sanitation workers will tear or rip tents, break items, or spill containers with liquid, and then justify the destruction of property on the basis of these tears, rips, or spilled liquids."); <u>id.</u> ¶ 112 ("containers are also routinely thrown away, along with bags and other luggage, without the contents being sorted or, often, without the containers even being opened.  As a result, LA Sanitation routinely throws away items like medications, important documents, and identification cards, as well as items individuals need to survive on the streets, such as tents, blankets, clothing, and personal hygiene supplies.").  These allegations are more than sufficient to preclude a finding in favor of the City at this stage of the proceedings.

### 2.    Bane Act (Sixth Cause of Action)

"The California Bane Act creates a cause of action against a person if that person 'interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States.'" <u>Sandoval v. Cty. of Sonoma</u>, 912 F.3d 509, 519 (9th Cir. 2018), <u>cert. denied sub nom.</u> <u>Cty. of Sonoma, California v. Sandoval</u>, 140 S. Ct. 142 (2019) (alteration in original) (quoting Cal. Civ. Code § 52.1).  There are two avenues for alleging a Bane Act claim.  If a plaintiff alleges a

negligent violation of her constitutional rights, she must also allege "coercion independent from the coercion inherent in the Fourth Amendment violation itself." Id.  However, if she relies solely on "the coercion inherent in a Fourth Amendment violation" she must also allege that "the coercion occurred with 'specific intent to violate the [plaintiff's] right to freedom from unreasonable seizure.'" Id. at 519-20 (quoting Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043, 1044 n.5 (9th Cir. 2018)). El-Bey alleges that the City and Doe Defendants "have used arrests, threats of arrest and intimidation to interfere with" his rights and "acted with disregard for Plaintiff's rights, with the knowledge that these actions were unreasonable and violated Plaintiff's constitutional rights, and with the intent to violate Plaintiff's rights." Suppl. FAC ¶¶ 262, 263. Specifically, on or about January 10, 2019, two LAPD officers instructed El-Bey to pack up his belongings in ten minutes. Id. ¶ 175. El-Bey "suffers from mental health issues" and "struggled to pack up his belongings into a suitcase and a cart, in an attempt to comply with the officers' orders." Id. ¶¶ 172, 177. When he requested additional time to pack up his ID, medication, and tent, one of the officers threatened him with arrest. Id. ¶ 179. Sanitation workers then threw El-Bey's belongings into the back of a garbage truck. Id. ¶ 180.

The City argues that "[s]imply stating (truthfully) that there could be legal consequences for Plaintiff resisting, delaying, or obstructing a City employee in violation of LAMC 56.11(10) – without more – cannot amount to a threat sufficient to support a Bane Act claim." Mot. at 23. The City mischaracterizes the Supplemental FAC – El-Bey does not simply allege that City employees stated truthfully that there might be legal consequences for violating LAMC § 56.11(10). He alleges that while collecting his belongings as quickly as he could, he was threatened with arrest if he did not leave certain crucial property behind. This is sufficient to allege independent coercion under the first Bane Act avenue.[21]  See Cooley v. City of Los Angeles, No.

---

[21] At the hearing, the City argued that El-Bey has not alleged a Bane Act violation because the officer who allegedly made the threat is not the person

2:18-CV-09053-CAS-PLA, 2019 WL 3766554 at *6 (C.D. Cal. Aug. 5, 2019) (holding plaintiffs had sufficiently stated a Bane Act claim where "plaintiffs allege[d] that they themselves were told by LAPD officers to leave the area during the cleaning or be arrested").

The City also argues that El-Bey has not sufficiently alleged that the LAPD officer who threatened him acted with the requisite intent for a Bane Act claim. Mot. at 22. However, specific intent need not be shown where, as is the case here, there is a coercion independent from the seizure itself.[22]

---

who threw El-Bey's property away. The City does not identify any case law supporting this argument. The officer threatened El-Bey with arrest if he did not leave his property behind to be destroyed, allegedly in violation of the Fourth Amendment. That he was not the one who subsequently destroyed the property is immaterial.

[22] Even if El-Bey were required to allege specific intent, he has done so. "The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" Sandoval, 912 F.3d at 520 (alteration in original) (quoting Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 803 (2017), as modified (Nov. 17, 2017)). "The first is a purely legal determination" and "then the jury must make the second, factual, determination." Cornell, 17 Cal. App. 5th at 803. After Lavan, Fourth Amendment protections "clearly" and "plainly" applied to the removal and destruction of property belonging to unhoused persons. And, accepting the facts in the complaint as true, El-Bey has sufficiently alleged that the officer's purpose in making the threat was to deprive him of his property interests in the property he would have to leave behind. See, e.g., Suppl. FAC ¶ 263 (officer "acted with disregard for Plaintiff's rights, with the knowledge that these actions were unreasonable and violated Plaintiff's constitutional rights, and with the intent to violate Plaintiff's rights"); ¶ 179 (El-Bey "requested additional time to remove his ID, medication, and his tent," which are not permitted to be summarily destroyed under the

