Shayla Myers (SBN: 264054)
Mallory Andrews (SBN: 312209)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 S. Broadway, Los Angeles, CA 90003
Tel.:  (213) 640-3983
Email(s): smyers@lafla.org
          mbandrews@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora,*
*Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
*Marquis Ashley, and Ktown for All*

*Additional Attorneys on Next Page.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANET GARCIA, et at., | CASE NO. 2:19-cv-06182-DSF-PLA |
| Plaintiff(s), | Assigned to Judge Dale S. Fischer |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| CITY OF LOS ANGELES, et al., | |
| Defendant(s). | |
| | [Declarations, Request for Judicial Notice, and Proposed Order Filed concurrently] |
| | **Date:    March 30, 2020** |
| | **Time:    1:30 p.m.** |
| | **Ctrm:    7D** |

Catherine Sweetser (SBN: 271142)
Kristina Harootun (SBN: 308718)
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
11543 W. Olympic Blvd.,
Los Angeles, CA 90064
Tel.:   (310) 396-0731
Email(s): csweetser@sshhlaw.com
            kharootun@sshhlaw.com

*Attorneys for Plaintiffs.*

Benjamin Allan Herbert (SBN: 277356)
William L. Smith (SBN: 324235)
KIRKLAND & ELLIS LLP
555 S. Flower St., Los Angeles, CA 90071
Tel.:   (213) 680-8400
Email(s):   benjamin.herbert@kirkland.com
            william.smith@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Janet Garcia,
Pete Diocson Jr., and Marquis Ashley, Ali El-Bey,
Association for Responsible and Equitable Public
Spending*

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE  that on March 30, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the above-titled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiffs Pete Diocson Jr., Marquis Ashley, and Ktown for All will and hereby do, pursuant to Federal Rule of Civil Procedure (F.R.C.P.) 65(a), move for an order enjoining the City of Los Angeles from enforcing Los Angeles Municipal Code Section 56.11(3)(i) and 56.11(10)(d).

Plaintiffs' Motion is brought pursuant to  F.R.C.P. 65(a), on the ground that Plaintiffs are likely to succeed on their claims that the sections of the Los Angeles Municipal Code are facially unconstitutional;  that if the City is not enjoined from enforcing the provisions of the ordinance during the pendency of this litigation, they will continue to be irreparably harmed; and that such an injunction is equitable and in the public interest.  Plaintiffs further request the City be enjoined from posting signs or otherwise notifying the public that  items may be seized and immediately destroyed if they are "bulky."

Plaintiffs' Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations in Support of the Preliminary Injunction, the Request for Judicial Notice, upon all the pleadings and papers on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion.

Dated: February 26, 2020

LEGAL AID FOUNDATION OF LOS ANGELES
SCHONBRUN SEPLOW HARRIS AND
HOFFMAN LLP
KIRKLAND & ELLIS LLP

/s/ Shayla Myers

By: Shayla Myers
*Attorneys for Plaintiffs*

1
2

# **TABLE OF CONTENTS**

I.   INTRODUCTION...................................................................................1

II.   STATEMENT OF FACTS.....................................................................3

III.   PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF.....................9

   a.   Plaintiffs Are Likely To Succeed On Their Claim That
The "Bulky Item Provision" Of LAMC 56.11 Is Facially
Unconstitutional ..............................................................................10

    i.   The Bulky Item Provision Violates the Fourth
Amendment and Article I, Section 13 of the
California Constitution.............................................................10

    ii.   The  "Bulky Item Provision" of LAMC 56.11 Violates
the Fourteenth Amendment and Article I, Section 7 of
the California Constitution.......................................................12

   b.   Plaintiffs Have Shown Irreparable Harm Absent
Preliminary Relief ...........................................................................15

   c.   The Balance of Equities and Public Interest Weigh
Heavily in Plaintiffs' Favor ............................................................19

IV.   THE BOND REQUIREMENT SHOULD BE WAIVED...…..………….22

V.   CONCLUSION ...................................................................................22

# **TABLE OF AUTHORITIES**

Page(s)

*Federal Cases*

*Awad v. Ziriax,*
   670 F.3d 1111 (10th Cir. 2012) ........................................................... 20

*Barahona-Gomez v. Reno,*
   167 F.3d 1228, 1237 (9th Cir. 1999) .................................................... 22

*Billups v. City of Charleston,*
   194 F.Supp.3d 452 (D.S.C., 2016) ....................................................... 10

*Board of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972) ............................................................................. 13

*Boardman v. Pac. Seafood Grp.,*
   822 F.3d 1011 (9th Cir. 2016) ............................................................. 16

*Brewster v. Bd. of Edu. of Lynwood Unified Sch. Dist.,*
   149 F.3d 971 (9th Cir. 1998) ............................................................... 13

*City of Los Angeles v. Patel,*
   135 S.Ct. 2443 (2015) ......................................................................... 11

*Clement v. City of Glendale,*
   518 F.3d 1090 (9th Cir. 2008) ............................................................. 14

*Cnty of Santa Clara v. Trump,*
   250 F.Supp.3d 497 (N.D.Cal., 2017) ................................................... 21

*Diamond House of SE Idaho, LLC v. City of Ammon,*
   381 F.Supp.3d 1262 (D.Idaho, 2019) ................................................... 20

*Drakes Bay Oyster Co. v. Jewell,*
   747 F.3d 1073 (9th Cir. 2014) ............................................................. 19

*Draper v. Coombs,*
   792 F.2d 915 (9th Cir. 1986) ............................................................... 14

PLAINTIFFS' MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION

# <u>TABLE OF AUTHORITIES – CONT'D</u>

Page(s)

<u>*Federal Cases - Continued*</u>

*East Bay Sanctuary Covenant v. Trump*,
  354 F.Supp.3d 1094 (N.D.Cal., 2018)........................................................ 18

*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................................................ 15

*Georgia Latino Alliance for Human Rights v. Governor of Georgia*,
  691 F.3d 1250 (11th Cir. 2012)................................................................ 16

*Goss v. Lopez*,
  419 U.S. 565 (1975) ................................................................................ 13

*Isaacson v. Horne*,
  716 F.3d 1213 (9th Cir. 2013).................................................................. 12

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009).............................................................. 19, 20

*Lavan v. City of Los Angeles*,
  693 F.3d 1022 (9th Cir. 2012)............................................................ Passim

