Shayla Myers (SBN: 264054)
Romy Ganschow (SBN: 320294)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 S. Broadway, Los Angeles, CA 90003
Tel.:     (213) 640-3983
E-Mail: smyers@lafla.org
          rganschow@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora,
Ali El-Bey, James Haugabrook, Pete Diocson Jr.,
Marquis Ashley, and Ktown for All*

*Additional Attorneys on Next Page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANET GARCIA, GLADYS ZEPEDA, MIRIAM ZAMORA, ALI EL-BEY, PETER DIOCSON JR, MARQUIS ASHLEY, JAMES HAUGABROOK, individuals, KTOWN FOR ALL, an unincorporated association; ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING, an unincorporated association <br><br>                    Plaintiff(s), <br><br>            vs. <br><br> CITY OF LOS ANGELES, a municipal entity; DOES 1-7, <br><br>                    Defendant(s). | CASE NO. 2:19-cv-06182-DSF-PLA <br><br> **DECLARATION OF SHAYLA MYERS** |

Catherine Sweetser (SBN: 271142)
Kristina Harootun (SBN: 308718)
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
11543 W. Olympic Blvd.,
Los Angeles, CA 90064
Tel.:   (310) 396-0731
Email: csweetser@sshhlaw.com
          kharootun@sshhlaw.com

*Attorneys for Plaintiffs.*

Benjamin Allan Herbert (SBN: 277356)
William L. Smith (SBN: 324235)
KIRKLAND & ELLIS LLP
555 S. Flower St., Los Angeles, CA  90071
Tel.:  (213) 680-8400
Email:   benjamin.herbert@kirkland.com
             william.smith@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Ali El-Bey,*
*Peter Diocson Jr., Marquis Ashley, Association for Responsible*
*and Equitable Public Spending, and Janet Garcia.*

## <u>DECLARATION OF SHAYLA MYERS</u>

1.      My name is Shayla Myers. I am counsel for Plaintiffs in this action and I am licensed to practice law. I have personal knowledge of the facts contained in this declaration, and if called to testify, I could and would testify competently as to the truth of the facts in this declaration.

2.      In September 2018, the Legal Aid Foundation of Los Angeles and Law Offices of Schonbrun Seplow Harris and Hoffman LLP, representing a coalition of individuals and organizations, including Plaintiff Ktown for All, sent a letter to the Mayor of Los Angeles and the City Council, placing the City on notice about potential constitutional issues with Los Angeles Municipal Code Section 56.11 and requesting a meeting to address the organizations' concerns.  A true and correct copy of the letter is attached as Exhibit A.   Thereafter, the Coalition and lawyers met a number of times with city staff and representatives from the City Attorney's office.

3.      On June 19, 2019, the Mayor of Los Angeles publicly announced a restructuring of the cleanup crews deployed to clean up homeless encampments, including the creation of new CARE and CARE+ teams to replace existing Clean Streets LA and HOPE teams.  The new program was to launch at the beginning of October 2019.  The deployment plan appeared to address some of the issues raised in the September 2018 letter.  A copy of the Press Release related to the launch of the CARE Teams is attached as Exhibit 6 to Plaintiffs' Request for Judicial notice.

4.      Thereafter, the City Council Committee on Energy, Climate Change, and Environmental Justice discussed the new deployment of City resources and the creation of the CARE and CARE+ teams.  I was present at each of the meetings.   At the Energy, Climate Change, and Environmental Justice Committee meeting on June 25, 2019, the committee approved the request for $6.5 million in additional funds for 47 positions within LA Sanitation, to conduct cleanups as part of CARE and CARE+. A copy of the Index of the Council File related to these actions is attached to Plaintiffs' Request for Judicial Notice, Exhibit 5.

5.      On September 5, 2019, counsel for Plaintiffs and the City of Los Angeles met and conferred regarding the City's contemplated Motion to Dismiss. Counsel for Defendant informed Plaintiffs that the City intended to move to dismiss Plaintiffs' claims that the Bulky Item Provision is unconstitutional on its face.

6.      The roll-out of CARE and CARE+ occurred in October 2019.

7.      Approximately after two months of the launch of the new program, members of the City Energy, Climate Change and Environmental Justice Committee agenized a meeting to discuss the new program.  I was present at that meeting and personally heard city council members ask if the CARE teams were being empowered to clean up or were handicapped by bureaucracy.

8.      On January 21, 2020, I attended a meeting of the Energy, Climate Change, and Environmental Justice Committee of the Los Angeles City Council.  At the meeting, LA Sanitation were asked about a report they had submitted to council that week, stating that, as of that date, LA Sanitation would begin "fully enforcing Los Angeles Municipal Code Section 56.11," including the Bulky Item Provision.  A true and correct copy of that report is attached to our Request for Judicial Notice as Exhibit 2.

9.      Given the City's change in its enforcement posture, Plaintiffs considered moving for a preliminary injunction to prevent the enforcement of the Bulky Item Provision of LAMC 56.11, which Plaintiffs contend is unconstitutional on its face. However, on February 2, 2020, before Plaintiffs could do so, this Court issued an order, scheduling a hearing on Defendant's Motion to Dismiss (Dkt 34).  Thereafter, in the interest of preserving judicial resources as well as city resources, Plaintiffs waited for a ruling on Defendant's motion to dismiss.

