Shayla Myers (SBN: 264054)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 S. Broadway, Los Angeles, CA 90003
Tel.:    (213) 640-3983
Email(s): smyers@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora,
Ali El-Bey, James Haugabrook, Pete Diocson Jr.,
Marquis Ashley, and Ktown for All*

*Additional Attorneys on Next Page.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JANET GARCIA, et al.
                    Plaintiff(s),

          vs.

CITY OF LOS ANGELES, et al,
                    Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:19-cv-06182-DSF-PLA

**PLAINTIFFS' REQUEST FOR
JUDICIAL NOTICE IN SUPPORT
OF PRELIMINARY INJUNCTION**

Catherine Sweetser (SBN: 271142)
Kristina Harootun (SBN: 308718)
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
11543 W. Olympic Blvd.,
Los Angeles, CA 90064
Tel.:   (310) 396-0731
Email(s): csweetser@sshhlaw.com
            kharootun@sshhlaw.com

*Attorneys for Plaintiffs.*

Benjamin Allan Herbert (SBN: 277356)
William L. Smith (SBN: 324235)
KIRKLAND & ELLIS LLP
555 S. Flower St., Los Angeles, CA 90071
Tel.:   (213) 680-8400
Email(s):   benjamin.herbert@kirkland.com
            william.smith@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Ali El-Bey,*
*Peter Diocson Jr., Marquis Ashley, and Janet Garcia*

**TO THE COURT, DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiffs respectfully request that the Court take judicial notice of the following documents:

1. Los Angeles Municipal Code Section 11, attached as Exhibit 1;
2. Los Angeles Municipal Code Section 56.11, attached as Exhibit 2;
3. City of Los Angeles, LA Sanitation and Environment (LASAN) Reports Back on Multiple Energy, Climate Change & Environmental Justice Committee Motions Regard the Livability Services' New Deployment Plan, Provision of Enhanced Services to Homeless Encampment Residents and Elevated Collection and Enforcement Illegal Dumping Strategies, dated November 27, 2019 , a true and correct copy of which is attached as Exhibit 3;
4. City of Los Angeles, LA Sanitation and Environment Report Back on the City's Comprehensive Cleaning and Rapid Engagement Program, dated January 21, 2020, a true and correct copy of which is attached as Exhibit 4;
5. The dates of Los Angeles City Council committee and full council hearings regarding the deployment of CARE and CARE+ teams. The Index for Council File 19-0609 provides the dates of these meetings as part of the official register of actions, maintained by the Los Angeles City Clerk, for actiosn taken by the Los Angeles City Council.  A true and correct copy of the Index is attached as Exhibit 5;
6. Website of the Mayor of the City of Los Angeles,"Mayor Garcetti announces New Plan to Deploy New Sanitation Teams, Deliver Services to Homeless Encampments," dated June 19, 2019, available at https://www.lamayor.org/mayor-garcetti-announces-new-plan-deploy-new-sanitation-teams-deliver-services-homeless-encampments/.  The press release announces the new deployment of the Comprehensive Cleaning and

Rapid Response (CARE) and CARE+ teams, to replace HOPE teams and Clean Streets LA teams.   A true and correct copy of the website is attached as Exhibit 6.

Federal Rule of Evidence ("Fed. R. Evid.") 201 permits a Court to take judicial notice of a "fact that is not subject to reasonable dispute because it (1) is generally known with the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned". Fed. R. Evid. 201(b).

Requests 1 and 2 are for Municipal Ordinances.  This Court previously granted Defendant's unopposed Request for Judicial Notice for LAMC 56.11. *See* Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss, Dkt. 36 at 1, n. 1.

Requests 3 and 4 are properly the subject for judicial notice, since they are official government reports prepared by an administrative agency, LA Sanitation, for another government entity, the Los Angeles City Council.   *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of government documents); *Anderson v. Holder,* 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (reports of administrative bodies). These documents and Request Number Exhibit 5 are part of the legislative history and available on the website of the Los Angeles City Clerk.  *See also Democratic Nat'l Comm. v. Reagan,* 904 F.3d 686, 710 n.13 (9th Cir. 2018) (taking judicial notice of report publicly available on the website of the U.S. Election Assistance Commission).

Request 6 is available on the website of the Los Angeles Mayor and may therefore be subject to Judicial Review.  *Id.*

Plaintiffs therefore request this Court take judicial note of foregoing, which are attached as Exhibits 1-6.

1  Sated:  February 26, 2020          Respectfully submitted,

2                                      LEGAL AID FOUNDATION OF LOS ANGELES

3                                      SCHONBRUN SEPLOW
                                       HARRIS & HOFFMAN LLP
4
                                       KIRKLAND & ELLIS LLP
5
                                       _____/s/_____
6
                                       By: Shayla Myers
7                                      *Attorneys for Plaintiffs.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

Los Angeles Municipal Code

### SEC. 11.00.  PROVISIONS APPLICABLE TO CODE.
**(Amended by Ord. No. 175,676, Eff. 1/11/04.)**

(a)  **Short Title.  Reference to Code in Prosecutions.  Designation in Ordinances.**  This Code, which consists of criminal or regulatory ordinances of this City, shall be known as the "Official Los Angeles Municipal Code," and it shall be sufficient to refer to the Code as the "Los Angeles Municipal Code" in any prosecution for the violation of any of its provisions; it shall also be sufficient to designate any ordinance adding to, amending or repealing this Code or a portion of this Code as an addition or amendment to or a repeal of the "Los Angeles Municipal Code."

(b)  **Existing Law Continued.**  The provisions of this Code, to the extent they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations of the Code and not as new enactments.

(c)  **Construction.**  The provisions of this Code and all proceedings under it are to be construed with a view to effect its objectives and to promote justice.

(d)  **Effect of Code on Past Actions and Obligations Previously Accrued.**  Neither the adoption of this Code nor the repeal of any ordinance of this City shall in any manner affect the prosecution for violation of ordinances, which violations were committed prior to the effective date of the ordinance, nor be construed as a waiver of any license or penalty at the effective date due and unpaid under the ordinance, nor be construed as affecting any of the provisions of the ordinance relating to the collection of any license or penalty or the penal provisions applicable to any violation, nor to affect the validity of any bond or cash deposit in lieu of a bond, required to be posted, filed or deposited pursuant to any ordinance or its violation, and all rights and obligations associated with the ordinance shall continue in full force and effect.

(e)  **References to Specific Ordinances.**  The provisions of this Code shall not in any manner affect deposits or other matters of record which refer to, or are otherwise connected with ordinances that are specially designated by a number or otherwise and which are included within this Code, but those references shall be construed to apply to the corresponding provisions contained within this Code.

(f)  **Heading, Effect of.**  Division, chapter, article and section headings contained in this Code shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any division, chapter, article or section.

(g)  **Reference to Acts or Omissions Within This City.**  This Code shall refer only to the omission or commission of acts within the territorial limits of the City of Los Angeles and that territory outside of this City over which the City has jurisdiction or control by virtue of the Constitution, Charter or any law, or by reason of ownership or control of property.

(h)  **Proof of Notice.**  Proof of giving any notice may be made by the certificate of any officer or employee of this City or by affidavit of any person over the age of 18 years, which shows service in conformity with this Code or other provisions of law applicable to the subject matter concerned.

(i)  **Notices, Service of.**  Whenever a notice is required to be given under this Code, unless different provisions in this Code are otherwise specifically made applicable, the notice may be given either by personal delivery to the person to be notified or by deposit in the United States Mail in a sealed envelope, postage prepaid, addressed to the person to be notified at his or her last known business or residence address as it appears in the public records or other records pertaining to the matter to which the notice is directed.  Service by mail shall be deemed to have been completed at the time of deposit in the mail.

(j)   **Prohibited Acts; Include Causing, Permitting, Suffering.**   Whenever in this Code any act or omission is made unlawful it shall include causing, permitting, aiding, abetting, suffering or concealing the fact of the act or omission.

(k)   **Validity of Code.**   If any section, subsection, sentence, clause, phrase or portion of this Code is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this Code.   The Council of this City hereby declares that it would have adopted this Code and each section, subsection, sentence, clause, phrase or portion of the Code, irrespective of the fact that any one portion or more sections, subsections clauses, phrases or portions are declared invalid or unconstitutional.

(l)   In addition to any other remedy or penalty provided by this Code, any violation of any provision of this Code is declared to be a public nuisance and may be abated by the City or by the City Attorney on behalf of the people of the State of California as a nuisance by means of a restraining order, injunction or any other order or judgment in law or equity issued by a court of competent jurisdiction.   The City or the City Attorney, on behalf of the people of the State of California, may seek injunctive relief to enjoin violations of, or to compel compliance with, the provisions of this Code or seek any other relief or remedy available at law or equity.   **(Amended by Ord. No. 177,103, Eff. 12/18/05.)**

Violations of this Code are deemed continuing violations and each day that a violation continues is deemed to be a new and separate offense and subject to a maximum civil penalty of $2,500 for each and every offense.

