Shayla Myers (SBN 264054)
Mallory Andrews (SBN 312209)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 South Broadway
Los Angeles, CA 90003
Telephone: (213) 640-3983
Email:   smyers@lafla.org
         mbandrews@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora, Ali El-Bey, James Haugabrook, Pete Diocson Jr., Marquis Ashley, and Ktown for All*

*Additional Attorneys on Next Page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANET GARCIA, GLADYS ZEPEDA, MIRIAM ZAMORA, ALI EL-BEY, PETER DIOCSON JR, MARQUIS ASHLEY, JAMES HAUGABROOK, individuals, KTOWN FOR ALL, an unincorporated association; ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING, an unincorporated association,<br><br>  Plaintiffs,<br><br>  v.<br><br>CITY OF LOS ANGELES, a municipal entity; DOES 1-7,<br><br>  Defendants. | CASE NO. 2:19-cv-06182-DSF-PLA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**<br><br>Complaint Filed Date: July 18, 2019<br><br>Judge:         Hon. Dale S. Fischer<br>Hearing Date:  April 6, 2020<br>Time:          1:30 p.m.<br>Courtroom:     7D |

Catherine Sweetser (SBN 271142)
Kristina Harootun (SBN 308718)
SCHONBRUN SEPLOW HARRIS
& HOFFMAN LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731
Email:  csweetser@sshhlaw.com
        kharootun@sshhlaw.com

*Attorneys for Plaintiffs*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680 8400
Email:  benjamin.herbert@kirkland.com
        william.smith@kirkland.com

Michael Onufer (SBN: 300903)
KIRKLAND & ELLIS LLP
2049 Century Park East,
Los Angeles, CA 90067
Telephone: (310) 552-4200
Email:  michael.onufer@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Janet Garcia, Peter Diocson Jr., Marquis Ashley, Ali El-Bey, and Association for Responsible and Equitable Public Spending*

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. PLAINTIFFS HAVE STANDING TO SEEK A PRELIMINARY INJUNCTION .........................................................................................2

III. PLAINTIFFS HAVE DEMONSTRATED THAT A PRELIMINARY INJUNCTION SHOULD BE ORDERED ..........................................4

    A. Plaintiffs Are Likely To Succeed On Their Claim That The Ordinance Violates The Fourth Amendment ...............................................4

    B. The Bulky Item Provision Fails To Provide Even A Minimal Amount Of Constitutionally-Mandated Due Process ........................................6

    C. Plaintiffs Have Shown They Will Be Irreparably Harmed By The Continued Enforcement Of The Bulky Item Provision ..............................10

    D. The Narrow Injunction Sought Prevents Continued Constitutional Violations But Does Not Prevent the City From Addressing Immediate Health And Safety Issues And Other Community Concerns ......................10

IV. CONCLUSION ....................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bell v. Burson*,
   402 U.S. 535 (1971)..................................................................................8, 9

*City and Cnty of San Francisco v. U.S. Citizenship and Immigration Services*,
   944 F.3d 773 (9th Cir. 2019)......................................................................2, 3

*City of Los Angeles v. Patel*,
   135 S.Ct. 2443 (2015).....................................................................................4

*East Bay Sanctuary Covenant v. Trump*,
   349 F. Supp. 3d 838 (N.D. Cal. 2018)........................................................3, 4

*East Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020)....................................................................3, 4

*El Rescate Legal Servs., Inc. v. Exec. Office of Imm. Review*,
   959 F.2d 742 (9th Cir. 1991).........................................................................4

*Fuentes v. Shevin*,
   407 U.S. 67 (1972)......................................................................................7, 8

*Gluck v. Los Angeles*,
   93 Cal.App.3d 121 (1979)..............................................................................9

*Goldberg v. Kelly*,
   397 U.S. 254 (1970).......................................................................................9

*Harris v. Bd. of Supervisors*,
   366 F.3d 754 (9th Cir. 2004).........................................................................2

*Kash Enters., Inv. v. City of Los Angeles*,
   19 Cal.3d 294 (1977) ....................................................................................7

