1  Shayla Myers (SBN 264054)
   Mallory Andrews (SBN 312209)
2  LEGAL AID FOUNDATION OF LOS ANGELES
   7000 South Broadway
3  Los Angeles, CA 90003
   Telephone: (213) 640-3983
4  Email: smyers@lafla.org
           mbandrews@lafla.org
5
   *Attorneys for Gladys Zepeda, Miriam Zamora,*
6  *Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
   *Marquis Ashley, and Ktown for All*
7
   *Additional Attorneys on Next Page*
8
                    **UNITED STATES DISTRICT COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  JANET GARCIA, GLADYS ZEPEDA, MIRIAM ZAMORA, ALI EL-BEY, PETER DIOCSON JR, MARQUIS ASHLEY, JAMES HAUGABROOK, individuals, KTOWN FOR ALL, an unincorporated association; ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING, an unincorporated association, | CASE NO. 2:19-cv-06182-DSF-PLA |
| | **DECLARATION OF SHAYLA MYERS** |
| | Complaint Filed Date: July 18, 2019 |
| Plaintiffs, | |
| v. | Judge: Hon. Dale S. Fischer Hearing Date: April 6, 2020 Time: 1:30 p.m. Courtroom: 7D |
| CITY OF LOS ANGELES, a municipal entity; DOES 1-7, | |
| Defendants. | |

**DECLARATION OF SHAYLA MYERS**

Catherine Sweetser (SBN 271142)
Kristina Harootun (SBN 308718)
SCHONBRUN SEPLOW HARRIS
& HOFFMAN LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone:  (310) 396-0731
Email:  csweetser@sshhlaw.com
          kharootun@sshhlaw.com

*Attorneys for Plaintiffs*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone:  (213) 680 8400
Email:  benjamin.herbert@kirkland.com
          william.smith@kirkland.com

Michael Onufer (SBN: 300903)
KIRKLAND & ELLIS LLP
2049 Century Park East,
Los Angeles, CA  90067
Telephone:  (310) 552-4200
Email:   michael.onufer@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Janet Garcia,*
*Peter Diocson Jr., Marquis Ashley, Ali El-Bey, and*
*Association for Responsible and Equitable Public*
*Spending*

**DECLARATION OF SHAYLA MYERS**

## <u>DECLARATION OF SHAYLA MYERS</u>

I, Shayla Myers, hereby declare and state as follows:

1.      I am an attorney of record for the Plaintiffs in the above-captioned matter. I have personal knowledge of the facts set forth herein and could testify competently thereto if called as a witness.  I make this declaration in support of Plaintiffs' Reply to the City's Opposition to Plaintiffs' Motion for Preliminary Injunction.

2.      In its Opposition to Plaintiffs' Motion for Preliminary Injunction, the City referred to the existence of encampments located in the area of Lomita and McCoy.  *See* Dkt. 42 at 5.

3.      The encampment is located in the Harbor City neighborhood of Los Angeles, which is geographically located near San Pedro and Wilmington, south of Los Angeles.  I have been to this encampment many times over the course of the past two years.  I was last at the encampment on March 21, 2020.  Attached as Exhibit A are true and correct photos of the encampment that I took on that day.

4.      The encampment is on Lomita Boulevard as well as McCoy Street, which runs parallel to the Gateway Park.  Lomita Boulevard is a wide, four-lane road, and McCoy Street is a dirt road that abuts drilling rigs and warehouses.  253rd Street, which intersects McCoy Street, is also a dirt road.  The entire area where encampments are set up is industrial.  Most of the Greenway is not accessible from the area where people stay; instead, there are industrial yards, decommissioned Metro buses, and oil derricks between where individuals stay and the Greenway.

5.      On the corner of Lomita Boulevard and McCoy Street is the Stillman Sawyer Family Service Center, which is operated by the Salvation Army and provides a food bank, job training, and other services.

6.      The County of Los Angeles provides three porta-potties near Lomita Boulevard and McCoy Street, on county land, across the street from the encampment. The City does not provide toilets.

1
**DECLARATION OF SHAYLA MYERS**

7.      The Los Angeles Homeless Services Authority ("LAHSA") conducts an annual Point in Time Count ("Homeless Count") of the number of homeless people in Los Angeles on a given night.  The results are available at https://www.lahsa.org/data?id=13-2019-homeless-count-by-community-city and which I attached hereto as Exhibit B.

8.       LAHSA also conducts a Housing Inventory Count of shelter beds and units on a given night.  The results are available at https://www.lahsa.org/data?id=13-2019-homeless-count-by-community-city and which I attached hereto as Exhibit B.

9.      Both of these counts are conducted every year and mandated by the United States Department of Housing and Urban Development.

