MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
FELIX LEBRON, Deputy City Attorney (SBN 232984)
**A. PATRICIA URSEA, Deputy City Atty (SBN 221637)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br>　　　　*Plaintiffs*,<br>　　vs.<br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br>　　　　*Defendant(s)*. | Case No.: 2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br>**DEFENDANT CITY OF LOS ANGELES' OBJECTIONS TO TENTATIVE ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

The City hereby submits its objections to the Court's Tentative Order Granting Plaintiffs' Motion for Preliminary Injunction [Dkt. 54] ("Order").

## I. The Order Finds Standing Despite Uncontroverted Evidence The Bulky Item Provision Was Not Applied To The Moving Parties.

One section of the Order correctly reflects that the Bulky Item Provision ("Provision") allows for seizures *without* notice.  See Dkt. 54 at 2 (citing § 56.11(3)(i)). Yet, the Order later rejects the City's argument that Plaintiffs lack standing because Plaintiffs' property was seized in *noticed* cleanups.[1]  See Dkt. 54 at 10 n.10.  The Order thus concludes that Plaintiffs have standing to obtain injunctive relief, even though Plaintiffs' own evidence shows they were not harmed by application of the Provision (*i.e.,* removal and destruction of items, solely because they are Bulky, *without notice*), nor that they are likely to suffer irreparable harm from its application.  *See San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996) ("the mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III").  Also, the Order implicitly finds (without directly addressing scope) that the two individual plaintiffs and one organizational plaintiff[2] have standing to obtain an injunction enjoining enforcement of the Provision, not only as to them, but citywide.[3]

---

[1] This includes the April 24, 2019 and May 21, 2019 cleanups asserted by Diocson and Ashley, and the February 24, 2020 cleanup asserted by KFA. Dkt. 54 at 4-6; Opp. at 9:4-6 (citing Wong Decl. ¶¶ 31-33, Ex. 11).

[2] The Order fails to take into account the City's other challenges to the organizational plaintiffs' standing under the operative SAC.  Dkt. No. 51 at 2-3.

[3] This also creates ambiguity for enforcement.  Despite the fact the individuals here received at least 24-hour notice before any items were removed and discarded, the Order concludes that "it is clear that the City does not take 'extensive measures to . . . safeguard Bulky Items that appear to be someone's property.'"  Dkt. 54 at 18 (quoting City's Opp'n.)  Thus, it is uncertain whether the notices were deficient as to the removal or disposal of the items, or both.  Similarly, the Court cautions that the Order "should not be read to impose [the] requirement" of "individualized pre-deprivation notice and a hearing" but declines to give any guidance of what process might suffice.

1

DEFENDANT'S OBJECTIONS TO TENTATIVE ORDER GRANTING PRELIMINARY INJUNCTION

## II. The Order Does Not Hold Plaintiffs To Their Burdens For A Facial Challenge Or Preliminary Injunction.

The Order issues a citywide injunction almost exclusively on the basis of declarations of a "small handful of homeless individuals" submitted by Plaintiffs. Dkt. 54 at 18 n.22. Meanwhile, the Order hardly references the countervailing evidence submitted by Defendants, consisting of 12 declarations and hundreds of pages; the few times when Defendant's evidence is referenced, it is dismissed out-of-hand on the basis that it appears inconsistent with Plaintiffs' declarations or because the Court addressed the issue in its Motion to Dismiss Order ("MTD Order").[4] Furthermore, the Order does not mention the facial-challenge standard under *United States v. Salerno*, 481 U.S. 739, 745 (1987) nor addresses whether Plaintiffs have met that standard. Instead, the Order appears to be based largely on assumptions, including that Plaintiffs' declarations are reflective of all conceivable applications of the Provision. *See, e.g., id.* at 13 n.13 (concluding that all Bulky Items are life necessities). This is not a proper basis on which a preliminary injunction may issue. *See Thomas v. Cty. of L.A.*, 978 F.2d 504, 509 (9th Cir. 1992) ("The parties to this action submitted diametrically opposing declarations…The record [] does not yet contain a sufficient basis on which to evaluate the likelihood of the plaintiffs' succeeding on the merits in establishing, not merely misconduct, but a pervasive pattern of misconduct reflecting departmental policy.")

## III. The Order Fails To Specify The Act Or Acts Sought To Be Restrained.

As a practical matter, when the Order is considered in light of the reasoning that underpins it, it is unclear when the City may or may not remove items that exceed 60 gallons in the public right of way. The Order rejects the reasonableness balancing test in favor of the "warrant or recognized exception" test. Dkt. 54 at 11-12. It also states that "[t]he requested injunction would merely require the City to treat Bulky Items like every

---

[4] For example, the Order states it will not address evidence on the practicalities of storage because the MTD Order did so. Dkt 54 at 14. The MTD Order, however, contains but one line on the issue of storage: "But the City's lack of storage does not make the immediate destruction of personal property reasonable." MTD Order at 11.

other item stored in public areas, permitting removal in a number of circumstances, including when items are unattended, blocking the sidewalk, or a threat to health and safety." Dkt. 54 at 20.  But there are many circumstances in which these two directives cannot be reconciled.  The Order thus fails to specify the acts sought to be restrained as required by Fed. R. Civ. P. 65(d).  *See Thomas*, 978 F.2d at 509.[5]

