MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
GABRIEL DERMER, Assistant City Attorney (SBN 229424)
**FELIX LEBRON, Deputy City Attorney (SBN 232984)**
A. PATRICIA URSEA, Deputy City Attorney (SBN 221637)
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, GLADYS ZEPEDA, MIRIAM ZAMORA, ALI EL-BEY, PETER DIOCSON JR., MARQUIS ASHLEY, JAMES HAUGABROOK, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE and EQUITABLE PUBLIC SPENDING an unincorporated association,<br><br>       *Plaintiffs*,<br><br>  vs.<br><br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br><br>       *Defendant(s)*. | Case No.: 2:19-cv-6182-DSF-PLA<br>Assigned to Judge Dale S. Fischer<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT (FED. R. CIV. PROC. 12(b)(1), 12(b)(6))**<br><br>Date: May 18, 2020<br>Time: 1:30 p.m.<br>Ctrm: 7D<br>Judge: Hon. Dale S. Fischer<br><br>**Complaint Filed: July 18, 2019** |

**TO ALL PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 18, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the above titled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendant City of Los Angeles ("City" or "Defendant") will and hereby does, pursuant to Federal Rules of Civil Procedure (F.R.Civ.P.) 12(b)(1) and 12(b)(6), move for an order dismissing Counts 1-5 of the Second Amended Complaint filed by Plaintiffs Ktown For All ("KFA"), and Association for Responsible and Equitable Public Spending ("AREPS") (collectively "Organizational Plaintiffs"), and, pursuant to F.R.Civ.P. 12(b)(6), Count 3 of the SAC filed by Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamoa, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, and James Haugabrook (collectively "Individual Plaintiffs").

The City's Motion is brought on the grounds that:

i.      Organizational Plaintiffs have failed to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6) on Counts One and Two under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the United States Constitution and Article I, § 13 of the California Constitution;

ii.      KFA has failed to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6) on Counts Four and Five under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, §7(a) of the California Constitution;

iii.      All Plaintiffs have failed to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6) on Count 3 under 42 U.S.C. § 1983 under the Fourteenth Amendment of the United States Constitution for Vagueness and the Court previously dismissed Count 3 with prejudice (Dkt. No. 36);

iv.      Organizational Plaintiffs lack standing under Article III of the United States Constitution and prudential standing to pursue the asserted claims and requests for relief in Counts 1, 2, 4, and 5 of the SAC and, pursuant to F.R.Civ.P. 12(b)(1), should be dismissed for lack of subject matter jurisdiction.

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

The City's Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, upon all the pleadings and papers that are on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 2, 2020.

Dated:   April 9, 2020         MICHAEL N. FEUER, City Attorney
                               KATHLEEN KENEALY, Chief Assistant City Attorney
                               SCOTT MARCUS, Senior Assistant City Attorney
                               FELIX LEBRON, Deputy City Attorney
                               A. PATRICIA URSEA, Deputy City Attorney

                               By:  */s/Felix Lebron*
                                    Attorneys for Defendant
                                    CITY OF LOS ANGELES

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. SAC'S ALLEGATIONS, CLAIMS AND REQUESTS FOR RELIEF.......................2

   A.  KFA's Allegations.......................................................................................2

   B.  AREPS' Allegations....................................................................................3

   C.  LAMC 56.11 Provisions.............................................................................4

   D.  Asserted Claims and Requests for Relief....................................................5

III.  LEGAL STANDARDS .....................................................................................7

   A.  F.R.Civ.P. 12(b)(6) ....................................................................................7

   B.  F.R.Civ.P. 12(b)(1) ....................................................................................8

   C.  42 U.S.C. § 1983 .....................................................................................10

IV.  ARGUMENT ..................................................................................................11

   A. The Organizational Plaintiffs Fail to State any Claims under the Fourth
Amendment. ..................................................................................................11

   B. KFA Fails to State any Section 1983 Claims under the Fourteenth Amendment. ...14

      1.  The SAC Fails to Allege Facts Sufficient to State a Section 1983 Claim for
Violation of KFA's Personal Constitutional Rights. ...................................15

      2.  The SAC Fails to Allege Facts Sufficient to State a Section 1983 Claim for
Violation of KFA's Members' Constitutional Due Process Rights. ...........16

   C. The Third Cause of Action Should be Dismissed Again with Prejudice.................18

   D. KFA Lacks Standing to Pursue the Requested Claims and Relief. .........................19

   E. AREPS Lacks Taxpayer Standing.........................................................................22

V.  CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012)............................18

*Albright v. Oliver*, 510 U.S. 266 (1994) ...............................................................10

*Alderman v. U.S.*, 394 U.S. 165 (1967) ....................................................11, 12, 14

*Archuleta v. McShan*, 897 F.2d 495 (10th Cir. 1990)...........................................15

*ASARCO, Inc. v. Kadish,* 490 U.S. 605 (1991) ...........................................23, 24

*Ashcroft v Iqbal*, 556 U.S. 662 (2009).....................................................................7

*Bank of America Corp. v. City of Miami*, 197 L. Ed. 2d 678, 137 S. Ct. 1296 (2017) .....19

*Barrows v. Jackson*, 346 U.S. 249 (1953) ............................................16, 20

*Bayaa v. United Airlines, Inc.*, 249 F. Supp. 2d 1198 (C.D. Cal. 2002) .........................22

*Bell At. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................8

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .................................................15

*Bronson v. Johnson & Johnson, Inc.*, Case NO. C-12-04184 CRB, 2013 U.S. Dist.
   LEXIS 151842 (N.D. Cal. Oct. 22, 2013) ....................................................19

*Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) .............................................13

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989)...........................20

*Carey v. Piphus*, 435 U.S. 247 (1978)................................................................15

*Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011) ...............................24

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .........................................9

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)............................................8

*Cobine v. City of Eureka*, 250 F. Supp. 3d 423 (N.D. Cal. 2017) ..........................17

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986).............................................15

*County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 198 L. Ed. 2d 52 (2017) ................14

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)........................................11

*Craig v. Boren*, 429 U.S. 190 (1976)...............................................................20

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006).........................................8, 23, 24

*Doremus v. Bd. of Ed. Of Borough of Hawthorne,* 342 U.S. 429 (1952)........................23

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) .............................11

*Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir. 1982)..........................13

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ......................................................20

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) .............................................................10, 16

*Harris v. McRae*, 448 U.S. 297 (1980)............................................................................21

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)...................................................19

*Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157 (C.D. Cal. 2018)................12, 18

*Hooper v. City of Seattle*, Case No. C17-77RSM, 2017 U.S. Dist. LEXIS 164764 (W.D. WA Oct. 4, 2017), aff'd *Willis v. City of Seattle*, 943 F.3d 882 (9th Cir. 2019)..........18

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ....................................21

*James v. City & Cnty. of Honolulu*, 125 F. Supp. 3d 1080 (D. Haw. 2015) ....................18

*Johnson v. Knowles,* 113 F.3d 1114 (9th Cir. 1997) ........................................................10

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ...........................................15

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2nd Cir. 2015)........................................20, 21

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994)..............................8

*Kowalski v. Tesmer*, 543 U.S. 125  (2004) ..........................................................10, 16, 20

