Shayla Myers (SBN 264054)
Mallory Andrews (SBN 312209)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 South Broadway
Los Angeles, CA 90003
Telephone: (213) 640-3983
Email:  smyers@lafla.org
         mandrews@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora, Ali El-Bey, James Haugabrook, Pete Diocson Jr., Marquis Ashley, and Ktown for All*

*Additional Attorneys on Next Page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, GLADYS ZEPEDA, MIRIAM ZAMORA, ALI EL-BEY, PETER DIOCSON JR, MARQUIS ASHLEY, JAMES HAUGABROOK, individuals, Ktown for All, an unincorporated association; ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING, an unincorporated association,<br><br>              Plaintiffs,<br><br>       v.<br><br>CITY OF LOS ANGELES, a municipal entity; DOES 1-7,<br><br>              Defendants. | CASE NO. 2:19-cv-06182-DSF-PLA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Complaint Filed Date: July 18, 2019<br><br>Judge:          Hon. Dale S. Fischer<br>Hearing Date:  May 18, 2020<br>Time:          1:30 p.m.<br>Courtroom:      7D |

Catherine Sweetser (SBN 271142)
Kristina Harootun (SBN 308718)
SCHONBRUN SEPLOW HARRIS
& HOFFMAN LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731
Email:  csweetser@sshhlaw.com
           kharootun@sshhlaw.com

*Attorneys for Plaintiffs*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680 8400
Email:  benjamin.herbert@kirkland.com
           william.smith@kirkland.com

Michael Onufer (SBN 300903)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Email:  michael.onufer@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Janet Garcia,
Peter Diocson Jr., Marquis Ashley, Ali El-Bey, and
Association for Responsible and Equitable Public
Spending*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .............................................................................. 1

II.     PROCEDURAL HISTORY ............................................................... 2

III.    LEGAL STANDARD .......................................................................... 3

IV.     ARGUMENT .................................................................................... 4

     A.    The Organizational Plaintiffs Have Standing to Bring this Lawsuit ......... 4

         1.   The Court Has Already Ruled Twice that Ktown for All Has Direct Standing ................................................................ 4

         2.   Ktown for All Has Standing to Seek Injunctive and Declaratory Relief on Behalf of Its Members ................. 6

         3.   AREPS Has Standing to Bring Its Claims .................................. 10

     B.    There is No Basis for Granting Defendant's Rule 12(b)(6) Motion to Dismiss .............................................................. 12

         1.   Ktown for All and AREPS Have Properly Alleged Fourth Amendment Claims ........................................................ 13

         2.   Ktown for All Has Properly Alleged a Fourteenth Amendment Claim ......................................................... 18

     C.    The City Waived Its Argument That Ktown for All and AREPS Have Failed to State Their Section 1983 Claims ..................................... 20

     D.    The Third Cause of Action Has Already Been Dismissed With Prejudice ................................................................... 22

V.      CONCLUSION ............................................................................. 22

---

i

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**Federal Cases**

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*,
   829 F.2d 933 (9th Cir. 1987) ........................................................................... 7

*Am. Fed'n of State Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*,
   857 F. Supp. 2d 1322 (S.D. Fla. 2012), vacated on other grounds
   sub nom ...................................................................................... 14, 15, 17

*American Federation of State, County and Municipal Employees Council
   79 v. Scott*,
   717 F.3d 851 (11th Cir. 2013) ............................................................... 14, 17

*In re Apple iPhone Antitrust Litigation*,
   846 F.3d 313 (9th Cir. 2017) ....................................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 3

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ......................................................................... 9

*Ass'n of Los Angeles City Attorneys v. City of Los Angeles*,
   No. CV 12-4235 MMM (JCX), 2012 WL 12887541 (C.D. Cal.
   Nov. 20, 2012) ............................................................................................. 18

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ....................................................................... 7

*Bank of America v. City of Miami*,
   137 S.Ct. 1296 (2017) ............................................................................... 5, 6

*Bates v. City of Little Rock*,
   361 U.S. 516 (1960) ..................................................................................... 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 4

*C.N. v. Wolf*,
   No. SACV05868JVSMLGX, 2006 WL 8434249 (C.D. Cal. Nov. 1, 2006) .......... 14

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

*Cal. Bankers Ass'n v. Schultz*,
   416 U.S. 21 (1974)..................................................................................... 16

*California Hosp. Ass'n v. Maxwell-Jolly*,
   No. CV098642CASMANX, 2010 WL 11526908 (C.D. Cal. Feb. 22, 2010) ........ 14

*Cammack v. Waihee*,
   932 F.2d 765 (9th Cir. 1991) ................................................................... 12

*Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
   497 F.3d 972 (9th Cir. 2007) ...................................................................... 4

*Chilicky v. Schweiker*,
   796 F.2d 1131 (9th Cir. 1986), rev'd on other grounds, 487 U.S. 412 (1988) ....... 21

*Cobine v. City of Eureka*,
   250 F.Supp.3d 423 (N.D. Cal. 2017).......................................................... 19

*Cole v. Oroville Union High Sch.*,
   228 F.3d 1092 (9th Cir. 2000) .................................................................. 12

*Columbia Basin Apartment Ass'n v. City of Pasco*,
   268 F.3d 791 (9th Cir. 2001) ........................................................... 7, 13, 14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) (en banc) ........................................................ 5

*Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma*,
   644 F.Supp.2d 1177 (N.D. Cal. 2009)........................................................ 10

*Common Cause/New York v. Brehm*,
   No. 17-CV-6770 (AJN), 2020 WL 122589 (S.D.N.Y. Jan. 10, 2020)..................... 5

*Doe v. Madison School Dist. No 321*,
   177 F.3d 789 (9th Cir. 1999) .................................................................... 12

*Doremus v. Bd. of Ed. of Borough of Hawthorne*,
   342 U.S. 429 (1952)................................................................................. 11

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
   959 F.2d 742 (9th Cir. 1991) .................................................................... 19

*Ellis v. Worldwide Capital Holdings, Inc.*,
   No. EDCV 14-1427, 2015 WL 12697722 (C.D. Cal. Mar. 24, 2015) ..................... 4

iii
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Ellwest Stereo Theaters, Inc. v. Wenner*,
    681 F. 2d 1243 (9th Cir. 1982) ............................................................. 16

*Federated Univ. Police Officers' Ass'n*, No. SACV 15-00137-JLS
    (RNBx), 2015 WL 13273308 (C.D. Cal. July 29, 2015) ......................... 7

*Friendly House v. Whiting*,
    No. CV 10-1061-PHX-SRB, 2010 WL 11452277 (D. Ariz. Oct. 8, 2010) ............ 18

*Garris v. City of Los Angeles*,
    No. CV 17-1452 MWF (EX), 2017 WL 10543666 (C.D. Cal. Nov. 7, 2017).. 16, 17

*Hanford Exec. Mgmt. Employee Ass'n v. City of Hanford*,
    No. 1:11-CV-00828-AWI, 2012 WL 2159398 (E.D. Cal. June 13, 2012) ............ 18

*Harris v. Bd. of Supervisors, Los Angeles Cty.*,
    366 F.3d 754 (9th Cir. 2004) ............................................................... 7

*Havens Realty Corp v. Coleman*,
    455 U.S. 363 (1982)..................................................................... 5, 6

*Heartland Acad. Cmty. Church v. Waddle*,
    427 F.3d 525 (8th Cir. 2005) ........................................................ 14, 15

*Hosp. Council of W. Pennsylvania v. City of Pittsburgh*,
    949 F.2d 83 (3d Cir. 1991) .................................................................. 9

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977)..................................................................*passim*

*Johnson v. Rancho Santiago Community College Dist.*,
    623 F. 3d 1011 (9th Cir. 2010) ........................................................... 18

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) .............................................................. 22

*League of Women Voters v. Nassau Cnty. Bd. Of Supervisors*,
    737 F.2d 155 (2d Cir. 1984) ................................................................ 8

*Lexmark Int'l. Inc., v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)........................................................................... 5

*Lytle v. Nutramax Labs., Inc.*,
    No. EDCV19835JGBSPX, 2019 WL 8060077 (C.D. Cal. Dec. 6, 2019) ..20, 21, 22

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

*Mabe v. San Bernardino Cnty.*,
   237 F. 3d 1101 (9th Cir. 2001) ............................................................... 16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ................................................................. 4

*Martin v. Tradewinds Beverage Co.*,
   No. CV 16-9249, 2017 WL 6816608 (C.D. Cal. Sept. 5, 2017) ............................. 4

*Microsoft v. United States Department of Justice*,
   233 F. Supp. 3d 887 (W.D. Wash. 2017) .................................................. 16

*Monell v. Department of Social Services of New York*,
   436 U.S. 658 (1978).................................................................. 8, 9, 19

*Moreland v. Las Vegas Metro. Police Dept.*,
   159 F.3d 365 (9th Cir. 1998) ................................................................. 16

*Nat'l Ass'n for Advancement of Colored People v. State of Ala.*
   *ex rel. Patterson*,
   357 U.S. 449 (1958)........................................................................ 20

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ................................................................ 3

*Nebraska Beef Producers Committee v. Nebraska Brand Committee*,
   287 F.Supp.3d 740 (D. Neb. 2018) ......................................................... 9

*Nnebe v. Daus*,
   644 F.3d 147 (2d Cir. 2011) ............................................................. 8, 19

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)....................................................................... 9

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014)................................................................... 15, 16

*Rakas v. Illinois*,
   429 U.S 128 (1978)............................................................... 13, 15, 17

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir.1993) ................................................................. 9

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

*Santiago v. City of Los Angeles*,
   No. CV 15-08444-BRO (EX), 2016 WL 7176694 (C.D. Cal.
   Nov. 17, 2016) ........................................................................7, 10, 17, 18

*Shipp v. Schaaf*,
   379 F.Supp.3d 1033 (N.D. Cal. 2019) ................................................... 19

*Sierra Club v. Trump*,
   379 F.Supp.3d 883 (N.D. Cal 2019) *aff'd* 929 F.3d 670 (9th Cir. 2019) ................. 5

*Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz, Inc.*,
   770 F.3d 1282 (9th Cir. 2014) .................................................................. 8

*Sullivan v. City of Berkeley*,
   383 F.Supp.3 976 (N.D. Cal. 2019) ......................................................... 19

*Taylor ex rel. Thomson v. Zurich Am. Ins. Co.*,
   No. CV11-08110-PCT-JAT, 2013 WL 1340014 (D. Ariz.
   Apr. 1, 2013) ............................................................................................ 22

*United Food & Commercial Workers Union Local 751 v.*
   *Brown Grp., Inc.*,
   517 U.S. 544 (1996) .................................................................................. 6

*United States v. Comprehensive Drug Testing*,
   545 F.3d 1106 (9th Cir. 2008) ................................................................ 13

*United States v. Comprehensive Drug Testing*,
   579 F.3d 989 (9th Cir. 2009) .................................................................. 13

*United States v. Comprehensive Drug Testing*,
   621 F.3d 1162 (9th Cir. 2010) ................................................................ 13

*United States v. Comprehensive Drug Testing, Inc.*,
   513 F.3d 1085 (9th Cir. 2008) .........................................13, 14, 15, 16

*Valle de Sol v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .................................................................. 5

*Villa v. Maricopa Cty.*,
   865 F.3d 1224 (9th Cir. 2017) ................................................................ 11

*Warth v. Seldin*,
   422 US 490 (1975).........................................................................6, 9, 20

vi

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

*We Are America/Somos Am. v. Maricopa County Bd. of Supervisors*,
   809 F. Supp. 2d 1084 (D. Ariz. 2011) ............................................................... 11, 12

*Young v. City of Los Angeles*,
   CV 20-00709 JFW, 2020 WL 616363 (C.D. Cal. Feb. 10, 2020) .......................... 19

**California Cases**

*Airline Pilots Assn. Internat. v. United Airlines, Inc.*,
   223 Cal. App. 4th 706 (1st Dist. 2014) ...................................................................... 17

*Cent. Valley Chap. 7th Step Found. v. Younger*,
   95 Cal. App. 3d. 212 (1st Dist. 1979) ......................................................................... 17

*McKeon v. Hastings College of Law*,
   185 Cal. App. 3d 877 (1st Dist. 1986) ........................................................................ 17

*Planned Parenthood Affiliates v. Van de Kamp*,
   181 Cal. App. 3d 245 (1st Dist. 1986) ........................................................................ 17

**Other Authorities**

Fed. R. Civ. P. 12(g)(2) ........................................................................... 4, 19, 20

Los Angeles Municipal Code § 56.11 ................................................................. *passim*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

## I.      INTRODUCTION

Plaintiffs, seven individuals and two organizations, bring this lawsuit challenging Defendant City of Los Angeles ("the City")'s policies and practices of seizing and destroying homeless people's belongings. Specifically, Plaintiffs allege that two provisions of the municipal code, Section 56.11(3)(i) and (10)(d), which allows the City to seize and immediately destroy items larger than 60 gallons by volume are unconstitutional as written.  Plaintiffs also allege that the City has a policy, custom and practice of seizing and destroying belongings without a warrant or an exception to the warrant requirement, in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the California Constitution, and without adequate due process, in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 13 of the California Constitution.

Plaintiff Ktown for All brings claims on its own behalf and on behalf of its members, who like the individual plaintiffs, are subjected to the City's custom, pattern, and practices of seizing and destroying their belongings, without due process and in violation of the Fourth Amendment. Ktown for All seeks injunctive and declaratory relief to prevent the City from engaging in these practices. Plaintiff AREPS, an association of taxpayers, also seeks prospective relief to prevent the City from continuing to use taxpayer dollars to engage in these illegal practices.

Now before the Court is the City's second Motion to Dismiss. The City argues, as it did previously, that Ktown for All and AREPS do not have standing and that they failed to state claims under Section 1983, even though this Court has twice ruled that Ktown for All has standing and has granted a preliminary injunction based on two of the very same claims the City now seeks to dismiss. The City's motion consists of arguments it either could have raised in its previous Motion to Dismiss, or that it has already made to this Court. Just as there was no merit to the arguments this Court already rejected, there is no merit to Defendant's arguments now.

1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

## II.   PROCEDURAL HISTORY

Plaintiffs filed this case in July 2019. In September, Plaintiffs filed an amended complaint and a supplemental complaint, which added allegations related to yet another incident that occurred after this lawsuit was filed, in which Plaintiff Janet Garcia's belongings were taken and destroyed by the City. Thereafter, the City filed both a Motion to Dismiss for Failure to State a Claim for nearly all of Plaintiffs' claims and a Motion to Dismiss for Lack of Subject Matter Jurisdiction, asserting neither organization had standing to bring this case. *See* Dkts. 20-21.

In February 2020, the Court denied Defendant's 12(b)(6) motion as to all of the causes of action except one, the third cause of action for vagueness, which the Court dismissed without leave to amend. *See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Failure to State a Claim, Dkt. 36. The Court denied the City's 12(b)(1) motion as to Ktown for All on their theory of direct standing. *See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ("12(b)(1) Order"), Dkt. 37 at 11. With respect to Ktown for All's associational standing, this Court found that it had not sufficiently clarified the relief it was seeking, and granted Plaintiffs leave to amend to clarify that Ktown for All was not seeking damages for its members. *Id.* at 14-15. The Court also granted the City's motion against AREPS, with leave to amend to plead facts that establish a specific "dollars and cents" injury sufficient to support Article III standing. *Id.* at 17-18.

Thereafter, Plaintiffs Ktown for All, Marquis Ashley and Pete Diocson filed a request for a Preliminary Injunction on behalf of Plaintiffs seeking to enjoin the enforcement of two sections of LAMC Section 56.11, which the Plaintiffs asserted were unconstitutional on their face. In opposition, the City again argued that Ktown for All lacked standing. This Court again rejected Defendant's standing arguments, held the Plaintiffs were likely to succeed on the merits of their claims, and granted the requested

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

Preliminary Injunction. *See* Order Granting Plaintiffs' Motion for a Preliminary Injunction, Dkt. 58.

On March 12, Plaintiffs filed a Second Amended Complaint ("SAC"), which sought to address the infirmities identified by this Court, and consistent with this Court's standing order, made no additional changes to the complaint. *See* SAC, Dkt. 43. The changes made by Plaintiffs were limited to 1) clarifying that Ktown for All was not seeking damages on behalf of its members and 2) removing AREPS' due process claims and adding allegations regarding the specific "dollars and cents" injuries caused by the constitutional violations.

Despite Plaintiffs' only minor amendments, the City has filed another 25 page Motion to Dismiss, rehashing arguments it has already lost, and bringing new arguments it failed to raise in its initial Motions to Dismiss and which, with only limited exception, are unrelated to Plaintiffs' amendments in the SAC. The City argues, for the third time, that Ktown for All does not have direct standing, again that it does not have associational standing, that AREPS does not have standing, and inexplicably, that the organizational Plaintiffs have failed to state claims under 12(b)(6), including for claims that are the subject of this Court's April 13, 2020 Preliminary Injunction. None of these arguments have merit. The Court should deny Defendant's Second MTD and require the City to file an answer, so this case can proceed beyond the pleading stage.

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Significantly, the court must accept all allegations of material fact as true and construe them in light most favorable to the

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

nonmoving party. *Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). And material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a district court grants a motion to dismiss, it should provide leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). When an amendment is granted, a defendant filing a subsequent Motion to Dismiss under Rule 12(g) may not raise arguments that the defendant failed to raise in an earlier motion to dismiss. "A party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *see also Martin v. Tradewinds Beverage Co*., No. CV 16-9249 PSG-MRW, 2017 WL 6816608, at *2 (C.D. Cal. Sept. 5, 2017); *Ellis v. Worldwide Capital Holdings, Inc.,* No. EDCV 14-1427 JGB (KKx), 2015 WL 12697722, at *2 (C.D. Cal. Mar. 24, 2015).

## IV.   ARGUMENT

### A.   The Organizational Plaintiffs Have Standing to Bring this Lawsuit

Ktown for All has Article III standing to bring this case, both on its own behalf and on behalf of its members. As previously decided by this Court, Ktown for All has sufficiently alleged direct Article III standing, and, as clarified in the Second Amended Complaint, Ktown for All has also alleged associational standing to seek injunctive and declaratory relief on behalf of its members. AREPS also has standing based on the now-pled "dollars and cents" injury that stems from the illegal seizure and destruction of property.

#### 1.   The Court Has Already Ruled Twice that Ktown for All Has Direct Standing

The City yet again challenges Ktown for All's direct standing, even though this Court already ruled on two occasions that it has direct standing, and Ktown for All made no changes to the SAC to disrupt this ruling. Just as there were no merits to the City's

4

prior iterations of these arguments, there is no merit here. Specifically, although it previously relied on *Havens Realty Corp v. Coleman,* 455 U.S. 363 (1982), in its original Motion to Dismiss, *see* Def's Motion to Dismiss for Plaintiffs' Supplemental Complaint to First Amended Complaint for Lack of Subject Matter Jurisdiction, Dkt. 21 at 11, 14, the City now asserts the injuries this Court recognized were sufficient under *Havens* are insufficient in cases raising constitutional claims. *See* Def's Motion to Dismiss Second Amended Complaint, ("Second MTD"), Dkt. 57 at 17. This is simply not the law in the Ninth Circuit. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc) (holding sufficient constitutional injury to bring a constitutional challenge when the organizational plaintiff pled a diversion of its resources and frustration of its mission); *see also Valle de Sol v. Whiting*, 732 F.3d 1006, 1019 (9th Cir. 2013); *accord Common Cause/New York v. Brehm*, No. 17-CV-6770 (AJN), 2020 WL 122589, at \*21 (S.D.N.Y. Jan. 10, 2020) (organization can bring constitutional claims against election laws where it diverted resources); *Sierra Club v. Trump*, 379 F.Supp.3d 883, 925 (N.D. Cal 2019) *aff'd* 929 F.3d 670, 694 (9th Cir. 2019) (organizational plaintiffs, which had standing under *Havens* as well as membership standing, may sue to enforce Appropriations Clause).

Neither of the cases cited by the City, *Lexmark Int'l. Inc., v. Static Control Components, Inc.,* 572 U.S. 118 (2014) or *Bank of America v. City of Miami,* 137 S.Ct. 1296 (2017), affect this result. Nor do they stand for the proposition that organizations cannot seek a remedy based on both diversion of resources and frustration of mission for constitutional claims. In *Lexmark*, the Court did not distinguish statutory and constitutional standing, but instead, simply referenced "third- party" standing as an example of an instance in which the Court referred to a "prudential" limitation that was in fact a "constitutional" requirement under Article III. 572 U.S. at 127, n.3. Similarly, in *Bank of America*, the Court held that the City of Miami could sue for violations of the Fair Housing Act. While the case referenced the standard laid out in *Havens*, the

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Court said nothing about limiting *Havens* and its progeny to cases brought under federal statutes and not under the U.S. Constitution. 137 S.Ct. at 1303.

### 2. Ktown for All Has Standing to Seek Injunctive and Declaratory Relief on Behalf of Its Members

The City also argues again that Ktown for All does not have associational standing to bring this case on behalf of its members. This argument too has no merit. An association bringing suit on behalf of its members "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 US 490, 514 (1975). "Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the relief sought." *Id.*

In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), the Supreme Court laid out the test for determining whether an organization can establish "associational standing" to bring claims on behalf of its members: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 432 U.S. at 343. The third prong is prudential, as it "is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). Thus, "once an association has satisfied Hunt's first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *Id.* at 556.

This Court already ruled that Ktown for All established the first two prongs required for associational standing under *Hunt*. *See* 12(b)(1) Order at 12-13. In light of the third prong, this Court granted Ktown for All leave to narrowly amend the complaint

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

to clarify the claims it brought and the remedies sought on behalf of its members. Ktown for All has done so, clarifying it is not seeking damages, and instead, seeks only injunctive and declaratory relief. This is sufficient to meet the third prong under *Hunt*. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001) ("Appellants request only injunctive and declaratory relief. Because these forms of relief do not require individualized proof, the third prong of the Hunt test is satisfied."); *Harris v. Bd. of Supervisors*, *Los Angeles Cty.*, 366 F.3d 754, 764 (9th Cir. 2004); *see also Santiago v. City of Los Angeles*, No. CV 15-08444-BRO (EX), 2016 WL 7176694, at *6 (C.D. Cal. Nov. 17, 2016) ("[T]he need for individualized proof, and therefore individual participation by an organization's members, arises primarily when an organization makes claims for damages; but when only injunctive or declaratory relief is at issue, an organization's 'members need not participate directly in the litigation.') (quoting *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987)); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991).

Despite the clarifying amendments, the City still asserts that Ktown for All lacks associational standing because Section 1983 is a tort and the case would require individual participation of its members. Second MTD at 21. There is no merit to this argument. First, it is well-established in the Ninth Circuit that organizations can bring Section 1983 claims on behalf of their members. *See Columbia Basin*, 268 F.3d at 798–99 (apartment association can bring suit on behalf of its members to seek equitable relief preventing the enforcement of an ordinance under Section 1983)*; Federated Univ. Police Officers' Ass'n*, No. SACV 15-00137-JLS (RNBx), 2015 WL 13273308, at *5 n.2 (C.D. Cal. July 29, 2015) (explaining that if the court analyzed "the requirements

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

for associational standing, FUPOA would satisfy these requirements" regarding Section 1983 claim).[1]

This argument also misunderstands the nature of Ktown for All's claims and the relief it seeks.  In this case, Ktown for All brings claims against the City under *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978), based on the City's customs, patterns, and practices of seizing unhoused people's belongings. *See* SAC ¶¶ 232-65.  Its claims include both a facial challenge to two provisions of LAMC Section 56.11 and claims that the City seizes and destroys its members' belongings in violation of the United States and California constitutions. With regards to the facial challenges, there is no question that Ktown for All can assert these claims on behalf of its members: facial challenges raise pure questions of law.  But there is also no merit to the City's claim that Ktown for All's other claims, including the as-applied challenges to LAMC Section 56.11, require individual participation by Ktown for All members.

As the City notes, Ktown for All's *Monell* claims require Plaintiffs to establish that the City has a custom, policy or practice that was the moving force behind the constitutional violation. *See* Second MTD at 11. This is, of course, the type of "systematic policy violations that make extensive individual participation unnecessary." *Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz, Inc*., 770 F.3d 1282, 1292-93 (9th Cir. 2014). Therefore, to establish *Monell* liability and for a court to grant corresponding injunctive relief, participation in the lawsuit of every individual who has ever had those policies and practices applied to them is not required. To the contrary, a lawsuit raising a single incident may be used to hold the City liable

---

[1] The City argues that "Courts have held that organizations lack standing to assert representative Section 1983 claims on behalf of their members," Second MTD at 21, *citing League of Women Voters v. Nassau Cnty Bd. Of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984). But in doing so, the City fails to recognize that the Ninth Circuit and other circuits that have held otherwise, and in fact, the Second Circuit has noted that the holding of *League of Women Voters*, which the City relies upon, is questionable. *See Nnebe v. Daus*, 644 F.3d 147, 156 n.5 (2d Cir. 2011).

8

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1  under *Monell* if the incident is part of an official pattern, practice, or policy. *See*

2  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986).

3  The City's argument regarding the necessity of Ktown for All members'

4  participation conflates their role as *parties* and the role of some members as *evidentiary*

5  *witnesses*. *See Hosp. Council of W. Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 89

6  (3d Cir. 1991); *see also Warth,* 422 U.S. at 515-16 (organization can generally seek

7  prospective relief for members but not damages, because in order to obtain damages,

8  each injured member would have to be a *party* to the suit) (emphasis added). As then-

9  Judge Alito explained in *Hospital Council of Western Pennsylvania*—which concerned

10 an organization's challenge not to a "statute, regulation or ordinance," but instead, to a

11 pattern of alleged government misconduct—the "alleged practices that would probably

12 have to be proven by evidence regarding the manner in which the defendants treated

13 individual member hospitals . . . would likely require that member hospitals provide

14 discovery . . . . Nevertheless, since participation by 'each [allegedly] injured party'

15 would not be necessary, we see no ground for denying associational standing." *Id*. at

16 89–90. *Accord Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 603 (7th

17 Cir.1993) ("We can discern no indication . . . that the Supreme Court intended to limit

18 representational standing to cases in which it would not be necessary to take any

19 evidence from individual members of an association."); *Ass'n of Am. Physicians &*

20 *Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010) (organization had

21 standing to bring claim on behalf of members, even though complaint alleged individual

22 abuses, since, if practiced systemically, they could establish constitutional violation and

23 noting that "proof of misdeeds could establish a pattern with evidence from the Board's

24 witnesses and files and from a small but significant sample of physicians"); *Nebraska*

25 *Beef Producers Committee v. Nebraska Brand Committee*, 287 F.Supp.3d 740, 750 (D.

26 Neb. 2018) ("Were this case to proceed, it might be necessary for individual members

27 of the Beef Producers to participate as witnesses, but it would not be necessary for them

28 to participate as parties—and that is all that associational standing requires").

*Santiago,* 2016 WL 7176694, illustrates this point. There, as here, an organizational plaintiff brought claims similar to the claims Ktown for All raises, based on the City's illegal seizure and destruction of its members' belongings, which the City justified as necessary to protect public health and safety. *Id.* at 2. Defendants argued, as the City does here, that the organizational plaintiff could not meet the third prong of *Hunt*, because individual members' property could have been taken for legal reasons, and individual members would need to participate in the litigation to establish whether their items were in fact taken legally. *Id.* at 6. The district court rejected this argument and held the organization had standing. In doing so, the court reasoned that the question at issue in the case was whether "Defendants' alleged policies of seizing, failing to inventory, and failing to return property was unlawful" and if so, whether to grant equitable, prospective relief. *Id.* at *6. The question of whether individual members' property was taken illegally was a "different inquiry that occurs outside of this litigation." *Id.* And unlike here, where some of Plaintiffs' claims stem from written policies and an allegedly unconstitutional ordinance, in *Santiago,* there was no formal policy at issue in any of the claims, and the Court still held that individual participation was unnecessary. *Id.*; *see also Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma*, 644 F.Supp.2d 1177, 1194 (N.D. Cal. 2009) (rejecting defendants' argument that "individualized proof is required to determine whether the challenged conduct caused any harm" where the complaint sought declaratory and injunctive relief). Similarly here, none of the claims brought by Ktown for All require participation of its individual members, and the organization has standing under *Hunt.*

### 3.   AREPS Has Standing to Bring Its Claims

AREPS has taxpayer standing to challenge the City's enforcement of LAMC § 56.11. This Court determined that, in order to show taxpayer standing, AREPS "must allege that enforcement of the allegedly unlawful portions of the Ordinance was 'supported by a[] separate tax or paid for from a[] particular appropriation or that it adds any sum whatever to the cost of conducting the [sweeps]." 12(b)(1) Order at 17 (quoting

10

*Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 433 (1952)). The SAC does exactly that, pleading additional facts showing expenditures that are directly tied to the City's illegal seizure and destruction of property. *See, e.g.,* SAC ¶ 87.

Specifically, AREPS alleges that the City illegally seizes and destroys property, in violation of the Fourth Amendment. These items, which should not have been seized in the first place, are destroyed by L.A. Sanitation and disposed of in City landfills, costing the City money for each ton it disposes. *Id.* The cost of disposing of these items is not negligible; the City pays upwards of $60 per ton of property it sends to the landfill. *Id.* The cost of the unconstitutional seizure and destruction of property, moreover, increases as more items are illegally seized and destroyed. *Id.* And these specific tipping fees would not be incurred if the City stopped illegally seizing and destroying property during cleanups. *Id.* As such, these costs, paid out of the General Fund from municipal taxes paid by Plaintiffs, are directly attributable to the City's illegal practices: but for the illegal seizure and destruction of that property, the property would remain on the sidewalk and the commensurate tipping fees would not be paid. Accordingly, AREPS suffers a "direct dollar-and-cents" injury because incremental taxpayer costs are directly incurred by the City's illegal actions. *See We Are America/Somos Am. v. Maricopa County Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1109 (D. Ariz. 2011).[2]

AREPS' claim of a specific, ascertainable cost linked directly to the illegal seizure and destruction of property is in contrast to the cases the City relies on, where there was no ascertainable cost to the taxpayers specifically associated with the alleged conduct. *Cf. Villa v. Maricopa Cty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (taxpayer did not have standing to seek prospective relief for delay in sealing wiretap as delay did not increase costs because the county officials would receive their salaries even without the

_____

[2] Although not required, the amount of these costs are ascertainable during discovery, just as the incremental costs of housing and feeding jail inmates were ascertainable in *We Are America*, 809 F. Supp. 2d at 1109.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

1    unlawful conduct and County had already changed its practices since the allegations in

2    the complaint); *Doe v. Madison School Dist. No 321*, 177 F.3d 789, 794 (9th Cir. 1999)

3    (no taxpayer standing because graduation prayer "cost the state no additional expense");

4    *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 n.5 (9th Cir. 2000) (taxpayers

5    could not sue to force the school to permit religious speeches at graduation as there was

6    no cost associated with prohibiting religious speeches).

7            AREPS has also pled sufficient facts to establish redressability in the Second

8    Amended Complaint. *See* SAC ¶ 87. AREPS seeks "an order enjoining and restraining

9    the City from enforcing the challenged provisions of Los Angeles Municipal Code

10   Section 56.11." *Id.* at 60. The City's expenditures associated with the disposal of

11   illegally seized property would decrease if the City stopped illegally seizing property

12   during cleanups. Taxpayers are *not* required to show, as the City argues, that the City

13   would refund them the money. *See Cammack v. Waihee*, 932 F.2d 765, 769 (9th Cir.

14   1991) (taxpayer not required "to prove that her tax burden will be lightened by

15   elimination of the questioned expenditure"); *We Are Am.*, 809 F. Supp. 2d at 1111

16   ("[T]he municipal taxpayers' alleged injuries will be redressed by a favorable decision

17   herein, i.e. relief preventing the further implementation of [Maricopa County's migrant

18   arrest and detention policy] or a finding that the [policy] is unconstitutional") (internal

19   quotations omitted)). Accordingly, AREPS' "direct dollar-and-cents" injury would

20   cease if the requested injunction issues.

21          **B.      There is No Basis for Granting Defendant's Rule 12(b)(6) Motion to
                      Dismiss**

22

23          The City argues, for the first time, that the organizational plaintiffs cannot state

24   claims under Section 1983 for constitutional violations. This assertion does not

25   withstand scrutiny. The City's argument is grounded in inapplicable lines of cases that

26   bars plaintiffs, who are relying on *third-party or vicarious standing*, from bringing

27   Fourth Amendment claims. In those cases, plaintiffs attempted to assert the Fourth

28   Amendment rights of *other* individuals that they did not represent or even purport to

                                                    12

represent. In stark contrast, here, the organizational plaintiffs assert, in a representational capacity, the claims of their members in the case of Ktown for All, and *their own* federal and state constitutional claims. The City's briefing is devoid of precedent extending the line of cases it relies on to this context. Indeed, precedent from the Ninth Circuit and elsewhere establishes that organizational plaintiffs asserting the types of constitutional claims brought by Ktown for All and AREPS—claims based on organizational and associational standing—can proceed.

### 1. Ktown for All and AREPS Have Properly Alleged Fourth Amendment Claims

As discussed above, it is well established in the Ninth Circuit that organizational plaintiffs can bring Section 1983 claims on behalf of their members. *See, e.g.*, *Columbia Basin*, 268 F.3d at 798–99. The ability of an organization to bring Section 1983 claims on behalf of its members extends to claims for violation of the members' Fourth Amendment rights. As the Ninth Circuit explained, so long as an organization can establish associational standing under *Hunt*, that alone is sufficient to enable an organization to proceed on a Fourth Amendment claim on behalf of its members. *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1096 n.28 (9th Cir. 2008) on reh'g en banc, 579 F.3d 989 (9th Cir. 2009) opinion revised and superseded on other grounds, 621 F.3d 1162 (9th Cir. 2010) ("CDT I").[3] *CDT I* is not an outlier.

_____

[3] Later in 2008, the Ninth Circuit granted rehearing en banc, *United States v. Comprehensive Drug Testing*, 545 F.3d 1106 (9th Cir. 2008), and the panel decision is thus cited herein as persuasive authority. The Ninth Circuit issued two en banc decisions, *see United States v. Comprehensive Drug Testing*, 579 F.3d 989 (9th Cir. 2009) ("CDT II"); *United States v. Comprehensive Drug Testing*, 621 F.3d 1162 (9th Cir. 2010) ("CDT III"), neither of which addressed the threshold standing issue and whether *Rakas* precluded organizational plaintiffs from asserting Fourth Amendment claims where standing was otherwise established under *Hunt*. The second en banc decision nonetheless recognized that the organizational plaintiff "is protecting the privacy and economic well-being of its members," and "he seizure "violates its members' privacy interests and interferes with the operation of its business." *CDT III*, 621 F.3d at 1173.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*See e.g.*, *Columbia Basin*, 268 F.3d at 798–99; *California Hosp. Ass'n v. Maxwell-Jolly*, No. CV098642CASMANX, 2010 WL 11526908, at *4 (C.D. Cal. Feb. 22, 2010) (denying motion to dismiss Fourth Amendment claim brought under Section 1983 by organization on behalf of its members); *C.N. v. Wolf*, No. SACV05868JVSMLGX, 2006 WL 8434249, at *3 (C.D. Cal. Nov. 1, 2006) (denying defendant's motion for summary judgment as to Section 1983 claims brought by organization on behalf of its members). Nor is this outcome isolated to the Ninth Circuit. *See, e.g.*, *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 532 (8th Cir. 2005) ("We conclude that associational standing is legally available to Heartland on its Fourth Amendment claim, but we still must determine if the facts of this case qualify Heartland to assert the Fourth Amendment rights of its students. To do so, we apply [the *Hunt*] three-part test to those facts."); *Am. Fed'n of State Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 857 F. Supp. 2d 1322, 1330 (S.D. Fla. 2012), vacated on other grounds sub nom, *Scott*, 717 F.3d 851 (denying motion to dismiss Fourth Amendment claim because "the Union has standing to sue on behalf of its members").

*CDT I* is instructive. There, the Major League Baseball Players Association ("MLBPA") asserted the Fourth Amendment rights of its player members relating to seizures of steroid test results. 513 F.3d at 1095. The Ninth Circuit held that the MLBPA had associational standing under *Hunt*, and it could, therefore, "assert the Fourth Amendment rights of its members. . . ." *Id.* at 1096. In so holding, the court recognized that the "Supreme Court has clearly rejected 'vicarious' or 'target' standing to assert Fourth Amendment rights," but ruled that this argument has no application where the organization "has met the requirements of associational standing." *Id.* at 1096, n.28.

Similarly, in *Heartland*, the Eight Circuit held "that associational standing is legally available to Heartland [Academy Community Church] on its Fourth Amendment claim" that it asserted on behalf of its students. 427 F.3d at 532-33. The court expressly rejected defendant's argument—the same argument the City is making—that Heartland

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

1  was precluded from bringing a Section 1983 claim because it was predicated on the

2  seizures of its members' property. *Id.* at 532; *see also Scott*, 857 F. Supp. 2d at 1330.

3      The City ignores these cases and asks this Court to extend a rule from an

4  inapplicable line of cases. *See* Second MTD at 11-14. But the rule announced in *Rakas*

5  *v. Illinois,* 429 U.S 128 (1978) and its progeny is applicable only in the narrow context

6  of those cases. In *Rakas*, the Court held that a criminal plaintiff could not invoke the

7  exclusionary rule, by relying on vicarious standing, to suppress evidence improperly

8  seized from a third-party. *See id.* at 129-34. *Rakas* thus stands for the simple proposition

9  that in this context "Fourth Amendment rights are personal rights which cannot be

10  asserted vicariously." *Id.* at 128. The Court did not address whether an organization can

11  bring claims on behalf of its members, and thus did not foreclose an organization from

12  asserting Fourth Amendment claims on behalf of its members. *See Scott*, 857 F. Supp.

13  2d at 1329.

14      Indeed, *Heartland* distinguished the line of cases the City relies upon on this very

15  basis: "The Supreme Court has never held . . . that associational standing is not available

16  to § 1983 plaintiffs alleging Fourth Amendment violations" and "a case considering the

17  applicability of the exclusionary rule, a remedy used for Fourth Amendment violations

18  in criminal cases but not in civil cases, is not controlling in this § 1983 case." *Heartland*,

19  427 F.3d at 532; *see also CDT I,* 513 F.3d at 1095 n.28 (holding that because the

20  organizational plaintiff had standing on behalf of its members under *Hunt*, the court

21  need not consider whether under *Rakas,* the organization also had direct standing

22  because of the organization's own partial ownership share in the seized items). In the

23  context at issue here, the correct analysis begins and ends with the *Hunt* test, *see, e.g.*

24  *CDT I*, 513 F.3d at 1095 n.28; *Heartland*, 427 F.3d at 532, which Ktown for All

25  satisfies.

26      The remaining cases the City cites similarly arise only in the context of vicarious

27  standing and are inapplicable. In *Plumhoff v. Rickard*, for example, the Court

28  determined that an estate for a driver killed in a car crash involving police officers could

15

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**

not invoke the Fourth Amendment rights of the vehicle's passenger to sustain its own claim. 572 U.S. 765, 775 (2014). And in *Microsoft v. United States Department of Justice*, the court rejected Microsoft's attempt to vicariously assert the Fourth Amendment rights of its customers to challenge the federal Electronic Communications Privacy Act. 233 F. Supp. 3d 887, 916 (W.D. Wash. 2017). Nor do the other cases cited by the City apply here. *See Cal. Bankers Ass'n v. Schultz*, 416 U.S. 21, 69 (1974) (company cannot vicariously assert the rights of its customers); *Ellwest Stereo Theaters, Inc. v. Wenner*, 681 F. 2d 1243, 1248 (9th Cir. 1982) (same); *Mabe v. San Bernardino Cnty.*, 237 F. 3d 1101, 1111 (9th Cir. 2001) (mother cannot vicariously assert the rights of her daughter); *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998) (family of a victim of excessive force cannot vicariously assert the decedent's Fourth Amendment rights in a lawsuit against the Las Vegas Police Department).

The foregoing reasoning also applies when an organization, like AREPS here, alleges injuries on behalf of its taxpaying members for financial expenditures related to the seizure and destruction of property in violation of the Fourth Amendment. *See, e.g.*, *Garris v. City of Los Angeles*, No. CV 17-1452 MWF (EX), 2017 WL 10543666, at *6–7 (C.D. Cal. Nov. 7, 2017) (denying 12(b)(6) motion because plaintiffs had standing to bring a Fourth Amendment claim even though they were not subjected to any constitutionally deficient searches or seizures, but were injured by such violations because they caused financial expenditures). Like KFA, AREPS does not allege injuries vicariously on behalf of individuals it does not represent or does not purport to represent, but instead brings claims on behalf of its members to redress their injuries. As such, AREPS also has the right to pursue its Fourth Amendment claims. *See id.*; *CDT I*, 513 F.3d at 1095.

Likewise there is no bar where, as here, organizational plaintiffs can demonstrate direct injury. Ktown for All is not asserting a claim for "vicarious" injury, but for its own injury. Courts recognize legally-cognizable injuries to associations and organizations flowing from Fourth Amendment violations, including where the injury

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

is financial or a diversion of the association's resources. *See, e.g.*, *Scott*, 857 F. Supp. 2d at 1330; *Santiago*, 2016 WL 7176694, at *8.

For example, in *American Federation of State, County and Municipal Employees Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013), the Eleventh Circuit affirmed the district court's holding that an organization could bring a Fourth Amendment claim under Section 1983 based on direct standing and its diversion of resources. 717 F.3d at 861 n.1. As the district court explained, because the organization "is not seeking to assert its members interest vicariously," but is instead "seeking to assert its own interests by identifying an injury that it will suffer as a consequence of having to devote its resources toward members affected by" an executive order, it can proceed on its Section 1983 claims. *Scott*, 857 F. Supp. 2d at 1329. This is the same type of injury Ktown for All alleges. As the district court noted, this type of injury distinguishes the parties here from the party in *Rakas* and other cases Defendants cite, because the plaintiffs in those cases "suffered no injury at all." *Id.* Accordingly, where, as here, organizational plaintiffs have suffered cognizable injuries from Fourth Amendment violations, they state a Fourth Amendment claim even where their property was not seized. *Id.*; *see also Garris*, 2017 WL 10543666 at *6-7.[4]

_____

[4] Even if the Court agrees that Ktown for All and AREPS's federal constitutional claims should be dismissed, both organizations can still proceed on their California constitutional claims. The City acknowledged that AREPS and Ktown for All alleged claims under the California constitution, Second MTD at 5-6, but the City's motion does not challenge these claims. Notwithstanding the City's waiver, Plaintiffs note that Ktown for All and AREPS can easily assert claims rooted in the California constitution where, as here, their members suffered an injury, *Airline Pilots Assn. Internat. v. United Airlines, Inc.*, 223 Cal. App. 4th 706, 726 (1st Dist. 2014) (finding that union has standing to bring action on behalf of its members under the *Hunt* factors), and by showing that its members' constitutional rights have been violated, *see, e.g.*, *Planned Parenthood Affiliates v. Van de Kamp*, 181 Cal. App. 3d 245, 280 (1st Dist. 1986) (finding that child abuse reporting law that affects organization and its members violates the California Constitution). This is especially so in public interest cases like this in which "the requirements for standing to sue are relaxed," *Cent. Valley Chap. 7th Step Found. v. Younger*, 95 Cal. App. 3d. 212, 233 (1st Dist. 1979), and "participation of incorporated and unincorporated associations . . . has become common and accepted," *McKeon v. Hastings College of Law*, 185 Cal. App. 3d 877 (1st Dist. 1986).

17

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1

2

### 2. Ktown for All Has Properly Alleged a Fourteenth Amendment Claim

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Ktown for All has likewise properly raised a Fourteenth Amendment claim, both on behalf of its members and on its own behalf. To begin with, organizational and associational plaintiffs can similarly pursue Fourteenth Amendment due process claims on behalf of their members. *See Ass'n of Los Angeles City Attorneys v. City of Los Angeles*, No. CV 12-4235 MMM (JCX), 2012 WL 12887541, at *13-15 (C.D. Cal. Nov. 20, 2012); *Santiago*, 2016 WL 7176694, at *7-8 (organization properly stated a due process claim on behalf of its members); *Friendly House v. Whiting*, No. CV 10-1061-PHX-SRB, 2010 WL 11452277, at *5 (D. Ariz. Oct. 8, 2010); *Hanford Exec. Mgmt. Employee Ass'n v. City of Hanford*, No. 1:11-CV-00828-AWI, 2012 WL 2159398, at *13 (E.D. Cal. June 13, 2012). To state a due process claim under the Fourteenth Amendment, an organizational plaintiff must establish that its members were or will be deprived of a protected liberty or property interest. *See Ass'n of Los Angeles City Attorneys,* 2012 WL 12887541, at *13 (citing *Johnson v. Rancho Santiago Community College Dist.*, 623 F. 3d 1011, 1029 (9th Cir. 2010)).

17

18

19

20

21

22

23

24

25

26

Ktown for All has done just that. The SAC lays out the City's customs, policies and practices of unconstitutionally seizing and destroying unhoused residents' belongings, *see* SAC at ¶¶ 92-123, and specifically, the customs, policies, and practices that give rise to Plaintiffs' due process claims, *see id.* ¶¶ 114-123. It also specifically alleges that its unhoused members "have been subjected to the City's customs, policies, and practices, including the continued enforcement of LAMC 56.11." *Id.* ¶ 42. Further, the SAC alleges that Ktown for All's unhoused members have suffered harm, including the loss of property and the deprivation of their constitutional and statutory rights. *Id.* And the SAC alleges prospective injury, namely that unhoused Ktown for All members are at imminent risk of continued deprivation of their constitutional rights, as a result of

27

28

18

the continued unconstitutional enforcement of LAMC Section 56.11. *Id.*[5] At this stage of the litigation, Ktown for All has alleged facts sufficient to state a due process claim under the Fourteenth Amendment on behalf of its members.[6]

Ktown for All can also bring Fourteenth Amendment claims based on its own injuries. Associations have standing and may also bring a claim concerning due process violations where the violation results in diversion of resources and frustration of its mission. *See, e.g.*, *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) (organizations had standing, given frustration of its goals and resources, to bring due process claims of persons more directly affected); *Nnebe,* 644 F.3d at 147 ("[N]othing prevents an organization from bringing a § 1983 suit on its own behalf so long as it can independently satisfy the requirements of Article III standing as enumerated in *Lujan*."). This is particularly true where, as here, the injury impacts the organization's ability to associate with its members. "[I]n attempting to

_____

[5] None of the cases cited by the City suggest that Plaintiffs have not sufficiently pled *Monell* liability at this stage. In *Cobine v. City of Eureka*, 250 F.Supp.3d 423, 435 (N.D. Cal. 2017), plaintiffs did not bring a due process claim, but in the context of a Fourth Amendment claim, the district court found that provisions similar to the ones at issue here, including ones which allowed the City to seize and immediately destroy bulky items and items that constituted an immediate threat to health and safety, could give rise to a Fourth Amendment claim, but granted the motion to dismiss because the complaint did not contain any allegations that the individual plaintiffs had any items that could be subjected to seizure. *See* 250 F.Supp.3d at 435-46. Similarly, in *Shipp v. Schaaf*, 379 F.Supp.3d 1033, 1037 (N.D. Cal. 2019), the district court denied a motion brought by pro se litigants for a preliminary injunction to enjoin a cleanup of an encampment. In denying the preliminary injunction, the court noted there was no evidence that the SOPs would not be followed, but the court noted that "if the record contained evidence that the City had repeatedly violated its own policies regarding the destruction of unhoused persons' property, it would raise serious questions as to the merits of Plaintiffs' claim." *Id.* at 1038; *see also Sullivan v. City of Berkeley*, 383 F.Supp.3d 976, 982 (N.D. Cal. 2019) (finding no triable issue of fact at the summary judgment stage); *Young v. City of Los Angeles*, CV 20-00709 JFW (RAO), 2020 WL 616363, at *6 (C.D. Cal. Feb. 10, 2020) (pro per litigant failed to state a claim when the allegations were unclear whether property was actually removed or destroyed).

[6] As discussed *infra,* Section III(C), the City has also waived any argument that Plaintiffs have not stated a claim for *Monell* liability, since Plaintiffs made no changes in the SAC related to its *Monell* claims, and the City could have raised this argument in its First MTD. *See* Fed. R. Civ. Pro. 12(g).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Warth*, 422 U.S. at 511; *see also Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 462-63 (1958) (finding due process claim where government action "is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate"); *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) (similarly acknowledging due process interest in unrestrained association, and noting it is protected "not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference").

Ktown for All alleges that the City's practices of seizing individuals' belongings without due process directly harms the organization because the City's unconstitutional practice makes it incredibly difficult for Ktown for All to organize with its unhoused neighbors, including making it hard for Ktown for All's members to participate given they must spend time guarding their belongings or risk having them be unconstitutionally destroyed. SAC ¶¶ 40, 43. This harms Ktown for All directly, and this is sufficient to state a claim for a due process violation.

## C. The City Waived Its Argument That Ktown for All and AREPS Have Failed to State Their Section 1983 Claims

Notwithstanding the fact that the City's argument fails on the merits, the City also cannot prevail on its argument that Ktown for All and AREPS have failed to state claims under Section 1983 because the City waived these arguments by failing to raise them in its previous motions to dismiss. Under Rule 12(g), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g); *Lytle v. Nutramax Labs., Inc.,* No. EDCV19835JGBSPX, 2019 WL 8060077, at *3 (C.D. Cal. Dec. 6, 2019). "[T]hat the Plaintiffs filed an amended complaint does not give Defendants an opportunity to argue what they could have, but

20

did not, before." *Lytle*, 2019 WL 8060077, at \*3. This rule "promote[s] the early and simultaneous presentation and determination of preliminary defenses," *Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986), rev'd on other grounds, 487 U.S. 412 (1988), and "avoid[s] repetitive motion practice, delay, and ambush tactics," *see In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318 (9th Cir. 2017).

The arguments the City raises in its Second MTD could have been raised in its prior motions. Indeed, each allegation that the City challenges as insufficient—paragraphs 38-46, 87, 232-247, 255-265 of the SAC, *see* Second MTD at 13, 17—is substantively identical to allegations already pled in the supplemental complaint. *Compare* Supp. Compl. ¶¶ 37- 45, 217-230, 237-240 *with* SAC ¶¶ 38-46, 87, 232-247, 255-265. The only paragraphs that differed in any way were paragraphs 87, 236, 237, 238, 245, 256, 257, and 258, but the only differences merely clarified allegations relating to AREPS's taxpayer standing or the relief sought, differences that have no bearing on whether Ktown for All and AREPS are barred from asserting constitutional claims. *See, e.g.*, SAC ¶ 236 ("The City's unlawful seizure and destruction of individuals' belongings, pursuant to the unlawful provisions of LAMC 56.11, results in the increased expenditure of funds on costs associated with the disposal of these items. But for the enforcement of this unconstitutional provision, the City would not expend the additional costs to dispose of this property."). Nor does it matter that Ktown for All clarified that it is seeking only prospective relief. By the City's own admission, its Section 1983 argument arises "irrespective of whether damages are asserted." Second MTD at 2.

The City's failure to raise these arguments in its first 12(b)(6) motion, moreover, highlight the rationale for waiver, namely, promoting early and simultaneous determination of preliminary defenses and avoiding repetitive motion practice, delay, and ambush tactics. The City has wasted time and judicial resources and is unnecessarily

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   delaying this litigation. [7] *See, e.g.*, *Lytle,* 2019 WL 8060077 at *3. Accordingly, the

2   Court should not consider the City's 12(b)(6) arguments.

3       **D.    The Third Cause of Action Has Already Been Dismissed With
          Prejudice**

4

5       Finally, Plaintiffs do not dispute that the Third Cause of Action has been

6   dismissed with prejudice; in fact, Plaintiffs noted this in the SAC. *See* SAC n.7. While

7   the Ninth Circuit held in *Lacey v. Maricopa County* that a plaintiff does not waive its

8   right to appeal the dismissal of a cause of action not subsequently pled in a later

9   complaint, *see* 693 F.3d 896, 928 (9th Cir. 2012), it did not rule, as the City suggests,

10  that including the dismissed cause of action in subsequent complaints is either

11  impermissible or improper. Nor did the Ninth Circuit suggest that including the

12  dismissed claim requires this Court to again dismiss the cause of action it has already

13  dismissed. *See Taylor ex rel. Thomson v. Zurich Am. Ins. Co*., No. CV11-08110-PCT-

14  JAT, 2013 WL 1340014, at *9 (D. Ariz. Apr. 1, 2013). Such a requirement would

15  undermine the Court's earlier ruling by suggesting the Court's earlier order of dismissal

16  was insufficient, and it would waste judicial resources. *Laney* and the other case cited

17  by the City do not suggest otherwise.

18  **V.    CONCLUSION**

19      For the reasons set forth above, this Court should deny Defendant's Second

20  Motion to Dismiss.[8]

21

22

23      [7] Although the case was filed over ten months ago, the City continues to refuse to
    commence discovery or even participate in a Rule 26 discovery conference.

24      [8] In the alternative, if Ktown for All and AREPS' claims under Section 1983 were
25  dismissed, the organizational plaintiffs still have causes of action in their direct and
    representational capacity to enjoin an illegal expenditure of funds under Cal. Code of
26  Civ. P. § 526a. *See Blair v. Pitchess*, 5 Cal. 3d 258, 268 (1971) (en banc) (noting § 526a
    is construed liberally, and the use of the time of officers in a city performing illegal or
27  unauthorized acts provides basis for injunction) (citing *Wrinn v. Horral*, 85 Cal. App.
    497, 504-05 (1951)). As such, the organizational plaintiffs should be given leave to
28  amend to add these claims.

22

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

Dated: April 27, 2020

Respectfully submitted,
LEGAL AID FOUNDATION OF LOS ANGELES

/s/ *Shayla Myers* _____
Shayla Myers

*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, Ali El-Bey, Pete Diocson Jr., Marquis Ashley, James Haugabrook, and Ktown for All*

SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP

/s/ *Catherine Sweetser* _____
Catherine Sweetser

*Attorneys for All Plaintiffs*

KIRKLAND & ELLIS LLP

/s/ *Benjamin Herbert* _____
Benjamin Allen Herbert

*Attorneys for Plaintiffs Ktown for All, Janet Garcia, Peter Diocson Jr., Marquis Ashley, Ali El-Bey, and Association for Responsible and Equitable Public Spending*

**Local Rule 5-4.3.4 Attestation**

I attest that Plaintiff's counsel, Shayla Myers and Catherine Sweetser, concurs in this filing's content and has authorized the filing.

DATED: April 27, 2020

KIRKLAND & ELLIS LLP

By: /s/ *Benjamin Herbert*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## **PROOF OF SERVICE**

I, Stephanie Rosa, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is KIRKLAND & ELLIS LLP, 555 South Flower Street, Los Angeles, CA 90071.

On April 27, 2020, I served the following document(s) described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

on the interested parties in this action as follows:

☒   **CM/ECF electronic notification**

I am readily familiar with the ECF filing system and caused a true and correct copy thereof to be served electronically via CM/ECF electronic notification.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 27, 2020, at Los Angeles, California.

_____
Stephanie Rosa