# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br>        Plaintiffs,<br><br>               v.<br><br>CITY OF LOS ANGELES, et al.,<br>        Defendants. | CV 19-6182 DSF (PLAx)<br><br>Order GRANTING in part and<br>DENYING in part Defendant's<br>Motion to Dismiss (Dkt. 57) |

       Defendant City of Los Angeles moves to dismiss the First through
Fifth Causes of Action asserted by Plaintiff Ktown for All (KFA), the
First through Third Causes of Action asserted by Plaintiff Association
for Responsible and Equitable Public Spending (AREPS), and the Third
Cause of Action asserted by Plaintiffs Janet Garcia, Gladys Zepeda,
Miriam Zamoa, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, and
James Haugabrook.  Dkt. 57 (Mot.).  Plaintiffs oppose.  Dkt. 59 (Opp'n).
The Court deems this matter appropriate for decision without oral
argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. FACTUAL BACKGROUND

       In 2016, the Los Angeles City Council amended Los Angeles
Municipal Code (LAMC) § 56.11 (the Ordinance).  Dkt. 43 (SAC) ¶ 20.
The City also adopted the Los Angeles Municipal Code 56.11 Standard
Operating Protocols (the Protocols) regarding the implementation and
enforcement of the Ordinance.[1]  Id. ¶ 56.  The Ordinance regulates the
storage of personal property in public areas.  Its stated purpose is to

---

[1] The Court GRANTS the City's unopposed request judicial notice, Dkt. 57-1
(RJN), of the Ordinance and the Protocols.  Fed. R. Evid. 201(b).

"balance the needs of the residents and public at large to access clean and sanitary public areas . . . with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas." LAMC § 56.11(1).  In most situations, the City is authorized to impound personal property in a public area so long as the City provides pre-removal and post-removal notice.  See, e.g., id. § 56.11(3)(a)-(b).  In other situations, including where the property obstructs City operations or interferes with the City's compliance with the Americans with Disabilities Act of 1990 (ADA), only post-removal notice is required to impound personal property.  See, e.g., id. § 56.11(3)(c)-(f).  There are also limited situations where the City can immediately destroy personal property without notice, including when the property "poses an immediate threat to the health or safety of the public," id. § 56.11(3)(g), "constitutes evidence of a crime or contraband," id. § 56.11(3)(h), or is a "Bulky Item" that is not "designed to be used as a shelter," id. § 56.11(3)(i) (Bulky Item Provision).  A Bulky Item is "any item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed," but not "a container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property."  Id. § 56.11(2)(c).  The Ordinance also makes it unlawful for any person to "willfully resist, delay or obstruct a City employee from removing or discarding a Bulky Item."  Id. § 56.11(10)(d).  The City enforces the Ordinance through the Bureau of Sanitation (Sanitation) and the Los Angeles Police Department (LAPD), which conduct noticed cleanups and random rapid responses where personal property that does not comply with the Ordinance is seized or destroyed.  SAC ¶¶ 21, 69; see also LAMC § 56.11(11).

## II. LEGAL STANDARD

### A.    Rule 12(b)(1) Standard

The plaintiff bears the burden of establishing subject matter jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Motions to dismiss for lack of subject matter jurisdiction

are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) jurisdictional challenge may be facial or factual. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the moving party asserts that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. <u>Id.</u> "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004). The court accepts the allegations as true, and the plaintiff need not present evidence outside the pleadings. <u>Id.</u>

**B.   Rule 12(b)(6) Standard**

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557) (alteration in original) (citation omitted). A complaint must "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  As a general rule, leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).

## III. DISCUSSION

### A.    Associational Standing

In its prior Order, the Court concluded that neither KFA nor AREPS had sufficiently alleged associational standing and granted leave to amend.  Dkt. 37 (12(b)(1) Order) at 18.  The City again contends that the organizations lack associational standing.  Mot. at 21-24.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  <u>Hunt v. Washington State Apple Advert. Comm'n</u>, 432 U.S. 333, 343 (1977).

### 1.    KFA

KFA alleges that its unhoused members "have been subjected to the City's customs, policies[,] and practices, including the continued enforcement of LAMC 56.11," "have suffered harm as a result of these customs, policies, and practices, including the loss of property and the deprivation of their constitutional and statutory rights," and "have also had a difficult time participating in [KFA's] advocacy efforts."  SAC ¶¶ 42, 43.  KFA further alleges that those unhoused members "are at imminent risk of continued enforcement of LAMC 56.11, and as a result, the deprivation of their constitutional rights."  <u>Id.</u> ¶ 42.

The City challenges KFA's ability to satisfy <u>Hunt</u>'s third prong. Mot. at 21.[2]  KFA appears to assume that where an organization seeks only injunctive and declaratory relief but not damages, the third <u>Hunt</u> prong is necessarily satisfied.  Opp'n at 7 (KFA has "clarif[ied] it is not seeking damages, and instead, seeks only injunctive and declaratory relief" which "is sufficient to meet the third prong under <u>Hunt</u>").  Some Ninth Circuit cases support that assumption.  <u>See, e.g.</u>, <u>Columbia Basin Apartment Ass'n v. City of Pasco</u>, 268 F.3d 791, 799 (9th Cir. 2001) ("Appellants request only injunctive and declaratory relief. Because these forms of relief do not require individualized proof, the third prong of the *Hunt* test is satisfied").  However, in <u>Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.</u>, 770 F.3d 1282 (9th Cir. 2014), an association of chiropractors sought declaratory and injunctive relief on behalf of its members for the defendant's allegedly improper practice of refusing to pay for certain therapies, or not paying enough for the therapies.  <u>Id.</u> at 1292.  The Ninth Circuit held that the third <u>Hunt</u> factor was not met because the complaint alleged "variations in payments wrongfully withheld, in the treatments for which payment has been withheld, and in the individual situations of [the organization's] members."  <u>Id.</u> at 1293.  In reconciling these two cases, the Court adopts the sensible position taken by the Third Circuit that so long as participation by each harmed member is not required, then the third prong is satisfied.  <u>Hosp. Council of W. Pennsylvania v. City of Pittsburgh</u>, 949 F.2d 83, 89-90 (3d Cir. 1991) (third <u>Hunt</u> prong satisfied by organization asserting "a challenge to

---

[2] The City also contends that the SAC lacks sufficient details such as "when incidents involving KFA's unhoused members occurred, whether pre-removal or post-removal notice was provided, whether property [was] stored or discarded, if the property discarded was a bulky item, hazardous material, contraband, or other personal property, whether the property was blocking ADA-access or obstructing entrances, etc."  Mot. at 17.  As stated in the Court's prior order, KFA need not allege all of these specific details to sufficiently allege that its unhoused members would have standing at this stage of the proceedings.  12(b)(1) Order at 13.  These questions, to the extent relevant to KFA's claims, can be answered in discovery.

alleged practices," because even though the action might "require that member[s] provide discovery[] and trial testimony," "an association may assert a claim that requires participation by *some* members" so long as it does not require participation of every aggrieved member).

"[A] plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief sought." <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 335 (2006).  As to KFA's facial claims, SAC ¶¶ 232-238 (First Cause of Action), ¶¶ 255-258 (Fourth Cause of Action), KFA contends "there is no question" that it can assert these claims because "facial challenges raise pure questions of law." Opp'n at 8.  The Court agrees.  <u>Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock</u>, 477 U.S. 274, 287 (1986) (third <u>Hunt</u> prong met where "the suit raises a pure question of law").  The City contends that KFA does not have standing to assert facial claims because it has "housed and unhoused members and asserts rights for other unhoused residents." Mot. at 22.[3]  But KFA need not establish that all of its members' rights are violated and the Court does not read the SAC as asserting rights of nonmembers, though nonmembers would certainly benefit from the requested relief.  KFA has associational standing to assert facial challenges to the Ordinance.

As to the other claims and related requests for relief, <u>see</u> SAC ¶¶ 239-247 (Second Cause of Action), ¶¶ 259-265 (Fifth Cause of Action), Prayer for Relief, the SAC is ambiguous as to the relief sought by KFA. <u>Compare</u> <u>id.</u>, Prayer for Relief (seeking "a declaratory judgment that

---

[3] The City also cites, without analysis, <u>New York State Club Ass'n, Inc. v. City of New York</u>, 487 U.S. 1 (1988), in which the Supreme Court found that an organization's "facial challenge to the Law does not require the participation of individual members, since there is complete identity between the interests of the [organization] and those of its member[s] with respect to the issues raised in this suit, and the necessary proof could be presented 'in a group context.'" <u>Id.</u> at 10 n.4.  Contrary to the City's presumed implication, <u>New York State Club</u> did not hold that "complete identity" of "interests" was required to bring a facial challenge, only that it was sufficient in that case to satisfy the third <u>Hunt</u> prong.

[the Ordinance] . . . as applied to Plaintiffs" is unconstitutional and "the City's policies, practices, and conduct . . . violate Plaintiffs' rights"), with id. ¶ 247 (KFA seeks "an injunction[] enjoining the City from continuing to engage in these customs, policies, and practices"), and id. ¶ 258 (KFA is "entitled to an injunction[] enjoining the City from continuing to enforce this unconstitutional law").  KFA clarifies in its brief that the Second and Fifth Causes of Action are based on a challenge to the City's customs, policies, or practices and do not require "participation in the lawsuit of every individual who has ever had those policies and practices applied to them."  Opp'n at 8.  It asserts that it need only "rais[e] a single incident . . . to hold the City liable under Monell."  Id. at 8-9.  Accepting this clarification, the Court interprets KFA's claims in the SAC as seeking only to obtain a ruling that the policies and practices are unconstitutional and not that each past application of those policies and practices to its members was unconstitutional.[4]  At this stage, this is sufficient to satisfy the third Hunt prong.  See Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc., 280 F.3d 278, 286-87 (3d Cir. 2002) (third Hunt prong was satisfied at the motion to dismiss stage where the complaint challenged "the *methods* the [defendants] employ for making decisions," which the plaintiff argued could be "established with sample testimony, which may not involve specific, factually intensive, individual medical care determinations"); Santiago v. City of Los Angeles, No. CV 15-08444-BRO (EX), 2016 WL 7176694, at *6 (C.D. Cal. Nov. 17, 2016) (while "injunctive or declaratory relief as to Defendants' policies" does not require member participation, "individualized inquiries . . . to determine whether the seizure of each individual street vendor's property was unlawful" would); Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc., 661 F. Supp. 2d 1076, 1085 (D. Ariz. 2009), on reconsideration in part, No. CV-08-0457-PHX-ROS, 2009 WL 2710151 (D. Ariz. Aug. 26, 2009) (organization bringing claims for injunctive and declaratory relief satisfies third Hunt prong at motion to

---

[4] To the extent KFA does seek a declaration that the City has unconstitutionally applied the Ordinance or related policies or practices to each of its members, the Court STRIKES that request.

7

dismiss stage "even if [the organizational plaintiff's] claim required participation of most association members, . . . as long as the participation of *each* member is not required"). In other words, KFA may permissibly rely on participation of some members to establish the existence of a certain policy or practice without running afoul of the third <u>Hunt</u> prong. However, if it later becomes apparent that KFA will need to rely on the individual participation of each of its members, the Court will reevaluate standing at that time.

KFA has associational standing to assert claims on behalf of its members seeking declarations that certain Ordinance provisions and related practices and customs are unconstitutional and an injunction prohibiting enforcement of those provisions, practices, and customs. The Court DENIES the City's Motion to Dismiss KFA for lack of standing.

### 2.    AREPS

AREPS is an organization "of taxpayers in Los Angeles that was founded to ensure that their tax dollars are used to promote responsible public spending." SAC ¶ 44. For example, it advocates for spending on "public health, housing, and other public infrastructure for all residents of Los Angeles, including its unhoused residents[,] and against the use of their tax dollars to enforce illegal laws that harm vulnerable residents of the City." <u>Id.</u> AREPS identifies two of its members who were allegedly harmed by the City's actions. <u>Id.</u> ¶¶ 45-46. In its prior Order, the Court concluded that AREPS had not sufficiently alleged associational standing based on its members' status as taxpayers. 12(b)(1) Order at 15-18; <u>see also</u> <u>Hunt</u>, 432 U.S. at 343 (association does not have standing if its members do not have standing to sue in their own right). The City contends AREPS still has not met the first <u>Hunt</u> prong.

As stated in the Court's prior Order, the Ninth Circuit has held that "the standing analysis in a non-establishment clause case" of "a county taxpayer challenging an allegedly illegal act of the county" is the same as the analysis for a state taxpayer; that is, the "taxpayer

must allege direct injury, pecuniary or otherwise to have taxpayer standing under Article III." Villa v. Maricopa Cty., 865 F.3d 1224, 1229 (9th Cir. 2017) (quotation marks omitted) (quoting ASARCO Inc. v. Kadish, 490 U.S. 605, 613-14 (1989)). In Villa, the court of appeals held that allegations that "taxes have been used to finance Maricopa County officials who have 'intercept[ed] communications in violation of Title III,' is an insufficient allegation of direct injury within the meaning of Asarco." Id. AREPS contends that it now alleges more than the plaintiff in Villa did. Opp'n at 11. AREPS alleges that "[a] portion of the City's budget includes the cost of destroying property that is illegally seized from homeless residents." SAC ¶ 87. Specifically, the City pays "tipping fees" to "dispose of items into local landfills" at a price of $60 per ton. Id. Because the items "should not, and would not otherwise, have been seized in the first place . . . the more items that are unconstitutionally seized and destroyed, the more additional costs there are to the City, and therefore, to taxpayers." Id. AREPS does not contend that the City would not otherwise pay the tipping fees, only that the City would pay lower tipping fees because there would be fewer tons of trash if items were not destroyed pursuant to the Bulky Item Provision. Accepting these allegations as true, the Court finds AREPS has adequately alleged that the City spent tax dollars solely attributable to the challenged conduct. See Doremus v. Bd. of Ed. of Borough of Hawthorne, 342 U.S. 429, 434 (1952) (plaintiff must "show[] a measurable appropriation or disbursement of [City] funds occasioned solely by the activities complained of"); Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 794 (9th Cir. 1999) (en banc) ("[W]hen a plaintiff has failed to allege that the government spent tax dollars solely on the challenged conduct, we have denied standing").

The City next contends that even if AREPS can show injury, it cannot show that injury will be redressed by the declaratory and injunctive relief sought. Mot. at 24. "[T]o find redressability, a court must assume that, were the remedy the taxpayers seek to be allowed, 'legislators will pass along the supposed increased revenue in the form of tax reductions.'" Arizona Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 136 (2011) (quoting DaimlerChrysler Corp., 547 U.S. at 344).

"It would be 'pure speculation' to conclude that an injunction against a government expenditure or tax benefit 'would result in any actual tax relief' for a taxpayer-plaintiff." Id. (quoting ASARCO, 490 U.S. at 614). Assuming that the challenged Ordinance provisions were declared unconstitutional and enforcement enjoined, whatever savings might result would not necessarily be passed on to taxpayers. Instead, the City might spend the money on the presumably higher storage costs for unattended Bulky Items that can no longer be destroyed, or more frequent sweeps, or any number of other expenditures.

AREPS contends that "[t]axpayers are *not* required to show, as the City argues, that the City would refund them the money." Opp'n at 12 (citing Cammack v. Waihee, 932 F.2d 765, 769 (9th Cir. 1991) and We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cty. Bd. of Supervisors, 809 F. Supp. 2d 1084, 1111 (D. Ariz. 2011)). However, the Ninth Circuit's position in Cammack, 932 F.2d at 769, that a taxpayer is not required to "prove that her tax burden will be lightened by elimination of the questioned expenditure," relies on Hoohuli v. Ariyoshi, 741 F.2d 1169 (9th Cir. 1984), which has since been overruled. Arakaki v. Lingle, 477 F.3d 1048, 1062 (9th Cir. 2007) ("[T]he Supreme Court . . . effectively overrule[d] Hoohuli"). In Arakaki, the Ninth Circuit specifically noted that the Supreme Court's decision in DaimlerChrysler was contrary to the prior Ninth Circuit rule that "did not require that the taxpayer prove that his tax burden would be lightened by the cancellation of the challenged expenditure." Id. at 1062-63. It then applied DaimlerChrysler and found that "any benefit that would accrue to Plaintiffs from an injunction or declaratory judgement is speculative" because "[i]t is not certain that even if all funding for [the challenged expenditure] were terminated, that the Legislature would pass the savings on to the Plaintiffs in the form of tax breaks or refrain from spending the funds on [other] programs . . . ." Id. at 1064.[5] Therefore, under Arakaki, taxpayers are in fact required

---

[5] Additionally, We Are America relied on "the difference between the legal principles governing municipal taxpayer standing and those governing federal and state taxpayers" in reaching its conclusions. 809 F. Supp. 2d at

to show that the City would pass the savings on to AREPS's members. Because AREPS has not adequately alleged that fact, AREPS has not adequately pleaded associational standing and is DISMISSED with leave to amend.  The Court will give AREPS one final opportunity to plead standing adequately, though it does not appear likely that it can do so.

## B.   Organizational Standing

In its prior Order, the Court addressed in detail each of the City's arguments against KFA's organizational standing and found that KFA established organizational standing under the <u>Havens</u> test.[6]  Dkt. 37 12(b)(1) Order at 6-11.  The City now raises the entirely new argument that organizational standing under <u>Havens</u> applies only to "claims under federal statutes" and not claims based on the constitution.  Mot. at 19.  In support, the City relies on <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118 (2014) and <u>Bank of America Corp. v. City of Miami, Fla.</u>, 137 S. Ct. 1296 (2017).   Both <u>Lexmark</u> and <u>Bank of America</u> involve the "zone-of-interests" test that courts use to determine what class of plaintiffs are authorized to bring statutory causes of action, separate and apart from Article III standing.  <u>See</u> <u>Lexmark</u>, 572 U.S. at 127 (zone-of-interests test addresses "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim"); <u>Bank of America</u>, 137 S. Ct. at 1302 (zone-of-interest test answers the question "whether the statute grants the plaintiff the cause of action that he asserts").  Neither opinion addressed whether the <u>Havens</u> test for Article III organizational standing is unavailable

---

1111.  However, <u>Villa</u> makes clear that the Ninth Circuit no longer recognizes that distinction.  865 F.3d at 1229.  This makes particular sense for the City of Los Angeles, which has a population greater than many states.

[6] Applying <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363 (1982), the Ninth Circuit has held that "[a]n organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'"  <u>La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest</u>, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting <u>Fair Hous. of Marin v. Combs</u>, 285 F.3d 899, 905 (9th Cir. 2002)).

for constitutional claims.  And as subsequent Ninth Circuit cases show, the Article III standing analysis under <u>Hunt</u> and <u>Havens</u> is a completely separate inquiry from the zone-of-interests tests.  <u>See</u> <u>E. Bay Sanctuary Covenant v. Trump</u>, 950 F.3d 1242, 1265-66, 1270 (9th Cir. 2020) (first analyzing whether the organizational plaintiffs had associational standing under <u>Hunt</u> or organizational standing under <u>Havens</u> and then separately analyzing the zone-of-interests test under the relevant statute at issue).  KFA's organizational standing to bring constitutional claims under Article III is not limited by <u>Lexmark</u> and <u>Bank of America</u>.

## C.   Organizations' Assertion of Constitutional Claims

The bulk of the City's motion posits that even where an organization satisfies the standing requirements set out by <u>Hunt</u> or <u>Havens</u>, it nevertheless cannot state a claim for constitutional, and specifically Fourth and Fourteenth Amendment, violations where it is the constitutional rights of members or beneficiaries that were allegedly violated, rather than the rights of the organization itself. Plaintiffs contend the City has waived its ability to challenge the organizations' claims on these substantive grounds because it did not raise these arguments in its prior motion to dismiss.  Opp'n at 20 (citing Fed. R. Civ. P. 12(g)).

Rule 12(g)(2) prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion, but that does not mean that "[a] defendant who omits a defense under Rule 12(b)(6) – failure to state a claim upon which relief can be granted" – waives that defense.  <u>See</u> <u>In re Apple iPhone Antitrust Litig.</u>, 846 F.3d 313, 317-318 (9th Cir. 2017), <u>aff'd sub nom.</u> <u>Apple Inc. v. Pepper</u>, 139 S. Ct. 1514 (2019) ("a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)").   Although the Ninth Circuit is "generally [] forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion," and has recognized that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary

and costly delays," id. at 318-19, the Court does not believe judicial economy outweighs the policy reasons behind Rule 12(g) in this case. The Court is not persuaded by the City's bare assertion that "it is in the interest of judicial economy to consider the failure-to-state-a-claim arguments at this stage of the litigation." Dkt. 60 (Reply) at 12. The Court therefore DENIES the City's motion to the extent it raises defenses not raised in its prior 12(b)(6) motion, without prejudice to the City raising those issues again in a manner authorized by Rule 12(h)(2).

## D. Void for Vagueness (Third Cause of Action)

As both parties acknowledge, Mot. at 18; Opp'n at 22, the Ninth Circuit does not require "claims dismissed with prejudice and without leave to amend" to "be repled in a subsequent amended complaint to preserve them for appeal." Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012). Nevertheless, Plaintiffs decided to include in the SAC the Third Cause of Action, which was previously dismissed with prejudice, "to preserve all rights," but acknowledged that "this cause of action is no longer part of this litigation." SAC at 54 n.27. This claim should not have been included in the SAC. The City now requests that the Court "dismiss this claim again with prejudice." Mot. at 18. Plaintiffs' unnecessary inclusion of this claim does not revive it. The Court strikes the Third Cause of Action. This claim may not be repled.

## IV. CONCLUSION

The City's motion to dismiss for lack of standing is GRANTED in part and DENIED in part. The First and Second Causes of Action are DIMISSED as to AREPS with leave to amend. The Court strikes the Third Cause of Action. The City's motion to dismiss is otherwise DENIED.

An amended complaint must be filed no later than June 29, 2020. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a properly-noticed

motion.  Plaintiffs are ordered not to include any claims that have been dismissed with prejudice.

       IT IS SO ORDERED.

Date: June 2, 2020

Dale S. Fischer
United States District Judge