Shayla Myers (SBN: 264054)
Mallory Andrews (SBN: 312209)
Alex Flores (SBN 312209)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 S. Broadway, Los Angeles, CA 90003
Tel.:  (213) 640-3983
Email(s): smyers@lafla.org
              mbandrews@lafla.org
              aeflores@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora,
Ali El-Bey, James Haugabrook, Pete Diocson Jr.,
Marquis Ashley, and Ktown for All.*

*[Additional Attorneys on Next Page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANET GARCIA, et at.,<br><br>                 Plaintiff(s),<br><br>         vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>                 Defendant(s). | CASE NO. 2:19-cv-06182-DSF-PLA<br><br>Assigned to Judge Dale S. Fischer<br><br>**PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declarations, Request for Judicial Notice, and Proposed Order Filed concurrently]<br><br>**Date:      September 21, 2020**<br>**Time:     1:30 p.m.**<br>**Ctrm:    7D**<br><br>**CORRECTED VERSION** |

Catherine Sweetser (SBN 271142)
Kristina Harootun (SBN 308718)
John Washington (SBN 315991)
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone:  (310) 396-0731
Email: csweetser@sshhzlaw.com
        kharootun@sshhzlaw.com
        jwashington@sshhzlaw.com

*Attorneys for Plaintiffs.*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone:  (213) 680 8400
Email: benjamin.herbert@kirkland.com
        william.smith@kirkland.com

Michael Onufer (SBN 300903)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Email:  michael.onufer@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Janet Garcia,
Peter Diocson Jr., Marquis Ashley, and Ali El-Bey.*

1   **TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

2   　　PLEASE TAKE NOTICE  that on September 21, 2020 at 1:30 p.m., or as soon

3   thereafter as the matter may be heard in Courtroom 7D of the above-titled Court,

4   located at 350 West 1st Street, Los Angeles, California, 90012, that Plaintiffs Pete

5   Diocson Jr., Marquis Ashley, and Ktown for All ("Plaintiffs") will and hereby do

6   move for an order to show cause why Defendant City of Los Angeles ("the City,")

7   should not be held in civil contempt for failing to comply with the Court's Preliminary

8   Injunction (Dkt. 58).  This motion seeks relief pursuant to the Court's "inherent power

9   to enforce compliance with [its] lawful orders through civil contempt," *Shillitani v.*

10  *United States*, 384 U.S. 364, 370 (1966).

11  　　The motion seeks an order of civil contempt and sanctions for the City's

12  continued failure to comply with the provision of this Court's April 13, 2020

13  Preliminary Injunction, which specifically enjoins the City from "Posting signs,

14  notices, or other public information stating that the City will enforce Sections

15  56.11(3)(i) or 56.11(10)(d) of the Los Angeles Municipal Code." Dkt. 58 at 30.  The

16  City has violated this provision by repeatedly posting notices indicating that Bulky

17  Items are prohibited and stating the City's intention to enforce that prohibition by

18  removing the items because they are Bulky.

19  　　Plaintiffs' motion is based on the accompanying Memorandum of Points and

20  Authorities, Declarations of Shayla Myers, Catherine Sweetser, Adrian Riskin, James

21  Parriott IV, and Christopher Venn and accompanying exhibits; Request for Judicial

22  Notice; all pleadings and papers on file in this action; and all oral and documentary

23  evidence that may be presented at the time of the hearing on this motion.

24  ///

25  ///

26  ///

27  ///

28  ///

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

1    This motion is made following the conference of counsel pursuant to Local
2    Rule 7-3, which took place on August 6, 2020.

3

4    Dated: August 17, 2020          Respectfully submitted,

5                                    LEGAL AID FOUNDATION OF LOS ANGELES

6
                                     SCHONBRUN SEPLOW
7                                    HARRIS HOFFMAN & ZELDES LLP

8                                    KIRKLAND & ELLIS LLP

9
                                     /s/ *Shayla Myers*
10
                                     By: Shayla Myers
11
                                     *Attorneys for Plaintiffs.*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY.............................1

III. LEGAL STANDARD............................................................9

IV.  ARGUMENT .................................................................10

   a.  The City Violated this Court's Injunction..................................10

   b.  The City Failed to Take Reasonable Steps to Prevent these Violations ...........11

   c.  The City's Continued Violations Make a Finding of Contempt Particularly
      Appropriate ...........................................................14

   d.  Sanctions are warranted to Prevent the City from Continuing to Post
      Notices in Violation of the Court's Order and to ...............................19

     1.  Monetary Fines at a Daily Rate of $45,206.00, to be paid to the Court ......20

     2.  Post Remedial Notices in all the Neighborhoods where the City
       Posted Notices that Violate this Injunction .................................21

     3.  Reasonable Attorneys Fees...........................................22

V.  CONCLUSION................................................................22

  LOCAL RULE 5-4.3.4 ATTESTATION ...............................................224

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

1

## <u>**TABLE OF AUTHORITIES**</u>

2
Page(s)

<u>*Federal Cases*</u>

3

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
4
   702 F. 2d. 770 (9th Cir. 1983) ...................................................................20

5

*Federal Trade Comm'n v. Enforma Natural Prods., Inc.*,
6
   362 F.3d 1204 (9th Cir. 2004) ...................................................................9

7

*General Signal Corp. v. Donallco, Inc.*,
8
   787 F.2d 1376 (9th Cir. 1986) ...........................................................11, 21

9

*Harcourt Brace Jovanovich Legal & Prof'l Publ'ns v. Multistate Legal Studies*,
10
   26 F.3d 948 (9th Cir. 1994) .......................................................................22

11

*Housing Rights Center v. Donald Sterling*,
12
   2004 WL 3610228 (C.D. Cal. Dec 29, 2004) ..........................................22

13

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation*,
14
   10 F.3d 693 (9th Cir. 1993) .........................................................................9

15

*In Re: Crystal Palace Gambling Hall Inc.*,
16
   817 F.2d 1361 (9th Cir. 1993) ...................................................................11

17

*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir.  2016) ...........................................................11, 14
18

19

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949)....................................................................................11

20

*O'Connor v. Midwest Pipe Fabrications, Inc.*,
21
   972 F.2d 1204 (10th Cir. 1992) .................................................................19

22

*Ramond v. Designers Fountain, Inc.*,
23
   1993 WL 43561 (C.D.Cal. 1993) ..............................................................21

24

*Robinson v. Delicious Vinyl Records Inc.*,
25
   2014 WL 1715520 (C.D.Cal., 2014) .....................................................9, 10

26

*Shillitani v. United States*,
27
   384 U.S. 364 (1966)......................................................................................9

28

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

## <u>TABLE OF AUTHORITIES – CONT'D</u>

Page(s)

<u>*Federal Cases*</u>

*Shuffler v. Heritage Bank,*
  720 F.2d 1141 (9th Cir. 1983) ...................................................................19

*Sloane v. Karma Enterprises, Inc.,*
  2008 WL 11343430 (C.D. Cal., 2008) .......................................................9

*Spallone v. United States,*
  493 U.S. 265 (1990).....................................................................................9

*Stone v. City of San Francisco,*
  968 F.2d 850 (9th Cir. 1992) .......................................................................9

*United States v. United Mine Workers,*
  330 U.S. 258 (1947).............................................................................20, 21

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    INTRODUCTION**

On April 13, 2020, this Court issued a definite and specific order, enjoining the City of Los Angeles ("the City") from enforcing Los Angeles Municipal Code Section 56.11(3)(i), the "Bulky Item Provision," and LAMC 56.11(10)(d).  *See* Order Granting Plaintiffs' Motion for a Preliminary Injunction, Dkt. 58 ("Injunction").  The Order also prevented the City from posting "signs, notices, and other public information" related to the enforcement of those provisions.  Despite this Court's clear and unambiguous order, over the course of at least the past two weeks, the City has posted two different types of notices, both of which explicitly state that Bulky Items are prohibited and indicate the City's intention to enforce the Bulky Item Provision.  These notices have been posted on numerous occasions in neighborhoods around Los Angeles, from Hollywood to Wilmington.  The City posted these notices, knowing that doing so would violate this Court's order, and the City continues to do so even after counsel for the City represented that the City would stop.

As outlined in detail below, the City's actions over the past two weeks evidence a blatant disregard for this Court's injunction.  And the response to Plaintiffs' concerns about those violations demonstrates an unwillingness or an inability on the part of the City to take the steps necessary to ensure compliance with this Court's Order.  A finding of contempt and the issuance of appropriate sanctions is both justified and necessary to ensure the City complies with this Court's order in the future.

### **II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On July 18, 2019, Plaintiffs Ktown for All, Marquis Ashley, Pete Diocscon Jr., and five other individuals filed suit against the City of Los Angeles, alleging that the City had a custom, pattern or practice of violating the U.S. and California Constitutions by seizing and destroying homeless people's belongings.  Plaintiffs allege, *inter alia*, that Los Angeles Municipal Code Section 56.11(3)(i), the "Bulky Item Provision," which

authorizes the City to seize and destroy unhoused people's belongings based solely on the size of the items, violates the U.S. and California constitution on its face.

The City filed a Motion to Dismiss Plaintiffs' facial challenge to the Bulky Item Provision, which this Court denied in February 2020.  *See* Defendant's Motion to Dismiss Supplemental Complaint to the First Amended Complaint, Dkt 22; Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Failure to State a Claim, Dkt. 36 at p. 12, 16.  On February 26, 2020, after the City refused to cease enforcement of the Bulky Item Provision on its own, Plaintiffs moved for a preliminary junction to enjoin the City from enforcing it and to prevent the City from posting notices related to the enforcement of the ordinance. *See* Plaintiffs' Motion for Preliminary Injunction, Dkt. 38.

In March 2020, while Plaintiffs' motion was pending, federal, state, and local emergencies were declared in response to the growing global COVID-19 pandemic. *See* e.g., Plaintiffs' Request for Judicial Notice ("RJN"), Exh. 11.  On March 17, the Los Angeles City Council voted to suspend enforcement of the provision of LAMC 56.11 that require tents to come down during daytime hours  because "[e]nforcement of that provision effectively prohibits people from self-quarantining and maintaining social distance." RJN, Exh. 8.  Thereafter, and consistent with the March 17, 2020 Council Motion related to COVID-19, LA Sanitation also suspended noticed CARE+ "comprehensive cleanups," which are require unhoused individuals to take down their tents and leave the area during the pendency of the cleanup.  *See* Myers Decl., ¶ 8; RJN Exh. 5 at p. 40; Exh. 6.  The City Council did not, however, suspend any other provisions of LAMC 56.11.  RJN, Exh. 8.

On April 13, 2020, this Court granted Plaintiff's request for a preliminary injunction.  Specifically, the Court issue the following injunction:

The City of Los Angeles, and its agents and employees, are enjoined from doing any of the following:

1. Enforcing Section 56.11(3)(i) of the Los Angeles Municipal Code;

1     2. Enforcing Section 56.11(10)(d) of the Los Angeles Municipal Code;

2     3. Posting signs, notices, or other public information stating that the City will

3       enforce Sections 56.11(3)(i) or 56.11(10)(d) of the Los Angeles Municipal

4       Code."

5 Injunction at p. 30.  The City filed an interlocutory appeal and filed its opening brief

6 on June 26, 2020.  *See* Notice of Appeal, Dkt. 63; RJN, Exh. 11.  The City did not

7 seek a stay of the injunction, or otherwise asked this Court to modify or clarify the

8 injunction. Nor has the City sought to confer with Plaintiffs about any aspects of the

9 Injunction.

10      On June 29, 2020, after the injunction had been in place for over two months,

11 Plaintiffs were informed that city employees had made statements to unhoused

12 residents and advocates at an encampment in Venice that LA Sanitation was going to

13 resume the removal of Bulky Items on July 1, 2020.  Myers Decl., ¶ 9.  Plaintiffs also

14 learned that paper notices had been posted at the same encampment, stating "Urgent

15 Clean Up! Trucks coming next Wednesday Morning July 1st.  Have bulky items ready

16 to go." Decl. of Catherine Sweetser, Exh. A.

17      Plaintiffs' counsel contacted the City's attorneys regarding the notice and the

18 statements made by city employees.  Myers Decl., Exh. D.  Plaintiffs requested the

19 City clarify if it intended to remove Bulky Items, and if so, to meet and confer with

20 Plaintiffs prior to taking any such action, so the parties could seek intervention from

21 the Court if necessary. *Id.* Plaintiffs stressed that their concern was not just the

22 notices, but also the statements from city workers that the City intended to begin

23 removing Bulky Items.  *Id.* at Exh. E. On July 1, 2020, counsel for the City responded

24 and dismissed Plaintiffs' concerns, stating that the posted flyers were not City notices

25 but had likely been posted by housed neighbors in the area, that the City had not

26 modified its enforcement of the Bulky Item Provision since the Court issued its

27 Preliminary Injunction, and "the City is not conducting bulky item enforcement in the

28 area." *Id.*

1    The same day, Councilmember Joe Buscaino, the President Pro Tempore of the

2    City Council and representative of the 15th Council District, made an oral motion

3    during the City Council meeting to resume CARE+ comprehensive cleanups in special

4    zones the City had established around homeless shelters.[1] RJN, Exhs. 3 at p. 31-26, 4.

5    The motion received support from other council members, but ultimately failed

6    because there was insufficient basis for the Council to take emergency action.  *Id.*  The

7    motion was scheduled to be heard at the first council meeting after the council's

8    summer recess.  *See* RJN, Exh. 9.

9    On July 27, 2020, Plaintiffs sent a letter to the City regarding the City's

10   continued posting of permanent metal signs in these SECZs around the City's

11   homeless shelters, which continued to include language stating that "No Bulky Items

12   Shall Be Stored in Public Areas" and announcing daily "Bulky Item Removal."

13   Myers Decl., Exh. F.  On July 30, 2020, the City responded that the signs referenced

14   in Plaintiffs' letter were no longer being posted, and that the City did "not believe that

15   any signs referencing LAMC 56.11(3)(i) have been posted since the [injunction]."

16   Myers Decl., Exh. G  The City disagreed that the injunction "clearly required" the

17   City to remove or otherwise update the 3,106 signs that were currently posted at

18   approximately 800 locations around the City, but the City agreed to update those signs

19

20   _____

21   [1] Since 2018, the City has created a number of small homeless shelters around
     the City of Los Angeles, which are called A Bridge Home shelters.  Many of these

22   shelters are surrounded by so-called "Special Enforcement and Cleaning Zones"

23   ("SECZs"), which were put in place to placate housed residents' concerns about the
     opening of shelters in their neighborhoods.  *See* RJN, Exh. 2 at 58.  The City

24   concentrates enforcement of LAMC 56.11 in these zones.  *Id.*  The SECZ is

25   demarcated by metal signs stating that the City will enforce a number of laws around
     the SECZ.  *Id.* at 60; *see also* Myers Decl., Exh. [36].  Signs that had been posted

26   around the shelters before this Court issued its injunction specifically reference the

27   Bulky Item Provision and include an image of a "bulky item." *Id.*  The metal signs

28   also include the day of the week for the weekly CARE+ comprehensive cleanup that
     is conducted in the zone; this metal sign serves as notice for the CARE+ cleanup.

4

as well by placing an overlay on the signs that removed the offending language about Bulky Items.  *Id.*

On July 29, 2020, the Los Angeles City Council again took up Council Member Buscaino's motion to authorize the Bureau of Sanitation to resume CARE+ cleanups "within the Special Cleaning Zones established around A Bridge Home Shelters only."  RJN, Exh. 5 at p. 40-87; Exh. 6.  During the hearing on his motion, Councilmember Buscaino made it clear that he wxas bringing the motion to allow the City to resume the removal of Bulky Items.  RJN, Exh. 5 at p. 40-41.  In fact, Councilmember Buscaino began his presentation off the motion by showing photos of the homeless encampment at Lomita and McCoy, where Plaintiffs Pete Diocson and Marquis Ashley live.  *See* Injunction at p. 4, 5; Decl. of Pete Diocson in Support of Motion for Preliminary Injunction, Dkt. 38-5, ¶ 2; Decl. of Marquis Ashley in Support of Motion for Preliminary Injunction, Dkt. 38-2, ¶ 2.   Councilmember Buscaino stated that the City needed to resume cleanups, even in the midst of the pandemic, because they had made promises to their constituents to keep the streets clean and that "bottom line is, our sanitation are not given the necessary tools to pick up bulky items in and around these encampments colleagues . . . We're doing a disservice if we don't pick up these bulky items in and around these encampments."  RJN, Exh. 5 at p. 69-70; Exh. 6.  After significant debate, the City Council voted 10-4 to resume comprehensive cleanups.  *Id.* at p. 87.  According to the City Clerk, the council action became final on July 31, 2020.  *See* RJN, Exh. 7.

On the afternoon of the council vote, in response to a question at a press conference about the vote, Mayor Garcetti said no decision had been made to restart "comprehensive cleanups" around the homeless shelters, stating that the vote "doesn't mean that the city has announced we will do this." Myers Decl., ¶ 15 and Exh. H.

The next day, Councilmember Buscaino appeared on a local news program to discuss the council vote.  Myers Decl., Exh. I.  He reiterated numerous times that the reason for the motion was to remove Bulky Items, and that restarting the cleanups in

the middle of the pandemic was justified because they had made promises to their constituents.   When asked specifically about this Court's injunction, Councilmember Buscaino responded clearly and unequivocally: "let me correct you, we can move bulky items, with adequate notice." *Id.*

That same day, before the council action had even become final, the City posted notices for a comprehensive cleanup in San Pedro, which is in Councilmember Buscaino's district. *See* Myers Decl. ¶¶ 17-19 and Exh. J ("Notice of Major Cleaning"); Exh. [32]; Decl. of James Parriott IV, Exh. A.  The notices used by the City were 11 x 14 inch "Notice of Major Cleaning" signs, identical to the signs the City used prior to the Court's preliminary injunction.  The top of the Notice of Major Cleaning states in large font and all capital letters, BULKY ITEMS ARE ALWAYS PROHIBITED.  The notices also state: "Please remove all personal belongings and bulky items from the posted area by 11:00 a.m. on Friday, July 31, 2020.  All property remaining in this location after 10:00 a.m. will be removed by the City."  Further, the notices go on to state that "[t]he City reserves the ability to address . . .bulky items  . . . at any time and in any location."  The Notices of Major Cleaning were posted on street signs and lamp posts throughout the area that make up the SECZ around the new shelter in San Pedro.  Myers Decl., ¶ 19 and Exh. J.

On August 3-4, 2020, the City posted different notices in South Los Angeles related to "bulky items." *See* Myers Decl., Exh. L. ("Notice of Bulky Item").  These Notices of Bulky Item do not relate to or provide notice of a comprehensive cleanup.  Rather, these notices explicitly state that "STORAGE OF BULKY ITEMS IN THE PUBLIC RIGHT OF WAY OR ANOTHER PUBLIC AREA IS PROHIBITED."  The notices state that failure to remove a Bulky Item will "subject it to removal by the City" and that "moving this bulky item to another public area is not removal."  These notices are similar in form to the notices used by the City prior to this Court's injunction, *see* RJN, Exh. 2 at 45-46, except that the new notices provide for the enforcement of the Bulky Item Provision by removal, rather than destruction of the

Bulky Item.  *See* Notice of Bulky Item.  On August 4, 2020, these notices were affixed directly to individuals' encampments and tents.  Myers Decl., ¶¶ 22-24 and Exh. L, M, N.  When LA Sanitation workers conducted the cleanup on August 4, they crushed and immediately threw away at least one item tagged as a Bulky Item. Myers Decl., Exh. M.

On August 6, 2020, Plaintiffs' counsel notified the City of its intent to file an ex parte application for an order to show cause re: contempt, based on the City's violation of the Court's Order by posting these notices.  Myers Decl., Exh. O. Plaintiffs offered to discuss a stipulation and declaration in lieu of filing this motion. Counsel for the parties discussed this option on the afternoon of August 6, 2020. Myers Decl., ¶¶ 27-19.  Although counsel for the City agreed that the notices were posted in violation of the injunction, he expressed uncertainty about whether he would be able to obtain a declaration stating as much and requested additional time to see what he could do.  *Id.*  After the call, Plaintiffs sent an email to the City indicating that if the parties could reach an agreement on August 7, Plaintiffs would file the agreed-upon stipulation, instead of this motion.  *Id.*  Plaintiffs' counsel provided a draft stipulation on Friday.  Myers Decl., ¶ 31.

On Monday, August 10 at 7:15 a.m., counsel for the City responded to Plaintiffs' emails and proposed stipulation by summarizing the results of its "swift investigation" into Plaintiffs' concerns. Myers Decl., Exh. Q.  The City agreed that it had in fact posted the Notice of Major Cleanup on July 30, 2020; the City provided Plaintiffs a copy of the new CARE+ notice, which omits reference to Bulky Items, but notably failed to provide the requested information about when the new notice had been created.  *Id.* In addition, the City conceded that LA Sanitation had posted Notices of Bulky Item on August 3 in South Los Angeles and also, that it had posted the notices on property before another cleanup on August 7 in Wilmington, another neighborhood in Council District 15.  Significantly, this cleanup occurred after Plaintiffs informed the City about its intent to file this motion.  The City made

7

numerous excuses for the use of the Notice of Bulky Items, but ultimately stated that while the notices were used to provide additional notice to people with bulky structures, the City would not do so again the future.  *Id.*

Further, in an apparent attempt to evidence the City's willingness to "address Plaintiffs' concerns regarding compliance with the injunction," counsel for the City represented that the City had finished updating the permanent signs in the SECZ, and in less than a week, "posted over 3,100 overlays over existing permanent signage" throughout Los Angeles.  *Id.* Counsel provided photographs of signs from the special enforcement zone around a new navigation center in North Hollywood, on which the City had taped over the offending language about Bulky Items.  The City did not address Plaintiffs' request for a stipulation, nor did they provide a declaration from anyone at LA Sanitation, attesting to the City's compliance with the injunction; instead, the City wrapped up its email by arguing that an ex parte was unnecessary because the parties were "collaborating to resolve these issues, as we have done here and on past occasions." *Id.*

After receiving the City's representations that the City had updated all of the SECZ signs, Plaintiffs' counsel visited the SECZs around both the Navigation Center in North Hollywood and the ABH shelter on Raymer, whose SECZ is immediately adjacent to the Navigation Center. Myers Decl., ¶ 34. Plaintiffs' counsel confirmed that most of the signs around the Navigation Center had been updated,[2] but contrary to the City attorneys' representation that all permanent signs had been updated, the City had not actually updated most of the signs in the SECZ around the Raymer shelter. Myers Decl., ¶¶ 34-36 and Exh. R.  While a handful of highly visible signs on two major arterial roads and a few surrounding streets had been taped over, the overwhelming majority of the metal signs in the SECZ still referenced Bulky Items, including most of the signs that are actually near homeless encampments.  *Id.* On

---

[2] The two signs in the Navigation Center SECZ that Plaintiffs' counsel identified that did not have the Bulky Item language covered, appears to have had tape on the signs, but the tape appears to have been removed.  Myers Decl., ¶ 37.

1 | Saticoy Street, where the City has placed approximately 14 sets of metal signs, only

2 | the signs around a single intersection had been updated. *Id.* In all, Plaintiffs' counsel

3 | documented over 150 signs at approximately 43 different locations in this one single

4 | SECZ, which still contained language regarding Bulky Items. *Id.*

5 |    Thereafter, Plaintiffs notified the City on August 10 that they intended to move

6 | for contempt and sanctions, but would agree to proceed by noticed motion as

7 | Defendant requested. Myers Decl., ¶ 37.  On August 12, 2020, despite its

8 | representation the City would not be doing so again, the City continued to post the

9 | Notice of Bulky Items, this time in Hollywood.  Decl. of James Parriott IV, Exh. B.

10 | They did so even as they failed post any other notices informing unhoused residents

11 | that the City would be resuming the comprehensive cleanups after suspending them

12 | for five months.  Parriott Decl., ¶ 18.

13 | **III.   LEGAL STANDARD**

14 | "Courts have inherent power to enforce their orders through civil contempt."

15 | *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (citing *Shillitani v. United*

16 | *States*, 384 U.S. 364, 370 (1966)). "A district court has wide latitude in determining

17 | whether there has been a contemptuous defiance of one of its orders." *Sloane v.*

18 | *Karma Enterprises, Inc*., 2008 WL 11343430, at *2 (C.D. Cal., 2008) (*citing Stone v.*

19 | *City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), *cert. denied*, 506 U.S. 1081

20 | (1993).  In a motion for an order to show cause regarding contempt, "the moving party

21 | has the burden of showing by clear and convincing evidence that the contemnors

22 | violated a specific and definite order of the court. The burden then shifts to the

23 | contemnors to demonstrate why they were unable to comply." *Federal Trade Comm'n*

24 | *v. Enforma Natural Prods., Inc*., 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and

25 | quotation marks omitted) "The defendant's conduct 'need not be willful' to violate a

26 | consent judgment.'" *Robinson v. Delicious Vinyl Records Inc*., 2014 WL 1715520, at

27 | *1 (C.D.Cal., 2014) (citing *In re Dual-Deck Video Cassette Recorder Antitrust*

28 |

*Litigation*, 10 F.3d 693, 695 (9th Cir. 1993).  As the court in *Robinson* noted, "there is 'no good faith exception to the requirement of obedience.'" *Id.*

## IV.   ARGUMENT

### a.  The City Violated this Court's Injunction

The City has conceded, as it must, that it violated the Court's April 13, 2020 preliminary injunction. *See* Myers Decl., ¶¶ 27-29 and Exh. P.  On numerous separate occasions, the City has posted notices that violated this Court's order not to "post[] signs, notices, or other public information stating that the City will enforce Sections 56.11(3)(i) or 56.11(10)(d) of the Los Angeles Municipal Code." Injunction at p. 30.  Despite this Court's clear admonition against posting such notices, there is no dispute that the City did just that.

First, the City violated the injunction by posting the Notice of Major Cleaning signs around a 50 block area in San Pedro on July 30, 2020.  These notices stated in large font and all capital letters, BULKY ITEMS ARE ALWAYS PROHIBITED.  The notice then states that the City will enforce the provision: "[t]he City reserves the ability to address . . .bulky items  . . . at any time and in any location."  The notices were posted on street signs and lamp posts throughout the approximately 50 square blocks that make up the SECZ around the new homeless shelter in San Pedro.

Second, the City has violated the injunction numerous times by posting Notices of Bulky Items in and around homeless encampments in at least three different neighborhoods around the City.  Similar to the Notice of Major Cleaning, this notice states that "STORAGE OF BULKY ITEMS IN THE PUBLIC RIGHT OF WAY OR ANOTHER PUBLIC AREA IS PROHIBITED."  This notice also states that the City will enforce the Bulky Item Provision it if the item remains in public.  By the City's own admission, these notices were posted on August 3 and August 7.  And even after counsel for the City informed Plaintiffs the City would not post the notices again, the City did just that, posting the Notice of Bulky Item again on August 12, 2020 in Hollywood.

1       Evidence of these postings, along with the City's concession that it has done

2   so, constitutes clear and convincing evidence that LA Sanitation violated this Court's

3   injunction on numerous occasions.  Plaintiffs need not show more to support a

4   finding of contempt.  Plaintiffs need not show that these violations were willful for

5   this court to find the City in civil contempt.  *In Re: Crystal Palace Gambling Hall*

6   *Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1993); *see also McComb v. Jacksonville Paper*

7   *Co.*, 336 U.S. 187, 191 (1949) ("it matters not with what intent the defendant did the

8   prohibited act").  But it is worth noting that the City was well aware, prior to posting

9   these notices, that posting notices referencing enforcement of the Bulky Item

10  Provision would violate this Court's order.   On its own, the City removed similar

11  offending language from new metal signs that have been posted since the injunction,

12  and after being contacted by Plaintiffs, agreed to remove the language from all signs

13  that were currently posted around the City as well.  Yet at the same time the City

14  Attorney's office was representing to Plaintiffs' counsel that it was removing this

15  language from permanent signs around the city, LA Sanitation was posting paper

16  notices with even more explicitly-prohibited language in exactly the same locations.

17      **b.  The City Failed to Take Reasonable Steps to Prevent these Violations**

18      The City cannot defend against a finding of contempt here by arguing that it has

19  substantially complied with the Injunction.  While "substantial compliance" is a

20  defense to contempt, it rests not on the extent to which the City has complied with the

21  Court's injunction, but instead, on whether the defendant took "all reasonable steps"

22  to comply with the order.   "If a violating party has taken *all reasonable steps* to

23  comply with the court order, technical or inadvertent violations of the order will not

24  support a finding of civil contempt."  *General Signal Corp. v. Donallco, Inc.*, 787

25  F.2d 1376, 1379 (9th Cir. 1986) (internal quotations removed, emphasis added).  *See*

26  *also Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir.  2016)("A contemnor in

27  violation of a court order may avoid a finding of civil contempt only by showing it

28  took *all* reasonable steps to comply with the order" (emphasis in original)).

The City cannot possibly argue it took reasonable steps to comply with this Court order, let alone that it took *all* reasonable steps.  On the contrary, the City actually took affirmative steps to violate the Injunction, by posting two different types of notices that specifically refer to enforcement of the Bulky Item Provision.

   Even if the City had taken all reasonable steps to comply with the Injunction, which the City did not, posting these notices could not be dismissed as a mere "technical" violation of the injunction.  Posting notices is one of only three specifically and expressly prohibited acts enjoined by this Court.  The injunction is absolutely explicit that the City is enjoined from "posting signs, notices, or other public information stating that the City will enforce" the prohibition on Bulky Items. *See* Injunction at p. 30.   But even without that prohibition, it would be difficult for the City to argue that it is legally acceptable for the City to continue to post notices stating its intention to do something it is enjoined from doing.  The reason for this should be obvious:  allowing the City to continue to inform individuals that Bulky Items are prohibited and threatening to seize them, even though the City is enjoined from doing so, is a misleading and coercive method of obtaining compliance with an ordinance the City has been enjoined from enforcing.

   Posting these notices is not simply a harmless act.  Los Angeles Municipal Code 56.11 makes it a crime to interfere with the City's enforcement of the ordinance, and law enforcement officers are frequently present while Sanitation removes and destroys belongings.  *See* LAMC 56.11(10)(a)-(d).  Individuals who have been subjected to LAMC 56.11 enforcement know or quickly learn they have no choice but to abide by the City's notices and relinquish their belongings.  When the City posts notices that an item is prohibited and the City intends to remove that item, people have no way of knowing that the City is enjoined from actually doing so.  Many people will abide by that notice and give up or abandon their belongings, even though the City is enjoined from seizing these items because they are bulky.

///

Nor can it be said that the use of these notices is inadvertent.  Plaintiffs are aware that LA Sanitation workers have actively posted these notices on at least four separate occasions, in four different neighborhoods, on four different days.  And both sets of notice take the same consistent position:  the notices purport to allow the City remove Bulky Items that are stored in public, as prohibited by LAMC 56.11(3)(i).  The City may argue that the Notice of Major Cleaning was simply not updated to conform to this Court's injunction—which is not a defense to this Motion.  But the Notice of Bulky Item, which has been used throughout Los Angeles on numerous occasions, appears to have been edited *after* Plaintiffs moved for a preliminary injunction.  *See* Notice of Bulky Item (indicating a revision date of 03/04/2020).  The prior version of the notices used by the City allow the City to "immediately destroy" bulky items; the new version still states specifically that "storage of bulky items in the public-right-of-way or another public area" is prohibited, and goes on to state that the City may remove items that violate the ordinance.  *Compare* RJN, Exh. 2 at p. 45-46 and Notice of Bulky Item.  But as the City well knows, the Injunction does not simply enjoin the City from destroying Bulky Items; removing Bulky Items because they are bulky constitutes enforcement of LAMC 56.11(3)(i) as well, and this is true regardless of whether the City gives notice of its intention to do so first.  In fact, critical to this motion, "posting signs, notices, or other public information stating" the City's intention to remove the Bulky Item is exactly what the third provision of this Court's preliminary injunction prohibits.

The fact that the City has posted notices of its intention to seize Bulky Items calls into question the extent to which the City is actually doing so.  Plaintiffs notified the City in June of statements made by city employees that the City intended to resume the removal of Bulky Items.  These statements were dismissed by counsel for the City, but those statements are consistent with the notices posted by the City.

And LA Sanitation's contemptuous actions have not been taken in a vacuum. City employees posted these notices immediately after the President Pro Tempore of

13

the City Council made very public statements that the main reason for the resumption of the cleanups was to give Sanitation "the necessary tools to address Bulky Items." RJN, Exh. 5 at p. 69-70, Exh. 6.  Those statements were made during a council meeting in which LA Sanitation and Livability Services Division staff, as well as the City Attorney's office were present. *Id.*  The City Attorney's office did not correct or qualify these statements, and Councilmember Buscaino repeated these statements to the press.  When Councilmember Buscaino appeared on a radio program to discuss the City's decision to resume comprehensive cleanups against public health guidelines, he continued to fixate on Bulky Items.  He was asked specifically how his position on Bulky Items squared with this Court's preliminary injunction; in response, he stated that the City was allowed to move bulky items as long as the City gave notice.  Myers Decl., Exh. I.

Councilmember Buscaino's erroneous statements cannot simply be dismissed as problematic but meaningless statements by a politically-motivated member of the City Council.  At the same time he was making these statements in the press, LA Sanitation workers were in his council district, violating this Court's injunction.  Over the course of the two weeks following the city council vote, the City violated this Court's injunction on numerous occasions.  Councilmember Buscaino's comments and those of other council members made it explicitly clear that they were pushing for the resumption of CARE+ comprehensive cleanups, even while the global COVID-19 pandemic continues to worsen, so the City resume the removal of Bulky Items.  Under these circumstances, posting notices with the offending language cannot be understood as inadvertent, but rather, must be seen as by design.

### c.  The City's Continued Violations Make a Finding of Contempt Particularly Appropriate

The City has attempted to argue that a finding of contempt is not necessary because each time the City was notified of potential violations, counsel for the City undertook a "swift investigation" to address Plaintiffs' concerns.  Myers Decl., Exh.

Q. This both misunderstands the parties' obligations following the entry of this Court's preliminary injunction, and it overlooks the City's attorneys' unwillingness or inability to accurately report what has occurred, let alone adequately ensure compliance with this Court's injunction.

As an initial matter, the City seems to misunderstand its obligations to abide by this Court's injunction. A Court's preliminary injunction is self-executing. The onus is not on Plaintiffs to police the injunction and identify violations, and for counsel for the City to "respond to Plaintiffs' stated concerns and address[] them in an expedited manner." *Id.* The onus is on the City and its various departments to abide by this Court's injunction and to prevent violations before they occur.

This is particularly important in a case like this, and it is especially true during the current pandemic. Unhoused residents have limited access to resources like phones and email, which makes it exceedingly difficult for them to raise issues or document violations of their rights. Moreover, the fact that the City is violating the preliminary injunction by posting temporary notices, which by their very nature are fleeting, makes it that much more difficult for Plaintiffs to hold the City accountable for violating the injunction. The City already provides almost no public notice of the cleanups it conducts—it provides notice only of "comprehensive cleanups," and only by posting notices at the specific encampments where the cleanups are conducted.[3] In

---

[3] As noted in Plaintiffs' motion for preliminary injunction, the City releases CARE and CARE+ Confirmation Sheets to Adrien Riskin. *See* Decl. of Adrian Riskin ("Riskin Decl."), ¶ 3; *see also* Decl. of Adrian Riskin in Support of Plaintiffs' Motion for Preliminary Injunction, Dkt. 38-1, ¶ 2. Mr. Riskin then shares these confirmation sheets with members of the community. *See* Decl. of Adrian Riskin, ¶ 6. He usually receives the schedule of CARE+ cleanups by 9:00 a.m; however, on July 31, 2020, the City inexplicably did not provide the schedule for CARE+ cleanups until 2:00 p.m. Riskin Decl., ¶¶ 5, 9. The schedule did not list the CARE+ comprehensive cleanup in San Pedro. *Id.*, Exh. B. Since the City has resumed CARE+ cleanups, only one Comprehensive Cleanup has been listed on the CARE+ confirmation sheets as such. *Compare* Riskin Decl., Exh. C and Exhs. D, E, and F.

the best of times, it is difficult to track when the City is conducting cleanups, let alone when the City posts notices that violate the Court's injunction.

In fact, the CARE+ cleanup on July 31, 2020 was conducted in a way that made it especially difficult for Plaintiffs to observe.  The cleanup was conducted almost immediately after the City Council voted to allow the cleanups to resume. The notices were posted even before the City Council action was final, *see* RJN, Exh. 7, and less than a day after the Mayor of the City of Los Angeles publicly announced that the City decided whether to resume the cleanups.  Myers Decl., ¶ 15 and Exh. H. In addition, while the City Council authorized comprehensive cleanups to commence only in SECZs around ABH shelters, the SECZ for San Pedro was not even operational yet,[4] which means at the time the cleanup was conducted, it was outside of the areas authorized by the motion for the CARE+ cleanups.  The cleanup also did not appear on the CARE+ Confirmation Sheet that day.  Riskin Decl., Exh. A. And it was not even conducted on the day of the week that is reserved for future cleanups in that particular SECZ. Venn Decl., Exh. A.

Under these circumstances, it was very likely that the City's contemptuous actions on July 30-31 would simply go undetected.  In fact, Plaintiffs' counsel was made aware that the City conducted the CARE+ cleanup and posted the notices only because a local San Pedro online newspaper posted a story about the cleanup and included a photo of the notice itself.  Myers Decl., ¶ 17-18.  Plaintiffs' counsel was able to obtain a copy of the offending notices on Saturday, August 1, 2020—the day after the cleanup was conducted—and only because many of the paper notices were still posted in the area.  *Id.*, ¶ 19.

---

All other cleanups have been listed as "spot clean only," even though the City has conducted CARE+ comprehensive cleanups since then. *See e.g.,* Parriott Decl., ¶ 17.

[4] According to the City's permanent signs posted around the shelter, the Beacon SECZ did not become operational until August 7, 2020—a full week after the City conducted the cleanup in the area.  *See* Decl. of Christopher Venn, Exh. A.

1       The use of the Notice of Bulky Item notices are even more likely to go
2   undetected.  While some "notices of major cleanups" remain posted long after
3   cleanups are conducted, Notices of Bulky Item are often posted directly on people's
4   belongings and, as such, the notices are almost always removed or destroyed along
5   with the belongings.  For example, on August 4, 2020, Notices of Bulky Item had
6   been placed on a tent on 25th and Main.  The tent was then crushed by a bulldozer and
7   summarily destroyed; nearly every notice posted on it was also destroyed along with
8   it. *See* Myers Decl., Exh. M, N.  Plaintiffs' counsel was able to document the violation
9   only because they were present to monitor the comprehensive cleanup and found an
10  errant notice, summarily left in the street after Sanitation left for the day. *Id.*

11      The inability to catch the City's violations is not, moreover, the province of
12  mere hypotheticals.  Plaintiffs were not aware of the City's August 7, 2020 violation
13  of the injunction and had no practical way to discern it.  There are more than a dozen
14  SECZs around the City, to say nothing of the thousands of homeless encampments
15  spread out over 500 square miles in the City, and on August 7, as with the other
16  cleanup in Councilmember Buscaino's district, the CARE+ schedule indicated that the
17  City was conducting only a spot cleaning at this location, along with 34 other
18  locations that day.  Riskin Decl., Exh. D.  Plaintiffs had no reason to observe this spot
19  cleaning over any other spot cleaning that day, and they had no way of knowing that
20  the City had posted Notices of Bulky Items in Wilmington in violation of this Court's
21  injunction.  Plaintiffs only became aware of this violation after they informed counsel
22  for the City of the violations on July 30-31 and August 3-4, and the City's attorney
23  disclosed this additional violation.

24      The City's use of temporary signs at inconsistent intervals makes it difficult to
25  track when or where these notices are posted.  While Plaintiffs have been able to
26  provide clear and convincing evidence that the City violated this Court's injunction on
27  the occasions outlined in this motion, there is no telling the extent to which the City
28

1    has used "Notice of Bulky Items" in the preceding three months since this Court

2    issued its injunction, or the extent to which the City continues to post these notices.

3          Nor can Plaintiffs rely on the representations by the City's attorneys to ensure

4    compliance with the Injunction.  The "swift investigations" conducted by counsel for

5    the City have amounted to little more than conclusory statements about compliance or

6    worse, post hoc rationalizations that ignore the import of those violations and are

7    inadequate to ensure they will not occur in the future.  This is illustrated by the City's

8    attorneys' statements regarding its actions to update metal signs in SECZs throughout

9    the City.  Counsel for the City represented to Plaintiffs on August 10 that the City had

10   updated all 3,106 permanent SECZ signs around the City, and they were now all

11   compliant with the Court's injunction.  Myers Decl., Exh. Q.  But this was verifiably

12   untrue—Plaintiffs' counsel documented that the vast majority of the signs in the

13   SECZ immediately adjacent to the one the City provided documentary evidence for

14   had not been updated; these signs continued to announce that Bulky Items are

15   prohibited and would be removed. Myers Decl., Exh. R.

16         Attorneys for the City also indicated that the City would stop using the Notices

17   of Bulky Items following Plaintiffs' letter on August 6, 2020, but this too has proven

18   untrue.  After providing a rather convoluted explanation for the City's use of the

19   Notices of Bulky Items, counsel for the City went on to state that "the City will no

20   longer be posting any additional paper notices on large items designed to be used as

21   shelters."  *Id.* And yet, within two days of sending that letter, the City continued to

22   post the Notice of Bulky Item—this time the notice was posted in Hollywood.

23   Parriott Decl., Exh. B.

24         These are far from the only instances where the City's attorneys have provided

25   self-serving and incomplete information in an attempt to obfuscate what is actually

26   occurring at the hands of city employees.  For example, in responding to Plaintiff's

27   concerns about the July 30 use of the Notice of Major Cleanings, counsel for the City

28   attempted to dismiss the violation because the permanent signs were fully compliant

with this Court's injunction and provided notice of the cleanup, and the posting of paper notices "was an attempt to provide *additional* notice to unhoused residents in the area because cleanup operations had been suspended." Myers Decl., Exh. Q. This post hoc rationalization is both irrelevant—the fact that some notices in the SECZ did not include the prohibited language does not excuse posting of notices that did—and it is demonstrably inaccurate. First, the permanent signs posted throughout the area had no bearing on the cleanup on Friday, July 31, 2020: the signs indicate clearly that the Special Enforcement Zone was not operational until August 7, 2020—a full week after the paper notices were posted and the first cleanup was conducted. Venn Decl., Exh. A. Moreover, the metal signs inform residents that comprehensive cleanups will take place on Tuesdays in the Beacon special enforcement zone, *id.*; this noticed cleanup took place on Friday, July 31. And most importantly, even if the metal signs could have served as notice of the cleanup, the metal signs were actually covered up with the blank side of the paper notices in at least some locations. *See* Myers Decl., Exh. K.

At this point, it is irrelevant whether counsel for the City is knowingly misrepresenting facts or simply failing to adequately investigate its clients' positions before repeating them to Plaintiffs. Either way, the result is the same. The City continues to violate this Court's injunction and the instances outlined in this motion are more than sufficient to support a finding of contempt. The response to Plaintiffs' concerns only highlight why further court intervention is warranted and, indeed, necessary to ensure compliance with this Court's injunction.

### d. Sanctions are warranted to Prevent the City from Continuing to Post Notices in Violation of the Court's Order and to

After a finding of contempt, a court may issue sanctions for two purposes: "to compel or coerce obedience to a court order" and "to compensate the contemnor's adversary for injures resulting form the contemnor's noncompliance[.]" *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (citing

*Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983)). The court has broad discretion to impose contempt sanctions and "must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).

Given the continued willingness of the City to violate this Court's orders and the continued misrepresentations about those actions, Plaintiffs request the Court issue the following sanctions, in order to coerce the City to comply with this Court's order and to remedy the harms caused by those violations:

**1. Monetary Fines at a Daily Rate of $45,206.00, to be paid to the Court**

Plaintiffs respectfully request this Court impose civil contempt sanctions against the City for its ongoing disregard of this Court's April 13, 2020 injunction, in an amount sufficient to coerce the City to abide by this Court's order. Monetary fines are appropriate coercive sanctions where fines are paid directly to the Court. *Id; see also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F. 2d. 770, 779 (9th Cir. 1983).

Plaintiffs request the City be ordered to pay this daily monetary sanction to the Court until the City files a Declaration of Compliance, signed under penalty of perjury by the Director and General Manager of LA Sanitation. The declaration should state that LA Sanitation has:  1) identified and updated all notices used by LA Sanitation to be consistent with this Court's preliminary injunction; 2) removed all notices posted around the City stating that the City will enforce the Bulky Item Provision; 3) informed all members of the Livability Services Division of the Bureau of Sanitation, which is the division responsible for implementation of CARE and CARE+, that the Court's injunction prohibits the City from both removing and destroying items based on the size of the items, and it prohibits the City from posting notices stating the City's intention to either remove or destroy Bulky Items; and 4) submitted a report to

the Los Angeles City Council, informing them of this motion and providing a copy of this Court's Preliminary Injunction, his declaration, and this order.

When determining the amount of a monetary sanction like the one requested here, the Court should take into account "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United Mine Workers*, 330 U.S. at 304, 67 S. Ct. at 701; *see also Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1378 (9th Cir. 1986). The City of Los Angeles has a yearly operating budget of approximately $10.5 billion. RJN, Exh. 9. In Fiscal Year 2020-21, LA Sanitation had a budget of approximately $334 million. *Id.* Of that budget, the City allocated $16,513,823.00 to conduct CARE+ clean ups. *Id.* Plaintiffs request that Defendant be ordered to pay a daily monetary sanction in the amount of $45,205.58 to the Court, which represents the amount allocated every day from the Los Angeles City Budget to LA Sanitation to cover the operational costs to conduct the CARE+ comprehensive clean-ups. By calibrating the sanction to the amount allocated to LA Sanitation's budget for the specific activity that has led to the contemptuous activity, the amount accounts for both the City's resources and the appropriate burden for its contemptuous acts.

## 2. Post Remedial Notices in all the Neighborhoods where the City Posted Notices that Violate this Injunction

Plaintiffs request the City be ordered to post remedial notices or in the alternative, pay damages to Plaintiffs to do so themselves. Remedial or corrective advertising is a well-established remedy to compensate for damages caused by the violation of an injunction, where the violation impacts public perception. *See Ramond v. Designers Fountain, Inc.*, 1993 WL 43561, at *4 (C.D.Cal. 1993). That is effectively what happened here. Therefore, Plaintiffs respectfully request this Court order the City to post remedial notices, in both English and Spanish, in San Pedro, Wilmington, South Los Angeles, and Hollywood, as well as any other neighborhoods where the City has posted notices that violated this Court's injunction. The purpose of

these notices is to counteract the misleading information posted by the City since the injunction was issued, and inform residents that the City may not enforce the Bulky Item Provision (and specifically, that the City may not remove or destroy Bulky Items based on the size of the items).  Plaintiffs further request the Court order the parties to meet and confer about the contents of the remedial notices, and file a copy of the agreed-upon notice with this Court after it is posted.

### 3.  Reasonable Attorneys Fees

The court has broad discretion to award Plaintiffs attorney's fees as compensatory damages.  *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns v. Multistate Legal Studies*, 26 F.3d 948, 953 (9th Cir. 1994).  If Defendants had respected the Court's preliminary injunction, Plaintiffs would have no reason to bring this motion to compel obedience.  Therefore, Plaintiffs also request reasonable attorneys fees to compensate Plaintiffs for the time and expenses incurred by bringing this motion.  *Housing Rights Center v. Donald Sterling*, 2004 WL 3610228 at *3 (C.D. Cal. Dec 29, 2004).  Plaintiffs request the Court allow Plaintiffs to submit a request for fees following the ruling of the Court on this motion, in order to account for the full amount of fees expended to bring this motion.

## V.    CONCLUSION

Plaintiffs have provided clear and convincing evidence that the City has violated this Court's order.  The City's response to these violations has shown they will continue to do so, unless and until this Court takes further steps to enforce its order. Plaintiffs request this Court issue an Order to Show Cause re: Civil Contempt and Sanctions and find the City in civil contempt based on the violations outlined in this motion.  Plaintiffs further request this Court issue coercive sanctions to prevent further violations and other sanctions to remedy the harms caused by the City's violations.

//

//

//

Dated: August 17, 2020            Respectfully submitted,

                                  LEGAL AID FOUNDATION OF LOS ANGELES

                                  /s/ Shayla Myers
                                  _____
                                  By: Shayla Myers
                                  *Attorneys for All Plaintiffs*

                                  SCHONBRUN SEPLOW HARRIS HOFFMAN &
                                  ZELDES LLP

                                  /s/ Catherine Sweetser
                                  _____
                                  By: Catherine Sweetser
                                  *Attorneys for All Plaintiffs*

                                  KIRKLAND & ELLIS LLP

                                  /s/ Benjamin Allen Herbert
                                  _____
                                  By: Benjamin Allen Herbert
                                  *Attorneys for All Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest that Plaintiffs' counsel, Benjamin Herbert and Catherine Sweetser, concurs in this filing's content and has authorized the filing.

DATED: August 17, 2020           LEGAL AID FOUNDATION OF LOS ANGELES

/s/ Shayla Myers
_____

By: Shayla Myers
*Attorneys for All Plaintiffs*

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS