1  Shayla Myers (SBN 264054)
2  Mallory B. Andrews (SBN 312209)
   Alex Flores (SBN 303552)
   LEGAL AID FOUNDATION OF LOS ANGELES
3  7000 South Broadway
   Los Angeles, CA  90003
4  Telephone:  (213) 640-3950
   Email:  smeyers@lafla.org
5          mbandrews@lafla.org
           aeflores@lafla.org
6

7  *Attorneys for Gladys Zepeda, Miriam Zamora,*
   *Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
8  *Marquis Ashley, and Ktown for All*

9

10 *Additional Attorneys on Next Page*

11
                **UNITED STATES DISTRICT COURT**
12
                **CENTRAL DISTRICT OF CALIFORNIA**
13

14 JANET GARCIA, *et al.*            )   CASE NO. 2:19-cv-06182-DSF-PLA
                                     )
15          Plaintiffs,              )   **DECLARATION OF SHAYLA**
                                     )   **MYERS IN SUPPORT OF**
16                                   )   **MOTION FOR OSC RE: CIVIL**
           v.                        )   **CONTEMPT AND SANCTIONS**
17                                   )
   CITY OF LOS ANGELES, a            )   Complaint Filed Date:  July 18, 2019
18 municipal entity,                 )
                                     )
19                                   )
           Defendants.               )   Judge:          Hon. Dale S. Fischer
20                                   )   Hearing Date:   September 21, 2020
                                     )   Time:           11:00 a.m.
21                                   )   Courtroom:      7D
                                     )
22                                   )
                                     )
23                                   )
                                     )   **CORRECTED VERSION**
24                                   )
                                     )
25 ──────────────────────────────────)

26

27

28

## DECLARATION OF SHAYLA MYERS

I, Shayla Myers, hereby declare and state as follows

1.      I am an attorney licensed to practice law in the State of California at the Legal Aid Foundation of Los Angeles, and an attorney of record for the plaintiffs in the above-captioned matter.  I have personal knowledge of the facts set forth herein and could testify competently thereto if called as a witness.  I make this declaration in support of Plaintiffs' Application for an Order to Show Cause re: Contempt and Sanctions.

2.      In February 2020, after this Court denied Defendants' motion to dismiss Plaintiffs' facial challenge to LAMC 56.11(3)(i), the Bulky Item Provision, we contacted counsel for the Defendant and requested that the Defendant discuss a stipulation, preventing the City of Los Angeles from enforcing Sections 56.11(3)(i) and 56.11(10)(d) of the Los Angeles Municipal Code. A true and correct copy of my letter dated February 18, 2020, is attached as Exhibit A.

3.      On February 19, 2020, I spoke to Assistant City Attorney Gabriel Dermer regarding the potential to reach an agreement about the enforcement of LAMC 56.11, without the need for further court intervention.  As part of those meet and confer discussions, Mr. Dermer sought to be able to continue to remove, but just not destroy Bulky Items, which Plaintiffs declined.  Mr. Dermer indicated he would get back to me after discussing the issues internally.

4.      I emailed the City again on February 21, 2020 after not receiving a response or update and after the City Council failed to agendize the case at its upcoming council meetings; I indicated our intention to file the motion for a preliminary injunction the following week.  The City did not respond.

5.      Plaintiffs filed a motion for preliminary injunction (Dkt. 38). Plaintiffs also sent a letter, offering to continue to meet and confer, and if possible, reach an agreement that would obviate the need for further court intervention.  A true and correct copy of the letter is attached as Exhibit B.

1

6.      On March 5, 2020, Mr. Dermer let us know that the City Council had discussed the issue in closed session, and they wanted to now discuss Plaintiffs withdrawing the motion.  Plaintiffs requested the City agree to stop enforcement of the Bulky Item Provision while the parties met and conferred.  The City refused to agree to cease enforcement, even during the pendency of the motion.

7.      On March 13, 2020, the parties met to discuss a potential agreement regarding the enforcement of the Bulky Item Provision; however, attorneys for the City made it clear that they did not have permission to agree to any changes in the enforcement of the Bulky Item Provision while the parties discussed a potential resolution of Plaintiffs' motion; they would not be able to get council approval for any agreement by the scheduled hearing date on the motion for the preliminary injunction; and that they could not provide any date certain when the City Council would take up any agreement the parties reached.  As such, Plaintiffs kept the motion on calendar.

8.      On March 26, counsel for the City and I discussed the preliminary injunction and the City's response to COVID-19, both at a hearing on an unrelated matter and over the telephone later that day.  Counsel informed me that, because of COVID-19, the City was not doing comprehensive cleanups that required individuals to relocate during the cleanups, but were instead doing spot cleanings.  Based on plaintiffs' concerns that the city would provide insufficient notice when cleanups resumed, Mr. Dermer agreed to provide plaintiffs information about the resumption of comprehensive cleanups so the parties could meet and confer when that happened. Mr. Dermer also requested we take our motion off calendar without prejudice to refiling. A true and correct copy of the email from Mr. Dermer is attached as Exhibit C.  Mr. Dermer and I again discussed this on March 27, 2020.  On March 30, Plaintiffs agreed to continue the hearing, then scheduled for April 6, provided the City would stipulate that they were not enforcing LAMC 56.11.  The City instead chose to proceed with the briefing on the motion.  Thereafter, this Court issued a tentative ruling and subsequently granted the injunction.  Since then the City has not followed up on

discussions to reach an agreement about the Bulky Item provision or to otherwise discuss the Injunction; instead, the City filed a notice of appeal on May 12, 2020.

9.      On June 29, 2020, I was informed by a member of the community who provides support to unhoused residents in Venice that she had heard from unhoused residents that LA Sanitation employees told them on multiple occasions that they were going to start taking bulky items again.  She told us she had spoken to a supervisor from LA Sanitation who confirmed that the City had given them permission to start removing all bulky items, and that they would post 24 hour notice to people. On June 30, 2020, I learned that papers notices had been posted at the same encampment, referring to bulky items.  A photograph of the notices is attached to the Declaration of Catherine Sweetser, filed concurrently with this motion.

10.      On June 30, 2020, I emailed counsel for the City regarding the notice and the statements made by city employees. I requested the City clarify if it intended to remove Bulky Items, and if so, to meet and confer with Plaintiffs prior to taking any such action, so the parties could seek intervention from the Court if necessary.  A true and correct copy of my June 30, 2020 email is attached hereto as Exhibit D.

11.      On July 1, 2020, Deputy City Attorney Felix Lebron responded that the notices did not look like City notices, but they were investigating.  I responded that, putting aside the notices, we were "equally concerned that city workers may be stating they have permission to begin taking bulky items again."  Thereafter, Mr. Lebron responded to my email, saying that the posted flyers were not City notices, the City had not changed its enforcement of the bulky item provision and it was not conducting comprehensive cleanups.  A true and correct copy of the June 30-July 1 email exchange is attached as Exhibit E.

12.      In July, I was in Venice and discovered that the Special Enforcement and Cleaning Zone signs still posted around the A Bridge Home Sites had not been updated to reflect this Court's order.  Our office investigated the SECZ signs at other ABH sites and discovered that signs around other shelters had also not been update,

including around the shelter on Raymer St. in North Hollywood, which did not open until the end of July.

13. On July 27, 2020, my co-counsel, Benjamin Herbert, sent a letter to the City regarding the City's failure to update metal signs posted around homeless shelters, which included language prohibited by the injunction. A true and correct copy of the July 27, 2020 letter is attached hereto as Exhibit F.

14. On July 30, 2020, Mr. Dermer responded to Mr. Herbert's letter stating that "the signs referenced" in Plaintiffs' communication to the City "are not the current signs LASAN has been posting" and that the City did "not believe that any signs referencing LAMC 56.11(3)(i) have been posted since the [injunction]." The City provided Plaintiffs photos of new permanent signs the City had begun posting; those signs omitted any reference to the Bulky Item Provision. The City also disagreed that the injunction required it to remove or otherwise update signs currently posted throughout Los Angeles that contained the now-omitted language, but agreed to update these signs as well. A true and correct copy of the July 30, 2020 letter from Gabriel Dermer and photographs of the permanent signs is attached hereto as Exhibit G.

15. On July 29, 2020, Mayor Eric Garcetti was asked during a press conference about the City Council vote to resume comprehensive cleanups. Mayor Garcetti responded that Garcetti said no decision had been made yet to restart "comprehensive cleanups" in special enforcement zones, saying instead that the vote to resume cleanups "doesn't mean that the city has announced we will do this." Mayor Garcetti's remarks are available on his official YouTube channel: https://www.youtube.com/watch?v=-9g_XYm2wxE (last visited on Aug. 17, 2020) at 17:07-20:05. A true and correct copy of a July 29, 2020 Los Angeles Times article discussing his comments is attached hereto as Exhibit H.

16. On July 30, 2020, Councilmember Buscaino appeared on Take Two, a local news radio program on KPCC to discuss the city council vote to resume CARE+

cleanups around ABH shelters.  Mr. Busciano appeared on the program at around 2:20, and discussed bulky items and this Court's injunction.  The audio of the interview is streaming at https://www.scpr.org/programs/take-two/2020/07/30/21059/ (last visited Aug. 17, 2020); Mr. Buscaino's comments appear from approximately 21:11 – 36:00 of the program.  A true and correct copy of the July 30, 2020 audio is being submitted with our Notice of Lodging as Exhibit I.

17.   On Saturday, August 1, 2020 at around 9:45 p.m., I learned that the City had conducted a comprehensive cleanup in San Pedro on July 31, even though the SECZ was not scheduled to launch until August 7, 2020.

18.   In an article posted in the Daily Breeze, I saw that the City appeared to have used the same notices they had used prior to this Court's injunction.  I could not read the fine print in the article, but the notice in the photo still included the Bulky Item language at the top.

19.   Because I am aware that notices are sometimes removed or fall down, especially when the air is as humid as it is near the ocean in San Pedro, I immediately went to San Pedro as soon as I saw the article, to see if I could locate a copy of the notice.  When I got to the SECZ, a number of Notices of Major Cleanings were still posted throughout the SECZ.  Attached as Exhibit J are true and correct copies of representative sample of photographs of the notices that were posted around the SECZ.

20.   I also observed that a number of blank papers had been taped to the metal SECZ signs throughout the SECZ, covering up the map and other language.  I saw this on at least three or four SECZ signs in the most populated part of the SECZ, including around Palos Verdes and Beacon, between 7th and 9th Street. I looked at the paper covering the sign; it was a Notice of Major Cleaning that had been taped, blank side outward, to the metal SECZ.  A true and correct photograph of one of the SECZ signs covered by the notice is attached as Exhibit K.

21.     On Tuesday, August 4, 2020, I received the CARE+ Confirmation sheet for that day from Adrian Riskin. I saw on the schedule that the City had authorized a CARE+ cleanup for the ABH site on Hope St.  I knew that members of Streetwatch were currently at another ABH site in downtown Los Angeles.  I therefore went to the cleanup myself to see if the City continued to post Notice of Major Cleaning signs that included language prohibited by this Court's injunction.

22.     I arrived in the SECZ at around 9:30 a.m.  I drove around the SECZ to see if any notices had been posted; I saw a number of paper notices taped directly to tents and encampments.  I took a photo of one of the sets of notices that were posted on an encampment on 31st St. and Main St.  A true and correct copy of the photograph I took is attached as Exhibit L.  This Notice of Bulky Item was different from the Notice of Major Cleaning and referred only to Bulky Items.  It stated that the storage of bulky Items was prohibited.  I recognized the sign as being similar to ones used by the City prior to the Court's injunction, although this notice stated that the prohibited Bulky Items would be removed, rather than destroyed.

23.     Thereafter, I continued to drive around the SECZ to determine if the City was conducting a comprehensive cleanup, as I did not see any "Notice of Major Cleaning" signs posted in the area.  At around 9:45 a.m., I came upon a crew of LA Sanitation employees and LAPD officers on 25th St. between Main and Broadway. There was yellow caution tape stretched across 25th St. at Main Street, blocking off access to 25th St.  A few people who appeared to be unhoused residents had some items with them on the corner of 25th and Main.  One of the women was visibly upset and was trying to talk to LA Sanitation and LAPD about the fact that her belongings were still in the area, and she needed more time to remove them.

24.     From where I stood, I could see a tent with paper notices taped to it. From a distance, the notices looked like the notices I had seen posted on encampments and tents on 31st and Main that morning.  While I was present, LA Sanitation workers used a Kubota extractor to crush the tent with the notices posted on it and dispose of it

6

in the back of the garbage truck.  A true and correct copy video I took, documenting the destruction of the tent and the notices is being submitted with our Notice of Lodging as Exhibit M.

25.     After LA Sanitation took down the tape and left the area, I walked along 25th Street where the tent, along with other belongings, had been destroyed.  Along with some trash, there was a copy of the Spanish-language version of the Notice of Bulky Item lying on the ground.  A true and correct copy of the photograph of the Notice of Bulky Item is attached as Exhibit N.

26.     On August 6, 2020, we sent a letter to counsel for the City stating that Plaintiffs intended to file an ex parte application for an order to show cause re: contempt, based on the City's decision to post the Notice of Major Cleaning in San Pedro and the use of the Notice of Bulky Item on August 4, 2020.  We offered to discuss a stipulation and declaration in lieu of filing this motion. A true and correct copy of my August 6, 2020 letter is attached hereto as Exhibit O.  I also left a message for Gabriel Dermer on his voicemail.

27.     That afternoon, Mr. Dermer returned my call, and we spoke for approximately 35 minutes about the notices.  I reiterated that we would be willing to forego a contempt motion if the City would agree to file a joint stipulation and declaration from the City, indicating that they would not use the notices in the future. He expressed his agreement that the notices violated the injunction and the City would not use them again, but he was not certain that he would be able to obtain a declaration from anyone in the City, and he needed additional time to see what he could do.

28.     During our call, Mr. Dermer indicated that the use of the Notice of Major Cleaning was inadvertent; I asked him if the City had updated the Notice of Major Cleaning prior to resuming the cleanups, and if the violation occurred because a worker had simply printed the wrong version, or if in fact the City had not updated the signs before resuming the comprehensive cleanups.  He said he did not know.   I also

asked him if these were the only times the City had used these notices, and he said he could not declare under penalty of perjury that it was.

29.     After our call, I sent Mr. Dermer a confirming email and let him know that we would be providing a draft stipulation in the morning.  A true and correct copy of my August 6, 2020 letter is attached hereto as Exhibit P.

30.     On August 6, 2020, I was informed by a community member that the City had still not updated the majority of the signs in the special enforcement zone around the Raymer shelter in North Hollywood, and the majority of the signs still referred to the Bulky Item provision.

31.     On the morning of August 7, 2020, my colleague provided a draft joint stipulation to the City.

32.      On Monday, August 10, 2020, Mr. Lebron responded to Plaintiffs' emails by summarizing the results of its "swift investigation" into Plaintiffs' concerns. He stated that the had in fact posted the notice on July 30 and August 3.  In addition, the City conceded that Sanitation had posted Notice of Bulky Item Removal on property before another cleanup in Wilmington, which is also in Council District 15. A true and correct copy of the August 10, 2020 letter from Felix Lebron is attached hereto as Exhibit Q.

33.     Mr. Lebron also stated in his letter that, in less than a week, all 3,106 signs around the ABH shelters had been updated.  I was surprised, given that I had learned on Thursday that at least some of the signs had not been updated.  The photos Mr. Lebron shared with us were from the Navigation Center in North Hollywood, which is immediately adjacent to the SECZ around the Raymer shelter, where the notices I understood had not been updated were located.

34.     That morning, I went to the SECZ around the Raymer shelter to see if the signs had in fact been updated.  They had not.

35.     I then drove all of the streets in the Raymer SECZ to identify how many signs had been updated.  In all, it appears that the only signs that were actually

updated were the signs on the two largest streets:  Sherman Way and Coldwater Canyon along with a handful of other signs on Raymer, Whitsett, Bellaire and Saticoy.  On Saticoy, which is one of the longer, busier streets in the SECZ, only the three sets of signs around the intersection with Coldwater Canyon had been updated. None of the other signs on Saticoy had been updated.  On Whitsett, another large street, only the set of signs near Sherman Way were updated; the rest still contained the offending Bulky Item language.

36.     In total, I identified more than 150 signs that had not been updated. These signs were in approximate 43 discrete locations throughout the SECZ, and constituted the vast majority of the signs in the SECZ.  True and correct copies of photographs taken on August 10, 2020 of the discrete signs throughout the Raymer SECZ are attached as Exhibit R.

37.     After I finished documenting the signs at the Raymer shelter SECZ, I visited the SECZ at the Navigation Center.  All of those signs, except for two, had been updated with white tape to remove the references to Bulky Items.  The two that did not have overlays appeared to have had tape on them, but the tape appeared to have been removed.

38.     On August 11 and 12, 2020, we learned that the City had conducted comprehensive cleanups in the SECZ without posting any written notice that the City would be resuming the cleanups, even though the City had represented to Plaintiffs that they would be using the new Notice of Major Cleaning at CARE+ cleanups in the future.  I sent the City an email, requesting that they cease the cleanups until the parties could discuss the issue.  Mr. Dermer responded on Wednesday evening that they were investigating and would get back to us as soon as they had some information.  On Friday, the City continued to conduct comprehensive cleanups

without posting notices that the cleanups were resuming, and as of noon on August 17, 2020, the City has not otherwise responded to this email. [1]

39.     On August 13, 2020, I sent an email to counsel for the City informing them about the City's failure to update the vast majority of signs in the special enforcement zone on Raymer because we were concerned that the City could be conducting a comprehensive cleanup around the shelter on Friday, August 14, 2020. A true and correct copy of my August 13 email to counsel is attached hereto as Exhibit S. As of noon on August 17, the City has not responded to this email.[2]

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 17, 2020 in Los Angeles, California.

_S. Myo_____

Shayla Myers

---

[1] The City's attorneys responded to Plaintiffs' emails at 1:15 p.m. on Monday, August 17, 2020, as Plaintiffs were preparing to file this motion. Their email is attached as Exhibit T. The information provided by counsel for the City continues to be self-serving and inaccurate. Nor does it address Plaintiffs' request for a declaration from LA Sanitation regarding the events germane to this motion; as such, it does not obviate the need for Plaintiffs' motion.

[2] *Id.*