1   Shayla Myers (SBN 264054)
    Mallory B. Andrews (SBN 312209)
2   Alex Flores (SBN 303552)
    LEGAL AID FOUNDATION OF LOS ANGELES
3   7000 South Broadway
    Los Angeles, CA 90003
4   Telephone: (213) 640-3983
    Email: smyers@lafla.org
5           mbandrews@lafla.org
            aeflores@lafla.org
6

7   *Attorneys for Gladys Zepeda, Miriam Zamora,*
    *Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
8   *Marquis Ashley, and Ktown for All*

9   *Additional Attorneys on Next Page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JANET GARCIA et al. | CASE NO. 2:19-cv-06182-DSF-PLA |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| CITY OF LOS ANGELES, a municipal entity, | |
| Defendants. | Complaint Filed Date: July 18, 2019 |
| | Judge:          Hon. Dale S. Fischer |
| | Hearing Date:   September 14, 2020 |
| | Time:           1:30 p.m. |
| | Courtroom:      7D |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1   Catherine Sweetser (SBN 271142)
2   Kristina Harootun (SBN 308718)
    John Washington (SBN 315991)
3   SCHONBRUN SEPLOW HARRIS
    HOFFMAN & ZELDES LLP
4   11543 West Olympic Blvd.
    Los Angeles, CA 90064
5   Telephone: (310) 396-0731
    Email:  csweetser@sshhlaw.com
6           kharootun@sshhlaw.com
7           jwashington@sshhlaw.com

8   *Attorneys for Plaintiffs*

9   Benjamin Allan Herbert (SBN 277356)
    William L. Smith (SBN 324235)
10  KIRKLAND & ELLIS LLP
    555 South Flower Street
11  Los Angeles, CA 90071
    Telephone: (213) 680 8400
12  Email:  benjamin.herbert@kirkland.com
            william.smith@kirkland.com
13
    Michael Onufer (SBN 300903)
14  KIRKLAND & ELLIS LLP
    2049 Century Park East
15  Los Angeles, CA 90067
    Telephone: (310) 552-4200
16  Email:  michael.onufer@kirkland.com

17  *Attorneys for Plaintiffs Ktown for All, Janet Garcia,*
    *Peter Diocson Jr., Marquis Ashley, and Ali El-Bey*
18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 3

III.  LEGAL STANDARD ........................................................... 6

IV.   ARGUMENT..................................................................... 7

    A.    Ktown For All Can Bring Claims Under Section 1983 For
        Constitutional Violations On Behalf Of Its Members ............................. 7

        1.    Ktown For All Can Bring Section 1983 Claims For Fourth
               Amendment Violations On Behalf Of Its Members ....................... 8

        2.    Ktown For All Can Bring Section 1983 Claims For
               Fourteenth Amendment Violations On Behalf Of Its
               Members ........................................................... 15

    B.    Ktown For All Can Bring Claims For Its Own Injuries .......................... 19

        1.    Ktown For All Can Bring Fourth Amendment Claims For Its
               Own Injuries........................................................ 19

        2.    Ktown For All Can Bring Fourteenth Amendment Claims
               For Its Own Injuries................................................ 21

V.    CONCLUSION ................................................................. 24

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937).................................................................. 5

*Aguayo v. Richardson*,
  473 F.2d 1090 (2d Cir. 1973) ........................................... 17, 18

*Alderman v. United States*,
  394 U.S. 165 (1967)................................................................ 11

*Aluminum v. Hunter Eng'g Co.*,
  655 F.2d 938 (9th Cir. 1981) ................................................... 6

*Am. Fed'n of State Cty. & Mun. Emps. (AFSCME) Council 79 v. Scott*,
  857 F. Supp. 2d 1322 (S.D. Fla. 2012).............................. *passim*

*American Federation of State, County and Municipal Employees Council 79 v. Scott*,
  717 F.3d 851 (11th Cir. 2013) ............................................ 9, 20

*Archuleta v. McShan*,
  897 F.2d 495 (10th Cir. 1990) ........................................... 16, 17

*Ass'n of Los Angeles City Attorneys v. City of Los Angeles*,
  No. CV 12-4235 MMM, 2012 WL 12887541 (C.D. Cal. Nov. 20, 2012).................................................................................. 15

*Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*,
  950 F.2d 1401 (9th Cir. 1991) .................................... 14, 16, 18

*Bates v. City of Little Rock*,
  361 U.S. 516 (1960)................................................................ 22

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)................................................................ 17

*California Bankers Association v. Schultz*,
  416 U.S. 21 (1974).............................................................. 10, 11

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

*Castle Rock v. Gonzales*,
    545 U.S. 748 (2005)................................................................................23

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ..............................................................18

*Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*,
    364 F. Supp. 3d 253 (S.D.N.Y. 2019) ...............................................18

*Coho Salmon v. Pac. Lumber Co.*,
    61 F. Supp. 2d 1001 (N.D. Cal. 1999)........................................14, 18

*Columbia Basin Apt. Ass'n v. City of Pasco*,
    268 F.3d 791 (9th Cir. 2001) .....................................................*passim*

*Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma*,
    644 F. Supp. 2d 1177 (N.D. Cal. 2009)..............................................21

*Coon v. Ledbetter*,
    780 F.2d 1158 (5th Cir. 1986) .....................................................16, 17

*Cty. of Santa Clara v. Trump*,
    267 F. Supp. 3d 1201 (N.D. Cal. 2017)................................................5

*Democratic Party of Georgia, Inc. v. Crittenden*,
    347 F. Supp. 3d 1324 (N.D. Ga. 2018)...............................................21

*Gonzalez ex rel. Doe v. Albuquerque Pub. Sch.*,
    No. CIV 05-580 JB/WPL, 2006 WL 1305032 (D.N.M. Jan. 17, 2006) ................17

*Dworkin v. Hustler Magazine, Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ..............................................................6

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
    959 F.2d 742 (9th Cir. 1991) ..............................................................19

*Ellwest Stereo Theaters, Inc. v. Wenner*,
    681 F.2d 1243 (9th Cir. 1982) ............................................................11

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
    132 F.3d 526 (9th Cir. 1997) ................................................................6

*Free Speech Coalition, Inc. v. Attorney General United States*,
    825 F.3d 149 (3d Cir. 2016) ...............................................................12

iii

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

*Friendly House v. Whiting*,
  No. CV 10-1061-PHX-SRB, 2010 WL 11452277 (D. Ariz. Oct. 8,
  2010) ........................................................................................................ 15

*Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*,
  262 F. Supp. 2d 1088 (E.D. Cal. 2001) ................................................. 16

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day
  Adventist Congregational Church*,
  887 F.2d 228 (9th Cir. 1989) ................................................................... 6

*Gonzaga University v. Doe*,
  536 U.S. 273 (2002).......................................................................... 23, 24

*Haitvan v. 7-Eleven, Inc.*,
  No. 18-5465 DSF (AS), 2018 WL 6264995 (C.D. Cal. Sept. 5, 2018) ................... 6

*Hanford Exec. Mgmt. Emp. Ass'n v. City of Hanford*,
  No. 1:11-CV-00828-AWI-DLB, 2012 WL 2159398 (E.D. Cal. June
  13, 2012) .................................................................................................. 15

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)............................................................................. 4, 19

*Heartland Acad. Cmty. Church v. Waddle*,
  427 F.3d 525 (8th Cir. 2005) ....................................................... 9, 13, 14

*Herd v. Cnty. of San Bernardino*,
  311 F. Supp. 3d 1157 (C.D. Cal. 2018) ................................................. 11

*Ho v. Brennan*,
  721 F. App'x 678 (9th Cir. 2018)........................................................ 7, 19

*Huertas v. E. River Housing Corp.*,
  81 F.R.D. 641 (S.D.N.Y. 1979) ............................................................. 18

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)....................................................................... *passim*

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.
  v. Brock*,
  477 U.S. 274 (1986)......................................................................... 14, 18

*Johnson v. Rancho Santiago Cmty. College Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ............................................................... 15

iv

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
    341 U.S. 123 (1951)..................................................................... 14, 18

*Kelley v. Shelby Cty. Bd. of Educ.*,
    198 F. Supp. 3d 842 (W.D. Tenn. 2016) ...................................... 16

*Knick v. Township of Scott*,
    862 F.3d 310 (3d Cir. 2017),
    *vacated on other grounds*, *Knick v. Township of Scott*,
    932 F.3d 152 (3rd Cir. 2019) ................................................. 11, 12

*Lyall v. City of Los Angeles*,
    807 F.3d 1178 (9th Cir. 2015) ............................................... 11, 20

*Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.*,
    237 F.3d 1101 (9th Cir. 2001) .................................................... 11

*McGowan v. Maryland*,
    366 U.S. 420 (1960)................................................................... 17

*Microsoft v. United States Department of Justice*,
    233 F. Supp. 3d 887 (W.D. Wash. 2017) .................................... 11

*Moreland v. Las Vegas Metro. Police Dep't*,
    159 F.3d 365 (9th Cir. 1998) .......................................... 11, 16, 23

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. Ex rel.
    Patterson*,
    357 U.S. 449 (1958)................................................................... 21

*Nat'l Rifle Assoc. of Am. v. Cuomo*,
    1:20-CV-385-MAD/DJS, 2020 WL 4732110 (N.D.N.Y. Aug. 14,
    2020) ....................................................................................... 17

*Nava v. Dept. of Homeland Sec.*,
    435 F. Supp. 3d 880 (N.D. Ill. 2020).................................... 19, 21

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011) ........................................... 17, 18, 21

*O'Bannon v. Town Court Nursing Center*,
    447 U.S. 773 (1980)................................................................... 23

*Oregon Advocacy Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) .................................................... 16

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

*Osborne v. Cnty. of Riverside*,
   385 F. Supp. 2d 1048 (C.D. Cal. 2005) .................................................. 11

*Pietsch v. Ward Cty.*,
   No. 1:18-CV-00023, 2020 WL 1159752 (D.N.D. Mar. 10, 2020) ....................... 16

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014).................................................................. 10

*Rakas v. Illinois*,
   439 U.S. 128 (1978)...........................................................*passim*

*Santiago v. City of Los Angeles*,
   No. CV 15-08444-BRO (EX), 2016 WL 7176694 (C.D. Cal, Nov. 17,
   2016) ....................................................................8, 15, 19, 21

*Stanley v. Trs. of Cal. State Univ.*,
   433 F.3d 1129 (9th Cir. 2006) ...................................................... 6

*Stilwell v. City of Williams*,
   831 F.3d 1234 (9th Cir. 2016) .................................................... 24

*Tileston v. Ullman*,
   318 U.S. 44 (1943)................................................................ 17

*In re Toyota Motor Corp. Sec. Litig.*,
   No. CV 10-922 DSF, 2012 WL 3764903 (C.D. Cal. Feb. 21, 2012)..................... 7

*United Food and Commercial Workers Intern. Union, AFL-CIO, CLC v.*
   *IBP, Inc.*,
   857 F.2d 422 (8th Cir. 1988) ...................................................... 5

*United States v. Comprehensive Drug Testing, Inc.*,
   513 F.3d 1085 (9th Cir. 2008) ...............................................*passim*

*United States v. Comprehensive Drug Testing, Inc.*,
   545 F.3d 1106 (9th Cir. 2008) .................................................... 8

*United States v. Comprehensive Drug Testing, Inc.*,
   579 F.3d 989 (9th Cir. 2009) ..................................................... 8

*United States v. Comprehensive Drug Testing, Inc.*,
   621 F.3d 1162 (9th Cir. 2010) ................................................8, 12

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

*United States v. SDI Futures Health, Inc.*,
   568 F.3d 684 (9th Cir. 2009) ................................................................... 20

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................... *passim*

**Rules and Statutes**

28 U.S.C. § 2201 ................................................................... 1, 2, 5, 6

42 U.S.C. § 1983 ................................................................... *passim*

Fed. R. Civ. P. 12(b) ................................................................... 6

Fed. R. Civ. P. 12(c) ................................................................... 6

Fed. R. Civ. P. 12(h)(2) ................................................................... 5

Los Angeles Municipal Code § 56.11 ................................................................... *passim*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

Plaintiff Ktown for All and seven individuals have brought this lawsuit to put a stop to the City of Los Angeles's ("the City") policies and practices of seizing and destroying unhoused people's belongings. Specifically, Plaintiffs allege that provisions of Los Angeles Municipal Code Section 56.11 ("LAMC 56.11") that allow the City to seize and immediately destroy items larger than 60 gallons by volume are unconstitutional as written. Plaintiffs also allege that other provisions of LAMC 56.11 are unconstitutional, as applied, and that the City has a policy, custom and practice of seizing and destroying belongings without a warrant or an exception to the warrant requirement, in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the California Constitution, and without adequate due process, in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 13 of the California Constitution.

Ktown for All is a community organization that supports unhoused residents in Koreatown, forms connections between housed and unhoused residents, and advocates for housing, shelters, and other services. *See* Second Amended Complaint ("SAC"), Dkt. 43, ¶ 38. It brings this suit on its own behalf and on behalf of its unhoused members, who like the individual plaintiffs, are subjected to the City's enforcement of LAMC 56.11 and its custom, pattern, and practices of seizing and destroying their belongings, without due process and in violation of the Fourth Amendment. Plaintiffs seek injunctive and declaratory relief to prevent the City from engaging in these practices, pursuant to 42 U.S.C. § 1983 and pursuant to the Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Ktown for All, along with the individual Plaintiffs, are "seeking only to obtain a ruling that the City's policies and practices are unconstitutional." Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("Second MTD Order"), Dkt. 65, at 7.

The City has now brought three separate affirmative motions in an attempt to remove Ktown for All from this case, in addition to arguing, in response to Ktown for

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

All's motion for a preliminary injunction, that Ktown for All did not have standing to seek that relief. In response to these motions, this Court has repeatedly ruled that Ktown for All has sufficiently pled both organizational and associational standing to bring its constitutional claims. *See generally id.*

Nevertheless, yet again, the City attacks Ktown for All's pleadings, this time bringing a Motion for Judgment on the Pleadings (the "Motion") to dismiss Ktown for All's Section 1983 claims. The City's argument primarily hinges on an unprecedented extension of a discrete Fourth Amendment rule concerning vicarious harm—which Ktown for All is not alleging—that finds its origins in cases that limit who can avail themselves of the exclusionary rule to bar the admission of evidence that was the fruit of an unlawful search and seizure. This is a far departure from the case at hand, particularly so with regard to the Fourteenth Amendment, where the connection to cases rooted in the exclusionary rule is especially tenuous. And the argument is inconsistent with decades of Supreme Court and this Circuit's precedent that repeatedly allow organizations with associational standing to bring Section 1983 claims on behalf of their members, and that repeatedly allow organizations to bring constitutional claims to prevent their own injuries.  Indeed, every court that has considered the City's arguments has rejected them.

At bottom, to accept the City's argument would prevent organizations from bringing Section 1983 claims on behalf of their members or for concrete injuries caused by violations of the Fourth and Fourteenth Amendment. This is a lofty and sweeping request. And it is inconsistent with the principles underlying organizational standing, and associational standing in particular, set forth in *Warth v. Seldin*, 422 U.S. 490 (1975) and its progeny, which permit organizations to seek judicial intervention to stop policies and practices that cause harm to their members. This is particularly important where, as here, individual members may have difficulty seeking recourse on their own.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The Court should deny the City's latest motion and decline the City's invitation to fundamentally alter well-established law—just as all courts that have previously considered the argument have done.

## II.   BACKGROUND

Plaintiffs filed this case in July 2019. In September, Plaintiffs filed an amended complaint and a supplemental complaint, which added allegations related to yet another incident that occurred after this lawsuit was filed, in which Plaintiff Janet Garcia's belongings were taken and destroyed by the City. Thereafter, the City filed both a Motion to Dismiss for Failure to State a Claim for nearly all of Plaintiffs' claims and a Motion to Dismiss for Lack of Subject Matter Jurisdiction, asserting that the organizational plaintiffs did not have standing to bring this case. *See* Dkts. 20-21.

In February 2020, the Court denied Defendant's 12(b)(6) motion as to all of the causes of action except one, the third cause of action for vagueness, which the Court dismissed without leave to amend. *See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Failure to State a Claim ("First MTD Order"), Dkt. 36. The Court denied the City's 12(b)(1) motion as to Ktown for All on its theory of direct standing. *See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ("12(b)(1) Order"), Dkt. 37 at 11. Specifically, the Court held that Ktown for All had to divert resources and "has spent money replacing personal property" and that LAMC 56.11 has made "KFA's mission difficult to achieve." 12(b)(1) Order at 10-11. With respect to Ktown for All's associational standing, this Court found that it had not sufficiently clarified the relief it was seeking, and granted Plaintiffs leave to amend to clarify that Ktown for All was not seeking monetary damages for its members. *Id.* at 14-15.

Thereafter, Plaintiffs Ktown for All, Marquis Ashley and Pete Diocson filed a request for a Preliminary Injunction on behalf of Plaintiffs seeking to enjoin the enforcement of two sections of LAMC 56.11, which the Plaintiffs asserted were unconstitutional on their face. In opposition, the City again argued that Ktown for All

3

lacked standing. And again, this Court rejected Defendant's standing arguments, holding that Plaintiffs were likely to succeed on the merits of their claims, and granted the requested Preliminary Injunction. *See* Order Granting Plaintiffs' Motion for a Preliminary Injunction, Dkt. 58.

On March 12, Plaintiffs filed the SAC, clarifying that Ktown for All was seeking only declaratory and injunctive relief on behalf of its members and not monetary damages. Plaintiffs made only minor changes to the SAC to address the Court's ruling in the 12(b)(1) Order, and neither added any claims nor made any amendments to the allegations underlying the merits of their claims.

Nevertheless, on April 9, the City filed a second Motion to Dismiss, rehashing many of the same arguments this Court already rejected in the First MTD Order and 12(b)(1) Order. *See* Dkt. 57. As to Ktown for All, the City again challenged its organizational and associational standing. *See id.* And, despite the fact that Plaintiffs had made no changes to the allegations underlying the merits of their constitutional claims, the City also presented a new argument:  Ktown for All failed to state a claim under 42 U.S.C. Section 1983 because it did not have to right to seek relief for its Fourth and Fourteenth Amendment claims as those "constitutional rights are personal rights that cannot be asserted vicariously." *Id.* at 1.

On June 2, the Court denied the City's Second Motion to Dismiss as it related to Ktown for All. With regard to organizational standing, the Court noted that "[i]n its prior Order, the Court addressed in detail each of the City's arguments against KFA's organizational standing and found that KFA established organizational standing under the *Havens* test," and that "KFA's organizational standing to bring constitutional claims under Article III is not limited by *Lexmark* and *Bank of America*." Second MTD Order at 11-12. The Court also found that "KFA has associational standing to assert claims on behalf of its members seeking declarations that certain Ordinance provisions and related practices and customs are unconstitutional and an injunction prohibiting enforcement of those provisions, practices, and customs." *Id.* at 8. The Court then declined to

entertain the City's new 12(b)(6) argument, because the City could have raised the same argument in its First Motion to Dismiss. *Id.* at 12-13. The Court stated that the City could raise this argument later in the case to the extent it was authorized to do so pursuant to Rule 12(h)(2). *Id.* at 13.

But the City has failed to heed the old adage that just because you can does not mean you should. On July 15, just two days after the City filed its Answer to the SAC, *see* Dkt. 75, the parties met and conferred to discuss the City's anticipated Motion for Judgment on the Pleadings. The City stated that it would only be making arguments and relying on cases that were in its Second Motion to Dismiss. *See* Declaration of Michael Onufer ("Onufer Dec.") ¶ 2.

Prior to filing this motion, the City asserted for the first time, in response to a request for the City to meet and confer about discovery, that if it prevailed on its motion to dismiss Ktown for All's Section 1983 claims, Ktown for All itself would be dismissed from the case. *See* Onufer Dec. ¶ 3. Plaintiffs responded, correcting the City as to the scope of Ktown for All's claims and clarifying that, even if the City prevailed on its motion on the pleadings and was able to dismiss Ktown for All's claims under 42 U.S.C. §1983, the organization would still remain in the case because it was seeking prospective relief pursuant to this Court's jurisdiction under the Declaratory Judgment Act. *See* Onufer Dec., Ex. A at 1-2. Plaintiffs further clarified that this Court's prior rulings on standing foreclosed the ultimate relief the City has long sought—dismissing Ktown for All from this case.[1] *See id.* Plaintiffs' letter stated that they were "amendable

---

[1] Despite its transparent efforts to remove Ktown for All from this case, and leave only unhoused plaintiffs—who frequently have to re-locate and lose means of communication as a direct result of the City's unconstitutional practices—to pursue this case alone, Ktown for All's request for declaratory judgment and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 prevents that result. *See* SAC ¶ 1; SAC ¶¶ 237, 246, 257, 264. To seek relief under the Declaratory Judgment Act, Ktown for All need only "demonstrate that its claim involves an 'actual controversy'" *Cty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1216 (N.D. Cal. 2017) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240) (1937)), and that it is at risk of imminent harm, *United Food and Commercial Workers Intern. Union, AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 427 (8th Cir. 1988). "The 'actual controversy' requirement [under the

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

to attempting to resolve some of those disputes in order to preserve judicial resources by preventing unnecessary motion" and requested that the City meet and confer "prior to filing its motion for judgment on the pleadings." *See id.* at 2-3.[2] The City never responded to Plaintiffs' July 30 letter and ignored Plaintiffs' request to meet and confer to resolve the parties' disputes prior to motion practice. *See* Onufer Dec. ¶ 5. Instead, the City filed its Motion on August 3. *See* Dkt. 80.

## III. LEGAL STANDARD

Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 12(c). *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *see also Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."). All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *Gen. Conference Corp.*, 887 F.2d at 230. "It must appear beyond doubt that plaintiff can prove no set of facts that would entitle him to relief." *Haitvan v. 7-Eleven, Inc.*, No. 18-5465 DSF (AS), 2018 WL 6264995, at *1 (C.D. Cal. Sept. 5, 2018) (citing *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997)). If the plaintiff has a cognizable legal theory or alleges sufficient facts under

---

Declaratory Judgment Act] is the same as the 'case or controversy' requirement of Article III." *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981). This Court has ruled multiple times that Ktown for All has properly pled standing to challenge the City's policies and practices related to enforcement of LAMC 56.11. *See* Second MTD Order 4-12; *see also id.* at 7 ("[T]he Court interprets KFA's claims in the SAC as seeking only to obtain a ruling that the policies and practices are unconstitutional and not that each past application of those practices to its members was unconstitutional."). In any event, the City has not sought to dismiss Plaintiffs' request for prospective relief under 28 U.S.C. § 2201.

[2] Plaintiffs' letter also requested that "[i]f the City disagrees with any of these points, please let us know so we can meet and confer about these disputes," *see* Onufer Dec., Ex. A at 2, which the City has not done, *see* Onufer Dec. ¶ 5.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

a cognizable legal theory, the motion should be denied. *See Ho v. Brennan*, 721 F. App'x 678, 679-80 (9th Cir. 2018).

Where a "motion for judgment on the pleadings addresses matters previously raised in [a] motion to dismiss, and decided—either explicitly or by necessary implication—in the Court's resolution of that motion," the motion for judgment on the pleadings is the functional equivalent of "an untimely request for reconsideration rather than an independent motion for judgment on the pleadings that raises new issues." *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2012 WL 3764903, at *1 (C.D. Cal. Feb. 21, 2012). In such instances, "[j]udicial economy would be undermined by allowing parties an unlimited right to revisit issues." *Id.*

## IV.   ARGUMENT

The City's latest attempt to dismiss Ktown for All's claims for failing to state a claim under Section 1983 must again be rejected for the same reasons as before: Ktown for All can bring Section 1983 claims on behalf of its members based on violations of the Fourth Amendment and Fourteenth Amendment and for its own injuries. Associational *or* organizational standing is all that is required for Ktown for All to state a claim under Section 1983. The City's reliance on cases stemming from vicarious standing—which Ktown for All does not seek—are not applicable. There is no legal basis for the Court to extend those cases to instances, such as here, where organizations have established associational or organizational standing. Rather, the Court should join every other court—including in the Ninth Circuit—that has previously considered the City's argument and reject them here as well.

### A.   Ktown For All Can Bring Claims Under Section 1983 For Constitutional Violations On Behalf Of Its Members

The City argues that Ktown for All cannot state claims under Section 1983 for constitutional violations because it cannot assert the Fourth and Fourteenth Amendment rights of its members. This argument fundamentally distorts decades of settled case law establishing when organizations can raise constitutional claims on behalf of their

7

members. *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001). The Court has already ruled that Ktown for All sufficiently alleged Fourth and Fourteenth Amendment claims on behalf of its members. *See* Second MTD Order at 8. The Court should do so again here.

### 1. Ktown For All Can Bring Section 1983 Claims For Fourth Amendment Violations On Behalf Of Its Members

It is well-established in the Ninth Circuit that organizational plaintiffs can bring Section 1983 claims on behalf of their members "even where it has suffered no direct injury from a challenged activity." *Columbia Basin*, 268 F.3d at 798. An organization's ability to bring Section 1983 claims on behalf of its members extends to claims for violation of the members' Fourth Amendment rights. As the Ninth Circuit explained, so long as an organization can establish associational standing under *Hunt*, that ***alone*** is sufficient to entitle an organization to proceed on a Fourth Amendment claim on behalf of its members. *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1096 n.28 (9th Cir. 2008) on reh'g en banc, 579 F.3d 989 (9th Cir. 2009) opinion revised and superseded on other grounds, 621 F.3d 1162 (9th Cir. 2010) ("CDT I").[3] Nothing more is required in this Circuit; nor has it ever been. *See e.g.*, *Columbia Basin*, 268 F.3d at 798–99; *Santiago v. City of Los Angeles*, No. CV 15-08444-BRO (EX), 2016 WL 7176694, at *7 (C.D. Cal, Nov. 17, 2016) (finding that an association could

---

[3] Later in 2008, the Ninth Circuit granted rehearing en banc, *United States v. Comprehensive Drug Testing, Inc.*, 545 F.3d 1106 (9th Cir. 2008), and the panel decision is thus cited herein as persuasive authority. The Ninth Circuit issued two en banc decisions, *see United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989 (9th Cir. 2009) ("CDT II"); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ("CDT III"), neither of which addressed the threshold standing issue and whether *Rakas* precluded organizational plaintiffs from asserting Fourth Amendment claims where standing was otherwise established under *Hunt*. The second en banc decision nonetheless recognized that the organizational plaintiff "is protecting the privacy and economic well-being of its members," and the seizure "violates its members' privacy interests and interferes with the operation of its business." *CDT III*, 621 F.3d at 1173.

8

bring Section 1983 claims for violations of the Fourth Amendment and Fourteenth Amendment on behalf of its members). This Circuit is not alone. *See, e.g.*, *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 532 (8th Cir. 2005) ("We conclude that associational standing is legally available to Heartland on its Fourth Amendment claim, but we still must determine if the facts of this case qualify Heartland to assert the Fourth Amendment rights of its students. To do so, we apply [the *Hunt*] three-part test to those facts."); *Am. Fed'n of State Cty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 857 F. Supp. 2d 1322, 1330 (S.D. Fla. 2012), vacated on other grounds sub nom, *Scott*, 717 F.3d 851 (denying motion to dismiss Fourth Amendment claim because "the Union has standing to sue on behalf of its members").

Here, Ktown for All seeks injunctive and declaratory relief on behalf of its unhoused members that have had their property unreasonably seized under the Fourth Amendment. *See* Second MTD Order at 4 ("KFA alleges that its unhoused members 'have been subjected to the City's . . . enforcement of LAMC 56.11" and "have suffered harm as a result of these customs, policies, and practices, including the loss of property and the deprivation of their constitutional and statutory rights'" (quoting Suppl. FAC ¶¶ 42, 43)). Contrary to the City's characterization, Ktown for All does not seek to vicariously invoke its member's Fourth Amendment rights. *See* Def.'s Br. at 9. This Court has already determined that Ktown for All has *associational standing* under *Hunt* to pursue its Fourth Amendment claim on behalf of its members. *See* 12(b)(1) Order at 11-15; Second MTD Order at 4-8. And the Court has held that "this is a case where it is 'relatively clear' that one or more of KFA's unhoused members have been and will be adversely affected by the challenge provisions of the Ordinance." 12(b)(1) Order at 13. Nothing more is required. *See, e.g.*, *Columbia Basin*, 268 F.3d at 798-99; *CDT I*, 513 F.3d at 1096.

The City now asks this Court to unravel settled case law, and broadly expand a discrete Fourth Amendment limitation set forth in *Rakas v. Illinois,* 439 U.S. 128 (1978) to bar Fourth Amendment claims brought by an organizational plaintiff based on

9

associational standing. There is no basis for this request. In *Rakas*, the Court held that a criminal plaintiff did not have standing to invoke the exclusionary rule, and suppress evidence improperly seized from a third-party. *See id.* at 129-34. *Rakas* thus stands for the simple proposition that in this narrow context "Fourth Amendment rights are personal rights which cannot be asserted vicariously." *Id.* at 128. The Court did not address whether an organization can bring claims on behalf of its members, and thus did not foreclose an organization from asserting Fourth Amendment claims on behalf of its members.

The City's reliance on *Plumhoff v. Rickard*, 572 U.S. 765 (2014) is similarly misplaced. There, in a single paragraph, the Court cited *Rakas* to support its reasoning that the estate for a driver killed in a car crash involving police officers could not use the presence of the vehicle's passenger to sustain its own excessive force claim under Section 1983. *See id.* at 775-78. Although the Court permitted the estate to assert the rights of the driver for the police officer's excessive force, the Court explained that the force the police officers applied to the passenger and the passenger's "presence in the car cannot enhance [the driver's] Fourth Amendment rights." *Id.* at 778. Thus, *Plumhoff* stands only for the proposition that a court cannot consider the harm suffered by another person to sustain a plaintiff's Section 1983 claim for violations of the Fourth Amendment. *Id.* Notably, the Court explained that had the suit been "brought *on behalf of* [the passenger] under § 1983 or state tort law," as opposed to relying on the presence of the passenger to bolster a claim, "the risk to [the passenger] *would be* of central concern." *Id.* (emphasis added). Plainly, like *Rakas*, *Plumhoff* has no bearing on whether an organization can assert a Fourth Amendment claim on behalf its members under Section 1983.

The remaining cases the City cites similarly do not foreclose membership standing; the cases all arise in the context of vicarious standing, which is not at issue here, and are therefore inapplicable. In *California Bankers Association v. Schultz*, for example, the Court held that a bank association (representing banks in California, not

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

bank customers) and a bank could not proceed with their Fourth Amendment challenges to domestic reporting requirements under the Bank Secrecy Act of 1970, which plaintiffs argued could require disclosure of bank customers' financial affairs, because they had no direct injury and because they could not vicariously assert the rights of bank customers "in general" who they did not represent or purport to represent. *See* 416 U.S. 21, 42, 63-69 (1974).[4] And in *Microsoft v. United States Department of Justice*, the court rejected Microsoft's attempt to vicariously assert the Fourth Amendment rights of its customers to challenge the federal Electronic Communications Privacy Act.  233 F. Supp. 3d 887, 916 (W.D. Wash. 2017). Put simply, none of these cases establish what the City seeks here—barring an organizational plaintiff from raising Fourth Amendment claims on behalf of its members when the organizational plaintiff has established associational standing.[5]

The City's citation to *Knick v. Township of Scott*, 862 F.3d 310 (3d Cir. 2017), *vacated on other grounds*, *Knick v. Township of Scott*, 932 F.3d 152 (3rd Cir. 2019), is

---

[4] In fact, far from prohibiting associational standing, in *California Banking Association*, two organizations brought claims on behalf of their members, and the Court's ruling does not question standing on this basis. The American Civil Liberties Union ("ACLU"), for example, brought claims "on behalf of itself and various bank customer members," including Fourth and Fifth Amendment claims. 416 U.S. at 41. The Court dismissed those claims, but nonetheless assumed, in analyzing them, that the ACLU could bring them. *See id.* at 54, 69.

[5] The other cases cited by the City are equally inapplicable. *See Alderman v. United States*, 394 U.S. 165, 174 (1967) (criminal defendant could not claim right of another to exclude evidence from trial); *Ellwest Stereo Theaters, Inc. v. Wenner*, 681 F.2d 1243, 1248 (9th Cir. 1982) (company cannot vicariously assert the rights of its customer); *Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (mother cannot vicariously assert the rights of her daughter); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (as a matter of state tort law, the family of a victim of excessive force cannot vicariously assert the decedent's Fourth Amendment rights in a lawsuit against the Las Vegas Police Department); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186-1190 (9th Cir. 2015) (event organizers, but not attendees, had a reasonable expectation of privacy in a warehouse when it was searched during an event); *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1163-65 (C.D. Cal. 2018) (minor daughter could not assert vicariously assert her deceased father's excessive force claim); *Osborne v. Cnty. of Riverside*, 385 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005) (aunt and grandmother could not vicariously assert Fourth Amendment rights of minor child).

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

equally unavailing. *See* Def.'s Br. at 13-14. Like the other cases cited by the City, *Knick* has nothing to do with an organizational plaintiff and, what is more, is unrelated to a plaintiff seeking to establish the Fourth Amendment rights of another party through vicarious liability. *See id.* at 317 (plaintiff "lacks Article III standing because she has failed to demonstrate an injury-in-fact and redressability"). The Third Circuit simply questioned in passing whether the individual plaintiff would have an argument had she "attempted to base standing on the Fourth Amendment rights of hypothetical third parties." *Id.* at 321 n. 7.[6]

The handful of cases that do consider the City's specific argument—extending *Rakas* into the context of associational standing—have rejected the City's argument. In *CDT I*, for example, the Major League Baseball Players Association ("MLBPA") asserted the Fourth Amendment rights of its player members relating to seizures of steroid test results. 513 F.3d at 1095. The Ninth Circuit held that the MLBPA had associational standing under *Hunt*, and it could, therefore, "assert the Fourth Amendment rights of its members. . . ." *Id.* at 1096. In so holding, the court recognized that the "Supreme Court has clearly rejected 'vicarious' or 'target' standing to assert Fourth Amendment rights," but ruled that this argument has no application where the organization "has met the requirements of associational standing." *Id.* at 1096, n.28.[7]

---

[6] Notably, in analyzing standing for Fourth Amendment claims, the Third Circuit in *Knick* cited to and distinguished a case in that circuit from the year before—*Free Speech Coalition, Inc. v. Attorney General United States*, 825 F.3d 149 (3d Cir. 2016)—which held that trade associations could bring a declaratory judgement action on behalf of its members to bar the government from conducting searches in violation of the Fourth Amendment. *See id.* 167; *see also Knick*, 862 F.3d at 322 (citing *Free Speech Coalition*). In so holding, the Third Circuit pointed to the harm of the organization's members, noting that "the fact that some of [Free Speech Coalition's] members have been subjected to records inspections in the past makes the threat of future inspections more credible." *Free Speech Coalition*, 825 F.3d. at 166.

[7] The City previously argued that *CDT I* was not instructive because, as Ktown for All noted in its earlier briefing and again notes *supra*, it was vacated by *CDT III*. Although *CDT I* is not binding on this Court, the history does not render the reasoning in *CDT I* inapplicable or unpersuasive, and it does not change the fact that a three-judge panel from the Ninth Circuit that considered the application of *Rakas* in the context of associational standing rejected the argument the City advances here.

12

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Similarly, in *Heartland*, the Eight Circuit held "that associational standing is legally available to Heartland [Academy Community Church] on its Fourth Amendment claim" that it asserted on behalf of its students. 427 F.3d at 532-33. The court expressly rejected defendant's argument—the same argument the City makes—that Heartland was precluded from bringing a Section 1983 claim because it was predicated on the seizures of its members' property. *Id.* at 532; *see also Scott*, 857 F. Supp. 2d at 1330. As the Eighth Circuit explained: "The Supreme Court has never held . . . that associational standing is not available to § 1983 plaintiffs alleging Fourth Amendment violations" and "a case considering the applicability of the exclusionary rule, a remedy used for Fourth Amendment violations in criminal cases but not in civil cases, is not controlling in this § 1983 case." *Heartland*, 427 F.3d at 532; *see also CDT I*, 513 F.3d at 1095 n.28 (holding that because the organizational plaintiff had standing on behalf of its members under *Hunt*, the court need not consider whether under *Rakas*, the organization also had direct standing because of the organization's own partial ownership share in the seized items).

The reasoning in *CDT I* and *Heartland*, moreover, is consistent with the principles underlying associational standing. As the Court explained in *Warth*, "[e]ven in the absence of injury to itself, an association may have standing solely as *the representatives of its members*." 422 U.S. at 511 (emphasis added).[8] In other words, the point of associational standing is to permit an organization to litigate on behalf of its

---

[8] The City recognizes that *Warth*, which applies associational standing to claims being raised under Section 1983, is the "seminal case for an organization's representative standing," but seeks to minimize its importance by incorrectly stating that *Rakas* held that *Warth* "does **not** apply to [Fourth Amendment] claims." Def.'s Br. at 12 (emphasis in original). *Rakas* did no such thing. Instead, it cited *Warth* in a citation to a string of cases that discussed the traditional standing inquiry, and noted that "nothing [the Court] say[s] here casts the least doubt on those cases." 439 U.S. at 139-40. The Court reasoned that the question presented by *Rakas*—whether violating a a third party's Fourth Amendment rights gave a defendant the ability to invoke the exclusionary rule to exclude evidence obtained in conjunction with that violation—was properly answered by substantive Fourth Amendment law. *See id. Rakas* offered no holding outside of this context, and did not, as the City argues, foreclose organizations from bringing Section 1983 claims for violations of the Fourth Amendment on behalf of its members.

13

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

members—including, as here, when a municipality improperly seizes the property of an organization's members. Any concern that a "right" may not be implicated is expressly addressed by the *Hunt* test itself, which specifically considers whether "members would otherwise have standing to sue in their own right." 432 U.S. at 333. As courts make clear time and again, members join an organization to have its rights represented directly, not vicariously. Indeed, "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986). "The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests." *Id.*; *see also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 187 (1951) ("The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all." (Jackson, J., concurring)); *Coho Salmon v. Pac. Lumber Co.*, 61 F. Supp. 2d 1001, 1010 (N.D. Cal. 1999) ("[T]he association, in representing the interests of its members' stands in its members' stead rather than asserting the generalized interests of a third party unconnected to the association"). Associational standing is particularly needed where, as here, an association's members have difficulty accessing the courts themselves. As the Ninth Circuit put it: measures taken to avoid suits based on associational standing "would disserve the public interest, which frequently would not be represented but for these suits." *Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*, 950 F.2d 1401, 1409 (9th Cir. 1991).

In the context at issue here, the correct analysis begins and ends with the *Hunt* test, *see, e.g. CDT I*, 513 F.3d at 1095 n.28; *Heartland*, 427 F.3d at 532; *Columbia Basin*, 268 F.3d at 798, which Ktown for All satisfies, *see* Second MTD Order at 8.

14

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

2. **Ktown For All Can Bring Section 1983 Claims For Fourteenth Amendment Violations On Behalf Of Its Members**

Ktown for All has also properly raised a Section 1983 claim for Fourteenth Amendment due process violations on behalf of its members. Cases in this Circuit have repeatedly found that organizational plaintiffs can pursue Fourteenth Amendment due process claims on behalf of their members with associational standing. *See Columbia Basin,* 268 F.3d at 797; *Ass'n of Los Angeles City Attorneys v. City of Los Angeles*, No. CV 12-4235 MMM (JCx), 2012 WL 12887541, at *13-15 (C.D. Cal. Nov. 20, 2012); *Santiago*, 2016 WL 7176694, at *7-8; *Friendly House v. Whiting*, No. CV 10-1061-PHX-SRB, 2010 WL 11452277, at *5 (D. Ariz. Oct. 8, 2010); *Hanford Exec. Mgmt. Emp. Ass'n v. City of Hanford*, No. 1:11-CV-00828-AWI-DLB, 2012 WL 2159398, at *13 (E.D. Cal. June 13, 2012). To state a claim for violations of the Fourteenth Amendment, an organizational plaintiff must establish that its members were or will be deprived of a protected liberty or property interest. *See Ass'n of Los Angeles City Attorneys,* 2012 WL 12887541, at *13 (citing *Johnson v. Rancho Santiago Cmty. College Dist.*, 623 F.3d 1011, 1029 (9th Cir. 2010)). The Court has already held that Ktown for All has sufficiently pled its due process claim and can pursue it on the basis of associational standing. *See* Second MTD Order at 8.

The Ninth Circuit's decision in *Columbia Basin* is on point. There, a nonprofit organization representing members "that own and manage rental housing" in the City of Pasco—the Columbia Basin Apartment Association ("CBAA")—challenged a city ordinance on behalf of its members that required certain licensing and inspections for residential dwelling units. 268 F.3d at 795-96. Among other things, CBAA, like Ktown for All here, sought declaratory and injunctive relief under Section 1983 because the ordinance deprived CBAA's members "of due process guaranteed by the Fourteenth Amendment." *Id.* at 796. Analyzing *Hunt*, the court held that even though CBAA had no direct injuries, it had associational standing to pursue it claims. *See id.* at 796-97. Specifically, as the City put it: the Ninth Circuit "concluded that the association had

15

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

membership standing to seek injunctive relief because of the members' interest in ensuring that landlords would not lose their licenses under the ordinance without due process." Def.'s Br. at 13 (citing *Columbia Basin*, 269 F.3d at 798-99). The Ninth Circuit required nothing more for CBAA to move forward with its claim. This outcome is not unique. *See, e.g.*, *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1112 (9th Cir. 2003) (holding that non-profit organization has associational standing and could proceed with its due process claim on behalf of its members); *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1098, 1104 (E.D. Cal. 2001) (holding that non-profit organization could proceed on its Section 1983 Fourteenth Amendment procedural due process claim on the basis of associational standing and direct organizational standing); *Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842, 850 (W.D. Tenn. 2016) (teachers union had associational standing to bring Section 1983 due process action challenging the county board of education's lay-off of tenured teachers); *Pietsch v. Ward Cty.*, No. 1:18-CV-00023, 2020 WL 1159752, at *9 (D.N.D. Mar. 10, 2020) (organizational plaintiffs had associational standing to bring a Fourteenth Amendment due process claim challenging a county ordinance under Section 1983 on behalf of their members); *see also Associated Gen. Contractors of Cal.*, 950 F.2d at 1418 (organization had standing to pursue a Section 1983 Fourteenth Amendment equal protection claim against a San Francisco municipal ordinance).

As with its Fourth Amendment argument, the City again conflates associational standing and vicarious standing (Def.'s Br. at 17-18)—Ktown for All does not seek to vicariously assert the rights of other parties; it brings a representational claim on behalf of its members who have been directly harmed. *See* Second MTD Order at 8. The City's argument stems from *Moreland*, but there the Ninth Circuit held only that a family member of a victim of excessive force could not vicariously assert the victim's due process rights; it did not relate to organizational plaintiffs or associational standing. *See Moreland*, 159 F.3d at 370-71. The City's reliance on *Archuleta v. McShan* and *Coon v. Ledbetter*, both of which relate to individual plaintiffs seeking to invoke the

16

constitutional rights of another person who was the subject of police conduct, fares no better. *See Archuleta*, 897 F.2d 495, 498 (10th Cir. 1990) (plaintiff "was merely a bystander who was asserting indirect and unintended injury as a result of police conduct directed toward another"); *Coon*, 780 F.2d 1158, 1161 (5th Cir. 1986) (wife who witnessed deputies shooting into her mobile home and wounding her husband could not bring a constitutional claim for her emotional injuries). These cases are inapplicable here, and provide no basis for placing a wholesale bar on due process claims by organizations with associational standing. *See, e.g., Gonzalez ex rel. Doe v. Albuquerque Pub. Sch.*, No. CIV 05-580 JB/WPL, 2006 WL 1305032, at *4 (D.N.M. Jan. 17, 2006) (distinguishing *Archuleta* and explaining that the Tenth Circuit "has allowed § 1983 suits to go forward under the associational standing doctrine" and that defendant citing a case for the proposition that a plaintiff "must assert a violation of a constitutional right personal to the plaintiff and not the right of someone else . . . is inapposite because it dealt solely with individual standing, not associational standing").[9]

The City's citation to cases from the Second Circuit, which has limited organizational standing in Section 1983 cases in certain circumstances, is of no moment. Although the Second Circuit may have held that "organizations lack standing" in certain constitutional cases, that is not the rule in this Circuit and it stands in stark contrast to the principles of associational standing set forth in *Warth* and its progeny. The City in fact concedes there is no such rule in this Circuit. *See* Def.'s Br. at 17. And even the Second Circuit, relying on *Warth*, has noted that the holding in *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973)—followed by the cases the City cites—is questionable. *See Nnebe v. Daus*, 644 F.3d 147, 156 n.5 (2d Cir. 2011); *cf. Nat'l Rifle Assoc. of Am. v. Cuomo*, 1:20-CV-385-MAD/DJS, 2020 WL 4732110, at *4 (N.D.N.Y. Aug. 14, 2020) (emphasizing that the organizational plaintiff could not proceed only because

---

[9] The City also cites *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973), *McGowan v. Maryland*, 366 U.S. 420, 429 (1960) and *Tileston v. Ullman*, 318 U.S. 44, 46 (1943), but, similarly, none of those cases relate to associational standing and claims on behalf of members, and are thus inapplicable here.

17

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1  courts in the circuit are bound by precedent "until such time as [our prior decisions] are

2  overruled either by an *en banc* panel of our Court or by the Supreme Court" (quoting

3  *Nnebe*, 644 F.3d at 156 n. 5)); *Huertas v. E. River Housing Corp.*, 81 F.R.D. 641, 651

4  (S.D.N.Y. 1979) (explaining that *Hunt* and *Warth* "undercut the *Aguayo* analysis" and

5  that "[t]he premises upon which the *Aguayo* decision was based, then, are no longer

6  viable in light of recent Supreme Court decisions").[10]

7      The City's remaining arguments also lack merit. The City cites multiple cases

8  concerning third-party standing, but associational standing is separate and distinct from

9  third-party standing. *See* Def.'s Br. at 18-19. Ktown for All does not need to establish

10  third-party standing in this case; it has established associational standing. *See* Second

11  MTD Order at 8. That is sufficient.  *See, e.g.*, *Columbia Basin*, 268 F.3d at 797. And

12  the City's assertion that other unhoused members filing claims along with Ktown for

13  All in this case somehow undercuts Ktown for All's ability to allege a claim, *see* Def.'s

14  Br. at 19, runs contrary to decades of cases extolling the reasons for allowing

15  associations to bring claims on their members' behalf. *See, e.g.*, *Warth*, 422 U.S. at 511;

16  *Brock*, 477 U.S. at 290; *McGrath*, 341 U.S. at 187; *Coho Salmon*, 61 F. Supp. 2d at

17  1010; *Associated Gen. Contractors of Cal.,* 950 F.2d at 1409.

18

19

20  _____

[10] Courts throughout the Second Circuit have expressed similar skepticism, but have

21  recognized that they are bound by precedent. For example, in *Christa McAuliffe*

22  *Intermediate School PTO, Inc. v. de Blasio*, the court explained that "[t]his limitation
on associational standing appears to be unique to the Second Circuit." 364 F. Supp. 3d

22  253, 271 n.17 (S.D.N.Y. 2019). The court noted that this rule originated in *Aguayo*, and

23  that since that decision, two Supreme Court opinions—*Warth* and *Hunt*—have "cast
doubt on that holding." *Id.* In discussing the same issue, Judge Jacobs, in his dissent in

24  *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d

24  104 (2d Cir. 2017), noted that "several of our sister circuits, unburdened by *Aguayo*,

25  have applied the *Hunt* test for representational standing in § 1983 cases." *Id.* at 123
(Jacobs, J. dissenting) (citing circuit courts decisions from the Eighth, Seventh, Third,

26  Fourth, and ***Ninth*** Circuit). Judge Jacobs further noted that "[t]he Fifth and Sixth
Circuits have ***expressly held*** that organizations possess standing to sue under § 1983 for

27  violations of rights of their members in such circumstances." *Id.* (emphasis added). In
the meantime, Judge Jacobs concludes, the Second Circuit must "continue to rely on

28  [the] 'implicit determination'" set forth in *Aguayo*, and must "await Second Circuit en
banc review to overrule *Aguayo*," or at minimum, consider the issue. *Id.*

18

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

**B.     Ktown For All Can Bring Claims For Its Own Injuries**

Because Ktown for All can bring its Section 1983 constitutional claims on behalf of its members, the Court need not reach whether Ktown for All can bring its claims because of its own injuries to deny the City's Motion. *See Ho*, 721 F. App'x at 679-80. But in any event, Ktown for All can independently bring its Section 1983 claims based on its own injuries.

As with claims on behalf of their members' injuries, it is settled case law that organizations can bring claims for their own injuries resulting from constitutional violations. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991). The Court has already held multiple times that Ktown for All can pursue Fourth and Fourteenth Amendment claims for its own injuries. *See, e.g.*, Second MTD Order at 11-12. The arguments advanced by the City do not change this result.

**1.     Ktown For All Can Bring Fourth Amendment Claims For Its Own Injuries**

The City argues that, under *Rakas,* Ktown for All also cannot bring claims under the Fourth Amendment for the direct injuries it suffers. But the *Rakas* bar is also inapplicable where, as here, organizational plaintiffs can demonstrate direct injury. Ktown for All is not asserting a claim for "vicarious" injury, but for its own injury. Courts recognize legally-cognizable injuries to associations and organizations flowing from Fourth Amendment violations, including where the injury is financial or a diversion of the association's resources, which is sufficient for organizational plaintiffs to proceed on their its own Fourth Amendment claims. *See, e.g., Scott*, 857 F. Supp. 2d at 1330; *Santiago*, 2016 WL 7176694, at *8; *Nava v. Dept. of Homeland Sec.*, 435 F. Supp. 3d 880, 898-900 (N.D. Ill. 2020) (finding that non-profit organizations that supported immigrants and referees could proceed on Fourth Amendment claims under *Havens* because of diversion of financial resources and frustration of mission). This Court has found multiple times that Ktown for All has standing to pursue these claims

19

based on its own injuries of this type. *See, e.g.*, Second MTD Decision at 11-12; *see also* PI Order at 11-12 (finding evidence sufficient to demonstrate harm to Ktown for All).

In *American Federation of State, County and Municipal Employees Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013), the Eleventh Circuit affirmed the district court's holding that an organization could bring a Fourth Amendment claim under Section 1983 based solely on direct standing and its diversion of resources. 717 F.3d at 861 n.1. As the district court explained, because the organization "is not seeking to assert its members interest vicariously," but is instead "seeking to assert its own interests by identifying an injury that it will suffer as a consequence of having to devote its resources toward . . . members affected by" an executive order, it can proceed on its Section 1983 claims. *Scott*, 857 F. Supp. 2d at 1329. This is the same type of injury Ktown for All alleges. As the district court in *Scott* noted, this type of injury distinguishes the parties here from the party in *Rakas* and other cases Defendants cite, because the plaintiffs in those cases "suffered no injury at all." *Id*. Accordingly, where, as here, organizational plaintiffs have suffered cognizable injuries from Fourth Amendment violations, they state a Fourth Amendment claim even where their property was not seized. *Id.*

The City's reliance on *United States v. SDI Futures Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) does not dictate a different result. There, in the context of ruling on a motion to suppress, the Ninth Circuit considered the privacy rights of employees in their workplace and that individual plaintiffs would have to show a "personal connection or exclusive use" of the workplace to have a Fourth Amendment right "beyond his internal office." *Id.* at 698. The Ninth Circuit did not consider under what circumstances organizational plaintiffs can assert Fourth Amendment claims in a suit under 42 U.S.C. 1983. *Cf. also Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186-1190 (9th Cir. 2015) (analyzing when individuals had a reasonable expectation of privacy relating to a warrantless entry into a warehouse). And although the City accurately states that the court in *SDI* observed when "an entity" may assert Fourth Amendment claims, Def.'s

20

Br. at 8, that has little bearing on when an organizational plaintiff has a right to bring a Section 1983 claim for its own injuries—which this Court has already ruled are sufficient to establish Article III standing, and which resulted from violations of the Fourth Amendment. Courts that have considered this issue have held that such claims can proceed. *Scott*, 857 F. Supp. 2d at 1330; *Santiago*, 2016 WL 7176694, at *8; *Nava*, 435 F. Supp. 3d at 898-900.

### 2. Ktown For All Can Bring Fourteenth Amendment Claims For Its Own Injuries

Ktown for All can also bring Fourteenth Amendment claims based on its own injuries. Associations have standing and may also bring Section 1983 claims for due process violations that result in diversion of resources and frustration of their mission. *See, e.g.*, *Nnebe*, 644 F.3d at 147 ("[N]othing prevents an organization from bringing a § 1983 suit on its own behalf so long as it can independently satisfy the requirements of Article III standing as enumerated in *Lujan*."); *Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma*, 644 F. Supp. 2d 1177, (N.D. Cal. 2009) (finding organization protecting immigrants' rights could bring Section 1983 due process and Fourth Amendment claims because "mission of opposing anti-immigrant policies is frustrated" and "the Committee has diverted resources to combat defendants' policies); *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1136-37 (N.D. Ga. 2018) (plaintiffs had organizational standing to bring procedural due process claim under Section 1983 regarding the rejection of absentee ballots where the problems with absentee and provisional ballots frustrated the organization's mission and caused it to divert resources). This is particularly true where, as here, the injury impacts the organization's ability to associate with its members. "[I]n attempting to secure relief *from injury to itself* the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Warth*, 422 U.S. at 511 (emphasis added); *see also Nat'l Ass'n for Advancement of Colored People v. State of Ala. Ex rel. Patterson,* 357 U.S. 449, 462-63 (1958) (finding due

21

process claim where government action "is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate"); *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) (similarly acknowledging due process interest in unrestrained association, and noting it is protected "not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference").

This Court has already held that Ktown for All has sufficiently alleged that the City's enforcement of LAMC 56.11 has caused Ktown for All to divert resources and has made its "mission difficult to achieve." 12(b)(1) Order at 6-11; *see also* PI Order at 11 (finding organizational standing based on evidence showing that Ktown for All spent money and time to replace property and respond to the City's enforcement of LAMC 56.11 and evidence showing that the City's enforcement of LAMC 56.11 frustrated Ktown for All's mission to involve unhoused members in the organization when "cleanups have caused unhoused residents to lose contact with KFA and discouraged them from going to appointments and KFA meetings for fear that all their belongings will be thrown away when gone"). Ktown for All also alleges that the City's practices of seizing individuals' belongings without due process directly harms the organization because the City's unconstitutional practice makes it incredibly difficult for Ktown for All to organize with its unhoused neighbors, including making it hard for Ktown for All's unhoused members to participate, because they must spend time guarding their belongings or risk having them be unconstitutionally destroyed. SAC ¶¶ 40, 43. The diversion of resources and inability to organize harms Ktown for All directly, and is sufficient to state a claim for a due process violation.

The City incorrectly argues that Ktown for All nonetheless cannot bring its due process claims because "KFA alleges that it suffered indirect harms from the City's alleged removal and destruction of other individuals' personal property." Def.'s Br. at 15. The City is wrong.  Ktown for All has suffered direct injury. As this Court found, Ktown for All has suffered "not hypothetical" injury by having "spent money replacing

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

personal property that was destroyed by the City pursuant to LAMC § 56.11, and time helping individuals recover their property or otherwise respond to sweeps." 12(b)(1) Order at 10. Moreover, Ktown for All has suffered direct injury because the City's enforcement of the unconstitutional ordinance frustrates its ability to associate with its unhoused members.

The cases cited by the City do not withstand scrutiny. *Moreland* relates to individual plaintiffs seeking to vicariously assert someone else's due process rights relating to excessive force; it did not relate to organizational standing. 159 F.3d at 370-71. And even there, the Ninth Circuit permitted plaintiffs to "assert a Fourteenth Amendment claim based on the deprivation of their liberty interest arising out of their relationship with [the victim]." In *Castle Rock v. Gonzales*, the Court held that plaintiff did not "have a property interest in police enforcement of the restraining order against her husband" because such interest did not, for example, "have some ascertainable monetary value." 545 U.S. 748, 766-67 (2005). By contrast, the money Ktown for All spent to replace personal property destroyed because of the enforcement of an unconstitutional ordinance is real and ascertainable. And *O'Bannon v. Town Court Nursing Center* held only that Medicaid patients could not assert a due process right when indirect benefits (minimum care standards for nursing care facilities) were taken away. *See* 447 U.S. 773, 787 (1980). Such facts are a far cry from the injury Ktown for All alleges here.

The City's reliance to *Gonzaga University v. Doe*, 536 U.S. 273 (2002) also misses the mark. In *Gonzaga*, a student sued a university and its certification specialist under Section 1983 for violations of the Family Educational Rights and Privacy Act of 1974 ("FERPA") relating to release of his student records. *Id.* at 273. The Court concluded that the plaintiff could not bring his claim because FERPA created no personal rights to enforce under Section 1983. *Id.* at 274. As such, *Gonzaga* concerns whether a statute creates a private right of action that gives rise to a specific claim; there is no application in the context of federal constitutional claims, which unquestionably

23

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

create rights. *See Stilwell v. City of Williams*, 831 F.3d 1234, 1242 n.5 (9th Cir. 2016) (stating that *Gonzaga* "made it much more difficult to infer privately enforceable rights in federal statutes that lack private rights of action"). *Gonzaga* therefore has nothing to do with *who* can bring a Fourteenth Amendment claim under Section 1983. That question was answered by the Court in *Warth*. *See* 422 U.S. at 511.[11]

## V.    CONCLUSION

For the reasons set forth above, this Court should deny Defendant's Motion for Judgment on the Pleadings.

Dated: August 24, 2020          Respectfully submitted,

KIRKLAND & ELLIS LLP

/s/ *Benjamin Herbert*
Benjamin Allen Herbert

*Attorneys for Plaintiffs Ktown for All, Janet Garcia, Peter Diocson Jr., Marquis Ashley, and Ali El-Bey*

LEGAL AID FOUNDATION OF LOS ANGELES

/s/ *Shayla Myers*
Shayla Myers

*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, Ali El-Bey, Pete Diocson Jr., Marquis Ashley, James Haugabrook, and Ktown for All*

SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP

/s/ *Catherine Sweetser*
Catherine Sweetser

*Attorneys for All Plaintiffs*

---

[11] For the same reasons set forth herein, the City's Motion should be denied with regard to Ktown for All's claims that provisions of LAMC 56.11 and the City's policies, customs, and practices thereunder are unconstitutional under Article 1, Section 7 of the California Constitution and under Article 1, Section 13 of the California Constitution.

24

1

2                              **Local Rule 5-4.3.4 Attestation**

3    I attest that Plaintiffs' counsel, Shayla Myers and Catherine Sweetser, concurs in this
     filing's content and has authorized the filing.
4

5    DATED: August 24, 2020              KIRKLAND & ELLIS LLP

6                                        By: */s/ Benjamin Herbert*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

## PROOF OF SERVICE

I, La Tonya Fountain, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is KIRKLAND & ELLIS LLP, 555 South Flower Street, Los Angeles, CA 90071.

On August 24, 2020, I served the following document(s) described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S MOTION FOR JUDGMENT ON THE PLEADINGS**

on the interested parties in this action as follows:

☒   **CM/ECF electronic notification**

I am readily familiar with the ECF filing system and caused a true and correct copy thereof to be served electronically via CM/ECF electronic notification.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 24, 2020, at Los Angeles, California.

_____
La Tonya D. Fountain