MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
**A. PATRICIA URSEA, Deputy City Attorney (SBN 221637)**
**FELIX LEBRON, Deputy City Attorney (SBN 232984)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-
Facsimile (213) 978-7011
Patricia.Ursea@lacity.org
Felix.Lebron@lacity.org
*Attorneys for Defendant,* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br>　　　　　　　*Plaintiffs,*<br><br>　　　vs.<br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br>　　　　　　*Defendant(s).* | Case No.:  2:19-cv-6182-DSF-PLA<br>[Assigned to Hon. Dale S. Fischer]<br>**CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS**<br><br>[Declarations of Howard Wong, Domingo Orosco and Gabriel S. Dermer Filed Concurrently Herewith]<br><br>Date:　　September 21, 2020<br>Time:　　1:30p.m.<br>Ctrm:　Room 7D |

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ............................................................................... 1

3    II.   RELEVANT FACTS ......................................................................... 3

4          A. Post-Injunction Cleanup Operations ................................................ 3

5          B. Revisions of Permanent Signs .......................................................... 4

6          C. The Paper Notices On Which Plaintiffs Base Their Motion ............ 5

7          D. The City's Efforts To Address Plaintiffs' Concerns ...................... 7

8    III.  LEGAL STANDARDS APPLICABLE TO CIVIL CONTEMPT .......... 8

9    IV.   THE CITY SUBSTANTIALLY COMPLIED WITH THE INJUNCTION ............. 9

10         A. The City Has Not Enforced The Bulky Item Provisions ................ 9

11         B. New Permanent Signs Are Compliant; The Errant Temporary Signs
12            Were Promptly Corrected ............................................................ 10

13   V.    THERE IS NO BASIS NOR NEED FOR THE REQUESTED SANCTIONS ...... 13

14         A. The Requested Monetary Fines Are Unwarranted ....................... 14

15         B. Posting of Remedial Notices Is Unnecessary .............................. 16

16         C. Attorneys' Fees Are Unwarranted ............................................... 16

17   VI.   CONCLUSION .............................................................................. 18

18

19

20

21

22

23

24

25

26

27

28

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bbu, Inc. v. Sara Lee Corp.*,
  2009 WL 10672191 (S.D. Cal. Sept. 29, 2009)...................................................... 12, 13

*Cuviello v. City of Oakland*,
  2009 WL 3707014 (N.D. Cal. Oct. 19, 2009) ................................................. 14, 15, 16

*Degla Grp. For Invs., Inc. v. Boconcept USA, Inc.*,
  2010 WL 11509053 (C.D. Cal. Sept. 30, 2010) ................................................ 8, 12, 13

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) .......................................................................................*passim*

*Facebook, Inc. v. Power Ventures, Inc.*,
  2017 WL 3394754 (N.D. Cal. Aug. 8, 2017) ............................................................ 16

*General Signal Corp. v. Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986) ............................................................................... 14, 15

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  2020 WL 816135 (C.D. Cal. Jan. 23, 2020) ................................................................. 8

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
  No. SA CV 12-00717-AB (Ex), 2014 U.S. Dist. LEXIS 184735
  (C.D. Cal. Nov. 4, 2014)........................................................................................ 9, 17

*Int'l Union v. Bagwell*,
  512 U.S. 821 (1994)................................................................................................... 14

*Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro Transp. Auth.*,
  564 F.3d 1115 (9th Cir. 2009) ................................................................................ 8, 13

*Nat'l Advertising Co. v. Orange*,
  861 F.2d 246 (9th Cir. 1988) ..................................................................................... 12

*O'M & Assocs., LLC v. Ozanne*,
  2011 WL 2160938 (S.D. Cal. Jun. 1, 2011) ................................................................. 9

*On Command Video v. Lodgenet Entm't Corp.*,
  976 F. Supp. 917 (N.D. Cal. Apr. 3, 1997)..............................................9

*Quantum Labs, Inc. v. Maxim Integrated Prods.*,
  2020 WL 1914959 (N.D. Cal. Apr. 20, 2020) ...................................9

*Ramond v. Designers Fountain, Inc.*,
  1993 WL 43561 (C.D. Cal. 1993) ...................................................17

*Shuffler v. Heritage Bank*,
  720 F.2d 1141 (9th Cir. 1983) ........................................................16

*TrafficSchool.com v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ..........................................................12

*United States v. Alfredoflores*,
  628 F.2d 521 (9th Cir. 1980) ..........................................................15

*United States v. Ayres*,
  166 F.3d 991 (9th Cir. 1999) ..........................................................14

*United States v. Bright*,
  596 F.3d 683 (9th Cir. 2010) .......................................................8, 9

*Vertex Distrib. v. Falcon Foam Plastics, Inc.*,
  689 F.2d at 891-92 ....................................................................12, 13

*Westside Shepherd Rescue of L.A. Inc. v. Pollock*,
  2009 WL 10675198 (C.D. Cal. Aug. 27, 2009) ...........................13, 15

*Whittaker Corp. v. Execuair Corp.*,
  953 F.2d 510 (9th Cir. 1992) .....................................................14, 16

**Other Authorities**

Local Rule 7-3......................................................................................7, 18

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

1

## I.    INTRODUCTION

On April 13, 2020, the Court granted Plaintiffs' motion for preliminary injunction "to prevent the City from enforcing two facially-unconstitutional provisions" of the Los Angeles Municipal Code ("LAMC") (Dkt. No. 48 at 11:5-8):

(1)  LAMC 56.11(3)(i), which permits removal and destruction of items in the public right of way that are "too large to fit into a 60-gallon container with the lid closed" ("Bulky Item Provision") (Dkt. No. 58 at 2-3); and

(2)  LAMC 56.11(10)(d), which makes it unlawful for any person to "willfully resist, delay or obstruct a City employee from removing or discarding a Bulky Item" ("Penalty Provision") (*id.* at 3, 30) (collectively "the Bulky Item Provisions").

The Court enjoined enforcement of these provisions because it found that Plaintiffs were likely to succeed in showing that the Bulky Item Provision violates (a) the Fourth Amendment "by permitting the seizure and immediate destruction of Bulky Items without a warrant or pursuant to a warrant exception" (*id.* at 13) and (b) procedural due process because it "permits the City to remove and permanently destroy Bulky Items without any procedural safeguards whatever" (*id.* at 22).

As a corollary to the injunction against enforcement of the Bulky Item Provisions, the Court also prohibited the City from "[p]osting signs, notices, or other public information stating that the City will enforce Sections 56.11(3)(i) or 56.11(10)(d) of the [LAMC]." *Id.* at 30.  This prohibition is the sole basis for Plaintiffs' motion for contempt.  *See* Notice of Motion, Dkt. No. 88 at (i).  Plaintiffs do *not* allege that the City has enforced the Bulky Item Provisions, nor do they present any evidence of such enforcement.  And in fact, the City *has not* enforced the Bulky Items Provisions since the injunction issued.  *See* Declaration of Howard Wong ("Wong Decl."), ¶¶ 11-12, 18, 21.  Los Angeles Sanitation ("LASAN") adjusted its protocols for addressing bulky items in order to comply with the injunction, and informed all LSD personnel accordingly.  *See id.*, ¶ 9.  Since then, the LASAN employees responsible for cleanup

1

operations have reminded that the Bulky Item Provisions were not to be enforced—and thus, they have not been enforced. *See id.*, ¶¶ 9, 11-12, 18, 21; *see also* Declaration of Domingo Orosco ("Orosco Decl."), ¶ 8.

With respect to the prohibition against "[p]osting signs, notices, or other public information" at issue in Plaintiffs' motion, the record shows that the vast majority of the City's actions complied with the Preliminary Injunction. After the injunction issued, the City posted 1,080 permanent signs around the City relating to cleanup operations. *Not a single one of those signs violates the injunction.* Orosco Decl., ¶¶ 18-19, Ex. 2. Plaintiffs do not contend otherwise; nor can they. None of these newly posted permanent signs contains any reference to LAMC 56.11(3)(i) or (10)(d) or states that the Bulky Items Provisions will be enforced; indeed, none of these signs contains any references to bulky items whatsoever. *Id.* In addition, although the Court's order does not expressly require the City to revise permanent signs that were in place before the injunction issued, the City agreed to do so after Plaintiffs raised the issue on July 27, 2020. Consequently, LASAN employees were deployed to place overlays on over 3,000 existing permanent signs to remove all references to bulky items or the Bulky Item Provisions, and they continue to inspect and place additional overlays as needed. *See* Orosco Decl., ¶¶ 23, 33; Wong Decl., ¶ 22. The City has promptly investigated and responded to not only these concerns, but all other concerns Plaintiffs have raised about the injunction. *See* Declaration of Gabriel S. Dermer ("Dermer Dec."), ¶¶2-16.

Despite this record of compliance, Plaintiffs contend that the City has shown "a blatant disregard for this Court's injunction." Dkt. No. 88 at 1:16-17. This contention is based solely on four isolated instances in which paper notices that stated "bulky items are prohibited" were posted in connection with scheduled cleanup operations. To be clear, despite these errant notices, *no bulky items were removed or destroyed based on their size* during these cleanups (Wong Decl., ¶¶ 11-12, 18, 21), and Plaintiffs do not

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

allege otherwise.[1]  Furthermore, there is no evidence that any person relied on these notices to their detriment or suffered any harm as a result of the notices.  Moreover, the City immediately removed the notices and since then has taken steps to ensure that all existing and future notices comply with the injunction.  Orosco Decl., ¶ 33; Wong Decl., ¶ 22.   Indeed, the issues in Plaintiffs' contempt motion were addressed and resolved before the motion was filed.  *See id.*; *see also* Dkt. No. 88 at 15:15-16, 17:2-5.

Given these facts, and in light of the City's overall record of compliance, Plaintiffs' characterization that the City has shown "a blatant disregard for this Court's injunction" is patently inaccurate and unfair.  There is no basis on which to hold the City in contempt, and certainly no justification for awarding the sanction of $45,205 a day that Plaintiffs seek.  *See* Dkt. No. 88 at 21:10-14.  Plaintiffs' motion should be denied.

## II.   RELEVANT FACTS

### A.    Post-Injunction Cleanup Operations

Prior to the Court's issuance of the Preliminary Injunction, while Plaintiffs' motion was pending, the City took proactive steps to adjust operational practices with respect to the removal, storage, and disposition of bulky items.  Orosco Decl., ¶ 7.  On February 28, 2020, LASAN informed staff that bulky items were only to be removed and discarded if a health hazard was identified and documented.  *Id.*  After the Preliminary Injunction issued, LASAN implemented adjustments to the protocols for addressing bulky items in order to comply with the injunction, and informed all LSD

---

[1] Neither notice stated that bulky items would be destroyed or referenced the Bulky Item Provision.  *See* Dkt. No. 82-9 ("Property left behind, except for items that pose an immediate threat to public health and safety, trash, and evidence of a crime or contraband, will be collected and kept by the City for a period of 90 days during which time it may be retrieved by its rightful owner"; "[t]he City reserves the ability to address items…bulky items…at any time and in any location"); Dkt. No. 82:11 ("Failure to remove this bulky item within 24 hours will subject it to removal by the City…Absent an immediate threat to public health or safety, the bulky item and any personal property removed from within the bulky item will be maintained in a secured location for 90 days.")

3

personnel accordingly.  Wong Decl., ¶ 9.  In addition, the City implemented a revised form of permanent metal signs that provide notice of regularly occurring cleanups around A Bridge Home Shelters, which omits any reference to LAMC 56.11(3)(i) or Bulky Items.  *See* Dkt. No. 88 at 11:10-11.  The City ensured that all 1,080 new metal signs erected at approximately 270 locations after the Preliminary Injunction issued are the revised form.  Orosco Decl., ¶¶ 18-19, Ex. 2.

Due to the COVID-19 pandemic, on March 17, 2020, the City Council voted that LASAN should suspend noticed CARE+ comprehensive cleanups.  Orosco Decl., ¶ 12. On July 29, 2020, the Los Angeles City Council voted to resume such cleanups only in the Special Enforcement and Cleaning Zones ("SECZ") around A Bridge Home shelters. *Id.*, ¶ 26.  SECZs are designated areas around A Bridge Home shelters that receive enhanced sanitation services, which involve spot cleaning for removal of trash, debris, and hazardous materials on four designated days a week, and a noticed CARE+ comprehensive cleanup at a designated time and day of the week.  *Id.*, ¶ 15.  Alongside the recent resumption of these cleanups, the City provides enhanced services for unhoused residents in the areas, including mobile hygiene units with toilets, showers, and sinks; distribution of sanitary kits containing masks, gloves and hand sanitizers; tent exchanges; and free COVID-19 testing.  *Id.*, ¶ 27; Wong Decl., ¶¶ 4, 18.

### B.    Revisions of Permanent Signs

Although Plaintiffs do not appear to be moving on this basis, they point to permanent signs that contain references to bulky items, which had been posted throughout the City before the Preliminary Injunction issued.  *See* Dkt. No. 88 at 4 n. 1; *see also* Wong Decl., ¶ 14.  The Preliminary Injunction did not expressly order the City to remove such signs.  *See* Dkt. No. 58 at 30.[2]  Nonetheless, when Plaintiffs raised a

---

[2] Plaintiffs knew of the existence of these permanent signs around A Bridge Home Shelters when they moved for the preliminary injunction; a sample of one such sign referencing LAMC 56.11(3)(i) was included as evidence in the City's opposition to the preliminary injunction motion.  *See* Wong. Decl., ¶ 14 (citing Dkt. No. 42-6, Ex. 14).

4

concern about these signs on July 27, 2020, the City rapidly deployed LASAN employees into the field to place overlays on the signs (totaling over 3,000, posted at approximately 750 different locations throughout the City) to remove references to LAMC 56.11(3)(i) and/or bulky items.  Orosco Decl., ¶¶ 20-23.  Although Plaintiffs contend that some of the existing signs are missing overlays (an issue that the City is investigating, which may involve the overlays falling off or being deliberately removed), there is no dispute that the City placed overlays on thousands of signs around the City. *See* Orosco Decl., ¶ 23.  LASAN staff continue to inspect and place any overlays as needed.  *See Id.*, ¶¶ 25, 31; Wong Decl., ¶ 22.

In addition to ensuring that permanent signs comply with the Preliminary Injunction, the City also implemented new forms of temporary paper notices used in connection with cleanups to omit all references to bulky items to accurately reflect the City's cessation of enforcement of the Bulky Item Provisions.  Orosco Decl., ¶ 32, Ex. 4.

The City also has taken steps to ensure that the public is aware of the injunction. For example, the City Attorney's website contains a description of this case, a link to the Preliminary Injunction, and an explanation that "[t]his injunction prohibits the City from removing and immediately destroying personal property based solely on the size of the item."  *See* LA City Attorney, *Important Court Cases*, *Janet Garcia, et. al v. City of Los Angeles, et. al,* https://www.lacityattorney.org/homelessness.

### C.     The Paper Notices On Which Plaintiffs Base Their Motion

Plaintiffs' motion is based exclusively on two types of temporary paper notices that were posted in connection with cleanup operations in the A Bridge Home SECZ areas.  Dkt. No. 88 at 12:2-4.  One was posted preceding a July 31, 2020 cleanup; the other was posted in connection with cleanups on August 3, 2020, August 7, 2020, and August 12, 2020.[3]  *See* Orosco Decl. ¶¶ 30-31; Wong Decl. ¶¶ 17, 19, 20.

---

[3] Although Plaintiffs' motion makes reference to the posting of notices on August 12, 2020, the Proposed Order submitted with the motion relies only on three

1    The July 31, 2020 cleanup occurred in the City's Beacon A Bridge Home SECZ

2 and took place two days after City Council voted to resume noticed comprehensive

3 cleanups in SECZ areas.  *See* Orosco Decl., ¶¶ 26, 28-30.  In an effort to provide

4 additional notice of the anticipated cleanup beyond the permanent signage in the area, an

5 Environmental Compliance Inspector ("ECI") posted paper notices the day before the

6 cleanup was scheduled to occur.  *Id.*, ¶ 31.  Unfortunately, the ECI used an outdated pre-

7 injunction form of the paper CARE+ comprehensive cleaning notice.  *Id.*; Wong Decl.

8 ¶17.  While that notice did not reference LAMC 56.11(3)(i) or LAMC 56.11(10)(d), it

9 did contain a statement that "bulky items are always prohibited."  *See* Dkt. No. 82-9 and

10 n. 1 *infra*.

11    On the three days in August alleged, ECIs also posted paper notices in connection

12 with cleanups in SECZ areas.  Wong Decl., ¶¶ 19, 20.  These notices were different than

13 the CARE+ notice posted in July but they similarly stated that "storage of bulky items in

14 the public right of way or another public area is prohibited."  *See* Dkt. No. 82-11 and n.

15 1 *infra*.  Unlike the CARE+ notice, which was a general notice of cleanup, these notices

16 were affixed to individual structures located in the cleanup area that appeared to be used

17 as shelters; they were intended to provide individualized notice (in addition to the notice

18 provided by the permanent signs) to persons who may be living in those structures that

19 the item would be subject to removal at the time of the cleanup.  Wong Decl., ¶ 20.  The

20 notices stated if the item was removed, it would be stored for 90 days unless it was

21 contaminated, and provided contact information for the storage facility.  *Id.*; Dkt. No.

22 82-11.

23    As Plaintiffs acknowledge, each of these signs remained posted for a very short

24 period per instance, and, as Plaintiffs are aware, all signs had already been removed by

25 the time Plaintiffs filed their motion.  *See* Dkt. No. 88 at 15:15-16, 17:2-5.

26

27 _____

28 occasions (July 30, August 3, and August 7).  *See* Dkt. No. 88-1.  Nevertheless, the City
addresses all four incidents.

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

### D.    The City's Efforts To Address Plaintiffs' Concerns

On the afternoon of Thursday, August 6, 2020, Plaintiffs notified the City that they intended to file an *ex parte* application on the following day for an order to show cause regarding contempt and sanctions based on the July 30 and August 3 incidents. Dkt. No. 88 at 7:6-8; Dermer Decl., ¶¶ 5,6.[4]   The City immediately investigated Plaintiffs' allegations, and counsel discussed Plaintiffs' contemplated *ex parte* application by phone that same day.   Dermer Decl., ¶¶ 7, 8.   Plaintiffs' counsel stated they might be willing to forgo filing their contemplated *ex parte* application if the City agreed to a stipulation and declaration from LASAN.   *Id.*, ¶ 9.   On Monday, August 10, 2020, the City's counsel sent Plaintiffs' counsel a lengthy and detailed email reporting on the results of LASAN's investigation into Plaintiffs' concerns and the affirmative steps taken to address them.   *Id.*, ¶ 11; Dkt. No. 89 ("Myers Decl."), Ex. Q (Dkt. No. 89-15).   Among other information provided in that email, the City's counsel reported that LASAN had placed overlays on over 3,000 permanent signs to cover any reference to the Bulky Item Provision or bulky items.   Myers Decl., Ex. Q.

On Thursday, August 13, 2020, Plaintiffs' counsel sent an email contending that "over 100 signs" around an A Bridge Home location "were non-compliant."   Dermer Decl., ¶ 14.   The City immediately investigated the issue.   *Id.*, ¶ 15; Orosco Decl., ¶ 25. On Monday, August 17, 2020, the City's counsel responded, detailing the steps taken to investigate Plaintiffs' allegations, including that LASAN had conducted field checks on August 14, 2020—the day after Plaintiffs' email—and found that only four signs were missing overlays.   Myers Decl., Ex. T (Dkt. No. 89-20).   The City's counsel noted the disconnect between Plaintiffs' and the City's numbers and thus requested that Plaintiffs

---

[4] Plaintiffs attempt to characterize the August 6, 2020 phone call as satisfying the Rule 7-3 meet and confer requirement for the present motion.   *See* Dkt. 88 at (ii).   But that call concerned only Plaintiffs' intention to file an ex parte application and related only to the July 30 and August 3 notices.   Dermer Decl., ¶ 5.   Given that the present motion is based on two incidents that postdate the August 6 call (the August 7 and August 12 postings), that call did not satisfy Plaintiffs' Rule 7-3 obligations.

7

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

provide any evidence they had to support their belief that "over 100 signs" were not updated, and also proposed that the parties schedule a meet-and-confer to discuss the issue.  Dermer Decl., ¶ 15.  Instead, Plaintiffs filed their motion later that day.  *Id.*

## III.   LEGAL STANDARDS APPLICABLE TO CIVIL CONTEMPT

In the Ninth Circuit, a court may only find contempt where clear and convincing evidence demonstrates that a party violated a specific and definite court order, beyond substantial compliance, and not based on a good faith and reasonable interpretation of the order.  *Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (*citing Dual-Deck Video*, 10 F.3d 693, 695 (9th Cir. 1993)); *United States v. Bright*, 596 F.3d 683, 684 (9th Cir. 2010) (placing burden on moving party to show "(1) that [alleged contemnor] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence."); *see also Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2020 WL 816135, at *7 (C.D. Cal. Jan. 23, 2020).

Although willfulness is not required, contempt does not lie where the conduct "appears to be based on a good faith and reasonable interpretation of the court's order." *See Dual-Deck*, 10 F.3d at 695; *Degla Grp. For Invs., Inc. v. Boconcept USA, Inc.*, 2010 WL 11509053, at *19 (C.D. Cal. Sept. 30, 2010) (holding that "some minor, albeit short-lived, violations of the injunction" were insufficient to warrant contempt where good-faith and reasonable efforts were made to comply).  If a party is in "substantial compliance" with the court's order, "a few technical violations" will not support a holding of contempt "where every reasonable effort has been made to comply." *Dual-Deck Video*, 10 F.3d at 695 (vacating contempt judgment where defendant substantially complied with order, despite three harmless technical violations of order).  "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." *O'M & Assocs., LLC v. Ozanne*, 2011 WL 2160938, at *4 (S.D. Cal. Jun. 1, 2011).

## IV.    THE CITY SUBSTANTIALLY COMPLIED WITH THE INJUNCTION

Contempt will not lie where there has been "substantial compliance," *i.e.*, where the alleged noncompliance is "technical or de minimis." *Quantum Labs, Inc. v. Maxim Integrated Prods.*, 2020 WL 1914959, at *9 (N.D. Cal. Apr. 20, 2020) (citing *Facebook, Inc. v. Power Ventures, Inc.*, 2017 WL 3394754, at *3 (N.D. Cal. Aug. 8, 2017) and *Bright*, 596 F.3d at 694).  In other words, "contemptuous behavior must violate the substance of a specific and definite court order, not merely its form." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. SA CV 12-00717-AB (Ex), 2014 U.S. Dist. LEXIS 184735, at *50 (C.D. Cal. Nov. 4, 2014) (Westlaw citation unavailable).  Here, the two faulty paper notices—posted on four isolated instances and remedied before Plaintiffs even filed their motion—do not warrant a finding of contempt, and certainly do not justify the exorbitant monetary sanctions Plaintiffs request.  Although Plaintiffs claim that "[t]he City cannot possibly argue it took reasonable steps to comply with this Court order" (Dkt. No. 88 at 12:1-2), the record shows otherwise.

### A.    The City Has Not Enforced The Bulky Item Provisions

When determining whether a party has substantially complied with a court order, "the court must review the [party's] action in accordance with the purpose of the order." *On Command Video v. Lodgenet Entm't Corp.*, 976 F. Supp. 917, 938 (N.D. Cal. Apr. 3, 1997) (finding that, in light of the purpose of the order, the party substantially complied and contempt was unwarranted).  Here, there can be no dispute that the central purpose of the Preliminary Injunction, and indeed, the express basis for Plaintiffs' motion seeking that injunction, was to prohibit the enforcement of the Bulky Item Provisions. *See* Dkt. No. 58 at 1; Dkt. No. 48 at 11:5-8.  There also can be no dispute that the City fully complied with these prohibitions.  Indeed, Plaintiffs' motion does not allege that the City seized or destroyed a single bulky item in violation of the injunction.  After the Preliminary Injunction issued, LASAN adjusted its protocols for addressing bulky items to comply with the injunction, and informed and reminded all personnel involved in cleanups accordingly.  Wong Decl., ¶ 9.  Moreover, in all cleanup operations that have

9

taken place since the Preliminary Injunction issued, no items were removed or discarded because they were "bulky"; rather, bulky items were treated in the same manner as all other personal property irrespective of size.  *See id.*, ¶¶ 12, 18, 21.[5]

**B.  New Permanent Signs Are Compliant; The Errant Temporary Signs Were Promptly Corrected**

As noted, the sole basis for Plaintiffs' contempt motion is the contention that in four instances, paper signs posted in connection with cleanup operations violated the injunction against "[p]osting signs, notices, or other public information stating that the City will enforce Sections 56.11(3)(i) or 56.11(10)(d) of the [LAMC]."  Notice of Motion, Dkt. No. 88 at (i).  But these instances do not warrant a finding of contempt— they are outliers of the City's practices, caused no harm, and were promptly corrected.

First, the City posted 1,080 new permanent signs about cleanups since the injunction—every single one of them complies the injunction.  Orosco Decl., ¶¶ 18-19, Ex. 2.  None of these permanent signs reference bulky items, much less state that the Bulky Item Provisions will be enforced.  *Id.*  Plaintiffs do not claim otherwise.

Second, when Plaintiffs contacted the City stating that the existing signs, *i.e.*, the signs that had been posted before the Preliminary Injunction issued, should be removed

_____

[5] In passing, Plaintiffs speculate that "[t]he fact that the City has posted notices of its intention to seize Bulky Items calls into question the extent to which the City is actually doing so."  Dkt. No. 88 at 13:22-23.  Plaintiffs also submit one video, taken by Plaintiffs' counsel, depicting a tent-like structure being discarded, during which Plaintiffs' counsel speculates that the notice posted on the structure likely referred to bulky items.  *Id.* at 17:1-10.  Ostensibly, the purpose of the video is to put into question whether the structure was seized and discarded because it was a bulky item.  Not only do these speculations fall far short of meeting the "clear and convincing" standard required for a finding of contempt, they are unfounded.  As the video shows, the tent took up almost the entire sidewalk where the cleanup was taking place.  The Preliminary Injunction does not prohibit removal of items that interfere with ADA passage or City operations.  Dkt. No. 58 at 2-3, 30.  Moreover, the reason the structure was discarded was because it was contaminated with rodent feces, urine, and blood. Wong Decl., ¶ 24.  The Preliminary Injunction does not prohibit the City from discarding items that pose immediate threats to health and safety.  Dkt. No. 58 at 2-3, 30.

or revised based on Plaintiffs' interpretation of the injunction, the City promptly acted to revise the signs with overlays, even though the Court's order did not clearly require such action. *See Dual-Deck Video*, 10 F.3d at 695 ("Civil contempt…consists of a party's disobedience to a specific and definite court order"). This was no small undertaking; there are over 3,000 permanent metal signs that had been posted at approximately 750 SECZ locations in the City prior to issuance of the injunction. Orosco Decl., ¶ 23.

Third, the four instances in which the errant paper notices were posted were promptly corrected. These isolated instances do not show a "blatant disregard" for the injunction. Indeed, those notices were posted in the very same timeframe that City employees were undertaking a comprehensive effort to remove references to bulky items on over 3,000 permanent signs around the City. *See* Orosco Decl., ¶¶ 17, 19, 23-25.[6] Furthermore, the notices were short-lived and resulted in no harm—no bulky items were removed and/or discarded solely based on their size (Wong Decl., ¶ 21), and Plaintiffs proffer no evidence that any person who stored belongings in the area even saw the notices, much less that that they relied on the notices and thus, voluntarily "abandon[ed] their belongings." *See* Dkt. No. 88 at 12:24-27.[7]

---

[6] In an apparent effort to show that the notices were posted maliciously, Plaintiffs point to statements made by Councilmember Buscaino reflecting his beliefs about bulky items in the public right of way. Dkt. No. 88 at 13:27-14:12. Even if these comments were tied to the erroneous notices in any way—and they were not—they do not show that the City acted with malice. Plainly, the views of a single Councilmember do not reflect City policy, which can only be enacted by a vote of a quorum of all fifteen members of the City Council and by approval of the Mayor. Moreover, many of the other Council members expressed very different views. *See, e.g.,* Plt's RJN, Dkt. No. 90, Ex. 5 at pp. 47, 75. Indeed, Buscaino's first motion to resume cleanup operations on an emergency basis was rejected by the majority of the Council. *Id.* at Ex. 3, p. 105. The second motion passed 10-4 but was limited to cleanups in special enforcement zones, and did not reference the Bulky Item Provisions. *See* Ex. 5 at p. 85-86.

[7] While Plaintiffs submit evidence that their counsel and a member of AREPS (which is no longer a party to this litigation) observed the notices (*see* Myers Decl. and Parriott Decl.), there is no evidence that any of the Plaintiffs saw the notices, much less that any of them, or any other person, moved any of their property in reliance on the notice.

11

Such circumstances do not support a finding of contempt. *See e.g., Dual-Deck Video*, 10 F.3d at 695 (vacating contempt judgment despite three technical violations where defendant substantially complied with order); *Vertex Distrib. v. Falcon Foam Plastics, Inc.*, 689 F.2d at 891-92 (affirming district court's denial of contempt where party substantially complied with order, despite one violation arising from two listings in a phone book directory that had already been corrected prior to filing of the application for a contempt order); *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011) (affirming denial of contempt for several technical violations of injunction where defendants otherwise substantially complied); *Bbu, Inc. v. Sara Lee Corp.*, 2009 WL 10672191, at *3 (S.D. Cal. Sept. 29, 2009) (finding no contempt in infringement case where defendants ordered stickers to be placed over offending labels and instructed employees accordingly); *Nat'l Advertising Co. v. Orange*, 861 F.2d 246, 250 (9th Cir. 1988) (vacating contempt order where city substantially complied with injunction); *Degla Grp. For Invs., Inc.*, 2010 WL 11509053, at *19 ("Although [moving party] has highlighted some minor, albeit short-lived, violations of the injunction, the court concludes that they are not sufficient to warrant the entry of an order of contempt because [alleged contemnor] appears to have made good-faith and reasonable efforts to comply with the injunction.").

Indeed, the perfect compliance Plaintiffs are demanding is a much higher standard than the law requires, and Plaintiffs' efforts to characterize the City's efforts as anything short of substantial compliance are unsupported by the evidence or the law. *See e.g., Labor/Community Strategy Ctr.*, 564 F.3d at 1123-24 (affirming denial of civil contempt sanctions where party substantially complied, despite "imperfect compliance" with one requirement of the order); *see also Bbu, Inc.*, 2009 WL 10672191, at *3 (holding defendants were not in contempt of the preliminary injunction where they took steps to comply with the order despite unstickered infringing products still being on the market). Courts are particularly disinclined to find that short-lived violations constitute contempt, especially where, as here, the notices were already removed by the time of filing of

12

Plaintiffs' motion. *See e.g., Vertex Distrib.*, 689 F.2d at (district court did not abuse discretion in declining to find contempt where steps had already been taken to correct the violation relied on prior to plaintiff's application for an order holding defendants in contempt); *Degla Grp. For Invs., Inc.,* 2010 WL 11509053, at *19.

Moreover, the City has taken additional steps to ensure that future paper notice postings fully comply with the injunction.  The LASAN division tasked with supporting CARE and CARE+ cleanup programs implemented adjustments to the formal protocols suspending use of any notices referencing bulky items and confirmed that the revised CARE+ notice, which omits references to bulky items, should be used for comprehensive cleanups. Orosco Decl., ¶¶ 32-33; Wong Decl., ¶ 22.  Given the City's prompt action and remedial measures, a finding of contempt is unwarranted.  *See Westside Shepherd Rescue of L.A. Inc. v. Pollock*, 2009 WL 10675198, at *2 (C.D. Cal. Aug. 27, 2009) (finding that since Defendants had cured the one instance of non-compliance with the injunction, "any sanction imposed [other than to compensate Plaintiff for losses caused by the violation] would not be for purposes of coercing compliance with the injunction, but would instead transform the contempt hearing into criminal contempt.").[8]

## V.      THERE IS NO BASIS NOR NEED FOR THE REQUESTED SANCTIONS

Even if the Court were inclined to find that these four isolated and now-remedied instances warranted a finding of contempt, the Court should decline to impose the extravagant sanctions that Plaintiffs seek—$45,205.58 a day until the City files a Declaration of Compliance by the Director and General Manager of LASAN.  Dkt. No. 88, 20:17-19; 21:10-14.  *See General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376,

---

[8] While Plaintiffs acknowledge the short-lived nature of the temporary notices, they contend that the "fleeting" nature of such temporary notices makes it "more difficult for Plaintiffs to hold the City accountable."  Dkt. No. 88, 15:14-17.  Any such concern, however, is allayed by the City's additional affirmative steps to ensure that no temporary signs referencing Bulky Items or the Bulky Item Provisions will be posted in the future.

1380-81 (9th Cir. 1986) (vacating $400,000 sanction, despite finding contempt, because record was insufficient to support the sanction as either compensatory or coercive); *see also Cuviello v. City of Oakland*, 2009 WL 3707014, at *5 (N.D. Cal. Oct. 19, 2009) ("Should a court find a party in contempt, the court has discretion in deciding whether to impose sanctions.") (Citation omitted).

The purpose of civil contempt sanctions is remedial, *i.e.,* to coerce obedience with the court order or compensate the party pursuing the contempt action for "actual loss" resulting from past non-compliance, or both. *See id.*; *see also Dual-Deck Video,* 10 F.3d at 696 ("award to defendants must be limited to their 'actual loss' for 'injuries which result from the noncompliance.'"). Where a sanction is instead intended to punish a party for past defiance of an order, that must be viewed as a criminal sanction, which requires the full panoply of heightened procedural protections afforded to criminal defendants. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Furthermore, "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded the opportunity to purge." *Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994); *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999) ("Civil contempt sanctions [] are only appropriate where the contemnor is able to purge the contempt by his own affirmative act and 'carries the keys of his prison in his own pocket'") (citation omitted).

## A. The Requested Monetary Fines Are Unwarranted

Plaintiffs' requested civil contempt monetary sanctions are unnecessary and inappropriate. First, on this record, where inadvertent, technical, and relatively minor violations were immediately remedied, and where there is no evidence—let alone clear and convincing evidence—of present contempt, there is no need to coerce compliance with sanctions. Contempt sanctions designed to be coercive have no purpose where a defendant has already come into at least substantial compliance with the order at issue, and imposition of any such sanction would be punitive in nature. *See Westside Shepherd Rescue of L.A. Inc. v. Pollock*, 2009 WL 10675198, at *2 (C.D. Cal. Aug. 27, 2009) (finding that since Defendants had cured the one instance of non-compliance with the

14

injunction, "any sanction imposed (other than to compensate Plaintiff for losses caused by the violation) would not be for purposes of coercing compliance with the injunction, but would instead transform the contempt hearing into criminal contempt.").  Here, none of the notices relied on by Plaintiffs in their motion are still posted, and the City has taken additional affirmative steps to ensure that the mistaken posting of pre-injunction notices will not occur in the future.  Orosco Decl., ¶¶ 32-33; Wong Decl., ¶ 22.

Second, even if sanctions were appropriate (and they are not), the amount of sanctions requested by Plaintiffs is wholly unreasonable.  *See United States v. Alfredoflores*, 628 F.2d 521, 527 (9th Cir. 1980) ("the district court should apply the least coercive sanction (*e.g.,* a monetary penalty) reasonably calculated to win compliance with its orders"); *see also Cuviello*, 2009 WL 3707014, at *5 (same).  "[I]n determining how large a coercive sanction should be the court should consider the 'character and magnitude of the harm threatened by continued contumacy, and the probably effectiveness of any suggested sanction'."  *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citation omitted).  A fine of $45,205.58 a day is not only unwarranted but would be disproportionate given the four isolated and short-lived violations that Plaintiffs concede "by their very nature are fleeting" (Dkt. 88 at 15:15-16), all of which have been corrected and none of which resulted in any harm to Plaintiffs.[9]  *See Facebook, Inc.*, 2017 U.S. WL 3394754, at *15 (finding the requested $500 per day fine was not "the least coercive sanction…reasonably calculated to win compliance"); *see also Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983) ($500 daily fine was improper as coercive sanction because, among other reasons, record did not demonstrate that it was imposed after a reasoned consideration by district court

---

[9] Plaintiffs characterize the requested daily monetary sanction as "coercive," but to the extent it could be characterized as compensatory, it would also be inappropriate because compensatory sanctions "must of course be based upon evidence of complainant's actual loss", and here, there has been none. *Cuviello*, 2009 WL 3707014, at *5; *In re Dual-Deck Video*, 10 F.3d at 696 ("the award to defendants must be limited to their 'actual loss' for 'injuries which result from the noncompliance.'") (Citation omitted).

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS

of "the character and magnitude of the harm threatened by continued contumacy, and the probably effectiveness of any suggested sanction in bringing about the result desired"). While Plaintiffs claim that this figure is equivalent to the amount allocated every day from the City's budget to LASAN for CARE+ comprehensive cleanups, they fail to explain why this would be an appropriate proxy for the least coercive sanction to exact compliance with the Preliminary Injunction; at best, it appears to be irrelevant, and at worst, it appears intended to be punitive. *See Whittaker Corp.*, 953 F.2d at 517 ("Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial.") (Citation omitted). Plaintiffs' request for monetary sanctions should be denied.

## B.   Posting of Remedial Notices Is Unnecessary

Given the lack of any evidence that any Plaintiff (or any person for that matter) acted in reliance on the notices raised in Plaintiffs' motion, it is unnecessary to impose the burden and expense of posting remedial notices. The only case Plaintiffs cite to support their request for remedial signs is an unpublished district court case that is inapposite. *See* Dkt. No. 88 at 21:21-24 (citing *Ramond v. Designers Fountain, Inc.*, 1993 WL 43561, at *4 (C.D. Cal. 1993)). In that case, the court ordered a party that indisputably violated an injunction against certain advertising to compensate the moving party for its actual loss as a result of the enjoined advertising, consistent with caselaw permitting an award of corrective advertising to compensate for damages caused by violations of an injunction against advertising that dilutes a trademark or impacts public perception with respect to the moving party, its goods or services. *See Ramond*, 1993 WL 43561, at *4. Unlike the violations alleged here, the court in that case expressly noted that the violations "were neither technical, inadvertent, nor accidental." *Id.* at *3.

## C.   Attorneys' Fees Are Unwarranted

Although a court may impose attorneys' fees after a finding of civil contempt, it is not mandatory. *See Innovation Ventures*, 2014 U.S. Dist. LEXIS 184735, at *51 ("courts may (but are not required to) impose attorneys' fees as an appropriate remedial fine after a finding of civil contempt."). Attorneys' fees are unwarranted here, where the

16

record shows that the City consistently took Plaintiffs' concerns seriously and acted quickly to investigate and respond to them. *See* Dermer Decl., ¶¶2-16; Myers Decl., Ex T. Despite the City's reasonable steps to comply with the Preliminary Injunction coupled with its prompt actions to address Plaintiffs' concerns (including rapidly deploying LASAN employees to affix overlays over thousands of existing permanent signs around the City), Plaintiffs elected to file a motion seeking contempt sanctions just hours after the City requested a meet-and-confer to address Plaintiffs' outstanding concerns. *See* Dermer Decl., ¶15. Instead, Plaintiffs filed their motion that same day. *Id.* The next day, Plaintiffs responded to the City's email by stating that the "motion for contempt and sanctions we filed yesterday speaks for itself on most of your points." *Id.* at ¶16. This not only violated Local Rule 7-3, it resulted in unnecessary motion practice and needlessly burdened the time and resources of the parties and the Court.[10]

---

[10] Plaintiffs dedicate several pages of their motion to attacking the credibility and integrity of the City's attorneys because of an alleged discrepancy between the number of existing-sign overlays reported by the City's attorneys (over 3,100) and the number counted by Plaintiffs' attorneys (finding a hundred or so overlays missing). *See* Dkt. No. 88 at 18-19. The City will not respond to these insults in kind, both because such attacks are unprofessional and because the record speaks for itself. Despite Plaintiffs' deliberate use of quotations when referencing the City's "swift investigation," the record shows that the investigations *were* swift—within days of Plaintiffs' raising concerns, the City's attorneys responded in a good-faith and detailed manner based on the information available to them at the time. *See* Dermer Decl., ¶¶2-16. As to the apparent discrepancy in the number of overlays, the City continues to investigate but it is possible that some may have fallen off or been deliberately removed. To the extent such discrepancies exist, they are evidence of the challenges inherent to the task of monitoring thousands of signs posted at hundreds of locations throughout the City, not of counsel's intent to "obfuscate" or deceive. Regardless, the record shows that the City made every effort to address and resolve Plaintiffs' concerns, and in fact, *did* address and resolve those concerns before Plaintiffs filed their motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for contempt and sanctions against the City should be denied.


Dated:   August 31, 2020            MICHAEL N. FEUER, City Attorney
                                     KATHLEEN KENEALY, Chief Assistant City Attorney
                                     SCOTT MARCUS, Senior Assistant City Attorney
                                     PATRICIA URSEA, Deputy City Attorney
                                     FELIX LEBRON, Deputy City Attorney


                                     By:    /s/   A. Patricia Ursea
                                            A. PATRICIA URSEA
                                            Deputy City Attorney
                                            Attorneys for Defendant
                                            CITY OF LOS ANGELES

18

CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE RE: CIVIL CONTEMPT AND SANCTIONS