MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
GABRIEL DERMER, Assistant City Attorney (SBN 229424)
**FELIX LEBRON, Deputy City Attorney (SBN 232984)**
**A. PATRICIA URSEA, Deputy City Atty (SBN 221637)**
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br><br>*Plaintiffs*,<br>vs.<br>CITY OF LOS ANGELES, a municipal entity,<br><br>*Defendant*. | Case No.: 2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br>**DECLARATION OF HOWARD WONG ISO DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO MOTION FOR OSC RE CONTEMPT AND SANCTIONS**<br><br>[Filed Concurrently with Opposition to Plaintiffs' Motion for Order to Show Cause Re: Civil Contempt and Sanctions; Declarations of Domingo Orosco and Gabriel Dermer]<br><br>Date: September 21, 2020<br>Time: 1:30 p.m.<br>Ctrm: 7D<br><br>**Judge: Hon. Dale S. Fischer** |

# DECLARATION OF HOWARD WONG

I, HOWARD WONG, hereby declare:

1. I am the Assistant Chief Environment Compliance Officer for City of Los Angeles Department of Public Works, Bureau of Sanitation's ("LASAN") Livability Services Division ("LSD") and Watershed Protection Division ("WPD"). I have personal knowledge of the facts contained herein, and if called to testify to the truth of these matters, I could and would competently do so.

2. I have worked for LASAN for 17 years. I started as an environmental compliance inspector and promoted to various levels of seniority before becoming the Assistant Chief Environmental Compliance Officer ("Assistant Chief") in November 2018. My responsibilities include management and oversight of LASAN environmental compliance officers/inspectors and staff supporting the City's Comprehensive Cleaning and Rapid Engagement Program ("CARE+" and "CARE"), Clean Streets LA ("CSLA"), Operation Healthy Streets ("OHS"), Homeless Outreach and Proactive Engagement ("HOPE"), and inspection, enforcement and emergency-response operations to mitigate unsanitary, hazardous, and/or dangerous conditions and cleanups the City's public right-of-way. As part of my responsibilities, I manage environmental compliance officers/inspectors and approve authorizations for posted cleanups and unposted enforcement and emergency-response operations. I review posting surveys, cleanup and enforcement reports, and health hazard assessments prepared by environmental compliance officers/inspectors for these operations. I provide training and instruction to environmental officers/inspectors on matters such as hazardous materials and characteristics of hazardous materials, use and maintenance of personal protection equipment, identifying and mitigating public health and safety standards, requirements for transporting and disposing of hazardous materials, procedures for removing and storing property, and other operating protocols.

3. I have completed numerous classes in environmental studies for an Associates of Science (A.S.) Degree. I have also completed the following courses during my career: OSHA Hazardous Waste Operations and Emergency Response (HAZWOPER); Federal DOT Hazardous Materials HM181 & HM 232; Peace Officer & Standards Training (POST Penal Code 832); OES-CSTI Hazardous Materials Technician; OES-CSTI Hazardous Materials Specialist; Investigation & Federal Law Enforcement Center (FLETC) Advanced Environmental Crimes Program; and FEMA Public Safety Sampling – WMD. I have extensive experience in the field analyzing hazardous material, making health-hazard determinations of porous, non-porous and fibrous materials, and mitigating unsanitary and hazardous conditions, including emergency-response enforcements and posted street cleanings throughout the City.

4. LASAN is the designated administrative agency for enforcement of Los Angeles Municipal Code ("LAMC") 56.11. LSD is an LASAN division implemented to support CARE, CARE+ and illegal-dumping cleanup programs. CARE+ provides public health services to encampments, including among other services, mobile showers, delivery of trash bins and regular trash pickup, outreach to connect homeless residents with services, and posted comprehensive cleanups of encampments. CARE provides resources to clean the public right-of-way and address enforcement and emergency-response to mitigate illegal dumping and/or items stored in the public right-of-way, including hazardous material, contraband, threats to public health and safety, items impeding accessibility under the Americans with Disabilities Act (ADA), or items blocking City operations or ingress/egress. CARE+ and CARE operations commenced throughout the City starting on or around October 1, 2019.

5. There are a total of 30 CARE teams within LSD, including 13 CARE+ and 17 CARE teams. LSD's CARE + team generally consist of two Environmental Compliance Inspectors ("ECI"), three Refuse Truck Collection Operators ("RCTO") and

four Maintenance Laborers ("ML") and these teams are typically scheduled in advance for posted comprehensive operations. There are also 17 CARE teams – one team for each of the 15 City Council Districts, one for the LA River, and one Citywide, and these teams generally consist to two ECIs, one RTCO, and one ML.  LSD uses a third-party company, Clean Harbors Environmental Services, Inc., for transporting and disposing of certain hazardous materials in accordance with state and federal regulations.  The CARE+ and CARE teams include Los Angeles Housing Services Authority ("LAHSA") outreach workers.  LAPD is generally not present during operations (except in Skid Row and Venice Beach), but LAPD is available to respond quickly if needed to provide for the safety and security of the CARE teams during cleanup operations.

6.   I previously submitted a Declaration in this case. (Dkt. No. 42-6, Declaration of Howard Wong filed in Support of Defendant City of Los Angeles' Opposition to Motion for Preliminary Injunction).  LASAN adopted LAMC 56.11 Standard Operating Protocols in April 2016, which LASAN amended in September 2018.  The SOPs outline the operating guidelines, designation of tasks, and scope of work for regulating personal property stored in public areas under LAMC 56.11.  Exhibit 1 attached to my prior Declaration attached a true and correct copy the LAMC 56.11 Standard Operating Protocols Amended September 2018 ("SOPs") (bates label CTY004209-4255) (Dkt. No. 42-6 at ¶8, Ex. 1 at p. 19-66).

7.   Paragraphs 8-21 of my prior Declaration discussed the LAMC 56.11 Standard Operating Protocols in April 2016, which LASAN amended in September 2018, LSD's posted comprehensive cleanups under the SOPs, and LSD's procedures for determinations of health and safety hazards under the SOPs.  (Dkt. No. 42-6 at ¶¶ 8-21). Paragraphs 41-46 of my Declaration addressed LSD's operations for addressing bulky items under the SOPs.  (Dkt. No. 42-6, ¶¶ 41-46).  Paragraphs 10 and 45 of my Declaration addressed the form of paper notice for the City's posted comprehensive

cleanups under CARE+ and an example of LASAN's existing permanent signage posted in the City.  (Dkt. No. 42-6 at ¶¶ 10, Ex. 2 at p.67-68; Dkt. No. 42-6 at ¶ 45, Ex. 14 at 262-263).

8.  On April 13, 2020, the Court issued an Order Granting Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 38).  The Preliminary Injunction stated that "The City of Los Angeles, and its agents and employees, are enjoined from doing any of the following: (1) Enforcing Section 56.11(3)(i) of the Los Angeles Municipal Code; (2) Enforcing Section 56.11(10)(d) of the Los Angeles Municipal Code; (3) Posting signs, notices, or other public information stating that the City will enforce Sections 56.11(3)(i) or 56.11(10)(d) of the Los Angeles Municipal Code."

9.  LASAN implemented adjustments to the protocols for addressing bulky items in order to comply with the Preliminary Injunction, and instructed all LSD personnel accordingly regarding these adjustments.  LASAN could remove and discard a bulky item only if an ECI determined that the item constituted a health and hazard and documented the hazard under SOP No. 7.  A bulky item that was blocking ADA access, or ingress/egress, could be removed but had to be stored for a minimum of 90 days unless the item was contaminated or hazardous material.  If a bulky item could not be stored, it was not to be removed but could be moved to provide access under SOP No. 5 for ADA and ingress/egress issues.

10.  LASAN also revised the form of paper notice contained in Appendix 2 of the SOPs that were submitted in Exhibit 1 to my prior Declaration.  (Dkt. No. 42-6 at ¶8, Ex. 1 at p. 53-55).  The revised paper notice deleted any reference to LAMC 56.11(3)(i) and the immediate removal and discard of bulky items.  The revised English and Spanish versions of these revised forms are attached as **Exhibit A**.  (Compare Ex. A and Dkt. No. 42-6 at ¶8, Ex. 1 at p 53-55).

11.  At the time the Preliminary Injunction issued, LSD's comprehensive

cleanups operations under CARE+ were suspended because of certain emergency orders and City Council actions taken on March 17, 2020 relating to COVID-19. After March 17, LSD conducted spot cleanings to remove trash, debris, and hazardous materials, and provided additional services to assist the City's homeless population, including deployment and servicing of portable toilet stations, handwashing stations, trash receptables, and mobile hygiene units for showering.

12. To the extent bulky items were encountered during such spot cleanings they were treated the same as all other personal property irrespective of size for enforcement of other provisions under LAMC 56.11 addressing immediate threats to public health and safety, ADA access, and blocking ingress or egress consistent with the instructions referenced above.

13. On July 29, 2020, the City Council adopted a motion lifting the suspension of comprehensive CARE+ cleanups within the City's A Bridge Home temporary shelters ("ABH") and the Special Enforcement Cleaning Zones ("SECZ") around the ABH. The Declaration of Domingo Orosco discusses in more detail the City's ABH/SECZ areas.

14. Before the injunction issued, LASAN posted permanent signage with the ABH/SECZ areas. My prior Declaration included a picture reflecting an example of the permanent sign posted before the Preliminary Injunction. (Dkt. No. 42-6 at ¶ 45, Ex. 14 at p. 262-263). After the injunction issued, LASAN implemented a new form of permanent ABH/SECZ signage omitting any references to LAMC 56.11(3)(i) or bulky items. Examples of the post-injunction permanent signs are attached to the Declaration of Domingo Orosco.

15. In addition, on July 29, 2020, LSD personnel started placing overlays on permanent ABH/SECZ signage posted before April 13, 2020 to conceal references to LAMC 56.11(3)(i) or bulky items. Examples of these overlays are also attached to the Orosco Declaration.

16. On July 31, 2020, LSD conducted a comprehensive cleanup at the Beacon

ABH/SECZ.  The Beacon ABH/SECZ has permanent signage posted in English and Spanish throughout the area.

17.     In my prior Declaration, I submitted the form of paper notice for comprehensive cleanups conducted under CARE+.  (Dkt. No. 42-6 at ¶¶ 10, 45, Ex. 2 at p. 67-68).  This same form of paper notice was posted within the Beacon ABH/SECZ on July 30, 2020.  The CARE+ notice that was posted on July 30 has not been used in other comprehensive cleanups that have occurred with other ABH/SECZ areas.  The form of the paper CARE+ notice was revised to remove all references to bulky items.  **Exhibit B** contains a true and correct copy of the revised form of the paper notice of major cleaning for CARE+ comprehensive cleanings.

18.     I was present at the July 31, 2020, Beacon ABH/SECZ cleanup.  LSD did not enforce LAMC 56.11(3)(i) or (d)(10) during the July 31 cleanup.  Items identified as contaminated or hazardous materials on health hazard checklists were removed and disposed accordingly irrespective of the size of the item.  Other personal property and items removed from the area were stored irrespective of size, including items that would be deemed a "bulky item" under LAMC 56.11(3)(i) because of the item's size.  As part of the comprehensive cleanup, LSD provided enhanced services for unhoused residents in the area, including Mobile Hygiene Units, a Tent Exchange, distribution of sanitary kits containing masks, gloves, and hand sanitizer, Mobile COVID-19 testing, and LAHSA outreach.

19.     On August 4, 2020, LSD conducted another comprehensive cleanup within the City's Hope ABH/SECZ located in the South LA area, and on August 7, 2020, conducted a comprehensive cleanup within the City's Eubank ABH/SECZ located in Wilmington.  The Hope ABH/SECZ and Eubank ABH/SECZ both had multiple permanent signs posted in English and Spanish located within the area.  LSD's enhanced services were provided during both comprehensive cleanup operations.

20.     During the surveys that occurred one to two days before each operation, an

ECI posted additional paper notices (beyond the permanent signs posted in those areas) in the form of Exhibit A on items designed to be used as shelters.  The notices were not intended to convey that LASAN would be enforcing the bulky item provision under LAMC 56.11(3)(i), but rather to emphasize to the persons who may have been using the items as a shelter that a cleaning was scheduled to take place the next day, and the items would be subject to removal at that time.  The notices stated that if the items were removed, they would be stored for 90 days unless they posed a health and safety risk; it also provided the contact information for the storage facilities.  This same notice was posted an additional time during a comprehensive cleanup operation at the Shrader ABH/SECZ that occurred on August 12, 2020.

21. During the cleanup operations, items identified as contaminated or hazardous materials on LSD's health hazard checklists were removed and disposed accordingly irrespective of the size of the item.  Other personal property removed from the area, including bulky items, were stored for owner retrieval.

22. LSD suspended the use of the revised paper notices reflected in Exhibit A after concerns were raised out of an abundance of caution and to avoid any confusion about LASAN's compliance with the injunction.  LSD implemented further adjustments to the protocols suspending the use of the notices, confirming the use of the revised CARE+ notice for comprehensive cleanups, and the need to continue replacing removed or missing overlays on pre-injunction ABH/SECZ permanent signage.

23. I have reviewed a copy of the video that was lodged with the Court and referenced as Exhibit M to the Declaration of Shayla Myers.  The video reflects a blue tent being removed during the Hope ABH/SECZ cleanup.

24. The blue tent reflected in the video was located at 25th and Main Street in the Hope ABH/SECZ and is one of the structures that had a paper notice posted on August 3, 2020.  Attached as **Exhibit C** are true and correct copies of pictures taken in or around the tent by during LSD's comprehensive cleanup operation.  The tent was

contaminated with rodent feces and urine, contained a bloody mattress along with contaminated clothing, and was located near the gutter curb on the sidewalk that was contaminated with sewage. Attached as **Exhibit D** is a true and correct copy of the Health Hazard Checklist documenting the health hazards for this tent location during the August 4, 2020 comprehensive cleanup at the Hope ABH/SECZ.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this Declaration was executed on August 31, 2020, at Los Angeles, California.

HOWARD WONG