Shayla Myers (SBN: 264054)
Mallory Andrews (SBN: 312209)
Alex Flores (SBN 312209)
LEGAL AID FOUNDATION OF LOS ANGELES
7000 S. Broadway, Los Angeles, CA 90003
Tel.: (213) 640-3983
Email(s): smyers@lafla.org
    mbandrews@lafla.org
    aeflores@lafla.org

*Attorneys for Gladys Zepeda, Miriam Zamora,
Ali El-Bey, James Haugabrook, Pete Diocson Jr.,
Marquis Ashley, and Ktown for All.*

[Additional Attorneys on Next Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANET GARCIA, et at.,<br><br>　　　　Plaintiff(s),<br><br>　　vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>　　　　Defendant(s). | CASE NO. 2:19-cv-06182-DSF-PLA<br><br>Assigned to Judge Dale S. Fischer<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT AND SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Catherine Sweetser, Objections to Defendants' Evidence Filed concurrently]<br><br>**Date: September 21, 2020<br>Time: 1:30 p.m.<br>Ctrm: 7D** |

1  Catherine Sweetser (SBN 271142)
2  Kristina Harootun (SBN 308718)
3  John Washington (SBN 315991)
   SCHONBRUN SEPLOW HARRIS
4  HOFFMAN & ZELDES LLP
5  11543 West Olympic Blvd.
   Los Angeles, CA 90064
6  Telephone: (310) 396-0731
7  Email: csweetser@sshhzlaw.com
8         kharootun@sshhzlaw.com
          jwashington@sshhzlaw.com
9

10 *Attorneys for Plaintiffs*.

11
   Benjamin Allan Herbert (SBN 277356)
12 William L. Smith (SBN 324235)
13 KIRKLAND & ELLIS LLP
   555 South Flower Street
14 Los Angeles, CA 90071
15 Telephone: (213) 680 8400
   Email: benjamin.herbert@kirkland.com
16        william.smith@kirkland.com
17
18 Michael Onufer (SBN 300903)
   KIRKLAND & ELLIS LLP
19 2049 Century Park East
20 Los Angeles, CA 90067
   Telephone: (310) 552-4200
21 Email:  michael.onufer@kirkland.com
22
23 *Attorneys for Plaintiffs Ktown for All, Janet Garcia,*
   *Peter Diocson Jr., Marquis Ashley, and Ali El-Bey.*
24

25
26
27
28

---

PLAINTIFFS' REPLY IN SUPPORT OF ORDER TO SHOW CAUSE RE:
CIVIL CONTEMPT AND SANCTIONS

## Table of Contents

I. THE CITY DID NOT SUBSTANTIALLY COMPLY WITH THIS COURT'S ORDER ...................................................................................................................1

    a. Substantial Compliance is Determined on a Provision-by-Provision Basis, Not the Injunction as a Whole ......................................................1

    b. Because the City Failed to Take All Reasonable Steps to Comply With The Preliminary Injunction, Substantial Compliance is Not a Defense ...2

        i. Notices of Major Cleanings ..............................................3
        ii. Notice of Bulky Items .......................................................5
        iii. The Permanent Signs ......................................................8

    c. A Finding of Contempt and Sanctions is Necessary to Prevent Further Violations ....................................................................................................8

II. PLAINTIFFS' REQUEST FOR SANCTIONS IS CALIBRATED TO COERCE THE CITY TO ABIDE BY THE COURT'S INJUNCTION ............9

    a. The Requested Monetary Sanctions Are Warranted To Ensure Compliance ..........................................................................................................9

    b. The Requested Remedial Sanctions are Appropriate ............................11

III. CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

*Federal Cases*

*Dep't of Fair Empl. and Housing v. Law School Admissions Council, Inc.*,
  2018 WL 1156506 (C.D. Cal. 2018) ...................................................................2, 3

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
  702 F. 2d. 770 (9th Cir. 1983) ................................................................................10

*Flores v. Sessions*,
  394 F. Supp. 3d 1041 (C.D. Cal. 2017) ....................................................................1

*General Signal Corp. v. Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986) ............................................................................2, 8

*Harbor Breeze Corp. v. Newport Landing Sportfishing Inc.*,
  2020 WL 816135 (C.D. Cal. 2020) .........................................................................5

*Int'l Union v. Bagwell*,
512 U.S. 821 (1994) ................................................................................................10

*Labor/Community Strategy Center v. Los Angeles County*,
564 F.3d 1115 (9th Cir. 2009) ..................................................................................3

*Left Coast Wrestling LLC v. Dearborn Int. LLC.*
2019 WL 3493992 (S.D. Cal. 2019) ........................................................................2

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ........................................................................3, 5, 6

*On Command Video v. Lodgenet Ent. Corp.*,
976 F. Supp. 917 (N.D. Cal. 1997) ..........................................................................1,

*Perry v. O'Donnell*,
759 F.2d 702 (9th Cir. 1985) ..................................................................................11

# **TABLE OF AUTHORITIES – CONT'D**

**Page(s)**

*Federal Cases*

*Rouser v. White*,
 825 F.3d 1076 (9th Cir. 2016) ...................................................................................1

*United States v. Asay*,
 614 F.3d 655 (9th Cir. 1980) .....................................................................................4

*United States v. Ayres*,
 166 F.3d 991 (9th Cir. 1999) .............................................................................10, 11

*United States v. United Mine Workers*,
 330 U.S. 258 (1947) ...................................................................................................7

*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*,
 689 F.2d 885 (9th Cir. 1982) .....................................................................................4

*Wolfard Glassblowing Co. v. Vanbragt, Mary Vanbragt d/g/a Zodiac Expressions*,
 118 F.3d 1320 (9th Cir. 1997) ...................................................................................1

**Page(s)**

*Other Sources*

Los Angeles Municipal Code § 56.11 .....................................................................3, 5,

Local Rule 7.3 .............................................................................................................12

# MEMORANDUM OF POINTS AND AUTHORITIES
## I. THE CITY DID NOT SUBSTANTIALLY COMPLY WITH THIS COURT'S ORDER

This is not a close case. The City concedes, as it must, that it posted "errant," "erroneous," and "faulty" notices, *see* City of Los Angeles's Opposition to Plaintiffs' Motion for Order to Show Cause ("Opp.") at 4, 9, 10, 11 and fn. 6, and that these notices failed to comply with the preliminary injunction. The City asks this court to excuse these violations because the City "substantially complied" with the Court's order. While substantial compliance may be a defense to a finding of contempt in some instances, this is not one of those instances.

### a. Substantial Compliance is Determined on a Provision-by-Provision Basis, Not the Injunction as a Whole

The City argues the Court should not find it in contempt because the Court should "review the party's actions in accordance with the purpose of the order." Opp. at 9 (citing *On Command Video v. Lodgenet Ent. Corp.*, 976 F. Supp. 917, 938 (N.D. Cal. 1997)). In the City's view, doing so would excuse the City's violation of the notice provision, in light of its purported compliance with the rest of the injunction. But this is decidedly not the rule.[1] *See e.g.*, *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016) (in analyzing substantial compliance, provisions of an order are independent obligations, each of which must be satisfied before there can be a finding of substantial compliance); *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1049 (C.D. Cal. 2017). A rule that allows a party to rely on compliance with some provisions of an order as an excuse to avoid compliance with other provisions would reduce the Court's order to "merely a set of guidelines from which [the City] could choose which

---

[1] The City relies solely on *On Command Video* to support this position, but the quoted section comes from the magistrate's recommendation to the district court, but the district court actually rejected the magistrate's analysis and recommendation on the contempt issue and found instead that the plaintiff *was* in contempt. *See* 976 F. Supp. at 922 (citing *Wolfard Glassblowing Co. v. Vanbragt, Mary Vanbragt d/g/a Zodiac Expressions,* 118 F.3d 1320, 1322 (9th Cir. 1997).

provisions to follow and which to disregard." *Dep't of Fair Empl. and Housing v. Law School Admissions Council, Inc.*, 2018 WL 1156506 at *16 (C.D. Cal. 2018) (evaluating each of the provisions of the consent decree separately to determine whether defendant complied with the order). A party has an obligation to comply with each of the provisions of a court order, and the failure to do so can be the basis for a finding of contempt. *See e.g., Left Coast Wrestling LLC v. Dearborn Int. LLC.,* 2019 WL 3493992 at *3 (S.D. Cal. 2019) (allegations that defendant is in contempt for violation of specific provisions requires court to "evaluate each term and determine whether Plaintiff has presented clear and convincing evidence of a violation). Plaintiffs do not move for contempt based on violations of the first and second provisions of the injunction, only the third.[2] The City's self-serving declarations purporting to show compliance with some of the provisions of the injunction do not justify its failure to comply with this provision of the injunction.

### b. Because The City Failed to Take All Reasonable Steps to Comply With The Preliminary Injunction, Substantial Compliance is Not a Defense

The City also misunderstands the nature of the "substantial compliance" defense, which is a defense to a finding of contempt only "[i]f a violating party has taken all reasonable steps to comply with the court order." In that case, "technical or inadvertent violations of the order will not support a finding of civil contempt." *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986)

---

[2]Because Plaintiffs move for contempt only based on violations of the third provision of the preliminary injunction, Plaintiffs need not put forth clear and convincing evidence that the City removed or destroyed individuals' items because they were bulky. On the other hand, the lynchpin of the City's opposition to Plaintiffs' motion for contempt, is that *"no bulky items were removed based on their size."* Opp. at 2 (emphasis in original). The only evidence the City puts forward are declarations from Howard Wong and David Orosco who have no personal knowledge to support their conclusory statements about the City's compliance with the injunction. The declarations utterly lack foundation and do not establish the City has complied with the injunction. *See generally* Plaintiffs Objections to Defendants' Exhibits.

1  (violations of a court order not excused where the contempt was based on a mistake
2  but reasonable inspection would have revealed the mistake).  "A contemnor in
3  violation of a court order may avoid a finding of civil contempt only by showing it
4  took *all* reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085,
5  1096 (9th Cir. 2016) (emphasis in original). "[R]easonable efforts are in fact a
6  necessary component of substantial compliance." *Dep't of Fair Empl. and Housing*
7  2018 WL 1156506 at *16.[3]

8  In this case, the City cannot show it took all reasonable steps to comply with
9  the provision of this Court's preliminary injunction, which enjoins the City from
10 "[p]osting signs, notices, or other public information stating that the City will enforce
11 Sections 56.11(3)(i) or 56.11(10)(d) of the Los Angeles Municipal Code." Order
12 Granting Plaintiffs' Motion for Preliminary Injunction, Dkt. 58 ("Injunction") at 30.
13 On the contrary, the City actively took steps that violated this injunction.

### i. Notices of Major Cleanings

15 First, the City provides no explanation for why it failed to update the Notice of
16 Major Cleaning signs before it resumed comprehensive cleanups on July 31, 2020,
17 more than three months after this Court issued its preliminary injunction. The City had
18 more than four weeks' notice that the cleanups were likely to resume before the City
19 Council voted on July 29, 2020 to resume them. *See* RJN, Exh. 4. While the City
20 suggests that, at the time the cleanups resumed, LA Sanitation employees were also
21 updating the metal signs around the City that they had not updated. But this does not
22 explain, let alone excuse the City's failure to update the paper notices before it
23 resumed the comprehensive cleanups, an event whose timing was wholly in the

---

[3] *Labor/Community Strategy Center v. Los Angeles County*, 564 F.3d 1115 (9th Cir. 2009) is not to the contrary.  The "imperfect compliance" referred not to contempt, but rather whether the county fulfilled its obligations under a consent degree, when determining whether to extend the degree.  The standard in those circumstances is different; in denying contempt sanctions, the court relied on a "good faith interpretation of the order" standard.  *Id.* at 1124.

control of the City. If LA Sanitation needed more time to ensure the City complied with the injunction before resuming cleanups, there was no reason the City could not or should not have taken that time. The City had not conducted cleanups for four months, and as the City points out, the City Council itself declined to authorize the cleanups on an emergency basis. *See* Opp. at 17 n. 10. The City still moved forward without ensuring the City complied with this Court's order. This is not a defense to contempt. *See United States v. Asay,* 614 F.3d 655, 660 (9th Cir. 1980) (contempt not excused when "person charged is responsible for the inability to comply").

The City admits the Environmental Compliance Officer "used an outdated, pre-injunction form of the paper CARE+ comprehensive cleanup notice." [4] Opp. at 6. But this is misleading. This is not a situation where the City made efforts to update the notices but a third party continued to use the old version of the notices. *See e.g., Vertex Dist. Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (1982) (district court did not abuse its discretion in finding defendant made every reasonable effort to comply with a court order where the only violation of order limiting the use of a trademark was in a single line entry in the Canoga Park-Reseda-Agoura Yellow Pages Directory, defendant moved quickly to correct the error as soon as it was discovered more than six months prior to Plaintiffs' contempt motion). Nor is it even a situation where, because of a technical glitch or even just a simple mistake, the city worker printed and used an "outdated" version instead of the updated version.[5] *See e.g.,*

---

[4] The City continues to assert that the Notice of Major Cleanings were posted to "provide additional notice of the anticipated cleanup beyond the permanent signage in the area." Opp. at 6. But as previously discussed, the notices were the *only* notice of that day's cleanups. The City does not address this discrepancy, but notably, the City's evidence also does not support the City's contention that the notices were posted to provide "additional notice." *See e.g.*, Orosco Dec. ¶ 31.

[5] Prior to moving for contempt, Plaintiffs' counsel repeatedly asked counsel for the City to clarify whether the use of the Notices of Major Cleanings was a case of a city worker accidentally posting the wrong version of a notice that had actually been updated, and what steps, if any, were taken to comply with the notice provision of the injunction, before the offending notices were posted. The City did not respond.

*Harbor Breeze Corp. v. Newport Landing Sportfishing Inc.*, 2020 WL 816135 at *7 (C.D., Cal. 2020) (denying application for contempt where the one violation of the preliminary injunction was caused by a single line of errant code that prevented the changes made by defendants from actually appearing on the mobile version of the company's website). On the contrary, the City's opposition makes clear that the City did not take any steps to update the notices until August 7, 2020, after the City violated this Court's order and only after the City received correspondence from Plaintiffs, pointing out they were aware the City had done so. *See* Orosco Dec. ¶ 32.

Even if the posting of the Notices of Major Cleanup with the offending language could be considered a "technical violation," the City's evidence shows it took no steps to prevent this violation, let alone all reasonable steps, and as such, it cannot avail itself of the substantial compliance defense. *See Kelly*, 822 F.3d at 1096.

### ii.  Notice of Bulky Items

The City collapses both the Notice of Major Cleaning and the Notice of Bulky Item together for purposes of arguing the City's error in posting them should not give rise to a finding of contempt, but the Notice of Bulky Items raises a number of additional concerns about the City's compliance with the injunction. The Notice of Bulky Items, like the Notice of Major Cleanings, explicitly states that Bulky Items are prohibited and that "failure to remove this bulky item within 24 hours will subject it to removal by the City." *See* Myers Dec. Dkt. 89, Exh. L; *see also* Wong Dec. Exh. A ("Notice of Bulky Item"). The notice further states that a person cannot cure the violation simply by "moving this bulky item to another public area." *Id.* In other words, the notices explicitly state that the City intends to do exactly what other provisions of the Court's injunction prohibit the City from doing: remove items from the public right of way *because* they are bulky.

Howard Wong's explanation of the Notice of Bulky Items does not help the City. According to Mr. Wong, the "notices were not intended to convey that LA SAN would be enforcing the bulky item provision under LAMC 56.11(3)(i), but rather to

emphasis to the persons who may have been using the items as a shelter that a cleaning was scheduled to take place the next day, and the items would be subject to removal at that time." Wong Dec. ¶ 7. Conveying to a person that their item is "bulky" and the item is subject to removal *is conveying* that LASAN will be enforcing the bulky item provision under LAMC 56.11(3)(i).

The Notice of Bulky Items is fundamentally different from a cleanup notice: the purpose of the notices of cleanups is to inform people that the City is conducting a cleanup. They inform people that they need to move their belongings from a discrete area for the duration of the cleanups. On the other hand, the whole purpose of the Notice of Bulky Items is to facilitate enforcement of the Bulky Item Provision. The notice states explicitly that Bulky Items are prohibited, that the items will be removed in 24 hours, and most importantly, that a person cannot cure the violation by "moving this bulky item to another public area." Notice of Bulky Item. As such, one conveys that the City is conducting a cleanup and the other conveys that the City is intending to violate this Court's preliminary injunction. Posting individualized notices on structures that the "item would be subject to removal at the time of the cleanup," Opp. at 6, is precisely the problem.

Significantly, unlike the Notices of Major Cleaning which the City failed to update to comply with the preliminary injunction, Mr. Wong confirms in his declaration that these notices were revised *after* this Court issued the preliminary injunction, in conjunction with LA Sanitation "implement[ing] adjustments to the protocols for addressing bulky items in order to comply with the Preliminary Injunction." Wong Dec. ¶ 9. Mr. Wong describes the updates to the notice as having "deleted any reference to LAMC 56.11(3)(i) and the "immediate removal and discard of bulky items."[6] *Id*. ¶ 10. But these changes did not render the Notice of Bulky

---

[6] The City makes a similar reference in a footnote in its opposition, noting that "neither notice stated that Bulky Items would be destroyed or referenced the Bulky Item Provision." Opp. at 3, fn 1.

Items compliant with the injunction.[7] The Court enjoined enforcement of the Bulky Item Provision, which includes both the removal and the destruction of property because it is bulky. Injunction at 30. Interpreting this Court's injunction to allow the removal, just not destruction of Bulky Items, as Sanitation appeared to have done when it revised the notices, is both unsupported by the plain language of this Court's order and is inconsistent with the City's own legal interpretation of the injunction.[8]

The City's revision of the notices after entry of the injunction and the posting of multiple copies of these notices on three separate occasions throughout three different neighborhoods was deliberate and considered, and it cannot be justified as "technical or inadvertent." Moreover, the City continued to use the notices even after the City's attorneys explicitly represented to Plaintiffs' counsel that it had stopped. *See* Myers Dec. Exh. Q. All these factors defeat the City's defense that it substantially complied with the injunction. In fact, it is precisely because the notice was deliberately created and deployed that a finding of contempt and sanctions is warranted.

---

[7] The changes to the notice are however consistent the concerns raised by Plaintiffs but dismissed by the City's attorneys in June 2020 and with Mr. Buscaino's erroneous representation about the City's authority to remove Bulky Items with notice. *See* Myers Dec. ¶¶ 9-11, 16. The City dismisses Councilmember Buiscano's comments as the statements of a single elected official, Opp. at 11, n. 6, but the City's Answer to the Second Amended Complaint show that, in addition to voting on policy measures, council offices are involved in and play a role in the scheduling and deployment of resources for of cleanups. *See e.g.,* Answer, ¶¶ 70, 82, Dkt 75.

[8] The City has appealed this Court's order, and its primary argument to the Ninth Circuit is that this Court erred in enjoining the City from both removing Bulky Items as well as destroying them. *See e.g.*, RJN, Dkt. 90, Exh. 11, p 60. The City is free to make this argument to the Court of Appeals. But, after arguing that this Court erred because it enjoined the City from removing Bulky Items, the City cannot argue now, in an attempt to avoid a finding of contempt, that the City interprets the injunction to actually allow the City to remove, just not destroy, Bulky Items. Nor is the City free to simply ignore the injunction while it is on appeal. *United States v. United Mine Workers of America*, 330 U.S. 258, 293–94 (1947).

### iii. The Permanent Signs

The City spends a considerable amount of time defending its compliance with the preliminary injunction on the ground that the permanent signs placed around the city since the injunction went into effect comply with this injunction and also, after receiving a demand letter from Plaintiffs, undertook to update the notices that were currently posted around the City. Plaintiffs do not dispute this; however, the fact that one of the City's notices is compliant does not excuse the City's failure to conform the rest of the City's notices. Indeed, the fact that the City removed offending language about Bulky Items undermines any argument the City could have made that the paper notices did not violate the injunction.[9]

### c. A Finding of Contempt and Sanctions is Necessary to Prevent Further Violations

In an attempt to persuade the Court that a finding of contempt is unnecessary, Counsel for the City assert that the City will use only the updated Notice of Major Cleaning and will stop using the Notice of Bulky Items. Given the history of the City's representations by and through their counsel, this is insufficient. In fact, the declarations submitted by LA Sanitation personnel, along with the statements by members of the City Council—the people who are actually responsible for implementing LAMC 56.11 and complying with the Court's preliminary injunction--

---

[9] Plaintiffs largely do not take issue with the City's efforts to update the permanent signs; it is clear that, with the exception of the Raymer signs, once the City undertook to update the signs, any tape that has fallen off constitutes the sort of "technical or inadvertent violations of the order" that should not form the basis of a motion for contempt. *General Signal Corp.* 787 F.2d at 1379. However, the City's continued misrepresentations and lack of clarity about the extent to which the City has actually updated these signs evidence why court intervention is necessary. *See e.g., infra* n. 10. Finally, it is remarkable that although the City conducted "swift" investigations and confirm all signs had been updated, no sanitation workers had violated the injunction, etc., in two weeks, counsel for the City has been unable to confirm whether the Raymer signs identified by Plaintiffs' counsel were in fact updated prior to August 10, 2020. *See* Opp. at 21, n. 10.

do not share this understanding. Mr. Wong states only that "LSD suspended the use of the revised paper notices after concerns were raised *out of an abundance of caution and to avoid any confusion about LASAN's compliance with the injunction.*" Wong Dec. ¶ 22 (emphasis added). Similarly, Mr. Orosco states that, "to avoid further disputes or any confusion about the City's non-discontinued enforcement of LAMC 56.11(3)(i) and (10)(d), LSD suspended the use of paper signs referencing 'bulky items' on large items used as shelters." Orosco Dec. ¶ 33. Far from an acknowledging that the City is enjoined from removing bulky items or that the use of the notices violates the Court's order, Mr. Wong and Mr. Orosco's use of the term "suspended" and their representation that the City stopped using the notices "out of an abundance of caution" and to "avoid dispute" suggests that LA Sanitation employees do not fully appreciate the import of the Court's injunction or its obligations to abide by it. This is precisely why a finding of contempt is necessary to prevent further violations and is warranted here.

## II. PLAINTIFFS' SANCTIONS REQUEST IS CALIBRATED TO COERCE THE CITY TO ABIDE BY THE COURT'S INJUNCTION

### a. The Requested Monetary Sanctions Are Warranted to Ensure Compliance

Plaintiffs request per diem sanctions against the City until the it provides a declaration under penalty of perjury from the General Manager of LA Sanitation, attesting that LA Sanitation will take the requisite actions. The City takes issue with both the request for monetary sanctions and the amount proposed. Given the facts and circumstances of the case, however, both are reasonable.

First, there is no merit to the City's argument that sanctions are unwarranted or unnecessary here, simply because the City states that it has already "taken additional affirmative steps to ensure that the mistaken posting of pre-injunction notices will not occur in the future." Opp. at 15. As with many of the City's statements, this phrasing creates ambiguity about the City's intentions. For example, it is not clear if this

includes a commitment not to post the Notice of Bulky Items, since the notice was amended post-injunction. As discussed above, moreover, neither Mr. Orosco or Mr. Wong definitively acknowledge the City's contemptuous actions or express a willingness to unequivocally abide by the Court's injunction. Given the City's continued hedging, Plaintiffs are entitled to an actual, unequivocal statement of compliance from the City, submitted under penalty of perjury.

In addition, the City has made numerous representations in the past that the City would not take further actions in violation of the Court's order, and yet it did just that. For example, on August 10, 2020, counsel for the City represented that the City would not use the Notice of Bulky Items again, and yet, it is undisputed that Sanitation did so on August 12, 2020. Similarly, in defense of the City's willingness to take actions to address Plaintiffs' concerns, the City's attorneys specifically represented that all "3,106" permanent signs around the dozen or so existing A Bridge Home shelters with special enforcement zones had been updated; upon inspection, at one of the sites, there were approximately 150 signs that had in fact not been updated. Since then, Mr. Orosco indicated that upon further inspection, pre-injunction signs at around 13% of locations did not have overlays.[10]

Second, there is no merit to the City's objection that the requested sanctions are intended to punish, rather than prevent further violations. "One of the paradigmatic civil contempt sanctions 'is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'" *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (quoting *Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994)). Plaintiffs specifically request the fine be paid directly to the court, rather than to Plaintiffs. *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F. 2d 770, 779 (9th

---

[10] The City provides no more details about why signs at 104 of the City's 797 locations were missing overlays and needed further work. *See* Orosco Dec. ¶ 27. It is unclear whether the tape was removed, as was the case with some errant signs, or if the City identified addition signs that had never been updated, as with the Raymer A Bridge Home site. *See* Myers Dec. ¶¶ 34-36 and Exh. R.

Cir. 1983). Moreover, Plaintiffs request the termination of sanctions be tied to the submission of a declaration by the General Manager of LA Sanitation; as such, the City "carries the keys of [its] prison in its own pocket." *Ayres*, 166 F.3d at 995.

Finally, the amount sought by Plaintiffs, while significant, is also calibrated to the account for the size of the City's budget and the specific department causing the harm. The requested sanctions represent just a tiny fraction of LA Sanitation's overall budget (.01%) and an even smaller fraction of the City's overall budget (.00049%). Given the size of the City and its budget, Plaintiffs (or the City) would be hard pressed to identify any amount of a per diem sanction that would "take into account the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant," that would not, at first blush appear exorbitant. The amount requested, moreover, did not come out of thin air. It is amount of money LA Sanitation expends per day to conduct cleanups. Accordingly, under the circumstances, this request is both reasonable. and reasonably calculated to achieve compliance with the Court's order.

### b. The Requested Remedial Sanctions are Appropriate

Plaintiffs also seek two forms of remedial sanctions: 1) the posting of remedial notices in the locations where the City posted the errant notices, informing individuals that the City is enjoined from enforcing the Bulky Item Provision; and 2) attorneys' fees. Both are called for here.

First, the City objects to the burden and expense of posting remedial notices. But the City routinely posts notices throughout the City, announcing cleanups. Indeed, the burden on the City of posting these notices was not too much to have prevented it from posting the notices in violation of the injunction. Plaintiffs, moreover, request only that the City post the notices in the neighborhoods where the City posted the faulty notices. As such, it is tailored to remedy the harm caused by the violation of the injunction, and the City should not now be heard to complain about the expense.

Second, Plaintiffs seek reasonable attorney's fees. Fees are routinely ordered as remedial measures in contempt motions. "Attorney's fees frequently must be expended to bring a violation of an order to the court's attention." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). In this instance, Plaintiffs made numerous attempts to address the issue without court intervention. Even though the City agreed it had violated the injunction, the City still refused to provide Plaintiffs with a declaration from anyone in LA Sanitation attesting to the scope of the violations and the remedial measures it had taken.[11] Under these circumstances, Plaintiffs were justified in seeking court intervention, and are now justified in seeking attorneys' fees as a remedial measure to compensate for the harm caused by the City's violations.

### III.   CONCLUSION

The City concedes it violated this Court's preliminary injunction on a number of occasions. Because the City failed to take all reasonable steps to comply with the preliminary injunction, a finding of contempt is warranted, and because the City has evidenced its willingness to continue to violate the order, sanctions are warranted as well.

---

[11] The City accuses Plaintiffs of violating their Rule 7.3 obligations. *See* Opp. at 4, 17. The record shows otherwise. *See* Myers Dec. ¶¶ 26-32, 38-39 and Exh. O-Q, S, T. Plaintiffs attempted in good faith to work with counsel for the City to avoid court intervention, including meeting and conferring and thoroughly discussing "the substance of the contemplated motion and any potential resolution" on August 6. *See* Loc. Rule 7-3. Plaintiffs delayed filing the motion twice at the request of the City. Plaintiffs' discovery of other violations of the court order that were identical to the prior violations did necessitate that Plaintiffs confer further with the City, particularly because as Mr. Dermer's declaration makes clear, the City has been unwilling to enter into a stipulation regarding the City's actions. *See* Dermer Dec. ¶ 9. However, even after filing this motion, Plaintiffs' counsel continued to offer to meet and confer and offered again to discuss a declaration and stipulation in lieu of proceeding with the motion. The City once again declined. *See* Sweetser Dec. Exh. A. This is more than sufficient to meet Plaintiffs' obligations under Local Rule 7-3.

Dated: September 8, 2020        Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

/s/ Shayla Myers
―――――――――――――――――――
By: Shayla Myers
*Attorneys for Plaintiffs*

SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP

/s/ Catherine Sweetser
―――――――――――――――――――
By: Catherine Sweetser
*Attorneys for Plaintiffs*

KIRKLAND & ELLIS LLP

/s/ Benjamin Allen Herbert
―――――――――――――――――――
By: Benjamin Allen Herbert
*Attorneys for All Plaintiffs*

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest that Plaintiffs' counsel, Benjamin Herbert and Catherine Sweetser, concurs in this filing's content and has authorized the filing.

DATED: September 8, 2020        LEGAL AID FOUNDATION OF LOS ANGELES

/s/ Shayla Myers
―――――――――――――――――――
By: Shayla Myers
*Attorneys for All Plaintiffs*