# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br>    Plaintiffs,<br><br>             v.<br><br>CITY OF LOS ANGELES, et al.,<br>    Defendants. | CV 19-6182 DSF (PLAx)<br><br>Order DENYING Defendant's Motion for Judgment on the Pleadings (Dkt. 80) |

Defendant City of Los Angeles moves for judgment on the pleadings as to the claims asserted by Plaintiff Ktown for All (KFA). Dkt. 80 (Mot.). KFA opposes. Dkt. 91 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is DENIED.

## I. FACTUAL BACKGROUND

In 2016, the Los Angeles City Council amended Los Angeles Municipal Code (LAMC) § 56.11 (the Ordinance). Dkt. 43 (SAC) ¶ 20. The City also adopted the Los Angeles Municipal Code 56.11 Standard Operating Protocols (the Protocols) regarding the implementation and enforcement of the Ordinance.[1] Id. ¶ 56. The Ordinance regulates the storage of personal property in public areas. Its stated purpose is to "balance the needs of the residents and public at large to access clean and sanitary public areas . . . with the needs of the individuals, who have no other alternatives for the storage of personal property, to

---

[1] The Court GRANTS the City's unopposed request for judicial notice, Dkt. 80-1 (RJN), of the Ordinance and the Protocols. Fed. R. Evid. 201(b).

retain access to a limited amount of personal property in public areas." LAMC § 56.11(1). In most situations, the City is authorized to impound personal property in a public area so long as the City provides pre-removal and post-removal notice. See, e.g., id. § 56.11(3)(a)-(b). In other situations, including where the property obstructs City operations or interferes with the City's compliance with the Americans with Disabilities Act of 1990 (ADA), only post-removal notice is required to impound personal property. See, e.g., id. § 56.11(3)(c)-(f). There are also limited situations where the City can immediately destroy personal property without notice, including when the property "poses an immediate threat to the health or safety of the public," id. § 56.11(3)(g), "constitutes evidence of a crime or contraband," id. § 56.11(3)(h), or is a "Bulky Item" that is not "designed to be used as a shelter," id. § 56.11(3)(i) (Bulky Item Provision). A Bulky Item is "any item, with the exception of a constructed Tent, operational bicycle or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed," but not "a container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property." Id. § 56.11(2)(c). The Ordinance also makes it unlawful for any person to "willfully resist, delay or obstruct a City employee from removing or discarding a Bulky Item." Id. § 56.11(10)(d). The City enforces the Ordinance through the Bureau of Sanitation and the Los Angeles Police Department, which conduct noticed cleanups and random rapid responses where personal property that does not comply with the Ordinance is seized or destroyed. SAC ¶¶ 21, 69; see also LAMC § 56.11(11).

KFA is "an unincorporated membership organization in the Koreatown neighborhood in Los Angeles" that "was founded in 2018 to form connections between housed and unhoused residents of Koreatown, and to advocate for housing and shelters in their community." SAC ¶ 38. Because of the City's enforcement of the Bulky Item Provision, "homeless residents have been moved around or been displaced from the neighborhood . . . ma[king] it incredibly difficult for [KFA] to stay in contact with unhoused neighbors." Id. ¶ 40. Additionally, because of enforcement of the Bulky Item Provision, KFA

has had to "devote significant resources that it could have spent on advocating for shelters and connecting with neighbors, on identifying and counteracting the City's practices," including by "replac[ing] an increasingly large number of tents, blankets, and other items that were seized and destroyed by the City" and "assisting unhoused residents track down items that were seized by Defendants and responding to calls from unhoused residents related to sweeps." Id. ¶ 41. KFA's unhoused members "have been subjected to the City's customs, policies[,] and practices, including the continued enforcement of LAMC 56.11," "have suffered harm as a result of these customs, policies, and practices, including the loss of property and the deprivation of their constitutional and statutory rights," and "have also had a difficult time participating in [KFA's] advocacy efforts." Id. ¶¶ 42, 43. Its unhoused members "are at imminent risk of continued enforcement of LAMC 56.11, and as a result, the deprivation of their constitutional rights." Id. ¶ 42.

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Stanley v. Trustees of Cal. State Univ., 433 F.3d 1129, 1133 (9th Cir. 2006). It must appear beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. Dworkin v. Hustler Mag., Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

3

## III. DISCUSSION

The City contends that organizations cannot state a claim under 42 U.S.C. § 1983 based on constitutional, and specifically Fourth and Fourteenth Amendment, violations, unless they are the ones "'subjected to' the alleged unreasonable seizure of property or the alleged deprivation of personal property without due process." Mot. at 1; see also id. at 6 (Section 1983 imposes liability "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of rights secured by the Constitution and laws." (quoting Rizzo v. Goode, 423 U.S. 362, 370-71 (1976))). And because KFA "seeks to vicariously assert its unhoused members' constitutional rights," its claims must be dismissed. Id. at 1.

### A. Fourth Amendment and Article I, Section 13 of the California Constitution (First and Second Causes of Action)[2]

KFA does not allege that the City seized any of its property. KFA's claims are based on seizures of property from its unhoused members and other unhoused individuals staying in the Koreatown area. See SAC ¶¶ 38-43, 232-247; see also Opp'n at 9 (KFA "seeks injunctive and declaratory relief on behalf of its unhoused members that have had their property unreasonably seized under the Fourth Amendment"). That being said, KFA "does not seek to vicariously invoke its member's Fourth Amendment rights," but rather KFA contends that it has "*associational standing* under *Hunt* to pursue its Fourth Amendment claim on behalf of its members." Opp'n at 9; see also id. at 14 ("members join an organization to have its rights represented directly, not vicariously").[3] The Court agrees.

---

[2] Article I, Section 13 of the California Constitution does not provide greater protection against searches and seizures than the Fourth Amendment. Lyall v. City of Los Angeles, 807 F.3d 1178, 1186 n.7 (9th Cir. 2015).

[3] Hunt v. Washington State Apple Advertising Commission provides that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the

4

The general rule is that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). However, there are exceptions to that rule. For example, in section 1983 actions, "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998), as amended (Nov. 24, 1998). Neither the Supreme Court nor the Ninth Circuit has directly addressed whether organizations can bring section 1983 claims based on the Fourth Amendment rights of its members. However, the Court concludes that, like a successor-in-interest, an organization with associational standing may bring claims on its members' behalf. Therefore, KFA may bring a section 1983 claim asserting violations of its members' Fourth Amendment rights.[4]

The other circuits to have considered the issue are split. Compare Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott, 717 F.3d 851, 861 n.1 (11th Cir. 2013) (AFSCME) (although the defendant "has not appealed the district court's determination that the Union had standing to challenge the [executive order mandating suspicionless drug testing for employees on the basis that it violates the Fourth Amendment rights of those employees], . . . we are satisfied that the Union has standing to mount this challenge"), and Heartland Acad.

---

interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 432 U.S. 333, 343 (1977).

[4] Because the Court finds KFA can bring the asserted claims based on its associational standing, the Court does not address KFA's additional argument that "[c]ourts recognize legally-cognizable injuries to associations and organizations flowing from Fourth Amendment violations, including where the injury is financial or a diversion of the association's resources, which is sufficient for organizational plaintiffs to proceed on their [] own Fourth Amendment claims." Opp'n at 19.

5

Cmty. Church v. Waddle, 427 F.3d 525, 532 (8th Cir. 2005) ("The Supreme Court has never held (and neither have we) that associational standing is not available to § 1983 plaintiffs alleging Fourth Amendment violations."), with Knife Rights, Inc. v. Vance, 802 F.3d 377, 387 (2d Cir. 2015) ("[I]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." (quoting Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011))). For the reasons stated by the parties, it is unclear whether the Ninth Circuit would agree with any of these opinions.[5]

The City contends that the principle that "Fourth Amendment rights are personal rights, which cannot be vicariously asserted . . . applies to parent-child relationships, corporations and their owners or employees, and companies and their customers" and "[t]he Supreme Court has never recognized an exception to this principle for an organization . . . [n]or has the Ninth Circuit in any published decision analyzing this issue." Dkt. 92 (Reply) at 2. However, as noted above, there are situations where a parent can bring claims on behalf of her child – when a child dies and the parent is the successor-in-interest.

---

[5] AFSCME did not provide any analysis in support of its conclusion, but in agreeing with the district court's determination of standing, it implicitly agreed that Rakas did not preclude the availability of associational standing, see Am. Fed'n of State Cty. & Mun. Employees (AFSCME) Council 79 v. Scott, 857 F. Supp. 2d 1322, 1329 (S.D. Fla. 2012). Heartland distinguished a Ninth Circuit case that held that "a mother had no standing to claim damages for a violation of her child's Fourth Amendment rights" because the Ninth Circuit "cited a criminal exclusionary-rule opinion for support of its statement" which the Eighth Circuit concluded "is not controlling in this § 1983 case." 427 F.3d at 532. And both Knife Rights and Nnebe noted potential tension between League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Sup'rs, 737 F.2d 155 (2d Cir. 1984) and Warth v. Seldin, 422 U.S. 490 (1975), but determined they were "bound by the implicit determination of prior panels that the rule survives Warth" until an *en banc* panel or the Supreme Court held otherwise. Nnebe, 644 F.3d at 156 n.5; see also Knife Rights, 802 F.3d at 387 (same); Opp'n at 17-18 & n.10.

See Moreland, 159 F.3d at 369. And unlike companies and their owners, employees, or customers, the Supreme Court has authorized organizations to bring claims on behalf of their members. For this reason, the cases cited by the City holding that businesses cannot bring claims for violations of their customers' Fourth Amendment rights, see, e.g., California Bankers Ass'n v. Shultz, 416 U.S. 21, 69 (1974); Ellwest Stereo Theatres, Inc. v. Wenner, 681 F.2d 1243, 1248 (9th Cir. 1982); Microsoft Corp. v. U.S. Dep't of Just., 233 F. Supp. 3d 887, 915 (W.D. Wash. 2017), are inapposite. Similarly, the other cases cited by the City where individuals were not permitted to rely on Fourth Amendment claims of those in proximity to them, see Plumhoff v. Rickard, 572 U.S. 765, 775, 777-78 (2014) (rejecting the plaintiff's argument that, because he had a passenger in the car, the police violated the Fourth Amendment by using excessive deadly force during a high-speed chase in firing too many rounds, noting that "[the passenger's] presence in the car cannot enhance [plaintiff's] Fourth Amendment rights"); Nicholson v. City of Los Angeles, 935 F.3d 685, 695-96 (9th Cir. 2019) (friends of person shot by police "would not have standing to raise a Fourth Amendment claim on his behalf"), are distinguishable because the Supreme Court has recognized that organizations meeting the Hunt test are permitted to bring claims on behalf of others, while individuals are generally not permitted to do so.[6]

The City next contends that the Third Circuit has held that a plaintiff cannot "assert a facial challenge to an ordinance under the Fourth Amendment without alleging that plaintiff's own Fourth Amendment rights were violated." Mot. at 13-14 (citing Knick v. Twp. of Scott, 862 F.3d 310, 322 (3d Cir. 2017), vacated and remanded sub nom. Knick v. Twp. of Scott, Pennsylvania, 139 S. Ct. 2162 (2019), and vacated, 932 F.3d 152 (3d Cir. 2019)). However, the City overstates the Third Circuit's holding, which was only that the plaintiff made "no

---

[6] Nor do the cases related to searches, rather than seizures, address the ability of an organization with associational standing to bring claims based on its members' rights. See Lyall, 807 F.3d at 1186-87; United States v. SDI Future Health, Inc., 568 F.3d 684, 697-98 (9th Cir. 2009).

reasonable allegation that her Fourth Amendment rights (or anyone else's) were, or will imminently be, violated." Knick, 862 F.3d at 322. Additionally, Knick did not involve associational standing and the individual plaintiff did not invoke third-party standing. Rather, the Third Circuit noted in dicta that "if [the plaintiff] attempted to base standing on the Fourth Amendment rights of hypothetical third parties, standing would be strongly disfavored for prudential reasons even if she suffered a cognizable injury-in-fact." Id. at 321 n.7. However, that dicta does not address the question raised here. And as KFA notes, Knick cited to Free Speech Coalition, Inc. v. Attorney General United States, 825 F.3d 149 (3d Cir. 2016) in which "interest groups who are engaged in or represent others involved in the production of images covered under the Statutes" were permitted to bring a claim based on their members' Fourth Amendment rights. Id. at 156, 167.

     The City also contends that "[t]he seminal case for an organization's representative standing – Warth v. Seldon – is expressly cited in Rakas as a traditional standing case that does ***not*** apply to claims under the Fourth Amendment." Mot. at 12 (citing Rakas v. Illinois, 439 U.S. 128, 139 (1978)). However, Rakas stated only that "nothing we say here casts the least doubt on cases," such as Warth, "which recognize that, as a general proposition, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged 'injury in fact,' and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties." Rakas, 439 U.S. at 139.

     Finally, the City contends that "mechanisms to assert representative claims or de-facto class actions have never been recognized in criminal proceedings or under the Federal Rules of Criminal Procedure." Reply at 8 (citing United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1539 (2018)). First, a "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Second, this is not a criminal proceeding, so it is unclear how Sanchez-Gomez applies here.

8

Third, the Supreme Court has explained why associational standing differs from class actions. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock, 477 U.S. 274, 289 (1986) (recognizing "the special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions" such as the ability to "draw upon a pre-existing reservoir of expertise and capital"); see also Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity, 950 F.2d 1401, 1409 (9th Cir. 1991) (concluding that "[t]o insist that there be neither conflict nor potential for conflict on any issue litigated would, in effect, lead to the eradication of associational standing in most suits" which "would disserve the public interest, which frequently would not be represented but for these suits").

On the other hand, KFA points to a Ninth Circuit case (that was superseded, arguably on other grounds) that found an organization could assert associational standing under Hunt to "challenge the search and seizure of evidence" belonging to its members and distinguished associational standing from "vicarious" standing. United States v. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1096 & n.28 (9th Cir. 2008) (CDT I), on reh'g en banc, 579 F.3d 989 (9th Cir. 2009), opinion revised and superseded, 621 F.3d 1162 (9th Cir. 2010). The City contends that the Ninth Circuit's subsequent decision "vacated the standing analysis under Hunt and adopted a new analysis regarding the Association's standing to file a motion to return property under F.R.Crim.P. 41(g)." Reply at 7 (citing United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1172-74 (9th Cir. 2010) (CDT III)). In CDT III, the Ninth Circuit noted that the organization did not need to establish a property interest in the items taken in order to bring an action seeking their return under Federal Rule of Criminal Procedure 41(g), which "by its plain terms . . . authorizes anyone aggrieved by a deprivation of property to seek its return." CDT III, 621 F.3d at 1173. KFA acknowledges that CDT I was vacated by CDT III, but contends that "the history does not render the reasoning in CDT I inapplicable or unpersuasive, and it does not change the fact that a three-judge panel

9

from the Ninth Circuit that considered the application of Rakas in the context of associational standing rejected the argument the City advances here." Opp'n at 12 n.7. CDT III ultimately did not address whether an organization can assert a Fourth Amendment claim based on its members' rights because it interpreted Rule 41(g) to permit any "aggrieved" plaintiff to seek the return of property based on an unlawful search and seizure. Because that holding was specific to Rule 41(g), it does not speak to the question here. Nevertheless, the Court agrees with Plaintiff that the Ninth Circuit's conclusion in CDT I that organizations can bring Fourth Amendment claims where the organization satisfies Hunt, a conclusion that was not explicitly addressed or reversed in CDT III, is persuasive.[7]

Finally, in Rodriguez v. City of San Jose, 930 F.3d 1123 (9th Cir. 2019), an individual plaintiff and two organizational plaintiffs brought suit against the City of San Jose under 42 U.S.C. § 1983 for violations of the Second, Fourth, Fifth, and Fourteenth Amendments. Id. at 1129. The court analyzed whether the organizational plaintiffs had standing under Hunt and Havens. Id. at 1134. Although the Ninth Circuit ultimately concluded that the organizations did not have standing

---

[7] KFA also cites Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791 (9th Cir. 2001), but there the challenged ordinance was alleged to violate only the organization's members' Fourteenth Amendment due process rights, and not their Fourth Amendment rights. See id. at 797; see also Mot. at 13 ("[T]he Ninth Circuit only considered the tenants' 'harm' from an unreasonable search or seizure – not the association['s] or landlords[']" and "did not address the personal nature of rights under the Fourth Amendment or the deprivation of personal property under the Due Process Clause for Section 1983 claims."). And in Santiago v. City of Los Angeles, No. CV 15-08444-BRO (EX), 2016 WL 7176694 (C.D. Cal. Nov. 17, 2016), although the district court concluded that an organization established both direct and associational standing for claims based on its members' Fourth and Fourteenth Amendment rights, id. at *3, *8, the City correctly notes that "the Court did not address the association's Fourth Amendment claim and did not analyze Fourth Amendment standing under *Rakas*, *Alderman*, *Plumhoff* or *Lyall*," Mot. at 13 n.1.

under either test, id. at 1134-35,[8] it did not indicate that an organization can never assert a section 1983 claim for a violation of the Fourth Amendment where the organization was not itself the subject of a search or seizure.

Therefore, the Court concludes that because KFA has established associational standing, it may assert claims under section 1983 for alleged violations of its members' Fourth Amendment rights. The City's motion for judgment on the pleadings as to the First and Second Causes of Action is DENIED.

## B.  Fourteenth Amendment and Article I, Section 7 of the California Constitution (Fourth and Fifth Causes of Action)[9]

KFA does not contend that any of its property was taken without due process, but rather that property was taken without due process

---

[8] The organizations in Rodriquez did not assert standing on behalf of their members and only challenged "the City's seizure of one person's, [the individual plaintiff's], guns and the refusal to give them back." 930 F.3d at 1134-35. Because the only challenged conduct related to one person who was not a member of the organizations, the court concluded that the organizations did not show that the seizure "either impedes their ability to carry out their mission or requires them to divert substantial resources away from the organizations' preferred uses." Id. at 1135.

[9] "The language of Article I § 7 of the California Constitution is virtually identical to the Due Process Clause of the United States Constitution, with the caveat that California courts place a higher significance on the dignitary interest inherent in providing proper procedure." Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178, 1190 n.15 (9th Cir. 2015) (internal quotation marks and citations omitted), as amended on denial of reh'g and reh'g en banc (Jan. 29, 2016); see also Opp'n at 24 n.11 ("For the same reasons set forth herein, the City's Motion should be denied with regard to [KFA]'s claims that provisions of LAMC 56.11 and the City's policies, customs, and practices thereunder are unconstitutional under Article 1, Section 7 of the California Constitution . . . ."). The Court will address KFA's

11

from its unhoused members and other unhoused individuals staying in the Koreatown area. See SAC ¶¶ 38-43, 255-265. For the reasons discussed above, the Court concludes KFA may bring a section 1983 claim asserting violations of its members' Fourteenth Amendment rights. Cf. Moreland, 159 F.3d at 370-71 (9th Cir. 1998) (holding that while "the estate of a person" who died can bring Fourteenth Amendment claims on that person's behalf, the complaint must be brought in a representative capacity). And for similar reasons, the cases cited by the City where an individual was prevented from asserting the due process rights of others are inapposite. See Mot. at 17 (collecting cases); Reply at 11 (same).[10]

The question has not explicitly been addressed by the Ninth Circuit, but the Court reviews the most relevant cases. In Columbia Basin, the Ninth Circuit held that an organization had standing to bring a section 1983 claim based on alleged violations of its members' Fourteenth Amendment due process rights. 268 F.3d at 799. In that case, landlords, tenants, and an organization "consisting of individuals and corporations that own and manage rental housing in the City" challenged a city ordinance requiring landlords to permit inspections of units available for rent in order to obtain a business license. Id. at 795. This put the landlords in the position of "either violat[ing] the Fourth Amendment rights of their tenants by insisting on inspection, or los[ing] their business licenses." Id. at 797. Therefore, the challenged ordinance "may impermissibly threaten the landlords with a

---

federal and state due process claims together, as it is unnecessary to take the additional factor into account here.

[10] Because the Court concludes KFA can bring its claims based on its associational standing, the Court does not address KFA's additional argument that "[a]ssociations have standing and may also bring Section 1983 claims for due process violations that result in diversion of resources and frustration of their mission." Opp'n at 21. Nor does the Court address the City's arguments about third-party standing. Mot. at 18-19; see also Opp'n at 18 (KFA "does not need to establish third-party standing in this case; it has established associational standing").

deprivation of property and civil penalties if they are unwilling to violate the Fourth Amendment rights of their tenants." Id. at 798. The Ninth Circuit then concluded that the organization had standing to sue because it satisfied the Hunt factors. Id. at 798-99. The City concedes that "[t]he Court [in Columbia Basin] concluded that the association had membership standing to seek injunctive relief because of the members' interest in ensuring that landlords would not lose their licenses under the ordinance without due process." Mot. at 13 (citing Columbia Basin, 268 F.3d 791 at 798-99). However, the City contends that the Ninth Circuit "did not address . . . the deprivation of personal property under the Due Process Clause for Section 1983 claims." Id.; see also Reply at 10 ("The Ninth Circuit did not address the issue of whether an association could pursue members' personal claims for deprivations of personal property"). It is certainly true that the Court is not "required to follow what amounts to, at most, an implicit assumption." Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 938 (9th Cir. 2007). However, nothing in Columbia Basin indicates that KFA cannot bring section 1983 claims based on deprivations of its members' property.

Similarly, in Oregon Advocacy Center v. Mink, the Ninth Circuit held that an organization that "represents the rights of people with disabilities, including mentally ill individuals" had standing under Hunt to challenge the Oregon State Hospital's failure to provide mentally incapacitated defendants timely treatment on the basis that it "violat[ed] the incapacitated defendants' Fourteenth Amendment due process rights by unreasonably detaining them in county jails that lack the facilities to treat and restore the defendants' mental health." 322 F.3d 1101, 1105, 1007, 1116 (9th Cir. 2003). Again, while the Ninth Circuit did not explicitly address the arguments raised by the City here, the case provides yet another example where the Ninth Circuit permitted an organization to bring due process claims on behalf of its members.[11]

---

[11] The City obliquely contends that the holding of Oregon Advocacy Center has been disapproved by the Supreme Court because another Ninth Circuit

13

KFA also cites to a number of other district court cases from this circuit where courts permitted organizations to proceed with Fourteenth Amendment claims where the associational standing requirements were satisfied, Opp'n at 15-16 (collecting cases), but none of those cases explicitly decided the question at issue here.  For example, in Ass'n of Los Angeles City Attorneys v. City of Los Angeles, the district court noted that because the "Defendant does not challenge plaintiff's standing to sue on behalf of its members, . . . the court does not address the issue in this order," but that "[i]n general, the standing of an employee association to sue on behalf of its members is well-established."  No. CV 12-4235 MMM (JCX), 2012 WL 12887541, at *1 n.1 (C.D. Cal. Nov. 20, 2012).  The parties apparently did not raise, and the district court did not address, whether an organization with Hunt standing is nevertheless barred from bringing Fourteenth Amendment claims on behalf of its members.  The district court considered the merits of the members' due process claim only.  See id. at *13 ("To state a due process claim . . . , plaintiff must first establish that its members were deprived of a protected liberty or property interest").  And in Friendly House v. Whiting, the district court concluded that the plaintiff organizations had standing under Havens to assert challenges to an immigration statute under the Due Process Clause and the Fourth Amendment.  No. CV 10-1061-PHX-SRB, 2010 WL 11452277, at *5 (D. Ariz. Oct. 8, 2010).  The district court also rejected the argument that such claims were "impermissibly asserted on behalf of third-

---

case that relied on Oregon Advocacy Center was ultimately reversed.  See Reply at 8 n.2 (citing United States v. Sanchez-Gomez, 859 F.3d 649, 658 (9th Cir. 2017), vacated and remanded, 138 S. Ct. 1532 (2018)).  However, neither the Ninth Circuit nor the Supreme Court in Sanchez-Gomez addressed associational standing or that part of the Oregon Advocacy Center opinion.  Rather the Ninth Circuit in Sanchez-Gomez cited Oregon Advocacy Center as part of its mootness analysis.  859 F.3d at 658 & n.7.  And the dissent noted that "*Oregon Advocacy Center* stands for the unremarkable proposition that a federally authorized organization established to represent the rights of people with disabilities has associational standing to bring a challenge on behalf of mentally incapacitated defendants."  Id. at 674 (Ikuta, J., dissenting).

14

parties," but rather concluded that the "alleged injuries giving rise to standing are injuries suffered by the organizational Plaintiffs." Id. at *7. However, beyond this single statement, the Court did not consider whether an organization that has standing under Havens (or Hunt) is nevertheless prohibited from bringing claims based on violations of the constitutional rights of its members under substantive law, rather than based on standing concerns. The same is true of the other cases cited by KFA.

Finally, in California Bankers Association, "an association of all state and national banks doing business in California" challenged a recordkeeping provision on the grounds that it violates 1) its member banks' Fifth Amendment due process rights and 2) its member banks' customers' First Amendment rights. 416 U.S. at 42-43. The Supreme Court noted that it had "serious doubt as to the standing of the plaintiff California Bankers Association" because "[w]hile the District Court found that the Association sued on behalf of its member banks, the Association's complaint contains no such allegation." Id. at 44. However, because "the Government [did] not question[] the standing of the Association to litigate the claims peculiar to banks," the Court "assume[d] without deciding that the Association does have standing." Id. at 44-45. The reasoning of the Supreme Court implies that had the complaint alleged associational standing, and not simply direct organizational standing, it would have been sufficient for the organization to bring the due process claims based on its members' rights.

Taken together, and given the lack of authority holding otherwise, the Court concludes that an organization that has established associational standing can bring section 1983 claims based on the due process claims of its members. The City's motion for judgment on the pleadings as to the Fourth and Fifth Causes of Action is DENIED.[12]

---

[12] Because the Court denies the City's motion, it need not address KFA's additional contention that "even if the City prevailed on its motion on the

## IV. CONCLUSION

The City's motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED.

Date: September 15, 2020

*Dale S. Fischer*
Dale S. Fischer
United States District Judge

---

pleadings and was able to dismiss Ktown for All's claims under 42 U.S.C. §1983, the organization would still remain in the case because it was seeking prospective relief pursuant to this Court's jurisdiction under the Declaratory Judgment Act." Opp'n at 5; Reply at 11-12.