# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br>   Plaintiffs,<br><br>     v.<br><br>CITY OF LOS ANGELES, et al.,<br>   Defendants. | CV 19-6182 DSF (PLAx)<br><br>Order GRANTING in Part Plaintiffs' Motion for Order to Show Cause re: Civil Contempt and Sanctions (Dkt. 88) |

  Plaintiffs Pete Diocson Jr., Marquis Ashley, and Ktown for All (KFA) move for an order to show cause why Defendant City of Los Angeles should not be held in civil contempt for failing to comply with the Preliminary Injunction issued by this Court on April 13, 2020. Dkt. 88 (Mot.). The City opposes. Dkt. 93 (Opp'n).[1] For the reasons stated below, the motion is GRANTED in part.

## I. BACKGROUND

  Los Angeles Municipal Code (LAMC) § 56.11 regulates the storage of personal property in public areas (the Ordinance). The Ordinance, among other things, authorizes the City to immediately seize and destroy certain personal property without notice, including "any item, with the exception of a constructed Tent, operational bicycle

---

[1] The City contends Plaintiffs did not comply with Local Rule 7-3 because "the present motion is based on two incidents that postdate the August 6 call (the August 7 and August 12 postings)." Opp'n at 7 n.4. It is absurd for the City to suggest that the August 6 conference did not comply with Local Rule 7-3 on the grounds that the City continued to violate the PI Order after the conference occurred.

or operational walker, crutch or wheelchair, that is too large to fit into a 60-gallon container with the lid closed," but not "a container with a volume of no more than 60 gallons used by an individual to hold his or her Personal Property" (the Bulky Item Provision). LAMC §§ 56.11(2)(c), (3)(i). The Ordinance also makes it unlawful for any person to "willfully resist, delay or obstruct a City employee from removing or discarding a Bulky Item." Id. § 56.11(10)(d).

On April 13, 2020, the Court granted Plaintiffs' request for a preliminary injunction, enjoining the City from:

1. Enforcing Section 56.11(3)(i) of the Los Angeles Municipal Code;

2. Enforcing Section 56.11(10)(d) of the Los Angeles Municipal Code;

3. Posting signs, notices, or other public information stating that the City will enforce Sections 56.11(3)(i) or 56.11(10)(d) of the Los Angeles Municipal Code.

Dkt. 58 (PI Order) at 30.[2] On June 29, 2020, Plaintiffs' counsel "was informed by a member of the community . . . that she had heard from unhoused residents that LA Sanitation employees told them on multiple occasions that they were going to start taking bulky items again" and that she "had spoken to a supervisor from LA Sanitation who confirmed that the City had given them permission to start removing all bulky items, and that they would post 24 hour notice to people." Dkt. 89 (Myers Decl.) ¶ 9. On June 30, 2020, Plaintiffs' counsel "learned that paper[] notices had been posted at the same encampment [in Venice], referring to bulky items." Id.; see also Dkt. 82-22 (Sweetser Decl.) ¶¶ 2-4 & Ex. A. Plaintiffs' counsel contacted the City about this information and a City attorney responded that "the posted flyers were not City notices, the City had not changed its

---

[2] The City filed an appeal of the PI Order but did not seek a stay of the injunction pending the appeal. Therefore, the PI Order remains in effect.

enforcement of the bulky item provision and it was not conducting comprehensive cleanups." Myers Decl. ¶¶ 10-11 & Exs. D, E.

In July 2020, Plaintiffs' counsel discovered that signs posted near multiple A Bridge Home (ABH) sites had not been updated to remove references to Bulky Items. Id. ¶ 12. Plaintiffs' counsel again contacted the City's attorneys on July 27, 2020 to inform them about the signs. Id. ¶ 13 & Ex. F. The City's attorney stated that the signs referencing Bulky Items were all posted prior to the injunction and took the position that the PI Order did not "require[] it to remove or otherwise update signs currently posted throughout Los Angeles that contained the now-omitted language, but agreed to update these signs as well." Id. ¶ 14 & Ex. G. On August 6, 2020, Plaintiffs' counsel was "informed by a community member that the City had still not updated the majority of the signs in the special enforcement zone around the Raymer shelter in North Hollywood, and the majority of the signs still referred to the Bulky Item provision." Id. ¶ 30. Despite assurances from the City to the contrary, Plaintiffs' counsel discovered on August 10, 2020 that, while many signs had been updated, at least 150 signs around the Raymer shelter, as well as other shelters, had still not been updated. Id. ¶¶ 33-37 & Ex. R; but see id. Ex. T (City stating it only found three signs missing an overlay and one sign that had been removed); Dkt. 95 (Orosco Decl.) ¶ 27 (the City discovered that "approximately 104 locations had missing overlays" but "placement of overlays in these additional area[s]" was completed by August 24, 2020).

On August 1, 2020, Plaintiffs' counsel learned that the City had conducted a clean-up in San Pedro the prior day and saw that the posted signs stated that "Bulky Items Are Always Prohibited." Myers Decl. ¶¶ 17-19 & Ex. J; see also Orosco Decl. ¶ 31 (on July 30, 2020, "an LSD [Livability Services Division] environmental compliance inspector posted paper notices" referencing Bulky Items). According to the City, "[t]he CARE+ notice that was posted on July 30 has not been used in other comprehensive cleanups that have occurred with other ABH/SECZ areas." Dkt. 94 (Wong Decl.) ¶ 17. On August 7, 2020, the City "implemented the use of a revised form of paper notice for

3

comprehensive CARE+ cleanups" that "omits any reference to bulky items." Orosco Decl. ¶ 32 & Ex. 4.

On August 4, 2020, Plaintiffs' counsel went to a noticed cleanup at an ABH site and saw a number of paper notices taped directly to tents and encampments that stated that the storage of Bulky Items was prohibited. Myers Decl. ¶¶ 21-22 & Ex. L. At another clean-up that same day, Plaintiffs' counsel observed LA Sanitation crushing a tent that appeared to have a "Notice of Bulky Items" on it and disposing of it. Id. ¶¶ 23-25 & Exs. M, N. After learning about these signs, the City's attorneys admitted that the City "had in fact posted the notice on July 30 and August 3" and "that Sanitation had posted Notice of Bulky Item Removal on property before another cleanup in Wilmington." Id. ¶ 32 & Ex. Q; see also Wong Decl. ¶¶ 19-20 (an Environmental Compliance Inspector "posted additional paper notices" prior to the August 4, 7, and 12 clean-ups stating that storage of Bulky Items was prohibited). On August 12, 2020, a member of group that monitors clean-ups saw that the City had again posted a "Notice of Bulky Items" in an area surrounding an ABH site. Dkt. 88-24 (Parriott Decl.) ¶¶ 17-20 & Ex. B. At some later time, the City "suspended the use of paper signs referencing 'bulky items' on large items used as shelters, and agreed to omit references to bulky items on any other paper signs." Orosco Decl. ¶ 33; Wong Decl. ¶ 22 (the City "suspended the use of the revised paper notices" stating the storage of Bulky Items was prohibited). The City also "implemented additional adjustments for continued replacement of removed or missing overlays on permanent signage and the use of the revised form of CARE+ notice." Orosco Decl. ¶ 33; Wong Decl. ¶ 22 (the City "implemented further adjustments to the protocols suspending the use of the notices, confirming the use of the revised CARE+ notice for comprehensive cleanups, and the need to continue replacing removed or missing overlays on pre-injunction ABH[] permanent signage").

## II. LEGAL STANDARD

A civil contempt order is proper where the alleged contemnor (1) "violated [a] court order, (2) beyond substantial compliance, (3) not

4

based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth., 564 F.3d 1115, 1123 (9th Cir. 2009) (citing In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993)). The "moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." Fed. Trade Comm'n v. Enforma Nat. Prod., Inc., 362 F.3d 1204, 1211 (9th Cir. 2004) (quoting Fed. Trade Comm'n v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)). "[T]he contemnors . . . must show they took every reasonable step to comply." Stone v. City & Cty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992), as amended on denial of reh'g (Aug. 25, 1992); see also Dual-Deck, 10 F.3d at 695 ("Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." Dual-Deck, 10 F.3d at 695. A district court has "wide latitude in determining whether there has been a contemptuous defiance of its order." Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir. 1984).

### III. DISCUSSION

**A.    Contempt**

The City does not dispute that it violated the PI Order on four separate occasions by posting signs stating that the storage of Bulky Items was prohibited. See Opp'n at 2 (acknowledging "errant notices"), 6 (conceding the City used "an outdated pre-injunction form of the paper CARE+ comprehensive cleaning notice"), 9 (acknowledging the City posted "faulty paper notices"). Instead, it contends that it substantially complied with the PI Order. First, the City contends that "the central purpose of the Preliminary Injunction, and indeed, the express basis for Plaintiffs' motion seeking that injunction, was to prohibit the enforcement of the Bulky Item Provisions" and "the City fully complied with these prohibitions." Opp'n at 9. However, as

5

Plaintiffs point out, the City's compliance with part of the PI Order does not excuse violations of other parts. Dkt. 97 (Reply) at 1-2.[3] This is particularly true where the different parts of the order are complementary. That the City "only" threatened to take Bulky Items, but did not actually follow through on those threats, does not equate to substantial compliance with the PI Order.

Second, the City contends it substantially complied with the PI Order because these violations were "four isolated instances" that "are outliers of the City's practices" that were "remedied before Plaintiffs even filed their motion." Opp'n at 9-10. It is simply untrue that these four instances were "outliers of the City's practices." They were in fact consistent with the notices approved by the City at the relevant times. Although the injunction was issued in April 2020, the City did not revise the paper CARE+ notices to eliminate all references to Bulky Items until August 7, 2020, Wong Decl. ¶ 17 & Ex. B, and did not discontinue using the Bulky Item notices until sometime later in August (presumably between August 13 and August 31), id. ¶ 22 (the City has "suspended the use of the[se] paper notices . . . after concerns were raised out of an abundance of caution and to avoid any confusion about [the City's] compliance with the injunction."). At the hearing, the City's attorney conceded that because paper notices were not being used at the time the injunction issued, revising the paper signs to ensure compliance with the PI Order was "not a focus" and was "overlooked." Nevertheless, the Bulky Item notices were in fact revised after the PI Order, but, as discussed below, remained out of compliance. The "four isolated instances," therefore, do not appear to have been the result of a City employee mistakenly using a pre-injunction version of City-approved notices. To the contrary, these notices were not revised post-injunction to comply with the Court's order until Plaintiffs informed the City that these notices violated the PI Order. The City does not state that it took <u>any</u> measures, let alone all reasonable

---

[3] The Reply was timely filed on September 8, 2020. The City's "Objection and Request to Strike" the Reply, Dkt. 97, is meritless and is therefore DENIED.

measures, between April 13 and August 7 to ensure that non-compliant paper notices were not used.[4]

Moreover, Plaintiffs correctly contend that technical violations are only excused where the "violating party has taken all reasonable steps to comply with the court order." Reply at 2 (quoting Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986)). Here, creating revised notices reflecting the PI Order would certainly have been a reasonable step. Informing the employees who distributed the notices that they should not post notices containing any version of the prohibited language would have been another reasonable step. Yet, the City did neither. While the City instructed LSD employees not to enforce the Bulky Item Provision, id. ¶¶ 7-8; see also Wong Decl. ¶ 9, it does not appear that they were instructed to post only notices that were compliant with the PI Order. To the contrary, the Bulky Item notice was amended after the PI Order issued to "delete[] any reference to LAMC 56.11(3)(i) and the immediate removal and discard of bulky items," but still stated that storage of Bulky Items was prohibited. Wong Decl. ¶ 10 & Ex. A. At the hearing, the City's attorney stated that this change was made due to the mistaken belief that notices could address "Bulky Items" so long as they did not reference the "Bulky Item Provision." A notice that contains the substance of the Bulky Item Provision, despite failing to reference that provision, is clearly contrary to the PI Order. Similarly, the City apparently believed that these notices "were not intended to convey that LASAN would be enforcing the bulky item provision under LAMC 56.11(3)(i), but rather to emphasize to the persons who may have been using the items as a shelter that a cleaning was scheduled to take place the next day, and the items would be subject to removal at that time." Id. ¶ 20. This position does not square with the plain language of the notice which states that "STORAGE OF BULKY ITEMS IN THE PUBLC RIGHT-OF-WAY OR ANOTHER PUBLIC AREA IS PROHIBITED." Id. Ex A.

---

[4] The City did, however, revise permanent signage regarding clean-ups to "omit[] any reference to enforcement of LAMC 56.11(3)(i) or bulky items." Orosco Decl. ¶¶ 18-19.

7

Importantly, the notice further states that "[m]oving this bulky item to another public area is not removal." Id. The notice says nothing about a cleaning and expressly prohibits individuals from moving their items outside of any purported cleaning area. This notice clearly violates the PI Order and the Court rejects the City's attempts to claim otherwise. See Taggart v. Lorenzen, 139 S. Ct. 1795, 1802 (2019) ("[A] party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable."). The City does not argue, nor could it, that these notices were based on a "good faith and reasonable interpretation" of the PI Order. See Dual-Deck, 10 F.3d at 695 (moving party "failed to prove by clear and convincing evidence that under a good faith, reasonable interpretation of the protective order, [non-moving party] did not substantially comply with the order").

Third, the City contends that "the notices were short-lived and resulted in no harm" because "no bulky items were removed and/or discarded solely based on their size and Plaintiffs proffer no evidence that any person who stored belongings in the area even saw the notices, much less that that they relied on the notices." Opp'n at 11 (citing Wong Decl. ¶ 21). However, the City points to no case law suggesting that Plaintiffs must prove that violation of the PI Order caused harm. The City also contends that they did not show a "blatant disregard" for the Court's order because "those notices were posted in the very same timeframe that City employees were undertaking a comprehensive effort to remove references to bulky items on over 3,000 permanent signs around the City." Id. at 11. But willfulness is not a prerequisite for civil contempt and the City does not explain how taking actions arguably not required by the PI Order renders four violations of the PI Order technical or *de minimus*. See PlayNation Play Sys., Inc. v. Velex Corp., 939 F.3d 1205, 1214 (11th Cir. 2019) (even where defendant "took 'massive' steps in response to the injunction, and it is clear that it did not simply ignore the court's demands," district court properly found defendant in contempt because "it did not take all reasonable efforts to comply").

8

Finally, the City contends that a finding of civil contempt is inappropriate where "the notices were already removed by the time of filing of Plaintiffs' motion." Opp'n at 12-13. And the City has taken additional steps to make sure that only compliant notices will be used going forward. Orosco Decl. ¶ 33; Wong Decl. ¶ 22. However, that the City promises to comply with the PI Order going forward does not save it from a finding of contempt.[5] Nevertheless, the Court does consider this fact below in determining whether to order sanctions.

The Court concludes that Plaintiffs have established by clear and convincing evidence that the City violated the PI Order. The City has not shown that it substantially complied with the PI Order, that it took all reasonable steps to comply with the PI order, or that it relied on a good faith and reasonable interpretation of the PI Order. Therefore, the Court finds the City in contempt.

---

[5] Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885 (9th Cir. 1982) is distinguishable. In Vertex, the district court had entered a consent judgment in 1978 enjoining defendants from using "'Falcon Foam Plastics, Inc.' . . . . for commercial or publicity purposes." Id. at 887. The plaintiff brought a motion for civil contempt because the defendants "fail[ed] to prevent their listings in the 1980 Canoga Park-Reseda-Agoura Yellow Pages Directory from appearing under the name 'Falcon Foam Plastics, Inc.'" Id. at 891. The Ninth Circuit affirmed the district court's conclusion that defendants had made every reasonable effort to comply with the court's order and were not in contempt where there was only one violation and where that violation was discovered and corrected seven months prior to the plaintiff's filing a motion for an order holding defendants in contempt. Id. at 891 n.5, 892. Unlike an errant entry in one Yellow Pages directory outside of the defendants' control, the paper notices challenged here were created and approved by the City and were distributed by City employees months after the PI Order was issued. See Kelly v. Wengler, 822 F.3d 1085, 1096-97 (9th Cir. 2016) (distinguishing Vertex from a situation where the non-moving party "had not substantially complied with the settlement agreement and had failed to take several reasonable steps to ensure compliance").

## B. Sanctions

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." Gen. Signal, 787 F.2d at 1380. First, Plaintiffs request that the Court impose monetary fines at a daily rate of $45,206 until the City files a declaration stating that it has taken certain steps to ensure that it will not continue to violate the PI Order going forward.[6] Mot. at 20-21. As stated above, because the City has now brought itself into compliance with the PI Order, the Court concludes that the daily monetary sanctions are unnecessary. See SunEarth, Inc. v. Sun Earth Solar Power Co., No. C 11-4991 CW, 2012 WL 2344081, at *6 (N.D. Cal. June 20, 2012) (finding that "Plaintiffs have offered clear and convincing evidence that Defendants violated the court order" and that "Defendants have not shown that they did everything reasonably within their power to avoid these issues" but declining to order a $3,000 per day sanction because "it is also undisputed that Defendants have brought their websites into compliance"). Plaintiffs cast doubt on the

---

[6] Plaintiffs' requested declaration includes the following:

> LA Sanitation has: 1) identified and updated all notices used by LA Sanitation to be consistent with this Court's preliminary injunction; 2) removed all notices posted around the City stating that the City will enforce the Bulky Item Provision; 3) informed all members of the Livability Services Division of the Bureau of Sanitation, which is the division responsible for implementation of CARE and CARE+, that the Court's injunction prohibits the City from both removing and destroying items based on the size of the items, and it prohibits the City from posting notices stating the City's intention to either remove or destroy Bulky Items; and 4) submitted a report to the Los Angeles City Council, informing them of this motion and providing a copy of this Court's Preliminary Injunction, [t]his declaration, and this order.

Mot. at 20-21.

10

City's intentions to continue to comply with the PI Order noting that the City's declarants stated only that the City "suspended" use of the improper Bulky Item notices and that it has done so "out of an abundance of caution" and to "avoid further disputes." Reply at 9 (citing Orosco Decl. ¶ 33; Wong Decl. ¶ 22). This Order makes clear that use of the two challenged notices violates the PI Order, which should obviate this concern. In any event, the Court cannot grant civil monetary contempt sanctions based on Plaintiffs' belief that the City is likely to violate the PI Order in the future. However, the Court orders the City to 1) provide notice in writing to the responsible parties in the Sanitation department that if further violations occur, the Court will issue an order to show cause why they should not be held in contempt and 2) file a declaration no later than October 28, 2020 attaching a copy of that notice indicating the name of each person to whom the notice was sent.

Next, Plaintiffs request that "the City be ordered to post remedial notices or in the alternative, pay damages to Plaintiffs to do so themselves" and that "the Court order the parties to meet and confer about the contents of the remedial notices, and file a copy of the agreed-upon notice with this Court after it is posted." Mot. at 21-22. The City contends that "it is unnecessary to impose the burden and expense of posting remedial notices" because of "the lack of any evidence that any Plaintiff (or any person for that matter) acted in reliance on the notices raised in Plaintiffs' motion," and the only case cited by Plaintiffs does not provide adequate support for this remedial sanction. Opp'n at 16. "District courts have broad equitable power to order appropriate relief in civil contempt proceedings." SEC v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003). Non-monetary sanctions are permissible in civil contempt cases to "return Plaintiffs as nearly as possible to the position they would have occupied had [the non-moving party] not violated the [order]." Kelly, 822 F.3d at 1097. The Court determines the corrective notices will serve this function here. The Court orders the parties to meet and confer about the contents of the notice and file a copy of the agreed-upon notice with the Court no later than September 30, 2020. The City is ordered to post the agreed-upon notice in the affected areas

for a period of at least two weeks.  The Court further orders the City to submit a declaration of compliance no later than October 28, 2020 stating that the remedial notices were posted as ordered by the Court.

      Finally, Plaintiffs seek attorneys' fees for bringing this motion. Mot. at 22.  "[T]he trial court should have the discretion to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure."  Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985).  However, attorneys' fees cannot be awarded where they "were not caused by [a] violation of the [court order]."  Gen. Signal, 787 F.2d at 1380 (rejecting request for attorneys' fees expended to obtain the underlying consent judgment "because these fees were not caused by [defendant's] violation of the consent judgment").  Here, the parties' meet-and-confer efforts had already caused the City to stop violating the PI Order and commit to ensuring proper notices would be used going forward.  On August 10, City Attorneys told Plaintiffs' counsel that "[t]he City's attached CARE+ notice is the existing form of the paper notice used for future CARE+ comprehensive cleanups" and "the City will not be posting additional paper notices for items designed to be used as shelters."  Myers Decl. Ex. Q at 3.  Although the City did post such signs two days later, apparently due to a Sanitation employee accidentally using the wrong piece of paper, City Attorneys reiterated this promise on August 17 before Plaintiffs filed the instant motion.  Id. Ex. T at 1.  Because the City's violations were already resolved prior to Plaintiffs filing this motion, the City's violation of the PI Order is not the cause of Plaintiffs' asserted damages.[7]  Therefore, the Court declines to award attorneys' fees.

---

[7] The Court's conclusion is not intended to indicate approval of the City's conduct in waiting to comply with the PI Order until violations were identified by Plaintiffs.  The Court will consider in any future motions the extent to which the City took affirmative take steps to comply with the PI Order and this Order.  Nevertheless, the Court always encourages parties to resolve disputes on their own and, to the extent they are able to do so, save the Court time and effort.

## IV. CONCLUSION

Plaintiffs' motion for an order to show cause why the City should not be held in civil contempt for failing to comply with the Preliminary Injunction issued by this Court on April 13, 2020 is GRANTED in part. The Court finds the City in contempt of Court as described above. The Court orders the City to post remedial paper notices as agreed-to by the parties for two weeks in any area where the improper notices were used between April 14, 2020 and the date of this Order. The Court further orders the City to submit a declaration of compliance with this Order as described above no later than October 28, 2020.

IT IS SO ORDERED.

Date: September 23, 2020

*Dale S. Fischer*

Dale S. Fischer
United States District Judge