MICHAEL FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Deputy City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
FELIX LEBRON, Deputy City Attorney (SBN 232984)
A. PATRICIA URSEA, Deputy City Atty (SBN 221637)
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Garcia, Gladys Zepeda, Miriam Zamora, Ali El-Bey, Peter Diocson Jr., Marquis Ashley, James Haugabrook, individuals, KTOWN FOR ALL, an unincorporated association, ASSOCIATION FOR RESPONSIBLE AND EQUITABLE PUBLIC SPENDING an unincorporated association<br>*Plaintiffs,*<br>vs.<br>CITY OF LOS ANGELES, a municipal entity; DOES 1-50,<br>*Defendant(s).* | Case No.: 2:19-cv-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br><br>**DECLARATION OF COMPLIANCE PURSUANT TO THE COURT'S SEPT. 23, 2020 ORDER (DKT. NO. 106)** |

# DECLARATION OF GABRIEL MIRANDA

I, Gabriel Miranda, hereby declare:

1. I am the Solid Resources Manager II/Division Manager for the City of Los Angeles Department of Public Works, Bureau of Sanitation's ("LASAN") Livability Services Division ("LSD")I have personal knowledge of the facts contained herein, and if called to testify to the truth of these matters, I could and would competently do so.

2. On September 23, 2020, the Court issued an Order Granting in Part Plaintiffs' Motion for Order to Show Cause re: Civil Contempt and Sanctions ("Contempt Order"). Dkt. 106. The Court ordered the City to: (a) "provide notice in writing to the responsible parties in the Sanitation department that if further violations occur, the Court will issue an order to show cause why they should not be held in contempt" (*id.* at p.11) ("Written Notice"); (2) "post remedial paper notices as agreed-to by the parties for two weeks in any area where the improper notices were used between April 14, 2020 and the date of th[e] [Contempt] Order" (*id.* at p. 13) ("Remedial Notices"); and (3) "submit a declaration of compliance with th[e] [Contempt] Order no later than October 28, 2020 (*id.*) "attaching a copy of th[e] [Written] [N]otice indicating the name of each person to whom the notice was sent" (*id.* at 11).

## WRITTEN NOTICE

3. On September 26, 2020, I circulated by email the Written Notice attached as **Exhibit A**, along with a copy of the Contempt Order and the Preliminary Injunction to the following LASAN employees:

Enrique Zaldivar, General Manager
Jose P. Garcia, Assistant General Manager
Howard Wong, Chief Environmental Compliance Inspector I
Domingo Orosco, Solid Resources Manager I
Jonelle Gardea, Solid Resources Superintendent
Jorge Nesta, Solid Resources Superintendent

1. Jamel Ward, Solid Resources Superintendent
2. Nekpen Aimiuwu, Senior Environmental Compliance Inspector
3. Ruben Hernandez, Senior Environmental Compliance Inspector
4. Abraham Abrahamian, Senior Environmental Compliance Inspector
5. Primitiva Vidal, Senior Environmental Compliance Inspector
6. Salvador Rosales, Senior Environmental Compliance Inspector
7. Ron Metcalf, Senior Environmental Compliance Inspector
8. Warren Tan, Senior Environmental Compliance Inspector
9. Armando Cabrera, Senior Environmental Compliance Inspector
10. Michael Bates, Wastewater Collection Supervisor
11. Ruben Leon, Solid Resources Supervisor
12. Juanita Bell, Solid Resources Supervisor
13. Jeffrey Armstead, Solid Resources Supervisor
14. Rene Negrete, Solid Resources Supervisor
15. Arthur Hall, Solid Resources Supervisor
16. Frederick Moody, Solid Resources Supervisor
17. Derrick Griffin, Solid Resources Supervisor
18. Bruce Reed, Solid Resources Supervisor
19. Victor Magana, Solid Resources Supervisor
20. Jose Vega, Solid Resources Supervisor
21. Danielle Maldonado, Solid Resources Supervisor
22. Richard Aldana, Senior Administrative Clerk
23. Angel Ibarra, Senior Administrative Clerk
24. Leon Ho, Management Assistant
25. Sarah Bell, Public Relations Specialist
26. George Faavae, Office Services Assistant
27. Josselyne Hernandez, Administrative Clerk

4. The Written Notice explained the Court's Contempt Order, described the

violations of the preliminary injunction at issue, and reminded LASAN LSD personnel that under the preliminary injunction, LAMC 56.11(c)(3)(i) could not be enforced and that notices stating that it would be enforced could not be posted. It further stated: "IF FURTHER VIOLATIONS OF THE PRELIMINARY INJUNCTION OCCUR, THE COURT WILL ISSUE AN ORDER TO SHOW CAUSE WHY THE PERSON RESPONSIBLE FOR THE VIOLATION SHOULD NOT BE HELD IN CONTEMPT."

5. In my email, I requested that the recipients review the Written Notice, Contempt Order, and Preliminary Injunction and acknowledge they have done so in writing by October 2, 2020. I received the required written acknowledgment from LSD staff. **See Exhibit B.** With the exception of Arthur Hall, Supervisor, and George Faavae, Office Services Assistant, who submitted their acknowledgements after October 2, all LSD recipients provided their written acknowledgements by October 2, 2020.

6. Also in my email, I notified the recipients that a mandatory General Staff Meeting was scheduled for September 28, 2020 in which the District Superintendents and/or Chief would distribute and explain the Written Notice, Contempt Order, and Preliminary Injunction to the field staff.

7. On September 28, 2020, General Staff Meetings were held at the start of shift in the three yards: Washington Yard, East Valley Yard, and Harbor Yard. I am informed that at these meetings, Superintendents Jonelle Gardea, Jamel Ward, Jorge Nesta, along with Chief Environmental Compliance Inspector I Howard Wong explained the Contempt Order to the field staff from the Written Notice and reminded them of their obligations under the Preliminary Injunction to not remove or dispose of bulky items solely based on their size and not to post any notices that stated that the Bulky Item Provision of LAMC 56.11 would be enforced. In addition, the Written Notice, Contempt Order, and Preliminary Injunction were distributed to all attendees.

8. The field staff assigned to CARE and CARE+ operations who attended the General Staff Meetings were required to acknowledge in writing that they received the Written Notice, Contempt Order, and Preliminary Injunction. To track acknowledgement

from staff, sign-in sheets were used to update a database roster managed by district yards, the relevant portion of which is attached as **Exhibit C**. Individuals who were not present at the meetings received the documents when they returned to work and were also required to acknowledge in writing that the Written Notice, Contempt Order, and Preliminary Injunction have been received. Additionally, the Written Notice, Contempt Order, and Preliminary Injunction were sent to personnel within LSD, with the exception of the Receptacles Program's Refuse Collection Truck Operators, who are not part of CARE and CARE+ operations.

9. Within LSD, identified individuals who are out of the office or on long-term leave will be provided the Written Notice, Contempt Order, and Preliminary Injunction upon their return and their written acknowledgement of receiving these documents will be required.

10. New staff that join LSD will be provided copies of the Written Notice, Contempt Order, and Preliminary Injunction. District Superintendents at the district yards are required to ensure distribution of these documents along with receiving written acknowledgement that the new staff has received these documents.

11. On September 29, 2020, Jose P. Garcia, Assistant General Manager of LASAN, sent an email to the LASAN Solid Resources Managers listed below attaching the Written Notice, Contempt Order and Preliminary Injunction and requesting that they "Please read and familiarize…" themselves with current events in LSD. He instructed me to schedule a meeting to discuss the contents of the documents. Domingo Orosco, Solid Resources Manager I and I were copied on the email, attached as **Exhibit D**, which was sent to:

    Ronald Lee, Solid Resources Manager II

    Daniel Mckay, Solid Resources Manager II

    Khalil Gharios, Solid Resources Manager II

    Russel Zamora, Emergency Appointed Solid Resources Manager I

    James Moore, Solid Resources Manager I

      Miguel Zermeno, Solid Resources Manager I

      Lilian Myrato, Executive Administrative Assistant II

12. The meeting was scheduled Thursday October 1, 2020 in which an overview was provided by Jose P. Garcia and myself regarding the Written Notice, Contempt Order, and Preliminary Injunction.

13. I am aware of multiple instances in which instructions were given to cease all usage of old posting notices to stay in compliance with the Contempt Order and Preliminary Injunction. See **Exhibit E1**.

14. On Thursday October 15, 2020, a LSD Management meeting was held and the agenda included a follow-up on updates regarding the Contempt Order, Preliminary Injunction, and Remedial Notice Postings with the Superintendents and the Chief Environmental Compliance Inspector I. See **Exhibit E2**. A meeting held on Friday, October 23, 2020 for Refuse Collection Supervisors and Senior Environmental Compliance Inspectors included discussions regarding the Preliminary Injunction and Contempt Order. See **Exhibit E3.**

## REMEDIAL NOTICES

15. On October 9, 2020, a memo concerning the posting of Remedial Notices, along with a copy of the Remedial notice that was agreed upon by the parties (Dkt. 107) was sent by email to the following LASAN employees:

      Howard Wong, Chief Environmental Compliance Inspector I

      Jorge Nesta, Solid Resources Superintendent

      Jonelle Gardea, Solid Resources Superintendent

      Jamel Ward, Solid Resources Superintendent

A copy was sent to the following:

      Enrique Zaldivar, General Manager

      Jose P. Garcia, Assistant General Manager

      Gabriel Miranda, Solid Resources Manager II

      Domingo Orosco, Solid Resources Manager I

16. The memo lists the areas referred as "locations" in which Remedial Notices were to be posted, the minimum number of Remedial Notices to be posted at each location, and a procedure requiring daily confirmation that the posted notices remained in place for the ordered two-week period. The above-referenced email is attached as **Exhibit F1**; the memo is attached as **Exhibit F2**; and the agreed-upon Remedial Notice is attached as **Exhibit F3**.

17. Because the Court ordered that Remedial Notices be posted in any location where the "bulky items are prohibited" signs had been posted since the Preliminary Injunction was issued, after the issuance of the Contempt Order, Chief Environmental Compliance Inspector I Howard Wong instructed Senior Environmental Compliance Inspectors to review and identify incident records with their staff on operations that pertained to the utilization of non-compliant signage since the Preliminary Injunction. On October 8, 2020 a comprehensive search of records conducted by eight (8) Senior Environmental Compliance Inspectors provided information that there were 29 additional locations in which non-compliant notices had been posted. Attached as **Exhibit G** are maps displaying the specific locations and count of Remedial Notices that were to be posted.

18. To assist in preparing a posting plan, the specific locations identified were then mapped onto larger geographic areas: ABH Zones (Schrader, Hope, Beacon, and Eubank) and non-ABH areas based on geographic proximity. In the ABH Zones, where the location of permanent signage was easily identifiable, LASAN decided to post Remedial Notices in every location where permanent signs were located. In non-ABH Zones, where paper notices were posted, LASAN used the following methodology to determine where Remedial Notices would be posted using Census blocks from the United States Census Bureau. The use of the census blocks was based on a predefined geographic unit of measurement allowing for consistency and preventing the use of an arbitrary geographic boundary for each location outside of an ABH zone. Some locations intersected several Census blocks, so the intersecting blocks were chosen as posting areas

to maximize visibility. Then, within any given block, posting locations were plotted at the end of the block, and in most longer blocks, posting locations were also added in the middle of the block to maximize visibility. Finally, posting locations were plotted at or close to the address where the non-injunction-compliant signs were posted as well as, in some locations where the address was an intersection, in each corner of the intersection. Therefore, the ultimate number of posting locations in non-ABH zones was based on the size and number of the Census block(s). LASAN is amenable to addition posting locations if further remedial operations become necessary after counsel for the parties have completed their meet-and-confer efforts on these issues.

19. On October 16, 2020, seven two-person teams were deployed to post the Remedial Notices. A total of 664 Remedial Notices were posted. Following review of the recorded photographs and data of the postings, a follow-up field verification was conducted at 21 locations the following day to ensure that the Remedial Signs were properly posted.

20. Since October 16, 2020, the teams have conducted field verifications daily, from Monday through Friday, to check that the Remedial Signs remain posted and to replace any signs that were missing or damaged. Subject to additional input from Plaintiffs, the Remedial Notice posting operations are scheduled to cease on October 30, 2020, in compliance with the Court's order that the signs remain posted for two weeks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this Declaration was executed on October 28, 2020, at Los Angeles, California.

GABRIEL MIRANDA