MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Deputy City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
**FELIX LEBRON, Deputy City Atty (SBN 232984)**
A. PATRICIA URSEA, Deputy City Atty (SBN 221637)
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Felix.Lebron@lacity.org
Patricia.Ursea@lacity.org

*Attorneys for Defendant,* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| JANET GARCIA, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES,<br>a municipal entity;<br><br>Defendant. | CASE NO.: 2:19-CV-6182-DSF-PLA<br>[Assigned to Judge Dale S. Fischer]<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF ISO CITY'S OPPOSITION TO PLAINTIFFS' MOTIONS TO COMPEL DISCOVERY**<br><br>Date:  April 28, 2021<br>Time: 10:00 a.m.<br>Crtm: 780<br><br>Complaint Filed:  July 18, 2019<br>Discovery Cut-Off:  July 26, 2021<br>Pretrial Conference: Feb. 14, 2022<br>Trial Date: March 15, 2022 |

I.     **Introduction**

Plaintiffs' motions to compel have no merit; the City has more than satisfied its discovery obligations in this case. The discovery Plaintiffs seek falls into two overarching categories: (1) "Incident-Specific Discovery," which are requests that relate the specific incidents alleged in the Second Amended Complaint (SAC)—namely, that the City unlawfully seized their property during encampment cleanups in 2019 (discussed more below); and (2) "Policy/Practice Discovery," which are requests about topics, events, and/or time periods unrelated to the incidents alleged in the SAC and have no (or at best, minimal) bearing on Plaintiffs' claims. This latter category includes, for example, (a) all documents related to over 40,000 encampment cleanups conducted since 2016; (b) all documents related to trainings conducted since 2016 on a variety of topics, including on tangential topics such as illegal dumping; (c) demands to review and produce over half a million email documents; and (d) records relating to arrests, though no Plaintiff alleges they were arrested nor do any bring any claim based on an unlawful arrest.

The core of this dispute relates to Policy/Practice Discovery. As to Incident-Specific Discovery, Plaintiffs' motions are unnecessary because the City has produced the vast majority of discovery responsive to such requests, and is in the process of investigating and/or producing the handful of additional documents and information identified in Plaintiffs' motions (most of which were first raised in Plaintiffs' stipulations). As to Policy/Practice Discovery, the City has objected, primarily on relevance and proportionality grounds. Plaintiffs' relevance arguments, that this discovery is required for *Monell* liability and prospective relief, are specious. As discussed below, the City admitted most of the facts relevant to *Monell* and prospective relief in its Answer; in fact, the City offered to stipulate to *Monell* liability to streamline discovery but Plaintiffs refused. Nevertheless, in an effort to balance its objections with Plaintiffs' purported (though unsubstantiated) need for such discovery, the City has made numerous compromises and has produced over 26,000 documents (totaling 92,000 pages) including raw data from three databases reflecting tens of thousands of cleanups from 2018 to 2020.

The City used Plaintiffs' requested custodians and search terms to conduct searches for email communications and collected over 500,000 documents. Even assuming that some of the emails might contain potentially relevant information, Plaintiffs' demand that the City review and produce over half a million emails is not proportional to the discovery needs of this case. Moreover, the City has not "cherry picked" the documents—as it has repeatedly told Plaintiffs, the City will not withhold any responsive documents it identifies in its investigation. But based on its objections, the City will not agree to locate, review, and produce "all" such discovery.

Plaintiffs largely acknowledge that the City has produced discovery responsive to every one of Plaintiffs' requests. The basis for Plaintiffs' motions is that they need the City to identify, review, and produce ***all*** Policy/Practice Discovery. But they fail to justify this purported need. Furthermore, the City's declarations show that it would cost over $600,000 to produce even a fraction of the additional Policy/Practice Discovery Plaintiffs seek to compel, which does not even include the burdens imposed by over 500,000 email communications. The discovery is unnecessary to resolve the issues in this case and the burden imposed on the City far outweighs Plaintiffs' unsubstantiated need for such discovery under *Monell* or for prospective relief. Plaintiffs' motions should be denied

## II.   Incident-Specific Discovery

In the SAC, Plaintiffs allege that on various occasions in 2019, the City unlawfully seized and/or destroyed Plaintiffs' property during encampment cleanups conducted pursuant to LAMC 56.11. Plaintiffs bring claims under the Fourth and Fourteenth Amendments, and California Civil Code § 2080 *et seq.*, and seek damages and prospective relief. Plainly, both parties are entitled to discovery relevant to these claims. Such Incident-Specific Discovery is arguably requested, although in patently overbroad terms, in RFP 1 ("All DOCUMENTS that refer to or relate to any of the individual plaintiffs in this action"); RFP 2 ("All DOCUMENTS that refer or relate to ENCAMPMENT CLEANUPS conducted in the following areas between January 1, 2018 and the present [in locations specified in the SAC as the sites of the 2019 alleged incidents]); and

1  Interrogatory Nos. 7 and 9 (asking for information about employees involved in all
2  cleanups on particular dates alleged in the SAC).

3      As noted above, there is no real dispute as to Incident- Specific Discovery.  The
4  City produced the vast majority of documents relating to Plaintiffs (RFP No. 1), including
5  Government Claims and LAPD criminal records, arrest reports, booking and identification
6  records, Automated Field Data Reports, and printouts of search results conducted by first
7  and last name.  Declaration of Felix Lebron (Lebron Decl.) ¶¶ 17, 21.  Similarly, the City
8  produced documents relating to Plaintiffs' specific alleged incident, including
9  encampment cleanup reports, Health Hazard Checklists, posting surveys, incident/case
10  pictures during cleanups, and hazardous and non-hazardous waste records from the City's
11  Bureau of Sanitation ("LASAN").  Lebron Decl. ¶15.

12      Moreover, the City has repeatedly told Plaintiffs that it has no intention of with-
13  holding Incident-Specific Discovery or discovery that Plaintiffs identify with reasonable
14  specificity in their pleadings, discovery, and/or meet-and-confer calls.  *See* Declaration of
15  Patricia Ursea (Ursea Decl.) ¶¶12(a), 27; Lebron Decl. ¶¶19-20.  For the first time in their
16  stipulation, Plaintiffs identified a few documents they believe should be produced in
17  response to RFP No.1: two citations issued in 2017 and 2018 to Garcia and Diocson and a
18  2018 Field Investigation Card for Ashley.  Lebron Decl. ¶27.  Although no Plaintiff
19  alleges unlawful arrest or citation (Lebron Decl. ¶ 2, Ex. 27, SAC ¶¶ 173-231), and
20  Plaintiffs did not identify any such instances in response to the City's interrogatories
21  (Ursea Decl. ¶ 6-7, Exs. 5-6 (Pltfs' Interrogatory Responses)), the City produced these and
22  other documents on April 14, 2021 (CTY092977-95469).  Similarly, Plaintiffs stated for
23  the first time in their stipulation that they identified certain cleanups (from the database
24  information the City produced in December, discussed below), that may have involved
25  Plaintiffs Zamora and Haugabrook.  The City is investigating those cleanups and is
26  willing to meet and confer about the production of any potentially responsive documents it
27  finds.  The City has also agreed to supplement its responses to Interrogatories Nos. 7 and
28  9 to identify truck drivers and laborers present at certain cleanups identified in the SAC.

Incident-Specific intervention is unwarranted and Plaintiffs' motion should be denied.

### III. Policy/Practice Discovery

As noted, the parties' real dispute centers on the relevance and proportionality of Plaintiffs' Policy/Practice Discovery, which requests information wholly unrelated to the 2019 incidents alleged in the SAC. Specifically, Plaintiffs move to compel discovery, mostly from **2016 to the present,** as to the following: **(1) All policies, procedures, manuals, etc.** related to cleanups, LAMC 56.11, and storage (RFP Nos. 11- 15); **(2) All documents "related to trainings"** (including flyers, communications, calendar invitations, sign-in sheets, and notes) regarding cleanups, LAMC 56.11, and illegal dumping (RFP Nos. 16-19; see also Interrogatory Nos. 1 and 2); **(3) All communications related to "the use of forms" and "the use of notices**," regarding cleanups and/or storage (RFP Nos. 23, 26, 29); **(4) All documents related to cleanups and storage**, including all reports, summaries, data compilations, and tracking documents (RFP Nos. 30, 33-36; 43-45, 47-49; *see also* RFP 2 (requesting a subset of these documents); and **(5) All complaints** about seizures of homeless persons' property (RFP Nos. 38-39).

First, Plaintiffs have failed to show that any of this discovery is relevant. Plaintiffs argue that the discovery relates to *Monell* liability and declaratory relief—but the core facts relevant to *Monell* (a City policy) and prospective liability (continued enforcement) are not in dispute. In its Answer, the City concedes that it: (1) promulgated LAMC 56.11; (2) conducts cleanups pursuant to LAMC 56.11, during which it removes and/or discards items in public areas, including items that may belong to homeless persons; (3) does not obtain a warrant before removing and/or discarding such items; (4) provides notice (or not) when removing and/or discarding such items, as specified in LAMC 56.11; and (5) has enforced LAMC 56.11 since 2016, including in 2019, and continues to enforce it to this day. See Lebron Decl.¶3, Ex. 28 (City's Answer to SAC, Dkt. No. 75) at ¶¶16, 20, 21, 56, 68, 102, 114. The City even offered to stipulate on *Monell* issues to streamline discovery. Ursea Decl. ¶4, Ex. 1. Plaintiffs rejected this offer. *Id.* ¶5, Ex. 3. Plaintiffs have no valid basis for claiming that they need discovery on issues that are simply not in

dispute. *See e.g., Gonzalez v. City of Schenectady*, No. 1:09-CV-1434, 2011 U.S. Dist. LEXIS 137290, at *13 (N.D.N.Y. Nov. 30, 2011).

Second, Plaintiffs' demand that the City produce *all* such discovery is not proportional to the needs of the case. In the spirit of compromise, the City has produced over 26,000 documents about unrelated cleanups, in unrelated locations, and involving unrelated encampments, people, and property. For example, the City produced raw data from three databases, detailing information about more than 40,000 cleanups from 2018 to 2020, and invited Plaintiffs to identify any specific cleanups about which they wanted additional information. Ursea Decl. ¶¶12(a), 27. The City also reviewed approximately 1,200 government claims and produced all responsive ones (Ursea Decl. ¶¶10, 24), and produced all non-privileged policy and training materials it identified from as early as 2012 (Ursea Decl. ¶¶25, 39, 42). The City collected over 500,000 emails using the 30 custodians and broad search terms proposed by Plaintiffs, from 2018 to present. Ursea Decl. ¶¶19, 23, 32, 34, 37, 43. This resulted in over 280GB of raw data. Ursea Decl. ¶32.

Compelling the City to produce additional Policy/Practice Discovery would require extensive time and resources not proportional to the needs of the case. For example, the estimated time it would take to collect the 41,000+ reports and related documents for RFP Nos. 33-34, is 8,347 hours and would cost approximately **$433,000**. Declaration of Howard Wong ¶¶ 28-29. To review and redact the 486 complaints for RFP 39 would require approximately 1,994 hours and would cost approximately **$82,736.64**. Declaration of Miguel Munoz ¶¶5-6. To review the approximately 120,000 RFCs requested in RFP 39 would take 95 days and cost over **$117,000**. Declaration of Theresa Carter ¶5. As described above, the City has already produced tens of thousands of documents and close to 100,000 pages of such discovery, even though Plaintiffs has not articulated the relevance of these requests. And to the extent the City has identified nonprivileged responsive documents in its investigation, it has produced them. Plaintiffs' motions to compel the City to identify, review, and produce *all* such discovery are unwarranted and should be denied.

Dated: April 14, 2021

MICHAEL N. FEUER, City Attorney
KATHLEEN KENEALY, Ch. Deputy City Attorney
SCOTT MARCUS, Senior Asst. City Attorney
GABRIEL DERMER, Asst. City Attorney
**FELIX LEBRON, Deputy City Attorney**
A. PATRICIA URSEA, Deputy city attorney

By:  */s/ Felix Lebron*
      Felix Lebron
      Deputy City Attorney
      Attorneys for Defendant
      CITY OF LOS ANGELES