1   Shayla Myers (SBN 264054)
2   Mallory Andrews (SBN 312209)
3   LEGAL AID FOUNDATION OF LOS ANGELES
    7000 South Broadway
4   Los Angeles, CA  90003
5   Telephone: (213) 640-3983
    Email:  smyers@lafla.org
6           mbandrews@lafla.org
7
8   *Attorneys for Gladys Zepeda, Miriam Zamora,*
    *Ali El-Bey, James Haugabrook, Pete Diocson Jr.,*
9   *Marquis Ashley, and Ktown for All*
10  *Additional Attorneys on Next Page*
11
12                  **UNITED STATES DISTRICT COURT**
13      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**
14
15  JANET GARCIA, ET AL,           )  CASE NO. 2:19-cv-06182-DSF-PLA
                                   )  [Assigned to Judge Dale S. Fischer]
16                                 )
17                 Plaintiffs,     )  **DISCOVERY MATTER**
                                   )
18         v.                      )  **PLAINTIFF'S SUPPLEMENTAL**
                                   )  **BRIEF IN SUPPORT OF THEIR**
19                                 )  **MOTION TO COMPEL**
    CITY OF LOS ANGELES, A         )  **RESPONSES**
20  MUNICIPAL ENTITY               )
                                   )
21                                 )   Hearing Date: April 28, 2021
22                 Defendants.     )   Time: 10 AM
                                   )
23                                 )
                                   )
24                                 )   Complaint Filed:    July 18, 2019
25                                 )   Discovery Cut-off:  July 26, 2021
                                   )   Pretrial Conf.:     Feb. 14, 2022
26                                 )   Trial:              March 15, 2022
27  _____
28

Catherine Sweetser (SBN 271142)
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731
Email:csweetser@sshhlaw.com
          kharootun@sshhlaw.com

*Attorneys for Plaintiffs*

Benjamin Allan Herbert (SBN 277356)
William L. Smith (SBN 324235)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680 8400
Email:benjamin.herbert@kirkland.com
william.smith@kirkland.com

Michael Onufer (SBN 300903)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Email:  michael.onufer@kirkland.com

*Attorneys for Plaintiffs Ktown for All, Janet Garcia,*
*Peter Diocson Jr., Marquis Ashley, Ali El-Bey, and*
*Association for Responsible and Equitable Public*
*Spending*

I.   **INTRODUCTION**

Plaintiffs propounded 49 discrete, time-limited requests for documents related to Plaintiffs' challenge of the City's widespread and longstanding policies, customs and practices of violating unhoused people's constitutional rights. Rather than cooperate with Plaintiffs to identify and produce documents responsive to the requests, the City has thrown up every conceivable obstacle, from objecting to even the most germane request as "not relevant" to simply failing to produce documents it promised to turn over.  Now, in response to Plaintiffs' motion, the City contends it has done enough because it has produced thousands of pages of documents.  But relying on the *quantity* of the City's production is a distraction. The City continues to withhold highly relevant documents, cherry picks the documents it actually produces, refuses to provide written responses that comply with Rule 34, and refuses to complete its production within a "reasonable time" required by Rule 34.  As a result, more than nine months have passed since discovery officially began, and Plaintiffs are still without the most basic discovery in this case.  A court order compelling the City to produce responsive documents is both necessary and warranted.

II.   **THE CITY HAS FAILED TO PRODUCE HIGHLY RELEVANT RESPONSIVE DISCOVERY**

As Plaintiffs were forced to painstakingly detail in their Joint Stipulation, the City has represented that it is not withholding documents responsive to a number of Plaintiffs' requests  and on other requests would  produce a subset of responsive documents; yet the City has inexplicably failed to produce those documents.  Most egregiously, despite the City's representation to this Court, the District Court, and Plaintiffs that it had produced "all reports for all cleanups in South LA" that were conducted in March 2019, in order to "expedite the dismissal" of a plaintiff from the case, the City's own documents, only recently produced, demonstrate that far more cleanups took place in South LA in March 2019 than the ones for which the

City produced documents.  Even worse, numerous cleanups did in fact take place at the exact location and at the exact time the Plaintiff alleges, and the City still has not produced documents related to those cleanups.

This is only one stark example of the City's failure to produce relevant, responsive documents, but there are myriad others identified in the Joint Stipulation and supporting evidence.  *See e.g.*, Myers Decl., ¶¶ 68-82; Riskin Decl., Exh. A-C.  The City brushes these examples off by offering to produce the documents, but this of course misses the point:  these missing document are evidence of the problems endemic to the City's response to Plaintiffs' RFPs.  The City's refusal to provide written responses that comply with Rule 34 compounds these problems. [1] The City's insistence it has produced all documents it has identified in its investigation undermines the credibility of that investigation. Plaintiffs are entitled to both an order compelling the production of responsive documents and a declaration spelling out the steps it took to locate the documents.

### III.   THE CITY'S SCOPE OF DISCOVERY IS IMPERMISSIBLY NARROW

As discussed in detail in the Joint Stipulation, the City's objections to the relevance of *Monell* discovery are baseless. The City may want this case to be solely about the language of LAMC 56.11 and the City's Standard Operating Protocols (and for good reason, since the City imported much of the language of two district court orders directly into the municipal code and the protocols).  But the SAC makes clear the case is not simply about the City's written policies. In the SAC, Plaintiffs describe the City's customs and practices, which they allege violate

---

[1] The City also dismisses its failure to comply with Rule 34 by indicating its intention to produce compliant written responses once it finishes its investigation at some unknown date in the future. This is not permissible under Rule 34.  Likewise, it is not accurate nor credible that Ms. Ursea now recalls an agreement to postpone the exchange of privilege logs.  Plaintiffs have consistently and repeatedly requested the City produce a privilege log, to which Ms. Ursea never referenced any alleged agreement to delay production of the privilege log.

the US and California Constitutions.[2] *See* SAC ¶¶ 68-123; 243, 245 (alleging unconstitutional customs and practices and explaining that, to the extent these customs and practices are consistent with LAMC 56.11, the ordinance and policies are unconstitutional.)  The City's own Answer belies its argument that there is no dispute about these customs and practices.  While the City admits it enforces LAMC 56.11, Defendant does not unconditionally admit any of the allegations in the customs and practices section of the SAC, and in fact, denies many of the allegations. *See e.g.,* Answer, Dkt. 75, ¶¶ 70-120. And the City's conditional "admissions" further illustrate these disputes, which include, for example, whether the City has a custom or practice of destroying property that is not "an immediate threat to public health and safety," whether "rapid response cleanups" are justified and why they are conducted, whether the City in practice provides sufficient notice, and whether the City could provide more due process. These disagreements cannot be resolved simply by reading the City's written policies, and it is disingenuous at best to suggest agreement on these points or that discovery about these customs and practices is not relevant or proportional to the needs of the case.[3]

Finally, the City refuses to produce discovery because it disagrees with the viability of Plaintiffs' claims under the Declaratory Judgment Act.  This is highly inappropriate.[4]   Defendant cannot limit or withhold discovery because it thinks the

---

[2] Mr. Lebron accuses Plaintiffs of failing to respond to his request to identify "unwritten policies," but Plaintiffs repeatedly pointed Mr. Lebron and his colleagues to the specific portions of the SAC which describe customs and practices that are generally not reflected on the face of LAMC 56.11 or in the SOPs, which as noted above, the City denies in its Answer.

[3] The City also did not "offer to stipulate to *Monell*."  The City proposed the parties bifurcate the trial and as part of that bifurcation, agreed to stipulate *Monell* liability. Plaintiffs rejected this proposal for all of the reasons spelled out the July 30, 2020 letter, Myers Decl. ¶ 29, Exh. P. The City never responded to this letter.

[4] It is also legally wrong.  The underlying claim, for purposes of the Declaratory Judgments Act, is that the City's policies, customs, and practices violate the US

case does not have merit. After a year of motion practice, the case is finally at issue, and Plaintiffs are entitled to discovery on issues that are relevant to their claims and the City's defenses.

The City also contends that only "current" policies and practices are relevant for prospective relief claims. While prospective relief is based on current policies, customs, and practices, this does not mean that discovery must be limited only to "current" policies or cleanups (it is unclear what such a limitation would even mean). The City alleges it conducts its cleanups pursuant to LAMC 56.11 and SOPs, both of which were written in 2016 and are indisputably relevant. If the City's policies, practices and customs have not changed since 2016, then cleanups going back that far would also be relevant and have a tendency to show how cleanups are currently conducted. Moreover, Plaintiffs also seek past policies and trainings in part to get at this very question--whether the policies, customs, and practices have changed over time.

## IV.   DEFENDANT'S BURDEN OBJECTIONS ARE NOT SUFFICIENT TO WITHHOLD RELEVANT DISCOVERY

The burden Defendant identifies related to the production of documents sought by Plaintiffs in this case is primarily of the City's own making, especially because Defendant has rejected every attempt by Plaintiffs to address Defendant's objections. The evidence the City puts forth regarding the potential burden of production is simply not credible. First, Defendant argues the production of documents related to cleanups is too burdensome because there are more than 30,000 entries in WPIMS, from January 1, 2018 to the present. This completely

---

and California constitution. *See e.g*., *United Food and Commercial Workrs Intern. Union v. IBP, Inc*., 857 F.2d 422, 427 (8th Cir. 1988) (bringing a declaratory relief action on behalf of a member organization, based solely on claims that the policies violated the Fourth Amendment). This is consistent with the District Court's ruling on Ktown for All's standing to bring claims on behalf of its members: the group is not litigating about any specific incidents, but instead, is challenging the current customs and practices. Dkt. 37 at 6.

sidesteps the issues raised by Plaintiffs—namely, that a significant number of these entries do not result in cleanups for which documentation would be created, a fact with Mr. Wong does not dispute. Similarly, posting surveys responsive to RFP No. 30 are not actually generated per case number, but instead, are generated per day, per council district.  The City has also never responded to Plaintiffs suggestion that documents may be stored in formats outside of WPIMS (including Posting Surveys, which are emailed out to numerous people every day as Word documents).  Finally, it is not credible that each document must be produced one at a time, instead of, for example, by providing the database to an e-discovery vendor, which could export the data, or that this must be done by an ECI, instead of an administrative clerks within LA Sanitation that enter data in the databases.

Similarly, the City has long objected to the production of *any* emails responsive to any of Plaintiffs' discovery requests.  Rather than cooperate with Plaintiffs to come up with a manageable plan to identify responsive documents, Defendant required Plaintiffs to propose custodians and search terms (hence the "three month delay, while Plaintiffs fought with Defendant to obtain organizational charts and conduct a deposition).   If the proposed terms were unwieldy—a fact only the City could determine—the City could have proposed an alternative (or simply conduct a search it deemed reasonable).  Instead, the City has not provided any explanation why it has taken five months to come to the conclusion that the terms are "overbroad," why it still has not provided any counterproposals, alternative search terms or the requested hit reports to identify overbroad search terms, or how or when it intends to complete the production of emails.  Absent an order from this Court, compelling the City to produce documents responsive to Plaintiffs' requests, the City will simply wind down the discovery clock, without producing any responsive emails.

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: April 14, 2021                Legal Aid Foundation of Los Angeles,
                                     Schonbrun Seplow Harris Hoffman & Zeldes, LLP
                                     Kirkland & Ellis, LLP

                                     By: ____/s_____
                                             Shayla Myers
                                             Attorney for Plaintiffs