UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>CITY OF LOS ANGELES,<br>　　　Defendant. | CV 19-6182 DSF (PLAx)<br><br>Order GRANTING IN PART Plaintiffs' Ex Parte Application to Appoint Neutral Examiner (Dkts. 165, 167) |

　　　Plaintiffs Janet Garcia, Gladys "Jane" Zepeda, Miriam Zamora, Ali El-Bey, James Haugabrook, Pete Diocson Jr., Marquis Ashley, Ktown for All, and Association for Responsible and Equitable Public Spending filed an ex parte application for the appointment of a neutral forensic examiner pursuant to Federal Rules of Evidence (Rule) 706. Dkt. 167 (Corrected Ex Parte App.).[1] The City opposes. Dkt. 170 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the application is GRANTED in part.

I. BACKGROUND

　　　Los Angeles Municipal Code (LAMC) § 56.11 regulates the storage of personal property in public areas (the Ordinance). Among other things,

---

[1] The Court calendared this matter as a regularly-noticed motion with an appropriate briefing schedule. Dkt. 172.

the Ordinance authorizes the City to seize and destroy certain personal property immediately and without notice, including if the property "poses an immediate threat to the health or safety of the public," LAMC § 56.11(3)(g), "constitutes evidence of a crime or contraband," id. § 56.11(3)(h), or is a "Bulky Item" that is not "designed to be used as a shelter," id. § 56.11(3)(i) (Bulky Item Provision).

The City enforces the Ordinance through Environmental Compliance Inspectors (ECIs) in the Bureau of Sanitation (Sanitation), and the Los Angeles Police Department (LAPD), which conduct noticed cleanups and random rapid responses where personal property that does not comply with the Ordinance is seized or destroyed. See id. § 56.11(11), id. §56.11 Standard of Procedures 3, 7. ECIs complete Health Hazard Assessment Reports and Health Hazard Checklists that document the items seized or destroyed during cleanups. Dkt. 178 (Suppl. Opp'n) at 1; Dkt. 167-1 (Myers Decl.) ¶ 24 & Dkt. 165-5 (Ex. 2)[2]; see, e.g., Myers Decl ¶¶ 54, 67 & Dkt. 165-35 (Ex. 32), Dkt. 165-48 (Ex. 45). Sanitation instructs ECIs to fill out the Reports and Checklists at the end of the operation and turn them in at the end of the day. Myers Decl. ¶ 25 & Dkt. 165-6 (Ex. 3) at 10-11. ECIs then manually upload the Reports and Checklists to Sanitation's Watershed Protection Information Management System (WPIMS) database as digital attachments to case files. Suppl. Opp'n at 1.

Plaintiffs requested copies of the Reports, Checklists, and any emails with attachments related to the cleanups alleged in their Second Amended Complaint. Myers Decl. ¶¶ 3, 4, 5. Additionally, Plaintiffs requested the metadata for these documents, including information specifying who created them and when they were created. Id. ¶ 5; Dkt. 122-2 & Ex. S. By December 2021, the City produced metadata sets from the WPIMS database and emails with attachments. Myers Decl. ¶¶ 9, 11; Dkt. 170-1 (Lebron Decl.) ¶ 13.

---

[2] The Corrected Ex Parte App. and Myers' Declaration are filed as ECF 167, but the corresponding exhibits are filed with the original application as ECF 165.

Plaintiffs now contend that there are significant technical issues with the metadata provided by the City. Corrected Ex Parte App. at 13-16. First, Plaintiffs identified eight Checklists for cleanups conducted in 2018 and 2019 that are filled out on forms the City did not approve until April 2020. Myers Decl. ¶¶ 52-60 & Dkt. 165-33 through 41 (Exs. 30-38). Second, Plaintiffs discovered an email version of Plaintiff James Haugabrook's Report that does not state that he "voluntarily" turned over his belongs for disposal, countering the three similar versions stating that ECIs disposed of items "deemed trash by the homeless individual for disposal voluntarily." Compare Myers Decl. ¶ 22 & Dkt. 165-25 (Ex. 22) with Myers Decl. ¶¶ 40-42 & Dkt. 165-21 through 23 (Exs. 18-20). Third, Plaintiffs claim an email and its attachment metadata suggest that the City altered Reports for its Opposition to Plaintiffs' motion for Preliminary Injunction. Myers Decl. ¶¶ 19, 63-69 & Dkt. 165-44 through 50 (Exs. 41-47). Finally, Plaintiffs discovered emails sent by senior ECIs, after the Court held the City in contempt for violating the Preliminary Injunction, instructing ECIs to include in their narratives that items were removed because they violated the ADA and obstructed ingress and egress, not because of the Bulky Item Provision at issue in the Preliminary Injunction. See Dkt. 58; Myers Decl. ¶ 71 & Dkt. 165-54 (Ex. 49). As a result, Plaintiffs argue that the Court should appoint a neutral forensic examiner to analyze the City's document preservation and retention processes to determine whether and to what extent spoliation has occurred. Corrected Ex Parte App. at 28.

## II. LEGAL STANDARD

A.   Court Appointed Expert Witness

Rule 706 allows the Court to appoint any expert witness that the parties agree on or any expert of the Court's own choosing. Fed. R. Evid. 706(a). "A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters." Armstrong v. Brown, 768 F.3d 975, 987 (9th Cir. 2014). The expert "does not serve as an advocate for either party, and each party retains the ability to call its own experts." Patton v. Loadholt, 445 F. Supp. 3d 802, 803

(E.D. Cal. 2020). Rule 706 "should be reserved for exceptional cases in which the ordinary adversary process does not suffice." McCoy v. Stronach, 494 F. Supp. 3d 376, 740 (E.D. Cal. 2020). Nonetheless, the "decision of whether to appoint an expert witness under Rule 706 is discretionary." Gorton v. Todd, 793 F. Supp. 2d 1171, 1178 (E.D. Cal. 2011); Sanders v. York, 446 F. App'x 40, 43 (9th Cir. 2011) ("Courts have broad discretion to appoint expert witnesses."). "Ultimately, the most important question a court must consider when deciding whether to appoint a neutral expert witness is whether doing so will promote accurate factfinding." Gorton, 793 F. Supp. 2d at 1178.

### III. DISCUSSION

The City does not deny that ECIs create and revise Reports and Checklists after cleanup dates. Lebron Decl. ¶ 5 & Ex. 3. Instead, the City argues that a forensic examiner is unnecessary because fact discovery provides sufficient support for Plaintiffs' claims. Suppl. Opp'n at 3.

Rule 706 "is not frequently invoked, and consequently there is relatively little case law on the subject." Chavez v. United States of Am., No. CV 19-31-DMG (JEMx), 2021 WL 6104403, at *2 (C.D. Cal. Sept. 29, 2021). In Gorton, the district court analyzed appellate decisions across various circuits and articulated four factors courts should consider when deciding a Rule 706 motion:

(1) Whether expert testimony is necessary or significantly useful for the trier of fact to comprehend a material issue in the case.

(2) Whether the moving party has produced some evidence, admissible or otherwise, that demonstrates a serious dispute that could be resolved or understood through expert testimony.

(3) Whether certain circumstances or conditions of a party limit the effectiveness of the adversary process to result in accurate factfinding.

(4) Whether the legal basis of plaintiff's claim entitles him to special consideration by the courts.

4

793 F. Supp. 2d at 1185.  Other district courts in this Circuit have adopted these factors.  Chavez, 2021 WL 6104403, at *2 ("This Court finds the Gorton court's thorough analysis persuasive and adopts its four-factor test."); Allen v. Beard, No.: 3:16-cv-2713-MMA-KSC, 2018 WL 5819782, at *2 (S.D. Cal. Nov. 7, 2018).  The Court agrees and considers these factors in determining whether appointment of a forensic examiner is appropriate here.  Given that Plaintiffs identified several issues with the City's evidence, the second factor of the Gorton analysis is met.  The remaining factors are discussed below.

The "touchstone" in the Rule 706 analysis is determining whether the expert is "necessary or significantly useful for the trier of fact to comprehend a material issue in a case." Gorton, 793 F. Supp. 2d at 1181.  Here, the material issue is whether the City altered relevant evidence during this litigation, namely the Reports and Checklists regarding Plaintiffs claims.  Plaintiffs correctly point out that the issue here is not why Reports or Checklists were created or revised after a cleanup, as the City suggests, but rather when these changes occurred.  The "duty to preserve documents attaches when a party should have known that the evidence may be relevant to future litigation." Consumer Fin. Prot. Bureau v. Morgan Drexen Inc., 101 F. Supp. 3d 856, 872 (C.D. Cal. 2015); Leon v. IDX Sys. Corp., 464 F.3d 951, 956, 959 (9th Cir. 2006) (affirming the district court's finding that plaintiff willfully spoliated evidence when he destroyed electronically stored information on a work computer after receiving notice of litigation).  Additionally, district courts in other Circuits have ordered forensic investigations to determine whether a party altered or withheld electronically stored information.  See Genworth Fin. Wealth Mgmt., Inc. v. McMullin, 267 F.R.D. 443, 449 (D. Conn. 2010) (ordering forensic investigation of computer to find electronically stored information that defendants withheld from discovery); see also Treppel v. Biovali Corp., 249 F.R.D. 111, 124 (S.D.N.Y. 2008) (ordering forensic examiner to recover relevant emails that defendant deleted); Marsulex Env't Techs. v. Selip S.P.A., No. 1:15-CV-00269, 2019 WL 2184873, at *12 (M.D. Pa. May 21, 2019) (ordering forensic examiner to determine whether defendant withheld, suppressed, or deleted electronically stored

5

information).  In this case, a narrowly tailored examination of the City's metadata by a neutral forensic examiner will clarify when the City altered or created documents relevant to Plaintiffs' claims, and whether this occurred during the course of litigation.  This information will promote accurate factfinding by prohibiting spoliated evidence, see Gorton, 793 F. Supp. 2d at 1178, and fulfills the Court's "duty to ensure that the record before it is free from fraud or intentional misrepresentation."  Coleman v. Brown, No. 2:90-cv-0520 KJM DB P, 2018 WL 9848294, at *2 (E.D. Cal. Dec. 13, 2018).  This Rule 706 factor is satisfied.

Next, the Court considers whether certain circumstances or conditions of a party limit the effectiveness of the adversary process to result in accurate factfinding.  Gorton, 793 F. Supp. 2d at 1185.  Here, the City concedes it is "not [a] forensic computer expert[]," and claims that it "has produced all the metadata it has and any further communication on this point will be fruitless."  Myers Decl. ¶ 86 & Dkt. 165-67 (Ex. 64).  Yet when the City turned over its metadata, the information reflected the date of production of the documents for discovery, rather than the date of creation associated with the underlying documents.  Myers Decl. ¶¶ 81-82 & Dkt. 165-62, 165-63 (Exs. 59-60).  Further, the City argues that a forensic examination is unnecessary because Plaintiffs may question the ECIs responsible for drafting the relevant Reports and Checklists through normal fact discovery.  Suppl. Opp'n at 4.  However, the City relies on Reports and Checklists "to document the instances that took place at the operation and also to be able to recall at a later date."  Myers Decl. ¶ 24 & Dkt. 165-5 (Ex. 2) at 7.  Questioning ECIs that rely on potentially altered Reports and Checklists to recall specific cleanups does Plaintiffs little good in the adversary process.  Given the Plaintiffs' economic status, the City's unfamiliarity with computer forensics, the allegations of altered documents, and the technical nature of collecting metadata, a neutral forensic examiner increases the effectiveness of the adversarial process and promotes accurate factfinding.  This factor is satisfied.

The final factor considers whether the nature of Plaintiffs' claims entitle them to special consideration by the courts.  Gorton, 793 F.

6

Supp. 2d at 1185. "[C]ivil rights actions are entitled to [a] privileged position because fundamental, Constitutional rights are at stake." Id. at 1184. While this factor is "not a necessary and sufficient factor under Rule 706," district courts "should also consider the significance of the rights at stake when deciding if appointment of an expert is proper." Id. Here, Plaintiffs' claims arise from alleged violations of the Fourth and Fourteenth Amendment. See Dkt. 43 (Second Amended Complaint). In other words, Plaintiffs' Constitutional rights are at stake. Moreover, the Ninth Circuit affirmed this Court's Preliminary Injunction issued against the City, noting its agreement "with the district court that Plaintiffs are likely to succeed on their claim that [the Bulky Item Provision], on its face, violates the Fourth Amendment's protection against unreasonable searches." Garcia v. City of Los Angeles, 11 F.4th 1113, 1116 (9th Cir. 2021). Because the Ordinance impacts Plaintiffs' Constitutional rights by allowing the City to seize and destroy Plaintiffs' items, this factor is met.

Therefore, the Court orders the parties to meet and confer to discuss the parameters and criteria for a neutral forensic examination. The examination must be narrowly tailored to focus on a sample size of metadata agreed to by the parties to determine whether spoliation has occurred and in what manner. Because the neutral forensic examiner is not an advocate for either side, the parties should attempt to agree on an examiner and seek the person's consent to act. Fed. R. Evid. 706(a) ("[T]he court may only appoint someone who consents to act."). If the sides cannot agree on the neutral forensic examiner, each party must provide two names (with appropriate curriculum vitae) for the Court to choose from. The parties will initially share the costs of the examination. Fed. R. Evid. 706(c)(2). However, if the Court concludes spoliation has occurred, or it is otherwise warranted, the Court may "apportion all the costs to one side." Gorton, 793 F. Supp. 2d at 1178 (citing McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir. 1991), vacated on other grounds sub nom., Helling v. McKinney, 502 U.S. 903 (1991)). The name of the agreed forensic examiner (or the parties' proposed examiners) and the proposed parameters and criteria must be

submitted no later than June 13. The parameters and criteria may be revised after review by the appointed examiner.

## IV. CONCLUSION

Plaintiffs' ex parte application to appoint a neutral forensic examiner is GRANTED as discussed above.

IT IS SO ORDERED.

Date: May 27, 2022

                                       Dale S. Fischer
                                       United States District Judge

8