1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Shayla Myers (SBN 264054)
Sheyda Joolharzadeh (SBN 299930)
Isabelle M. Geczy (SBN 349594)
LEGAL AID FOUNDATION OF LOS ANGELES
1550 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 640-3950
Email: smyers@lafla.org
        sjoolharzadeh@lafla.org
        igeczy@lafla.org

*Attorneys for Plaintiffs,*
*Gladys Zepeda, Miriam Zamora,*
*James Haugabrook, Pete Diocson Jr.,*
*Marquis Ashley, and Ktown for All.*

*[Additional Attorneys on Next Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| JANET GARCIA, et al. | CASE NO. 2:19-cv-06182-DSF-(MBK) |
| Plaintiffs, | Assigned to Honorable Dale S. Fischer |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS RE: DISCOVERY ABUSES** |
| CITY OF LOS ANGELES, a municipal entity; | |
| Defendant. | *[Filed Concurrently with Declaration of Shayla R. Myers; Declaration of Catherine Sweetser; Declaration of Michael Bates; Request for Judicial Notice; [Proposed] Order Granting Request for Judicial Notice; and [Proposed] Order]* |
| | Complaint Filed:    July 18, 2019 |
| | **Hearing Date:** May 5, 2025 |
| | **Hearing Time:** 1:30 PM |
| | **Location:**    Courtroom 7D |

1

Catherine Sweetser (SBN 271142)
UCLA LAW CLINICS
385 Charles E. Young Drive East
Los Angeles, CA 90095
Telephone: 310-267-5068
Email: csweetser@sshhzlaw.com

*Attorneys for Plaintiffs Janet Garcia,*
*Gladys Zepeda, Miriam Zamora,*
*James Haugabrook, Pete Diocson Sr.,*
*Marquis Ashley, and Ktown for All.*
John C. Washington (SBN 315991)

SCHONBRUN SEPLOW HARRIS HOFFMAN &
ZELDES LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Telephone: (310) 396-0731
Email: jwashington@sshhzlaw.com

*Attorneys for Plaintiffs Janet Garcia,*
*Gladys Zepeda, Miriam Zamora,*
*James Haugabrook, Pete Diocson Sr.,*
*Marquis Ashley, and Ktown for All.*

Ingrid Marie Haslund Petersen (SBN 313927)
Andrew J. Morrill (SBN 316447)
KIRKLAND & ELLIS LLP
555 S. Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Email: ingrid.petersen@kirkland.com
        drew.morrill@kirkland.com

*Attorneys for Plaintiffs, Ktown for All,*
*Janet Garcia, Peter Diocson Sr., and*
*Marquis Ashley.*

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

Nicholas J. Hoffman (SBN 284472)
Aria Hangval (SBN 336933)
Max Bogost (SBN 346943)
MCGUIREWOODS LLP
355 S. Grand Avenue, Suite 4200
Los Angeles, CA 90071-3103
Telephone: (213) 457-9840
Facsimile: (213) 457-9877
Email: nhoffman@mcguirewoods.com

*Attorneys for Plaintiffs Janet Garcia,
Gladys Zepeda, Miriam Zamora,
Pete Diocson Sr., Marquis Ashley,
and Ktown for All.*

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

PLEASE TAKE NOTICE that on May 5, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 7D of the above-entitled Court located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, James Haugabrook, Pete Diocson Sr., Marquis Ashley, and Ktown for All will, and hereby do, move this Court, pursuant to its inherent authority and Rule 37(b) of the Federal Rules of Civil Procedure for an order granting sanctions in their favor and against Defendant City of Los Angeles. Sanctions are warranted because the City has continually obstructed and failed to cooperate with discovery in this case, including for the most foundational documents. Plaintiffs and the Forensic Examiner have uncovered thousands of documents, videos, and photographs that the City has withheld in violation of the Federal Rules, this Court's Local Rules, and this Court's Orders. Due to the severity and frequency of the City's conduct, as well as the lack of other deterrents to stop the City from flouting its discovery obligations, Plaintiffs move for entry of order granting terminating sanctions pursuant to Federal Rule 37(b)(2)(C). In addition to the above relief requested, Plaintiffs move for entry of an order granting monetary sanctions pursuant to Federal Rule 37 (b)(2)(C).

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities attached hereto; the Declarations of Shayla Myers, Michael Bates, and Cathy Sweetser, and exhibits attached thereto; and Plaintiffs' Request for Judicial Notice, filed concurrently with this motion; the papers and pleadings on file in this matter; and on such further argument as the Court may consider at the hearing on this matter.

This motion follows a conference between counsel pursuant to Local Rule 7-3 that occurred on March 6, 2025. The City opposes this motion. The parties agreed to the following briefing schedule: City's Opposition will be filed no later than April 7, 2025. Plaintiffs' Reply, if any, will be filed no later than April 21, 2025.

DATED: March 18, 2025              Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

*/s/ Shayla Myers*
Shayla Myers

*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, Pete Diocson Sr., Marquis Ashley, James Haugabrook, and Ktown for All*

UCLA LAW CLINICS

*/s/ Catherine Sweetser*
Catherine Sweetser

*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, James Haugabrook, Pete Diocson Sr., Marquis Ashley, Janet Garcia, and Ktown for All*

SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP

*/s/ John Washington*
John Washington

*Attorneys for Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, James Haugabrook, Pete Diocson Sr., Marquis Ashley, and Ktown for All.*

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

1

2

3

KIRKLAND & ELLIS LLP

*/s/ Ingrid Petersen*

Ingrid Petersen

*Attorneys for Plaintiffs Ktown for All, Janet Garcia,
Peter Diocson Sr., and Marquis Ashley*

MCGUIREWOODS LLP

*/s/ Max Bogost*

Max Bogost

*Attorneys for Plaintiffs Janet Garcia,
Gladys Zepeda, Miriam Zamora, Pete Diocson Sr.,
Marquis Ashley, and Ktown for All.*

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................11

II.     STATEMENT OF FACTS ..................................................................12

        A.    Plaintiffs' Motion to Compel .................................................14

        B.    Proceedings in front of the Special Master ...........................16

              1.    Plaintiffs' Motions re: the City's production of data ..............16

              2.    Plaintiffs' Joint Stipulation re: Contempt.................................17

              3.    Plaintiffs' March 22, 2022 Motion for Sanctions....................18

              4.    Plaintiffs' Ex Parte Application to Extend the Discovery Cutoff
                    and Appoint a NFE .................................................................18

              5.    Plaintiffs' Second Sanctions Motion .........................................19

        C.    Post-Discovery, Plaintiffs Have Continued to Discover
              Additional Documents Never Produced by the City .........................20

              1.    Discovery of Additional Documents in Response to Third Party
                    CPRAs ..................................................................................20

              2.    The NFE's Collection of Additional Documents ....................21

                    a.    HHAR for WPIMS Case No. 71847 ..............................21

                    b.    Checklists for Case Nos. 80918 and 73136 ..................22

              3.    Photos and Video in the Litigation Google Drive...................23

III.    ARGUMENT.......................................................................................25

        A.    The City violated Judge Abrams's 2021 Court Order ......................25

        B.    The Court Should Grant Terminating Sanctions .................................26

              1.    The City Has Acted in Bad Faith...............................................26

              2.    The City's Discovery Abuses are Related to the Plaintiffs'
                    Claims ..................................................................................28

              3.    The Ninth Circuit's Test for Terminating Sanctions is Easily
                    Met ........................................................................................29

                    a.    The First Two Factors Weigh in Favor of Terminating

7

                    Sanctions Because the City Violated a Court Order ...... 29

          b.    Plaintiffs Have Been Severely Prejudiced In Their
                Ability to Prove Their Claims ......................................... 30

          c.    Lesser Sanctions Will Not Remedy the Harm ............... 32

    C.    The Court Should Award Monetary Sanctions Because the City
          Violated a Court Order City .................................................... 35

IV.       CONCLUSION ............................................................................. 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adriana Intern. Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. ...................................................................27, 29

*AECOM Energy & Constr., Inc. v. Topolewski*,
  No. 217CV05398RSWLAGRX, 2022 WL 595937 (C.D. Cal. Feb.
  25, 2022) ..................................................................................24

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) .............................................................25

*Cassar Indus., Inc. v. Horizon Glob. Americas, Inc.*,
  No. 18-CV-07280-SK, 2019 WL 9441664 (N.D. Cal. Dec. 3, 2019).....................29

*City of Los Angeles v. Pricewaterhousecooper LLC*,
  17 Cal. 5th 46 (2024).....................................................................33

*Computer Task Group, Inc. v. Brotby*,
  364 F.3d 1112 (9th Cir. 2004) .......................................................29, 30

*Conn. Gen. Life. Ins. Co. V. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) ..................................................25, 28, 32

*Henry v. Gill Ind. Inc.*,
  983 F.2d 943 (9th Cir. 1993) ....................................................26, 28, 32

*Jerry Beeman & Pharmacy Services, Inc. v. Caremark Inc.*,
  322 F.Supp.3d 1027.......................................................................28

*Malone v. U.S. Postal Serv.*,
  833 F.2d 128 (9th Cir. 1987) ...........................................................29

*Nat. Hockey league v. Met. Hockey Club*,
  417 U.S. 639 (1976) ......................................................................33

*North American Watch Corp. v. Princess Ermine Jewels*,
  786 F.2d 1447 (9th Cir. 1986)............................................................25

*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997) ...........................................................31

*Phoceene Sous-Marine v. U.S. Phosmarine, Inc.*,
    682 F.2d 802 (10th Cir. 1982) ................................................................ 27

*U.S. v. Sumitomo Marine and Fire Ins. Co., Ltd.*
    617 F.2d 1365 (9th Cir. 1980) .............................................................. 33

*Valley Eng'rs Inc. v. Electric Eng'g Co.*,
    158 F.3d 1051 (9th Cir. 1998) ........................................................ 28, 32

*Wanderer v. Johnston*,
    910 F.2d 652 (9th Cir. 1990) ................................................ 24, 25, 31, 33

*Wyle v. R.J. Reynolds Ind. Inc.*,
    709 F.2d 585 (9th Cir.  ) ...................................................................... 32

**Statutes**

Civil Code Section 2080 .............................................................................. 27

**Rules**

California Constitution Article 1, Section 3 and 7 ................................... 27

Fed. R. Civ. P. 26 .............................................................................. *passim*

Fed. R. Civ. P. 34 ..................................................................................... 18

Fed. R. Civ. P. 37 ................................................................................. 8, 24

Fed. R. Civ. P. 37(b)(2)(A) ....................................................................... 24

Fed. R. Civ. P. 37(b)(2)(C) ....................................................................... 34

Fed. R. Civ. P. 53(a)(1)(C) ....................................................................... 15

Fed. R. Civ. P. 72(a) ................................................................................. 24

Local Rule 7-3 ............................................................................................ 4

## I.    INTRODUCTION

By this motion, Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, James Haugabrook, Pete Diocson Sr., Marquis Ashley, and Ktown for All seek terminating sanctions against the City of Los Angeles pursuant to Rule 37(b) of the Federal Rules of Civil Procedure and this Court's inherent authority, based on the City's repeated discovery abuses in this case.  Those abuses, starting from the City's consistent and material misrepresentation of the record to "expedite [one of the Plaintiff's] dismissal from the case" to its refusal, even now, to produce thousands of documents responsive to court orders, demonstrates the City's disregard for its obligations under Rule 26 of the Federal Rules of Civil Procedure and this Court's authority.

Plaintiffs' Motion for Sanctions re: Discovery Abuses is filed alongside Plaintiffs' Motion for Sanctions re: Spoliation of Evidence. *See* Dkt. 302. That motion outlines the City's alteration and fabrication of key evidence in this case. But the City's misconduct did not start or end with the spoliation of evidence. As outlined in this motion, the City has made numerous material misrepresentations to Plaintiffs and the Court, obstructed Plaintiffs' attempts to obtain discovery, and ignored court orders and sanctions issued against it.

Now, as part of the forensic examination ordered by this Court to investigate the City's spoliation of evidence, Plaintiffs and the neutral forensic examiner (NFE) have uncovered thousands of photos, videos, and other documents withheld by the City in violation of court orders and sanctions already issued in this case. The disclosure of these documents, which no orders from this Court could shake free, demonstrates the City's clear disregard for its discovery obligations, to say nothing of Plaintiffs' right to access justice and the Court's authority to administer it.

Taken alongside the City's alteration and fabrication of critical evidence,  there is ample evidence in the record that the City acted in bad faith, its conduct prejudiced Plaintiffs, and nothing short of terminating sanctions will suffice to address the City's

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

misconduct, remedy the harm it has caused to Plaintiffs and their case, and deter this conduct in the future.  Terminating sanctions and monetary sanctions are more than warranted here.

## II.   STATEMENT OF FACTS

Plaintiffs filed this case in July 2019, challenging the constitutionality of the City's practices of seizing and destroying unhoused people's belongings during scheduled and unannounced "encampment cleanups." Dkt. 1. Plaintiffs brought the case seeking declaratory and injunctive relief to stop the constitutional violations, along with damages for the individual plaintiffs. *Id.*

Discovery began in October of 2019 and closed on September 26, 2022.[1] Plaintiffs propounded 49 Requests for Production of Documents ("RFPs") in October 2019, in the hopes of meeting and conferring and limiting discovery disputes in the future. Declaration of Shayla Myers ("Myers Decl.") at ¶4. As relevant here, Plaintiffs sought documents in three categories: 1) documents related to the Specific Incidents of cleanups enumerated in the Second Amended Complaint ("SAC"); (2) documents related to additional incidents not necessarily enumerated in the SAC ("additional incidents"); and (3) the City's written policies and procedures, forms, and instructions and training materials related to cleanups and enforcement of LAMC 56.11 (RFP Nos. 11-19, 23, 26, 29). *Id.* at ¶5, Exh. A.

The City declined to conduct a Rule 26 conference until the pleadings in the case were set; however, it provided Plaintiffs with evidence it deemed relevant: some policy documents and two large PDFs that included Health Hazard Assessment Reports (HHARs) written by environmental compliance inspectors (ECIs) to

---

[1] The record in this case is substantial and contains far more detail and evidence of the City's misconduct than Plaintiffs can outline here. *See e.g.*, Dkt. 122, 165, 216, 302. Where feasible, Plaintiffs have attempted to avoid duplication by providing citations to evidence already in the record.

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

document cleanups, Health Hazard Checklists ("Checklists") used by ECIs to identify health hazards, PDFs of photos, and Los Angeles Police Department documents. *Id.* at ¶6. These documents related to the cleanups for four of the seven individual plaintiffs; the City failed to produce any documents for cleanups alleged by Plaintiff James Haugabrook, Gladys Zepeda, and Miriam Zamora. *Id.* at ¶7.

In November 2019, Plaintiffs raised issues with the City's production, including the failure to produce any documents related to Mr. Haugabrook's claims. *Id.* at ¶8. The City Attorney's office responded that "the City does not have any records relating to Haugabrook's alleged incident in "March 2019" for a rapid response at or around "Figueroa St., between 53rd St. and 52nd Place." Myers Decl. ¶10; Exh. B. According to the City, "The incident either did not occur, or if it did, the incident occurred at a different location, on a different date, or both." He suggested that Plaintiffs had "fail[ed] to investigate the basis of Haugabrook's claims before filing suit." *Id.*[2]

In January 2020, in an effort to "expedite Mr. Haugabrook's dismissal from the case," the City produced documentation from 22 encampment cleanups, which the City represented were the reports for "all cleanups conducted in South LA in March 2019 for the purpose of expediting Haugabrook's dismissal." Myers Decl. ¶¶10-11; Exh. B. Three separate attorneys for the City made this representation in sworn declarations to the Court, as well as in the Joint Rule 26 report. Myers Decl. ¶¶12-14. *See e.g.*, Dkt. 29-3, ¶5; Dkt. 42-2, ¶9; Dkt. 122-8, Exhs. 36-37; Dkt. 76 at 10. The City continued to assert this for over a year. The City engaged in a similar pattern with Ms. Zepeda and Ms. Zamora. Myers Decl. ¶29. *See e.g.* Dkt. 122 at 48.

---

[2] The City's failure to produce documents related to Mr. Haugabrook's claim are outlined in further detail in Plaintiffs' Ex Parte Application for Appointment of a Neutral Forensic Examiner, Dkt. 165 at 10-13, and accompanying declarations and evidence, Dkt. 165-3.

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

At the same time, however, the City refused to produce data from LASAN's databases showing the dates and locations of cleanups, making it impossible for Plaintiffs to dispute the City's claims. Myers Decl. ¶¶21-29. In December 2020, after significant back and forth between the parties and under threat of a motion to compel, the City finally agreed to 1) produce all data from databases, including WPIMS, which the City contended included records of all cleanups and 2) reproduce the documents related to the Specific Incidents in electronic format. *Id* at ¶¶23-29.

This cleanup data clearly showed LASAN conducted far more than 22 cleanups in "South Los Angeles" in March 2019. *Id.* In fact, the City had conducted numerous cleanups around Mr. Haugabrook's location, including a number of cleanups at precisely the same location and timeframe as he alleged in the SAC. One cleanup was conducted on March 27, 2019 (Case No. 53351) by the same team that had conducted two of the 22 South LA cleanups disclosed by the City, on the same day. Myers Decl. ¶¶12-13, 25-28. Likewise, with Ms. Zamora and Ms. Zepeda, the data from the City indicated there was a cleanup that occurred on 5th and Harvard on June 11, 2019 (case no. 56920), exactly as Plaintiffs had alleged. Myers Decl. ¶¶16, 29. And the City had records: in February 2021, the City produced records for the cleanup, including an HHAR, Checklist, and photos.[3] Myers Decl. ¶30.

### A.    Plaintiffs' Motion to Compel

In April 2021, after almost another year of back and forth, Plaintiffs moved to compel production of documents, including documents related to Plaintiffs' specific incidents and pattern and practice evidence in the form of reports and documents related to other cases. *See* Dkt. 122. In opposition, the City represented it had agreed

---

[3] As outlined in Plaintiffs' Interim Briefing re: NFE, Dkt. 263 and Motion for Sanctions re: Spoliation, Dkt. 301, the forensic examiner provided significant evidence that the reports and checklist for Case No. 56920 and 53351 had been materially altered immediately prior to production.

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

to produce all documents related to specific incidents enumerated in the complaint, would search for and produce policy and training documents, and otherwise contested the relevance of documents related to any other cleanups. Dkt. 122 at 5-6.

As relevant here, on April 28, 2021, Judge Abrams unequivocally ordered the City to produce the following: (1) all documents related to the Specific Incidents alleged in the SAC and to meet and confer with Plaintiffs about the documents related to cleanups impacting Ms. Zepeda, Ms. Zamora, and Mr. Haugabrook; (2) six categories of documents related to 100 additional incidents identified by Plaintiffs from the databases provided to them; and (3) the City's Written Policies and Training Materials, including exemplars and instructions from January 1, 2018, forward, relating to LAMC 56.11. Abrams Order at 17, 19. *Id.* The court also made it clear that the City had an ongoing obligation to produce documents pursuant to Rule 26. *Id.* He ordered Plaintiffs to identify the cases by May 12, 2021 and gave the City until June 9, 2021 to produce all responsive documents. *Id.* at 15, 19.

In May 2021, when the parties met and conferred as required by Judge Abrams's order, Plaintiffs raised concerns that the data sets provided to Plaintiffs were incomplete, and it was impacting Plaintiffs' ability to identify appropriate Additional Incidents. Myers Decl. ¶32. The City refused to answer any questions or discuss any of Plaintiffs' concerns. On incomplete information, Plaintiffs provided their list of 100 Additional Incidents. Myers Decl. ¶33; Ex. C.

On May 12 and June 9, 2021, the City produced documents responsive to Judge Abrams's order, including a number of documents for cleanups impacting James Haugabrook from March 2019, records the City had insisted did not exist. *Id.* at ¶38. There were still far less records than Plaintiffs expected. *Id.* at ¶¶38-40. Plaintiffs notified the City of issues it had identified with the City's production of documents, including, as relevant here, missing documents from the City's production of documents and the organization of the production. Myers Decl. ¶41; Exh. D at 10. In response, the City asserted that Plaintiffs would have to identify the

case numbers and specific documents they believed had not been produced, before it would meet and confer about any discrepancies. Myers Decl. ¶42, Exh. E. This pattern continued for the next year—Plaintiffs consistently sent emails and letters to the City between July 2021 and September 2022, identifying documents that were missing from the City's production. *See e.g.* Myers Decl.¶¶40-45, 55-56; Exh. E; F; Exh. G; Exh. I; Sweetser Decl. ¶¶ 5,  Exh. D; Dkt. 218 Exh. C, E, G, L, Q. The City responded by producing some documents or it did not respond at all.

### B.    Proceedings in front of the Special Master

In June 2021, Plaintiffs propounded additional interrogatories and RFPS seeking, for example, information related to the City's databases. Myers Decl. ¶46. The City objected to every request and indicated its intention to seek the appointment of a Special Master to oversee the parties' discovery. *Id.* Given the number of outstanding issues and the time associated with seeking court intervention, Plaintiffs agreed to the City's demand. *Id.* at ¶47. This Court appointed Special Master Judge Ann Kough (Ret.) ("Special Master") "under Fed. R. Civ. P. 53(a)(1)(C) to resolve the parties' discovery disputes on an expedited basis and supervise the parties' fact discovery on an ongoing basis." Dkt. 139. Thereafter, the City refused to respond to any discovery without input from the Special Master, forcing Plaintiffs to seek intervention or respond to a request for a protective order, or both. Myers Decl. ¶48.

### 1.    Plaintiffs' Motions re: the City's production of data

In Plaintiffs' introductory letter brief to the Special Master in September 2021, Plaintiff raised the deficiencies with the City's production of data, including the City's inexplicable withholding of columns of like "cross streets," which had made the data virtually unusable. Sweetser Decl.  ¶2 Exh. A. In her September 2021 Guidance, the Special Master unequivocally instructed the City to produce all of the columns. Sweetser Decl. ¶4, Exh. C.  The City did not object.

The City provided Plaintiffs with an excel spreadsheet of data from WPIMS

in October 2021 with additional columns, including "Cross Street." But this data set still did not contain all of the relevant rows or columns. Sweetser Decl.  Exh. D. Plaintiffs again raised the database production with the Special Master, painstakingly laying out evidence the data set was incomplete. *See id.* (outlining Plaintiffs' efforts to obtain the complete data sets from the City). In response, the City argued only that Plaintiffs had not *proven* data had been excluded. *Id.,* ¶6, Exh. E. The Special Master ruled in Plaintiffs' favor, ordering the City, yet again, to produce all columns and rows. Sweetser Decl.  ¶7; Exh. F. In December 2021, a year after the City had agreed to produce "all data" from the databases and two and a half years after Plaintiffs filed the case, the City produced a yet another data set listing thousands of additional cleanups and additional columns of data. Myers Decl. ¶52.

### 2.    Plaintiffs' Joint Stipulation re: Contempt

In addition to withholding individual documents related to various cleanups, which Plaintiffs painstakingly identified over the course of a year, the City also inexplicably failed to produce Online Encampment Authorizations ("OEAs") for most of the Specific and Additional Incidents, even though OEAs were specifically covered by the Abrams Order. Sweetser Decl.  ¶H. From July 2021 to February 2022, Plaintiffs informed the City no less than 7 times they had still had not produced OEAs for the cleanups; in the rare instance the City responded, it insisted, without support, that it had. *See* Sweetser Decl. ¶9, Exh. H (spelling out Plaintiffs' considerable efforts to obtain the OEAs). In January 2022, Plaintiffs served their portion of a Joint Stipulation re: Contempt. Only then did counsel for the City finally acknowledge that it had not, in fact, produced the required documents. *See* Myers Decl. ¶53,  Exh. J at 4 (City's February 1, 2022 Email to Plaintiffs) ("While we believed these were produced in the City's June productions, we now know they were not"). The City Attorney's Office agreed to produce the documents and pay the Plaintiffs' requested monetary sanction in the form of its fees, if Plaintiffs withdrew the Joint Stipulation.

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

*Id.* To preserve judicial resources, Plaintiffs agreed. Myers Decl. ¶¶53-54. Only then, six months after the deadline passed, did the City turn over an entire category of documents it insisted it had produced, but had not. The City did not, however, pay Plaintiffs' attorneys fees. Myers Decl. ¶54. .

### 3.    Plaintiffs' March 22, 2022 Motion for Sanctions

Throughout the fall and winter 2021-2022, Plaintiffs still continued to identify documents the City failed to produce related to the Specific and Additional Incidents. Myers Decl. ¶55. In March 2022, Plaintiffs filed a motion for sanctions with the Special Master, including as relevant here, because the City still refused to produce some documents related to James Haugabrook and had not disclosed whole entire other categories of records kept by the City related to cleanups. *See* Dkt. 169-11; 12; 15; 16. The Special Master declined to grant sanctions and ruled the City did not have to turn over additional documents related to Mr. Haugabrook. Dkt. 168. Plaintiffs objected to this Court, pursuant to the Court's appointment order. Dkt. 175. In response, this Court declined to adopt the Special Master's recommendation in full and instead, ruled that "the City may <u>not</u> withhold any additional documents it identifies that have not yet been produced regarding Haugabook's claims." Dkt. 198 (emphasis in original). Further, this Court ruled that just because "Plaintiffs were not aware of a certain database or certain type of document – and therefore did not specifically request it from Judge Abrams – is not grounds to deny a later request for that discovery." *Id.*  Finally, this Court reiterated Judge Abrams' reminder to the parties to abide by their discovery obligations—a warning the City did not take seriously. *Id.*

### 4.    Plaintiffs' Ex Parte Application to Extend the Discovery Cutoff and Appoint a NFE

In April 2022, as the latest deadline to complete discovery was approaching, Plaintiffs still had a number of outstanding issues remaining, including two depositions the Special Master ordered the City to reopen after the City finally

18

turned over documents related to cleanups impacting Mr. Haugabrook and another plaintiff. Dkt. 16, 164-2. Plaintiffs also had uncovered evidence related to the alteration and fabrication of the City's documents that necessitated Plaintiffs' request to appoint a neutral NFE. Dkt. 164 at 4; Dkt. 165. This Court modified the scheduling order for the fourth time and appointed the NFE.[4] Dkt. 172, 184.

### 5.    Plaintiffs' Second Sanctions Motion

Despite this Court's admonition, the City continued to force Plaintiffs to identify documents before the City would produce them. *See* Myers Decl. ¶56; Exh. K. In August 2022, Plaintiffs sent the City yet another painstaking letter, identifying a number of outstanding issues, including documents for a cleanup impacting Mr. Haugabrook on May 7, 2019, and as relevant here, a list of numerous cleanups in which the HHAR listed more photos taken than were actually produced *Id.* The City failed to address these or myriad other issues. *Id.*

In September 2022, Plaintiffs brought a second sanctions motion, requesting the Special Master order the City to conduct an additional search for and to produce all responsive documents related to the 100 Specific Incidents and Additional Incidents and affirm all documents had been produced. Dkt. 216-2, 218.  The City objected, arguing that Fed. R. Civ. P. 34 does not require such additional search or affidavit and that "if Plaintiffs can identify specific documents which have not been produced the City will search for those specific documents." Dkt. 216-3 at 3..

On September 26, 2022, the Special Master agreed with Plaintiffs and recommended that within 15 days, the City: (1) "identify the methods it has used to locate responsive documents; (2) "indicate why, if known, any documents the City has represented not to exist do not in fact exist; (3) "provide an affidavit affirming

---

[4] The facts and circumstances related to the Court's appointment of the forensic examiner are well known to the Court and are detailed in Plaintiffs' additional Motion for Sanctions re: Spoliation, Dkt. 302, filed on March 13, 2025.

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

that all responsive documents in the City's possession or under its control, have been produced". Dkt. 216 at 3-4. On October 27, 2022, this Court adopted the Special Master's recommendations. Dkt. 224.

In November 2022, the City provided Plaintiffs with a declaration from Salvador Rosales, a Chief Environment Compliance Inspector for LASAN. Myers ¶57, Exh. L. Mr. Rosales describes the methods used to search for and locate responsive documents related to the Specific and Additional Incidents. *Id.,* Ex. L at ¶4. As required by the Court's order, Mr. Rosales declared that "all non-privileged responsive LASAN documents located through the diligent search efforts described in this declaration have been produced to Plaintiffs." *Id.* The City also produced declarations from counsel for the City, including the City Attorney's office and the City's outside counsel. Myers Decl. ¶58; Exh. M.

### C.    Post-Discovery, Plaintiffs Have Continued to Discover Additional Documents Never Produced by the City

Despite the clear obligation of the City to produce a discrete number of documents responsive to Plaintiffs' requests, and even after discovery has closed, Plaintiffs have continued to locate documents the City was ordered to produce almost four years ago, and in fact, had been sanctioned for not producing.

#### 1.    Discovery of Additional Documents in Response to Third Party CPRAs

In 2022, before discovery closed in this case, an LASAN employee named Michael Bates made a number of requests to the City under the California Public Records Acts ("CPRAs"), including as relevant here, documents related to encampment cleanups and documents related to the training of environmental compliance inspectors. Declaration of Michael Bates ("Bates Decl.") ¶17. In response, the City turned over documents to Mr. Bates that the City withheld from

Plaintiffs in discovery.[5] *Id.* Among the documents produced in response to his request for encampment cleanup documents were an HHAR for Case Number 71847 and 201 photos and 6 MP4s for Case number 91688—documents that fall clearly within the ordered discovery but were never produced to Plaintiffs. Myers Decl. ¶¶85, 90 94. The City also produced a PowerPoint presentation entitled "Hazard Health Checklist" in response to the request for training documents. Bates Decl. ¶22, Exh. F. To date, the City never produced these documents to Plaintiffs. Myers Decl. ¶59.

### 2.    The NFE's Collection of Additional Documents

In addition to discovering more than a hundred *versions* of HHARs and checklists related to the Additional and Specific Incidents, which this Court has already ruled were "altered, modified, and created relevant to Plaintiffs' claims during the course of litigation ," the NFE identified documents the City was ordered to turn over to Plaintiffs, but never did. Myers Decl. ¶¶ 60-62. Dkt. 271 at 1. These documents include a HHAR for Case No. 71847 and Checklists for Health Hazard 73136 and 80918. *Id.* Plaintiffs identified these documents in their interim briefing to this Court, Dkt. 263 at 11-12, but the NFE has since provided the parties with additional context related to the creation and production of these documents, which illustrates even further, the City's misconduct.

### a.    HHAR for WPIMS Case No. 71847

First, the City failed to turn over an HHAR case number 71847, one of the Additional Incidents, which occurred on January 23, 2020 around the location plaintiffs Gladys Zamora and Miriam Zepeda often stayed. Myers Decl. ¶60. Instead, the City produced a slip sheet, stating that "Additional information and/or photos

---

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

cannot be found, employee's H drive was checked." Myers Decl. ¶61; Exh. N. And yet, the NFE easily collected four identical copies of the HHAR, spread out over each of the three main sources of documents the NFE searched, including in the H: drive, which the City said it searched; WPIMS, which is the location where employees were instructed to upload documents; and the Litigation Google Drive, which means the document was provided to the City Attorney's office, but was never produced. Myers Decl. ¶¶62-64. In fact, both HHARs on the Litigation Google Drive are in obviously-labeled folders clearly indicating the reports are related to the Additional Incidents. Myers Decl. ¶¶61-66. One subfolder in which both documents are located, is titled "Report - Uploaded 9-21-2021," the same date the PDFs were created, suggesting the documents were uploaded to the Litigation Google Drive more than six months before this Court admonished the City to produce all documents, Dkt. 198; eight months before this Court issued sanctions against the City for not producing documents, Dkt. 224; and more than a year before the City provided Plaintiffs with sworn declarations attesting to the search for documents and the completeness of its production. Myers Decl. ¶57. And as outlined above, the report was turned over to Mr. Bates in 2022. Bates Decl.¶20, Exh. B.

### b.    Checklists for Case Nos. 80918 and 73136

The City also failed to produce checklists for two cases: Case No. 73136, which occurred on February 10, 2020 (FORENSIC000333) and No. 80918, which occurred on May 20, 2020 (FORENSIC000374). Myers Decl. ¶¶67-68. The City produced HHARs for both cases on June 9, 2021, but no checklists. *Id.* In both two cases, the NFE located a copy of the Checklist in WPIMS, and both had been first inserted into WPIMS before Judge Abrams's deadline to produce all responsive documents. *Id.* The checklist for Case No. 73136 was uploaded on June 7, 2021, the same time as the HHAR. *Id.* The checklist for Case No. 80918 was uploaded to WPIMS on May 18, 2021, at the same time as the HHAR. Both HHARs were

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

produced to Plaintiffs but not checklists. Chief ECI Rosales attested that the checklist for Case No. 73136 could not be located. Myers Decl. ¶57, Ex. L at ¶¶24-25.

### 3.    Photos and Video in the Litigation Google Drive

By far the largest number of documents Plaintiffs have identified that the City withheld are over 1500 photos related to the Additional and Specific Incidents and more than 1400 JPG files of photos that were produced only as PDFs. Myers Decl. ¶¶69, 82. The City produced 6,765 unduplicated JPG and MP4 files related to the p Additional and Specific Incidents, so the 1504 photos not produced to Plaintiffs suggests that nearly one in five photos was withheld, despite an order to turn all of them over to Plaintiffs by June 9, 2021. Myers Decl. ¶69. *See* Abrams Order.

In April 2021, Judge Abrams ordered the City to turn over photos related to the Additional and Specific Incident. *Id.* In the past four years, the City has produced approximately 6,800 unduplicated photos, in addition to the approximately 2,200 photos related to the Specific Incidents. Myers Decl. ¶86. Plaintiffs have aso repeatedly raised issues with both the form and sufficiency of the City's production of photos. *See e.g.* Myers Decl. ¶44, Exh. G; ¶56, Exh. K., p. 7 (identifying by WPIMS case number, a number of incidents in which the City produced less photos than were listed in the HHAR).

Now, in the course of the forensic examination, Plaintiffs have identified almost 3,000 additional image files the City never produced. Myers Decl. ¶81. Plaintiffs were able to identify these files only because the NFE searched the "Litigation Google Drive," "a file used by LASAN and the City Attorneys' Office to collect and upload documents to produce in discovery from clients during the pandemic." Dkt. 264 at 5; Myers Decl. ¶¶81-85. As part of the examination, he provided parties with a spreadsheet listing *all* files in the Drive and included relevant metadata as well as to whether the file had been produced in discovery. *Id.* at ¶69. This list gave Plaintiffs the unique opportunity to see many more documents in the

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

City's possession than were actually produced, along with their metadata, which included the file name, file path, and unique identifying information. *Id.* While this is by no means a list of all documents in the City's possession, the Litigation Google Drive contains over 22,000 files LASAN identified and turned over to the City Attorney's Office. *Id.* at ¶73.

As outlined in the accompanying declaration, Plaintiffs relied on the City's metadata and file structure to identify which WPIMS case numbers, if any, the files were associated with. *Id.* at ¶¶73-80. Of the 22,964 files in the Drive, 16,003 were associated with a WPIMS case number of either a Specific or Additional Incident. *Id.* at 79. Plaintiffs have no way of knowing whether each of these documents was relevant or should have been produced. However, the Google Drive included over 5,000 JPG and MP4 files related to the Specific and Additional Incidents that were not previously produced, even though the City was ordered to turn over all photos related to the Additional and Specific Incidents. Abrams Order at 15, 19.

Of the files Plaintiffs identified, there are 1,504 unique JPG and MP4 files that were not previously produced, relating to 30 separate Additional and Specific Incidents. Myers Decl. ¶69. Another 1400 JPG files related to the Specific Incidents had been previously produced only as PDFs, despite an agreement to reproduce them with metadata intact. *Id* at ¶82. While Plaintiffs have only the metadata for most of the photos and videos, rather than the files themselves, that metadata leaves little doubt about the identification of the files and the fact that files could have been produced. *See* Myers Decl. ¶¶81-94; Exh O (outlining the steps Plaintiffs used to confirm the files had not been produced).

In one instance (Case No. 91688) the City produced only 50 photos, even though the HHAR indicated there were 257 photos taken. The Google Drive contains 251 photos and 6 JPG files for that case. *Id.* at 85. All 257 photos and video files were given to Michael Bates by the City in response to his CPRA request, and the 50 produced to Plaintiffs are among the 257 produced to Mr. Bates. Bates Decl. ¶20,

Exh. C; Myers Decl. ¶94; Ex. R.  Some of the photos produced to Mr. Bates but not Plaintiffs were actually used as photos in the HHAR. *See* Bates Decl.  Exh. D; Myers Decl.  Exh. R.  In a number of other instances, the number of image files in the Google Drive match the number of files listed in the HHAR, even though the City produced far less than the listed number in discovery.  Myers Decl. ¶70.

In fact, the City does not dispute that nearly all of these photos and video should have been produced but were not--in response to Plaintiffs' disclosure of the documents and their request to the City to identify if any of the documents were in fact produced or if the City contended they did not need to be, the City disputed only 19 files. *Id.* at ¶88, Exh. Q. While Plaintiffs disagree with the City's determination as to at least seven files, *id.* at ¶¶89-94, there is no dispute that almost 3,000 unduplicated files were never produced, even after years of litigation and numerous court orders.

## III.   ARGUMENT

### A.    The City violated Judge Abrams's 2021 Court Order

Under Rule 37(b), a Court may impose sanctions "[i]f a party or a party's officer, director, or managing agent ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A); *Wanderer v. Johnston*, 910 F.2d 652, 657 (9th Cir. 1990) (explaining that sanctions are appropriate where a party is guilty of failing to produce documents or things as ordered by the court). Accordingly, violation of a Court Order is a "condition precedent" to imposing sanctions under Rule 37. *AECOM Energy & Constr., Inc. v. Topolewski*, No. 217CV05398RSWLAGRX, 2022 WL 595937, at *5 (C.D. Cal. Feb. 25, 2022) (internal citations omitted).

Judge Abrams entered the requisite order compelling the City to produce discovery almost four years ago. Dkt. 128. *See* Fed. R. Civ. P. 72(a). The Abrams Order has been reaffirmed on numerous occasions since then. *See, e.g.*, Dkt. 177 ("The Court reiterates Judge Abrams' reminder to the parties of their continuing duty

1  to supplement their discovery responses 'in a timely manner if the party learns that

2  in some material respect the disclosure or response is incomplete or incorrect"'); *see*

3  *also* Sweetser Decl. ¶4, Exh. 3.

4          The record, including prior rulings from the Special Master and this Court,

5  show the City has violated the Abrams Order numerous times and as outlined above,

6  continues to violate it. This is after sanctions by this Court and a sworn attestation by

7  a senior member of LASAN that all responsive documents had been produced. Myers

8  Decl. ¶57, Exh. L.  This alone justifies sanctions. *Wanderer v. Johnson,* 910 F.2d

9  652, 657 (9th Cir. 1990) (explaining that sanctions are appropriate where a party is

10  guilty of failing to produce documents or things as ordered by the court).

11          **B.     The Court Should Grant Terminating Sanctions**

12          With that predicate met, the next question is what sanctions are warranted. In

13  evaluating what sanctions to issue, the Court "consider[s] all incidents of [the party's]

14  alleged misconduct." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69

15  F.3d 337, 348 (9th Cir. 1995). Taking into account of all of the City's discovery

16  abuses, outlined here and in Plaintiffs' Motion for Sanctions re: Spoliation, Dkt. 302,

17  the City has "made it impossible for a court to be confident that the parties will ever

18  have access to the true facts." *Conn. Gen. Life. Ins. Co. V. New Images of Beverly*

19  *Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Terminating sanctions are warranted.

20          **1.     The City Has Acted in Bad Faith**

21          Dismissal of an action is appropriate under Rule 37(b) for violations of a

22  discovery order "only where the failure to comply is due to willfulness, bad faith, or

23  fault of the parties." *North American Watch Corp. v. Princess Ermine Jewels,* 786

24  F.2d 1447, 1450-51 (9th Cir. 1986) (quoting *Wyle v. R.J. Reynolds Ind. Inc.,* 709 F.2d

25  585, 589 (9th Cir. 1983)). "Disobedient conduct not shown to be outside the control

26  of the litigant is all that is required to demonstrate willfulness, bad faith, or fault."

27  *Henry v. Gill Ind. Inc*., 983 F.2d 943, 948 (9th Cir. 1993) (upholding dismissal of

28

claims when the sanctioned party could not provide any legally relevant or plausible explanations why his discovery misconduct is outside his control). Here, there is ample evidence of willfulness, fault, and bad faith.

First, the record could hardly be clearer that the City's failure to produce documents was willful. Over four years ago, the City was ordered to turn over documents related to a discrete number of cleanups (which plaintiffs identified using the City's own case identification numbers). Abrams Order at 15. Yet for years, and even now, Plaintiffs have continued to identify documents the City failed to produce. Plaintiffs have long put the City on notice, in scores of letters, that the City had not produced all responsive documents. Over a year after Judge Abrams issued his order, this Court issued sanctions against the City and ordered it to provide Plaintiffs with affidavits outlining its search for responsive documents. Dkt. 224.  The assumption of course was that the City had failed to properly search for responsive documents. But the NFE, appointed to investigate other misconduct, easily located documents in the locations Salvador Rosales attested the City looked for the documents. Myers Decl. ¶¶64, 67.  And missing documents were in those locations at the time he attested the City had turned over all documents in the City's possession. *Id.,* ¶57, Exh. L. Likewise, the photos and MP4s are in files in the Drive used by LASAN to provide documents to the City Attorney's office. In many instances, the number of files in the Google Drive (produced and unproduced) correspond precisely to the number of photos listed in the HHAR, yet in at least 10 instances, the City inexplicably produced only some of the documents, leaving the rest in the Google Drive. Myers Decl. ¶85, Exh. O. The only conclusion fairly reached is the City's failure to produce the documents was, at the very least, "willful." *See Henry,* 983 F.2d at 948.

But there is more than sufficient evidence that the City's conduct was not just willful, but in bad faith. The City and its attorneys have stonewalled Plaintiffs' attempts to obtain basic discovery about central issues in the case. As outlined above, they have consistently made misrepresentations about discovery to Plaintiffs, the

Special Master, and this Court. They have also impermissibly shifted the burden to Plaintiffs to prove documents existed, even after being ordered to produce them. Beginning with attesting that the City had not conducted cleanups at James Haugabrook's location; to selectively withholding reports and representing that the lack of documentation proved the cleanups did not occur; to passing off datasets as complete when they were missing critical data; to disputing or ignoring Plaintiffs' multiple letters outlining the City's failure to produce documents, only to admit in response to pending motions for sanctions that the documents had not, in fact been turned over; to now, failing to turn over no less than one in four photos of cleanups after attesting, under penalty of perjury, that all documents had been produced--the record in this case is replete with evidence of bad faith.

### 2. The City's Discovery Abuses are Related to the Plaintiffs' Claims

Requested sanctions "must be specifically related to the particular claim which was at issue in the order to provide discovery" in order to comport with due process concerns. *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1413 n. 6 (9th Cir. 1990). Courts have long held that suppression of evidence is sufficiently related to the claims for which the documents were relevant to justify terminating sanctions. *See Phoceene Sous-Marine v. U.S. Phosmarine, Inc*., 682 F.2d 802, 806 (10th Cir. 1982) citing *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349-54 (1909).

As with the documents the City altered and fabricated, the documents the City failed to produce go directly towards the dispositive issues in Plaintiffs' claims under the Fourth and Fourteenth Amendment of the U.S. Constitution and Article 1, Section 3 and 7 of the California Constitution, and Section 2080 of the Civil Code. The photos and video files documented the same cleanups the reports and checklists purported to document and are relevant for the same reasons. *See* Abrams Order at 15. And the presentation withheld by the City but produced to Mr. Bates instructed the City how to fill out the very documents at issue in Plaintiffs' Spoliation Motion—

including what constitutes an immediate threat to public health and safety, one of the central remaining dispositive issues in the case. These documents are central to the case and granting terminating sanctions in part because the City failed to produce them raise no due process concerns.

### 3. The Ninth Circuit's Test for Terminating Sanctions is Easily Met

Courts in the Ninth Circuit consider the following factors to determine if terminating sanctions are justified "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Henry v. Gill Ind.*, 983 F.2d 943, 948-49 (9th Cir. 1993) (citation omitted). The same test is used to review both the propriety of Rule 37(b) sanctions the Court's inherent authority. *Id., see also Jerry Beeman & Pharmacy Services, Inc. v. Caremark Inc*., 322 F.Supp.3d 1027, 1034 n. 6 (C.D. Cal. 2018). When a party engages in conduct as here, "factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). In assessing those factors, the critical question is "whether the discovery violations threaten to interfere with the rightful decision of the case. . . Dismissal is appropriate where a pattern of deception and discovery abuse made it impossible for the district court to conduct a trial with any reasonable assurance that the truth would be available." I*d. See also Conn. Gen. Life. Ins. v New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Applying the five factor test illustrates why terminating sanctions are appropriate.

### a. The First Two Factors Weigh in Favor of Terminating Sanctions Because the City Violated a Court Order

When a Court Order is violated, the first and second factors —(1) the public's

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

interest in the expeditious resolution of litigation; and (2) the court's need to manage its docket—will weigh in favor of terminating sanctions. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). Here is no exception. The City's misconduct, including its ongoing violation of Judge Abrams's order, Special Master Guidance, and this Court's orders, has forced Plaintiffs and this Court to devote significant time and resources to addressing the misconduct. The trial date has been postponed numerous times, even before this Court had to appoint a NFE to sort out the City's other misconduct. *See* Dkt. 112, 140, 154. Each of those delays has slowed down the resolution of this case and disrupted the Court's ability to manage its docket. The first two factors weigh in favor of terminating sanctions. *Id.*

### b. Plaintiffs Have Been Severely Prejudiced In Their Ability to Prove Their Claims

The third factor is satisfied if the disobeying party's actions impair the ability of the moving party "to go to trial" or "threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412; *Malone*, 833 F.2d at 131. The Ninth Circuit has held that the "[f]ailure to produce documents as ordered ... is considered sufficient prejudice." *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004) (quoting *Payne,* 121 F.3d at 508); *Cassar Indus., Inc. v. Horizon Glob. Americas, Inc.,* No. 18-CV-07280-SK, 2019 WL 9441664, at *4 (N.D. Cal. Dec. 3, 2019) .

Throughout this litigation, the City has turned the parties' discovery obligations on their heads—demanding Plaintiffs identify documents the City has failed to turn over, before it would produce them. Even when Judge Abrams issued a clear order for the City to turn over documents, the City's conduct continued. As a result, Plaintiffs had to expend considerable time and resources obtaining documents the City was already ordered to produce. Doing so prevented Plaintiffs from developing its litigation strategy. This seriously prejudiced Plaintiffs' ability to

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

prepare the case for trial.

The delay in producing documents (if the documents were produced at all) also severely impacted Plaintiffs' ability to develop its case. As a result of the City's misconduct, Plaintiffs have been frequently forced to proceed on an incomplete record. The City's misrepresentations about the completeness of the databases, coupled with its insistence that Plaintiffs move forward with incomplete information, impacted their ability to identify Additional Incidents as well as specific cleanups impacting the individual plaintiffs. The City's delay put Plaintiffs at a disadvantage when it came to depositions, both in terms of deciding how to allocate the limited number of depositions and what questions to ask. Plaintiffs were unable to ask City witnesses about documents that were produced after Plaintiffs conducted the depositions. *See Brotby*, 364 F.3d at 1116. In fact, Plaintiffs had to seek permission from the Special Master to reopen two depositions of ECIs—a year after the prior depositions were taken and at considerable cost to Plaintiffs--because ECIs identified documents related to the Plaintiffs' allegations and subject to the Abrams Order, but they had never been produced. *See* Dkt. 179, 186.

The City's failure to produce the training materials turned over to Mr. Bates, related to the Checklists also left Plaintiffs unable to question any of the ECIs, including the Chief ECI, about the document. *See* Bates Decl. ¶22, Exh. F; Myers Decl. ¶87, Exh. P. On its face, it is clear the training is highly relevant to central issues in the case, including the City's use of Checklists to document health hazards and the definition of an immediate threat to health and safety, as well as Plaintiff's Monel claims, but Plaintiffs had no opportunity to question any witnesses about the training, since it was never produced. *Id.*

And of course, Plaintiffs have not even seen most of the almost 1,500 photos uncovered by the NFE, let alone had a chance to integrate them into their litigation strategy. The photos uncovered in the Litigation Google Drive account for at least twenty percent of all photos related to the Additional Incidents and relate to more

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

than 30 different cases. Myers Decl. ¶83. In some cases, hundreds of photos were not produced, covering huge stretches of the cleanups. *Id.*¶85, Exh. O.  In fact, when defending its alteration and fabrication of documents, the City claimed that "the truth of every single cleanup is unequivocally documented in photographs and videos produced in this Action."  Dkt. 264 at 28.  The City failed to disclose e that it had withheld thousands of those photos.  The fact that the City views the photos as the best evidence of cleanups, after they were caught altering and fabricating documents, simply underscores the prejudice Plaintiffs suffered when the City withheld one in five of those photos.

As with all of the documents that came in piecemeal throughout the litigation, Plaintiffs have been "deprived of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (granting Defendant's motion for terminating sanctions because Plaintiffs' repeated "repeated failure to provide documents and information in a timely fashion prejudiced the ability of Exxon and VECO to prepare their case for trial").

All told, the City's decision to force Plaintiffs to expend significant resources chasing down so many records, only to withhold thousands of photos, videos and other documents "constitute[s] a clear interference with the plaintiffs' ability to prove the claims and obtain a decision in the case." *Wanderer v. Johnston,* 910 F.2d 652, 657 (9th Cir.). As with other cases where courts have issued terminating sanctions based on a repeated pattern of discovery abuses, "the existence of prejudice is palpable." *Id.*

### c.    Lesser Sanctions Will Not Remedy the Harm

The fifth factor weighs in favor of terminating sanctions because the City's misconduct amounts to a pattern of deception and discovery abuse that should lead this Court to believe that there is no reason a sanction less than dismissal would deter

the City's misconduct. *Anheuser-Busch*, 69 F.3d at 352. The City's misconduct began even before discovery in this case and has continued despite numerous instructions, warnings, and orders from the Court that put the City on notice that discovery noncompliance and litigation misconduct would not be tolerated.  *See Valley Eng'rs Inc.* 158 F.3d at 1057.

After years of discovery abuses, to say nothing of fabricating and altering documents, the discovery of over 3,000 files the City failed to turn over should be the last straw. The City was ordered to turn these documents over to Plaintiffs four years ago, and nothing—not repeated demands by Plaintiffs, interventions by the Special Master, sanctions by this Court, or the obligation of a key employee in LASAN to attest under oath that the documents had been produced—could shake the documents loose. The documents were uncovered only because of extraordinary circumstances: the appointment of a neutral NFE to investigate the City's widespread alteration and fabrication of document. Likewise, Plaintiffs discovered the remainder of the documents only because the City turned them over to a third party in response to a CPRA request. Plaintiffs have spent years identifying documents the City failed to produce. The fact that Plaintiffs are still identifying documents calls into question whether other documents exist that simply have not been discovered from other sources. *See Valley Eng'rs*, 158 F.3d at 1058 (terminating sanctions upheld after documents withheld in violation of a court order because "it was a reasonable inference that if there was other discovery material harmful to its case that its adversaries did not know about, it would be hidden forever").

Lesser sanctions also will not properly remedy the harms caused by the City's years of discovery abuses.  As with the fabricated and altered reports, the documents the City hid are documents Plaintiffs actively sought to prove its case, so excluding them would reward the City's misconduct and harm Plaintiffs. *Henry*, 983 F.2d at 948. *See also Wyle,* 709 F.2d at 590. Likewise, evidentiary sanction and presumptions will still force Plaintiffs to proceed on a record the Court can presume

will not allow it to get to the truth about the underlying issues.. *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (terminating sanctions appropriate when it is "impossible for a court to be confident that the parties will ever have access to the true facts").

Finally, as with Plaintiffs' spoliation motion, the need for deterrence counsels strongly in favor of terminating sanctions. The City's discovery abuses have gone on for years—resulting in the appointment of a special master and a NFE. Plaintiffs have had to prepare no less than five separate motions, just to get basic discovery. Plaintiffs like those who brought this case--a group of unhoused residents and volunteer advocates—rarely have the resources to challenge the City in court, let alone combat the kind of protracted discovery misconduct the City engaged in here.

On the other hand, the City of Los Angeles is the second largest city in the country, and the City Attorney's office is one of the largest municipal law offices in the country. Plaintiffs' Request for Judicial Notice ("RJN"), ¶1. To say the City makes frequent appearances before this Court is an understatement. And this is far from the first time the City have faced sanctions for its misconduct. *See e.g., City of Los Angeles v. Pricewaterhousecooper LLC*, 17 Cal. 5th 46, 71 (2024) (upholding discovery sanctions against the City for a "pervasive pattern of discovery misconduct"). *See also* RJN, ¶¶1-2, Exh. A-B. Severe sanctions, like those sought here, are appropriate not just "to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat. Hockey league v. Met. Hockey Club*, 417 U.S. 639, 643 (1976). *See also U.S. v. Sumitomo Marine and Fire Ins. Co., Ltd.* 617 F.2d 1365, 1370 (9th Cir. 1980) (harsh sanctions are particularly warranted when the bad actor is the Government, given their role in enforcing the law).

Courts have "considerable discretion to impose the extreme sanction of dismissal or default where there has been flagrant bad faith disregard of discovery duties." *Wanderer*, 910 F.2d at 655-56. Given the City's misconduct, from altering and fabricating evidence to making material misrepresentations and withholding

documents long after the entry of sanctions, the Court should exercise its discretion.

**C.   The Court Should Award Monetary Sanctions Because the City Violated a Court Order City**

Finally, monetary sanctions should also be imposed, because the City violated the 2021 Abrams Order. When a court order to permit discovery is violated, the Court, at a minimum, "must order the disobedient party…to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). The Court should grant sanctions in the amount of Plaintiffs' reasonable fees and costs incurred as a result of the City's discovery abuses.

## IV.   CONCLUSION

The City obstructed discovery, disobeyed this Court's orders, withheld significant and material evidence, and falsely claimed they produced all responsive documents. Doing so delayed this case and disrupted the Court's docket and severely prejudiced Plaintiffs. Lesser sanctions, such as preclusive sanctions, will not remedy the harm or effectively deter the City's bad faith conduct. Plaintiffs' Motion for Sanctions should be granted.

DATED: March 18, 2025          Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

*/s/ Shayla Myers*
Shayla Myers

*Attorneys for Plaintiffs Gladys Zepeda, Miriam Zamora, Pete Diocson Sr., Marquis Ashley, James Haugabrook, and Ktown for All*

UCLA LAW CLINICS

*/s/ Catherine Sweetser*
Catherine Sweetser

*Attorneys for Plaintiffs Gladys Zepeda, Miriam*

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

*Zamora, James Haugabrook, Pete Diocson Sr., Marquis Ashley, Janet Garcia, and Ktown for All*

SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP

*/s/ John Washington*
John Washington

*Attorneys for Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, James Haugabrook, Pete Diocson Sr., Marquis Ashley, and Ktown for All.*

KIRKLAND & ELLIS LLP

*/s/ Ingrid Petersen*
Ingrid Petersen

*Attorneys for Plaintiffs Ktown for All, Janet Garcia, Peter Diocson Sr., and Marquis Ashley*

MCGUIREWOODS LLP

*/s/ Max Bogost*
Max Bogost

*Attorneys for Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, Pete Diocson Sr., Marquis Ashley, and Ktown for All.*

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES

**LOCAL RULE 5-4.3.4 ATTESTATION**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

Dated: March 18, 2025          MCGUIREWOODS LLP


                               /s/ Max Bogost
                               Max Bogost

PLAINTIFFS' MOTION FOR SANCTIONS RE: DISCOVERY ABUSES