# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GARCIA, et al.,<br>        Plaintiffs,<br><br>            v.<br><br>CITY OF LOS ANGELES, et al.,<br>        Defendants. | 2:19-cv-06182-DSF-E<br><br>Order GRANTING IN PART<br>Plaintiffs' Motions for Sanctions<br>Re: Spoliation of Evidence (Dkt.<br>302) and Re: Discovery Abuses<br>(Dkt. 304) |

Plaintiffs Janet Garcia, Gladys Zepeda, Miriam Zamora, James
Haugabrook, Pete Diocson Sr., Marquis Ashley, and Ktown for All move
for an order granting terminating and monetary sanctions against
Defendant City of Los Angeles pursuant to Federal Rule of Civil
Procedure 37.  Dkts. 302, 304.  The City opposes.  Dkt. 308 (Opp'n).
For the reasons stated below, in the motions, at oral argument on May
5, 2025, and in Plaintiffs' supplemental briefing, the motions are
GRANTED in part.

## I. BACKGROUND

The factual and procedural background of this case is well-
documented in Plaintiffs' interim briefing, dkt. 263, the documents
cited, id. at 2-7, and Plaintiffs' motions for sanctions, dkts. 302 and 304.
The Court therefore provides only a brief overview.

In July 2019, Plaintiffs filed this action to challenge the
constitutionality of the City's practice of seizing and destroying the
belongings of unhoused individuals through its enforcement of Los
Angeles Municipal Code (LAMC) 56.11.  Dkt. 1; see also Dkt. 43 (SAC).

To enforce LAMC 56.11, the City deploys teams of sanitation workers
and LAPD officers to conduct cleanups of homeless encampments,
resulting in the alleged violations of Plaintiffs' constitutional rights.  Id.
at 69.

In October 2019, Plaintiffs propounded requests for production,
including a request for Health Hazard Assessment Reports (HHARs)
written by environmental compliance inspectors (ECIs) and Health
Hazard checklists (checklists) documenting encampment cleanups
"conducted by the City from 2016 to the present."  Dkt. 263 (citing Dkt.
165-10, Ex. 7 ¶ 34).  Plaintiffs also requested metadata for the
requested documents and all versions or drafts.  Id.

In April 2021, Plaintiffs moved to compel the City to produce
documents.  Magistrate Judge Paul Abrams granted their motion in
part, ordering the City to produce HHARs, checklists, and other
documents related to the encampment cleanups.  Dkt. 127.

Because the parties continued to have discovery disputes, the
Court granted their joint stipulation for appointment of a special
master "for the purpose of resolving the parties' discovery disputes on
an expedited basis and supervising the parties' fact discovery on an
ongoing basis."  Dkt. 139.

During discovery, Plaintiffs found evidence suggesting the City
had spoliated documents.  Dkt. 167.  In May 2022, the Court granted in
part Plaintiffs' *ex parte* application to appoint a neutral forensic
examiner (NFE).  Dkt. 184.  The Court explained that "a narrowly
tailored examination of the City's metadata by the NFE will clarify
when the City altered or created documents relevant to Plaintiffs'
claims, and whether this occurred during the course of litigation."  Id.
at 6.

In September 2022, Plaintiffs submitted a letter to the Special
Master, requesting further court intervention and sanctions based on
the City's noncompliance with Magistrate Judge Abrams's April 2021
order.  Dkt. 216-2.  In October 2022, the Court adopted the Special
Master's Recommendations and ordered the City (1) "to identify the

method(s) it has used to locate responsive documents": (2) "to indicate why, if known, any documents the City has represented not to exist do not in fact exist"; and (3) "to provide an affidavit affirming that all responsive documents in the City's possession or under its control, have been produced." Dkts. 216, 224. The Court also ordered that Plaintiffs "be allowed to seek an order from the Special Master requiring the City to conduct an additional search using specific additional search terms" and "be allowed to seek fees and costs incurred in the bringing of this motion." Dkts. 216, 224.

In June 2023, the NFE submitted an interim report, dkt. 256, and in July and August 2023, the parties filed interim briefing regarding the examination, dkts. 263, 264. After reviewing the parties' submissions, the Court found that "the City of Los Angeles has altered, modified, and created documents relevant to Plaintiffs' claims during the course of the litigation and has repeatedly failed to produce legitimately requested documents and versions of documents." Dkt. 271 at 1. The Court concluded that "the City's credibility has been damaged significantly" and that "spoliation has occurred during the course of the litigation—but the full extent has not yet been determined." Id. at 3. In its order providing the parties with a roadmap for the completion of the forensic examination, the Court stated that Plaintiffs could file a motion for sanctions, "outlining the extent of spoliation and proposed sanctions," within thirty days of the examination's completion. Dkt. 277.

In February 2025, the parties submitted the Final Report of the NFE, dkt. 290, and their joint report regarding the matching of documents collected by the NFE, dkt. 292.

On May 5, 2025, the Court heard oral argument from the parties on the two motions for sanctions. Dkt. 315. The Court ordered Plaintiffs to file a supplemental report detailing the extent of spoliation with specific examples. Dkt. 319 (Tr. of Hr'g on Sanctions) 38:20-39:23.

On July 16, 2025, Plaintiffs submitted their supplemental report summarizing the NFE's findings about evidence of spoliation and

discovery abuses related to HHARs, checklists, and posting surveys.
Dkt. 324 (Pls.' Supp. Report) at 5-6.  The report showed that of the 144
cleanup cases examined by the NFE, over 90% were affected by
spoliation or other discovery abuses.  Id. at 4.  The majority of cases
involved documents that were either modified or fabricated after the
City was put on notice of this litigation and its obligation to preserve
documents.  Id. at 5-7.  Included as Exhibit A was a case-by-case list of
documents modified, fabricated, withheld, deemed spoliated, not
produced or collected, not spoliated, or for which there was insufficient
metadata.  See Dkt. 324-1 (Pls.' Supp. Report, Ex. A).  Another
accompanying exhibit provided details of all modifications made to
HHARs and posting surveys for 29 cases where a direct comparison
could be made between the original version and what the City produced
in discovery.  Id. at 13; see Dkt. 324-2 (Pls.' Supp. Report, Ex. B).
Several exhibits contain lists of metadata that served as the basis for
the NFE's and Plaintiffs' analysis, including comparisons between
original and produced versions of documents.  Pls.' Supp. Report at 13-
19.  Additional exhibits provide details regarding either the City's
failure to produce documents or production of documents in a form that
removes relevant metadata.  Id. at 19-21.

The City filed its response to the Plaintiffs' supplemental report
on October 27, 2025.  Dkt. 357 (Resp. to Pls.' Supp. Report).

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 37 authorizes the district court,
in its discretion, to impose a wide range of sanctions when a party fails
to comply with the rules of discovery or with court orders enforcing
those rules."  Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589
(9th Cir. 1983) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc.,
427 U.S. 639 (1976)).  "If a party . . . fails to obey a court order to
provide or permit discovery . . . , the court where the action is pending
may issue further just orders," including "dismissing the action" or
"rendering a default judgment against the disobedient party."  Fed. R.
Civ. P. 37(b)(2)(A).  Where the party fails to preserve electronically
stored information (ESI) that "cannot be restored or replaced through

additional discovery," the court, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," may "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e).[1]

"Where the sanction results in default, the sanctioned party's violations must be due to 'willfulness, bad faith, or fault' of the party." <u>Jorgensen v. Cassiday</u>, 320 F.3d 906, 912 (9th Cir. 2003) (quoting <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1167 (9th Cir. 1994)).  Before declaring default judgment as a sanction, courts must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  <u>Hester v. Vision Airlines, Inc.</u>, 687 F.3d 1162, 1169 (9th Cir. 2012).  "The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything[.]"  <u>Valley Eng'rs v. Elec. Eng'g Co.</u>, 158 F.3d 1051, 1057 (9th Cir. 1998).

## III. DISCUSSION

Plaintiffs bring two motions for sanctions.  The first addresses the spoliation of evidence and describes how the City altered and fabricated key evidence.  Dkt. 302 at 14-16.  The second addresses discovery abuses and describes how the City made several material misrepresentations to Plaintiffs and the Court, obstructed Plaintiffs' efforts to obtain discovery, and ignored court orders and sanctions

---

[1] In addition to the explicit statutory authority codified by Rule 37(b) of the Federal Rules of Civil Procedure, "courts have inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders."  <u>Phoceene Sous-Marine, S. A. v. U.S. Phosmarine, Inc.</u>, 682 F.2d 802, 806 (9th Cir. 1982).  However, where a district court relies on Rule 37(e), which "specif[ies] . . . the findings that *must* be made before any sanction may be imposed," the court is "preclude[d] . . . from resorting to inherent authority to evade [Rule 37(e)'s] strictures."  <u>Gregory v. Montana</u>, 118 F.4th 1069, 1079 (9th Cir. 2024).

issued against it.  Dkt. 304 at 11.  The City agrees that sanctions must
be imposed but argues "terminating sanctions . . . are unnecessarily
punitive."  Opp'n at 4.  Instead, the City contends that excluding the
spoliated evidence from trial targets the prejudice caused by and is
more proportionate to the City's spoliation.  Id.[2]  At the request of the
Court, Plaintiffs submitted a supplemental report summarizing the
NFE's findings.  Pls.' Supp. Report at 4.  More than three months later,
the City filed a response to the supplemental report but did not raise
any new objections to the data or analysis presented.  Resp. to Pls.'
Supp. Report at 1.[3]

---

[2] The City also challenges Plaintiffs' summary of data from the NFE as
improper expert opinion submitted by Lauren Harper, a data analyst for
Plaintiffs' counsel, but it does not raise substantive issues with the data
presented.  Opp'n at 5-6; Dkt. 308-12.  In reply, Plaintiffs assert that
Harper's declaration is admissible under Federal Rule of Evidence 1006,
which allows admission of "a summary, chart, or calculation offered to prove
the content of voluminous admissible writings, recordings, or photographs
that cannot be conveniently examined in court," and that her declaration is
not expert testimony because she "provides only information in support of
Plaintiffs' motion for sanctions, not in support of Plaintiffs' claims."  Dkt. 312-
1 at 4-6 (citing Fed. R. Evid. 1006).  The City has not sought leave to file a
sur-reply to address Plaintiffs' argument that Harper's testimony is
admissible under Federal Rule of Evidence 1006, nor did the City address
Plaintiffs' contentions in the May 5, 2025 hearing or in their response to
Plaintiffs' supplemental report.  See Tr. of Hr'g on Sanctions; Resp. to Pls.'
Supp Report.  In their response to Plaintiffs' supplemental report, the City
merely refers to its previous briefing challenging Harper's declaration as
improper expert testimony.  See id. at 1.  The City has had several
opportunities to address Plaintiffs' arguments, but has not done so.  The
Court therefore deems the issue conceded.

[3] The City "objects to the manner in which certain data points are presented,"
referring to previous arguments challenging the Plaintiffs' summary of the
data as improper expert opinion.  Resp. to Pls.' Supp. Report at 1 (citing Dkt.
308-12).  But the City does not raise any substantive issues with the data or

## A.    Terminating Sanctions Are Appropriate

Plaintiffs argue terminating sanctions "are warranted because the City altered and fabricated evidence and concealed the modification of its documents by withholding and spoliating validly requested discovery." Dkt. 302 at 4.  Specifically, they assert that City employees altered reports to conform to the City's defenses in this action, fabricated missing reports, and covered up this misconduct by defying court orders and withholding and destroying documents that would have revealed the misconduct.  Id. at 10.

The City argues that Rule 37(e), which addresses the failure to preserve ESI, controls here and the Court therefore "may only impose measures 'no greater than necessary' to cure the prejudice due to the loss of the ESI unless it finds a party to have 'acted with the intent to deprive another party of the information's use in the litigation.'" Opp'n at 16 (quoting Fed. R. Civ. P. 37(e)).  The City admits it spoliated documents, but argues that its spoliation was due to "error-filled record keeping during the pandemic," not "the intent to deprive Plaintiffs of the information's use in the litigation." Id. at 18.  In reply, Plaintiffs contend the City fails to explain how it "could be so ignorant of its obligations under the Federal Rules of Civil Procedure and to this Court as to mistakenly believe[] that altering and fabricating the very documents the City designated as 'key evidence' in the case was acceptable." Dkt. 312 at 7.

Here, the City violated a court order by failing to produce relevant documents during discovery and admitted to the spoliation of key evidence related to Plaintiffs' claims.  Therefore, both Rule 37(b) and (e) govern Plaintiffs' motions for sanctions.[4]  Under either

---

its presentation.  Instead, the City uses its response to repeat the arguments contained in its opposition.  See id.

[4] Plaintiffs assert in passing that sanctions are warranted pursuant to Rule 37(d).  Dkt. 302 at 4.  However, the arguments they present focus on subsections (b) and (e), not (d).  See id.  The Court finds sanctions appropriate

standard, the Court finds the City has acted with the requisite
willfulness and intent to support the form of terminating sanctions
imposed here.

### 1.    Finding of Bad Faith

Plaintiffs assert that the Court has already rejected the City's
excuses for its admitted spoliation of evidence.  Dkt. 302 at 18.  They
contend "the City's repeated unconvincing justifications and defense of
its conduct only underscore the City's bad faith—particularly because
the City has continued to make 'demonstrably false' contentions in
defense of that conduct."  Id. at 18-19.

First, Plaintiffs assert that the NFE identified "a staggering
number of alterations" the City made to reports to support its defenses
in this action.  Id. at 19.  They argue that the timing of these
alterations, which occurred "either close in time to when the document
was created or after the City was ordered to turn over these particular
documents," suggests the City made the edits "in response to court
orders and discovery obligations."  Id.  Plaintiffs cite testimony from the
City's Chief Environmental Compliance Investigator Howard Wong
that he understood the reports may be requested by the public and
used in litigation.  Id. (citing Dkt. 302-1, Ex. H (Wong PMK Dep.)
252:19-25, 253:19-255:10).  Second, Plaintiffs assert the City fabricated
reports in response to discovery orders and tried to pass them off to
Plaintiffs as business records.  Id. at 20.  They argue that "[f]abricating
the documents served not only to create a post-hoc justification for the
City's destruction of people's belongings, but also to support the City's
claims it used the checklists to identify hazards and the reports to
document its conduct."  Id.  Third, Plaintiffs note that the City failed to
disclose to the Court or to Plaintiffs that it altered and fabricated
evidence.  Id. at 20-21.  Plaintiffs argue that the City affirmatively hid
this misconduct by committing other discovery violations.  Id. at 21-23.
For example, they assert that although the City represented that

---

under either subsections (b) or (e) of Rule 37 and therefore does not address
subsection (d).

HHARs were kept as PDFs "in the ordinary course of business" and that the metadata did not exist, the forensic examination revealed that the City converted the Word documents to PDFs and that the metadata not only exists but "shows nearly all the PDFs of HHARs were created at the time of production, not in the 'regular course of [LASAN's][5] operations.'"[6]  Id. at 22-23.  Plaintiffs argue "there is far more evidence of the 'willfulness, bad faith, or fault' than necessary" to support terminating sanctions.  Id. at 23.  Further, they argue that terminating sanctions would comport with due process because the spoliated evidence is central to dispositive issues in this action, including "how much personal property the City seizes and discards and its justification for doing so."  Id. at 23-24.

The City contends that "the larger pattern of [its] conduct shows the City fought against what it viewed as a disproportional amount of discovery and struggled to meet Plaintiffs' demands, leading to error-prone discovery efforts, which regrettably, but not intentionally, occurred."  Opp'n at 5.  Although "[t]he City recognizes the manner in which it approached the issue with the creation and modification of documents after the commencement of litigation was unacceptable," it argues its conduct does not demonstrate an intent to deprive Plaintiffs of these documents.  Id. at 18-19.  It asserts that it did not consider spoliation and wrongly "operated with the understanding that these reports must be created and reviewed for accuracy as a matter of City recordkeeping and catching up with outstanding records—outside of the lens of this litigation."  Id. at 19.  Moreover, it asserts that it produced almost 750,000 pages from over 230,000 of its files, more than twenty depositions, and other discovery relevant to the key issues in this action, and that the spoliation is limited to only a fraction of the

---

[5] LASAN is the City's Sanitation & Environment Department.

[6] Plaintiffs argue that "[m]ore problematically still, in more than 75 instances, the NFE was able to locate *only* the PDF, not the underlying word document—even though the metadata shows the PDF was created in the course of litigation, meaning the City had an obligation to preserve the word document."  Dkt. 302 at 23.

evidence.  Id. at 19-20.  It argues that "[i]ntentionally doctoring and
fabricating a limited and random set of reports and checklists after
painstakingly preparing and providing other reports and checklists and
other discovery would only harm the City."  Id. at 20.  It further
contends that "the revisions range from immaterial to coincidental to
contradictory if viewed under the implausible assumption that the City
intentionally made each revision with the specific purpose of doctoring
evidence to ensure it would prevail in this lawsuit."  Id.

        Plaintiffs respond that the City fails to explain how it missed
thousands of files during its search; how it selectively produced
documents located in the same folders as "missed" documents; or how it
provided some of the missed documents to a third party, but not
Plaintiffs, during the discovery window.  Dkt. 311 at 11-12.  Plaintiffs
argue that the City's failure to produce these documents was therefore
within its control—which is all that is required to prove bad faith.  Id.
at 11-12.  Further, Plaintiffs assert that the City's production of a
significant number of other documents does not excuse its failure to
produce relevant documents or its other misconduct.[7]  Dkt. 311 at 12-
13.  Plaintiffs also dispute that the City's edits were "scattershot" and
provide several examples of changes that "suggest[] a widespread and
systematic review of the evidence to shape it in obvious and subtle
ways to support the City's defenses."[8]  Dkt. 312 at 10-12.

--------------------------------------

[7] Plaintiffs argue that the City continues to repeat misleading and false
statements in its opposition to Plaintiffs' motion, further undermining its
credibility.  Dkt. 311 at 13-14.

[8] Plaintiffs point out that a review of the preserved original documents
reveals the City made the following changes: (1) "[r]ewriting reports to
remove or replace 'bulky' as the reason for seizure and destruction"; (2)
"[a]dding details about 'contamination' and 'biohazards' to support the City's
defense that items were destroyed because they were contaminated"; (3)
"[c]hanging reports to defeat claims individuals had a protected property
interest in their belongings"; (4) "[r]emoving references to limiting unhoused
residents to only 60 gallons of property"; (5) "[a]dding information to comport
with the City's written policies and due process requirements or removing

"Only 'willfulness, bad faith, and fault' justify terminating sanctions." <u>Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting <u>Jorgensen</u>, 320 F.3d at 912). The Ninth Circuit "has stated that 'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." <u>Henry v. Gill Indus., Inc.</u>, 983 F.2d 943, 948 (9th Cir. 1993) (citation omitted). Under Rule 37(e), "intent to deprive another party of the information's use in the litigation" is "most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." <u>Jones v. Riot Hosp. Grp. LLC</u>, 95 F.4th 730, 735 (9th Cir. 2024). "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." <u>Id.</u> (citation omitted). "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." <u>Id.</u>

As the Court has stated in previous orders, it is not persuaded by the City's explanations. <u>See</u> Dkt. 271 at 2. The City contends its misconduct was not intentional but was a product of "error-filled record keeping during the pandemic, when LASAN was grappling with a rapid increase of encampment cleanups and dozens of newly hired ECIs." Opp'n at 18. However, "error-filled record keeping" cannot explain the material changes the City made to documents *after* this litigation began. This Court has already admonished the City that, even if the changes were "corrections," "those 'corrections' should not have been made after litigation was commenced." Dkt. 271 at 2. The City's own witness, Chief ECI Wong, acknowledged he was aware that the modified and fabricated documents were the type that could be used in litigation. Wong PMK Dep. 252:19-25, 253:19-255:10. This acknowledgment makes the City's explanations even less credible.

---

references to failures to comply"; and (6) "[c]hanging the number of photos that were taken to match the number that were produced." Dkt. 312 at 11-12.

Finally, that the City did produce thousands of documents does nothing to excuse its spoliation and other discovery abuses.

Plaintiffs' supplemental report illustrates the extent of the City's misconduct. The report identifies which cleanup case documents were identified by the NFE as modified or created after the City was put on notice that the documents were discoverable. Pls.' Supp. Report at 5-7.[9] The report shows that the majority of HHARs (64%) and posting surveys (65%) and nearly half of the checklists (47%) were modified or created after this litigation commenced. Id. at 5.[10] The report also shows suspicious timing of modifications and fabrications. For example, metadata for modified documents shows that these documents were originally "created close in time to when the cleanup occurred," but the versions produced in discovery were "modified *after* the [lawsuit] was identified to the City[.]" Id. at 14; see id., Ex. C. Likewise, metadata for "fabricated" documents "shows the document[s] [were] first created *after* the [lawsuit] was identified to the City[.]" Id. at 14; see id., Ex. D. The timing of the City's modifications and fabrications is strong circumstantial evidence of bad faith, especially when considered alongside the types of modifications made to produced documents, including changing words to characterize items as biohazards, describing property as surrendered or dangerous, and

---

[9] "Modified" means the document was "created before the date the City was put on notice" that the documents were discoverable, but the "document produced to Plaintiffs . . . was modified *after the* specific case was identified to the City as relevant to the litigation." Pls.' Supp. Report at 7. Plaintiffs define as "fabricated" those documents "created *after* the specific case was identified to the City as relevant to the litigation." Id.

[10] In a pie chart concerning posting survey document categories, Plaintiffs include 46% "altered" documents. Pls.' Supp. Report at 6. "Altered" is not defined in the report, but the percentage of "altered" documents aligns with the number of "modified" documents in the source data contained in Exhibit A. Compare id. with Dkt. 324-1 (Pls.' Supp. Report, Ex. A), Tables 2, 3, 5. The Court therefore interprets the label of "altered" as an error where "altered" should instead read "modified."

adding narratives of procedures.  See Pls.' Supp. Report, Ex. B (describing changes to modified documents).

In sum, the City's contention that it did not intend to deprive Plaintiffs of information by withholding, altering, modifying, and creating documents is simply not credible.  The City's misconduct was within its control, and taking these affirmative steps after it knew it had a duty to preserve documents for this litigation further supports that the City acted with the intent required by Rule 37(e).  Finally, the City's production of other documents cannot excuse its spoliation of key evidence.  See Jones, 95 F.4th at 736 (explaining the "production of some evidence does not excuse destruction of other relevant evidence").  The Court therefore finds the City acted willfully and in bad faith to deprive Plaintiffs of relevant information during discovery.

## 2.    Ninth Circuit's Test for Terminating Sanctions

The Court next considers the five-factor test governing the imposition of terminating sanctions.  To impose terminating sanctions under Rule 37(e)(2), however, the Court does not need to find the City's conduct meets the Ninth Circuit test.  See Jones, 95 F.4th at 735.  Under Rule 37(e)(2), "a district court need only find that the Rule 37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI."  Id.  Nevertheless, because Rule 37(b) also governs Plaintiffs' motions for sanctions, the Court addresses the Ninth Circuit test, including the availability of lesser sanctions.

### a.    The public's interest in expeditious resolution of litigation and the Court's need to manage its dockets

Plaintiffs argue the first two factors support terminating sanctions because "[t]he City's misconduct, including its ongoing violation of Magistrate Judge Abrams's order, Special Master Guidance, and this Court's orders, has forced Plaintiffs and this Court to devote significant time and resources to addressing the misconduct" and has disrupted the Court's calendar.  Dkt. 304 at 30; see also Dkt. 302 at 25.

The Court agrees that addressing the City's failure to produce
and spoliation of documents has significantly delayed the resolution of
this case.  Nearly seven years have passed since the case was filed, and
it has been close to five years since the original trial date.  The delay
has been almost entirely due to the City's spoliation and discovery
abuses.  The parties spent much of 2021 and 2022 engaging in
prolonged discovery disputes when the City failed to produce
documents and comply with court orders.  See, e.g., Dkts. 127, 139, 167,
184, 216, 224.  The parties then awaited the NFE's preliminary report
issued in 2023, dkt. 256, and the final report issued in 2025, dkt. 290.
Since then, the parties' and Court's time have been consumed by the
instant motions for sanctions and considerations of how to proceed in a
trial where much of the evidence is affected by the City's misconduct.

Through its discovery abuses and defiance of court orders, the
City has prolonged this case for years, delaying the resolution of issues
obviously of great public interest and interfering with the Court's need
to manage its docket.  Therefore, the first two factors weigh in favor of
terminating sanctions.  See Valley Eng'rs Inc., 158 F.3d at 1057
(explaining "that where a court order is violated, factors 1 and 2
support sanctions"); see also Wanderer v. Johnston, 910 F.2d 652, 656
(9th Cir. 1990) ("The first two of these factors favor the imposition of
sanctions in most cases . . . .").

> b.    The risk of prejudice to the party seeking sanctions

Plaintiffs argue that the results of the forensic examination have
undermined the credibility of the reports and documents the City
produced in discovery.  Dkt. 302 at 26.  The affected evidence goes to
the central issue of "the City's justification for seizing and destroying
unhoused people's belongings."[11]  Dkt. 302 at 26.  Plaintiffs contend

---

[11] Plaintiffs contend that, "[a]s with the documents the City altered and
fabricated, the documents the City failed to produce go directly towards the
dispositive issues in Plaintiffs' claims under the Fourth and Fourteenth
Amendments of the U.S. Constitution and Article 1, Section 3 and 7 of the
California Constitution, and Section 2080 of the Civil Code."  Dkt. 304 at 28.

that they—and the City—built their cases around the documents, and
"[h]ad the City not misled Plaintiffs and the Court about the
documents, Plaintiffs would have made different strategic decisions"
throughout the case.  Id. at 28.  Plaintiffs also assert the City's delay in
producing documents and failure to produce documents have caused
prejudice by impairing their ability to develop their case and litigation
strategy.  Dkt. 304 at 30-31.  They argue that "the City's decision to
force Plaintiffs to expend significant resources chasing down so many
records, only to withhold thousands of photos, videos and other
documents 'constitute[s] a clear interference with the plaintiffs' ability
to prove the claims and obtain a decision in the case.'"  Id. at 32
(quoting Wanderer, 910 F.2d at 656).

For a district court considering whether to grant terminating
sanctions, "[w]hat is most critical . . . , regarding risk of prejudice and
of less drastic sanctions, is whether the discovery violations 'threaten to
interfere with the rightful decision of the case.'"  Conn. Gen. Life Ins.
Co., 482 F.3d at 1097 (quoting Valley Eng'rs Inc., 158 F.3d at 1057).
The Ninth Circuit has long "held that '[f]ailure to produce documents as
ordered . . . is considered sufficient prejudice.'"  Comput. Task Grp., Inc.
v. Brotby, 364 F.3d 1112, 1116 (9th Cir. 2004) (citation omitted); see
also Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir.
1990).

Here, Plaintiffs have been prejudiced both by the City's failure to
produce relevant documents—which alone is sufficient—and by the
City's admitted spoliation of key evidence.  See Jerry Beeman &
Pharmacy Servs., Inc. v. Caremark Inc., 322 F. Supp. 3d 1027, 1036
(C.D. Cal. 2018) (citation omitted) ("Prejudice is determined by looking
at whether the spoliating party's actions impaired the non-spoliating
party's ability to go to trial, threatened to interfere with the rightful
decision of the case, or forced the non-spoiling party to rely on
incomplete and spotty evidence.").  The primary issue in this case is the
City's cleanup and related practices under LAMC 56.11.  The analysis
of the NFE's findings shows that, of the cleanup cases examined, more
than 90% were "tainted in one way or another by the City's spoliation
or discovery abuses."  Pls.' Supp. Report at 4.  The City's misconduct

has significantly undermined its credibility, and "the Court cannot proceed to trial with confidence that Plaintiffs have had access to the true facts." <u>Am. Career Coll. Inc. v. Medina</u>, 673 F. Supp. 3d 1139, 1151 (C.D. Cal. 2023). This factor weighs in favor of terminating sanctions.

### c.    The public policy favoring disposition of cases on their merits

This factor always weighs against entry of default as a sanction. <u>Transamerica Life Ins. Co. v. Arutyunyan</u>, 93 F.4th 1136, 1147 (9th Cir. 2024). However, the City's misconduct throughout this case has impaired the ability of the parties and this Court to reach a fair resolution on the merits. <u>See id.</u> ("The [fourth factor] 'lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction.'") (quoting <u>In re Phenylpropanolamine (PPA) Prods. Liab. Litig.</u>, 460 F.3d 1217, 1228 (9th Cir. 2006)). Therefore, at best, this factor weighs only slightly against imposing terminating sanctions.

### d.    The availability of less drastic sanctions

Plaintiffs argue that "anything short of terminating sanctions will not ameliorate the harm caused by the City's coordinated and extensive effort to deceive the Court and Plaintiffs in this case, nor properly deter the City from engaging in this conduct in the future." Dkt. 302 at 29. They argue the City has made it impossible for the Court to adjudicate the issue of whether the City was justified in its actions because the City has altered and fabricated the key evidence of its justifications "precisely to conform the evidence to the City's defense." <u>Id.</u> Further, Plaintiffs assert that the forensic examination and a California Public Records Act (CPRA) request by a third party revealed more than 3,000 files the City failed to turn over to Plaintiffs despite court orders, "repeated demands by Plaintiffs, interventions by the Special Master, sanctions by this Court, or the obligation of a key employee in LASAN to attest under oath that the documents had been

produced." Dkt. 304 at 33; Dkt 304-4 (Bates Decl.) ¶¶ 17, 21-23.[12] Plaintiffs contend unhoused individuals' "only recourse, to file a lawsuit, has likewise been seriously compromised by the City's misconduct, which has 'undermine[d] the integrity of judicial proceedings.'" Dkt. 302 at 30 (quoting Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995)). They argue "[t]he fact that such a flagrant disregard of the rule of law came from the City of Los Angeles and its attorneys weighs in favor of the most severe sanctions." Id. at 31.

The City argues that excluding the spoliated reports and checklists is the appropriate sanction because Plaintiffs do not need these documents to prove their claims.[13] Opp'n at 21. In fact, the City argues it—not Plaintiffs—would be harmed by the exclusion of these documents because the reports and checklists "contain the City's justifications for seizing and destroying Plaintiffs' belongings." Id.[14]

The City contends Rule 37(e) controls Plaintiffs' motions and no other legal standard supports terminating sanctions. Id. at 24-25. The City argues Rule 37(b) does not apply here because the Court has not

---

[12] LASAN worker Michael Bates declares he filed numerous requests for information under the CPRA after his "superiors and the superiors in the other divisions of LASAN continued to ignore [his] complaints" about LASAN's cleanup and reporting practices. Bates Decl. ¶¶ 10-17. He filed his requests using the City's online platform, which allows individuals "to send in public records requests electronically to LA City departments, including LASAN." Id. ¶ 17.

[13] The City asserts Plaintiffs may also use the HHARs and checklists that have been cleared of spoliation. Opp'n at 22.

[14] The City makes several arguments in support of its assertion that the Court must reject Plaintiffs' request for a "default injunction." Opp'n at 23. Entry of default establishes well-pleaded facts in the operative complaint as true. The Court will determine the appropriate remedies, if any, through further proof, briefing, and proceedings. Therefore, the Court does not address in this order arguments about the appropriateness of an injunction.

issued an order notifying the City "that its discovery mistakes would result in terminating sanctions[.]"  Id. at 27-28.[15]

In reply, Plaintiffs argue that "[e]ven if some of the documents produced by the City could replace some of the contents of the HHARs, that would not remedy the prejudice caused to Plaintiffs, since Plaintiffs would be forced to 'rely on incomplete and spotty evidence' in presenting its case."  Dkt. 312 at 15 (quoting Jerry Beeman & Pharmacy Servs., Inc., 322 F. Supp. 3d at 1039).  Plaintiffs assert that the City's proposed sanctions would fail to cure the prejudice caused by the City's misconduct and instead reward the City for it.  Id. at 15-16.  First, Plaintiffs argue that excluding the reports is not a sanction because the altered and fabricated reports, which are no longer admissible as business records, would be excluded as hearsay.  Id. at 16.  Second, Plaintiffs argue that excluding the documents would leave Plaintiffs with little evidence of the City's customs and practices while leaving "City employees free to testify however they liked about the cleanups, without evidence to rebut it."  Id. at 16-17.

Plaintiffs also argue that Rule 37(b) applies, as "[t]he City does not dispute it is withholding thousands of documents responsive to Judge Abrams's order compelling production of these documents and in violation of this Court's order for sanctions."  Dkt. 311 at 8-9.  They argue the City should have known it could face significant sanctions based on the history of this case:

> [T]he City was subjected to progressive sanctions by the Special Master and this Court for its ongoing violation of Judge Abrams's order, beginning with the City's agreement to pay sanctions to avoid a finding of contempt for failing to produce OEAs, and including numerous orders related to its failure to produce

---

[15] The City advances the additional argument that Plaintiffs have failed to establish the City's bad intent beyond a reasonable doubt to justify punitive sanctions under the Court's inherent authority.  Opp'n at 26.  The Court does not address this argument because it does not rely on its inherent authority, but its authority under Rule 37.

complete data sets, this Court's order admonishing the City to
produce documents, and finally explicit sanctions in the form of
an attestation and an award of attorneys' fees.

Id. at 9-10.  Further, Plaintiffs assert that "[t]he requested terminating
sanctions are compensatory, not as the City asserts, punitive" because
they are necessary to remediate the harm caused by the City's
misconduct.  Id. at 16.  Plaintiffs then argue that deterrence also
weighs in favor of granting terminating sanctions.  Id. at 17.

To "assess whether a district court adequately considered less
drastic sanctions," the Ninth Circuit considers: "(1) whether the district
court explicitly discussed the alternative of lesser sanctions and
explained why it would be inappropriate; (2) whether the district court
had implemented lesser sanctions before [entry of a default judgment];
and (3) whether the district court had warned the offending party of the
possibility [of a default judgment].'"  Transamerica Life Ins. Co., 93
F.4th at 1147-48 (quoting Hester, 687 F.3d at 1170).  "The Ninth
Circuit has also recognized that default, as opposed to lesser sanctions,
'is appropriate where a pattern of deception and discovery abuse made
it impossible for the district court to conduct a trial with any
reasonable assurance that the truth would be available,' . . . or when
lesser sanctions would not deter future wrongdoing[] . . . .'"  Am. Career
Coll. Inc., 673 F. Supp. 3d at 1150-51 (citations omitted).

Due to the scope and severity of the City's misconduct, the Court
concludes that no lesser sanction would remedy the effects of the City's
spoliation or adequately deter the City from engaging in similar
misconduct in the future.  The City has already been sanctioned in this
action for failing to produce documents to Plaintiffs, but it failed to
change its behavior in light of this lesser sanction.  See aPriori Techs.,
Inc. v. Broquard, No. CV 16-9561-JAK (KS), 2018 WL 1409307, at *4
(C.D. Cal. Jan. 12, 2018) (citation omitted) ("When, as here, lesser
sanctions have already been ordered, the court need not repeat them.").
Moreover, it appears to the Court that the City's proposed alternative
sanction—excluding the spoliated evidence—would further harm
Plaintiffs and not redress the prejudice already caused to them.

19

Finally, the third factor does not apply because the Court was not aware of the City's conduct in time for the Court to warn the City of the possibility of terminating sanctions if it continued to spoliate and modify relevant documents.  See U.S. ex rel. Berglund v. Boeing Co., 835 F. Supp. 2d 1020, 1055 (D. Or. 2011) ("[T]he court's duty to warn [the spoliating party] is inapplicable because [the] conduct occurred prior to an opportunity for the court to warn against such deceptive practices.").  The Court therefore finds that this factor weighs in favor of imposing terminating sanctions.

### 3. Conclusion

Four of the Ninth Circuit's five factors weigh in favor of imposing terminating sanctions.  Recognizing the severity of the sanction, the Court finds that it is appropriate to impose terminating sanctions based on the City's misconduct in this case.  See Conn. Gen. Life Ins. Co., 482 F.3d at 1097 (quoting Valley Eng'rs Inc., 158 F.3d at 1058) ("Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case-dispositive sanction may be appropriate.").

## B. Default

Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. U.S., 323 U.S. 1, 12 (1944)).  However, facts "not established by the pleadings of the prevailing party, or claims . . . not well-pleaded, are not binding and cannot support [a default] judgment."  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); see DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (finding allegations that restated statutory language were not well-pleaded facts and were not held admitted through default).

## C. Attorneys' Fees

Plaintiffs also seek attorneys' fees and costs "related to bringing the *ex parte* application for the appointment of the forensic

examination, Dkt. 165, 167; the time expended as a result of the
forensic examination itself; the interim briefing that resulted in the
Court's spoliation order, Dkt. 263, 266; and now, this motion." Dkt. 302
at 32. Plaintiffs also argue the Court should grant monetary sanctions
because the City violated a court order. Dkt. 304 at 35. The City does
not oppose Plaintiffs' requests for attorneys' fees.

Though Plaintiffs seek attorneys' fees as a monetary sanction for
these motions, prevailing parties in a civil rights action brought under
42 U.S.C. § 1983 are entitled to reasonable attorneys' fees. Roberts v.
City of Honolulu, 938 F.3d 1020, 1023 (9th Cir. 2019) (citing 42 U.S.C. §
1988(b)); see Fair Hous. of Marin v. Combs, 285 F.3d 899, 907-08 (9th
Cir. 2002) (affirming award of attorneys' fees following sanction of
default judgment and damages award). The Court finds it will be more
efficient to evaluate the requests for attorneys' fees at the conclusion of
the proceedings.[16]

## IV. CONCLUSION

For these reasons and other reasons described in Plaintiffs'
briefing, the motions for sanctions are GRANTED in part.[17] The Court
orders the parties to meet and confer regarding the appropriate amount
of Plaintiffs' damages award no later than February 24, 2026. If no
agreement can be reached, Plaintiffs must submit proof of Plaintiffs'
damages by March 10, 2026. After reviewing Plaintiffs' proof of

---

[16] The parties must comply with the Court's Order re Requirements for
Motion for Attorneys' Fees found on the Central District website under Judge
Fischer's Procedures and Schedules contained in the "Judge's Requirements"
tab.

[17] Throughout this order, the Court uses "terminating sanctions" to describe
entry of default as a sanction for the City's spoliation and discovery abuses.
This Court's entry of default, however, does not "terminate" the case, as
remedies will be determined through further proof, briefing, and proceedings
with appropriate input from the City before judgment is entered.

damages, the Court will consider whether to allow the City to file a response.  The Court also orders Plaintiffs to file additional briefing, not to exceed 15 pages, on proposed injunctive and declaratory relief—as well as a proposed permanent injunction—by March 27, 2026.  The City may file a response, also not to exceed 15 pages, and its proposed injunction, if any, by April 14, 2026.[18]  After reviewing the parties' submissions, the Court may hold hearings to determine appropriate relief.  See Fed. R. Civ. P. 55(b)(2).  Pursuant to this Order, all other pending motions, dkts. 332 and 334, are DENIED as moot.


     IT IS SO ORDERED.


Date: February 11, 2026

                                          Dale S. Fischer
                                          United States District Judge

---

[18] Plaintiffs' proposed orders submitted with their motions for sanctions appear to preclude input from the City on the issue of appropriate relief.  See Dkts. 302-4, 304-14.  Therefore, the Court grants Plaintiffs' motions in part.