**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANET GARCIA, et al.,<br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>CITY OF LOS ANGELES, et al.,<br>　　　Defendants. | 2:19-cv-6182-DSF-E<br><br>Order GRANTING Damages<br>(Dkt. 381) |

On February 11, 2026, this Court entered the City's default as a sanction for its discovery abuses. Dkt. 378. The Court ordered the parties to meet and confer regarding damages and, if they could not agree on the appropriate amount, for Plaintiffs to submit proof of damages. Id. at 21. On March 10, 2026, Plaintiffs submitted documentary evidence as proof of damages. Dkt. 381. On June 2, 2026, the Court ordered supplemental briefing regarding the valuation of items for damages calculations, dkt. 404, and Plaintiffs submitted additional argument and evidence on June 26, 2026, dkt. 411 (Pls.' Supp. Br. Re Damages).

## I. Discussion

Plaintiffs seek actual loss and emotional distress damages for their claims brought under 42 U.S.C. § 1983. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). "A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for

all injuries suffered as a consequence of those deprivations." <u>Borunda v. Richmond</u>, 885 F.2d 1384, 1389 (1988).  Plaintiffs seeking damages "[are] entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations." <u>Id.</u>

## A.    Actual Losses

Plaintiffs seek damages for the loss of personal items seized and discarded by the City during encampment cleanups.  Dkt. 381 at 2.  For violations of constitutional rights under section 1983, "damages are calculated in most circumstances according to general tort law principles applicable to the types of deprivations proved." <u>Borunda</u>, 885 F.2d at 1389.  Under tort principles, "[a]s a general rule the measure of damages for the loss or destruction of personal property is the value of the property at the time of such loss or destruction." <u>Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.</u>, 21 Cal. App. 4th 862, 870 (1994) (citation omitted).  The proper amount of damages for conversion of personal property is "[t]he value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of[.]" Cal. Civ. Code § 3336.  Where the market value of personal property cannot be determined, "its value . . . must be ascertained in some other rational way[.]" <u>Zvolanek v. Bodger Seeds, Ltd.</u>, 5 Cal. App. 2d 106, 109 (1935).

Plaintiffs cite cases calculating restitution to support their use of replacement value, rather than fair market value, to calculate damages for actual loss for goods like furniture and clothing—the bulk of what was taken here.  Pls.' Supp. Br. Re Damages at 1-2.  The Ninth Circuit has held that, for the purposes of restitution under the Mandatory Victims Restitution Act, it may be proper to use the "replacement value to calculate the value of destroyed personal belongings like clothes, furniture, and home appliances" because their value cannot be adequately assessed using fair market value.  <u>United States v. Kaplan</u>, 839 F.3d 795, 803 (9th Cir. 2016).  Plaintiffs argue the rule outlined in <u>Kaplan</u> should be extended to the personal property lost here because

using fair market value undermines the central tort principle that damages are to make the party whole.  Pls.' Supp. Br. Re Damages at 1-2.

However, California courts have rejected the use of replacement value as a measure of damages where the fair market value is ascertainable.  See Hand Elecs., 21 Cal. App. 4th at 871 (affirming the trial court's order of a new trial where the jury was instructed on the cost of replacement as a measure of damages instead of fair market value).  And Plaintiffs have not identified a case where the rule outlined in Kaplan was applied to tort damages.  The Court therefore will apply the fair market value to assess damages where it can be ascertained.

But where the fair market value of items cannot be determined, Plaintiffs' damages need to "be ascertained in some other rational way[.]"  U.S. v. CB & I Constructors, Inc., 685 F.3d 827, 837 (9th Cir. 2012).  "[A] 'rational way' of ascertaining damages 'does not require mathematical precision.'"  Id. (citation omitted).  To that end, the Court considers whether, for some items, a rational value can be derived from Plaintiffs' testimony estimating their replacement costs.  See Robinson v. U.S., 175 F.Supp. 2d 1215, 1232 (E.D. Cal. 2001) (finding "a plaintiff can recover more than nominal damages for items with no market value" where plaintiffs "provide a rational basis for determining their value").  Additionally, where plaintiffs have shown "special circumstances" such that their "injury [is] beyond that which would be adequately compensated by the value of the property," "the [C]ourt may award such amounts as will indemnify for all proximate reasonable loss[.]"  Lint v. Chisholm, 121 Cal. App. 3d 615, 624-25 (1981).

Plaintiffs assert that they have been unable to identify a secondary market for "clothing, food, personal hygiene products, cleaning supplies, legal identification documents, and other items 'peculiar' to the Plaintiffs," and that those items "require an alternative rationally determined value."  Dkt. 411-1 (Fraser Decl.) ¶ 2.  The Court accepts that, despite their due diligence, Plaintiffs have found the fair market value cannot be ascertained for these items and will consider

the replacement value in calculating the "amount sufficient to indemnify [Plaintiffs] for the loss which is the natural, reasonable and proximate result" of the City's seizure.  Cal. Civ. Code § 3336.[1]

In accompanying declarations and an itemized list, Plaintiffs have provided proof of the fair market value, interest, and replacement value of items seized and discarded.  Dkt. 381 at 2, Dkt. 411-2 (Itemized Valuation List).  Plaintiffs seek prejudgment interest at the rate of five percent per annum for items where the damages are derived from the fair market value of the item.  Pls.' Supp. Br. Re Damages at 5; see Itemized Valuation List at 10.  The Court examines the declaration and value of property taken for each Plaintiff in turn.

### 1.    Janet Garcia

Garcia declares that she suffered actual losses as the result of three cleanups conducted by the City during 2019.  Dkt. 381-1 (Garcia Decl.) ¶¶ 1, 16.  She has attached photographs of some of the items that were seized and discarded.  Dkt. 381-2 (Garcia Decl., Ex. A); Dkt. 381-3 (Garcia Decl., Ex. B).  In a cleanup on January 29, 2019, she declares she lost belongings including her tent, pots and pans, cleaning tools, letters and paperwork, and electronics.  Garcia Decl. ¶¶ 2-3.  In a cleanup on April 29, 2019, she lost a tent, chair, cooking supplies, and cleaning tools that she used for work.  Id. ¶¶ 5-6.  During a cleanup on August 14, 2019, she lost a tent, canopy, chairs, cooking supplies, and a bike.  Id. ¶¶ 8-15.  She estimates the fair market value, with interest, of those items is $1,152.34.  Itemized Valuation List at 7-10.

---

[1] Plaintiffs state that the total value of these items for all plaintiffs is $2,009.  They do not, however, attempt to break this amount down by plaintiff or item, nor do they include these belongings in the itemized list alongside the fair market value calculations.  Instead, the Court has cross-referenced between the itemized fair market value list and the previously filed declarations to (1) determine which items fall into the above categories and (2) tally the estimated replacement value for those items to include in the overall damages calculations.

Garcia also lost possessions falling into the categories of items for which Plaintiffs have been unable to identify a secondary market, and therefore fair market value, including clothing, bedding, and food. Garcia Decl. ¶¶ 3, 6, 12, 13.  She estimates it would cost $706.94 to replace these items, <u>id.</u>, and the Court accepts this as a rational valuation.[2]   The amount of Garcia's total damages is therefore $1,859.28.

### 2.    James Haugabrook

Haugabrook declares that the City conducted cleanups at the location where he was living on at least seven dates throughout 2019. Dkt. 381-4 (Haugabrook Decl.) ¶ 6.  He states that he does not remember exact dates of the cleanups, nor can he remember all items seized, <u>id.</u> ¶¶ 3, 5, 25, but has provided a conservative inventory of items that were taken and discarded, <u>id.</u> ¶¶ 9-20, 24-26.  Items seized include a cot, his backpack, portable chargers, electronics, multiple tents, blankets, tarps, mattresses, chairs, coolers, two bicycles, dishes, and a wheelbarrow.  <u>Id.</u> ¶¶ 9-20.  He has provided estimates of the fair market value for his items, Itemized Valuation List at 5-7, as well as screenshots from City worker bodycam footage showing his property during cleanups, dkts. 381-5, 381-6, 381-7, 381-8, 381-9.  The fair market value of these items totals $571.87, including interest. Itemized Valuation List at 5-7.[3]   Additionally, he estimates he lost $370

---

[2] Garcia provides a total of $580 for clothing taken over two cleanups, Garcia Decl. ¶ 3, 12, and a total of $94 for blankets, <u>id.</u> ¶ 13.  In her declaration, she estimated the total amount of food and cooking supplies taken was $100.  <u>Id.</u> ¶ 6.  The itemized list provides a fair market value estimate for the cooking supplies of $67.06.  Itemized Valuation List at 8.  The Court therefore assigns an amount of $32.94 for the food Garcia lost in the cleanups.

[3] The Court has made two adjustments to Plaintiffs' estimate for the fair market value of Haugabrook's items.  First, it appears Plaintiffs did not account for the loss of four lawn chairs, including the fair market value of only one lawn chair in their calculations.  Itemized Valuation List at 6, 10. The Court has therefore added the value of three more lawn chairs at $19.07 each.  Itemized Valuation List at 6. Additionally, the Court finds the

worth of food, clothes, and shoes—items for which Plaintiffs have been unable to identify a secondary market.  Haugabrook Decl. ¶ 16. Therefore, the amount of Haugabrook's actual damages is $941.87.

### 3.    Marquis Ashley

Ashley declares that he lost two bike carts during a cleanup in May 2019.  Dkt. 381-10 (Ashley Decl.) at 1. He built the carts himself while enrolled in welding school and estimated it would cost him around $200 each for carts with similar cargo capacity.  Id. at 2.  He attached photos showing two metal and wood carts on wheels, which he declares are the carts seized by the City.  Dkts. 381-11, 381-12.

In their supplemental briefing, Plaintiffs argue that the bike carts were "peculiar items . . . specifically tailored to the necessities of living as an unhoused person" and that, therefore, the replacement value of the bike carts is the most appropriate measure of damages. Pls.' Supp. Br. Re Damages at 3.  The Court agrees and finds replacement value to be the best measure of damages for Ashley's case. Therefore, the amount of actual damages for the two bike carts seized is $400.

### 4.    Miriam Zamora

Zamora declares that her property was seized during two sweeps in March and June of 2019.  Dkt. 381-13 (Zamora Decl.) ¶¶ 3, 7-8. During the March cleanup, she lost a cot, a sleeping bag, a Samsung tablet, a bike, and tools.  Id. ¶¶ 4-5.  During the June 2019 cleanup, she lost a metal dolly, power tools, wrenches, bike tools, jewelry, her phone, a mattress, a blanket, a tent, a wooden table, a folding table, a dresser, a broom, and cleaning supplies.  Id. ¶ 9.  The total fair market value of

---

valuation, with interest, for a Styrofoam ice chest at $45.94, Itemized Valuation List at 6, to be unreasonably high.  The Court therefore assigns the estimate provided for the replacement value of $10, id., to that item.

items for which that value can be ascertained is $1,633.22, including interest.[4]  Itemized Valuation List at 1-3, 10.

In both cleanups, Zamora lost several items from the categories that Plaintiffs have shown require alternative valuation, and Zamora arrives at the value for those items by considering their replacement cost.  During the first cleanup, Zamora lost important papers including her ID, social security papers, and birth certificates for her and her children.  Zamora Decl. ¶ 4.  She estimates it costs $124 to replace her legal documents.  Id.[5]  Additionally, she estimates she lost $100 worth of hygiene products and clothing.  Id. ¶ 5.  During the second cleanup, she lost school supplies, shoes, children's toys, and food totaling $260.  Id. ¶ 9.  The amount of Zamora's actual damages is therefore $2,117.22.

### 5.    Gladys Zepeda

Zepeda declares that the City seized her property during two cleanups on March 21, 2019 and June 11, 2019.  Dkt. 381-14 (Zepeda Decl.) ¶¶ 5, 16.  During the March cleanup, she lost a wooden chest, her iPhone, a laptop, cleaning supplies, tools, her tent, a cot, and tarps.  Id. ¶¶ 6-14.[6]  During the June cleanup, she lost tools, bikes, a mattress, a

---

[4] The Court has assigned Zamora half of the $457.08 fair market value, with interest, of the mattress, Itemized Valuation List at 2, because she split the cost of the mattress with Zepeda, Zamora Decl. ¶ 9.

[5] Zamora declares it costs $34 to replace a birth certificate, $68 to replace both children's birth certificates, and $22 to replace her ID.  Zamora Decl. ¶ 4.

[6] At the time of the cleanups, Plaintiffs Zamora and Zepeda were living together.  See Zamora Decl. ¶¶ 2-3; Zepeda Decl. ¶¶ 2-3.  The Court has compared the two declarations and is satisfied that Zamora and Zepeda are not both seeking damages for the same items seized.  For example, while both reference documents contained in the wooden chest and the tent that they shared, only Zepeda seeks damages for the value of those items.  Compare Zamora Decl. ¶¶ 4, 6, with Zepeda Decl. at ¶¶ 4, 9, 13-14.  Where they both seek damages for an item, they seek the value of their share rather than the full value.  See Zamora Decl. ¶ 9; Zepeda Decl. ¶ 18.

mirror, flashlights, chargers, and batteries.  Id. ¶¶ 16-18.  She estimates the fair market value of these items, with interest, is $2,219.26.  Id. ¶¶ 14, 18, 19.[7]

In the first cleanup, Zepeda lost several items from the categories that Plaintiffs have shown require alternative valuation, and Zepeda arrives at the value for those items by considering their replacement cost.  These include important legal documents, hygiene products, and clothing.  Zepeda Decl. ¶¶ 9, 12, 14.  She estimates the documents cost $56 to replace, the clothing was valued at $50, and the hygiene products cost $40 to replace.  Id.  The amount of Zepeda's total damages is therefore $2,365.26.

### 6.    Pete Diocson, Sr.

Diocson, Sr. is the successor in interest of Plaintiff Pete Diocson, Jr., who is deceased.  Dkt. 381 at 6; Dkt. 381-15 (Sweetser Decl.) ¶ 1.  Plaintiffs have submitted a copy of Diocson, Jr.'s declaration provided in support of a previous filing.  Id. ¶¶ 2-4.  In his previously filed declaration, Diocson, Jr. declared that City workers seized two dog kennels during a cleanup in 2019 and that in previous sweeps they had taken storage bins.  Dkt. 381-16 (Diocson Decl.) ¶¶ 8, 10, 14-15.  Attached to his declaration are images of both dog kennels pictured during City cleanups.  Id., Exs. A-B.  Plaintiffs' counsel has provided a fair market value, including interest, of $123.38 for the dog kennels and the storage bin.  Itemized Valuation List at 9-10.[8]

---

[7] The Court has assigned Zepeda half of the $457.08 fair market value of the mattress, Itemized Valuation List at 4, because she split the cost of the mattress with Zamora, Zepeda Decl. ¶ 18.

[8] In the itemized list, Plaintiffs also include the fair market value for Diocson's phone.  Itemized Valuation List at 10.  However, there is no evidence to support that the City seized Diocson's phone.  Therefore, the Court has not included the estimated value of the phone in the damages calculation for Diocson.

## B.    Emotional Distress

Plaintiffs seek damages for emotional distress they experienced as a result of the City's cleanups.  Dkt. 381 at 3-5.  Plaintiffs have provided evidence of emotional distress resulting from the City's actions in declarations.

Garcia describes feelings of insecurity, uncertainty about her ability to stay employed, and fear for her survival when her work materials were seized.  Garcia Decl. ¶17-19.  She also states that she felt feelings of loss when sentimental items were taken, including letters from her deceased partner.  Id. ¶¶ 18, 20, 31.  She chronicles her attempts at compliance with the cleanup notices, moving her belongings to a safe location only for them to get thrown away again.  Id. ¶¶ 23-24.  She says these experiences were "distressing" and "devastat[ing]," leaving her feeling "powerless, dehumanized, and humiliated."  Id. ¶¶ 23, 30.

Haugabrook describes the confusion of notices and instructions from City workers while trying to gather his things and prioritize what was most important to him.  Haugabrook Decl. ¶¶ 28-30.  He says that "no matter how hard [he] tried to keep things neat," City workers would throw his things away.  Id. ¶ 35.  They blamed it on "contamination" or "threats to public health and safety," which Haugabrook felt was "degrading and dehumanizing."  Id.  He describes feeling "powerless" as he watched "things [he] cared about and needed to survive" be discarded.  Id. ¶ 38.  The experiences made it difficult for him to trust others trying to help him, and losing his stuff repeatedly, not knowing when it would happen again, was "devastating."  Id. ¶¶ 39-41.  He constantly worried if and when another cleanup would occur, leaving him "feeling depressed and hopeless most of the time."  Id. ¶¶ 42-43.  The feeling of fear and powerlessness continues to this day.  Id. ¶¶ 44-45.

Ashley describes enduring multiple cleanups where "sometimes [he] got notice, and sometimes [he] didn't."  Ashley Decl. ¶ 17.  He declares that losing his bike carts was "extremely upset[ting] because

9

he "felt like there was nothing [he] could do to stop from losing property[.]"  Id. ¶ 16.  As a result, he says he has an enduring distrust of the City that has made it hard to accept offers of shelter.  Id. ¶ 18.  Despite having temporary housing, he worries about losing his belongings again in the future.  Id.

Zamora describes confusion and devastation on the first day of cleanup as she watched a chest of priceless documents and items—including pictures and ultrasound images of her children—be discarded.  Zamora Decl. ¶¶ 11-12, 18.  She says losing her things, including the tent where she stayed, was "destabilizing" and "humiliating," and repeated cleanups left her in "constant fear" that her belongings would be thrown away again.  Id. ¶¶ 13, 16-17.  She says that, because of the cleanups, she "began to experience insomnia and anxiety."  Id. ¶ 22.  When her possessions were taken away, she found it "hard to imagine [she] would get off the streets," resulting in "depression and despair."  Id. ¶ 23.  Though she is now in more secure housing, she still "deal[s] with the emotional effects of the cleanups" because she does not "feel secure with [her] belongings."  Id. ¶ 24.

Zepeda describes feelings of "powerless[ness]" when City workers took her property away despite her efforts to prevent that from happening.  Zepeda Decl. ¶ 20.  That they would show up without notice led to worry every time she stepped away.  Id. ¶ 21.  The cleanups led to anxiety, insomnia, and stress because she "did not know when they were going to happen" again.  Id. ¶¶ 23-24.  Seeing things she valued discarded without receipts made her feel disrespected and "less than human."  Id. ¶ 26-27.  Despite no longer living outside, memories of the cleanups still leave her worried and unable to sleep at times.  Id. ¶ 28.

Plaintiffs seek $10,000 each in emotional distress damages.  Dkt. 381 at 3-4.  They argue this amount represents the fair value of the emotional distress caused by the City and provide documentation of previous settlements with other municipalities to support their

10

estimate.  Id. at 4-5.[9]  The Court is satisfied that $10,000 each is reasonable given the emotional distress documented by each plaintiff and considering the available precedent.  Further, given that Plaintiffs suffered similar harm, it is appropriate to award Plaintiffs identical damages awards for emotional distress.  See Lambert v. Ackerley, 180 F.3d 997, 1011 (upholding jury award of identical amounts to multiple plaintiffs where "the emotional harm to each plaintiff was roughly equal given the similar treatment . . . suffered at the hands of the defendants").

## II. Conclusion

Having reviewed the Plaintiffs' proof and evidence, the Court awards the following in damages:

| Plaintiff | Actual Loss | Emotional Distress | Total |
| --- | --- | --- | --- |
| Janet Garcia | $1,859.28 | $10,000 | $11,859.28 |
| James Haugabrook | $941.87 | $10,000 | $10,941.87 |
| Marquis Ashley | $400 | $10,000 | $10,400 |
| Miriam Zamora | $2,117.22 | $10,000 | $12,117.22 |
| Gladys Zepeda | $2,365.26 | $10,000 | $12,365.26 |
| Pete Diocson, Sr.[10] | $123.38 | | $123.38 |

---

[9] The Court grants Plaintiffs' Request for Judicial Notice, dkt. 382 (RJN), of the settlements in Tyson v. City of San Bernardino, No. 5:23-cv-01539-TJH-SHK, dkt. 382-12, and Yeager v. City of Seattle, No. 2:20-cv-01813-RAJ, dkt. 382-13.  In Tyson, five individual plaintiffs were awarded a total of $200,000 for actual loss and emotional distress damages.  Dkt. 382-12 at 6.  In Yeager, one plaintiff was awarded $10,000 for emotional distress and property damage.  Dkt. 382-13.  The Court also grants judicial notice of several Small Claims Division judgments from the Superior Court of California, County of San Francisco, RJN, Exs. A-J, in which plaintiffs were each awarded $10,000 for the destruction of their property.

[10] Pete Diocson, Sr. was substituted as the successor in interest for Plaintiff Pete Diocson, Jr.  Dkt. 267.

11

IT IS SO ORDERED.


Date: July 20, 2026

                             Dale S. Fischer
                             United States District Judge