3.        **Violation of Mandatory Statutory Duty (Seventh Cause of Action)**

California Government Code Section 815.6 provides a private right of action for injuries caused by a public entity's "failure to discharge [a mandatory] duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  Plaintiffs allege that the City violated the mandatory duties set out in California Civil Code Section 2080 *et seq*.  Section 2080.10 provides:

> When a public agency obtains possession of personal property from a person for temporary safekeeping, the public agency shall . . . [t]ake responsibility for the storage, documentation, and disposition of the property," [and] "[p]rovide the person from whom the property was taken with a receipt and instructions for the retrieval of the property," including "that the property must be claimed within 60 days after the public agency obtains possession or the property will be disposed of . . . .

The City claims that because the title of the Article in which Section 2080.10 appears is "Lost Money and Goods," each section in that article applies only to "lost" property.  Reply at 12.  "[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text." I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 189 (1991) ("The text's generic reference to 'employment' should be read as a reference to the '*unauthorized* employment' identified in the paragraph's title."); see also Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 439 (2011) (location of section in "subchapter entitled 'Procedure' . . . suggests Congress regarded the 120–day limit as a claim-processing rule" and not a jurisdictional rule).  However, "the title of a statute and the heading of a section cannot limit the plain meaning of the text."  Bhd. of R. R. Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528-29 (1947).  "[M]atters in the text which deviate from

---

Ordinance (with limited exceptions), yet that is when he was threatened with arrest).

those falling within the general pattern are frequently unreflected in the headings and titles." Id. at 528.

As Plaintiffs note, unlike the other provisions of Section 2080,[23] Section 2080.10 does not use the word "lost." Opp'n at 24. To the contrary, Section 2080.10 refers to a public agency "obtain[ing] possession of personal property from a person for temporary safekeeping." Cal. Civ. Code § 2080.10(a). It comes after a number of sections describing what a public entity should do if a person delivers lost property to it. See id. §§ 2080-2080.8. Each of these provisions requires the police to hold the property for 90 days before selling, destroying, or otherwise disposing of it. If Section 2080.10 also applied to lost property, the different limit, only 60 days (with the option to extend for 10 months if the owner is in custody), would not make sense. Moreover, it is clear that this section was specifically enacted to apply to property for which there were no then-existing handling requirements, including property of homeless people:

> [M]ost of the items that come into the possession of the property officers belong to arrestees, the homeless and those detained for some type of mental evaluation. Property held for "safekeeping" may be food, soiled clothes, shopping carts and personal belongings. The problem that affects property personnel the most severely is reuniting the property with its owner.

California Bill Analysis, S.B. 1707 Sen., 7/30/1998.

---

[23] The Court rejects Plaintiffs' additional argument that the other provisions of Section 2080 apply to items that are not lost. Suppl. FAC ¶ 268; Opp'n at 24. No reasonable definition of the word lost would include a person's belongings that are purposely stored in an area where that person lives, whether attended or unattended. To hold otherwise would allow anyone to take homeless persons' belongings and charge them reasonable expenses to give them back. And, it would require the City to store all items left in public places in Los Angeles on the off-chance the items might be the property of an unhoused resident.

The Court finds Plaintiffs have sufficiently alleged that the City did not comply with Section 2080.10.

## C.   As-Applied Challenge

The City argues that Haugabrook's as-applied claims fail to provide fair notice because "[b]asic material aspects [of those claims], including the date and location of the alleged incident, lack such specificity that the City is unable to investigate and defend itself against those claims."  Mot. at 25.  The Court disagrees.

Haugabrook alleges that he has lived "on Figueroa St., between 53rd St. and 52nd Place, . . . approximately a block away from the 110 freeway in South Los Angeles . . . next to an empty lot owned by the City" since the beginning of 2019.[24]  Suppl. FAC ¶ 191.  Although not explicitly stated, the allegations can be fairly read as stating that this is the location of the complained of sweeps.  Haugabrook alleges that he was subject to cleanups "[o]n or about March 2019," "[a]bout a month later," "[o]n yet another occasion," and "[o]n or about June 24, 2019." Id.  ¶¶ 193, 197, 201, 205.  That the four cleanups occurred over a three-month period in a specific area provides sufficient notice for the City to investigate the allegations.

---

[24] The Supplemental FAC alleges that he lived in that location "[f]or the past four to six months."  Suppl. FAC ¶ 191.  Because the original complaint with similar language was filed on July 18, 2019, Dkt. 1 ¶ 145, the Court interprets this allegation to mean that Haugabrook moved to this area between January and March 2019.

## IV. CONCLUSION

The City's Motion to Dismiss is GRANTED as to the Third Cause of Action and DENIED as to the remaining claims.  Plaintiffs' Third Cause of Action is DIMISSED with prejudice.

IT IS SO ORDERED.


Date: February 15, 2020

Dale S. Fischer
United States District Judge