*Lavan v. City of Los Angeles*,
  797 F.Supp.2d 1005 (C.D. Cal. 2011)........................................................ 2

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v.
  Connaughton*,
  752 F.3d 755 (9th Cir. 2014)........................................................ 9, 19, 22

*Leiva–Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) .................................................................... 8

*Logan v. Zimmerman Brush Co.*,
  455 U.S. 422 (1982) .............................................................................. 13, 15

# <u>TABLE OF AUTHORITIES – CONT'D</u>

Page(s)

<u>*Federal Cases - Continued*</u>

*Los Padres Forestwatch v. U.S. Forest Service*,
  776 F.Supp.2d 1042 (N.D. Cal. 2011)........................................................ 19

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................... 13

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012)............................................................... 12, 17

*Miranda v. City of Cornelius*,
  429 F.3d 858 (9th Cir. 2005)............................................................... 10, 11

*Mitchell v. City of Los Angeles*,
  2016 WL 11519288 (C.D. Cal. April 13, 2016) ........................................ 4

*Mitchell v. City of Los Angeles*,
  2017 WL 10545079 (C.D. Cal. Sept. 25, 2017)................................... 4, 21

*North Am. Cold Storage Co., v. City of Chicago*,
  211 U.S. 306 (1908) ................................................................................... 13

*Nozzi v. Hous. Auth. Of City of Los Angeles*,
  806 F.3d 1178 (9thCir. 2015).................................................................... 12

*Propert v. District of Columbia*,
  948 F.2d 1327 (D.C. Cir. 1991) ................................................................ 14

*Recchia v. City of Los Angeles*,
  889 F.3d 553 (9th Cir. 2018)..................................................................... 10

*S.A. v. Trump*,
  2019 WL 990680 (N.D.Cal., 2019)..................................................... 17, 18

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
  709 F.3d 1281 (9th Cir. 2013)..................................................................... 9

1

## <u>TABLE OF AUTHORITIES – CONT'D</u>

2

Page(s)

<u>*Federal Cases - Continued*</u>

3

4

*Soldal v. Cook County Ill.*,

5

   506 U.S. 56 (1992) ................................................................ 10

6

*Styppman v. City and Cnty of San Francisco*,

7

   557 F.2d 1338 (9th Cir. 1977) ............................................... 13

8

*Texas v. Brown,*

9

   460 S 730 (1983) ................................................................. 11

10

*Torres v. Puerto Rico*,

11

   442 U.S. 465 (1979) ............................................................. 11

12

*United States v. Cervantes*,

13

   703 F.3d 1135 (9th Cir. 2012) ............................................... 11

14

*United States v. Alabama*,

15

   691 F.3d 1269 (11th Cir. 2012) ............................................. 21

16

*Univ. of Tex. v. Camenisch*,

17

   451 U.S. 390 (1981) ............................................................. 10

18

*Valle del Sol Inc. v. Whiting*,

19

   732 F.3d 1006 (9th Cir. 2013) ................................... 15, 16, 17, 18

20

*Winter v. Natural Resources Defense Council, Inc.*,

21

   555 U.S. 7 (2008) ................................................... 9, 16, 19

22

*Wong v. Cny and Cty. Of Honolulu,,*

23

   333 F.Supp.2d 942, 948-50 (D. Hawaii 2004) ........................... 14

24

<u>*State Cases*</u>

Page(s)

25

26

*People v. Ramirez*,

27

25 Ca.2d 260 (1979) ............................................................. 12

28

# <u>TABLE OF AUTHORITIES – CONT'D</u>

<u>*State Cases - Continued*</u>                                    Page(s)

*Kash Enters., Inc. v. City of Los Angeles,*
   19 Ca.3d 294 (1977) ................................................................ 14

<u>*Federal Statutes*</u>                                         Page(s)

U.S. Const., Amend. XIV ........................................................ 10

U.S. Const., Amend. IV ............................................................ 8

<u>*California Statutes*</u>                                      Page(s)

Cal. Const., Art. I. Section 7 ..................................................... 12

Cal. Const., Art. I. Section 13 .................................................... 8

PLAINTIFFS' MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

"There now can be no dispute that all persons have a protected property interest in personal property stored in public areas."  Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Failure to State a Claim (Order on Motion to Dismiss), Dkt. 36 at 12.  Despite this Court's clear recitation of the law, which is derived from yet another clear edict issued to the City of Los Angeles (the "City") by Ninth Circuit Court of Appeals, *see Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031-32 (9th Cir. 2012), the City continues to ignore the protections that the United States and California Constitutions afford to all people, including people who are homeless and whose property is necessarily stored in public areas.  Los Angeles Municipal Code (LAMC) Section 56.11(3)(d), the "Bulky Item Provision," purports to allow the City to seize and immediately destroy homeless residents' belongings, based solely on the size of the item.  On its face, the provision is unconstitutional—it is anathema to the protections afforded by the Fourth and Fourteenth Amendments to United States Constitution and Article I, Sections 8 and 13 of the California Constitution. And yet, the ordinance, by design, targets and is enforced against an incredibly vulnerable population:  homeless people who have no options but to live in tents and makeshift encampments throughout Los Angeles, and who often rely on these "bulky items" to survive on the street.

In fact, since last month, the has City dramatically increased enforcement of this specific provision.  On January 21, 2020, even while this Court was considering the motion by the City to dismiss Plaintiffs' facial challenge to the Bulky Item Provision, *see* Dkt. 22—a motion that would effectively rule on the facial validity of the

ordinance—LA Sanitation[1] informed the Los Angeles City Council that it had changed its protocols related to enforcement of LAMC 56.11.  Beginning that day, city teams tasked with cleaning up homeless encampments were instructed to "fully enforce" the Bulky Item Provision by seizing and discarding all property consistent with ordinance. *See* Plaintiff's Request for Judicial Notice (P's RJN), Exh. 4, at 2. Even now, after the Court's February 15, 2020 ruling on the motions to dismiss, the City continues to use the Bulky Item Provision to seize and immediately destroy the belongings of homeless people in Los Angeles.

Plaintiffs therefore have no choice but to seek a preliminary injunction, enjoining the enforcement of LAMC 56.11(3)(d) and 56.11(10)(d).[2]  Without further court intervention, the City will continue to violate the constitutional rights of homeless people, all under the guise of enforcing a facially unconstitutional ordinance. Plaintiffs easily satisfy the standard for a preliminary injunction.  Plaintiffs have sufficiently demonstrated a likelihood of success on the merits of their facial constitutional claims.  Plaintiffs will be irreparably harmed by the continued enforcement of the ordinance.  And given the constitutional issues at stake, the balance of the equities and public interest are best served by a preliminary injunction preventing the City from enforcing an unconstitutional ordinance against an incredibly vulnerable population.

---

[1] LA Sanitation is the Designated Administrative Agency tasked with "promulgat[ing] rules, protocols, and procedures for the implementation and enforcement of" LAMC 56.11.  *See* LAMC 56.11(11).

[2] Plaintiffs may also seek further court intervention regarding the enforcement of other provisions of LAMC 56.11 and the seizure and destruction of peoples' belonging; however, Plaintiffs need further discovery to do so.  Plaintiffs have requested the City commence discovery pursuant to Rule 26, but the City has, to date, refused to begin discovery.  *See* Joint Statement Regarding Plaintiffs' Motion for Expedited Discovery, Dkt. 29.

## II.    STATEMENT OF FACTS

LAMC 56.11 outlines circumstances in which the City can seize and in many instances, immediately destroy unhoused residents' belongings.  Section 56.11(3)(i), the "Bulky Item Provision," allows the City to seize and immediately destroy homeless people's belongings, based solely on the size of the item.  Under the Bulky Item Provision, the City can seize and destroy any item that is "bulky," [3] or roughly, what will not fit in a 60 gallon container with the lid closed. *See* LAMC 56.11(3)(d). [4] These seizures need not conducted pursuant to a warrant or an exception to the warrant requirement. Nor must the City need to provide any notice or any opportunity to be heard, either before or even after the seizures. And, anyone who questions the City's

---

[3] LAMC 56.11(2)(c) defines a Bulky Item as:

[A]ny item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed, including, but not limited to, a shed, structure, mattress, couch, chair, other furniture or appliance.  A container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property shall not in itself be considered a Bulky Item.

[4] LAMC 56.11(3)(i) states:

(i)   No Person shall Store any Bulky Item in a Public Area.  Without prior notice, the City may remove and may discard any Bulky Item, whether Attended or Unattended, Stored in a Public Area unless the Bulky Item is designed to be used as a shelter.  For any Bulky Item that is designed to be used as a shelter but does not constitute a Tent as defined in Subsection 2.(q), with pre-removal notice as specified in Subsection 4.(a), the City may remove and discard the Bulky Item, whether Attended or Unattended.  If the Bulky Item violates Subsection 3.(d)-(h) herein, even if it is designed to be used as a shelter, without prior notice, the City may remove and discard the Bulky Item, whether Attended or Unattended.

actions can be arrested and faces six months in jail and/or a $1000.00 fine.  LAMC
56.11(10)(d).[5]

The current version of LAMC 56.11 was adopted in 2016, following the issuance
of a preliminary injunction against the City of Los Angeles in *Lavan v. City of Los
Angeles*, 797 F.Supp.2d 1005 (C.D. Cal. 2011), and a ruling by the Ninth Circuit,
upholding the injunction.  *See Lavan,* 693 F.3d at 1031-32. The new version of
LAMC 56.11 not only purports to allow the City to seize and destroy property in
those instances allowed by the Court in *Lavan*, but also in other instances, including,
relevant to this motion, when any item is too large to fit in a 60 gallon container with
the lid closed.  *See* LAMC 56.11(3)(d).

At the same time the City adopted the revision of LAMC 56.11, the City was sued
yet again by a group of homeless residents whose belongings were seized and
destroyed.  *See Mitchell v. City of Los Angeles*, No. CV160175-SJO-GJSX, 2016 WL
11519288, at *7.  And yet again, the district court judge issued an injunction,
preventing the City from doing so, except where it was consistent with the Fourth and
Fourteenth Amendment. *Id.*, 2016 WL 11519288, at *7.  (C.D. Cal. Apr. 13, 2016).
In 2017, the City sought to modify the injunction to allow the City to enforce the
Bulky Item Provision in Skid Row, but the Court refused.  *Id.,* 2017 WL 10545079,
at **3-4 (C.D. Cal. Sept. 25, 2017) (denying the request for modification on the
ground that the injunction "already appropriately addressed" the City's concerns
regarding health and safety and passable sidewalks without the need to modify the
injunction to include the bulky item provision).

---

[5] LAMC 56.11(10)(d) states: "No Person shall willfully resist, delay or obstruct a City
employee from removing or discarding a Bulky Item Stored in violation of
Subsection 3.(i), including by refusing to vacate or retreat from within the Bulky Item
or from an obscured area created by the Bulky Item."  A violation of this provision is
punishable by up to six months in jail or a $1000.00 fine or both.  *See* LAMC
Sections 56.11(10); 11(m).

1     In September 2018, in an attempt to break the cycle of litigation that had

2  plagued the City for decades, organizations providing services to unhoused residents

3  in Los Angeles, including Plaintiff Ktown for All, sent a letter to the Mayor of Los

4  Angeles, specifically outlining issues with the enforcement of LAMC 56.11, and

5  raising concerns about the constitutionality of the ordinance.  Declaration of Shayla

6  Myers in Support of the Preliminary Injunction (Myers Decl.) ¶ 2, Exh. A. Nine

7  months later, the Mayor announced the launch of a new street cleaning program,

8  aimed at addressing many of the concerns raised by advocates over the preceding

9  nine months.  *Id.*, ¶ 3.  The City Council approved additional funding the new

10  programs; they did not, however, take any steps to address the concerns raised about

11  the constitutionality of LAMC 56.11, let alone amend the ordinance.  *Id.* ¶ 4; RJN,

12  Exh. 5.

13     In July 2019, after the City Council went into summer recess without any

14  movement on LAMC 56.11, seven homeless residents, Ktown for All and AREPS,

15  brought this lawsuit, challenging the constitutionality of the ordinance and the City's

16  continued seizure and destruction of people's belongings. [6]

17     In October 2019, the City rolled out the new CARE program, which promised

18  to represent a change in the way the City conducted cleanups and to lead the cleanups

19  with an approach aimed at public health, rather than enforcement.  *See* P's RJN, Exh.

20  6.  However, only two months after the launch, members of the City Council held a

21  hearing to review the program, and at the hearing, expressed frustration about the

22  new CARE program. P's RJN, Exh. 5. One council member wondered if the CARE

23  teams were meeting the needs of the council districts and if the individual teams were

24  being empowered to clean up or were "being handicapped by more bureaucracy."

25

26  [6] Plaintiffs did not, however, challenge many of the practices outlined in the
   September 2018 letter to the Mayor, in the hopes that the launch of the CARE and
27  CARE+ teams would ameliorate these concerns.

28

LA Sanitation was then instructed to report back on how LA Sanitation could address Council's concerns, specifically, to increase visible cleanliness in Los Angeles.  P's RJN, Exh. 4 at p.2.

As a result of this "feedback from the [Energy, Climate Change, and Environmental Justice Committee] and other Council offices, in particular about the need to more effectively enforce LAMC 56.11," Los Angeles Sanitation made "program adjustments citywide."  P's RJN, Exh. 4 at p.2.  Among those changes was the instruction to begin strict enforcement of the Bulky Item Provision city-wide. Pursuant to the new protocols, "[e]very CARE and CARE+ team will fully enforce LAMC 56.11 at every location they visit.  Compliance means that . . .  prohibited items, such as bulky items and biohazards, will be impounded and disposed of according to law and policy."  *Id.* LA Sanitation made these adjustments beginning on January 21, 2020, even though the City was awaiting an order from this Court on its Motion to Dismiss, which would likely address the constitutionality of the Bulky Item Provision.  *See* Dkt. 22, 28.

On February 15, 2020, this Court issued a ruling on the City's motion to dismiss, rejecting the City's challenge to Plaintiffs' claim that the Bulky Item Provision was facially unconstitutional. Following the ruling, Plaintiffs sent the counsel for the City a letter, attempting yet again to avoid further litigation and the expenditure of city resources. To that end, Plaintiffs requested counsel for the City a letter, requesting they cease enforcement of the Bulky Item Provision and stipulate to a preliminary injunction, barring the City from enforcing the Bulky Item Provision of LAMC 56.11 and the corresponding LAMC 56.11(10)(d).

In response, counsel for the City indicated that an email had been sent out regarding the continued enforcement of LAMC 56.11, but that they needed until Friday, February 21, 2020 to confer internally about how to respond to Plaintiffs' request.   Still attempting to avoid the need for further court intervention, counsel for

Plaintiffs agreed to again hold off filing a motion for a preliminary injunction until the City had a chance to respond on Friday, February 21, 2020.  Counsel indicated, however, that they were doing so with the expectation that the City was not enforcing the Bulky Item Provision, and if they learned otherwise, they would need to seek court intervention to protect their clients' rights.  The City did not substantively respond to Plaintiffs'' request on Friday, instead requesting that Plaintiffs "be patient."

Contrary to this expectation, the City continues to enforce the Bulky Item Provision against homeless residents.  On February 24, 2020, Plaintiff Ktown for All's co-founder and two of its members were on their way to a meeting with United Way and other homeless services provider to discuss the City's A Bridge Home shelter program (which is why the organization was founded).  Declaration of Phuong Nguyen in Support of Plaintiffs' Preliminary Injunction ("Nguyen Decl.), ¶¶ 3, 8-9.  Shortly before the meeting, they were alerted that a clean-up was occurring in their neighborhood.  *Id.* They learned that Sanitation workers were insisting on taking bulky items from an unhoused neighbor that they had been working with since the group's founding.  The neighbor is in a wheelchair and often needs assistance during sweeps to advocate against his belongings being thrown away, and he needs help to move his belongings when there are cleanups.  Nguyen Decl. ¶ 8; Declaration of Nicholas Price in Support of Plaintiffs' Preliminary Injunction ("Price Decl.), ¶¶ 3-5.  As a result, Ktown for All was forced to postpone their meeting and instead, go to the encampment cleanup to advocate for their neighbor and monitor the sweep.  Nguyen Decl., ¶ 8-9.

At the encampment, despite Ktown for All's attempts to advocate for their neighbor, LAPD officers and Sanitation workers informed Ktown for All members and the owner of the property that the "bulky item" provision was the law.  LA Sanitation identified three pallets Kahn used to keep himself off the muddy, wet

grass, and a thin foam cushion he sleeps on as bulky items.  Because they were "bulky," Sanitation workers summarily threw them in the back of a garbage truck. Price Decl. ¶¶ 10-11; Declaration of Nicolas Emmons in Support of Preliminary Injunction ("Emmons Decl."), ¶ 4, Ex. A.  This is consistent with the City's own documents related to homeless encampment cleanups:  The City continues to identify bulky items on daily cleanup schedules for the CARE+ teams which conduct cleanups at homeless encampments and enforce LAMC 56.11.  *See* Declaration of Adrian Riskin in Support of Plaintiffs' Declaration, ¶ 6, Ex. A.

The continued enforcement of the Bulky Item Provision impacts Plaintiffs and other homeless residents throughout Los Angeles.  Plaintiff Marquis Ashley uses a cart to transport necessary items to his encampment, which is in an industrial area away from resources and food.  Ashley Decl. ¶ 4.  He had two of the carts he used to get around, but they were destroyed as bulky items in May 2019.  confiscated and destroyed at the intersection of Lomita and McCoy. *Id*., ¶ 12, 14.  He now has a new cart, but as long as the City continues to enforce the Bulky Item Provision, he is at risk of having that cart taken and summarily destroyed.  *See Id.,* ¶ 17, Exh. B. Plaintiff Pete Diocson Jr. has had two dog kennels confiscated and destroyed. Dioscon Decl. ¶¶ 12-15.  He worries about getting a new kennel, which the City could decide is a bulky item, but without a kennel, he is worried that his dog will get loose and run into traffic at night.  *Id.,* ¶¶ 14-16.  He also has another item that, like many other similarly sized items that have been seized and destroyed as Bulky Items, could also be seized and destroyed if the City is allowed to continue enforcing the Bulky Item Provision.  *Id.*

Plaintiff Ktown for All works with members and homeless neighbors whose property could be taken and destroyed as long as the City continues to enforce the Bulky Item Provision.  *See* Nguyen Decl. ¶¶ 5-14; Bettega Decl. ¶¶ 10-13.  Ktown for All's member, Rachelle Bettega, previously had bins seized and destroyed

because the City determined they were "bulky items."  Bettega Decl. ¶¶ 10-13. Ms. Bettega needed the bins to keep her clothes and other possessions off the ground, to prevent them from getting wet when it rains.  *Id.,* ¶ 10.  She now has a stackable set of shelves, but LA Sanitation could take and destroy these as well, and she would have no way to contest the seizure or destruction.

Plaintiff Ktown for All is itself affected by the continued enforcement of the unconstitutional ordinance.  The organization continues to divert resources away from advocacy meetings and strategic planning for additional housing and shelters to monitoring sweeps and assisting unhoused neighbors who are subjected to the enforcement of the Bulky Item Provision.  Nguyen Decl. ¶¶ 6-7.  After items are seized, Ktown for All organizers spend resources posting on social media for items that need to be replaced, having the items delivered to their residences, and then delivering the items.  *Id*. ¶ 11.  Those are resources Ktown for All could put towards advocacy or other forms of outreach, that instead go to replacing items the City has taken and destroyed pursuant to the Bulky Item Provision. *Id.* ¶¶ 6-7, 11-12.

## III.   **PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF**

To obtain a preliminary injunction, a "[p]laintiff must show that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 759 (9th Cir. 2014) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  All the *Winter* factors weigh in favor of an injunction here.[7]

[7] The Court may also grant a preliminary injunction if Plaintiffs can show "serious questions going to the merits[,]" that the "balance of hardships tips sharply in [their] favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal quotation marks

### a.  Plaintiffs Are Likely To Succeed On Their Claim That The "Bulky Item Provision" Of LAMC 56.11 Is Facially Unconstitutional

First, Plaintiffs easily meet their burden of showing they are likely to succeed on the merits of their challenge to the Bulky Item Provision.  To show a likelihood of success on the merits, the moving party need not demonstrate that they will prevail, but only that it is "more likely than not" that they will.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  As this Court already ruled in its order denying the City's motion to dismiss Plaintiffs' facial challenge of the Bulky Item Provision, the provision on its face is both unreasonable and fails to provide "any procedural safeguards whatever . . . ."  *See e.g.,* Order on Motion to Dismiss, Dkt. 36 at 11, 12, 15.  *See also Billups v. City of Charleston*, 194 F. Supp. 3d 452, 460 (D.S.C. 2016) (although different standards apply to each motion, the court's ruling on constitutionality will be sufficient to decide a motion to dismiss and "will effectively determine the outcome of plaintiffs' motion for preliminary injunction").  Because the Bulky Item Provision is unconstitutional on its face, Plaintiffs have demonstrated they are likely to succeed on the merits of their claims related to those provisions.

### i.  The Bulky Item Provision Violates the Fourth Amendment

The Fourth Amendment "protects the right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches."  U.S. Const., Amend. 4.  A "seizure" under the Fourth Amendment occurs "where there is some meaningful interference with an individual's possessory interest in that property."  *Soldal v. Cook County Ill.*, 506 U.S. 56, 63 (1992).  "A seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions."  *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (2005); *see also Recchia v. City of Los Angeles*, 889

---

omitted). Under either standard, Plaintiffs have demonstrated that a preliminary injunction is appropriate here.

F.3d 553, 558 (9th Cir. 2018); *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). *Cf. Texas v. Brown*, 460 S 730, 735-36 (1983) (listing exceptions to the warrant requirement). Moreover, "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property." *Lavan*, 693 F.3d at 1029, *see also Miranda*, 429 F.3d at 864. When an ordinance allows for the search or seizure of property without a warrant and without a requirement that the seizure fall within a warrant exception, the ordinance is unconstitutional on its face. *See Torres v. Puerto Rico*, 442 U.S. 465, 466 (1979); *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2450 (2015) (citing *Torres*).

The City has conceded, as it must, that all individuals have a property interest in their personal property, regardless of its size." Def's MTD at 9:19-20; *see also Lavan*, 693 F.3d at 1030. *See also* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss at 12 ("There now can be no dispute that all persons have a protected property interest in personal property stored in public areas."). The City has also conceded, again as it must, that the removal and destruction of that property are seizures within the meaning of the Fourth Amendment. *See* Def's Motion to Dismiss, Dkt. 22, at 7:19-23. Therefore, the only question regarding the constitutionality of the Bulky Item Provision is whether the seizure and summary destruction of property, solely based on the size of the item, is reasonable. As this court ruled in its Motion to Dismiss, and under controlling Ninth Circuit and Supreme Court precedent, it is not.

The Bulky Item Provision places no constitutional limits on the City's ability to seize and immediately destroy people's belongings that do not fit in a 60-gallon container with the lid closed. It does not require the City to obtain a warrant, nor does it on its face, meet any of the well-established exceptions to the warrant requirement as required by the Fourth Amendment. *Compare, e.g.*, LAMC 56.11(h) (allowing the City to seize and discard "evidence of a crime or contraband, *as permissible by law*") (emphasis added). The City cannot identify a warrant exception or constitutional

principle that allows it to seize and immediately destroy property solely based on its size.  *See Isaacson v. Horne,* 716 F.3d 1213, 1230 (9th Cir. 2013); *Recchia*, 889 F.3d at 558 ("Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement").  On this basis, the Court already determined the "the only work the Bulky Item Provision does is to permit seizures of items of a certain size where there is no other valid reason to remove them," Order on Motion to Dismiss, Dkt. 36 at 10.  This is insufficient under the Fourth Amendment.  Moreover, the "immediate destruction of Bulky Items is unreasonable on its face." Order on Motion to Dismiss, Dkt. 36 at p. 11.  Therefore, Plaintiffs have demonstrated a likelihood of success on the merits of their facial challenge to the Bulky Item Provision under the Fourth Amendment.

### ii. The "Bulky Item Provision" of LAMC 56.11 Violates the Fourteenth Amendment and Article I, Section 8 of the California Constitution

The Due Process Clause of the Fourteenth Amendment prevents the state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV. [8]  Where an individual is deprived of a property interest, the

---

[8] As this Court noted in its order on the Motion to Dismiss, "[t]he language fo Article I, § 7 of the California Constitutionis virtually identical to the Due Process Clause, of the United States Constitution, with the caveat that California courts place a higher significance on the dignitary interest inherent in providing proper procedure."  Order on Motion to Dismiss, Dkt. 36 at 12 (quoting *Nozzi v. Hous. Auth. Of City of Los Angeles*, 806 F.3d 1178, 1190 n.15 (9th Cir. 2015).  If the fourth factor were necessary to consider, this factor would weigh heavily in favor of plaintiffs, who as unhoused individuals, are stripped of due process rights that would otherwise unquestionably be afforded to individuals whose belongings may be left in the public right of way.  *See People v. Ramirez*, 25 Cal.2d 260 267-68 (1979) (explaining that, under the California constitution, there is an "important due process interest in recognizing the dignity and worth of the individual by treating him as an equal, fully participating and responsible member of society).

Supreme Court has long held that the gravity of a deprivation is irrelevant to the question whether account must be taken of the Due Process Clause.  *See Goss v. Lopez*, 419 U.S. 565, 579 (1975).  "[T]o put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."  *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 433 (1982).

While the amount of process that is due depends on the specific interest, balanced against the government interest at stake, *at a minimum*, the procedural safeguards must include "an opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *see also Brewster v. Bd. of Edu. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998).  Indeed, "it has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest."  *Logan*, 455 U.S. 422, 433 (emphasis in original, citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71, n.8).  The seizure of property without a pre-deprivation hearing, moreover, has been sustained only in emergencies and "where the owner is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause."  *Styppman v. City and Cnty of San Francisco*, 557 F.2d 1338, 1343 & n.3 (9th Cir. 1977) (collecting cases); *see also Lavan*, 693 F.3d at 1032-33.  *Cf. North Am. Cold Storage Co., v. City of Chicago*, 211 U.S. 306, 320 (1908) (preventing the consumption of putrid chicken is sufficient an emergency to justify foregoing pre-deprivation hearing, but noting that in post-seizure challenge, the party that seized the property had the burden of showing that the seizure as justified).  That is simply not the case here, where items are seized and destroyed under the Bulky Item Provision, simply because they cannot fit in a 60 gallon container with the lid closed.

As this Court noted in its ruling on the City's Motion to Dismiss, the Bulky

---

PLAINTIFFS' MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION

Item Provision "permits the City to remove and permanently destroy Bulky Items without any procedural safeguards whatever."  Order on Motion to Dismiss, Dkt. 36 at 15.  Once the City decides an item is "bulky," it is immediately seized and destroyed. *Compare, e.g.,* LAMC 56.11(3)(a), (b) and (4)-(6) (providing both pre- and post-deprivation notice and storage requirements for belongings that are not considered "bulky").  The City has already been counseled many times, including by the Ninth Circuit, that it "may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.' This simple rule holds regardless of whether the property in question is an Escalade or an EDAR, a Cadillac or a cart".  *Lavan*, 693 F.3d at 1032(quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2000).  And yet, that is exactly what the Bulky Item Provision allows.  At no point is a person given any opportunity to contest the determination that the item is bulky and can be immediately destroyed.  Indeed, the ordinance goes further, sanctioning arrest and imprisonment for up to six months, if a person simply refuses to give up their belongings for destruction.  LAMC 56.11(10)(d).  Like other cases in which the Courts have struck down ordinances on facial challenges for failing to provide any due process, *see e.g., Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir. 1986); *Propert v. District of Columbia,* 948 F.2d 1327 (D.C. Cir. 1991); *Wong v. Cny and Cty. Of Honolulu,* 333 F.Supp.2d 942, 948-50 (D. Hawaii 2004); *Kash Enters., Inc. v. City of Los Angeles,* 19 Cal. 3d 294, 309 (1977), the Bulky Item Provision is facially unconstitutional because "[it] fails to provide the procedural due process required by the Fourteenth Amendment. " Order on Motion to Dismiss, Dkt. 36 at 15-16.

Against this backdrop, Plaintiffs have shown they are likely to succeed on the merits of their facial challenges to the Bulky Item Provision.

1   **b.  Plaintiffs Have Shown Irreparable Harm Absent Preliminary Relief**

2   Absent the Court's intervention to enjoin the City's enforcement of the

3   unconstitutional Bulky Item Provision, Plaintiffs Ktown for All and the individual

4   plaintiffs will suffer irreparable harm.  "It is well established that the deprivation of

5   constitutional rights 'unquestionably constitutes irreparable injury.' *Melendres v.*

6   *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347,

7   373 (1976)); *see also Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir.

8   2013).

9   The homeless Plaintiffs in this case are frequently subjected to City sweeps,

10   and every time they are subjected to a sweep, they are at risk of having their

11   constitutional rights violated by the enforcement of the Bulky Item Provision. This is

12   particularly true, given the City's January 21, 2020 changes in the enforcement of

13   LAMC 56.11.  LA Sanitation was explicit that CARE and CARE+ teams would now

14   "fully enforcing LAMC 56.11 at every location they visit" and that this means that

15   "prohibited items such as bulky items . . . will be impounded and disposed of

16   according to law and policy."   P's RJN, Exh. 4 at p. 2.  Given that the Bulky Item

17   Provision is facially unconstitutional under both the Fourth and Fourteenth

18   Amendments to the United States Constitution, Plaintiffs face an imminent threat that

19   the continued enforcement of the ordinance will violate their constitutional rights.

20   That is enough to meet Plaintiffs' burden under the second prong of *Winters*.

21   In addition, however, the irreparable harm caused by the violation of Plaintiffs'

22   constitutional rights is compounded by the fact that the constitutional violations

23   results in the actual and permanent deprivation of their belongings.  As evidenced by

24   the attached declarations, after Plaintiff Pete Diocson had his dog kennel taken and

25   destroyed by LA Sanitation in April 2019, he was able to get another kennel. Dioscon

26   Decl., ¶¶ 8, 12-14.  But the City also subsequently seized and destroyed that new dog

27   kennel. *Id.,* ¶ 15.  He wants to get another kennel, but he worries that any kennel he

28

gets will be declared a Bulky Item and immediately taken and destroyed.  He has had other bulky items taken as well, and he is at risk that items he has now will be seized and immediately destroyed.

Plaintiff Marquis Ashley stays in a remote industrial area and has little access to resources like water and food.  He relies on his bicycle to get around and uses a cart to help him transport things he needs to survive.  After his carts were seized and destroyed as Bulky Items in May 2019, he built another cart.  Ashley Decl., ¶ 17, Exh.  B.  But if the City is allowed to continue to enforce the Bulky Item Provision, he runs the risk of having his new cart seized and immediately destroyed, just as his last carts were summarily destroyed.

Mr. Diocson and Mr. Ashley had no way to contest prior decisions by LA Sanitation to seize and destroy their belongings.  If the City continues to enforce the Bulky Item Provision and chooses to take their belongings as "bulky," they will still have no way to challenge LA Sanitation's decisions in the future.[9]  Given the frequency of sweeps and the City's current enforcement posture, Plaintiffs are unquestionably "likely to suffer irreparable harm before a decision on the merits can be rendered."  Therefore, "the threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief."  *Boardman v. Pac. Seafood Grp*., 822 F.3d 1011, 1023 (9th Cir. 2016) (*quoting Winter*, 555 U.S. at 22).

Ktown for All also suffers irreparable injury as a result of the City's ongoing enforcement of the Bulky Item Provision.  As the District Court in Northern

---

[9] Even attempting to question the seizure or destruction of their property  on the street places them at risk of  arrest and prosecution, which itself constitutes irreparable harm.  *See Valle del Sol Inc.* 732 F.3d at 1029) (plaintiff demonstrated irreparable harm upon a showing that he faced a credible threat of prosecution under the statute); *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1269 (11th Cir. 2012) (finding irreparable harm where "[p]laintiffs are under the threat of state prosecution for crimes that conflict with federal law).

California recently noted, "[t]he Ninth Circuit has recognized that an organizational plaintiff's suffering "ongoing harms to [its] organizational missions" can constitute irreparable harm . . . ." *S.A. v. Trump*, 2019 WL 990680, at *9 (N.D.Cal., 2019) (citing *Valle del Sol Inc.* 732 F.3d at 1029).

Here, unhoused residents in Koreatown, who rely on Ktown for All's outreach, find themselves subjected to sweeps and the continued unconstitutional seizure and destruction of property that the City deems "bulky."  Nguyen Decl. ¶¶ 5-14; Bettega Decl. ¶¶ 10-13.  This puts strain on Ktown for All, which struggles to keep in touch with their neighbors and frustrates their mission of creating connections between housed and unhoused neighbors.  When unhoused neighbors move after sweeps, it is be difficult to reconnect with them and this makes it difficult for Ktown for All to let their homeless neighbors and members know about Ktown for All's meetings. Nguyen Decl. ¶ 5.  *Id.* Engaging unhoused neighbors in advocacy is an integral part of Ktown for All's mission, but sometimes it is months before the organization can reconnect with homeless residents after a sweep, and this disrupts their engagement. *Id.,* ¶¶ 4, 5.

Moreover, the destruction of people's belongings, and in particular, bulky items, has resulted in Ktown for All having to replace more items for their neighbors than they would otherwise have to replace.  In addition to sometimes replacing items that are seized and immediately destroyed, like the foam cushion taken by LA Sanitation on February 24, 2020, other items the City seizes as "bulky" are often the very items homeless residents use to keep their belongings dry and clean.  Nguyen Decl. ¶¶ 11-13; Bettega Decl. ¶¶ 9-12; Dioscon Decl. ¶ 17.  When these purportedly "bulky items" are taken, homeless residents' belongings get wet, and then those items are in turn thrown away by the City. This vicious cycle strains Ktown for All's resources, since it then has to provide more items to replace the items the City has taken from their unhoused neighbors.

1    In addition, because the City provides no process whatsoever in connection

2 with the seizure and destruction of bulky items, Ktown for All has had to divert

3 resources away from advocating for housing and towards being present at the

4 numerous sweeps that happen every week.  Homeless residents are at risk of arrest if

5 they complain about items being taken and destroyed because LA Sanitation has

6 determined is "bulky." *See e.g.*, LAMC 56.11(10)(d); Dioscon Decl. ¶ 12.  To

7 address this issue, Ktown for All members go to sweeps as often as possible to

8 monitor and document the sweeps and to advocate that their neighbors and homeless

9 members be allowed to keep the "bulky items" they need to survive.  Nguyen Decl.

10 ¶¶ 5-7.  This is time-consuming, and it prevents Ktown for All from engaging in

11 other forms of advocacy. [10]  But if they did not do this, it would be harder to connect

12 with their neighbors, and they would have to replace even more items than they

13 already have to replace as a result of the sweeps.

14    This diversion of resources and the frustration of its mission as a result of the

15 enforcement of the Bulky Item Provision is sufficient to show irreparable harm.  *See*

16 *Valle del Sol Inc.* 732 F.3d at 1029.  *See also East Bay Sanctuary Covenant v. Trump*,

17 354 F.Supp.3d 1094, 1115–16 (N.D.Cal., 2018); S.*A. v. Trump*, 2019 WL 990680, at

18 *9 (N.D.Cal., 2019).

19    Homeless residents rely on items the City characterizes as bulky to simply get

20 through the day.  Bottega Decl. ¶¶ 2-9 (explaining that bicycle that was thrown out

21 helped her get to work); Ashley Decl. ¶¶ 5-7, 17 (explaining that carts are necessary

22 for transporting supplies); Dioscon Decl., ¶¶ 18 (explaining that kennel gives him

23

24 [10] For example, as discussed *supra* p. 7, on February 24, 2020, Ktown for All
members had to postpone a meeting about the Bridge Home Shelter in Koreatown to

25 help a longtime homeless neighbor who was being subjected to a sweep and
enforcement of the Bulky Item Provision.  When Ktown for All members were

26 unsuccessful at saving his foam cusion, they then will have to expend more resources

27 to find blankets and other resources to replace the items that were thrown away.

28

peace of mind that his dog will not run away).  Every day the City is allowed to continue to enforce the Bulky Item Provision, it violates the constitutional rights of Plaintiffs and the thousands of other individuals who are subjected to the enforcement of the ordinance.  The ongoing violation of their rights, compounded by the permanent destruction of their belongings, and the frustration of Ktown for All's mission and diversion of resources, is more than sufficient to demonstrate that Plaintiffs will face irreparable harm unless the City is enjoined from enforcing the unconstitutional Bulky Item Provision.

### c.  The Balance of Equities and Public Interest Weigh Heavily in Plaintiffs' Favor

The third and fourth factors concern the equitable interests at stake in granting an injunction.  The third factor is whether the equities favor an injunction.  The fourth factor considers the impact on the public interest.  *Winter*, 555 U.S. at 20.  This factor primarily considers the injunction's impact on non-parties.  *League of Wilderness Defenders*, 752 F.3d at 766.  This includes, for example, non-parties whose rights would otherwise be subjected to an unconstitutional statute.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Where the government is a party to the litigation and opposes an injunction, the third and fourth *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F3d 1073, 1092 (9th Cir. 2014).  And where, as here, Plaintiffs have shown a strong likelihood of success on the merits and irreparable harm, "the balance of equities and public interest tip in favor of Plaintiffs*.*"  *Los Padres Forestwatch v. U.S. Forest Service*, 776 F.Supp.2d 1042, 1052 (N.D. Cal. 2011).  But even without such a strong showing on the first two factors, Plaintiffs can easily show the third and fourth factors weigh in favor of an injunction.

First, "the protection of constitutional rights is a strong equitable argument in favor of issuing the injunction."  *Lavan*, 797 F. Supp. 2d at 1019-20 (granting an

PLAINTIFFS' MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION

injunction against the City of Los Angeles, preventing it from seizing and immediately destroying property in Skid Row).  The City is bound by the United States and California constitutions.  Courts have consistently held that the public interest is best served by enjoinging unconstitutional or unlawful ordinance.  "It is always in the public's interest to enjoin actions that violate an individual's constitutional rights, all the more so when this is being done in the name of their own government."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (upholding a preliminary injunction against a policy of racial profiling); *see also Awad v. Ziriax* (670 F.3d 1111, 1131-1132 (10th Cir. 2012); *Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F.Supp.3d 1262, 1279 (D.Idaho, 2019) (holding that the public interest is served by enjoining the implementation of an ordinance that the court found was facially invalid under the Fair Housing Act, because the FHA serves an important public interest).

Second, granting an injunction in this case will protect not just the constitutional rights of the plaintiffs who are subjected to the ordinance, but also, the rights of the more than 9000 people who are compelled to live on the streets in Los Angeles and who are subjected to the City's enforcement of the Bulky Item Provision.[11]  As in other cases where courts have granted injunctions against facially invalid ordinances, "the ongoing enforcement of the potentially unconstitutional regulations ... would infringe not only the [constitutional rights] of [plaintiffs], but also the interests of other people" subjected to the same restrictions.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Enjoining enforcement of the Bulky Item Provision would stop those violations, and this weighs heavily in favor of

---

[11] According to the 2019 Los Angeles Homeless Count, there are approximately 3,488 people living in tents and 4,559 people living in makeshift encampments. *See* https://www.lahsa.org/documents?id=3468-2019-greater-los-angeles-homeless-count-vehicles-tents-and-makeshift-shelters-by-geographic-area.pdf.

1    finding that the public interest is served by issuing the requested injunction.  *Id.*

2         On the other hand, the enforcement of a facially unconstitutional ordinance is

3    never in the public interest.  As such, the City cannot argue, let alone prevail on the

4    argument, that it is in the public interest to continue to enforce a facially

5    unconstitutional ordinance.  *See United Sates v. Alabama,* 691 F.3d 1269, 1301 (11th

6    Cir.2012) ("[f]rustration of federal statutes and prerogatives are not in the public

7    interest, and we discern no harm from the state's nonenforcement of invalid

8    legislation.").  To the extent the City argues that the Bulky Item Provision is

9    necessary to ensure clear and passable sidewalks or address public health threats,

10   these arguments were addressed in the Court's ruling on Defendants' Motion to

11   Dismiss.  Order on Motion to Dismiss, Dkt. 36 at 9-10.  As this Court noted, LAMC

12   56.11 and other ordinances allow the City to address immediate threats to health and

13   safety, illegal dumping, and obstacles that are blocking the sidewalks.  *Id.  See also

14   Mitchell*, 2017 WL 10545079 at *4 (C.D. Cal. Sept. 25, 2017) ("There is no

15   additional exception for bulky items nor is one necessary").  Plaintiffs do not

16   challenge the City's ability to remove true threats to public health and safety or to

17   move or in some instances, even remove items blocking the sidewalks or interfering

18   with city operations.  So even if the City could establish that clean and passable

19   sidewalks were sufficient to justify the continued enforcement of an unconstitutional

20   law (which under Ninth Circuit precedent, they cannot), the City simply does not

21   need the facially unconstitutional provision of LAMC 56.11 to protect the public

22   interest.  *See Cnty of Santa Clara v. Trump*, 250 F.Supp.3d 497, 539 (N.D.Cal.,

23   2017).

24        Finally, courts consider the permanence and duration of the harm in weighing

25   the equities of an injunction.  The more permanent Plaintiffs' harm is if relief is

26   denied and the more temporary Defendant's harm if it is not, the greater the balance

27   tips toward Plaintiffs.  *League of Wilderness Defenders*, 752 F.3d at 765.  Here, this

28

21

weighs heavily in Plaintiffs' favor.  If the City is not enjoined from enforcing the Bulky Item Provision, individuals in Los Angeles will be deprived of their belongings, and that deprivation is permanent.  On the other hand, any harm the City could articulate would be temporary and last only for the pendency of the injunction.

## IV.   THE BOND REQUIREMENT SHOULD BE WAIVED

Where, as here, there is no likelihood of harm to the party enjoined, the requirement to post a bond may be dispensed with entirely.  *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

## V.   CONCLUSION

For the foregoing reasons, and upon good cause shown, Plaintiffs request the Court enter an injunction, enjoining the City of Los Angeles from:

1.  Enforcing Section 56.11(3)(i) of the Los Angeles Municipal Code
2.  Enforcing Section 56.11(10)(d) of the Los Angeles Municipal Code
3.  Posting signs, notices, or other public information stating that the City may seize or immediately destroy any bulky items left in public.

Dated: February 26, 2020          Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

/s/ Shayla Myers

By: Shayla Myers
*Attorneys for Plaintiffs Pete Diocson Jr., Marquis Ashley, and Ktown for All*

22

SCHONBRUN SEPLOW HARRIS & HOFFMAN
LLP

/s/ Catherine Sweetser
By: Catherine Sweetser
*Attorneys for All Plaintiffs*

KIRKLAND & ELLIS LLP

/s/ Benjamin Allen Herbert
By: Benjamin Allen Herbert
*Attorneys for Plaintiffs Ktown for All, Ali El-Bey,*
*Peter Diocson Jr., Marquis Ashley, and Janet*
*Garcia.*

**Local Rule 5-4.3.4 Attestation**

I attest that Plaintiffs' counsel, Benjamin Herbert and Catherine Sweetser, concurs in this filing's content and has authorized the filing.

DATED: February 26, 2020          LEGAL AID FOUNDATION OF LOS ANGELES

/s/ Shayla Myers
By: Shayla Myers
*Attorneys for Pete Diocson Jr., Marquis*
*Ashley, and Ktown for All*