10.      On Saturday, February 15, 2020, this Court issued a ruling on Defendant's motion to dismiss, denying the motion as to Plaintiffs' facial challenge to LAMC 56.11(3)(i) and (10)(d) (Dkt 36).   After reviewing the Court's ruling, Plaintiffs contacted counsel for the Defendant, requesting that the Defendant stipulate

DECLARATION OF SHAYLA MYERS

to a preliminary injunction preventing the City of Los Angeles from enforcing Sections 56.11(3)(i) and 56.11(10)(d) of the Los Angeles Municipal Code. A true and correct copy of that letter, which I sent on February 18, 2020, is attached as Exhibit B.

11.     On Wednesday, February 19, 2020, I spoke to counsel for the Defendant regarding our proposed stipulation. Counsel for the Defendant indicated that an email had been sent out regarding the continued enforcement of the Bulky Item Provision, but the City did not yet have a response to Plaintiffs' request.  He told me he would have a response for us by Friday, February 21, 2020.  I informed him that we were willing to hold off filing the Preliminary Injunction if the City did in fact stop enforcing the Bulky Item provision in the meantime, but that we were concerned that city schedules issued daily indicated that the provision was still being enforced.

12.     On Friday, February 21, 2020, I emailed counsel for the Defendant to follow up regarding our proposed stipulation. A true and correct copy of that email is attached as Exhibit C.

13.     On Friday, February 21, 2020, counsel for the Defendant responded and stated that they did not yet have a response for us regarding our proposed stipulation. They did not indicate when they would have a response. A true and correct copy of that email is attached as Exhibit D.

14.     As of Wednesday, February 26, 2020, the City of Los Angeles has not agreed to cease enforcement of LAMC Sections 56.11(3)(i) and 56.11(10)(d) nor has the City contacted us to discuss a preliminary injunction.


I declare under penalty of perjury that the foregoing is true and correct. Executed this 26 day of February, 2020 at Los Angeles, CA.

_____
Shayla Myers

DECLARATION OF SHAYLA MYERS

# EXHIBIT A



<div style="text-align: right">

7000 S. Broadway
Los Angeles, CA 90003
213-640-3950
213-640-3988 fax
www.lafla.org
</div>

The frontline law firm for poor and low-income people in Los Angeles

---

Writer's Direct Line: (213) 640-3983
Writer's email: smyers@lafla.org

<div style="text-align: right">

**<u>VIA OVERNIGHT MAIL
AND ELECTRONIC MAIL</u>**
</div>

<div style="text-align: center">

September 24, 2018
</div>

Hon. Mayor Eric Garcetti
Office of the Mayor
Los Angeles City Hall
200 N. Spring St.
Los Angeles, CA 90012

   Re:  Enforcement of Los Angeles Municipal Code Section 56.11 in Special Enforcement Zones

Dear Mayor Garcetti:

   We represent a number of homeless individuals and a coalition of organizations that operate in the areas surrounding the proposed Bridge Home shelter sites.  Over the past month, details have emerged about the plan of the City of Los Angeles (City) to implement Temporary Homeless Shelter Special Enforcement Zones (THS Zones) around the new Bridge Home shelters.  The purpose of these zones is to gain acceptance of the new shelters from city residents who may be reluctant to embrace the opening of a temporary homeless shelter in their neighborhood.[1]  In particular, we understand that, as part of this strategy, the City will strictly enforce Los Angeles Municipal Code Section 56.11 (LAMC 56.11), a criminal ordinance that regulates the amount and type of belongings an individual who is homeless may have in public.[2]  We agree with the many voices that have come out against this plan

---

[1] *See* LAMC 56.11 Standard Operating Protocols, Protocol No. 12, Effective 8/3/2018.

[2] *Id.* We appreciate the Mayor's clarification that this plan does not include the overnight enforcement of Los Angeles Municipal Code Section 41.18(d) and that, consistent with Los Angeles Municipal Code Section 56.11, individuals who are unhoused may keep their tents up between 9:00 p.m. and 6:00 a.m.  *See* Mayor's Frequently Asked Questions, available at https://www.lamayor.org/ABridgeHome. *See also* LAMC 56.11(7) (providing that tents must be down only between 6:00 a.m. and 9:00 p.m.)  We strongly support this decision, particularly in light of the Ninth Circuit decision in *Martin v. City of Boise*, No. 15-35845. (9th Cir., Sept. 4, 2018).  The Court in *Martin* expressly adopted the reasoning of a prior Ninth Circuit decision in *Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007), which struck down the City's overnight enforcement of  LAMC 41.18(d).  In addition, we appreciate Chief Moore's statement on September 17, 2018 that the LAPD enforces 41.18(d) during daytime hours only when individuals are interfering with ADA access.

---

Other Office Locations:
East Los Angeles Office, 5228 Whittier Blvd., Los Angeles, CA 90022; 213-640-3883
Long Beach Office, 601 Pacific Ave., Long Beach, CA 90802; 562-435-3501
Santa Monica Office, 1640 5th St., Suite 124, Santa Monica, CA 90401; 310-899-6200
Ron Olson Justice Center, 1550 W 8th Street, Los Angeles, CA 90017; 323-801-7989



and share their concerns about the use of special enforcement zones around the new shelters.[3] We write separately because we are also very concerned that the strategy relies on the strict enforcement of LAMC 56.11. This ordinance raises serious constitutional issues and to date, has been enforced in a manner that is both unconstitutional and has undermined any purported public health rationale for the ordinance. As such, strict enforcement of this ordinance will undoubtedly result in increased violations of individuals' constitutional rights.

As you know, the City of Los Angeles has been involved in protracted litigation for over 30 years, related to the seizure and destruction of homeless individuals' belongings.[4] This litigation has stemmed from years of city policies that focused on the visible signs of homelessness, to the exclusion of the needs and constitutional rights of individuals who are homeless in Los Angeles. Each time the City has faced litigation, rather than working with homeless individuals and advocates to develop constitutional strategies to address the public health needs of the community, the City has chosen to legislate around the margins of court orders to continue to seize and destroy individuals' belongings.

LAMC 56.11 and its current implementation is the result of this approach. As such, it suffers from the same infirmities as strategies employed by the City in the past. As discussed below, the ordinance allows for the seizure and destruction of individuals' belongings without affording them any legal protections. Further, the implementation of the ordinance through Clean Streets and Homeless Outreach and Proactive Engagement (HOPE) Team deployments has simply replicated the same violations that have led to litigation in the past.

Individuals who are homeless need increased public health infrastructure and sanitation services, not encampment sweeps and criminalization. Our clients do not object to street cleanings or the provision of sanitation services; in fact, some have been advocating for these services for years.[5] We are confident that Clean Streets could be performed in a constitutional manner and the City could address the public health concerns that exist when 23,000 of the city's residents are unhoused, if the City were willing to shift its focus and investment away from destroying the tents and shelters and onto the public health and sanitation needs of the individuals who live in the city's thousands of encampments. It is our hope the City will take this opportunity to work collaboratively with our clients to adopt solutions that move away from criminalization and instead, focus on the very real and very

---

[3] The use of special enforcement zones and law enforcement tactics to ensure that homeless individuals do not return to an area has resulted in well-documented unconstitutional policing practices by the Los Angeles Police Department. *See e.g., Fitzgerald v. City of Los Angeles*, 485 F. Supp. 2d 1137 (2007).

[4] *See e.g., Bennion v. City of Los Angeles*, C637718 (L.A. Sup. Ct. 1987); *Justin v. City of Los Angeles*, CV 00-12352 (C.D. Cal. 2001); *Lavan v. City of Los Angeles*, CV 11-2874 (C.D. Cal. 2011); *Noe v. City of Los Angeles* (C.D. Cal. 2013) (lawsuit against the City of Los Angeles for the illegal seizure of homeless residents' property in Venice); *Los Angeles Catholic Worker v. Los Angeles Downtown Industrial District*, 14-07344 (C.D. Cal. 2014) (lawsuit brought by two groups and four individual plaintiffs, accusing the City of collaborating with a Business Improvement District to illegally seize homeless people's property); *Mitchell v. City of Los Angeles*, 16-cv-01750 SJO (AXW) (C.D. Cal., March 23, 2016); *Recchia v. City of Los Angeles*, 889 F.3d 553, 558 (9th Cir. 2018).

[5] *See e.g.*, Los Angeles Community Action Network, "The Dirty Divide in Downtown Los Angeles: A Call for Public Health Equity," April 2013; "Dirty Divide: Out of Service," November 10, 2017.

Case 2:19-cv-06182-DSF-PLA    Document 38-8    Filed 02/26/20    Page 9 of 25    Page ID
#:1069
Page 3 of 11
Letter to Mayor Garcetti re: LAMC 56.11

important public health needs of our community.  We would welcome the opportunity to meet with the
City before October 5, 2018 to discuss these issues.

I.    **Los Angeles Municipal Code Section 56.11 is Unconstitutional as Drafted and Has
      Been Enforced in an Unconstitutional Manner**

The focus on the enforcement of Los Angeles Municipal Code Section 56.11 in the new THS
Zones raises constitutional concerns because, as outlined below, a number of provisions of this
ordinance are unconstitutional as drafted.  Moreover, the ordinance has routinely been enforced in
unconstitutional ways that simply replicate strategies that have led to litigation and court orders against
the City.  The plan to use this ordinance in the THS Zones to ensure that homeless individuals do not
return to a particular area only exacerbates the constitutional issues with the ordinance.

a.    **Individuals Who Are Homeless Have A Constitutionally Protected Property Interest in
      Their Belongings**

It should be beyond legal dispute that people who are homeless have constitutionally protected
property interests in their belongings, just as housed individuals do.[6]  Federal courts throughout the
country have reiterated this basic premise over the past thirty years.  A number of those decisions have
come as the result of litigation against the City of Los Angeles.[7]

In 2012, the U.S. District Court in *Lavan v. City of Los Angeles* issued a preliminary injunction
against the City to prevent it from seizing and destroying homeless individuals' belongings.[8]  In
affirming the district court, the Ninth Circuit summarily rejected "the City's invitation to impose this
unprecedented limitation on the Fourth Amendment's guarantees" by holding that homeless
individuals did not have a property interest in their belongings.[9]

Similarly, in *Mitchell v. City of Los Angeles*,[10] which is currently pending in the U.S. District
Court, the court issued another preliminary injunction against the City of Los Angeles, which remains
in place today.  In issuing the injunction that regulates how the City must handle homeless individuals'
belongings that are seized as part of a mass cleanup or incident to arrest, the court again reminded the
City that individuals have a protected property interest in their belongings.[11]

Most recently, in *Recchia v. City of Los Angeles*, the Ninth Circuit Court of Appeals yet again
explicitly affirmed that homeless people living on the streets of Los Angeles are entitled to the same
constitutional protection of their belongings that housed individuals enjoy.[12]  Other courts, considering

---

[6] U.S.Const., Amend. IV, XIV.
[7] S*ee e.g.*, *Recchia v. City of Los Angeles*, 889 F.3d 553, 558 (9th Cir. 2018); *Lavan v. City of Los Angeles*, 693 F.3d 1022,
1029 (9th Cir. 2012); *Mitchell v. City of Los Angeles*, 16-cv-01750 SJO (C.D. Cal., April 16, 2016).
[8]797 F. Supp. 2d 1005, 1020 (C.D. Cal. 2011).
[9] 693 F.3d 1022, 1031 (2012).
[10] 16-cv-01750 SJO (AXW) (C.D. Cal., March 23, 2016).
[11] *See Mitchell,* Order Granting Plaintiffs' Application for a Preliminary Injunction, April 16, 2016 at p. 4.
[12] 889 F.3d at 558.

Case 2:19-cv-06182-DSF-PLA   Document 38-8   Filed 02/26/20   Page 10 of 25   Page ID
#:1070
Page 4 of 11
Letter to Mayor Garcetti re: LAMC 56.11

similar practices in other jurisdictions throughout the country have come to the same conclusion.[13]
Therefore, there should be no debate that homeless individuals have a property interest in their
belongings, and that interest is protected by the United States Constitution.

**b. Los Angeles Municipal Code Section 56.11 Unlawfully Authorizes The Seizure Of
Homeless Individuals' Belongings Without A Warrant**

Given that homeless individuals have a constitutionally protected property interest in their
belongings, the seizure of an individual's belongings, without a warrant, is per se unreasonable, absent
the application of one of only a limited number of exceptions to the warrant requirement.[14]

As drafted, Los Angeles Municipal Code Section 56.11 allows the City to seize homeless
individuals' belongings, without a warrant, in a number of specific instances. For example, section
3(b) of 56.11 allows the City to "impound any Attended Excess Personal Property Stored in a Public
Area." [15] Excess Personal Property Stored in a Public Area includes any and all items a person has that
"cumulatively exceeds the amount of property that could fit in a 60-gallon container with the lid
closed," and which is placed in any public area in the City of Los Angeles.[16] Section 3(i) provides
that, "[w]ithout prior notice, the City may remove and may discard any Bulky Item, whether Attended
or Unattended, Stored in a Public Area unless the Bulky Item is designed to be used as a shelter. . . ."[17]
Section 7 allows the City to impound an individual's tent, if the tent is constructed during the day.[18]

None of these sections require that any exception to the warrant requirement exist before the
items can be seized by the Department of Sanitation. Both sections 3(b) and 3(i) allow the seizure of
property based on the size or volume of the total property an individual has in their possession (section
3(b)), or the size of a single item (section 3(i)). These provisions do not require the application of any
of the narrow exceptions recognized by courts that would exempt the Department of Sanitation from
first seeking a warrant before seizing these items. Nor do the protocols adopted by the Department of
Sanitation in April 2016 and amended in August 2018 require that such an exception exists.[19]

The City cannot simply pass an ordinance allowing for the seizure of property and exempt itself
from the warrant requirements of the Fourth Amendment. This point was made explicitly clear in
*Lavan v. City of Los Angeles*.[20] "[T]he decision to impound pursuant to the authority of

---

[13] *See e.g., Schuler et al. v. County of Orange*, Case No. SA CV 17-0259-DOC (KESx) (C.D. Cal. Mar. 6, 2017); *Smith v.
Corvallis*, Civ. No. 6:14-cv-01382-MC (D. Or. June 6, 2016); *Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218 (E.D. Cal.
2009); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1094, 1103 (E.D. Cal. 2012); *Johnson v. Freeman*, 351 F. Supp. 2d 929
(E.D. Mo. 2004); *Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992).
[14] *Recchia v. City of Los Angeles*, 889 F.3d 553 (9th Cir. 2018). *See also Miranda v. City of Cornelius*, 429 F.3d 858, 862
(9th Cir. 2005).
[15] LAMC 56.11(3)(b).
[16] LAMC 56.11(2).
[17] LAMC 56.11(3)(i).
[18] LAMC 56.11(7).
[19] LAMC 56.11 Standard Operating Protocols.
[20] 693 F.3d 1022, 1030 (9th Cir. 2012) (holding that the seizure and destruction of property pursuant to a prior version of
LAMC 56.11 was unreasonable).

a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment. . . . "[21]  Nor does the fact that the property is in public allow the City to seize the items without a justification under the Fourth Amendment.[22]  Absent a warrant or an applicable exception, the seizure of an individual's belongings is unreasonable under the Fourth Amendment.[23]  Because LAMC 56.11 and its operating regulations do not require the City to obtain a warrant before seizing property, the ordinance, as drafted, is unconstitutional.[24]

### c.   The Summary Destruction Of Items Violates The Fourth And Fourteenth Amendments

Pursuant to numerous sections of LAMC 56.11(3), the City may seize and immediately destroy items that fall into a number of categories.  For example, LAMC 56.11(3)(i) allows the City to immediately seize and destroy  any items placed in any public space within the City of Los Angeles that do not fit within a 60 gallon trash can with the lid closed.[25]  This includes items like wagons and carts, tents that are larger than 60 gallons, and other items that are critical for an individual's survival on the streets.  It also includes bicycles and wheelchairs that are deemed "inoperable."[26]

First, the immediate destruction of property raises Fourth Amendment concerns separate from those related to the initial seizure of the items.  Even if property is properly seized, the destruction of these belongings can render the seizure unreasonable.  As the Ninth Circuit has noted, "the destruction of property by state officials poses as much of a threat, if not more, to people's right to be secure in their effects as does the physical taking of them."[27]

Second, LAMC 56.11 does not provide opportunity for any sort of due process for individuals whose belongings are seized and destroyed pursuant to these provisions. Courts have routinely held that ordinances that provide no form of procedural due process "leaves them absolutely unconstitutional on their face."[28]

---

[21] *Id.*, citing *Miranda,* 429 F.3d at 864.

[22] *See Soldal v. Cook County,* 506 U.S. 56, 68 (1992); *Recchia,* 889 F.3d at 558.

[23] *Recchia,* 889 F.3d at 558.

[24] *See City of Los Angeles v. Patel,* 135 S.Ct. 2443, 2452 (2015).

[25] The definition of "bulky item" is broad and includes "any item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed, including, but not limited to, a shed, structure, mattress, couch, chair, other furniture or appliance.  A container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property shall not in itself be considered a Bulky Item."  LAMC 56.11(2)(c).

[26] *Id.* LAMC 56.11(3)(g) and (h) also allow for the summary destruction of items that constitute an immediate threat to public health and safety or are evidence of a crime or contraband, respectively.

[27] *San Jose Charter of Hells Angels Motorcycle Club v. San Jose,* 402 F.3d 962, 975 (9th Cir. 2005) (internal quotation marks and citations omitted).  *See also Lavan*, 693 F.3d at 1030-31.

[28] *Wong v. City and County of Honolulu*, 333 F. Supp. 2d 942, 950 (D. Haw., 2004) (citing *Craig v. Carson*, 449 F. Supp. 385, 395 (M.D. Fla. 1978)); *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir. 1986) (holding that a Portland statute that did not provide for a hearing regarding the seizure of vehicles violated the due process clause).  *See also Fuentes v. Shevin*, 407 U.S. 67, 96-97 (1972) (notice and hearing required before government seizes personal property).

When the Department of Sanitation seizes a homeless individual's items pursuant to provisions that allow items to be immediately destroyed, the individual whose property is seized has no opportunity to challenge the legitimacy of the seizure, let alone seek the return of the seized item. For example, an individual cannot challenge whether the item was in fact larger than 60 gallons, or if their bike or wheelchair was "operational." There is no recourse to challenge the arbitrary decision-making that occurs on the streets. This is prohibited by the Fourteenth Amendment, which requires that the City "provide procedural protections before permanently depriving [individuals] of their possessions."[29]

### d. The Ordinance Impermissibly Allows Law Enforcement to Arrest Individuals For Interfering With Unconstitutional Seizures

Los Angeles Municipal Code Section 56.11(10) makes it a crime, punishable by up to six months in jail or a $1000.00 fine, to interfere with a City official's implementation of the prohibitions of Section 3.[30] Specifically, Section 10(a) provides that "[n]o Person shall willfully resist, delay or obstruct a City employee from moving, removing, impounding or discarding Personal Property Stored in a Public Area in violation of Subsections 3.(a)-(h)."[31] Section 10(d) provides that "[n]o Person shall willfully resist, delay or obstruct a City employee from removing or discarding a Bulky Item Stored in violation of Subsection 3.(i), including by refusing to vacate or retreat from within the Bulky Item or from an obscured area created by the Bulky Item."[32]

As discussed above, these provisions allow for the unconstitutional seizure of property. The City cannot therefore arrest an individual from attempting to prevent the illegal seizure of their belongings. Doing so is unconstitutional.[33]

### e. LAMC Section 56.11 is Currently Enforced in an Unconstitutional Manner

The protocol adopted by the City to create THS Zones surrounding the Bridge Home shelters provide for both frequent rapid response interventions by Homeless Outreach and Proactive Engagement (HOPE) teams and weekly "Clean Streets" cleanings as part of its enforcement of LAMC 56.11.[34] These strategies have already been deployed city-wide and have resulted in significant constitutional violations. These violations are endemic and well-documented, and include but are not limited to the following:

1. HOPE teams and Clean Streets teams routinely seize and destroy property while the owners of the belongings are present and attempting to prevent their destruction, rendering the seizure unreasonable under the Fourth Amendment. The seizure and immediate destruction of property

---

[29] *Lavan*, 693 F.3d at 1032.

[30] *See* LAMC 56.11(10), LAMC 11.

[31] LAMC 56.11(10)(a).

[32] LAMC 56.11(10)(d).

[33] *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 540 (1967).

[34] LAMC 56.11 Standard Operating Protocols, Protocol No. 12.

also deprives the individuals of any due process to contest any determinations the City believes justify the seizure or destruction, in violation of the Fourteenth Amendment.[35]

2.  HOPE teams routinely seize and destroy unattended property, even though the property is clearly not abandoned, the owner is known to the HOPE teams, or individuals present indicate they will take responsibility for the property.  The summary seizure and destruction of belongings in these circumstances violates the Fourth and Fourteenth Amendment.[36]

3.  LA Sanitation routinely fails to provide adequate notice of scheduled cleanups.  Notices that may be posted by Sanitation do not provide adequate information about the area covered by the notices, nor are postings calculated to ensure that individuals are aware of the cleanups.[37]  As such, individuals are not given sufficient notice to move their belongings, which in turn is used to justify the seizure and destruction of those belongings, in violation of the Fourth and Fourteenth Amendment.[38]

4.  LA Sanitation and the Los Angeles Police Department routinely fail to provide accommodation or support to individuals with disabilities who are unable to or have difficulty trying to respond to the requirement that individuals remove their belongings from an area within a limited amount of time.  Individuals who are not able to respond in the short amount of time provided by law enforcement are subject to arrest and often lose their belongings as a result of the delays.  These practices are a violation of due process and the Americans with Disabilities Act.[39]

5.  Items that are retained are stored in an inaccessible manner.  When individuals receivie notice that their items are seized, they are notified that the items may be retrieved from a single location in downtown Los Angeles, regardless of the location of the seizure.  An individual whose property is seized from the West San Fernando Valley, Venice, or San Pedro must travel over 30 miles to retrieve their belongings, and then must carry their belongings back to the neighborhood where they live.  This is an impossible task for many individuals who are homeless and do not have access to transportation.  Even to determine if any items have been stored, an individual must have access to a phone and have received a case number or notice that items were stored following an encampment cleanup.  This too is a violation of the Americans with Disabilities Act and the Fourteenth Amendment.[40]

Given the very serious implications of these practices, we are extremely concerned that these practices will simply be replicated in the special enforcement zones.  This is particularly true, given the

---

[35] *Lavan*, 693 F.3d at 1032.
[36] *Id.*, *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1992).
[37] *See Nozzi v. Housing Authority of City of Los Angeles*, 806 F.3d 1178, 1194 (9th Cir. 2015).
[38] *Lavan*, 693 F.3d at 1032.
[39] *Id.*; 42 U.S.C. § 12101 *et seq.*
[40] *Schuler*, *supra* note 13 at 8 (granting a temporary restraining order to a group of plaintiffs whose belongings were seized and stored miles away, in part because "the remoteness of the storage facility . . . is unlikely to truly mitigate against a due process violation").

stated purpose of the strict enforcement of LAMC 56.11 is to placate housed neighbors and ensure that homeless individuals do not return to the designated enforcement zones.

## II.     These Policies And Practices Exacerbate The Public Health And Sanitation Issues They Are Purportedly Intended To Address

The City has justified the significant expenditure of public resources on HOPE teams and Clean Streets as necessary to address the public health concerns that exist when a significant number of individuals in a community are compelled to live on the streets.   While there may be very real public health concerns that exist when thousands of residents are compelled to live on the streets and sidewalks, the focus on the destruction of property, rather than the public health needs of the individuals who are homeless, is counter-productive and serves only to undermine the actual public health needs of the community.

The health impacts of the destruction of individuals' property are significant.  The impact of the destruction of medication, medical equipment, and other items cannot be overstated.  The seizure and destruction of individuals' tents, sleeping bags, blankets, and clothing places those individuals at risk of exposure in the winter and heat stroke in the summer.[41]  The City also routinely destroys even non-perishable food and water.  Where individuals have invested in their own resources to keep their encampments clean—brooms, carts to transport water, trashcans—the City has also seized and destroyed those items.

Beyond the actual destruction of individuals' belongings, the City's practices have significant negative impacts on individuals who are homeless.  For example, the frequency and unplanned nature of encampment sweeps make it extremely difficult for individuals who are unhoused to make medical appointments, keep jobs, or find housing, based on the real fear their belongings will be seized and destroyed if they leave these items unattended.  Even worse, carts, strollers, and other items used by individuals to transport their belongings are routinely seized and destroyed as "bulky items," which makes it more challenging for individuals to pack up and move their belongings, as required by the frequent sweeps.

Even when individuals are given 24 hour notice of an encampment cleanup, the need to be present for the clean up can force an individual to miss a day of work, a medical appointment, an appointment with a case manager, a court date, a meeting with the Housing Authority, or one of the many "homeless connect days" and resource fairs sponsored by the City of Los Angeles to provide services to individuals who are homeless.   Individuals who are homeless are left with the Hobson's choice of missing a critical appointment or risking the seizure and destruction of the very items they need to survive.

---

[41] *See e.g., Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1100 (E.D. Cal. 2012) (recognizing a substantive due process claim when the City of Fresno allegedly destroyed plaintiff's shelter and property essential to protection from the elements).

The constant trauma of sweeps, the loss of property, and the threat of arrests can exacerbate individuals' mental and physical disabilities.  Individuals who have been arrested, who have been forced to watch their belongings destroyed, or who have simply returned to find their precious mementos and belongings gone from the street, report significant anxiety, depression, and other symptoms of trauma.  The constant sweeps and requirement that individuals move their belongings from place to place, while not being able to keep carts, shopping carts, or other items to help them move their property, also exacerbate the considerable physical disabilities that many individuals who are homeless experience.

At the same time the City has invested significant public resources in encampment cleanup and proposes to spend even more in support of the THS Zones surrounding the Bridge Home shelters, the City has failed to invest in public health infrastructure that would help alleviate the purported public health issues that the City uses to justify these practices.[42]  While the City has begun to invest in or support community programs that offer these services, the investment is miniscule compared to the amount of resources spent on encampment cleanups and law enforcement.  Sporadic and piecemeal services do not effectively address the public health needs of individuals who are living on the street.  In general, the City has failed to provide meaningful bathroom access, shower services, laundry services, or even trash and sanitation services to encampments. [43]  These investments would have a far greater impact on any public health issues that may exist in the community than property seizures and sweeps.

## III.     The City Has An Opportunity To Change A Failed Policy And Adopt Real Solutions

For at least thirty years, the City of Los Angeles has relied on sweeps of homeless people's belongings in a misguided attempt to address housed neighbors' concerns about the impact of homelessness in "their neighborhoods."  As discussed above, this has led to numerous lawsuits against the City since 1987, specifically related to the seizure and destruction of homeless individuals' belongings.[44]

---

[42] "Report of Findings-Request from City of Los Angeles to Address Public Health Issues in the Skid Row Area of Downtown Los Angeles." 05/21/2012. Jacqueline Taylor, Bureau Director, Region 1. County of Los Angeles Public Health); *see also* City of Los Angeles Inter-Departmental Correspondence, "Increased Storage and Services for the Homeless," August 25, 2015, Miguel A. Santa, City Administrative Officer, City of Los Angeles (recognizing the need to increase voluntary storage services to "provide a viable option for voluntary ordinance compliance" and noting that doing so will "help attain the stated goals of [LAMC 56.11]").

[43] *See e.g.,* "No Place to Go:  An Audit of the Public Toilet Crisis in Skid Row," Los Angeles Central Providers Collaborative, June 2017 (documenting the lack of public restrooms in Skid Row).

[44] *See supra* note 4.  This tally does not include other litigation brought against the City based on unconstitutional or unlawful policing practices and enforcement of ordinances against individuals who are homeless.  *See e.g., Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007) (invalidating the City's anti-camping ordinance on the ground that it constituted cruel and unusual punishment because of the lack of shelter beds in Skid Row); *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014); *Fitzgerald v. City of Los Angeles*, No. CV 03-

When the City has faced litigation, rather than addressing the concerns in a productive and constitutional way, it has instead attempted to draft policies and procedures to allow the City to simply continue the practice of seizing and destroying individuals' belongings.  This has led to a vicious cycle of criminalization, constitutional violations, and litigation that has persisted in Los Angeles for decades.  After 30 years, it should be clear that this cycle does not serve the needs of anyone in this city.

Given the resources currently available in Los Angeles, there is a tremendous opportunity for the City to break this cycle.  You have the chance to move away from criminalization and instead, focus on the public health and sanitation needs of the community, which in turn would ameliorate many of the concerns that are used to justify the City's unconstitutional practices.  The Bridge Home shelter program is a bold initiative, but coupling the opening of the shelters with special enforcement zones, including the reliance on a constitutionally suspect ordinance, undermines the value of the program to unhoused people in Los Angeles.  Rather than moving the City forward, this approach promises to perpetuate this cycle.

We request the City reconsider its plan to implement a THS Zone around the new Bridge Home Shelter at El Pueblo, and instead, meet with us to discuss ways in which the City can balance the public health needs of the City in a way that not infringe on individuals' constitutional rights.  As we indicated above, we would welcome the opportunity to discuss these concerns before October 5, 2018.

Sincerely,


Shayla R. Myers                         Catherine Sweetser
Romy Ganschow                        Colleen Mullen
Barbara J. Schultz                       Schonbrun Seplow Harris and Hoffman
Legal Aid Foundation of Los Angeles


CC (via email):        Councilmember Gilbert Cedillo
                              Councilmember Paul Krekorian
                              Councilmember Bob Blumenfield
                              Councilmember David E. Ryu
                              Councilmember Paul Koretz
                              Councilmember Nury Martinez

---

01876 (C.D. Cal. 2003) (alleging that the Los Angeles Police Department engaged in unreasonable parole sweeps and stops, in violation of homeless individuals' Fourth Amendment rights).

Letter to Mayor Garcetti re: LAMC 56.11

Councilmember Monica Rodriguez
Councilmember Marquis Harris-Dawson
Councilmember Curren D. Price, Jr.
Councilmember Herb J. Wesson, Jr.
Councilmember Mike Bonin
Councilmember Mitchell Englander
Councilmember Mitch O'Farrell
Councilmember Jose Huizar
Councilmember Joe Buscaino
Mike Feuer, City Attorney, City of Los Angeles, mike.feuer@lacity.org
Peter Lynn, Executive Director, Los Angeles Homeless Services Authority, plynn@lahsa.org

# EXHIBIT B



7000 S. Broadway
Los Angeles, CA 90003
213-640-3950
213-640-3988 fax
www.lafla.org

Writer's Direct Line (213) 640-3983          Our File Number 19-1306127

**<u>VIA EMAIL AND U.S. MAIL</u>**

February 18, 2020

Scott Marcus
Gabriel Dermer
Patricia Ursea
Felix Lebron
Office of the City Attorney
200 N. Main Street, 6th Floor
Los Angeles, California 90012

       RE:     *Garcia v. City of Los Angeles;* Case No. 2:19-cv-06182

Dear Counsel,

       We have reviewed the Court's ruling on the City of Los Angeles's motion to dismiss, and in particular, the Court's denial of the City's motion to dismiss Plaintiffs' facial challenges to Los Angeles Municipal Code Sections 56.11(3)(i) and 56.11(10)(d).

       The Court's ruling is clear that the Bulky Item provision is facially unconstitutional under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Sections 7 and 13 of the California Constitution. As such, the continued enforcement of the ordinance violates the rights of unhoused residents throughout the City. However, despite the clarity of the Court's ruling, today's CARE+ schedules indicate that bulky items are still subject to enforcement.

       We request the City immediately cease enforcement of these provisions and stipulate to a preliminary injunction, enjoining the City from enforcing LAMC Sections 56.11(3)(i) and 56.11(10)(d). If the City is unwilling to stipulate to such an injunction, then we will seek one from the Court.

       It is our hope that the parties can reach an agreement without the need for further intervention from the court. Doing so will preserve both city and judicial resources and potentially open the door to a broader conversation which Judge Fischer made clear at the February 10th hearing, should happen here. As we have indicated on numerous occasions, we remain open to working towards a meaningful resolution without protracted litigation. But of course, we will seek court intervention if necessary to protect our clients' rights.

---

**Other Office Locations:**
**East Los Angeles Office**, 5228 Whittier Blvd., Los Angeles, CA 90022; 213-640-3883
**Long Beach Office**, 601 Pacific Ave., Long Beach, CA 90802; 562-435-3501
**Santa Monica Office**, 1640 5th St., Suite 124, Santa Monica, CA 90401; 310-899-6200
**Ron Olson Justice Center**, 1550 W 8th Street, Los Angeles, CA 90017; 323-801-7989



Letter to City of Los Angeles
Page 2 of 2

_____

Please let us know by the close of business on Wednesday, February 19th how you wish to proceed.

Sincerely,

Shayla R. Myers
Legal Aid Foundation of Los Angeles

Catherine Sweetser
Schonbrun Seplow Harris and Hoffman

Benjamin Herbert
Kirkland & Ellis LLP

EXHIBIT C

 Gmail

Catherine Sweetser <catherine.sdshhh@gmail.com>

---

## Garcia v. City of Los Angeles, Case No. 2:19-cv-06182

**Shayla R. Myers** <SMyers@lafla.org>                                        Fri, Feb 21, 2020 at 6:14 PM
To: Gabriel Dermer <gabriel.dermer@lacity.org>
Cc: Scott Marcus <Scott.Marcus@lacity.org>, Patricia Ursea <patricia.ursea@lacity.org>, Felix Lebron
<felix.lebron@lacity.org>, Benjamin Herbert <benjamin.herbert@kirkland.com>, "Onufer, Michael"
<michael.onufer@kirkland.com>, Catherine Sweetser <catherine.sdshhh@gmail.com>

Gabriel,

We are following up from our letter on Tuesday regarding the ongoing enforcement of LAMC 56.11(3)(i) and 56.11(10)(d), in light of the Court's ruling on the City's motion to dismiss. When we spoke on the phone on Wednesday, you indicated that you would get back to us today following your meeting with the City Attorney.

Since we have not heard from you, we assume the City remains unwilling to work with us without further court intervention. We are disappointed, but given the significant interests at stake, we intend to move for a preliminary injunction early next week.

**Shayla Myers**| Senior Attorney

*Pronouns: she, her, hers*

**Legal Aid Foundation of Los Angeles**

7000 S. Broadway | Los Angeles, CA 90003

213.640.3983 **direct** | 213.640.3988 **facsimile**





**From:** Gabriel Dermer <gabriel.dermer@lacity.org>
**Sent:** Wednesday, February 19, 2020 2:27 PM
**To:** Shayla R. Myers <SMyers@lafla.org>
**Cc:** Scott Marcus <Scott.Marcus@lacity.org>; Patricia Ursea <patricia.ursea@lacity.org>; Felix Lebron <felix.lebron@lacity.org>; Benjamin Herbert <benjamin.herbert@kirkland.com>; Onufer, Michael

<michael.onufer@kirkland.com>; Catherine Sweetser <catherine.sdshhh@gmail.com>
**Subject:** Re: Garcia v. City of Los Angeles, Case No. 2:19-cv-06182


Hi Shayla,

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT D

 Gmail

<div align="right">Catherine Sweetser &lt;catherine.sdshhh@gmail.com&gt;</div>

---

## Garcia v. City of Los Angeles, Case No. 2:19-cv-06182

---

**Gabriel Dermer** &lt;gabriel.dermer@lacity.org&gt;                                    Fri, Feb 21, 2020 at 6:17 PM
To: "Shayla R. Myers" &lt;SMyers@lafla.org&gt;
Cc: Scott Marcus &lt;Scott.Marcus@lacity.org&gt;, Patricia Ursea &lt;patricia.ursea@lacity.org&gt;, Felix Lebron
&lt;felix.lebron@lacity.org&gt;, Benjamin Herbert &lt;benjamin.herbert@kirkland.com&gt;, "Onufer, Michael"
&lt;michael.onufer@kirkland.com&gt;, Catherine Sweetser &lt;catherine.sdshhh@gmail.com&gt;

Hi Shayla,

  We are still discussing things internally.  I don't have definitive information to share but we are continuing to discuss things next week.  I will share information as soon as I have it, and would ask for your patience in said regard.  Thank you and have a nice weekend.

[Quoted text hidden]