As part of any civil action, the court may require posting of a performance bond to ensure compliance with this Code, applicable state codes, court order or judgment.

(m)   It shall be unlawful for any person to violate any provision or fail to comply with any of the requirements of this Code.   Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this Code, shall be guilty of a misdemeanor unless that violation or failure is declared in this Code to be an infraction.   An infraction shall be tried and be punishable as provided in Section 19.6 of the Penal Code and the provisions of this section.   Any violation of this Code that is designated as a misdemeanor, may be charged by the City Attorney as either a misdemeanor or an infraction.

Every violation of this Code is punishable as a misdemeanor unless provision is otherwise made, and shall be punishable by a fine of not more than $1,000.00 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and imprisonment.

Every violation of this Code that is established as an infraction, or is charged as an infraction, is punishable by a fine as set forth in this Code section, or as otherwise provided in this Code, not to exceed $250.00 for each violation.

Violations of this Code may be addressed through the use of an Administrative Citation as set forth in Article 1.2 of Chapter 1 of this Code.   The administrative fines prescribed by Chapter 1, Article 1.2 may be sought as an alternative to other legally available civil and criminal remedies.   **(Amended by Ord. No. 184,766, Eff. 3/27/17.)**

Each person shall be guilty of a separate offense for each and every day during any portion of which any violation of any provision of this Code is committed, continued or permitted by that person, and shall be punishable accordingly.

(n)   Pursuant to Government Code Section 38773, the City may summarily abate any nuisance at the expense of the persons creating, causing, committing, or maintaining it and the expense of the abatement of

the nuisance may be a lien against the property on which it is maintained and a personal obligation against the property owner.


   (o)   Pursuant to Government Code Section 38773.7, upon entry of a second or subsequent civil or criminal judgment within a two-year period that finds an owner of property responsible for a condition that may be abated in accordance with California Government Code Section 38773.5, a court may order the owner to pay treble the costs of the abatement.  These costs shall not include conditions abated pursuant to California Health and Safety Code Section 17980.

EXHIBIT 2

Los Angeles Municipal Code

## SEC. 56.11.  STORAGE OF PERSONAL PROPERTY.
**(Amended by Ord. No. 184,182, Eff. 4/11/16.)**

1.  **Declaration of Legislative Intent - Purpose.**  The City enacts this section to balance the needs of the residents and public at large to access clean and sanitary public areas consistent with the intended uses for the public areas with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas.  On the one hand, the unauthorized use of public areas for the storage of unlimited amounts of personal property interferes with the rights of other members of the public to use public areas for their intended purposes and can create a public health or safety hazard that adversely affects those who use public areas.  On the other hand, the City's large and vulnerable homeless population needs access to a manageable amount of essential property for their personal use and well-being.  This section attempts to balance the needs of all of the City's residents.

2.  **Definitions.**  The definitions contained in this subsection shall govern the construction, meaning and application of words and phrases used in this section.

(a)  "**Alley**" means any Highway having a Roadway not exceeding 25 feet in width which is primarily for access to the rear or side entrances of abutting property.

(b)  "**Bikeway**" means all facilities that provide primarily for, and promote, bicycle travel.

(c)  "**Bulky Item**" means any item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed, including, but not limited to, a shed, structure, mattress, couch, chair, other furniture or appliance.  A container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property shall not in itself be considered a Bulky Item.

(d)  "**City Employee**" means any full or part-time employee of the City of Los Angeles or a contractor retained by the City for the purpose of implementing this Section.

(e)  "**Essential Personal Property**" means any and all Personal Property that cumulatively is less than two cubic feet in volume, which, by way of example, is the amount of property capable of being carried within a backpack.

(f)  "**Excess Personal Property**" means any and all Personal Property that cumulatively exceeds the amount of property that could fit in a 60-gallon container with the lid closed.

(g)  "**Highway**" means a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel.

(h)  "**Parkway**" means the area of the Street between the back of the curb and the Sidewalk that typically is planted and landscaped.

(i)  "**Person**" means any individual.

(j)  "**Personal Property**" means any tangible property, and includes, but is not limited to, goods, materials, merchandise, Tents, tarpaulins, bedding, sleeping bags, hammocks, personal items such as household items, luggage, backpacks, clothing, documents and medication.

(k)   **"Public Area"** or **"Public Areas"** means all property that is owned, managed or maintained by the City, except property under the jurisdiction of the Department of Recreation and Parks which is governed by Los Angeles Municipal Code Section 63.44, and shall include, but not be limited to, any Street, medial strip, space, ground, building or structure.

(l)   **"Roadway"** means that portion of a Highway improved, designed or ordinarily used for vehicular travel.

(m)   **"Sidewalk"** means that portion of a Highway, other than the Roadway, set apart by curbs, barriers, markings or other delineation, for pedestrian travel.

(n)   **"Storage Facility"** means any facility, whether operated by a public, non-profit or private provider, which allows and has capacity for voluntary storage, free of charge, for a homeless person to store Personal Property up to the equivalent of the amount of property that would fit into a single 60-gallon container with the lid closed.

(o)   **"Store"**, **"Stored"**, **"Storing"** or **"Storage"** means to put Personal Property aside or accumulate for use when needed, to put for safekeeping, and/or to place or leave in a Public Area. Moving Personal Property to another location in a Public Area or returning Personal Property to the same block on a daily or regular basis shall be considered Storing and shall not be considered to be removing the Personal Property from a Public Area.  This definition shall not include any Personal Property that, pursuant to statute, ordinance, permit, regulation or other authorization by the City or state, is Stored with the permission of the City or state on real property that is owned or controlled by the City.

(p)   **"Street"** includes every Highway, avenue, lane, Alley, court, place, square, Sidewalk, Parkway, curbs, Bikeway or other public way in this City which has been or may hereafter be dedicated and open to public use, or such other public property so designated in any law of this state.

(q)   **"Tent"** means a collapsible shelter made of fabric such as nylon or canvas or a tarp stretched and sustained by supports, which is not open on all sides and which hinders an unobstructed view behind or into the area surrounded by the fabric.  In order to qualify as a Tent for purposes of this subsection, a Tent, when deconstructed, must be able to fit within a 60-gallon container with the lid closed.

(r)   **"Unattended"** means no Person is present with the Personal Property who asserts or claims ownership over the Personal Property.  Conversely, property is considered **"Attended"** if a Person is present with the Personal Property and the Person claims ownership over the Personal Property.

3.   **Regulation and Impoundment of Stored Personal Property; Discard of Certain Stored Personal Property.**

(a)   No Person shall Store any Unattended Personal Property in a Public Area.  With pre-removal notice as specified in Subsection 4.(a), the City may impound any Unattended Personal Property in a Public Area, regardless of volume.   Post-removal notice shall be provided as set forth in Subsection 4.(b), below.

(b)   No Person shall Store any Attended Excess Personal Property in a Public Area.  With pre-removal notice as specified in Subsection 4.(a), the City may impound any Attended Excess Personal Property Stored in a Public Area.  Post-removal notice shall be provided as set forth in Subsection 4.(b), below.

(c)   No Person shall Store any Personal Property in a Public Area in such a manner as to obstruct City operations, including a Street or Sidewalk maintenance or cleaning.  Without prior notice, the City may temporarily move Personal Property, whether Attended or Unattended, which is obstructing City operations in a Public Area, including a Street or Sidewalk maintenance or cleaning, during the time necessary to conduct the City operations.  The City also may impound Personal Property that is obstructing City operations in a Public Area, pursuant to Subsection 3.(a) or 3.(b).

(d)   No Person shall Store any Personal Property in a Public Area in such a manner that it does not allow for passage as required by the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990), as amended from time to time (ADA).  Without prior notice, the City may move and may immediately impound any Personal Property, whether Attended or Unattended, Stored in a Public Area in such a manner that it does not allow for passage as required by the ADA. Post-removal notice shall be provided as set forth in Subsection 4.(b), below.

(e)   No Person shall Store any Personal Property within ten feet of any operational and utilizable entrance, exit, driveway or loading dock.  Without prior notice, the City may move and may immediately impound any Personal Property, whether Attended or Unattended, Stored in a Public Area within ten feet of any operational and utilizable entrance, exit, driveway or loading dock. Post-removal notice shall be provided as set forth in Subsection 4.(b), below.

(f)   No Person shall Store in a Public Area that has a clearly posted closure time any Personal Property after the posted closure time.  Without prior notice, the City may remove and impound Personal Property, whether Attended or Unattended, Stored in a Public Area that has a clearly posted closure time, provided the Personal Property is removed and impounded after the posted closure time.  Post-removal notice shall be provided as set forth in Subsection 4.(b), below.

(g)   No Person shall Store any Personal Property in a Public Area if the Personal Property, whether Attended or Unattended, constitutes an immediate threat to the health or safety of the public.  Without prior notice, the City may remove and may discard any Personal Property Stored in a Public Area if the Personal Property poses an immediate threat to the health or safety of the public.

(h)   No Person shall Store any Personal Property in a Public Area if the Personal Property, whether Attended or Unattended, constitutes an evidence of a crime or contraband.  Without prior notice, the City may remove and may discard any Personal Property that constitutes evidence of a crime or contraband, as permissible by law.

(i)   No Person shall Store any Bulky Item in a Public Area.  Without prior notice, the City may remove and may discard any Bulky Item, whether Attended or Unattended, Stored in a Public Area unless the Bulky Item is designed to be used as a shelter.  For any Bulky Item that is designed to be used as a shelter but does not constitute a Tent as defined in Subsection 2.(q), with pre-removal notice as specified in Subsection 4.(a), the City may remove and discard the Bulky Item, whether Attended or Unattended.  If the Bulky Item violates Subsection 3.(d)-(h) herein, even if it is designed to be used as a shelter, without prior notice, the City may remove and discard the Bulky Item, whether Attended or Unattended.

(j)   Upon the creation of any new Storage Facility, increased capacity at an Existing Storage Facility or subsidized transportation assistance to a Storage Facility, the Chief Administrative Officer shall report to the Council to inform the Council's consideration of whether to prohibit a Person from Storing more than Essential Personal Property in a Public Area in a specified radius from a Storage Facility, based upon the amount of the additional storage capacity and the accessibility thereto.  In consideration of the CAO's report, the Council may, by resolution, prohibit

ARTICLE PUBLICATIONS P

a Person within a specified radius of a Storage Facility from Storing more than Essential Personal Property in a Public Area.

4. **Notice.**

(a) **Pre-Removal Notice.** Pre-removal notice shall be deemed provided if a written notice is provided to the Person who is Storing or claims ownership of the Personal Property, or is posted conspicuously on or near the Personal Property and the actual removal commences no more than 72 hours after the pre-removal notice is posted. The written notice shall contain the following:

(1) A general description of the Personal Property to be removed.

(2) The location from which the Personal Property will be removed.

(3) The date and time the notice was posted.

(4) A statement that the Personal Property has been stored in violation of Section 56.11, Subsection 3.

(5) A statement that the Personal Property may be impounded if not removed from Public Areas within 24 hours.

(6) A statement that moving Personal Property to another location in a Public Area shall not be considered removal of Personal Property from a Public Area.

(7) The address where the removed Public Property will be located, including a telephone number and the internet website of the City through which a Person may receive information as to impounded Personal Property as well as information as to voluntary storage location(s).

(8) A statement that impounded Personal Property may be discarded if not claimed within 90 days after impoundment.

(b) **Post-Removal Notice.** Upon removal of Stored Personal Property, written notice shall be conspicuously posted in the area from which the Personal Property was removed. The written notice shall contain the following:

(1) A general description of the Personal Property removed.

(2) The date and approximate time the Personal Property was removed.

(3) A statement that the Personal Property was stored in a Public Area in violation of Section 56.11, Subsection 3.

(4) The address where the removed Personal Property will be located, including a telephone number and internet website of the City through which a Person may receive information as to impounded Personal Property.

(5) A statement that impounded Personal Property may be discarded if not claimed within 90 days after impoundment.

5. **Storage and Disposal.**
(a) Except as specified herein, the City shall move Personal Property to a place of storage.

(b)   Except as specified herein, the City shall store impounded Personal Property for 90 days, after which time, if not claimed, it may be discarded. The City shall not be required to undertake any search for, or return, any impounded Personal Property stored for longer than 90 days.

(c)   The City shall maintain a record of the date any impounded Personal Property was discarded.

6. **Repossession.** The owner of impounded Personal Property may repossess the Personal Property prior to its disposal upon submitting satisfactory proof of ownership. A Person may establish satisfactory proof of ownership by, among other methods, describing the location from and date when the Personal Property was impounded from a Public Area, and providing a reasonably specific and detailed description of the Personal Property. Valid, government-issued identification is not required to claim impounded Personal Property.

7. **Ban on Erection of Tent during Certain Daytime Hours.** No Person shall erect, configure or construct a Tent in any Public Area from 6:00 a.m. to 9:00 p.m. (except during rainfall or when the temperature is below 50 degrees Fahrenheit). A Person must take down, fold, deconstruct or put away any Tent erected, configured or constructed in any Public Area between the hours of 6:00 a.m. and 9:00 p.m. (except during rainfall or when the temperature is below 50 degrees Fahrenheit). Without prior notice, the City may deconstruct and may impound any Tent, whether Attended or Unattended, located in any Public Area in violation of this subsection or in violation of Subsections 3.(c)-(h) hereof. The City shall provide post-removal notice for any impounded Tent, as set forth in Subsection 4.(b), herein.

8. **Ban on Attachments to Public and Private Property.**

(a)   **Public Property.** No Person shall erect any barrier against or lay string or join any wires, ropes, chains or otherwise attach any Personal Property to any public property, including but not limited to, a building or portion or protrusion thereof, fence, bus shelter, trash can, mail box, pole, bench, news rack, sign, tree, bush, shrub or plant, without the City's prior written consent.

(b)   **Private Property.** No Person shall erect any barrier against or lay string or join any wires, ropes, chains or otherwise attach any Personal Property to any private property in such a manner as to create an obstruction on or across any Street or area where the public may travel.

(c)   **Removal.** Without prior notice, the City may remove any barrier, string, wires, ropes, chains or other attachment of Personal Property, whether Attended or Unattended, to any public property, or to any private property which creates an obstruction to any Street or area where the public may travel.

9. **Illegal Dumping.** Nothing herein precludes the enforcement of any law prohibiting illegal dumping, including but not limited to California Penal Code Section 374.3, and Los Angeles Municipal Code Sections 41.14, 63.44 B.13. or 190.02, or any successor statutes proscribing Illegal dumping.

10. **Unlawful Conduct.** Los Angeles Municipal Code Section 11.00 shall not apply to violations of this section except as follows:

(a)   No Person shall willfully resist, delay or obstruct a City employee from moving, removing, impounding or discarding Personal Property Stored in a Public Area in violation of Subsections 3. (a)-(h).

(b)   No Person shall refuse to take down, fold, deconstruct or otherwise put away any Tent erected or configured between the hours of 6:00 a.m. and 9:00 p.m., in violation of Subsection 7., or willfully resist, delay or obstruct a City employee from taking down, folding, deconstructing, putting away, moving, removing, impounding or discarding the Tent, including by refusing to vacate or retreat from the Tent.

(c)   No Person shall refuse to remove any barrier, string, wire, rope, chain or other attachment that violates Subsection 8., or willfully resist, delay or obstruct a City employee from deconstructing, taking down, moving, removing, impounding or discarding the barrier, string, wire, rope, chain or other attachment, including by refusing to vacate or retreat from an obscured area created by the attachment.

(d)   No Person shall willfully resist, delay or obstruct a City employee from removing or discarding a Bulky Item Stored in violation of Subsection 3.(i), including by refusing to vacate or retreat from within the Bulky Item or from an obscured area created by the Bulky Item.

(e)   If Subsection 3.(j) becomes operative by resolution in any area of the City, no Person shall willfully resist, delay or obstruct a City employee from removing or impounding any Personal Property that exceeds the limit on Essential Personal Property.

(f)   A violation of Subsection 9. prohibiting illegal dumping.

11.   **Designated Administrative Agency.**   The City's Department of Public Works, Bureau of Sanitation, is hereby charged with serving as the Designated Administrative Agency (DAA), for the purposes of this ordinance.   The DAA shall promulgate rules, protocols and procedures for the implementation and enforcement of this ordinance, consistent with the provisions herein.

12.   **Severability.**   If any subsection, sentence, clause or phrase of this article is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance.   The City Council hereby declares that it would have adopted this section, and each and every subsection, sentence, clause and phrase thereof not declared invalid or unconstitutional, without regard to whether any portion of the ordinance would be subsequently declared invalid or unconstitutional.

Exhibit 3

FORM GEN. 160 (REV. 6-80)

**CITY OF LOS ANGELES**
INTER-DEPARTMENTAL CORRESPONDENCE

DATE:  November 27, 2019

TO:  Honorable Nury Martinez, Chair
Honorable Paul Koretz, Vice Chair
Honorable Paul Krekorian, Member
Honorable Gil Cedillo, Member
Honorable Mitch O'Farrell, Member
Energy, Climate Change and
Environmental Justice Committee

FROM:  Enrique C. Zaldivar, Director and General Manager
LA Sanitation and Environment

**SUBJECT: LA SANITATION AND ENVIRONMENT (LASAN) - REPORTS BACK ON MULTIPLE ENERGY, CLIMATE CHANGE & ENVIRONMENTAL JUSTICE COMMITTEE MOTIONS REGARDING LIVABILITY SERVICES' NEW DEPLOYMENT PLAN, PROVISION OF ENHANCED SERVICES TO HOMELESS ENCAMPMENT RESIDENTS AND ELEVATED COLLECTION AND ENFORCEMENT ILLEGAL DUMPING STRATEGIES (CF#14-1499-S7,14-1499-S8, CF 19-0600-S89,19-0600-S156, 19-0609)**

On June 25, 2019, the City Council requested LASAN to report back on Mayor Garcetti's Comprehensive Cleaning and Rapid Engagement (CARE/CARE+) program along with a plan for servicing the Sepulveda Basin, the Tujunga Wash, increasing illegal dumping collection activities as well as accounting for enhanced services which entails a comprehensive approach to address growing public health and environmental concerns related to homeless encampments and illegal dumping in the City of Los Angeles (the City).

To expand LASAN's ability to provide livability and public health services, the City Council authorized Mayor Garcetti's CARE/CARE+ program to provide regionally-deployed services via seventeen (17) CARE and thirteen (13) CARE+ teams.

| 17 CARE Teams | 13 CARE+ Teams |
| --- | --- |
| 15 Council Districts | 5 A Bridge Home (ABH) areas |
| 1 Citywide | 5 Comprehensive Homeless Encampment Cleanup/ |
| 1 Los Angeles River | Illegal Dumping |
| | 3 Focused Service Zones: Grand Avenue, DTLA, |
| | Skid Row/Venice |

On October 1, 2019 the CARE/CARE+ program was launched citywide. The 30 CARE/CARE+ Teams are deployed daily out of four Regional Deployment Yards to provide enhanced,

dedicated service in high demand areas across the city. This regional deployment strategy coupled with newly hired staff, bringing the Livability Services Division (LSD) to two-hundred and fifty seven (257) employees, and a services-led approach has collectively increased service frequency and provided new services. Wire basket servicing, increased illegal dumping collection, the removal of health hazards in the public right-of-way, CleanStat 2.0, and the deployment of mobile hygiene centers are expanded and dedicated services that LASAN has been able to provide the City with as the result of the increased staffing and new regional deployment model.

The CARE teams are comprised of components from each partner agency; LASAN, LAHSA (Los Angeles Homeless Services Authority) and Los Angeles Police Department (LAPD). Every morning, the refuse collection truck operator and maintenance laborer of LSD conducts wire basket trash collection in their respective district. The environmental compliance inspectors post pre-cleanup notifications for future comprehensive cleanup operations. LSD CARE staff meet at 8 am to begin daily CARE operations with LAHSA. LAPD provides support services for the CARE Team operating within each LAPD division. CARE operations continue with LAHSA providing engagement and education, LSD CARE team members ensure that each service location is free of public health hazards, bulky items, and trash and debris. CARE Teams also provide four times a week servicing of ABH Special Enforcement Cleanup Zones. CARE+ operations take place at posted comprehensive cleanup locations across the city. These locations require additional staff and resources to ensure larger, chronic locations are cleared of any potential health hazards. CARE+ Teams also provide once a week comprehensive service to ABH Special Enforcement Cleanup Zones. LASAN's Community Services Group (CSG) will work with Council District staff to prioritize CARE/CARE+ cleanup locations.

LASAN has added Mobile Hygiene Centers as a new component of public health delivery resources. Currently three Mobile Hygiene Centers are deployed to locations across the city that are in need of restroom/shower facilities. These three units are the first of seven units that will be deployed by early 2020. LASAN is working with the Mayor's Office and the CAO to identify additional funding for the procurement of six additional units bringing the total to thirteen units in service. The Mobile Hygiene Centers have made a positive impact on those receiving the services and has garnered new partners in this front. Medical students have begun to visit mobile hygiene center locations and provide free medical services to unsheltered individuals as a supplemental support service. While this unofficial relationship is in its infancy, it is clear that this platform can be utilized as a new service delivery model.

These additional services expand upon the services provided by LASAN, creating greater elasticity of response and ultimately helping us achieve our mission; to protect public health and the environment.

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 3 of 15

## Strategies and Implementation Schedule for the Sepulveda Basin in Coordination with Recreation and Parks and LAHSA

The proliferation of homeless encampments within the Sepulveda Basin (Basin) is a long-standing concern. The Basin is a large, mostly undeveloped area under the jurisdiction of the Army Corps of Engineers. Within that jurisdiction there are several parcels leased to the Department of Recreation and Parks (RAP), Donald C. Tillman Water Reclamation Plant and Japanese Gardens, and an easement along Burbank Boulevard which contains Encino Creek, a stormwater channel under the jurisdiction of LASAN. There are an estimated two-hundred (200) people experiencing homelessness residing within the basin. The current proposed clean-up schedule divides the encampment parcels into four (4) phases which encompass the leased Recreation and Parks parcels and Encino Creek.

Clean-up Phases One, Two, and Three
The first three (3) phases are within the jurisdiction of Rec and Parks with encampments located at the following locations:

- Phase One: The rear of Balboa Sports Complex (17015 Burbank Boulevard)
- Phase Two: Haskell Creek (adjacent to the archery field)
- Phase Three: Bull Creek within the Sepulveda Dam Recreation Area (6335 Woodley Avenue)

Clean-ups of phases one, two, and three are a joint effort between Rec and Parks, LASAN, LAHSA, Council District 6, LAFD, and LAPD.

**Phase One: Rear of Sepulveda Sports Complex**
The clean-up of phase one commenced on August 5, 2019 and was completed on Saturday, August 10, 2019. LASAN supported Rec and Parks with personnel and equipment from the Liveability Services and Solid Resources Processing and Construction Divisions. [METRICS]

**Phase Two: Haskell Creek**
The clean-up of phase two commenced on September 23, 2019 and was completed on September 25, 2019. LASAN supported Rec and Parks with personnel and equipment from the Liveability Services Division.

**Phase Three: Bull Creek**
East Bank of Bull Creek

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 4 of 15

The clean-up of phase three commenced on November 4, 2019 and were completed on November 12th. Due to the extensive amount of debris, only the eastern bank of Bull Creek was able to be completed.

West Bank of Bull Creek

On November 21, 2019 there was a planning walk through with Rec and Parks, LASAN, LAHSA, and LAPD to determine the best course of action for the clean-up of the west bank of Bull Creek. The group was able to plan the clean-up along with assessing the area for safety and environmental concerns. The clean-up of the west bank of Bull Creek is scheduled to begin on December 2, 2019 and continue for three weeks.

**Phase Four Clean Up**

Encino Creek is located on Burbank Blvd from Balboa Boulevard to the 405 freeway. The area of focus of phase four is the portion from Hayvenhurst Avenue to the 405 freeway. The Army Corps of Engineers grants LASAN limited accessibility and maintenance of Encino Creek. The easement right is forty (40) feet, extending twenty (20) feet in either direction of the center-line of Encino Creek. The most recent clean-up of this area occurred in January 2017. The clean-up lasted several weeks and incurred costs of over one million dollars including salaries, equipment, hazardous material and refuse disposal, and contractual services.

Although the Army Corps of Engineers has provided the City with access, it does not enable LASAN to waive the appropriate permitting or bypass approval from regulatory agencies. Nor does it provide exclusion from the Endangered Species Act. The United States Department of Interior's Fish and Wildlife Service, the California State Department of Fish and Wildlife (Fish and Wildlife), and the California State Water Resources Board (Water Board) are the main regulatory agencies. Regulatory oversight includes the diversion of water and the protection of State and Federally endangered birds living within the Sepulveda Basin. The birds have a nesting season from approximately the end of February through the beginning of August. During the nesting season work can not occur within the Basin. Outside of the nesting season there are strict guidelines for the surveying, identification, and protection of endangered species before, during, and after work.

LASAN is pursuing a twenty (20) year permit from Fish and Wildlife. The multi-year permit would enable LASAN to begin the Sepulveda Basin Stormwater Restoration Project which will maintain the Encino Creek stormwater channel within its original permitted condition. This maintenance will include:

- Removal of homeless encampments with support and outreach from LAHSA
- Removal of makeshift structures and unlawful electrical wires over the channel

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 5 of 15

- Clearing and grubbing of vegetation and debris
- Regrading the channel slopes
- Repair of a damaged cut off wall
- Removal of repair of damaged guardrails along Burbank Boulevard

LASAN is nearing the completion of the permitting process and anticipates receiving the approved permit before the end of the calendar year. LASAN continues to work with Fish and Wildlife on their requirements and is working internally on finalizing the clean-up plan. Once the permit is approved, LASAN will start the clean-up closer to the 405 freeway and work toward Hayvenhurst. LSD will provide support for the removal of the homeless encampment related debris while the Clean Water ConveyanceDivision will oversee the maintenance of the channel.

Figure 1 shows metrics for the Sepulveda Basin Cleanings from August 5 through November 12, 2019.

**Figure 1**

Sepulveda Basin Metrics

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 6 of 15

## Bridges and Underpasses of the Tujunga Wash

The Tujunga Wash flows south from Big Tujunga through Hansen Dam to the Hansen Dam spreading grounds in Sun Valley. The Tujunga Wash overpasses in Sun Valley are: Glenoaks Boulevard, San Fernando Road Northeast Roadway (Old San Fernando Road), San Fernando Road Southwest Roadway (Southwest Roadway), Laurel Canyon Boulevard, and Arleta Avenue There are homeless encampments at both Old San Fernando Road and the Southwest Roadway. The encampment at Old San Fernando Road is located on an unimproved portion of the municipal street between Branford St. and the County of Los Angeles' flood control channel. The encampment at the Southwest Roadway is under the San Fernando Road overpass of the Tujunga Wash. There are an estimated combined total of fifty (50) people living at both locations.

The most recent cleanup of Old San Fernando Road occurred in June 2019. Additional cleanups were conducted in: February 2019, August 2018, January 2018, August 2017, and March 2017. LASAN continues to work with Council District 6 to schedule cleanups of this location. There will be a minimum of one cleanup between November 2019 and the end of the calendar year. The most recent cleanup of the Southwest Roadway occurred in August 2018. Prior to this, the location was cleaned in May 2016. The Southwest Roadway presents a logistical challenge as access points are restricted and the City, the County Flood Control District (County), and the Los Angeles Metropolitan Transportation Authority (Metro) must work together to accomplish the cleanup. LASAN continues to work with Council District 6, the County, and Metro to schedule joint cleanups of this location. The next cleanup is tentatively scheduled for the early part of 2020.

The Pacoima Diversion channel flows south through the community of Arleta and reaches a confluence with the Tujunga Wash at Wentworth Street. The overpasses which are municipal streets with homeless encampments are: Branford Street, Terra Bella Street, Osborne Street, and Wentworth Street. These encampments are within residential neighborhoods. An estimated combined total of fifty-five (55) people are residing underneath the overpasses. The ovepasses pose a unique logistical challenge in that the encampments exist in the rafters, elevated from the flood channel, and consist of many makeshift structures. LASAN has determined that the most efficient way to address the cleaning of these encampments is through the use of contractual services. The contractor will perform the specialized task of clearing debris from the elevated portion of the bridges. LASAN personnel will perform the sorting of the debris for hazardous material and personal property. Personal property will be manifested and stored in accordance with LASAN's protocols. The County will function in a supportive role during the operation focusing on the channel. LASAN is scheduled to begin servicing these overpasses in the winter

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 7 of 15

of 2019-20. The proposed schedule includes the Wentworth St. overpass at the end of December, the Osborne St. and Terra Bella St. overpasses in January 2020, and the Branford St. overpass at the beginning of February 2020.

## Addressing issues associated with recreational vehicles

Addressing the needs of individuals living in Recreational Vehicles (RVs) and the affected residents and businesses in the surrounding areas is varied, multi-faceted, and complex.

To avoid the dumping of human waste by persons living in RVs, LASAN installed two (2) new City-owned RV disposal stations. There are now four (4) City-owned RV disposal stations that allow RV owners to safely, dispose of the contents of grey and black water tanks without charge. These are located at the Hyperion Water Reclamation Plant (Playa del Rey), the Harbor District Yard (San Pedro), the North Central Yard (Lincoln Heights), which opened in Spring 2019, and the Reseda Wastewater Maintenance Yard (Tarzana), which opened in September 2019.

LASAN is looking to take a multi-pronged approach to servicing the needs of the RV-dwelling population and the surrounding areas. Future enhancements include:

- CARE Teams providing spot-cleaning around RVs to collect trash and steam-clean and sanitize the areas
- Additional wire basket receptacles deployed to areas with a high concentration of RVs.
- CleanStat 2.0 will assist in providing a proactive plan to address RVs Citywide. RV metrics collection began with the July 2019 launch of CleanStat 2.0 and includes RVs directly associated with encampments, e.g. linked to a tent or makeshift structure.

## Coordination between LASAN, LAHSA, the CAO Homeless Coordinator

As a component of the newly launched CARE/CARE+ program, LAHSA's Homeless Encampment Teammembers (HET) are embedded into each of the 30 CARE/CARE+ Teams. This deployment model places LAHSA's 2 HET's in each CARE/CARE+ Team to conduct extensive outreach and engagement on a citywide basis each day. Through the Unified Homelessness Response Center (UHRC), LASAN, LAPD, LAHSA and others (LAFD, LADOT, RAP, et al) coordinate operations on a daily basis. The ability to directly connect and dialogue with senior LAHSA team members on deployment and engagement strategies has provided a tremendous increase in operational intelligence and awareness to LASAN. Furthermore, LASAN is able to directly observe and track LAHSA engagement citywide. This coordination and connection allows LASAN to plan accordingly when LAPD or LAHSA team members are not available and allows LASAN to provide a high level of service while ensuring the needs of the community are met.

As part of the ABH program, the CAO Homeless Coordinator has assisted the efforts in bringing these facilities online. LASAN, among others, are taking part in coordination efforts to help realize the total suite of services that the city will provide to the unsheltered population at these facilities. LASAN, utilizing multiple in-house divisions, coordinates sewer service and trash collection as part of the CARE/CARE+ program; 4-day a week CARE servicing with once a week CARE+ comprehensive cleanings in each ABH Special Enforcement Zone. LASAN also assists with the alignment of the ABH Special Enforcement Zones based on data analytics from the CleanStat Street Indexing system. Additionally, LASAN produces and installs the ABH Special Enforcement Zone street signs for posted cleanup notification. A minimum of five LASAN divisions coordinate various services for each ABH facility brought online in the city.

## Livability Services Staffing

To date, all 47 positions attributed to the Energy, Climate Change and Environmental Justice committee recommendation of June 25, 2019 have been filled. Further, LASAN is in the process of filling the recently requested and approved 13 Maintenance Laborer positions. These positions will be assigned to the Mobile Hygiene Centers for daily deployment and servicing. Furthermore, LASAN has been working with the Personnel Department to create the Assistant Environmental Compliance Inspector classification. This position will ideally fit between the ML and ECI classifications, creating a new link and career path for frontline LASAN staff. With the additional teams, LASAN will be evaluating the operational, administrative, contractual and data/gis staffing demands of the CARE/CARE+ program assigned to the Livability Services Division.

## Enhanced Deployment Efforts and Monthly Recap on Progress and Effectiveness

In June 14, 2019, LASAN requested $1,438,624 to cover overtime for expanding services citywide. This appropriation was a result of the need for extended services to be deployed while LASAN continued to provide a higher level of service for illegal dumping collection citywide. On July 3, 2019 the City Council approved Council File 19-0600-S89; amending motion 51B was approved for partial funding of $746,580.64 with the request to return for the remainder.

With the approved overtime funding of $746,580.64, this amount allowed LSD to continue enhanced services of the livability teams for the first three months of June, July, and August of Fiscal Year 2019-20. Historic indexing and service request data was utilized to determine locations with chronic illegal dumping and high need locations.

The method for determining staff deployment was analysis of historic CleanStat data as well as Service Request (SR) data. This allowed LASAN to determine high need locations experiencing chronic illegal dumping. The tonnage of abandoned waste removed citywide through the proactive work effectively doubled our tonnage for the duration of the three months. Furthermore, LSD produced 5,102 proactive service requests, which reflects work completed by LASAN that was not reported through the MyLA311 Service Request platforms.

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 9 of 15

Figure 2 shows the tonnage of waste collected during the July/August/September enhanced deployment efforts, while Figure 3 shows the tonnage from October with the new CARE deployment model.

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 10 of 15

## Figure 2



### Tonnage Comparison
2018 vs. 2019

JULY BREAKDOWN
917.55 Tons (2018)
1,817.16 Tons (2019)

AUGUST BREAKDOWN
956.27 Tons (2018)
2,449.01 Tons (2019)
156% Increase

SEPTEMBER BREAKDOWN
1,053.70 Tons (2018)
1,765.87 Tons (2019)
68% Increase

| | JULY | AUGUST | SEPTEMBER |
|---|---|---|---|
| 2018 TONNAGE | 937.55 | 956.27 | 1,053.70 |
| 2019 TONNAGE | 1,817.16 | 2,449.01 | 1,765.87 |

## Figure 3

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 11 of 15



## Conditions of streets and alleyways in proximity to schools and libraries

Given the specific needs of children walking to schools, libraries and RAP facilities, LASAN has identified the most impacted facilities. CleanStat Data collected during the CleanStat Quarter 3 2019 street assessments from July 2019 through September 2019 was used to determine the schools and libraries that are within 1,000 feet from Encampments and Illegal Dumping locations. Figures 4 and 5 show schools and libraries that are within 1,000 feet of a homeless encampment and displays those locations based on the number of makeshift shelters within the encampment to indicate the encampments size.

The CleanStat assessment program also collects Illegal Dumping data such as volume and debris type. Figure 6 is a map of the schools that are within 1,000 feet of an Illegal Dumping location. These locations are categorized by the number of illegal dumps within 1,000 feet of the school.

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 12 of 15

Figure 4



LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 13 of 15

Figure 5



LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 14 of 15

Figure 6



LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 15 of 15

## CARE Operation Incidents

Prior to the launch of the CARE/CARE+ program, LASAN field teams were accompanied by LAPD and provided service with the support of LAPD security. In collaboration with the UHRC, LAHSA, and LAPD, the CARE/CARE+ launch implemented a "zone defense" coverage model in which LAPD was not on site, but rather within police radio communications distance a few blocks away. Post-launch, LAHSA's HETs are more closely connected with our teams to provide outreach and engagement as a first approach. LASAN teams will then follow up and conduct health hazard screening and collection of trash.

LASAN has recently implemented protocols for employees to submit incident reports that track all physical and verbal altercations in the field including all scenarios where LAPD staff were called to the scene.

## Hiring formerly homeless individuals through a service provider, and vetting this engagement through the labor-management process

LASAN has begun working with service providers like Five Keys and Urban Alchemy; who hires individuals experiencing homelessness, to comprise two-person teams tasked with providing light sweeping and litter abatement in the Skid Row area of downtown. LASAN supports this program by assisting in the removal of litter bags at strategic collection points around the cleanup areas. In collaboration with LASAN's labor-management representatives, LASAN has ensured that this program does not infringe on the interests of represented staff and furthermore allows individuals participating in program to qualify to enroll in the Targeted Local Hiring Program, an entry level program allowing individuals to seek permanent employment with the City of Los Angeles once they have met the requirements needed to participate.

## Illegal Dumping Protocols, Training and Response

Protocols are being implemented to allow for reporting of illegal dumping sites during normal-service trash collection. A field employee who encounters an illegal dumping will immediately report all details and provide photographs to their supervisor. The supervisor upon receipt of this information shall then create a proactive service request through MyLA311. This proactive service request would be reviewed and forwarded to CARE illegal dumping operations for an immediate response.

## Use of Targeted Local Hire Program

LASAN has hired 57 employees through the Targeted Local Hire (TLH) Program to support a variety of LASAN operations. 25 employees have been hired into the Office Trainee/Office Assistant/Administrative Clerk series. The remaining 32 have been hired as Vocational Workers to transition into Custodian, Gardener Caretaker, and Maintenance Laborer positions. There are 16 additional TLH hires in progress.

LA Sanitation - Livability Deployment Plan and Illegal Dumping Reports Back
November 27, 2019
Page 16 of 15

TLH employees have been used to fill ML positions on the CARE/CARE+ teams and will be used to fill the MHC ML positions. TLH positions are also working on LASAN's sewers, storm drains, and in the water reclamation plants. In addition to utilizing the TLH program, LASAN is also working with the Personnel Department in adding additional classifications to the Bridger to Jobs program.

While these new services, programs and deployment model work together to provide greater response and service to the city, LASAN will continue to monitor staffing, resources, contractual services and deployment requests for additional services to adjust and adhere to funding that has been provided up to this point. The goal is to ensure that LASAN operations are within the existing budgetary limits that have been placed.

Finally, LASAN will continue to work with our partners in the Mayor's Office, City Council, City Attorney's Office, CAO, LAHSA, and LAPD. The ongoing joint effort that has been brought to bear by these combined city resources has made steady improvements in addressing the servicing of homeless encampment locations and the collecting of illegal dumping citywide.

Thank you in advance for your continued support of LASAN. If you have any questions or would like to discuss any of these items further, please feel free to contact me or Jose P. Garcia, Assistant Director, at (213) 485-2210.


LBM/ECZ:lbm

c: Members of the City Council
Ana Guerrero, Chief of Staff, Mayor's Office
Matt Szabo, Deputy Chief of Staff, Mayor's Office
Barbara Romero, Deputy Mayor, Mayor's Office of City Services
Miguel Sangalang, Deputy Mayor, Mayor's Office of Budget and Innovation
Christina Miller, Deputy Mayor, City Homeless Initiatives
Greg Good, Chief of Legislative and External Affairs, Mayor's Office
Sharon Tso, CLA
Richard Llewellyn, Jr., CAO
Kevin James, President, BPW
M. Teresa Villegas, Commissioner, BPW
LASAN Executive Team

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Office of the City Clerk, City of Los Angeles

This report was generated by the Council File Management System on 02/26/2020
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Council File Number**
19-0609

**Title**
Illegal Dumping / Backlog / Homelessness Strategies / Clean Streets LA / HOPE

**Last Change Date**                         **Expiration Date**
01/21/2020                                   01/21/2022

**Reference Numbers**
City Administrative Officer Report: 0220-05534-0001

**Pending in committee**
Energy, Climate Change, and Environmental Justice Committee

**Mover**                        **Second**
                                 JOE BUSCAINO
                                 MARQUEECE HARRIS-DAWSON
JOSE HUIZAR                      NURY MARTINEZ
                                 CURREN D. PRICE, JR.
                                 MONICA RODRIGUEZ


**Action History for Council File 19-0609**

**Date**        **Activity**

01/21/2020 Energy, Climate Change, and Environmental Justice Committee continued item to/for a
            date to be determined.
01/17/2020 Public Works: Sanitation document(s) referred to Energy, Climate Change, and
            Environmental Justice Committee.
01/17/2020 Energy, Climate Change, and Environmental Justice Committee scheduled item for
            committee meeting on January 21, 2020.
01/17/2020 Document(s) submitted by Public Works: Sanitation, as follows:

            Bureau of Sanitation report, dated January 21, 2020, relative to the City's
            Comprehensive Cleaning and Rapid Engagement Program.
12/04/2019 Public Works: Sanitation document(s) referred to Energy, Climate Change, and
            Environmental Justice Committee.
12/03/2019 Energy, Climate Change, and Environmental Justice Committee continued item to/for a
            future date.
12/02/2019 Document(s) submitted by Public Works: Sanitation, as follows:

            Bureau of Sanitation report, dated November 27, 2019, relative to a report back on
            Multiple Energy, Climate Change and Environmental Justice Committee Motions
            regarding livability services' new deployment plan, provision of enhanced services to
            homeless encampments residents and elevated collection and enforcement illegal
            dumping strategies.
11/27/2019 Energy, Climate Change, and Environmental Justice Committee scheduled item for
            committee meeting on December 3, 2019. (Scheduled pursuant to Council action of
            June 28, 2019).
07/09/2019 Council action final.
07/09/2019 Mayor transmitted Council File to City Clerk.

07/05/2019 City Clerk transmitted file to Mayor. Last day for Mayor to act is July 15, 2019.

07/05/2019 Council action final.

07/05/2019 Mayor transmitted Council File to City Clerk.

07/03/2019 City Clerk transmitted file to Mayor. Last day for Mayor to act is July 15, 2019.

07/03/2019 Council adopted item forthwith.

06/28/2019 City Clerk scheduled item for Council on July 3, 2019.

06/28/2019 Council adopted item, as amended, forthwith.

06/28/2019 City Administrative Officer document(s) referred to Council.

06/27/2019 Document(s) submitted by City Administrative Officer, as follows:

> City Administrative Officer report 0220-05534-0001, dated June 27, 2019, relative to the report prepared by the Bureau of Sanitation relative to a new deployment plan addressing livability services, specifically homeless encampment and illegal dumping clean-ups and a report on the funding of proposed overtime expenditures and the potential use of special funds to support the program.

06/25/2019 Energy, Climate Change, and Environmental Justice Committee approved as amended .

06/25/2019 Budget and Finance Committee; Homelessness and Poverty Committee waived consideration of item .

06/25/2019 City Clerk scheduled item for Council on June 28, 2019.

06/21/2019 Energy, Climate Change, and Environmental Justice Committee scheduled item for committee meeting on June 25, 2019.

06/20/2019 Personnel and Animal Welfare Committee waived consideration of item .

06/18/2019 Energy, Climate Change, and Environmental Justice Committee approved as amended .

06/14/2019 Energy, Climate Change, and Environmental Justice Committee scheduled item for committee meeting on June 18, 2019.

06/14/2019 Public Works: Sanitation document(s) referred to Budget and Finance Committee; Energy, Climate Change, and Environmental Justice Committee; Homelessness and Poverty Committee; Personnel and Animal Welfare Committee.

06/14/2019 Document(s) submitted by Public Works: Sanitation, as follows:

> Bureau of Sanitation report, dated June 14, 2019, relative to methodologies for addressing illegal dumping.

06/05/2019 Motion document(s) referred to Energy, Climate Change, and Environmental Justice Committee.

Exhibit 4

FORM GEN. 160 (REV. 6-80)

**CITY OF LOS ANGELES**
**INTER-DEPARTMENTAL CORRESPONDENCE**

**DATE:**   January 21, 2020

**TO:**   Honorable Nury Martinez, Chair
Honorable Paul Koretz, Vice Chair
Honorable Paul Krekorian, Member
Honorable Gil Cedillo, Member
Honorable Mitch O'Farrell, Member
Energy, Climate Change, and Environmental Justice Committee

**FROM:**   Enrique C. Zaldivar, Director and General Manager
LA Sanitation and Environment

**SUBJECT: LA SANITATION AND ENVIRONMENT REPORT BACK ON THE CITY'S COMPREHENSIVE CLEANING AND RAPID ENGAGEMENT PROGRAM (CF#14-1499-S7,14-1499-S8, CF 19-0600-S89,19-0600-S156, 19-0609)**

In July of 2019, the City Council passed a new sanitation deployment plan, which called for the creation of the Comprehensive Cleaning and Rapid Engagement (CARE) program to address long-standing issues in the City's street-level response to homeless encampments, and expanded LA Sanitation and Environment's (LASAN) workforce by adding 47 new hires dedicated to improving public health conditions at encampments. The CARE program officially launched citywide on October 1, 2019 and represented a shift in the City's efforts to address public health and unsheltered homelessness. It also represented a significant expansion of public health and sanitation resources. The goal of the CARE program is to maintain cleaner and healthier public spaces across the City, and to do so while carefully balancing the needs of all Angelenos. Under the CARE program, outreach workers from the Los Angeles Homeless Services Authority (LAHSA) are now embedded with LASAN personnel in the field and Los Angeles Police Department (LAPD) officers are deployed geographically and in close proximity to the teams. The shift to the CARE program represented an important alignment of previously fragmented programs and initiatives and is one of the first City-operated programs of its kind in the nation.

The program encountered challenges in its first months, including communication, coordination, and decision-making in the field. LASAN also heard concerns about the program directly from Council offices. Since then, LASAN and its partners have gained important insights and experience and have made a number of changes and introduced additional tools to better support the program. These changes and additional tools are described in more detail below.

On December 3, 2019, LASAN provided a progress report on the CARE program to the City Council's Energy, Climate Change, and Environmental Justice (ECCEJ) Committee. At that meeting, the Committee expressed a number of concerns about the program and requested LASAN report back in January with its efforts to address the enumerated concerns.

LASAN Report Back to the ECCEJ Committee
January 21, 2020
Page 2 of 4

This report addresses the specific instructions given to LASAN on December 3rd by the Committee. It also responds directly to feedback received from other City Council offices following the launch of CARE in October of 2019.

## VISUAL CLEANLINESS AND PROGRAM ADJUSTMENTS

The sanitation and hygiene component of the CARE program is managed by LASAN's Livability Services Division (LSD). The LSD is also the lead division within LASAN for maintaining the public right of way. This is primarily accomplished through enforcement of Los Angeles Municipal Code (LAMC) 56.11, which governs the storage of private property in public spaces. Based on feedback from the Committee and other Council offices, in particular about the need to more effectively enforce LAMC 56.11, LASAN worked with the Mayor's Office, LAPD, and LAHSA to make important changes to the CARE program.

Beginning on January 21, 2020, the CARE program will fully implement the following program adjustments citywide, which are intended to achieve cleaner public spaces and more passable sidewalks:

- The CARE program will make illegal dumping teams available seven (7) days a week to ensure that trash and debris do not build up over the weekend, within existing resources.
- Both CARE and CARE+ teams will be able to post, authorize, and conduct comprehensive clean-ups with 24-hours advance notice. Previously, only CARE+ teams performed this function. This change will ensure the City's approach is right-sized for the location. CARE teams will be used to conduct comprehensive cleanings at smaller illegal dumping sites or locations with smaller encampments. Larger and chronic illegal dumping sites and locations with larger encampments will continue to be addressed by CARE+ teams. Council offices will play a key role in determining which approach is needed at which site.
- Every CARE and CARE+ team will fully enforce LAMC 56.11 at every location they visit. Compliance means that teams will be down between 6am to 9pm daily, that sidewalks will have at least 36 inches of passable space, and that prohibited items, such as bulky items and biohazards, will be impounded and disposed of according to law and policy.
- LAPD Homeless Outreach and Proactive Engagement (HOPE) officers, which have to date been deployed in a "zone defense" model, will be pre-deployed along with CARE teams at sites with documented histories of escalation or aggressive or confrontational behavior. The LAPD's primary role will remain ensuring the safety of all CARE team members and unhoused Angelenos.
- LASAN and LAPD will conduct operations on City property owned or operated by the Department of Recreation and Parks (RAP), with RAP operational teams no longer needed on site, ensuring greater coverage of parks across the City through interdepartmental coordination.
- LSD staff, CARE team members, including LAHSA outreach workers, and UHRC staff will receive ongoing training on LAMC 56.11 and other relevant laws and City policies.

Additionally, City and agency leadership will support these changes in the following manner:

LASAN Report Back to the ECCEJ Committee
January 21, 2020
Page 3 of 4

- The Mayor's Chief of Homelessness Operations and Street Strategies is now directing the City's Unified Homelessness Response Center (UHRC); is coordinating citywide street strategies and initiatives, including the CARE program; and is working to hold City departments and LAHSA accountable for implementing adjustments to the CARE program and enforcing the law, as well as carrying out Mayor and Council priorities. Because the CARE program is an interagency effort, it requires leadership from someone other than a department general manager. This person must be able to direct and oversee program operations and be in a position to hold general managers, department staff, and LAHSA accountable. The Mayor's Office is uniquely positioned to hold such a leadership position.
- LASAN has reintegrated its Community Services Group (CSG) into the CARE scheduling process to ensure Council offices' priorities are reflected in the deployment of CARE and CARE+ teams. Representatives from CSG now serve as direct liaisons between Council offices, LASAN, and the UHRC. With the reintegration of CSG, Council offices will have complete control over which locations are visited by their CARE teams, and how frequently these sites are visited. Council offices will also control the scheduling for the vast majority of CARE+ operations and illegal dumping collection.
- The City Attorney's office has provided all CARE teams with comprehensive additional training on LAMC 56.11 and other relevant laws and City regulations. This will help to ensure that LASAN personnel understand how to fully enforce the law and LAHSA outreach workers understand how they can help educate unsheltered residents about how to comply with the law.
- The Mayor's Office and departmental leadership have made it clear to all CARE teams that the final determination in the field about what materials will be impounded, what will be stored, and what will be disposed of shall be made by Environmental Compliance Inspectors. Accordingly, LSD will maintain rigorous oversight and supervision of all CARE field operations.
- The Mayor's Office hired a new UHRC Regional Coordinator, who will be providing additional oversight of field activities, and who will embed with CARE teams to ensure their operations meet the standards of the program and Mayor and Council expectations.

## PROGRAM FUNDING

For reference, here is a historical look at funding that the City has provided LASAN for its operations:

|  | 2014-15 Adopted | 2015-16 Adopted | 2016-17 Adopted | 2017-18 Adopted | 2018-19 Adopted | 2019-20 Adopted |
|---|---|---|---|---|---|---|
| Total Funding | $ 3,000,000 | $ 9,464,476 | $ 10,607,067 | $ 32,686,810 | $ 30,336,036 | $ 38,698,214 |

LASAN Report Back to the ECCEJ Committee
January 21, 2020
Page 4 of 4

## PROGRAM JUSTIFICATION

The Committee instructed LASAN to provide justification for continuing the CARE program. Like many new programs, the CARE program encountered challenges with implementation as LASAN moved quickly to fill positions and rapidly scale up operations, and embed other agencies in its work.

Since October 1st, the CARE program has doubled the number of cleanup operations performed by the City each month, from an average of 800 operations monthly in FY 2018-19, to now more than 1,600 operations monthly. The CARE mobile hygiene units also provide hundreds of showers each month to individuals in need of access to basic hygiene infrastructure. LASAN is optimistic that the changes outlined above will help ensure there is less trash in the public right of way and cleaner public spaces.

The primary role of LASAN in the CARE program is to improve the cleanliness of City streets and the public right of way while its partners, at LAHSA and across the City and County, work diligently to end the homelessness crisis. The programmatic adjustments described above will result in a stronger and more focused approach. This clearer approach toward cleanliness, with flexibility, will allow the City to respond to the complex challenges of unsheltered homelessness while also being responsive to the needs of our housed neighbors. LASAN believes the CARE program, with the changes described above, provides the clearest path to clean and healthy conditions on our streets, and looks forward to working closely with the Committee to continue improving the program.

Thank you in advance for your continued support of LASAN and the CARE program. If you have any questions or would like to discuss any of these items further, please feel free to contact me or Jose P. Garcia, Assistant Director, at (213) 485-2210.

cc:     Members of the City Council
        Ana Guerrero, Chief of Staff, Mayor's Office
        Matt Szabo, Deputy Chief of Staff, Mayor's Office
        Barbara Romero, Deputy Mayor, City Services
        Miguel Sangalang, Deputy Mayor, Budget and Innovation
        Christina Miller, Deputy Mayor, City Homelessness Initiatives
        Greg Good, Chief of Legislative and External Affairs, Mayor's Office
        Sharon Tso, Chief Legislative Analyst
        Richard Llewellyn, Jr., Chief Administrative Officer
        Kevin James, President, Board of Public Works
        M. Teresa Villegas, Commissioner, Board of Public Works
        LASAN Executive Team

Exhibit 5

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Office of the City Clerk, City of Los Angeles

This report was generated by the Council File Management System on 02/26/2020
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Council File Number**
19-0609

**Title**
Illegal Dumping / Backlog / Homelessness Strategies / Clean Streets LA / HOPE

**Last Change Date**                              **Expiration Date**
01/21/2020                                        01/21/2022

**Reference Numbers**
City Administrative Officer Report: 0220-05534-0001

**Pending in committee**
Energy, Climate Change, and Environmental Justice Committee

**Mover**                    **Second**
                             JOE BUSCAINO
                             MARQUEECE HARRIS-DAWSON
JOSE HUIZAR                  NURY MARTINEZ
                             CURREN D. PRICE, JR.
                             MONICA RODRIGUEZ

**Action History for Council File 19-0609**

**Date**        **Activity**

01/21/2020  Energy, Climate Change, and Environmental Justice Committee continued item to/for a date to be determined.

01/17/2020  Public Works: Sanitation document(s) referred to Energy, Climate Change, and Environmental Justice Committee.

01/17/2020  Energy, Climate Change, and Environmental Justice Committee scheduled item for committee meeting on January 21, 2020.

01/17/2020  Document(s) submitted by Public Works: Sanitation, as follows:

Bureau of Sanitation report, dated January 21, 2020, relative to the City's Comprehensive Cleaning and Rapid Engagement Program.

12/04/2019  Public Works: Sanitation document(s) referred to Energy, Climate Change, and Environmental Justice Committee.

12/03/2019  Energy, Climate Change, and Environmental Justice Committee continued item to/for a future date.

12/02/2019  Document(s) submitted by Public Works: Sanitation, as follows:

Bureau of Sanitation report, dated November 27, 2019, relative to a report back on Multiple Energy, Climate Change and Environmental Justice Committee Motions regarding livability services' new deployment plan, provision of enhanced services to homeless encampments residents and elevated collection and enforcement illegal dumping strategies.

11/27/2019  Energy, Climate Change, and Environmental Justice Committee scheduled item for committee meeting on December 3, 2019. (Scheduled pursuant to Council action of June 28, 2019).

07/09/2019  Council action final.

07/09/2019  Mayor transmitted Council File to City Clerk.

Wednesday, February 26, 2020                                                                 Page 1
of 2

Exhibit 6

07/05/2019 City Clerk transmitted file to Mayor. Last day for Mayor to act is July 15, 2019.

07/05/2019 Council action final.

07/05/2019 Mayor transmitted Council File to City Clerk.

07/03/2019 City Clerk transmitted file to Mayor. Last day for Mayor to act is July 15, 2019.

07/03/2019 Council adopted item forthwith.

06/28/2019 City Clerk scheduled item for Council on July 3, 2019.

06/28/2019 Council adopted item, as amended, forthwith.

06/28/2019 City Administrative Officer document(s) referred to Council.

06/27/2019 Document(s) submitted by City Administrative Officer, as follows:

> City Administrative Officer report 0220-05534-0001, dated June 27, 2019, relative to the report prepared by the Bureau of Sanitation relative to a new deployment plan addressing livability services, specifically homeless encampment and illegal dumping clean-ups and a report on the funding of proposed overtime expenditures and the potential use of special funds to support the program.

06/25/2019 Energy, Climate Change, and Environmental Justice Committee approved as amended .

06/25/2019 Budget and Finance Committee; Homelessness and Poverty Committee waived consideration of item .

06/25/2019 City Clerk scheduled item for Council on June 28, 2019.

06/21/2019 Energy, Climate Change, and Environmental Justice Committee scheduled item for committee meeting on June 25, 2019.

06/20/2019 Personnel and Animal Welfare Committee waived consideration of item .

06/18/2019 Energy, Climate Change, and Environmental Justice Committee approved as amended .

06/14/2019 Energy, Climate Change, and Environmental Justice Committee scheduled item for committee meeting on June 18, 2019.

06/14/2019 Public Works: Sanitation document(s) referred to Budget and Finance Committee; Energy, Climate Change, and Environmental Justice Committee; Homelessness and Poverty Committee; Personnel and Animal Welfare Committee.

06/14/2019 Document(s) submitted by Public Works: Sanitation, as follows:

> Bureau of Sanitation report, dated June 14, 2019, relative to methodologies for addressing illegal dumping.

06/05/2019 Motion document(s) referred to Energy, Climate Change, and Environmental Justice Committee.

How can we help? (/how-can-we-help)     About Mayor Garcetti (/about)     Meet the Team (/our-team)

Our Work (/OurWork)     Press Room (/PressRoom)

# MAYOR GARCETTI ANNOUNCES NEW PLAN TO DEPLOY NEW SANITATION TEAMS, DELIVER SERVICES TO HOMELESS ENCAMPMENTS

JUNE 19, 2019

**LOS ANGELES** — Mayor Garcetti today outlined a new strategy to overhaul the City's approach to street cleanups, deliver services to homeless Angelenos living in encampments, and address illegal dumping.

The City will no longer rely solely on a case-by-case, complaint-driven model for clean ups — instead creating neighborhood-based comprehensive cleaning and rapid engagement (CARE) teams that will use data-driven tools to provide public health services to encampments, identify areas of highest need, and ensure that the hardest-hit areas receive regularly scheduled cleanups and hygiene services.

Each CARE team will be assigned to a specific location, enabling the City to deploy clean up services more efficiently, and help sanitation workers build stronger relationships with homeless Angelenos in desperate need. The teams will receive specialized mental health training and deliver public health resources — including daily trash collection and mobile restrooms — to homeless communities.

"There is no one-size-fits-all approach to solving homelessness. This humanitarian emergency demands strategies that are nimble, targeted, and sensitive to the needs of our homeless neighbors and everyone who calls Los Angeles home," said Mayor Eric Garcetti. "Our new CARE teams will help improve public health and strengthen the public good by providing a services-led approach. We want to do more to connect homeless Angelenos with the resources they need, and bring added energy to the

work of keeping our neighborhoods clean."

Pending passage by the City Council, the new plan will scale up public health services, crack down on illegal dumping, and clean up L.A.'s streets by boosting the number of sanitation teams from 20 to 30, and investing more than $6 million in additional funds in better equipment and supplies.

In addition to a citywide team and a team working on the L.A. River, each Council District will be assigned a dedicated CARE team.

The City will also be piloting a new mobile hygiene station, equipped with showers and restrooms, and is developing a program to train and hire homeless Angelenos to support cleanup efforts in and around encampments.

The new Sanitation deployment plan proposes four new regional facilities for a total of five deployment centers across the City: Washington Yard, Harbor Yard, East Valley District, San Fernando Road Yard, and Lopez Canyon Yard. Daily deployment from these yards would reduce response and drive times for the new teams; help tailor the work of each team to the needs of their assigned neighborhood to ensure unsheltered Angelenos receive services from the same crew each day; and result in more routine services to areas impacted by illegal dumping.

"Providing services to protect public health is at the core of LASAN's mission," said Enrique  Zaldivar, General Manager of the Bureau of Sanitation. "This deployment plan does that and also further engenders critical trust with the homeless community."

The plan will be overseen by the newly created Mayor's Public Health Task Force, led by senior members of the Mayor's Office of City Services and the Mayor's Office of City Homelessness Initiatives.

The $6.3 million investment -- in addition to $26.5 million in existing funding -- will create 47 new sanitation positions, purchase new equipment, and fund overtime pay, which is subject to review by the City Council. If passed, the program would launch in the fall of this year.

Email*          Zip          **GET UPDATES**

**Mayor Eric Garcetti**

*City of Los Angeles*

📍 200 N. Spring St.,
   Los Angeles, CA 90012
📞 +1-213-978-1028

311 (https://myla311.lacity.org/)

City Data (https://data.lacity.org)

City Directory
(https://www.lacity.org/your-
government/government-
information/city-directory)

✉ mayor.helpdesk@lacity.org    Neighborhood Info
                               (http://neighborhoodinfo.lacity.org/)

Search              © 2019. All rights reserved.   Disclaimer (/terms) | Privacy Policy
                                                              (/privacy)