*Lavan v. City of Los Angeles*,
   693 F.3d 1022 (9th Cir. 2012)...................................................................7, 8

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982).......................................................................................7

*M.R. v. Dreyfus*,
  697 F.3d 706 (9th Cir. 2012) ..................................................................................3

*MAK Investment Grp., LLC v. City of Glendale*,
  897 F.3d 1303 (10th Cir. 2018) ............................................................................7

*Mathews v. Eldridge*,
  424 U.S. 319 (1975) ..............................................................................................7

*Menotti v. City of Seattle*,
  409 F.3d 1113 (9th Cir. 2005) ..............................................................................6

*Mich. Dep't of State Police v. Sitz*,
  496 U.S. 444 (1990) ..............................................................................................5

*Miranda v. City of Cornelius*,
  429 F.3d 858 (9th Cir. 2005) ........................................................................4, 5, 6

*Nat'l Tresury Emps. Union v. Von Raab*,
  489 U.S. 656 (1989) ..............................................................................................5

*New Jersey v. T.L.O.*,
  469 U.S. 325 (1985) ..............................................................................................5

*North Georgia Finishing, Inc. v. Di-Chem, Inc.*,
  419 U.S. 601 (1975) ..............................................................................................7

*Puente v. Arpaio*,
  821 F.3d 1098 (2016) ............................................................................................1

*Recchia v. City of Los Angeles Dept. of Animal Services*,
  889 F.3d 553 (9th Cir. 2018) ................................................................................6

*Rise v. Oregon*,
  59 F.3d 1556 (1995) ..............................................................................................8

*Sandoval v. Cnty of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) .............................................................................4, 5

*Santiago v. City of Los Angeles*,
  2016 WL 7176694 (C.D. Cal. Nov. 17, 2016) ......................................................9

*Small Engine Shop, Inc. v. Cascio*,
  878 F.2d 883 (5th Cir. 1989) ................................................................................7

*Stanley v. Ill.*,
   405 U.S. 645 (1972)..................................................................................................5

*Stypmann v. City and Cnty of San Francisco*,
   557 F.2d 1338 (9th Cir. 1977).....................................................................................9

*Torres v. Puerto Rico*,
   442 U.S. 465 (1979)..................................................................................................4

*United Sates v. Alabama*,
   691 F.3d 1269 (11th Cir.2012)..................................................................................11

*United States v. Martinez-Fuentes*,
   428 U.S. 543 (1976)..................................................................................................5

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013)....................................................................................3

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) (per curiam) .............................................................3

*Williams v. Mukasey*,
   531 F.3d 1040 (9th Cir. 2008)....................................................................................9

*Zimmerman v. City of Oakland,*
   255 F.3d 734 (9th Cir. 2001).....................................................................................9

**Statutes**

Ca. Civ. Code Section 2080 ..............................................................................................12

Los Angeles Muncipal Code Section 56.11..............................................................*passim*

**Other Authorities**

Centers for Disease Control and Prevention, Interim Guidance for
   Responding to Coronavirus Disease 2019 among People Experiencing
   Unsheltered Homelessness, *https://www.cdc.gov/coronavirus/2019-
   ncov/community/homeless-shelters/unsheltered-homelessness.html* .....................11

## I. INTRODUCTION

Plaintiffs move for a preliminary injunction to stop the enforcement of unconstitutional provisions of the municipal code, which, if the City continues to enforce it, will cause irreparable harm to Plaintiffs and other unhoused residents throughout Los Angeles. In opposition, the City makes largely the same arguments the Court has already rejected, but also attempts to persuade the Court to reverse course by adding hundreds of pages of photos and declarations into the record. The evidence is irrelevant to Plaintiffs' facial challenge, and it serves little purpose other than to blame homeless people for myriad problems, to justify depriving them of their constitutional rights as the only solution. For example, the City spends pages of its opposition and submits hundreds of pages of declarations and photos to convince the Court that unhoused people have "appropriated" the Greenway in Harbor City. *See* Def.'s Opp. to Prelim. Injunction ("Opp.") at 13. Not only does this evidence have no bearing on why the Bulky Item Provision is facially unconstitutional,[1] but it also ignores the realities that led Plaintiffs and others to find shelter in tents along the Greenway.[2]

The problems the City contends exist at the Greenway demonstrate only that complicated issues related to the management of public space arise when tens of thousands of people have no other option but to sleep on the sidewalks. But the City's attempt to "balance" the needs of the community, *see* LAMC 56.11(1), cannot come at the expense of unhoused people's constitutional rights. That is what the Bulky Item

---

[1] A full factual record is not required where, as here, Plaintiffs move to enjoin a facially invalid ordinance, and *Puente v. Arpaio* is not to the contrary. 821 F.3d 1098, 1105 (2016) (denying a preliminary injunction on the facial challenge and declining to issue a preliminary injunction for the as-applied challenge because the record was not developed). And it is disingenuous for the City to argue that the record has not been developed, given its ongoing refusal to begin discovery, even though the case was filed more than eight months ago. *See* Declaration of Shayla Myers ("Myers Dec.") ¶ 14.

[2] The encampment at Lomita and McCoy developed after the County removed individuals from a nearby open space and they had no other place to go. *See* Declaration of Pete Diocson Jr. (Dkt 38-5) ("Diocson Dec.") ¶ 4. And they still have no place to go. Based on the last count, there are only 47 shelter beds in San Pedro and Wilmington (there are no beds in Harbor City). There are 1,443 homeless people in these three communities. Myers Dec. ¶ 10.

1
**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

Provision does, by allowing the City to immediately seize and destroy homeless individuals' property based on size alone without affording them the Constitutional protections otherwise afforded to people and their belongings. A preliminary injunction preventing the City from enforcing an unconstitutional ordinance is necessary to prevent the continued violation of Plaintiffs' rights.[3]

## II. PLAINTIFFS HAVE STANDING TO SEEK A PRELIMINARY INJUNCTION

The City's first argument, that Plaintiffs lack standing, fails for several reasons. First, Plaintiffs "need only establish a risk or threat of injury to satisfy the actual injury requirement," which the City does not address. *City and Cnty of San Francisco v. U.S. Citizenship and Immigration Serv.*, 944 F.3d 773, 786–87 (9th Cir. 2019) (quoting *Harris v. Bd. of Supervisors*, 366 F.3d 754, 762 (9th Cir. 2004)). Plaintiffs testify that they currently have items of a similar size to those the City previously seized because it deemed them "bulky items." Dioscon Dec. ¶ 17 & Ex. C; Declaration of Marquis Ashley (Dkt. 38-2) ("Ashley Dec.") ¶ 17 & Ex. B. The City does not contest, and in fact, confirms that it enforces the provision of LAMC 56.11 that allows it to seize and immediately destroy these "bulky items." *See e.g.,* Declaration of Howard Wong (Wong Dec.) ¶¶ 43, 46. The City also does not address, let alone dispute, Plaintiffs' evidence that they have items now that sanitation officers would consider bulky. Moreover, there is no dispute that the City enforces the Bulky Item Provision in the areas where Dioscon and Ashley were present. As such, both Dioscon and Ashley have demonstrated that they have been subject to and are at imminent risk of future enforcement of the City's unconstitutional ordinance, affording standing. *E. Bay*

---

[3] A narrow injunction restricting seizures based on size alone would not prohibit the City from enforcing provisions of LAMC 56.11 related to ensuring passable sidewalks or ensuring public safety. *See infra* page 10. Nor will it prevent the City from providing routine municipal trash services or other services that would help address the issues raised by Defendants.

*Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 863–64 (N.D. Cal. 2018), aff'd 950 F.3d 1242 (9th Cir. 2020).

Second, the City's argument that Dioscon and Ashley lack standing because they "have not shown an unconstitutional application of the Bulky Item provision as applied to them," Opp. at 7, conflates the merits of their claim with standing to pursue it. *See E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1267 (9th Cir. 2020) (warning against collapsing the merits argument into a standing inquiry because "a plaintiff can have standing despite losing on the merits"). Plaintiffs have shown a concrete and particularized injury, as well as the imminent threat of one, and alleged that the injury was caused by the facially-invalid ordinance. This is more than sufficient to establish Article III standing. But even if they were required to make a further showing about the merits of their claims, both Dioscon and Ashley offer undisputed testimony that City employees seized their belongings because they were bulky items. *See* Diocscon Dec. ¶ 12; Ashley Dec. ¶ 11. The fact that the City presented evidence it claims shows the items were *also* destroyed because they were "contaminated"[4] is beside the point—it does not eliminate their standing on the question of whether they were previously injured by the facially unconstitutional use of the Bulky Item Provision. *See M.R. v. Dreyfus*, 697 F.3d 706, 730 (9th Cir. 2012) (A challenged ordinance need not be the "exclusive cause" of the harm as long as it "exacerbates the risk" that the constitutional violation will occur).

Ktown for All ("KFA") also has direct organizational standing to pursue prospective relief. All that is required at a preliminary injunction phase is an "organizational affirmation[] of harm." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,

---

[4] The only evidence the items the City seized as "bulky" were thrown away for another reason is a checklist notation, which is hearsay, *see* Plaintiffs' Objections to Defendant's Evidence, and in any event, not conclusive. It is insufficient to defeat standing: "[a]t this very preliminary stage, plaintiffs may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their [preliminary-injunction] motion to meet their burden." *City and Cnty of San Francisco* 944 F.3d at 787 (quoting *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam).

1018, 1029 (9th Cir. 2013) (granting preliminary injunction and holding that future diversion of resources, and not specific amounts past resources diverted, is the standard for prospective relief); *E. Bay Sanctuary Covenant*, 950 F.3d at 1264.  No additional analysis is necessary beyond what the Court did when it denied the City's Motion to Dismiss, based on the same argument.  *See* Dkt. 37 at 6-11; *see also El Rescate Legal Servs., Inc. v. Exec. Office of Imm. Review,* 959 F.2d 742, 748 (9th Cir. 1991).  Under the proper standard, Ms. Nguyen provided sufficient evidence of standing.  *See* Declaration of Phuong Nguyen (Dkt. 38-6) ("Nguyen Dec.") ¶¶ 6-7, 10-14 (explaining impaired contacts with members and replacement of items).

### III. PLAINTIFFS HAVE DEMONSTRATED THAT A PRELIMINARY INJUNCTION SHOULD BE ORDERED

#### A. Plaintiffs Are Likely To Succeed On Their Claim That The Ordinance Violates The Fourth Amendment

It is well-established that "a seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions."  *Sandoval v. Cnty of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018).  The City concedes—as it must—that LAMC 56.11(3)(i) provides for neither a warrant nor a "specifically established and well-delineated exception." *Sandoval*, 912 F.3d at 515.  This is fatal to the Bulky Item Provision and should end the inquiry.  *See Torres v. Puerto Rico*, 442 U.S. 465, 466, 471 (1979); *City of Los Angeles v. Patel,* 135 S.Ct. 2443, 2450 (2015); *see also* 12(b)(6) Order (Dkt. 26) at 7 (the "Order").  Instead, the City asks the Court to adopt an entirely new standard under the Fourth Amendment that allows the City to seize and destroy people's belongings whenever, "on a macro level", the City decides that doing so is generally in the public interest—in this case, others' use of public space.[5]  This miscomprehends the

---

[5] While the Bulky Item Provision may regulate conduct, *see* Opp. at 10, the ordinance provides for the seizure and destruction of their belongings, which implicates Plaintiffs' property interests and the commensurate constitutional protections.  As such, the seizure and destruction of that property must be justified consistent with the Fourth Amendment and the City's role as caretaker.  *See Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005); *Sandoval*, 912 F.3d at 515; *see also* Order at 7, n. 6.

4

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

United States Constitution and the Bill of Rights, the purpose of which is to protect people's individual interests in the face of countervailing public interests. *See Stanley v. Ill.*, 405 U.S. 645, 656 (1972). If the standard were a "macro-level" balancing test, the individual rights afforded by the Constitution would be meaningless.

The only support the City offers for this standard is a line of cases in which the Court has allowed a limited exception to the individualized suspicion normally required for a warrantless search. Specifically, the City relies on *United States v. Martinez-Fuentes*, 428 U.S. 543 (1976), a criminal case in which the Supreme Court held the Fourth Amendment did not require individualized suspicion to stop vehicles at an interior border checkpoint. In allowing the search, the Court qualified that it was doing so only in the very specific context, and only with significant procedural safeguards in place. *Id.* at 556-57. Far from creating a wholesale new standard under the Fourth Amendment based on a general "macro-level" public interest, the Court has allowed exceptions to the individualized suspicion required for a search in only a very limited number of other circumstances.[6] The Court has not expanded the reasoning outside of the search context, let alone extended it to apply to property seizures that are conducted outside the criminal context, and instead, pursuant to the City's caretaking function.[7]

Nor does *Martinez-Fuentes* support the City's contention, already made in its Motion to Dismiss and rejected by this Court, that the proper standard for seizures is a generalized "reasonableness" standard, unrelated to the warrant requirement or "specifically established and well-delineated exceptions to the warrant requirement." *Sandoval*, 912 F.3d at 515. The City continues to ignore binding precedent that has

---

[6] The other cases cited by the City similarly relate to the individual suspicion required to conduct searches and have no application here. *See New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) (search of school children's bags); *Nat'l Tresury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989) (United States Customs Services, when acting as employer, could drug test employees without individualized suspicion); *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 449-50 (1990) (DUI checkpoints).

[7] The City's reliance on cases arising in the search context is especially irrelevant since the City has argued already in this case, and on which this Court has already ruled, the "probable cause" standard is not applicable to Plaintiffs' claims. *See* Def's MTD at 8, n. 8; Order at 7, n. 6 (citing *Miranda,* 429 F.3d at 863).

5
**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

arisen in similar contexts to those presented here and that has unequivocally held that seizures of property, without a warrant or an exception to the warrant, are *per se* unreasonable. *See e.g., Recchia v. City of Los Angeles Dept. of Animal Services,* 889 F.3d 553 (9th Cir. 2018); *Miranda*, 429 F.3d at 862.

Indeed, in *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005), the Ninth Circuit flatly rejected this exact argument. There, the Seattle Police Department seized a sign from a protestor who then sued, alleging the police department violated her Fourth Amendment rights. In response, the City of Seattle argued, as the City does here, that although the warrantless seizure was not justified by any well-established exception to the warrant requirement, the state could still seize property subject to a general "reasonableness" standard. The Ninth Circuit "decline[d] to establish a general exception to the Fourth Amendment's warrant requirement for conduct that, absent special needs consistent with the Supreme Court's precedents, is asserted to be 'reasonable.'" *Id.* at 1154. The Court reasoned that "[i]t has long and consistently been the law that exceptions to the warrant requirement preceding searches and seizures are for defined categorical circumstances." *Id.* And likewise here, the City cannot show that any of these circumstances apply to the seizure and destruction of bulky items, Plaintiffs have established the likelihood of success on the merits of their Fourth Amendment claim.[8]

### B. The Bulky Item Provision Fails To Provide Even A Minimal Amount Of Constitutionally-Mandated Due Process

The City does not dispute that the "Ordinance permits the City to remove and permanently destroy Bulky Items without any procedural safeguards whatever."[9] Order

---

[8] The City argues that the seizure and destruction of property are two different seizures and must be analyzed separately. The City has not articulated a constitutionally permissible justification for either seizing *or* destroying items based solely on their size.
[9] The City again tries to argue that the passage of the Bulky Item ordinance is constitutionally-sufficient notice, but the mere existence of a legislative enactment is not the type of notice required by the 14th Amendment. *See MAK Investment Grp., LLC v.*

6
**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

at 15 (citing *Kash Enters., Inv. v. City of Los Angeles*, 19 Cal.3d 294, 307 (1977)). That is sufficient for Plaintiffs to demonstrate a likelihood of success on the merits of their facial challenge to the ordinance. *Id.* Instead, the City attempts to argue around the lack of due process by arguing that the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1975) weigh against due process. But these factors go to the amount of process that is due, not whether the City must provide any process at all.

Under the first *Mathews* factor, the relative value of the property seized is not relevant to the question of whether a person is entitled to due process before they are deprived of that property. As the Supreme Court has explained, "[n]o doubt, there may be many gradations in the 'importance' or 'necessity' of various consumer goods," but "if the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of 'property' generally. It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own lights, are 'necessary.'" *Fuentes v. Shevin*, 407 U.S. 67, 89–90 (1972); *see also N. Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608 (1975) ("We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause."). In other words, due process is required whether the item is "a car or a cart," *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012), or as relevant here, whether the item is larger than 60 gallons by volume.[10]

---

*City of Glendale*, 897 F.3d 1303 1316 (10th Cir. 2018) (explaining that a plaintiff is only required to have knowledge of the law in instances, unlike here, where the law is self-executing and "provides a certain amount of time for a person to take action in order to protect his or her property rights"); *see also Small Engine Shop, Inc. v. Cascio,* 878 F.2d 883, 891 (5th Cir. 1989); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982). Moreover, due process requires an opportunity to contest the deprivation, not simply notice that a deprivation could occur. *Id.*

[10] The City also attempts to distinguish between items that are attended and unattended, but that too is not relevant to the question of whether a person is entitled to due process before that person is permanently deprived of his or her belongings. *See Lavan* 693 F.3d at 1024. Leaving an item unattended does not mean a person loses their property interest in that item, nor is the owner's interest affected any less when the City summarily throws that item away.

Next, the City argues a person is not entitled to a hearing because the only determination it contends would be made at that hearing is whether the item fits in a 60 gallon container and is located on a public right of way. This is simply not true: there are other questions embedded in LAMC 56.11(2)(c) and (3)(i), such as whether a bike or wheelchair is operational and whether an item is a structure. All of these questions—encompassed in the question of whether an item meets the definition of "bulky"—is precisely the types of determinations for which a hearing is required. *See Bell v. Burson,* 402 U.S. 535, 541 (1971). And even if the answer may seem obvious to the City, that is wholly irrelevant to the question of whether due process is required: "The issues decisive of the ultimate right to continued possession, of course, may be quite simple. The simplicity of the issues might be relevant to the formality or scheduling of a prior hearing. But it certainly cannot undercut the right to a prior hearing of some kind." *Fuentes,* 407 U.S. at 87 (1972) (internal citation omitted) (holding that two replevin statutes were facially unconstitutional because they failed to provide adequate due process); *see also Bell*, 402 U.S. at 540.[11]

In fact, the City's own arguments and evidence belie its assertion that there is "little utility" in holding a hearing and instead, demonstrates why there is a strong likelihood of erroneous deprivation. The City routinely seizes and destroys items as bulky, even though they are in fact less than 60 gallons by volume. For example, the City consistently asserts that a pallet is a "bulky item," and continues to seize and destroy these items as bulky. *See* Declaration of Nicolas Emmons, Dkt. 38-4, Exh. 1. But average pallets have a volume of less than 60 gallons. *See* Declaration of Albert Flowers at ¶ 12. The same is true for cushions and mattresses—a 2" thick, queen-sized

---

[11] The one case cited by the City does not support its position. In *Rise v. Oregon*, 59 F.3d 1556 (1995), the Court held that "the extraction of blood from an individual in a simple, medically acceptable manner" as condition of sentencing after the conviction for a predicate offense "does not implicate the Due Process Clause." 59 F.3d at 1562-63. The City cannot argue after *Lavan* and its progeny, that the seizure of homeless people's belongings does not implicate the Due Process Clause. *See Lavan,* 693 F.3d at 1033.

mattress like the one taken on February 24, 2020 likely has a volume of much less than 60 gallons. The City argues it is "clear from photos," Opp. at 21, that various items taken and destroyed are bulky. This is not the standard for due process, and the City's own evidence and arguments demonstrate that the risk of erroneous deprivation is significant.[12]

The City also argues that it need not provide any due process because the administrative and fiscal burden on the City would be too great. While the expense of a hearing may be a consideration in determining the *type* of process that is due, the expense "does not justify denying a hearing meeting the ordinary standards of due process." *Goldberg v. Kelly*, 397 U.S., at 261; *see also Bell* 402 U.S. at 540–41; *Stypmann v. City and Cnty of San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977) (state interest related to administrative burden and expense is insufficient to deny hearing).[13] All of the objections raised by the City go to the question of how much process the City needs to provide, but that question is not before the Court. *See Bell*, 402 U.S. 542. LAMC 56.11(3)(i) purports to allow the City to seize and destroy property without any due process, which the Constitution does not permit. Plaintiffs have demonstrated they are likely to succeed on the merits of their due process claim.

---

[12] Contrary to the City's suggestion, Opp. at 21, the seizure and destruction of an item that is not "bulky" does not eliminate a due process claim, where, as here, the deprivation of property is predictable, due process could have prevented the deprivation, and the seizure, while incorrect, was authorized. *See Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir. 2001); *see also Santiago v. City of Los Angeles*, 2016 WL 7176694, at *9 (C.D. Cal. Nov. 17, 2016).

[13] The City also suggests that having a bulky item constitutes a "continuing violation" but the City fails to elaborate and the cited caselaw does not support nor explain this position. Indeed, *Gluck v. Los Angeles*, 93 Cal.App.3d 121 (1979) actually holds the opposite. The language quoted by the City appears in the dissent. *Id*. at 135 (striking down a county ordinance that allowed the seizure of news racks, on the ground that ordinance that allowed newspaper racks to be seized afforded too little process, including allowing the racks to be seized prior to a hearing). Nor does *Williams v. Mukasey*, 531 F.3d 1040 (9th Cir. 2008) support the City's position—the extensive quotation attributed to it does not appear in the case.

### C. Plaintiffs Have Shown They Will Be Irreparably Harmed By The Continued Enforcement Of The Bulky Item Provision

The City first argues that Plaintiffs fail to establish that the City engages in a widespread or persistent pattern of destroying Bulky Items without notice, but "destroying Bulky Items without notice" is not what is at issue in this case or in this motion. Plaintiffs seek to enjoin the City from enforcing an unconstitutional provision. There is no debate that the City continues to enforce LAMC 56.11(3)(i) by seizing and destroying people's belongings it determines are bulky. The City does not suggest otherwise, and to date, has refused to agree not to enforce the provision. Myers Dec. ¶¶ 23-27. Plaintiffs need not do more to establish that the City is engaging in a widespread and persistent pattern of seizing and destroying property consistent with the ordinance.

The City also does not dispute that it continues to seize and destroy the same items that Diocson and Ashley had seized and destroyed, nor does it contest Plaintiffs' evidence that Ashley and Diocson currently have items that the City is likely to seize and destroy as Bulky Items. The City likewise does not dispute it continues to enforce the ordinance in Koreatown and the surrounding areas where KFA monitors sweeps and provides outreach and supplies. In fact, KFA provided witness testimony and video evidence of City workers telling individuals that the City was taking items that were bulky, and then throwing those items in the trash, just two days before Plaintiffs filed this motion. *See* Emmons Dec. Exh. A. That is sufficient to establish irreparable harm unless the City is enjoined from enforcing the Bulky Item Provision.

### D. The Narrow Injunction Sought Prevents Continued Constitutional Violations But Does Not Prevent the City From Addressing Immediate Health And Safety Issues And Other Community Concerns

The City does not even address Plaintiffs' argument that continuing to enforce an unconstitutional ordinance is against the public interest. Instead, it argues that the narrow injunction sought by Plaintiffs will cause any number of problems for the City

by leaving it completely helpless to remove any bulky items from the public right of way. Even if it were sufficient to justify the continued violation of people's rights (which it is not, *see United Sates v. Alabama,* 691 F.3d 1269, 1301 (11th Cir. 2012)), there is no merit to this claim.

The injunction Plaintiffs seek is narrow—to prevent the City from enforcing two facially-unconstitutional provisions of the LAMC. Plaintiffs do not, as the City avers, ask this Court to "enjoin City from removing any and all Bulky Items from the public right of way in any and all circumstances." Opp. at 1. And nothing in Plaintiffs' moving papers suggest they do. If the Court grants the injunction, the City will still be able to ensure its sidewalks are clear and passable and will still be able to address immediate threats to public health and safety.[14] *See* LAMC 56.11(c)-(g); Order at 10.

The City will also be able to dispose of abandoned property and items that are illegally dumped on the city's streets and sidewalks—which according to the City, constitutes more than 80% of the debris that lines the sidewalks. *See* Declaration of Jonathan Gibson ¶ 4. Although the City argues that it cannot distinguish between unattended and abandoned property, the evidence put forth by the City to support this is self-serving and ignores the fact that the City does this every day. *See* Wong Dec. ¶ 48 (explaining that LASAN responds to citizen reports of bulky items but will defer to LSD if there is evidence of a homeless encampment). As discussed at the hearing on the Motion to Dismiss, the City seizes and destroys abandoned items that are less than 60 gallons all the time, without relying on LAMC 56.11 (which does not provide for the immediate destruction of property that is less than 60 gallons unless it is an

---

[14] The City's post hoc rationalization that seizing bulky items to prevent the Coronavirus is not supported by the CDC's recommendations for preventing the spread in encampments. *See* Centers for Disease Control and Prevention, Interim Guidance for Responding to Coronavirus Disease 2019 among People Experiencing Unsheltered Homelessness, *https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-homelessness.html*. The City also provides no explanation why the size of the item is relevant to whether an item contributes to the spread of the virus.

immediate threat to public health and safety).[15]  And under Civil Code Section 2080, the City is already required to distinguish between property that is lost or taking into custody for safekeeping, which must be stored, and abandoned property, which need not be.  *See* Ca. Civ. Code §§ 2080.6, 7.

Finally, it is completely disingenuous for the City to suggest that the requested injunction fails to provide it "with sufficient clarity for the City to understand what justifications would be sufficient" to remove items from the public right of way.  Opp at 25.  If it were actually the case that the remaining provisions of LAMC 56.11 lack so much clarity that the City cannot enforce them, then the remedy is not to allow the City to continue to enforce an unconstitutional provision of LAMC 56.11; it is to enjoin the entirety of the ordinance.

## IV.   CONCLUSION

For the foregoing reasons and reasons set forth in Plaintiffs' opening brief, Plaintiffs request this Court grant Plaintiffs' motion for a preliminary injunction.

Dated: March 23, 2020    Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

/s/ *Shayla Myers*
Shayla Myers
*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, Ali El-Bey, Pete Diocson Jr., Marquis Ashley, James Haugabrook, and Ktown for All*

SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP

/s/ *Catherine Sweetser*
Catherine Sweetser
*Attorneys for All Plaintiffs*

---

[15] Plaintiffs continue to assert that the City illegally seizes and destroys items under the guise of enforcing these provisions, but this will not change, whether the Bulky Item Provision remains enforceable or the City must rely on other provisions to address immediate health and safety and other justified reasons for seizing belongings.

12
**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

KIRKLAND & ELLIS LLP

/s/ *Benjamin Herbert*
Benjamin Allen Herbert

*Attorneys for Plaintiffs Ktown for All, Janet Garcia, Peter Diocson Jr., Marquis Ashley, Ali El-Bey, and Association for Responsible and Equitable Public Spending*

### Local Rule 5-4.3.4 Attestation

I attest that Plaintiff's counsel, Shayla Myers and Catherine Sweetser concur in this filing's content and have authorized the filing.

DATED: March 23, 2020          KIRKLAND & ELLIS LLP

By: /s/ *Benjamin Herbert*