10.     According to the 2019 Homeless Count, there are 1,443 homeless people in Harbor City and the two neighboring communities in the City of Los Angeles, San Pedro and Wilmington.  According to the Housing Inventory Count, there are 49 shelter beds in San Pedro and Wilmington for households without children and 51 units with 161 beds for households with children.  There are no shelter beds in Harbor City for either single adults or households with children.

11.     On the night of the Housing Inventory Count, three of the shelters with beds in these communities were at 100% capacity and the other two shelters were over capacity, at 133% and 114% respectively.

12.     In 2018, the City of Los Angeles launched A Bridge Home to build new shelter beds in each council district.  According to a map of this area prepared by the City, the City has not yet approved the bridge housing in Harbor City and San Pedro area.  A true and correct copy of the map prepared by the City, which the City continuously updates and which I accessed on March 23, 2020, is attached hereto as Exhibit C.

13.     In February 2020, the County of Los Angeles opened a new shelter in San Pedro.  It has a capacity of 40 people.

**DECLARATION OF SHAYLA MYERS**

14. Since September 2019, Plaintiffs repeatedly requested the City begin discovery in this case. Plaintiffs have made numerous requests that the City engage in the Rule 26(f) conference to commence discovery. *See, e.g.*, Dkt. 29, Exs. C–K. The City has refused. *See, e.g.*, Dkt. 29, Ex. F at 1. To date, the City has refused to begin discovery.

15. In January, Plaintiffs moved to compel the City to begin discovery. The Magistrate denied the order on the ground that the causes of action and defenses were not yet set in this case. *See* Dkt. 33.

16. On March 5, 2020, following the Court's February 15, 2020 Orders on the motions to dismiss (the "Orders"), which set the causes of action, Plaintiffs wrote the City renewing its request to meet for a Rule 26(f) conference. *E.g.*, Dkts. 36–37. A true and correct copy of Benjamin Herbert's March 5, 2020 letter is attached hereto as Exhibit D.

17. On March 10, 2020, the City responded that it was not prepared for a Rule 26(f) conference. A true and correct copy of Gabriel Dermer's March 10, 2020 email is attached hereto as Exhibit E.

18. Although the City has refused to respond to discovery, it has selectively produced documents to Plaintiffs; it has otherwise refused to produce documents sought by Plaintiffs and refused to allow Plaintiffs to begin third party discovery. Many of the documents the City has produced are irrelevant and available on public city websites, and it has refused to produce other documents that are highly relevant to Plaintiffs' as-applied challenges, including documents it now uses to support its opposition to Plaintiffs' Preliminary Injunction. *E.g.*, Dkt. 29, Exs. K, N. Indeed, the City has refused to produce documents related to storage, which it now uses to defend against the Preliminary Injunction.

19. On February 27, 2020, only after Plaintiffs filed the Motion for Preliminary Injunction, did the City Attorney request a closed session with the City Council to, upon

3

**DECLARATION OF SHAYLA MYERS**

information and belief, discuss the Orders and Plaintiffs' motion.  A true and correct copy of the request for a closed session meeting is attached as Exhibit F.

20.     On February 27, 2020, following that request, the City wrote in an email that they were unable to meaningfully respond to Plaintiffs before they filed their Motion for Preliminary Injunction.  The City indicated it would get back to Plaintiffs after it received direction from City Council.  A true and correct copy of Gabriel Dermer's February 27, 2020 email is attached hereto at Exhibit E.

21.     On March 5, 2020, counsel for the City wrote an email indicating that they had spoken with City Council and asked Plaintiffs to discuss the removal and destruction of certain categories of bulky items to resolve the pending motion.  The City requested Plaintiffs withdraw its preliminary injunction motion.  A true and correct copy of Gabriel Dermer's March 5, 2020 email is attached hereto at Exhibit E.

22.     On March 6, 2020, I wrote to the City that Plaintiffs were open to exploring a resolution in the interest of avoiding more litigation.  I also wrote that Plaintiffs were willing to stipulate to a continuance of the hearing for a short time to give the parties an opportunity to discuss a resolution if the City agreed to stop seizing and destroying items pursuant to LAMC 56.11(3)(i) while the parties sought to reach an agreement related to that provision.  A true and correct copy of my March 6, 2020 email is attached hereto at Exhibit E.

23.     Later on March 6, 2020, the City wrote that it would not stop enforcing the Bulky Item Provision pending discussions.  A true and correct copy of Gabriel Dermer's March 6, 2020 email is attached hereto at Exhibit E.

24.     On March 9-10, 2020, the parties exchanged emails about possibly reaching an agreement concerning the Bulky Item Provision before the March 30, 2020 hearing.  A true and correct copy of my March 9, 2020 and Gabriel Dermer's March 10, 2020 emails are attached hereto at Exhibit E.

25.     On March 13, 2020, the parties participated in a telephone conference to discuss a potential resolution to the pending motion.  Although Plaintiffs were willing

4
**DECLARATION OF SHAYLA MYERS**

to negotiate in good faith about a resolution, counsel for the City represented that the City Council had not authorized the Counsel's office to enter into an agreement. Rather, following discussions with Plaintiffs' counsel, the Counsel's office could then bring the a proposed agreement for City Council's approval. Counsel for the City stated that even assuming the parties could reach an agreement and that the City Council would approve that agreement, it would be unable to receive City Council approval before March 30, 2020. Counsel for the City could not commit to any date certain that the City Council would take up the potential resolution, and it also refused to agree to any changes in enforcement of the Bulky Item Provision without City Council approval.

26.    On Tuesday, March 17, the Los Angeles City Council considered an emergency motion to stop the seizure and destruction of property pursuant to LAMC 56.11 in response to the COVID-19 global pandemic. That portion of the motion was struck on a vote of 11-4. A true and correct copy of the original and the amending City Council motions are attached as Exhibit G.

27.    As of the filing of this brief, the City has not indicated its willingness to cease enforcement of the Bulky Item Provision for even a limited amount of time.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 23, 2020, in Los Angeles, California.

_____
Shayla Myers

**DECLARATION OF SHAYLA MYERS**

# Exhibit A













# Exhibit B

 Your browser is not supported and may experience technical issues.
Please use **Chrome**, **Firefox**, **Safari**, or **Microsoft Edge**. More info

## ABOUT THIS DASHBOARD

2016 to 2019 Homeless Count data by Community/City.

### 2019 HOMELESS COUNT BY COMMUNITY/CITY

Please READ 'User Guide & Methodology' for dashboard information, usage, and interactivity on tab two of two (see at bottom).

Select a Year: 2019

Select a Community/City: All

Search

Community
LA CoC

Total Homeless Population
49,521
Results from Homeless Count

Search

Total Point-In-Time Homeless Population (2016 thru 2019)

Unsheltered Persons

Sheltered Persons

Some data are excluded from Community/City totals, including unsheltered unaccompanied minors (under 18 years old), unsheltered transitional age youth (18 – 24 years old), persons in domestic violence shelters, and persons receiving motel vouchers. Note: Because of the interactive nature of the dashboard and because of the exclusion of unsheltered youth and some sheltered categories, we do not recommend citing the LAHSA Homeless Count City/Community Dashboard as the official count. *** Hollywood and Venice boundaries reflect homeless point-in-time count boundaries for volunteers - please see data summaries for official count numbers.

Microsoft Power BI 1 of 2

## HOMELESS COUNT DASHBOARDS

- 2019 Homeless Count By Community/City
- 2019 Homeless Count By Service Planning Area
- 2019 Homeless Count By Supervisorial District





Case 2:19-cv-06182-DSF-PLA   Document 48-1   Filed 03/23/20   Page 17 of 41   Page ID
#:1852

# Exhibit C

 DONATE

YOUR ^NO^ PANIC GUIDE TO THE CORONAVIRUS IN LA    READ NOW ►

# This Map Tracks Where Emergency Homeless Shelters Have Been Proposed, Approved And Opened In LA

by Ryan Fonseca in News on September 5, 2018 6:30 PM



In April 2018, Mayor Eric Garcetti and the City Council declared an emergency shelter crisis in Los Angeles. The mayor signed an executive directive to implement his "A Bridge Home" initiative, with a goal of creating 1,500 new shelter beds for the homeless residents most in need. The plan allocates $20 million from the city budget, split evenly among the 15 council districts, "to construct emergency bridge housing city-wide."

"The urgency of the homelessness crisis demands that we take every possible step to help people pack up tents and move indoors as quickly as possible," the mayor said at the time.

As city leaders navigate the selection of sites while also addressing community concerns, you may be wondering if there are any shelters being planned or built where you live or work.

That's why LAist is keeping track of where these bridge housing shelters are being proposed, studied and built — though in many cases that's taking much longer than first expected. Explore our map below to learn more. Sites that have been proposed and are under review are in orange and open shelters are in blue (if you're having trouble viewing the map in this article, you can see it here).



*This is a developing project. Check back for updates.*

## BEST OF LAIST

### Facing The Music: The Uncertain Future of the Orange County School of the Arts

### Special Report: Deceit, Disrepair and Death Inside a Southern California Rental Empire

### Oops, They Did It: A Pop-Up Recreating Britney Spears' Music Videos In LA's Fairfax District

### The Best Café De Olla In Los Angeles -- And Why You Need To Drink It

### 'Car Accident' Or 'Traffic Violence'? The Way We Talk

About Crashes Is
Evolving

TWITTER          FACEBOOK          **REDDIT**          PRINT



© 2003-2020 Southern California Public Radio. All rights reserved. Terms of Use & Privacy Policy.

# Exhibit D

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Benjamin Allen Herbert
To Call Writer Directly:
+1 213 680 8577
benjamin.herbert@kirkland.com

555 South Flower Street
Los Angeles, CA 90071
United States

+1 213 680 8400

www.kirkland.com

Facsimile:
+1 213 680 8500

**VIA EMAIL**

March 5, 2020

Patricia Ursea
Office of the City Attorney
200 N. Main Street, 6th Floor
Los Angeles, CA 90012

Re:  *Garcia v. City of Los Angeles* (Case No. 2:19-cv-06182)

Dear Ms. Ursea:

This litigation began more than six months ago.  To date, however, the City has repeatedly refused to participate in the required Rule 26(f) conference.  *E.g.*, Dkt. 29 at Exs. C–K.  As you are no doubt aware, meaningful discovery—and this litigation—cannot proceed until this conference occurs.  You indicated that the City "will be happy to schedule the conference at the appropriate time," which "will likely be after we have filed a responsive pleading . . . ."  Dkt. 29, Ex. F at 1.  The City filed its responsive pleading, two motions to dismiss, and the Court ruled on those motions in February.  *E.g.*, Dkts. 36–37.  Now, "the actual claims and defenses at issue . . . are [] certain."  Dkt. 33 at 5.  Accordingly, it is the appropriate time for the Rule 26(f) conference.

Plaintiffs renew our request to schedule a Rule 26(f) conference, so discovery and this litigation can proceed without further delay.  Please let us know your availability by March 9, 2020.  If you have any questions about the foregoing, I can be reached at (213) 680-8577.

Sincerely,

*/s/ Benjamin A. Herbert*

Benjamin A. Herbert

Beijing  Boston  Chicago  Dallas  Hong Kong  Houston  London  Munich  New York  Palo Alto  San Francisco  Shanghai  Washington, D.C.

Exhibit E

| | |
|---|---|
| **From:** | Gabriel Dermer |
| **To:** | Shayla R. Myers |
| **Cc:** | Felix Lebron; Scott Marcus; Patricia Ursea; Herbert, Benjamin Allen; Onufer, Michael; Catherine Sweetser |
| **Subject:** | [EXT] Re: Garcia v. City of Los Angeles, Case No. 2:19-cv-06182 |
| **Date:** | Tuesday, March 10, 2020 3:34:18 PM |

Hi Shayla,

  If Plaintiffs have an interest in discussing the removal and destruction of certain categories of bulky items, we would be pleased to have such a discussion.  Let me know.  Also, we will be making a supplemental production of higher quality images of what was produced as evidence as part of our filing last night.  And in response to Ben's letter of last week, in terms of the Rule 26 conference, are Plaintiffs amending their complaint?   Either way, claims and defenses are not yet at issue as the City has not admitted or denied Plaintiffs' allegations.  Once the City does that, we will be prepared to have the Rule 26 conference.  Thank you.

On Mon, Mar 9, 2020 at 9:54 AM Shayla R. Myers <SMyers@lafla.org> wrote:

> Gabriel,
>
>
> While we are disappointed that the City is not willing to stop seizing and destroying items pursuant to LAMC 56.11(3)(i) while the parties attempt to reach an agreement related to that provision, as I mentioned in my last email, we still remain open to discussing the issue while the motion is pending.  Let us know if you'd like to schedule a time to discuss, in advance of the March 30 hearing.
>
>
>
> Thanks,
>
>
> Shayla
>
>
>
>
> **From:** Gabriel Dermer <gabriel.dermer@lacity.org>
> **Sent:** Friday, March 6, 2020 4:35 PM
> **To:** Shayla R. Myers <SMyers@lafla.org>
> **Cc:** Felix Lebron <felix.lebron@lacity.org>; Scott Marcus <Scott.Marcus@lacity.org>; Patricia Ursea <patricia.ursea@lacity.org>; Benjamin Herbert <benjamin.herbert@kirkland.com>; Onufer, Michael <michael.onufer@kirkland.com>; Catherine Sweetser <catherine.sdshhh@gmail.com>
> **Subject:** Re: Garcia v. City of Los Angeles, Case No. 2:19-cv-06182
>
>
>
> Hi Shayla,
>
>   While the City is open to a resolution that allows for the removal and destruction of certain

categories of bulky items, the City will not agree to stipulating to the injunction sought by Plaintiffs.

On Fri, Mar 6, 2020 at 2:54 PM Shayla R. Myers <SMyers@lafla.org> wrote:

Gabriel,

Thank you for your email and the update.  We are glad to hear that the City is open to having a discussion; Plaintiffs are likewise open to exploring a resolution in the interest of avoiding more litigation.

With that said, it is premature to discuss withdrawing the motion.  If we are able to reach a resolution, we will withdraw the motion.  We are however willing to stipulate to a continuance of the hearing for a short time in order to give the parties an opportunity to discuss a resolution, as long as the City will stipulate, as a condition of a continuance, that it will not enforce LAMC 56.11(3)(i) and (10)(d) during the pendency of the motion.

If the City is not willing to stipulate to stop the enforcement of the Bulky Item provision, we are of course still willing to discuss a resolution and potential withdrawal of the motion.  But without a stipulation not to enforce the bulky item provision, we will not be able to move the hearing date.

Please let us know how the City wants to proceed.  I am available this afternoon to discuss by phone if necessary.

Thanks,

Shayla

**From:** Gabriel Dermer <gabriel.dermer@lacity.org>
**Sent:** Thursday, March 5, 2020 4:25 PM
**To:** Shayla R. Myers <SMyers@lafla.org>
**Cc:** Felix Lebron <felix.lebron@lacity.org>; Scott Marcus <Scott.Marcus@lacity.org>; Patricia Ursea <patricia.ursea@lacity.org>; Benjamin Herbert <benjamin.herbert@kirkland.com>; Onufer, Michael <michael.onufer@kirkland.com>; Catherine Sweetser <catherine.sdshhh@gmail.com>
**Subject:** Re: Garcia v. City of Los Angeles, Case No. 2:19-cv-06182

Hi Shayla,

  As promised, our Office was able to discuss this matter with City Council yesterday.  In an effort to avoid litigation and resolve the Plaintiffs' motion, are Plaintiffs willing to discuss the removal and destruction of certain categories of bulky items?  If so, let's discuss withdrawing the motion so we could meaningfully explore a resolution.  Please let me know.  Thank you.


Gabriel


On Thu, Feb 27, 2020 at 6:27 PM Gabriel Dermer <gabriel.dermer@lacity.org> wrote:

Hi Shayla,

Thank you for the letter.  Our Office submitted a request for closed session before City Council to discuss the issues raised by the Court's order and that should happen next Tuesday or Wednesday.  While we moved as quickly as we could on these issues, unfortunately, Plaintiffs' timing on the motion for preliminary injunction did not provide sufficient time for the City to meaningfully respond to you before the filing of the motion. We will get back to you once we receive direction from Council.   Thank you.


Gabriel


On Wed, Feb 26, 2020 at 1:39 PM Shayla R. Myers <SMyers@lafla.org> wrote:

Counsel,


Attached please find correspondence regarding the Motion for a Preliminary Injunction, which we filed this morning.  Please let me know if you have any questions or you would like to discuss.


Thanks,


Shayla


**From:** Gabriel Dermer <gabriel.dermer@lacity.org>

**Sent:** Friday, February 21, 2020 6:17 PM
**To:** Shayla R. Myers <SMyers@lafla.org>
**Cc:** Scott Marcus <Scott.Marcus@lacity.org>; Patricia Ursea
<patricia.ursea@lacity.org>; Felix Lebron <felix.lebron@lacity.org>; Benjamin
Herbert <benjamin.herbert@kirkland.com>; Onufer, Michael
<michael.onufer@kirkland.com>; Catherine Sweetser <catherine.sdshhh@gmail.com>
**Subject:** Re: Garcia v. City of Los Angeles, Case No. 2:19-cv-06182

Hi Shayla,

  We are still discussing things internally.  I don't have definitive information to share
but we are continuing to discuss things next week.  I will share information as soon as I
have it, and would ask for your patience in said regard.  Thank you and have a nice
weekend.

On Fri, Feb 21, 2020 at 6:14 PM Shayla R. Myers <SMyers@lafla.org> wrote:

> Gabriel,
>
> We are following up from our letter on Tuesday regarding the ongoing enforcement
> of LAMC 56.11(3)(i) and 56.11(10)(d), in light of the Court's ruling on the City's
> motion to dismiss.  When we spoke on the phone on Wednesday, you indicated that
> you would get back to us today following your meeting with the City Attorney.
>
> Since we have not heard from you, we assume the City remains unwilling to work
> with us without further court intervention.  We are disappointed, but given the
> significant interests at stake, we intend to move for a preliminary injunction early
> next week.
>
> **Shayla Myers**| Senior Attorney
>
> *Pronouns: she, her, hers*
>
> **Legal Aid Foundation of Los Angeles**
>
> 7000 S. Broadway | Los Angeles, CA 90003
>
> 213.640.3983 **direct** | 213.640.3988 **facsimile**

**From:** Gabriel Dermer <gabriel.dermer@lacity.org>
**Sent:** Wednesday, February 19, 2020 2:27 PM
**To:** Shayla R. Myers <SMyers@lafla.org>
**Cc:** Scott Marcus <Scott.Marcus@lacity.org>; Patricia Ursea <patricia.ursea@lacity.org>; Felix Lebron <felix.lebron@lacity.org>; Benjamin Herbert <benjamin.herbert@kirkland.com>; Onufer, Michael <michael.onufer@kirkland.com>; Catherine Sweetser <catherine.sdshhh@gmail.com>
**Subject:** Re: Garcia v. City of Los Angeles, Case No. 2:19-cv-06182

Hi Shayla,

  Thank you for your letter.  I left you a voicemail message this morning.  The upshot is we (the City) are considering the issues you raise, but need more than the end of today to be in a meaningful position to have a discussion with you.  Please return my call at your convenience.   Thank you.

Gabriel

On Tue, Feb 18, 2020 at 2:51 PM Shayla R. Myers <SMyers@lafla.org> wrote:

> Attached please find correspondence re: the above referenced case.
>
> **Shayla Myers**| Senior Attorney
>
> *Pronouns: she, her, hers*
>
> **Legal Aid Foundation of Los Angeles**
>
> 7000 S. Broadway | Los Angeles, CA 90003
>
> 213.640.3983 **direct** | 213.640.3988 **facsimile**

This message contains information from the Legal Aid Foundation of Los Angeles which may be confidential and/or privileged. If you are not an intended recipient, please refrain from any disclosure, copying, distribution or use of this information and note that such actions are prohibited. If you have received this transmission in error, kindly notify the sender and immediately delete this email and any files that may be attached.

--

Gabriel S. Dermer
Assistant City Attorney

Business and Complex Litigation
Office of the City Attorney
200 N. Main Street, City Hall East
Room 675
Los Angeles, CA 90012
Phone: (213) 978-7558
Fax: (213) 978-7011
Email: gabriel.dermer@lacity.org


*****************Confidentiality Notice **************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
**********************************************************************

--

Gabriel S. Dermer
Assistant City Attorney

Business and Complex Litigation
Office of the City Attorney
200 N. Main Street, City Hall East
Room 675

Los Angeles, CA  90012
Phone:  (213) 978-7558
Fax:  (213) 978-7011
Email: gabriel.dermer@lacity.org


*****************Confidentiality Notice **************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or
protected by the attorney-client privilege and/or the work product doctrine. If you
are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have
received this communication in error, please notify us immediately by e-mail and
delete the original message and any attachments without reading or saving in any
manner.
**********************************************************************


--

Gabriel S. Dermer
Assistant City Attorney

Business and Complex Litigation
Office of the City Attorney
200 N. Main Street, City Hall East
Room 675
Los Angeles, CA  90012
Phone:  (213) 978-7558
Fax:  (213) 978-7011
Email: gabriel.dermer@lacity.org


--

Gabriel S. Dermer
Assistant City Attorney

Business and Complex Litigation
Office of the City Attorney
200 N. Main Street, City Hall East
Room 675

Los Angeles, CA  90012
Phone:  (213) 978-7558
Fax:  (213) 978-7011
Email: gabriel.dermer@lacity.org

*****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or
protected by the attorney-client privilege and/or the work product doctrine. If you are
not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have
received this communication in error, please notify us immediately by e-mail and
delete the original message and any attachments without reading or saving in any
manner.
    ********************************************************************

--

Gabriel S. Dermer
Assistant City Attorney

Business and Complex Litigation
Office of the City Attorney
200 N. Main Street, City Hall East
Room 675
Los Angeles, CA  90012
Phone:  (213) 978-7558
Fax:  (213) 978-7011
Email: gabriel.dermer@lacity.org

*****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by
the attorney-client privilege and/or the work product doctrine. If you are not the intended
recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original
message and any attachments without reading or saving in any manner.
    *********************************************************************

--
Gabriel S. Dermer
Assistant City Attorney
Business and Complex Litigation
Office of the City Attorney
200 N. Main Street, City Hall East
Room 675
Los Angeles, CA  90012
Phone:  (213) 978-7558
Fax:  (213) 978-7011
Email: gabriel.dermer@lacity.org

*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient,
be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original message
and any attachments without reading or saving in any manner.
*********************************************************************

# Exhibit F



**MICHAEL N. FEUER**
CITY ATTORNEY

REPORT NO. __R 2 0 - 0 0 7 1__
FEB 2 7 2020

### REQUEST FOR CLOSED SESSION PURSUANT TO
### GOVERNMENT CODE SECTION 54956.9(d)(1)

REPORT RE:

*JANET GARCIA, ET AL. V. CITY OF LOS ANGELES, ET AL.*
2:19-CV-06182-DSF-PLA

The Honorable City Council
 of the City of Los Angeles
Room 395, City Hall
200 North Spring Street
Los Angeles, California 90012

Honorable Members:

This Office recommends that discussions with, and advice from, legal counsel regarding this pending litigation be scheduled and held in closed session pursuant to California Government Code Section 54956.9(d)(1).  Government Code Section 54956.9(d)(1) requires you to state publicly, prior to the closed session, what subdivision of this section authorizes the closed meeting and that the closed session is being held to confer or discuss with, or receive advice from, legal counsel regarding pending litigation.

The Honorable City Council
 of the City of Los Angeles
Page 2

        If you have any questions regarding this matter, please contact Senior Assistant
City Attorney Scott Marcus at (213) 978-4681. He, or another member of this Office,
will be present when you consider this matter to answer questions you may have.

                        Very truly yours,

                        MICHAEL N. FEUER, City Attorney

                By

                        SCOTT MARCUS
                        Senior Assistant City Attorney

:sm

# Exhibit G

72-P

# MOTION

In the City of Los Angeles, tens of thousands of people live in encampments on our streets. It is a public health crisis that is ongoing, continuing, and worsening. That crisis is made exponentially worse by the spread of COVID-19, a deadly virus that has prompted health officials to advise people to stay indoors, avoid contact with other people, and wash their hands frequently. That is advice that most unhoused people cannot physically follow. When tens of thousands of people cannot comply with public health directives in the face of a highly communicable disease, that threatens the health and safety of everyone in Los Angeles. Moreover, some emergency measures to slow the spread of the coronavirus have made it more difficult for unhoused people to follow basic hygienic advice, such as the closure of libraries, which has drastically reduced the availability of public restrooms, and the closure of gyms, which has eliminated the access many unhoused people have to showers.

The ideal solution is provide housing and shelter and allow people to move out encampments and come indoors. State and county officials are moving to expand and expedite such efforts during this state of emergency, but in the meantime, people remain on our streets, in tents and underneath tarps. Multiple, urgent efforts must be undertaken to the public health issues from and in encampments.

In the City of Los Angeles, through the coordinated efforts of our Unified Homelessness Response Center (UHRC) and our Bureau of Sanitation (LASAN), the City operates CARE and CARE+ teams. These teams have a dual function - to provide sanitation services and to enforce city codes about keeping sidewalks clean and passable. Supporters of the programs characterize them as helpful "clean-ups," necessary to protect public health through the removal of trash and hazardous materials, and the cleaning of sidewalks. Critics decry them as punitive "sweeps," which force people to take down and move tents, displace people and push them further from services, cause stress and trauma, and frequently result in the seizure and loss of vital personal possessions, including medications.

Over the past two years, the City of Los Angeles has begun to provide mobile bathrooms, mobile showers and trash cans at some encampments. In the past week, the City of Los Angeles has begun installing portable hand-washing stations at many other encampments. Yet most encampments lack any hygiene services, and many that do have services only have them part-time. Generally, unhoused residents still lack regular access to basic hygiene services.

MAR 1 7 2020



(SEE COUNCIL FILE NO. 20-0147-S21)

Los Angeles' uneven provision of hygiene services and largely unsuccessful efforts to address the issue of encampments has been guided by a number of factors: fiscal constraints, complaints and community feedback, and political considerations. Los Angeles must urgently re-evaluate its current practices and protocols regarding homeless encampments. *It is imperative that we answer this public health crisis with a public health response, as directed by public health professionals.*

**I THEREFORE MOVE** that the City of Los Angeles formally request that the California Department of Public Health and the Los Angeles Department of Public Health provide the City of Los Angeles with guidance and suggested protocols to protect the public health of people living in encampments, people living near encampments, and government and social service workers visiting or serving encampments.

**I FURTHER MOVE** that the City Council urge Governor Gavin Newsom to use his full emergency executive powers to use hotel and motel rooms to *immediately* provide shelter for unhoused Angelenos.

**I FURTHER MOVE** that the CIty Council instruct the Chief Legislative Analyst to work with the Department of General Services, the Department of Recreation & Parks, the various bureaus and agencies within the Board of Works, and other agencies as appropriate, to produce of list of vacant or under-used city properties that can be used for emergency housing, and vacant or under-used parking lots and other spaces that could be established as "Emergency Safe Camping Zones," where unhoused residents could camp at a minimum of six feet apart, and be provided with hygiene services.

**I FURTHER MOVE** that the City Council take the following steps to make it easier for unhoused individuals living in encampments to comply with public health advice and directives regarding hygiene and social distancing:

- Instruct LASAN and other relevant agencies to suspend enforcement of the provision of 56.11 that require tents to come down during daytime hours, provided that the location of the tent does not impede ADA access, or is not within 10 feet of an operable driveway. Enforcement of that provision effectively prohibits people from self-quarantining and maintaining social distance.

- Instruct LASAN and other relevant agencies to suspend seizure and confiscation of materials in excess of 60 gallons unless those materials meet the definition of hazardous materials.

- Instruct LASAN, Department of General Services, and other relevant agencies to provide for the installation and servicing of the following at all major encampments: round-the-clock port-a-potties; dumpsters and vermin-proof trash cans; weekly shower service; hand-washing stations with soap and water.

- Instruct the Department of General Services, the Department of Recreation & Parks, the Library Department, and other agencies as appropriate to immediately accommodate 24-hour access to restrooms, with attendants as appropriate, at parks, libraries and other government buildings.

**I FURTHER MOVE** that the CIty Council direct the City Administrative Officer to identify city, county, state or federal emergency and public health funds, or recommend interdepartmental transfers, sufficient to provide for the costs associated with the above items.

PRESENTED BY:

**MIKE BONIN**
*Councilmember, 11th District*

**MARQUEECE HARRIS-DAWSON**
*Councilmember, 8th District*

**GIL CEDILLO**
*Councilmember, 1st District*

SECONDED BY:

ORIGINAL

72-P-A

## MOTION

I MOVE that Motion #72P (Bonin/Harris-Dawson/Cedillo), relative to directing various departments and agencies to take actions in response to the Coronavirus pandemic, be AMENDED as follows, with all other actions remaining unchanged:

INSTRUCT LASAN and other relevant agencies to suspend enforcement, **during the emergency declaration,** of the provision of 56.11 that requires tents to come down during daytime hours, provided that the location of the tent does not impede ADA access, or is not within 10 feet of an operable driveway. Enforcement of that provision effectively prohibits people from self-quarantining and maintaining social distance.

~~INSTRUCT LASAN and other relevant agencies to suspend seizure and confiscation in excess of 60 gallons unless those materials meet the definition of hazardous materials.~~

INSTRUCT LASAN, Department of General Services and other relevant agencies to **report on the feasibility and costs associated with** providing for the installation and services of the following at all major encampments: round-the-clock port-a-potties, dumpsters and vermin-proof trash cans; weekly shower service; hand-washing stations with soap and water

INSTRUCT the Department of General Services, the Department of Recreation and Parks, the Library Department and other agencies as appropriate to ~~immediately accommodate~~ **report on the feasibility and costs associated with providing** 24-hour access to restrooms, with attendants as appropriate, at parks libraries and other government buildings.

PRESENTED BY: 

JOE BUSCAINO
Councilmember, 15th District

SECONDED BY: 

MAR 1 7 2020

## AMENDING MOTION

I HEREBY MOVE that Council AMEND the Motion 72P-A (Buscaino – Price) to read as follows:

INSTRUCT LASAN and other relevant agencies to suspend enforcement, **during the emergency declaration,** of the provision of 56.11 that requires tents to come down during daytime hours, provided that the location of the tent does not impede ADA access, or is not within 10 feet of an operable driveway. Enforcement of that provision effectively prohibits people from self-quarantining and maintaining social distance. **At the end of the emergency declaration, seek the advice of (LA County) Public Health and provide recommendations as to whether to continue or revise the ordinance.**

~~INSTRUCT LASAN and other relevant agencies to suspend seizure and confiscation in excess of 60 gallons unless those materials meet the definition of hazardous materials.~~

INSTRUCT LASAN, Department of General Services and other relevant agencies **to do as much as possible within the next week to** provide for the installation and services of the following at all major encampments: round-the-clock port-a-potties, dumpsters and vermin-proof trash cans; weekly shower service; hand-washing stations with soap and water, and to **report back in seven days on the feasibility and costs.**

INSTRUCT the Department of General Services, the Department of Recreation and Parks, the Library Department and other agencies as appropriate to **do as much as possible within the next week to accommodate** 24-hour access to restrooms, with attendants as appropriate, at parks, libraries and other government buildings, and to **report back in seven days on the feasibility and costs.**

PRESENTED BY _____

JOE BUSCAINO
Councilmember, 15th District

SECONDED BY _____

NURY MARTINEZ
Councilmember, 6th District

March 17, 2020

CF 20-0147