### 1. Unattended Items

The Order permits removal of "trash" (Dkt. 54 at 20), noting that "items near encampments can constitute trash" or may be "abandoned property from individuals not living at the encampments" (*id.* at 14 n 14), but it simultaneously dismisses as irrelevant the complexity of making such determinations because the City must make them as to small items as well (*id.* at 13 n. 14).  The City does not dispute that there are instances in which reasonable minds would agree that something left on a sidewalk is "trash"—*e.g.*, an empty soda can, crumpled newspaper, food wrappings—and that the Fourth Amendment would not apply to such items.  *See Abel v. United States*, 362 U.S. 217, 241 (1960).  But it is unclear what the Court would consider to be "trash" in the case of Bulky Items on public sidewalks.  Take for example the declaration of Mr. Flowers, submitted by Plaintiffs, in which he states that he uses pallets to lift his tent off the ground and that he "found the pallets dumped on the street."  Dkt. 48-3 at ¶ 6.  Presumably, if the City encountered the "dumped" pallets before Mr. Flowers did, the Order would not prohibit it from discarding them as "trash."  Conversely, if the City

---

[5] The Court rejects the balancing test because (1) the cited cases dealt with detentions of persons and not property seizures, and (2) "the Ninth Circuit has "explicitly 'decline[d] to establish a general exception to the Fourth Amendment's warrant requirement for conduct that, absent special needs consistent with the Supreme Court's precedents, is asserted to be 'reasonable.'" Dkt. 54 at 12.  But the Ninth Circuit has stated that a seizure of "things [] constitutes a substantially less serious intrusion upon rights of the individual" than "a detention of persons." *United States v. Martell*, 654 F.2d 1356, 1359 (9th Cir. 1981).  Also, the Ninth Circuit applied a "reasonableness" (not warrant-or-exception) standard to the seizure of property of persons experiencing homelessness in *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1029-30 (9th Cir. 2012).

encountered the pallets while they were being used to prop up Mr. Flower's tent, the Order seemingly would prohibit a seizure absent a warrant or recognized exception.

But it is not clear how the Order would apply to many, far more common, situations. Consider a noticed cleanup like the ones Plaintiffs Diocson and Ashley describe at the Greenway. Imagine that Mr. Flowers lived in that encampment and in anticipation of the noticed cleanup, relocated himself and some of his other belongings but left behind the pallets. When the sanitation crew arrives on the day of the cleanup, it thus encounters unattended wooden pallets (among hundreds of other items); no one is there to claim ownership and there is no way of knowing whether anyone had been using the pallets or intends to return for them. Because they are found in an encampment, they may be someone's property but given that they were left behind before a noticed cleanup, they could just as easily be abandoned or dumped. It is unclear whether the Order would prohibit the City from removing and/or discarding the pallets as "trash."

**2. Health and Safety Risks**

The Order is likewise unclear as to seizures related to "health and safety" risks. Consider one example discussed in the Court's MTD Order, which contemplates a ladder that on a sidewalk that "abuts a school and [] may be an attractive nuisance to children on their way home." Dkt. 36 at 9-10. It seems the Order would not prohibit the City from removing the ladder if it blocked ADA passage or if a child was about to climb on it—presumably because such circumstances would fall within the "exigency" exception. But "exigency" requires a showing that "there is compelling need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013). Thus, if the ladder allowed ADA clearance and no child was present when the City encountered it, under the "warrant or exception" standard, the City might be required to obtain a warrant before removing the ladder. That, however, seems inconsistent the Court's assurance that the Order does not "require the City 'to obtain warrants [or] articulate an exception on item-by-item basis.'" Dkt 54 at 20.

The ambiguity extends to the disposal of items too. In the MTD Order, the Court

suggested that wood infected with dry rot could be destroyed if it could not be "safely stored." Dkt. 36 at 11.  But under a "warrant or exception" standard, that is unclear.  In the case of dry rot, the health and safety risks may not be "exigent" but rather intensify over time as the rot spreads and infects other items.  In addition, in opposition to Plaintiffs' motion, the City submitted sworn testimony that the items at issue were destroyed for health and safety reasons, but the Court disregarded that expert testimony in favor of Plaintiffs' declarations about what they allegedly had been told about the items. *See* Dkt 54 at 9.  For these reasons, the City is uncertain what health and safety risks would qualify as exceptions to the warrant requirement under the Order.

**IV.   The Order Does Not Address Severance Of Removal And Disposal Clauses.**

The majority of the Order focuses on the destruction, rather than the removal, of Bulky Items.  *See, e.g.,* Dkt 54 at 2-3 (describing Provision as permitting destruction).  As discussed in the City's briefs, removal and destruction are distinct concepts in the ordinance and the law. *See, e.g.,* Dkt 42 at 15-16.  The Order notes that the ordinance contains a severance provision but does not address whether both removal and destruction are unconstitutional in all circumstances, and if not, whether severance of the offending clause may be appropriate. *See Lee v. Walters*, 433 F.3d 672, 677 (9th Cir. 2005) (holding that "district court was obligated to sever" the "purportedly infirm" provision from remainder of the statute).

**V.   The Order Fails To Consider Changed Circumstances.**

The City was prejudiced by the Court declining to consider changes to the City's enforcement procedures as a result of COVID-19, which are relevant to the analysis of Plaintiffs' alleged imminent harm and other elements of the PI Motion. *See* Dkt. 52 at 4.

Dated:  April 6, 2020              MICHAEL N. FEUER, City Attorney
                                   A. PATRICIA URSEA, Deputy City Attorney
                                   By:   /s/ A. Patricia Ursea
                                       A. PATRICIA URSEA, Deputy City Attorney
                                       Attorneys for Defendant,
                                       CITY OF LOS ANGELES