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012)...................................................18

*League of Women Voters v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155 (2nd Cir. 1984)...............................................................................21

*Legal Aid Society v. Legal Servs. Corp,* 145 F.3d 1017 (9th Cir. 1998) ...........................20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014)..............9, 19

*Lone Star Sec. & Video, Inc.*, 584 F.3d 1232 (2009)........................................................15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................9

*Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015)................................12, 13, 14

*Mabe v. San Bernardino Cnty.*, 237 F.3d 1101 (9th Cir. 2001) ......................................13

*Manuel v. City of Joliet*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017) ................................10

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .......................................................8

*McGowan v. Maryland*, 366 U.S. 420 (1960) ...........................................................15, 19

*Microsoft v. United States Dept. of Justice,* 233 F. Supp. 3d 887 (W.D. Wash. 2017) ....13

*Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005)............................................18

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).........................................................11

*Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365 (9th Cir. 1998) ..............*passim*

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) ...................................................8

*N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1 (1988) .........................................22

*Nat'l Coalition Gov't f Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D. Cal. 1997) ..........22

*Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,*
   508 U.S. 656 (1993)............................................................................................................22

*O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980) ....................................16

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ..............................................................................9

*Or. Prescription Drug Monitoring Program v. United States DEA,*
   860 F.3d 1228 (9th Cir. 2017) ..........................................................................................9

*Osborne v. County of Riverside*, 385 F. Supp. 2d 1048 (C.D. Cal. 2005)......................12

*Plumhoff v. Richard*, 572 U.S. 765 (2014) ................................................................11, 13

*Powers v. Ohio*, 499 U.S. 400 (1991) ..........................................................................16, 20

*Rakas v. Illinois*, 439 U.S. 128 (1978)......................................................11, 12, 14, 22

*Rent Stablization Ass'n v. Dinkins*, 5 F.3d 591 (2d Cir. 1993)........................................22

*Rizzo v. Goode*, 423 U.S. 362 (1976).....................................................................................10

*Rodriguez v. City of San Jose*, 930 F.3d 1123 (9th Cir. 2019) ........................................19

*Segura v. U.S.,* 468 U.S. 796 (1984).......................................................................................11

*Shipp v. Schaaf*, 379 F. Supp. 3d 1033 (N.D. Cal. 2019) ..................................................17

*Soldal v. Cook County*, 506 U.S. 56 (1992)..........................................................................11

*Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
   770 F.3d 1282, (9th Cir. 2014) .........................................................................................21

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) .................................8

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......................................................................8

*Sullivan v. City of Berkeley*, 383 F. Supp. 3d 976 (N.D. Cal. 2019) ...............................17

*Tileston v. Ullman*, 318 U.S. 44 (1943) ...............................................................................15

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005).....................................................16

*Town of Chester v. Laroe Estate, Inc.*, 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017).............9

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*U.S. Dep't of Labor v. Triplett*, 494 U.S. 715 (1990) .......................................................21

*U.S. v. Jones*, 565 U.S. 400 (2012) ...................................................................................11

*United States v. Jacobson*, 466 U.S. 109 (1984) ...............................................................11

*United States v. SDI Futures Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) .........................12

*Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017) ...............................................23, 24

*Warth v. Seldin*, 422 U.S. 490 (1975) .....................................................................8, 14, 21

*Wheeldin v. Wheeler*, 373 U.S. 647 (1963) .......................................................................13

*Wilkinson v. Austin*, 545 U.S. 209 (2005) .........................................................................15

*Wolff v. McDonnell*, 418 U.S. 539 (1974) .........................................................................14

*Young v. City of Los Angeles*, Case No. CV-20-00709-JFW(RAO),
    2020 U.S. Dist. LEXIS 23369 (C.D. Cal. Feb. 10, 2020) ...........................................18

*Zinermon v. Burch*, 494 U.S. 113(1990).........................................................................15

**Statutes**

42 U.S.C. § 1983 ...............................................................................................................10

**Other Authorities**

Los Angeles Municipal Code § 56.11 ...................................................................................4

U.S. Const. amend. IV ........................................................................................................11

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' SAC amended the claims and specific requests for relief asserted by Organizational Plaintiffs.  KFA and AREPS both assert facial and as-applied claims under 42 U.S.C. Section 1983 for violation of constitutional rights under the Fourth Amendment seeking injunctive and declaratory relief.  KFA also asserts facial and as-applied claims under Section 1983 for violation of constitutional rights under the Fourteenth Amendment's Due Process Clause seeking injunctive and declaratory relief.  Organizational Plaintiffs' assertion of only Section 1983 claims for constitutional violations is fatal to their ability to state a claim and the grounds upon which they can invoke the Court's jurisdiction.

The Supreme Court has long held that Section 1983 claims for violation of constitutional rights are personal rights that cannot be asserted vicariously.  In the case of the Fourth Amendment, the plaintiff asserting the claim must be the one "subjected to" the search or seizure in order to assert a Section 1983 claim.  The Supreme Court has determined that Fourth Amendment rights are so personal in nature and that they are more properly placed within the purview of substantive Fourth Amendment law rather than that of the traditional standing.  Neither KFA nor AREPS allege that the organizations were subjected to a search or seizure as alleged in the SAC.  The Supreme Court and Ninth Circuit have consistently rejected attempts to assert Section 1983 claims vicariously through the violations of the other individuals' Fourth Amendment rights.

Section 1983 claims for deprivations of property without due process are also personal rights that must be asserted by the person who was subjected to the deprivation in violation of the Fourteenth Amendment.  Here, again, KFA does not allege that the organization, itself, was subjected to a deprivation in violation of the organization's constitutional rights.  The Supreme Court limits the ability to assert Section 1983 claims for violations of other individuals' constitutional rights to those few cases where *jus tertii*, or third-party, standing requirements are met.  KFA cannot meet these

1  requirements to assert constitutional rights for violations of its unhoused members'
2  Fourteenth Amendment rights.  Section 1983 claims are tort claims.   When the alleged
3  tort is a violation of personal constitutional rights, individual participation is required
4  irrespective of whether damages are asserted, particularly where, as here, the adjudication
5  of the merits of the claims require fact specific analysis of reasonableness of the conduct
6  and process due for any loss of personal property.

7       The SAC as currently pled alleges no plausible Section 1983 claims for violations
8  of the Fourth or Fourteenth Amendments by the Organizational Plaintiffs.  These claims
9  should be dismissed.  In addition, KFA and AREPS lack standing to pursue these specific
10  Section 1983 claims.  Recent Supreme Court authority has clarified that the standing
11  analysis in cases, like *Havens Realty*, apply when assessing statutory standing under the
12  zone-of-interest test to determine whether an organization or party may assert claims
13  arising under federal statutes and not personal constitutional rights.  Thus, while the
14  Court determined that KFA alleged direct organization standing based on diversion of
15  resources and frustration of its mission under the FAC, these harms do not give rise to a
16  Section 1983 claim for violations of the Fourth and Fourteenth Amendments.  For these
17  reasons, and the additional ones below, the Organizational Plaintiffs should be dismissed
18  from this action for failure to state a claim and lack of subject matter jurisdiction.

19  **II.   SAC'S ALLEGATIONS, CLAIMS AND REQUESTS FOR RELIEF.**
20       **A. KFA's Allegations.**

21       As alleged in the operative SAC (Dkt. No. 43), KFA is an "unincorporated
22  membership organization in the Koreatown neighborhood in Los Angeles" "founded in
23  2018 to form connections between housed and unhoused residents of Koreatown and to
24  advocate for housing and shelters in Koreatown."  SAC ¶ 38.  KFA's mission is "to
25  support unhoused residents and to build connections between housed and unhoused
26  neighbors[.]"  *Id.* ¶ 39.  KFA conducts "outreach efforts" "to get to know its unhoused
27  neighbors and provides resources such as food, water, hygiene kits, and other consumable
28  items that their neighbors need."  *Id.*  KFA's members include "housed and unhoused

residents in Koreatown." *Id.*  The SAC does not allege that any of the Individual Plaintiffs are members of KFA or were members during the alleged incidents in the SAC.

The City allegedly "impaired and frustrated [KFA's] mission" because "[a]s a result of the City's practices, homeless residents have been moved around or been displaced from the neighborhood" making it "incredibly difficult for [KFA] to stay in contact with unhoused neighbors." *Id.*  The City's alleged "unlawful practices" caused KFA to divert resources from "connecting with neighbors" and "advocating for shelters" to helping unhoused residents "track down items that were seized" and replacing "an increasingly large number of tents, blankets and other items that were seized and destroyed by the City." *Id.* ¶ 41.  Specifically, "[o]n or about March 28, 2019, a member of [KFA] provided [plaintiffs Zamora and Zepeda] with a new tent." *Id.* ¶ 167.

KFA's unidentified "unhoused" members have allegedly "suffered harm as a result" of the City's enforcement of LAMC 56.11, including unspecified "loss of property" and purported deprivation of "constitutional and statutory rights" on unspecified dates and at unspecified locations. *Id.* ¶ 42.  KFA alleges that the City has decreased participation of KFA's "unhoused members" in KFA's "advocacy efforts" because its "unhoused members" must spend time "guarding" or "replacing" their property. *Id.* ¶ 43.

### B. AREPS' Allegations.

AREPS "is a membership organization comprised of taxpayers in Los Angeles that was founded to ensure that their tax dollars are used to promote responsible public spending." SAC ¶ 44.  AREPS advocates "for spending on public health, housing, and other public infrastructure for all residents in Los Angeles, including its unhoused residents and against the use of their tax dollars to enforce illegal laws that harm vulnerable residents of the City." *Id.*  "This includes the use of tax dollars to pay for the destruction and disposal of those residents' property." *Id.* "All members of AREPs are residents of the [City] and pay one or more municipal taxes to the [City], which provides revenue into the City's general fund." *Id.*  The SAC identifies two AREPS members –

Kristina Meshelski and James Parrot IV – who allegedly pay municipal taxes to the City. *Id.* ¶¶ 45-46.  The SAC does not allege that any of the Individual Plaintiffs are members of AREPS or were members during the alleged incidents in the SAC.

### C. **LAMC 56.11 Provisions.**

The City enacted the existing version of LAMC Section 56.11 on April 11, 2016. Request for Judicial Notice ("RJN"), **Ex. 1** (LAMC § 56.11(1)).  LAMC 56.11(11) designates the City's Department of Public Works, Bureau of Sanitation as the administrative agency for promulgating rules, protocols, and procedures for implementing and enforcing 56.11.  The Bureau of Sanitation adopted LAMC 56.11 Standard Operating Protocols.  RJN, **Ex. 2** ("SOPs"). LAMC 56.11 has twelve subsections, including the following relevant provisions.

LAMC 56.11 sets out a procedure in which the City may, after providing written notice, impound personal property stored on public areas.  LAMC § 56.11(3)(a); *id.* § 56.11(4)(a)(pre-removal notice); *id.* § 56.11(4)(b) (post-removal notice).  Any personal property impounded shall be stored and may be discarded if not claimed within 90 days after impoundment.  *Id.* § 56.11(5)(a)-(b).  LAMC 56.11 provides that the City may impound personal property stored on public areas without pre-removal notice and store for 90 days with post-removal notice in enumerated circumstances, including when personal property stored on public areas is: obstructing City operations (56.11(3)(c)); blocking or impeding accessibility as required under the Americans with Disabilities Act (56.11(3)(d)); blocking ingress or egress and within 10 feet of driveways, loading docks or entrances or exits (56.11(3)(e));  stored in a public area with a posted closure time after the posted closure time (56.11(3)(f)).  The City may also impound certain personal property with or without pre-removal notice and may discard such property stored on public areas without post-removal storage for up to 90 days if the property stored on public areas: "poses an immediate threat the health or safety of the public" (56.11(3)(g)); "constitutes evidence of a crime or contraband" (56.11(h)); or is a "Bulky Item" and not "designed to be used as a shelter" (56.11(3)(i)).

**D. <u>Asserted Claims and Requests for Relief.</u>**

The SAC amended the claims and specific requests for relief asserted by particular plaintiffs, but still alleges seven causes of action, including the following:

<u>First Cause of Action:</u>  All Plaintiffs assert facial claims under 42 U.S.C. § 1983 for violation of right to be secure from unreasonable seizures under the Fourth Amendment and Article I, Section 13 of the California Constitution.  SAC ¶¶ 232-238. The SAC alleges that the City violated the Plaintiffs' constitutional rights under Fourth Amendment and Article I Section 13 because under LAMC 56.11(3)(i) the City may seize and summarily destroy a Bulky Item without a warrant or probable cause and LAMC 56.11(10)(d) permits the City to arrest and prosecute anyone who interferes with the City's seizure of a Bulky Item.  SAC ¶¶ 234-235.  The SAC also alleges that City spent "municipal taxes paid by Plaintiffs" on "costs associated with the disposal of these items."  *Id.* ¶ 236.  Individual Plaintiffs seek "compensatory damages for the loss of and damage to property and other injuries to their persons" from the violation of their Fourth Amendment rights.  *Id.* ¶ 237.  Organizational Plaintiffs allege that they "are not seeking damages and move only for prospective relief, including injunctive and declaratory relief."  *Id.*  All Plaintiffs allege they are entitled to injunctive relief.  *Id.* ¶ 238.

<u>Second Cause of Action:</u>  All Plaintiffs assert as-applied claims under 42 U.S.C. § 1983 for violation of right to be secure from unreasonable seizures under the Fourth Amendment and Article I, Section 13 of the California Constitution.  SAC ¶¶ 239-247. The SAC alleges that the City violated "Plaintiffs' constitutional rights to be free from unreasonable seizure of their property by confiscating Plaintiff's property" and summarily destroying Plaintiffs' property "without a warrant and without probable cause" in violation of the Fourth Amendment.  *Id.* ¶ 240.  The SAC also alleges that the City's actions "taken pursuant to LAMC 56.11 and 56.11 Standard Operating Protocols" "as applied to Plaintiffs are unreasonable" in violation of the Fourth Amendment and Article I, Section 13.  *Id.* ¶ 244.  The SAC alleges that the City's spent "municipal taxes paid by Plaintiffs" on "costs associated with the disposal of these items."  *Id.* ¶ 245.

Individual Plaintiffs seek "compensatory damages" for "violation of their Fourth Amendment rights." *Id.* ¶ 246.  Organizational Plaintiffs allege they "are not seeking damages and seek only prospective relief, including injunctive and declaratory relief." *Id.* ¶ 246.  All Plaintiffs assert that they are "entitled to an injunction enjoining the City from continuing to engage in these customs, policies, and practices." *Id.* ¶ 247.

Third Cause of Action:  All Plaintiffs reassert claims under 42 U.S.C. § 1983 alleging that LAMC 56.11 is void for vagueness under the Fourteenth Amendment.  SAC ¶¶ 248-254.  The Court previously dismissed this claim with prejudice.  Dkt. No. 36.  The SAC alleges that Plaintiffs reasserted this claim to preserve all appeal rights.  SAC ¶¶ 248-254, fn. 27.

Fourth Cause of Action:  KFA and Individual Plaintiffs assert facial claims under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment and Article I, Section 7(a) of the California Constitution.  SAC ¶¶ 255-257.  The SAC alleges that the City violated KFA's and Individual Plaintiffs' constitutional rights under the Due Process Clause by permanently depriving "Plaintiffs of their of property" under LAMC 56.11(i) "without any due process, including adequate notice and an opportunity to be heard." *Id.* ¶ 256.  Individual Plaintiffs seek "compensatory damages" "for the loss of and damage to property and other injury to their persons from the violation of their Fourteenth Amendment rights." *Id.* ¶ 257.  KFA alleges it "is not seeking damages and moves only for prospective relief, including injunctive and declaratory relief." *Id.* Individual Plaintiffs and KFA allege they "are entitled to an injunction, enjoining the City from enforcing this unconstitutional law." *Id.* ¶ 258.

Fifth Cause of Action:  KFA and Individual Plaintiffs assert as-applied claims under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment and Article I, Section 7(a) of the California Constitution.  SAC ¶¶ 259-265. The SAC alleges the City deprived KFA and Individual Plaintiffs of their "vested interest in property" by "seizing their property" and "destroying their property" without adequate notice and opportunity to be heard" in violation of the Due Process Clause of the

6

Fourteenth Amendment. *Id.* ¶¶ 260-262.   The SAC also alleges that the City's actions "taken pursuant to LAMC 56.11 and the 56.11 Standard Operating Protocols" as applied to KFA and Individual Plaintiffs have violated their constitutional rights to due process under the Fourteenth Amendment and Article I, Section 7(a). *Id.* ¶ 263.  Individual Plaintiffs seek "compensatory damages for loss of and damage to property and other injuries to their persons from violation of their Fourteenth Amendment rights." *Id.* ¶ 264. KFA alleges it "is not seeking damages and moves only for prospective relief, including injunctive and declaratory relief." *Id.*  KFA and Individual Plaintiffs assert they are "entitled to injunctive relief" enjoining the City's "customs, policies and practices" that have alleged caused harm to KFA and Individual Plaintiffs. *Id.* ¶ 265.

Sixth Cause of Action:  Only Plaintiff El-Bey asserts a claim against the City for an alleged violation of California Civil Code Section 52.1 (Bane Act).  SAC ¶¶ 266-271.

Seventh Cause of Action:  Individual Plaintiffs allege claims under California Government Code Section 815.6 for the alleged violation of a mandatory duty imposed on the City under California Civil Code Section 2080 *et seq.* to store all unattended property seized in public areas for 90 days, and store all attended property seized in public areas for 60 days.  SAC ¶¶ 272-275.  Individual Plaintiffs seek "compensatory damages" including for "emotional distress, anxiety, and pain and suffering." *Id.* ¶ 275.

## III.  **LEGAL STANDARDS**

### A. **F.R.Civ.P. 12(b)(6)**

To withstand a motion to dismiss under F.R.Civ.P. 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*  A complaint must assert more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

1   *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In sum, for a complaint to survive

2   a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

3   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

4   *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The purpose of this

5   standard is "to give fair notice and to enable the opposing party to defend itself

6   effectively" and to ensure "that it is not unfair to require the opposing party to be

7   subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d

8   1202, 1216 (9th Cir. 2011).

9        **B.  F.R.Civ.P. 12(b)(1)**

10       Plaintiffs bear the burden of establishing subject matter jurisdiction.  *Kokkonen v.*

11   *Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Federal courts are

12   presumed to lack jurisdiction, unless the party asserting jurisdiction affirmatively

13   establishes to the contrary.  *Id.*  "[N]o principle is more fundamental to the judiciary's

14   proper role in our system of government than the constitutional limitation of federal-court

15   jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

16   332, 341 (2006).  One element of the "case-or-controversy" requirement is that plaintiffs

17   must establish that they have standing to sue.  *Clapper v. Amnesty Int'l USA*, 568 U.S.

18   398, 408 (2013).  Because Article III's standing requirements limit subject matter

19   jurisdiction, a plaintiff's standing to pursue a claim is properly challenged by a F.R.Civ.P.

20   12(b)(1) motion to dismiss.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

21       The party invoking federal jurisdiction bears the burden of establishing the

22   elements for Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L.

23   Ed. 2d 635 (2016).  "[T]he question of standing is whether the litigant is entitled to have

24   the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422

25   U.S. 490, 498 (1975).  "This inquiry involves both constitutional limitations on federal-

26   court jurisdiction and prudential limitations on its exercise."  *Id.*  "Where, as here, a case

27   is at the pleading stage, the plaintiff must 'clearly… allege facts demonstrating' each

28   element." *Spokeo,* 136 S. Ct. 1540, 1547.  "[S]tanding is not dispensed in gross." *Town*

*of Chester v. Laroe Estate, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017).  "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted."  *Or. Prescription Drug Monitoring Program v. United States DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (emphasis in original).

The "irreducible constitutional minimum" of Article III standing requires that Plaintiffs establish (1) an injury-in-fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical; (2) that is causally connected to the City's challenged conduct and fairly traceable to the City's challenged and not the result of independent action of some third party not before the court; and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A party seeking prospective and injunctive relief must also establish "continuing, present adverse effects" due to exposure to the City's past illegal conduct, *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), or a sufficient likelihood that the Plaintiffs will again be wronged in similar way.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The Supreme Court recently clarified its "prudential" branch of standing, which encompassed three broad principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 126 (2014). In *Lexmark*, the Supreme Court held that the term "prudential standing" was a misnomer for the zone-of-interests analysis, which asks whether "this particular class of persons has a right to sue under this substantive statute." *Id.* at 127.  The Court clarified that generalized grievances were barred for constitutional, not prudential, reasons because such cases were not justiciable "cases" or "controversies" under Article III. *Id.* at 127,

fn. 3. The Court deferred consideration of the doctrine of third-party standing for another day. *Id.* (citing *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004)).

### C. 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "Section 1983 creates a species of tort liability for the deprivation of any rights, privileges or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916, 197 L. Ed. 2d 312 (2017) (internal citations omitted). "The plain words of the statute impose liability – whether in the form for payment of redressive damages or being placed under an injunction – only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

"Section 1983 is not itself a source of substantive rights." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Section 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-285 (2002). The threshold inquiry in a Section 1983 suit is to "identify the specific constitutional right at issue" and determine the "elements of … and action seeking damages for its violation." *Manuel*, 137 S. Ct. 911, 920.

To state a claim under Section 1983, Plaintiffs must allege facts showing that a person acting under color of law deprived them of the specific constitutional rights at issue. *See id.; Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir. 1997). To state a claim against a municipal entity, the complaint must also contain factual allegations showing that a "policy, practice, or custom of the entity" was "a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

10

Cir. 2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  More specifically, a plaintiff must allege facts showing that "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Id*.

## IV.   ARGUMENT

### A. The Organizational Plaintiffs Fail to State any Claims under the Fourth Amendment.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated…." U.S. Const. amend. IV.  "The Fourth Amendment covers only searches and seizures." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).  "The text of the Fourth Amendment reflects its close connection to property, since otherwise it would have referred simply to 'the right of the people to be secure against unreasonable searches and seizures'; the phrase 'in the persons, houses, papers, and effects' would have been superfluous." *U.S. v. Jones*, 565 U.S. 400, 405 (2012). "Different interests are implicated by a seizure than by a search." *Segura v. U.S.,* 468 U.S. 796, 806 (1984).  "A seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Id.; see also United States v. Jacobson*, 466 U.S. 109, 113 (1984).  To establish that a seizure violated the Fourth Amendment, a plaintiff must allege (1) "some meaningful interference with an individual's possessory interests in that property" and (2) that the interference was "unreasonable" based on a "careful balancing of governmental and private interests." *Soldal v. Cook County*, 506 U.S. 56, 60 (1992) (citations omitted).

The Supreme Court has long held that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. U.S.*, 394 U.S. 165, 174 (1967); *Plumhoff v. Richard*, 572 U.S. 765, 778 (2014) (same); *see also Rakas v. Illinois*, 439 U.S. 128, 138-143 (1978).  "In order to qualify as 'a person aggrieved by an unlawful search and seizure' one must have been a

1  victim of a search or seizure…." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186 (9th

2  Cir. 2015) (quoting *Alderman*, 394 U.S. at 173) (affirming summary judgment in favor of

3  defendants on Section 1983 Fourth Amendment claim).

4        In *Rakas*, the Supreme Court explained that Fourth Amendment standing, unlike

5  Article III standing, is a matter of substantive Fourth Amendment law. *Rakas*, 439 U.S.

6  at 139.  "[T]he issue of standing involves two inquiries: first, whether the proponent of a

7  legal right has alleged 'injury in fact,' and second, whether the proponent is asserting his

8  own legal rights and interests rather than basing his claim for relief upon the rights of

9  third parties." *Id.*  "But this Court's long history of insistence that Fourth Amendment

10  rights are personal in nature has already answered many these traditional standing

11  inquiries, and we think that definition of those rights is more properly placed within the

12  purview of substantive Fourth Amendment law than within that of standing."  *Id.* at 140;

13  *see also United States v. SDI Futures Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009) ("A

14  person has standing to sue for violation of this particular 'right of the people' only if there

15  has been a violation 'as to him' personally.").

16        Likewise, in a Section 1983 action, the "general rule is that only the person whose

17  Fourth Amendment rights were violated can sue to vindicate those rights."  *Moreland v.*

18  *Las Vegas Metro. Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998); *Herd v. Cnty. of San*

19  *Bernardino*, 311 F. Supp. 3d 1157, 1163 (C.D. Cal. 2018) ("The United States Supreme

20  Court has held that constitutional rights under 42 U.S.C. § 1983 are personal to the

21  individual and cannot be asserted by a third party."); *Osborne v. County of Riverside*, 385

22  F. Supp. 2d 1048, (C.D. Cal. 2005) ("While a person has standing to challenge the

23  seizure of his or her own person, a person does not have standing to vicariously assert the

24  Fourth Amendment rights of another person.") (internal citations omitted).

25        An entity, like a corporation, has standing under the Fourth Amendment to

26  challenge a search of corporate premises and seizure of corporate records.  *See SDI*

27  *Futures,* 568 F.3d at 694, fn 3.  Here, that SAC does not allege that the Organizational

28  Plaintiffs, *themselves*, were "subjected to" any unreasonable seizure interfering with

Organizational Plaintiffs' possessory interests in the organizations' property.  *See* SAC ¶¶ 38-46, 87, 232-247.  Without an alleged search or seizure, the SAC fails to state a claim for violation of the Organizational Plaintiffs' Fourth Amendment rights.  *See Wheeldin v. Wheeler*, 373 U.S. 647, 649-650 (1963); *see also Lyall*, 807 F.3d at 1186, fn.7 (Article I, Section 13 of the California Constitution does not provide greater protection against searches and seizures than the Fourth Amendment).

KFA and AREPS both allege that the City's seizure and destruction of unidentified homeless residents' property have caused harms to the organizations.  *See* SAC ¶¶ 38-46, 87, 232-247.  But Organizational Plaintiffs cannot rely on the Fourth Amendment rights of others to support Section 1983 claims for violation of the Organizational Plaintiffs' Fourth Amendment rights.  As discussed above, the Supreme Court and Ninth Circuit have expressly rejected such vicarious claims under the Fourth Amendment.  *See Plumhoff*, 572 U.S. at 778 (passenger's presence in the car could not enhance respondent's Fourth Amendment rights); *Moreland*, 159 F.3d at 369 (survivors of an individual killed as a result of excessive force could not assert Section 1983 Fourth Amendment claim, unless state law authorized a survival action); *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 69 (1974) (California Bankers Association and Security National Bank could not vicariously assert Fourth Amendment claims on behalf of depositor bank customers); *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (plaintiff had no Fourth Amendment claim based on violations of daughter's Fourth Amendment rights); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1248 (9th Cir. 1982) ("Ellwest has no standing to assert the [F]ourth [A]mendment rights of its customers" based on the "threat of dragnet searches or spying"); *see also Microsoft v. United States Dept. of Justice,* 233 F. Supp. 3d 887, 912-916 (W.D. Wash. 2017) (Microsoft lacked standing to assert Fourth Amendment challenge to Electronic Communications Privacy Act based on alleged violation of Microsoft users' Fourth Amendment rights, and summarizing relevant Supreme Court and Ninth Circuit authorities).

In addition, any attempt to allege Fourth Amendment claims on behalf of

1    Organizational Plaintiffs' members is effectively foreclosed under *Rakas* and the other

2    cases cite above, which hold that Fourth Amendment rights are personal in nature and

3    more properly placed within the purview of substantive Fourth Amendment law than that

4    of standing. *See, e.g., Rakas,* 439 U.S. at 140; *Lyall*, 807 F.3d at 1186. The seminal case

5    for an organization's representative standing – *Warth v Seldon* – is expressly cited in

6    *Rakas* as one the traditional standing cases that did not apply to claims under the Fourth

7    Amendment. *Id.* at 139. As discussed below, assuming, *arguendo,* that this were not the

8    case, *Warth* would still preclude Organizational Plaintiffs from asserting Section 1983

9    claims for violations of its members' Fourth Amendment rights. *Warth* permits

10   representative claims only when the "the nature of the claim and of the request for relief

11   sought make the individual participation of each injured party indispensable to proper

12   resolution of the cause." *Warth*, 422 U.S. at 511. The cases cited above make clear that

13   individual participation is necessary to pursue a personal claim for violation of the Fourth

14   Amendment. *Rakas,* 439 U.S. at 139-140*; Alderman*, 394 U.S. 165, 174 (1967);

15   *Moreland*, 159 F.3d at 369; *see also County of Los Angeles v. Mendez*, 137 S. Ct. 1539,

16   1547, 198 L. Ed. 2d 52 (2017) ("[T]he objective reasonableness analysis must be

17   conducted separately for each search or seizure that is alleged to be unconstitutional.").

18   KFA and AREPS cannot state any plausible claims (facial or as-applied) for violation of

19   the Fourth Amendment under Section 1983. The Court should dismiss these claims with

20   prejudice.

21          **B.   <u>KFA Fails to State any Section 1983 Claims under the Fourteenth</u>**

22              **<u>Amendment.</u>**

23          The Fourteenth Amendment provides that the government shall not "deprive any

24   person of life, liberty, or property, without due process of law," and protects "the

25   individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539,

26   558 (1974). A plaintiff presenting a procedural due process claim must allege that: (1)

27   the plaintiff had "a liberty or property interest which has been interfered with by the State

28   . . ." and (2) the procedures employed to deprive the plaintiff of liberty or property were

14

constitutionally insufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty or property is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).  The requirements of due process are flexible and the procedural protections required are as the particular situation demands. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005).  For example, "[t]he government need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose." *Lone Star Sec. & Video, Inc.*, 584 F.3d 1232, 1238 (2009).

### 1. The SAC Fails to Allege Facts Sufficient to State a Section 1983 Claim for Violation of KFA's Personal Constitutional Rights.

The principle that constitutional rights are personal and may not be asserted vicariously also applies to the Fourteenth Amendment.  *Moreland*, 159 F.3d at 370-371; *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973); *McGowan v. Maryland*, 366 U.S. 420, 429 (1960); *Tileston v. Ullman*, 318 U.S. 44, 46 (1943).  Thus, the general rule that only the person whose constitutional rights were violated may sue to vindicate those rights also applies to Section 1983 claims for violation of the Due Process Clause.  *Moreland*, 159 F.3d at 370-371; *see also Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) ("We must keep firmly in mind the well-settled principle that a section 1983 claim must be based upon  the violation of plaintiff's personal rights and not the rights of someone else."); *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) ("Coon, like all other persons who claim a deprivation of their constitutional rights, were required to prove some violation of their personal rights.").

KFA's Section 1983 claims under the Fourteenth Amendment fail for the same

1  reasons its Fourth Amendment claim failed.  Specifically, the SAC contains no well-
2  pleaded allegations identifying any incidents when KFA suffered a deprivation of its
3  personal property without due process.  *See* SAC ¶¶ 38-43; *Moreland*, 159 F.3d at 370-
4  371 ("Appellants identified no life, liberty, or property interest of which they were
5  deprived" in violation of the Due Process Clause).  Rather, KFA alleges that it suffered
6  indirect harms from the City's removal and destruction of other unidentified homeless
7  residents' personal property in violation of their Due Process rights under the Fourteenth
8  Amendment.  *Id.*  Specifically, that KFA's mission was frustrated and KFA had to divert
9  volunteer hours and financial resources toward helping unhoused residents track down
10 property and replace tents, blankets, and other items.  SAC ¶ 41.  These indirect harms
11 are insufficient to state a Section 1983 claim for violation of KFA's Due Process rights
12 under the Fourteenth Amendment.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748,
13 767-768 (2005); *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787-88 (1980)
14 (procedural due process protections do not extend to those who suffer indirect harm from
15 government action); *Gonzaga Univ.*, 536 U.S. at 283-284 ("We now reject the notion that
16 our cases permit anything short of an unambiguously conferred right to support a cause of
17 action brought under § 1983…. Accordingly, it is rights, not the broader or vaguer
18 'benefits' or 'interests,' that may be enforced under the authority of that section.")

19              2.  The SAC Fails to Allege Facts Sufficient to State a Section 1983 Claim
20                  for Violation of KFA's Members' Constitutional Due Process Rights.

21         KFA has not established any basis on which to assert Section 1983 claims
22 vicariously based on KFA's unhoused members' constitutional rights.  *Moreland*, 159
23 F.3d at 370-371.  The Supreme Court has allowed a party to pursue Section 1983 claims
24 for personal constitutional violations to third parties not before the Court only in limited
25 circumstances.  *See Kowalski,* 543 U.S. at 128-130; *Powers v. Ohio*, 499 U.S. 400, 410-
26 411 (1991); *Barrows v. Jackson*, 346 U.S. 249, 256-258 (1953).  KFA's third-party, or
27 *jus tertii*, standing to pursue Section 1983 claims for its members raises 12(b)(1) issues.
28         Assuming the Court finds that KFA has third-party standing, the SAC contains no

1   well pleaded allegations regarding the Section 1983 claims asserted on behalf of KFA's

2   unhoused members.  SAC ¶¶ 255-265.  The SAC alleges that KFA's "unhoused"

3   members "have been subjected to the City's customs, policies and practices, including the

4   continued enforcement of LAMC 56.11" and "suffered harm, including the loss of

5   property and the deprivation of their constitutional rights."  SAC ¶ 42.

6         LAMC 56.11 and the SOPs contain numerous provisions regarding pre-removal

7   notice of property, post-removal notice, storage of property for 90 days, removal of

8   property without notice in specified circumstances, the removal and discard of property

9   without storage in specified instances.  *See* Section II.C, supra, LAMC 56.11, RJN Ex. B.

10  The SAC contains no details on when incidents involving KFA's unhoused members

11  occurred, whether pre-removal or post-removal notice was provided, whether property

12  stored or discarded, if the property discarded was a bulky item, hazardous material,

13  contraband, or other personal property, whether the property was blocking ADA-access

14  or obstructing entrances, etc.  These allegations are insufficient to state a cognizable

15  Section 1983 claim against the City under *Monell*.

16        Courts have found that providing pre-removal notice, post-removal notice, and

17  storing non-hazardous property before discarding satisfies Due Process for encampment

18  cleanups.  *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 435 (N.D. Cal. 2017) (plaintiff

19  failed to state a claim for unconstitutional deprivation of property where ordinance

20  provided 24-hour notice prior to the impounding of personal property and required

21  storage of property for 90 days before being discarded); *Shipp v. Schaaf*, 379 F. Supp. 3d

22  1033, 1037 (N.D. Cal. 2019) (finding that procedures similar to 56.11 SOPs provided

23  adequate due process through advance notice and post-seizure remedies); *Sullivan v. City*

24  *of Berkeley*, 383 F. Supp. 3d 976 (N.D. Cal. 2019) (due process is satisfied where law

25  enforcement takes reasonable "takes reasonable steps to give notice that the property has

26  been taken so the owner can pursue available remedies for its return."); *Young v. City of*

27  *Los Angeles*, Case No. CV-20-00709-JFW(RAO), 2020 U.S. Dist. LEXIS 23369 at * 13-

28  17 (C.D. Cal. Feb. 10, 2020) (dismissing complaint for failure to allege facts regarding

17

1   whether notice was provided before removal of property, whether property was stored,

2   and what property was discarded.); *James v. City & Cnty. of Honolulu*, 125 F. Supp. 3d

3   1080, (D. Haw. 2015) (ordinance requiring 24-hour hour written notice before items are

4   seized, post seizure notice where seized items may be recovered, and storage of items for

5   at least 30 days before destruction satisfies due process); *see also Hooper v. City of*

6   *Seattle*, Case No. C17-77RSM, 2017 U.S. Dist. LEXIS 164764, at *38-43 (W.D. WA

7   Oct. 4, 2017), aff'd *Willis v. City of Seattle*, 943 F.3d 882 (9th Cir. 2019).

8          The Court must "assess due process case-by-case based on the total

9   circumstances." *Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005).

10   "Vague allegations that at some time Plaintiff's property was seized without prior notice

11   or may have been destroyed are not sufficient to provide Defendant notice of plaintiff's

12   claims." *Young*, 2020 U.S. Dist. LEXIS 23369 at * 15.  And to sufficiently plead a

13   *Monell* claim, allegations in a complaint "must contain sufficient allegations of

14   underlying facts to give fair notice and enable the defending party to defend itself

15   effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012);

16   *Herd*, 311 F. Supp. 3d at 1168 (alleging that "Defendants acted with deliberate

17   indifference" is conclusory and does not show that policies were deficient or the

18   constitutional injury likely to occur.").  KFA's Section 1983 claims for Due Process

19   should be dismissed.

20          **C. <u>The Third Cause of Action Should be Dismissed Again with Prejudice.</u>**

21          The Court dismissed the third cause of action with prejudice.  Dkt. No. 36.

22   Plaintiffs' realleged the claim to preserve all rights.  SAC ¶¶ 248-254, fn. 27.  The Ninth

23   Circuit has made clear that claims dismissed with prejudice do not need to be repled in a

24   subsequent amended complaint to preserve them for appeal.  *Lacey v. Maricopa Cnty.*,

25   693 F.3d 896, 928 (9th Cir. 2012).  The Court should dismiss this claim again with

26   prejudice.  *Id.; see also Bronson v. Johnson & Johnson, Inc.*, Case NO. C-12-04184

27   CRB, 2013 U.S. Dist. LEXIS 151842, at * 8-9 (N.D. Cal. Oct. 22, 2013) (granting

28   motion to dismiss realleged claims previously dismissed with prejudice under *Lacey*).

### D. **KFA Lacks Standing to Pursue the Requested Claims and Relief.**

An organization can establish standing under one of two theories: (1) the organization can sue on its *own* behalf for injuries to the organization *itself*; or (2) the organization can sue in a representative capacity on behalf of its members for injuries to one or more of its members. *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019). The Court previously ruled that KFA adequately alleged organizational standing based on diversion of resources and frustration of KFA's mission. Dkt. No. 37 at 6-11.

The Supreme Court's decision in *Lexmark* held that zone-of-interests test under its prudential branch of standing referred to statutory standing and whether a plaintiff was within the zone of interests protected by the federal statute invoked. *Lexmark Int'l*, 572 U.S. at 125-128; *Bank of America Corp. v. City of Miami*, 197 L. Ed. 2d 678, 687-88, 137 S. Ct. 1296 (2017). *Lexmark* distinguished statutory standing from its line of cases addressing standing to assert constitutional claims on behalf of third parties. and tests for determining third-party standing to assert constitutional claims. *Lexmark Int'l*, 572 U.S. at 127, fn 3. In *Bank of America*, the Supreme Court analyzed its prior cases addressing statutory standing and confirmed that *Havens Realty* addressed an organization's standing to assert claims under a federal statue. *See Bank of America Corp.*, 197 L. Ed. 2d 678, 687-88 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) for proposition that nonprofit organization that spent money to combat housing discrimination established statutory standing).

*Lexmark* and *Bank of America* confirm that *Havens* and its progeny apply only when the Court is assessing an organization's statutory standing to assert claims under federal statutes. Indeed, economic injuries, like diversion of resources under *Havens*, are generally insufficient to establish a constitutional violation. *E.g., McGowan*, 366 U.S. at 429 (1960). Here, KFA alleges no constitutional injury to itself to support its Section 1983 claims. And to the extent that KFA alleges representative claims on behalf of its members, the KFA's showing of standing under *Havens* is irrelevant. *See Legal Aid Society v. Legal Servs. Corp,* 145 F.3d 1017, 1030-31 (9th Cir. 1998); *c.f., Knife*

*Rights, Inc. v. Vance*, 802 F.3d 377, 388-89 (2nd Cir. 2015) (suggesting that organization might have claim for damages for diverted resources, but not injunctive relief because organization itself never faced imminent threat of prosecution under challenged statute); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 237 (1990) (motels owners' right to assert constitutional rights of patrons for violation of association rights unclear but would be addressed under *jus tertii* standing).

The Supreme Court applies its third-party standing test for cases involving the constitutional rights of third parties. *See Kowalski,* 543 U.S. at 128-130. As discussed above, constitutional rights under the Fourth and Fourteenth Amendments are personal rights, subject to limited exceptions based on the Court's third-party standing cases. *See id.; Powers,* 499 U.S. at 410-411. The Supreme Court established a three-part test under *Powers* to determine whether third-party standing was appropriate: the litigant must have suffered an injury in fact, thus giving him or her a sufficient concrete interest in the outcome of the dispute; the litigant must have a close relationship to the third party, and there must be some hindrance to the third party's ability to protect his or her own interests." *Powers,* 499 U.S. at 411.

The Supreme Court has employed its use of third-party standing sparingly. *See e.g., Barrows*, 346 U.S. at 254-258 (holding, in a suit to enforce a racially restrictive land covenant, that white sellers of land have standing to litigate the constitutional rights of potential black purchasers); *Craig v. Boren*, 429 U.S. 190, 195 (1976) (holding that a vendor of alcoholic beverages had standing to bring an equal protection challenge to a law setting a different drinking age for males and females on behalf of her would-be customers); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623-24 (1989) (holding that law firm had third-party standing to challenge a drug forfeiture statute on behalf of Sixth Amendment rights of an existing client where forfeited assets were needed to pay attorney's fees); *Powers*, 499 U.S. at 415 (permitting a criminal defendant to assert rights of juror discriminated against because of race); *see also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720-21, (1990) (holding that an attorney who had

allegedly collected illegal fees under the Black Lung Benefits Act had standing to raise black lung benefit claimants' due process right to legal representation).  Here, the SAC contains no allegations supporting third-party standing under *Powers*.

The three-prong test for an organization's representative standing requires that the organization show that:  (1) "its members would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Warth*, 422 U.S. at 511.  Courts have held that organizations lack standing to assert representative Section 1983 claims on behalf of members because Section 1983 secures personal rights to those purportedly injured.  *See League of Women Voters v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2nd Cir. 1984); *Knife Rights,* 802 F.3d at 387.

KFA alleges that it only seeks injunctive and declaratory relief and not damages. But Section 1983 claims are tort actions and the analysis of the alleged injuries will require participation of the KFA members alleging harm to litigate the process due and reasonableness, the extent of any constitutional injuries, and the scope of any prospective relief.  *Harris v. McRae*, 448 U.S. 297, 321 (1980) (association lacked standing to assert members' rights for injunction of the Hyde Amendment because resolution of claims under Free Exercise Clause required participation of individual members to resolve claims); *Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292-93 (9th Cir. 2014) (finding that association lacked standing to pursue claims on behalf of its members for declaratory and injunctive relief because the "multiple variations, specific to individual members" were "not susceptible to judicial treatment as systematic policy violations that make extensive individual participation unnecessary."); *Rent Stablization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (association lacked standing to pursue due process claim because individualized proof necessary to determine whether there was taking was essential in finding a

21

violation of due process); *Nat'l Coalition Gov't f Burma v. Unocal, Inc.*, 176 F.R.D. 329, (C.D. Cal. 1997) ("FTUB's claim for injunctive relief fails the third prong of the *Hunt* test" because the complaint asserts tort claims "and those torts can only be adjudicated by considering the testimony and evidence of the people allegedly" injured).

Moreover, KFA has not established standing for prospective relief even for a facial challenge. *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 10 n.4, (1988) (associational standing is appropriate in a facial challenge to a law where "there is complete identity between the interests of the consortium and those of its member[s] . . . and the necessary proof could be presented in a group context."). KFA alleges it has housed and unhoused members and asserts rights for other unhoused residents. SAC ¶¶ 38-43. *See id.;* see also *Bayaa v. United Airlines, Inc.*, 249 F. Supp. 2d 1198, 1204 (C.D. Cal. 2002) ("the Court declines to acknowledge injuries to constituents as satisfying the representational requirement of injury to members under *Warth*"); *c.f., Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 669 fn.6 (1993) (permitting association to assert Equal Protection claim based on racial discrimination for "the inability to compete on an equal footing in the bidding process, not the loss of a contract" but also noting that association standing under Hunt not addressed in fn6).

In sum, KFA lacks standing under any theory to pursue the SAC's alleged Section 1983 claims. KFA should be dismissed for lack jurisdiction.

### E. **AREPS Lacks Taxpayer Standing.**

AREPS asserts only Section 1983 claims for violations of the Fourth Amendment. AREPS standing is therefore addressed under substantive Fourth Amendment law. Section III.A., *supra*; *Rakas*, 439 U.S. at 140. The Court previously dismissed AREPS for failure to adequately allege taxpayer standing. Dkt. No. 37 at 15-17. The Court Order concluded that "there are no incremental costs – but rather likely savings – from the fact that the City is not storing more items" and that AREPS "fails to show that the rapid response teams would not otherwise conduct sweeps or seize and destroy property

1  if the challenged provisions were otherwise found to be unconstitutional." Dkt. No 37 at

2  18. The SAC contains a new allegation that the City pays a "tipping fee" when bulky

3  items are illegally seized and thrown away. SAC ¶ 87. The SAC also alleges that the

4  "more items that are unconstitutionally seized and destroyed, the more additional costs

5  there are to the City, and therefore, to taxpayers." AREPS still contends that it has

6  standing to pursue Section 1983 claims for injunctive and declaratory relief for violations

7  of the Fourth Amendment based solely on its payment of municipal taxes to the City's

8  general fund.

9      AREPS still fails to allege facts establishing that it has a "direct and immediate"

10  "interest in the application" of the City's "municipal revenues" and that its claims for

11  prospective relief are redressable. *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 613 (1991);

12  *Doremus v. Bd. of Ed. Of Borough of Hawthorne,* 342 U.S. 429, 434 (1952); *Villa v.*

13  *Maricopa Cty.*, 865 F.3d 1224, 1229 (9th Cir. 2017); *DaimlerChrysler Corp. v. Cuno*,

14  547 U.S. 332, 346 & n.4 (2006).

15      The Ninth Circuit held that a municipal taxpayer must allege a "direct injury,

16  pecuniary or otherwise" just like a state taxpayer and as required under *ASARCO. Villa*,

17  865 F.3d at 1229. In *Villa*, the plaintiff asserted individual and class claims for, among

18  other things, declaratory and injunctive relief against Maricopa County defendants for

19  alleged violations of Arizona's wiretapping statute. *See id.* at 1226-28. The plaintiff

20  alleged standing to seek prospective relief based on her status as a taxpayer and the

21  allegation that the defendants used "county taxes to investigate, detain, prosecute and

22  imprison persons based on communications from illegal wiretaps." *Id.* The Ninth Circuit

23  held that plaintiff's status as a municipal taxpayer did not confer Article III standing to

24  seek prospective relief. *Id.* Specifically, the Ninth Circuit held: "In *Asarco Inc. v.*

25  *Kadish*, 490 U.S. 605 (1989), the Supreme Court held that a state taxpayer must allege

26  'direct injury,' pecuniary or otherwise' to have taxpayer standing under Article III…. We

27  see no reason why the standing analysis in a non-establishment clause case should be

28  different for a county taxpayer challenging an allegedly illegal act of the county….

Villa's allegation that her taxes have been used to finance Maricopa County officials who have 'intercepted communications in violation of Title III' is an insufficient allegation of direct injury within the meaning of *Asarco*." *Id.* (internal citations omitted).

AREPS has not shown or established redressability. As the Court previously noted, AREPS cannot show that the City's expenditures would decrease in disposing of items if the ordinance was ruled unconstitutional and, in fact, the City would likely incur increased costs in storage. *See.* Dkt. No. 37 at 17-18. Moreover, it is pure speculation to assume that the City would use any excess any costs savings for taxpayer relief as opposed to allocating them for another purpose. *See DaimlerChrysler*, 547 U.S. at 344; *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 136 (2011). AREPS bears the burden to establish a "direct injury" and redressability and has not done so. AREPS lacks standing and must be dismissed. *Villa*, 865 F.3d at 1229; *ASARCO*, 490 U.S. at 613. It is clear that AREPS cannot state any cognizable Section 1983 claims against the City under any theory. AREPS should be dismissed with prejudice.

## V.  **CONCLUSION**

For the reasons stated above, the Court should dismiss KFA's First, Second, Fourth and Fifth causes of action for failure to state a claim and lack of standing, dismiss AREPS First and Second Causes of Action for failure to state a claim and for lack of standing, and dismiss the Third Cause of Action again with prejudice.

Dated:   April 9, 2020                MICHAEL N. FEUER, City Attorney
                                      KATHLEEN KENEALY, Chief Assistant City Attorney
                                      SCOTT MARCUS, Chief, Civil Litigation Branch
                                      FELIX LEBRON, Deputy City Attorney
                                      A. PATRICIA URSEA, Deputy City Attorney

                                      By:   /s/ Felix Lebron
                                            FELIX LEBRON
                                            Deputy City Attorney
                                            Attorneys for Defendant
                                            CITY OF LOS ANGELES

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT